UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

- - - - - - - - - - - - - - - - - - - - - - - - - - - - -  x
                                                           :
BRUNO HOFMANN,                                             :
                                                           :
                        Plaintiff,          :        Civil Action
            v.                              :        No. 04-10027-JLT
                                            :
PHILIP LAUGHLIN, MICHAEL SABLONSKI,  :
ALBERT ERANI, DONNA ABELLI                  :
LOPOLITO, JOHN J. ACARI, HERBERT M.  :
STEIN, ALAN ADES, BERNARD A. MAR-    :
DEN, ALAN W. TUCK, NOVARTIS PHARMA   :
AG and PRICEWATERHOUSECOOPERS LLP, :
                                            :
                        Defendants.         :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - -  x


# MEMORANDUM OF LAW IN SUPPORT OF
## DEFENDANT PRICEWATERHOUSECOOPERS LLP'S MOTION TO DISMISS


James R. Carroll
Matthew J. Matule
SKADDEN, ARPS, SLATE,
  MEAGHER & FLOM LLP
One Beacon Street
Boston, Massachusetts  02108
(617) 573-4800

Counsel for Defendant
PricewaterhouseCoopers LLP

Dated: March 29, 2004

# TABLE OF CONTENTS

Page

Table of Authorities . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

Preliminary Statement . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Argument . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

I.   THIS CIRCUIT'S HEIGHTENED PLEADING
     REQUIREMENTS UNDER THE PSLRA AND RULE 9(b) . . . . . . . . . . . . . . . . . . . 3

     A.   The PSLRA Establishes Rigorous
          Standards For Pleading Securities Fraud . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

     B.   Rule 9(b) Requires A Plaintiff To Plead Fraud With Particularity . . . . . . . . . . . 5

II.  APPLICATION OF THE PSLRA AND RULE 9(b) TO THE
     COMPLAINT MANDATES DISMISSAL OF PWC FROM THIS ACTION . . . . . . . . 6

     A.   No Facts Are Alleged In Support Of The Allegations
          Contained In Paragraph 18 -- The Only Paragraph Devoted To PwC . . . . . . . . . 7

     B.   The Complaint's Other Two Cursory References To PwC
          Fail To Allege Any Facts Which Could State A 10(b) Violation . . . . . . . . . . . . 8

     C.   Plaintiff's Conclusory Allegations Are
          Entirely Based On Information And Belief . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

III. PLAINTIFF IMPERMISSIBLY ATTEMPTS TO LUMP PWC
     INTO THE COMPLAINT'S "GROUP DEFENDANTS" ALLEGATIONS . . . . . . . . . 10

Conclusion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

i

# TABLE OF AUTHORITIES

CASES                                                                            PAGE(S)

Arruda v. Sears, Roebuck & Co., 310 F.3d 13 (1st Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Carney v. Cambridge Tech. Partners, 135 F. Supp. 2d 235 (D. Mass. 2001) . . . . . . . . . . . . . . . 9

Doyle v. Hasbro, Inc., 103 F.3d 186 (1st Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Greebel v. FTP Software., 194 F.3d 185 (1st Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

In re Galileo Corp. Sec. Litig., 127 F. Supp. 2d 251 (D. Mass. 2001) . . . . . . . . . . . . . . . . . . . . 3, 4

Karvelas v. Melrose-Wakefield Hosp., No. 03-1901, 2004 WL 324465
    (1st Cir. Feb. 23, 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 6, 9

In re Lantronix, Inc. Sec. Litig., No. CV02-03899PA(JTLX),
    2003 WL 23198818 (C.D. Cal. Dec. 31, 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Lirette v. Shiva Corp., 27 F. Supp. 2d 268 (D. Mass. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Meyer v. Biopure Corp., 221 F. Supp. 2d 195 (D. Mass. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . 9

In re Polaroid Corp. Sec. Litig., 134 F. Supp. 2d 176 (D. Mass. 2001) . . . . . . . . . . . . . . . . . . . . 9

In re Raytheon Sec. Litig., 157 F. Supp. 2d 131 (D. Mass. 2000) . . . . . . . . . . . . . . . . . . . . . . . 5, 11

Serabian v. Amoskeag Bank Shares, Inc., 24 F.3d 357 (1st Cir. 1994) . . . . . . . . . . . . . . . . . . . . 5

In re Segue Software, Inc. Sec. Litig., 106 F. Supp. 2d 161
    (D. Mass. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

In re Stone & Webster, Inc. Sec. Litig., 253 F. Supp. 2d 102
    (D. Mass. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 4, 5, 6

In re Stratus Computer, Inc. Sec. Litig., No. 89-2075-Z,
    1992 WL 73555 (D. Mass. Mar. 27, 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

U.S. ex. rel Karvelas v. Melrose Wakefield Hosp., No. 03-1901,
    2004 WL 324465 (1st Cir. Feb. 23, 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 5, 6

Van de Velde v. Coopers & Lybrand, 899 F. Supp. 731 (D. Mass. 1995) . . . . . . . . . . . . . . . . . 5

Van Ormer v. Aspen Tech, Inc., 145 F. Supp. 2d 101 (D. Mass. 2000) . . . . . . . . . . . . . . . . . . . 9

Vladimir v. Deloitte & Touche LLP, No. 95-10319,
    1997 WL 151330 (S.D.N.Y. Mar. 31, 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Wilkes v. Heritage Bancorp, Inc., Nos. 90-11151-F, 90-11285-F,
    1990 WL 263612 (D. Mass. Nov. 21, 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

STATUTES                                                              PAGE(S)

Fed. R . Civ. P. 9(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

15 U.S.C. § 78u-4(b)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

15 U.S.C. § 78u-4(b)(3)(A) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 4

### Preliminary Statement

PricewaterhouseCoopers LLP ("PwC") served as independent auditors to Organogenesis, Inc.,[1] for many years, including each of the fiscal years arguably pertinent to the purported November 1999 to January 2002 class period sought here -- i.e., each of the fiscal years-ended December 31, 1998, 1999, 2000 and 2001. Plaintiff asserts claims against PwC under Section 10(b) of the Securities Exchange Act (the "Exchange Act"), and Rule 10b-5 promulgated thereunder, but application of the Private Securities Litigation Reform Act of 1995 (the "PSLRA") and Rule 9(b) to those allegations warrants dismissal of PwC from this litigation at the outset. Put simply, PwC never should have been sued in the first place.

Most of plaintiff's 76-page Complaint consists of statements made by other defendants, excerpted from press releases, analyst reports and unaudited financial statements that have nothing to do with PwC. The Complaint itself reads as though it were written years ago without any consideration of PwC but, as it was taken off the shelf in order to be filed just prior to the expiration of the limitations period, only came to have PwC inserted as a deep-pocketed after-thought. Indeed, of the 174 paragraphs in the Complaint, only three mention PwC at all -- one of which merely identifies PwC as a defendant in this action:[2]

---

[1]  For purposes of this motion, PwC assumes, but does not admit, that plaintiff's well pleaded allegations are true. However, bald assertions, unsubstantiated conclusions and characterizations are not so credited. See, e.g., U.S. ex. rel Karvelas v. Melrose Wakefield Hosp., No. 03-1901, 2004 WL 324465, *1 (1st Cir. Feb. 23, 2004) (affirming dismissal); Arruda v. Sears, Roebuck & Co., 310 F.3d 13, 18 (1st Cir. 2002) (affirming dismissal); In re Segue Software, Inc. Sec. Litig., 106 F. Supp. 2d 161, 165 (D. Mass. 2000) (dismissing complaint).

[2]  (See Compl. ¶¶ 18, 138, 140) (attached as Ex. A hereto). Exhibits attached hereto are cited as "Ex. ___."

"Defendant **PRICEWATERHOUSECOOPERS LLP** ('PricewaterhouseCoopers') was, throughout the Class Period, the purported independent auditors of the Company. During this time PricewaterhouseCoopers provided year-end reports which certified the Company's financial statements and its cash position, and consistently failed to alert investors to the fact that, at no time during the Class Period, did the Company have the ability to fund operations through product sales, or that Organogenesis was actually losing money on each sale of Apligraf. It was only after the end of the Class Period, after the Company had finally disclosed that it was impossible to fund operations with product sales that PricewaterhouseCoopers finally, belatedly, issued a 'going concern opinion' on the Company--an opinion which should have been in place since the inception of the Class Period." (Compl. ¶ 18.)

\*       \*       \*

"**Going Concern Opinion.** On April 16, 2002, when the Company filed its year end financial statement with the SEC, pursuant to Form 10-K, its outside auditor PricewaterhouseCoopers LLP issued a 'going concern' opinion, which stated that the ***auditors doubted Organogenesis' ability to continue as a going concern.*** According to PricewaterhouseCoopers, 'Organogenesis has posed recurring operating losses, as a working capital deficiency and has long-term debt that may become immediately due upon an event of default.'" (Compl. ¶ 138) (emphasis in original).

\*       \*       \*

"Remarkably, in response to this statement by PricewaterhouseCoopers, the same day, April 26, 2002, defendants issued a release on *Business Wire* which stated that, although Organogenesis had received the aforementioned report, that 'we believe that, based on our current forecasts, the Company has sufficient liquidity to finance operations and ***achieve break even by year-end 2002*** . . . .'" (Compl. ¶ 140) (emphasis in original).

To overcome a motion to dismiss under Rule 12(b)(6), a plaintiff must meet the strict pleading requirements of Rule 9(b) and the PSLRA. Yet, those three paragraphs -- the only three paragraphs in the entire 76-page complaint that mention PwC -- are insufficient to overcome this Circuit's high pleadings threshold.

2

Dismissal also is warranted for the independent reason that plaintiff resorts to unparticularized "group pleading," impermissibly lumping PwC together with the individual director/officer defendants and Novartis Pharma AG ("Novartis") under the collective label "defendants." Plaintiff conclusorily alleges that all defendants are liable as alleged participants in a fraudulent scheme that purportedly enabled some defendants -- but not PwC -- to profit from insider stock sales. But mere labeling is no substitute for pleading particularized facts. Plaintiff's vague, conclusory and unparticularized allegations fail to identify what specific conduct it is that PwC is alleged to have engaged in versus that of the other defendants.

**Argument**

I.    **THIS CIRCUIT'S HEIGHTENED PLEADING**
       **REQUIREMENTS UNDER THE PSLRA AND RULE 9(b)**

In order to state a cause of action under Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder, a plaintiff must allege that in connection with the purchase or sale of securities, the defendant made a misrepresentation or omission of a material fact, with the requisite scienter, on which the plaintiff relied, that proximately caused the plaintiff's injury. See In re Stone & Webster, Inc. Sec. Litig., 253 F. Supp. 2d 102, 111 (D. Mass. 2003). In pleading each of those mandatory elements, a plaintiff must meet the stringent pleading requirements of the PSLRA and Rule 9(b) in order to overcome a motion to dismiss made pursuant to Rule 12(b)(6).

   A.    **The PSLRA Establishes Rigorous**
           **Standards For Pleading Securities Fraud**

The PSLRA establishes "rigorous standards for pleading, both for the false or misleading and the scienter elements of a securities fraud claim." In re Galileo Corp. Sec. Litig., 127 F. Supp. 2d 251, 260 (D. Mass. 2001) (emphasis added). If a plaintiff fails to satisfy either

3

of these statutory pleading requirements, dismissal of the complaint is required. Id.; see also 15 U.S.C. § 78u-4(b)(3)(A).

Consequently, a plaintiff alleging securities fraud claim must meet the strict pleading requirements of the PSLRA and Rule 9(b) in order to overcome a Rule 12(b)(6) motion: "'[a] Complaint alleging securities fraud must specify, at a minimum (1) the statements that the plaintiff contends were fraudulent, (2) the identity of the speaker, (3) where and when the statements were made, and (4) why the statements were fraudulent.'" Stone & Webster, 253 F. Supp. 2d at 131 (dismissing 10(b) claim against auditor) (quoting Galileo, 127 F. Supp. 2d at 261). A complaint will fail to meet the particularity standard where the allegations do not set forth "'facts that show exactly why the statements or omissions were misleading.'" Id. at 120 (quoting Greebel v. FTP Software., 194 F.3d 185, 194 (1st Cir. 1999).[3] The PSLRA further "requires a complaint to 'state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind [scienter].'" Greebel, 194 F.3d at 194 (quoting 15 U.S.C. § 78u-4(b)(2)).[4]

With respect to the alleged scienter of an independent auditor for purposes of Section 10(b), "[c]ourts assessing claims against independent accountants and auditors under the PSLRA have placed the bar high" and promptly dismiss complaints that fail to meet that hurdle:

> For recklessness on the part of a non-fiduciary accountant to satisfy securities fraud scienter, such recklessness . . . must, in fact approximate

---

[3]    Upon a showing that the Complaint fails to comply with the foregoing rigorous pleading and scienter standards, "the court shall . . . dismiss the Complaint . . . ." 15 U.S.C. § 78u-4(b)(3)(A) (emphasis added).

[4]    In other words, the PSLRA makes the pleading standard in securities fraud cases even more rigorous than Rule 9(b) traditionally has required. Lirette v. Shiva Corp., 27 F. Supp. 2d 268, 274-75 (D. Mass. 1998).

4

> an actual intent to aid in the fraud being perpetrated by the auditing
> company. In other words, the plaintiff must prove that the accounting
> practices were so deficient that the audit amounted to no audit at all, or an
> egregious refusal to see the obvious, or to investigate the doubtful, or that the
> accounting judgments which were made were such that no reasonable accountant
> would have made the same decision if confronted with the same facts."

In re Raytheon Sec. Litig., 157 F. Supp. 2d 131, 154 (D. Mass. 2002) (emphasis added) (internal

quotations and citations omitted) (dismissing 10(b) claim against auditors) (quoting Van de

Velde v. Coopers & Lybrand, 899 F. Supp. 731, 734 (D. Mass. 1995)).[5]

### B.  Rule 9(b) Requires A Plaintiff To Plead Fraud With Particularity

Rule 9(b) requires that " [i]n all averments of fraud . . . the circumstances

constituting fraud . . . shall be stated with particularity." Fed. R. Civ. P. 9(b) (emphasis added).

"Where securities fraud is alleged, the particularity requirement is even more stringent," Segue,

106 F. Supp. 2d at 165, and prompt dismissal of the inadequate pleading is warranted:

> "[G]eneral averments of the defendants' knowledge of material falsity [of
> disclosures] will not suffice. Consistent with Fed. R . Civ. P. 9(b), the
> complaint must set forth specific facts that make it reasonable to believe
> that defendant[s] knew that a statement was materially false or misleading.
> The rule requires that the particular times, dates, places or other details of
> the alleged fraudulent involvement of the actors be alleged."

Id. (emphasis added) (dismissing 10(b) claim for failure to specify how plaintiffs were misled or

to allege facts supporting claim that defendant's statement was untrue) (citing Serabian v.

Amoskeag Bank Shares, Inc., 24 F.3d 357, 361 (1st Cir. 1994).

Just recently, the First Circuit again emphasized the "heightened pleading

requirements" imposed by Rule 9(b).  See Karvelas v. Melrose-Wakefield Hosp., No. 03-1901,

---

[5]   See also Stone & Webster , 253 F. Supp. 2d at 133 (dismissing Section 10(b) claim for
failing to meet the stringent standard of pleading scienter against an auditor); Vladimir v.
Deloitte & Touche LLP, No. 95-10319, 1997 WL 151330, at*4 (S.D.N.Y. Mar. 31, 1997)
(same).

2004 WL 324465, at *3 (1st Cir. Feb. 23, 2004) (attached as Ex. B hereto) (affirming dismissal for failure to plead averment of fraud with particularity as required by Rule 9(b) and reaffirming that "[t]he purpose of [Rule 9(b)'s requirements] is to 'give notice to defendants of the plaintiffs' claim, to protect defendants whose reputation may be harmed by meritless claims of fraud [and] to discourage 'strike suits'") (citing Doyle v. Hasbro, Inc., 103 F.3d 186, 194 (1st Cir. 1996)).[6]

## II.    APPLICATION OF THE PSLRA AND RULE 9(b) TO THE COMPLAINT MANDATES DISMISSAL OF PWC FROM THIS ACTION

Well-established First Circuit precedent and the numerous decisions of this Court applying those standards have been very explicit about the legal standards that apply under Rule 9(b) and the PSLRA -- and it is the application of those standards here that demonstrate why plaintiff's claim against PwC is a non-starter on the face of the complaint. PwC is mentioned in only three paragraphs out of the 174 paragraphs that form the Complaint. Indeed, plaintiff barely even alleges anything about PwC at all.[7] Accordingly, the Complaint should be dismissed because the three vague and conclusory references to PwC contained therein cannot satisfy the

---

[6]    Applying Rule 9(b) to Karvelas's claim under the False Claims Act, the First Circuit stated that the "time, place and content" specifics called for by Rule 9(b) required Karvelas to present details identifying particular false claims. The First Circuit found that Karvelas's 93-page complaint, which described sixteen alleged schemes by the defendants to defraud the government, failed to comply with Rule 9(b), because it "never specifies the dates or content of any false or fraudulent claim . . . does not describe the individuals involved . . . nor does the complaint provide the source of the information and factual basis for [plaintiff]'s conclusory allegations that the defendants submitted false or fraudulent claims to the government." Id. at *10.

[7]    "The allegations of fraud here are so generic that [they] could have been drafted by any competent practitioner generally familiar with securities fraud case law, without any independent knowledge of defendants' conduct, simply by collating language from leading cases with excerpts from defendants' . . . 10-Q forms, annual reports and press releases." Wilkes v. Heritage Bancorp, Inc., Nos. 90-11151-F, 90-11285-F, 1990 WL 263612, at *4 (D. Mass. Nov. 21, 1990) (Ponsor, M.J., dismissing complaint); In re Stratus Computer, Inc. Sec. Litig., No. 89-2075-Z,1992 WL 73555, at * 5 (D. Mass. Mar. 27, 1992) (Zobel, J., dismissing Complaint).

6

rigorous pleading standards necessary to sustain a claim for securities fraud in this Circuit. See,
e.g., Stone & Webster, 253 F. Supp. 2d at 111 (dismissing 10(b) claim against outside auditor for
failure to allege with "sufficient particularity that [auditor] made any false or misleading
statements and because no strong inference of scienter arises from the allegations").

### A.     No Facts Are Alleged In Support Of The Allegations Contained In Paragraph 18 -- The Only Paragraph Devoted To PwC

PwC is mentioned in only three out of the 174 paragraphs that form the Com-
plaint (see Compl. ¶¶ 18, 138, 140) -- only one of which, paragraph 18 -- actually contains
allegations against PwC.  However, those allegations are insufficient and fail, as a matter of law,
because they do not contain the requisite particularity or any of the necessary indicia of scienter:

| Plaintiff's Allegations Against PwC | Why Insufficient Under Rule 9(b) and the PSLRA |
|---|---|
| [PwC] consistently failed to alert investors . . . that, at no time during the Class Period, did the Company have the ability to fund operations through product sales, or that Organogenesis was actually losing money on each sale of Apligraf. It was only after . . . the Company had finally disclosed that it was impossible to fund operations with product sales that [PwC] finally, belatedly, issued a "going concern opinion" on the Company--an opinion which should have been in place since the inception of the Class Period. (Compl. ¶ 18.) | • **No particularity**: No facts are alleged to show that PwC was even aware of this "adverse" information, when or how it allegedly became aware of it, or why this information, if known, would have made the audit opinions issued by PwC misleading at the time. Plaintiff fails to identify a material misstatement in any financial statement audited by PwC. No facts are alleged period showing why PwC's audit opinions were misleading.  In short, plaintiff never specifies the times, dates, places or details of PwC's alleged fraudulent involvement in the so-called scheme to inflate the price of Organogenesis stock as required by rule 9(b).<br><br>• **No strong inference of scienter**: No facts are specifically alleged, either about what was known by PwC in November 1999 at the inception of the purported class period, or thereafter.  No facts are alleged -- assuming plaintiff's allegation is correct -- about what was known by PwC at year-end 1998, the time when PwC would need to know such facts in order to have caused a going concern opinion to be "in place [at] the inception of the class period."  No facts are alleged concerning PwC's accounting practices.  Plaintiff does not even mention a single auditing principle or standard -- let alone an audit -- with respect to PwC.  Thus, no facts are alleged showing that PwC's audit was so deficient that the audit amounted to no audit at all or that the accounting judgments which were made were such that no reasonable accountant would have made the same decision if confronted with the same facts.  Plaintiff, in short, does not even begin to make out a case of securities fraud against PwC. |

7

**B.**        **The Complaint's Other Two Cursory References To PwC**
        **Fail To Allege Any Facts Which Could State A 10(b) Violation**

Plaintiff only refers to PwC in two other paragraphs in his 76-page Complaint --

and neither asserts that PwC did anything that remotely amounts to securities fraud:

| Plaintiff's Mention of PwC | Why Insufficient To State A 10(b) Claim |
|---|---|
| "**Going Concern Opinion.** On April 16, 2002, when the Company filed its year end financial statement with the SEC, pursuant to Form 10-K, its outside auditor PricewaterhouseCoopers LLP issued a "going concern" opinion, which stated that the *auditors doubted Organogenesis' ability to continue as a going concern*. According to PricewaterhouseCoopers, "Organogenesis has posed recurring operating losses, as a working capital deficiency and has long-term debt that may become immediately due upon an event of default." (Compl. ¶ 138) (emphasis in original). | This merely recites a historical fact. <u>Nothing</u> is alleged to be false or misleading. |
| "Remarkably, in response to this statement by PricewaterhouseCoopers, the same day, April 26, 2002, defendants issued a release on *Business Wire* which stated that, although Organogenesis had received the aforementioned report, that "we believe that, based on our current forecasts, the Company has sufficient liquidity to finance operations and *achieve break even by year-end 2002* ...." ( Compl. ¶ 140) (emphasis in original). | The core allegations in this paragraph have <u>nothing</u> to do with PwC. Indeed, the interplay between paragraphs 138 and 140 merely demonstrates that PwC's statements are both a matter of historical fact and were disputed by Organogenesis. Read together with the other two paragraphs, PwC is the odd-person out of this complaint. Plaintiff's apparent desire to add a deep-pocket defendant, however, cannot substitute for the pleadings requirements mandated by the PSLRA. |

A recent decision by the United States District Court for the Central District of

California illustrates why the case should be dismissed as to PwC. See <u>In re Lantronix, Inc. Sec.</u>

<u>Litig.</u>, No. CV02-03899PA(JTLX), 2003 WL 23198818, at *6 (C.D. Cal. Dec. 31, 2003)

(attached as Ex. C hereto). There, the 10(b) allegations against an auditor were contained in only

<u>two</u> of the complaint's <u>199</u> paragraphs. Not surprisingly, the court granted the auditor's motion

to dismiss, reasoning that "[b]ecause the Complaint does not provide <u>specific</u> <u>allegations</u>

concerning how Ernst & Young's audits amounted to '<u>no audit at all</u>' the Complaint <u>fails</u> <u>to</u>

<u>satisfy</u> <u>the</u> <u>PSLRA</u> with respect to the Section 10(b) claim against Ernst & Young." <u>Id.</u> (emphasis

added).

8

**C.    Plaintiff's Conclusory Allegations Are
Entirely Based On Information And Belief**

The Complaint is pled <u>entirely</u> on "information and belief," without providing any

of the requisite factual specificity, and consequently ought to be dismissed on this independent

basis.[8]  <u>See</u> <u>Meyer v. Biopure Corp.</u> 221 F. Supp. 2d 195, 205 (D. Mass. 2002) (holding that

"[p]leading based on investigation by counsel is similar to pleading on information and belief;

the complaint must specify the facts upon which the information is based") (<u>citing</u> <u>Van Ormer</u>

145 F. Supp. 2d at 104); <u>see also</u> <u>Karvelas</u>, 2004 WL 324465 at * 4 (allegations of fraud based

on information and belief must set forth facts on which the belief is founded).

The clear text of the PSLRA requires that allegations pled on "information and

belief" state "with particularity <u>all</u> <u>facts</u> on which that belief is formed." 15 U.S.C. § 78u-4(b)(1)

(emphasis added).  The allegations in ¶18 are merely plaintiff's conclusions -- not the mandatory

pleading of "all facts" -- and this alone warrants dismissal of the Complaint.  <u>See, e.g.,</u> <u>Carney v.</u>

<u>Cambridge Tech. Partners</u>, 135 F. Supp. 2d 235, 241, 246 (dismissing complaint where plaintiffs

failed, among other things, to plead "all facts" upon which their beliefs were formed).[9]

---

[8]    The unnumbered introductory paragraph to plaintiff's Complaint states that the allega-
tions are "based upon the investigation of plaintiff's counsel."  Courts in this Circuit have
consistently held that a complaint pled on "investigation by counsel" constitutes pleading
on "information and belief."  <u>See</u> <u>Carney v. Cambridge Tech. Partners</u>, 135 F. Supp. 2d
235, 247 (D. Mass. 2001) (holding that plaintiffs cannot circumvent the PSLRA's
particularity requirement by pleading on "investigation by counsel"); <u>Van Ormer v.</u>
<u>Aspen Tech., Inc.</u>, 145 F. Supp. 2d 101, 104 (D. Mass. 2000) (treating complaint pled on
"investigation by counsel," as a complaint pled on "information and belief").

[9]    <u>See also</u> <u>Van Ormer</u>, 145 F. Supp. 2d at 103-04; <u>In re Polaroid Corp. Sec. Litig.</u>, 134 F.
Supp. 2d 176, 185-86 (D. Mass. 2001).  Plaintiff's "information and belief" basis for the
allegations in the Complaint are additionally defective because such allegations in no
way adequately: 1)  identify with particularity the sources of information investigated by
counsel; 2) include all sources of information purportedly investigated; 3)  specify which
(continued...)

9

## III.   PLAINTIFF IMPERMISSIBLY ATTEMPTS TO LUMP PWC INTO THE COMPLAINT'S "GROUP DEFENDANTS" ALLEGATIONS

Plaintiff purports to include PwC in every statement made by other defendants in

the list of press releases and unaudited SEC filings quoted in the Complaint:[10]

| Examples Of Allegedly Fraudulent And Misleading Statements Made By "Defendants" | Why PwC Is Not A Part Of The "Group" |
|---|---|
| "defendants raced to the market to register for sale at least $50 million in mixed securities . . ." (Compl. ¶ 58.) | **This, of course, is silly.  PwC sold no securities.** |
| "The statements contained in Organogenesis' November 15, 1999 release and those statements made by defendants to analysts, investors and the press during the period November 13-14, 1999 . . . were known by defendants to be false or were recklessly disregarded as such . . ." (Compl. ¶ 63.) | **This too is silly.  It is not PwC's role to speak with analysts or to issue press releases for Organogenesis.** |
| "Defendants again stated that the Company's quarterly results were 'consistent with the Company's ongoing transition from being a research company to a research-based operating company' . . ." (Compl. ¶ 75.) | **PwC made no such statement.** |
| "On October 3, 2000 defendants published a release . . . quot[ing] defendant Laughlin who stated that, '*Third Quarter Apligraf achievements .... laid the foundation for future sales development.*'" (Compl. ¶ 85) (emphasis in original). | **PwC made no such statement** |
| "On April 27, 2001, defendants announced more purported good news. That day, the Company published a release, announcing . . . product revenues 'nearly triple over prior year period.'" (Compl. ¶ 101.) | **PwC made no such statement.** |

Yet, by definition, plaintiff cannot invoke group-pleading against PwC.  The

"group pleading" doctrine allows plaintiffs to "impute false or misleading statements conveyed

in annual reports, quarterly and year-end financial results, or other group published information

to corporate officers . . . [but] is limited to clearly cognizable corporate insiders with active daily

---

[9]     (...continued)
allegations are based on which sources; or 4)  state how the sources investigated led to the belief that the statements challenged by the plaintiff were false or misleading.

[10]     Plaintiff also alleges that "the statements made by defendants and contained" in Organogenesis' 1999 and 2000 Form 10-Ks were materially false or misleading "for the reasons stated in ¶ 63."  (See Compl. ¶¶ 63, 72, 98.)  For each Form 10K issued during the Class period, plaintiff simply quotes from the Notes to the Financial Statements.  (Compl. ¶¶ 72, 98.)  But there is nothing said in any of these paragraphs about PwC's participation in the alleged fraud.

roles in the company." <u>Raytheon</u>, 157 F. Supp. 2d at 152 (emphasis added) (quotations and citations omitted).  The doctrine simply cannot be applied to PwC in this case.

## Conclusion

For all of the foregoing reasons, the claim against defendant PricewaterhouseCoopers LLP should be dismissed with prejudice and without leave to amend.

Dated: March 29, 2004
      Boston, Massachusetts

Respectfully submitted,

*James R. Carroll*
James R. Carroll (BBO #554426)
Matthew J. Matule (BBO #632075)
SKADDEN, ARPS, SLATE,
  MEAGHER & FLOM LLP
One Beacon Street
Boston, Massachusetts  02108
(617) 573-4800

Counsel for Defendant
PricewaterhouseCoopers LLP

## Certificate Of Service

I, Matthew J. Matule, hereby certify that on March 29, 2004, I caused a true copy of the Memorandum Of Law In Support Of Defendant PricewaterhouseCoopers LLP's Motion To Dismiss to be served by hand upon Nancy Freeman Gans, Moulton & Gans, P.C., 33 Broad Street, Suite 1100, Boston, Massachusetts 02109-4216, and Jeffrey B. Rudman, Hale & Dorr LLP, 60 State Street, Boston, Massachusetts 02109, and by first-class mail upon Steve G. Schulman, Milberg Weiss Bershad Hynes & Lerach LLP, One Pennsylvania Plaza, New York, New York 10119 and David R. Scott, Scott & Scott LLC, P.O. Box. 192, Colchester, Connecticut 06415.

Dated: March 29, 2004

*Matthew J. Matule*
Matthew J. Matule