SCANNED
DATE: 3-23-04
BY: CMG

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| BRUNO HOFFMAN, Individually and On Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>PHILIP LAUGHLIN, MICHAEL SABOLINSKI, ALBERT ERANI, DONNA ABELLI LOPOLOTI, JOHN J. ARCARI, HERBERT M. STEIN, ALAN ADES, BERNARD A. MARDEN, ALAN W. TUCK, NOVARTIS PHARMA AG and PRICEWATERHOUSECOOPERS, LLP,<br><br>Defendants. | Civil Action No.: 1:04-CV-10027 (JLT) |
| CHRISTOPHER GERARD AHEE, Individually and On Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>PHILIP LAUGHLIN, MICHAEL SABOLINSKI, ALBERT ERANI, DONNA ABELLI LOPOLITO, JOHN J. ARCARI, HERBERT M. STEIN, ALAN ADES, BERNARD A. MARDEN, ALAN W. TUCK, NOVARTIS PHARMA AG and PRICEWATERHOUSECOOPERS LLP,<br><br>Defendants. | Civil Action No.: 1:04-CV-10517 (JLT) |

**MEMORANDUM OF LORENE CRAWFORD, ERIC D. WINKELMAN AS TRUSTEE FOR ERIC D. WINKELMAN TRUST, KENNETH WIENER, AND VICTOR KRAIEM IN SUPPORT OF THEIR MOTION TO CONSOLIDATE THE ACTIONS, BE APPOINTED AS LEAD PLAINTIFFS AND FOR APPROVAL OF THEIR CHOICE OF LEAD COUNSEL**

## **PRELIMINARY STATEMENT**

Presently pending before the Court are two securities class action lawsuits (the "Actions") brought on behalf of all persons or entities (the "Class") who purchased the securities of Organogenesis, Inc. ("Organogenesis" or the "Company") during the period November 15, 1999 through and including January 30, 2002 (the "Class Period"). Plaintiffs allege violations of Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), and Rule 10b-5 promulgated under Section 10(b), against defendants Michael Sabolinski, Albert Erani, Donna Abelli Lopoloti, John J. Arcari, Herbert M. Stein, Alan Ades, Bernard A. Marden, Alan W. Tuck (collectively, the "Individual Defendants"), Novartis Pharma AG ("Novartis") and Pricewaterhousecoopers, LLP ("Price").[1]

Class members Lorene Crawford, Eric D. Winkelman as Trustee for Eric D. Winkelman Trust, Kenneth Wiener, and Victor Kraiem (the "Movants") hereby move this Court, pursuant to Fed. R. Civ. P. 42(a) and Section 21D(a)(3)(B) of the Exchange Act, as amended by the Private Securities Litigation Reform Act of 1995 ("PSLRA"), for an order (a) consolidating the captioned actions for all purposes; (b) appointing Movants as lead plaintiffs in the Actions; and (c) approving Movants' selection of Bernstein Liebhard & Lifshitz, LLP ("Bernstein Liebhard") as lead counsel for the Class and Gilman and Pastor, LLP ("Gilman and Pastor") as liaison counsel for the Class.

During the Class Period, Movants collectively purchased 6,100 shares of Organogenesis and suffered losses of $30,332.46. Movants believes these losses represent the largest financial interest in the outcome of the litigation.

---

[1] Organogenesis is not named as a defendant because it filed for bankruptcy protection in November of 2002.

## STATEMENT OF FACTS

Throughout the Class Period, Organogenesis was a Company with only one commercially available product – Apligraf, a skin replacement therapy used for severe skin wounds. Apligraf is described by Organogenesis as having a structure similar to human skin and as a "skin construct." The product's human skin-like properties allow this product to be used by doctors to aid in the healing of certain types of skin ulcers and other epidermal injuries. While the Company encountered some difficulties in manufacturing and marketing Apligraf during the first half of 1999, by the inception of the Class Period, Defendants assured investors that Organogenesis maintained the expertise and ability to manufacture sufficient quantities of Apligraf so that it was foreseeable that the Company could achieve economies of scale and achieve profitability through the sales of only this product, that the Company maintained marketing agreements with partners such as Novartis, which would allow Organogenesis to obtain the marketing support necessary to sell sufficient quantities of Apligraf, while at the same time retaining enough of the revenue split in these deals to fund operations and achieve profitability, and that between the Company's marketing agreements with Novartis and others, and through other foreseeable sources of available debt and equity, Organogenesis could foreseeably achieve profitability and sufficiency.

Throughout the Class Period, Plaintiff and other members of the Class were led to believe that Organogenesis was able to manufacture Apligraf in sufficient quantities and that other sources of funding were available such that the Company would be able to achieve profitability in the foreseeable near-term. Defendants consistently reported that Organogenesis' results were "consistent with the transition in progress from a research focused company to a research based

operating company with a novel medical product in introduction phase," and that the Company had necessary and available funding sources, from foreseeable sales of debt and equity to both private and public investors which would allow the Company to achieve Defendants' plan for sufficiency. Central to this plan was also a key agreement with Novartis, Organogenesis' Apligraf marketing partner, which purportedly allowed Defendants to access at least $20 million through the exercise of a "put" option. This agreement purportedly allowed Defendants to raise this money at any time, and thereby maintain a large mega-million "safety net" for the Company.

Unbeknownst to investors, however, throughout the Class Period, the Company was suffering from a host of undisclosed adverse factors which negatively impacted its business and which would cause it to report declining financial results, materially less than the market expectations Defendants had caused and cultivated. In particular:

> 1) Defendants could not achieve profitability through the sale of Apligraf under the terms, or even the revised terms, of the Novartis marketing agreement, which did not provide Organogenesis with enough of the revenues or profits provided through such Apligraf sales to offset the extremely high cost of production or to offset other undisclosed manufacturing problems such as defective products and recalls;

> 2) Undisclosed problems related to the manufacture and marketing of Apligraf were leading to even higher costs and further reducing profitability. Manufacturing problems and delays were retarding production scale, and marketing issues were reducing sales. As investors would only learn following the Class Period, the Company's own sales force was encountering resistance throughout that time concerning the cost and complexity of its products and the actual and/or perceived difficulties in physician reimbursement for Apligraf;

> 3) Organogenesis was underfunded and there was no reasonable basis to report that the Company could foreseeably fund operations throughout the Class Period, based on available sources of loans, debt and/or equity sales. Moreover, as Defendants were well aware but failed to disclose, it was not true that the Company could force Novartis to provide the full complement of its funding as Defendants consistently represented, as certain undisclosed conditions existed. Organogenesis could not meet conditions

precedent to Novartis' requirement to provide at least $10 million of its purported commitment to Organogenesis; and

4) High management turn-over at the Company was having and would continue to have a disruptive effect on the operations and oversight of Organogenesis, such that it was also not foreseeable at any time during the Class Period that Organogenesis would be able to achieve profitability in the near-term or to attain guidance sponsored and/or endorsed by Defendants.

Thus, Defendants lacked any reasonable basis to claim that Organogenesis was operating according to plan, that sufficient sources of funding were achieved and/or available to Organogenesis or that the Company could maintain profitability or even remain a viable entity in the foreseeable near-term.

## ARGUMENT

### A. THE RELATED ACTIONS SHOULD BE CONSOLIDATED

Rule 42(a) provides for consolidation "[w]hen actions involving a common question of law or fact are pending before the court." Accord Manual for Complex Litigation (3d), § 20.123, at 13-14 (1995). See also Howard Gunty Profit Sharing Plan v. Carematrix Corp., Lead Civ. No. 99-12318-MLW, 2000 WL 33348124, at *3 (D. Mass. Aug. 15, 2000). The PSLRA also contemplates consolidation where "more than one action on behalf of a class asserting substantially the same claim or claims arising under this chapter has been filed." 15 U.S.C. § 78u-4(a)(3)(B)(ii).

"In securities actions where the complaints are based on the same 'public statements and reports,' consolidation is appropriate if there are common questions of law and fact and defendants will not be prejudiced." Mitchell v. Complete Mgmt., Inc., No. 99 Civ. 1454, 1999 WL 728678, at *1 (S.D.N.Y. Sept. 17, 1999); Weltz v. Lee, No. 00 Civ. 3863, 2001

4

WL 228412, at *2 (S.D.N.Y. Mar. 7, 2001). Consolidating multi-shareholder class action suits streamlines and simplifies pre-trial and discovery motions, class action issues, clerical and administrative management duties, and generally reduces the confusion and delay that result from prosecuting related actions separately before two or more judges. In Re Olsten Sec. Litig., 3 F. Supp. 2d 286, 294 (E.D.N.Y. 1998); Switzenbaum v. Orbital Sciences Corp., 187 F.R.D. 246, 248 (E.D. Va. 1999).

The actions pending before this Court present similar factual and legal issues, as they allege violations of the same sections of the Exchange Act and name the Company, certain of its officers and/or directors, Novartis and its auditors, Price, as defendants. Because the actions arise from the same facts and circumstances and involve the same subject matter, the same discovery and similar class certification issues will be relevant to all related actions. Accordingly, consolidation under Rule 42(a) and the PSLRA is appropriate.

### 1. The Court Should Resolve The Consolidation Issue As a Prerequisite to The Determination of Lead Plaintiff

Once the Court decides the consolidation motion, it must decide the lead plaintiff issue "[a]s soon as practicable." Section 21D(a)(3)(B)(ii), 15 U.S.C. § 78u-4(a)(3)(B)(ii). As Movants have an interest in moving these actions forward, they respectfully urge the Court to resolve the consolidation motion as soon as practicable. A prompt determination is reasonable and warranted under Rule 42(a), especially given the common questions of fact and law presented by the related actions now pending in this District.

## B. THE COURT SHOULD APPOINT MOVANTS AS LEAD PLAINTIFFS

### 1. The Procedure Required By The PSLRA

5

The PSLRA establishes the procedure for appointment of the lead plaintiff in "each private action arising under [the Exchange Act] that is brought as a plaintiff class action pursuant to the Federal Rules of Civil Procedure." Sections 21D(a)(1) and (a)(3)(B), 15 U.S.C. §§ 78u-4(a)(1) and (a)(3)(B).

First, the plaintiff who files the initial action must publish notice to the class within 20 days after filing the action, informing class members of their right to file a motion for appointment of lead plaintiff. Section 21D(a)(3)(B)(ii), 15 U.S.C. § 78u-4(a)(3)(B)(ii). The PSLRA requires the court to consider within 90 days all motions filed within 60 days after publication of that notice made by any person or group of persons who are members of the proposed class to be appointed lead plaintiff. Section 21D(a)(3)(A)(i)(II) and 21D(a)(3)(B)(i), 15 U.S.C. §§ 78u-4(a)(3)(A)(i)(II) and (a)(3)(B)(i).

The PSLRA provides a presumption that the most "adequate plaintiff" to serve as lead plaintiff is the "person or group of persons" that:

>   (aa)   has either filed the complaint or made a
>          motion in response to a notice;
>
>   (bb)   in the determination of the court, has the
>          largest financial interest in the relief sought
>          by the class; and
>
>   (cc)   otherwise satisfies the requirements of Rule 23 of the Federal
>          Rules of Civil Procedure.

Section 21D(a)(3)(B)(iii)(I), 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I). The presumption may be rebutted only upon proof by a class member that the presumptively most adequate plaintiff "will not fairly and adequately protect the interests of the class" or "is subject to unique defenses that

render such plaintiff incapable of adequately representing the class." Section 21D(a)(3)(B)(iii)(II), 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II).

As set forth below, Movants satisfy the foregoing criteria and they are not aware of any unique defenses that defendants could raise against them. Therefore, Movants are entitled to the presumption that they are the most adequate plaintiff to represent the Class and, as a result, should be appointed lead plaintiffs in the Actions.

### a.   Movants Are Willing To Serve As Class Representatives

On January 22, 2004, counsel caused a notice (the "Notice") to be published in Investors Business Daily pursuant to Section 21D(a)(3)(A)(i), which announced that a securities class action had been filed against, among others, Organogenesis, and which advised putative class members that they had until March 22, 2004 to file a motion to seek appointment as a lead plaintiff in the action.[2] Movants have reviewed one of the complaints filed in the pending actions and have timely filed their motion pursuant to the Notice. In doing so, Movants have attached their certifications attesting to their willingness to serve as a representative of the Class and provide testimony at deposition and trial, if necessary. See Declaration of Peter Lagorio ("Lagorio Decl."), Ex. A. Accordingly, Movants satisfy the first requirement to serve as lead plaintiff for the Class. Section 21D(a)(3)(B)(iii)(I)(aa), 15 U.S.C. §78u-4(a)(3)(B)(iii)(I)(aa).

### b.   Movants Have The Largest Financial Interest In The Relief Sought In This Action

The PSLRA requires the Court to adopt a rebuttable presumption that "the most adequate plaintiff . . . is the person or group of persons that . . . has the largest financial interest in

---

[2] The first action against Organogenesis, denominated Hoffman v. Laughlin, et al., 2004 Civ. No. 10027 (D.C. Mass.), was filed on January 7, 2004.

the relief sought by the class." Section 21D(a)(3)(B)(iii)(I)(bb), 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(bb).

Movants submit that they have the largest financial interest of any shareholder or group of shareholders seeking to be appointed lead plaintiff as they suffered collective losses of $30,332.46. See Lagorio Decl., Ex. B. These losses are significant enough to ensure that Movants have a sufficient financial stake to remain active participants in the action and oversee its vigorous prosecution by counsel. See Takeda v. Turbodyne Techs., Inc., 67 F. Supp. 2d 1129, 1135-36 (C.D. Cal. 1999); In re Cendant Corp. Litig., 182 F.R.D. 144, 147-8 (D.N.J. 1998). See also House Conference Report No. 104-369, 104th Cong.1st Sess. at 34 (1995) (citing Conference Report of Securities Reform, H.R. Rep. No. 369, 104 Cong., 1st Sess. 31, reprinted in U.S.C.C.A.N. 679, 730-31). Movants are not aware of any other moving party who has suffered larger losses. Further, courts also consider it desirable to appoint individual investors, like the Movants, as lead plaintiffs since they each bring a unique perspective to the litigation. Laborers Local 1298 Pension Fund v. Campbell Soup Co., Civ. Action No. 00-152 (JEI), 2000 U.S. Dist. LEXIS 5481, at *12 (D.C.N.J., Apr. 24, 2000). Accordingly, Movants satisfy the largest financial interest requirement to be appointed as lead plaintiffs in the Actions. Section 21D(a)(3)(B)(iii)(I)(bb), 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(bb).

    c.    **Movants Satisfy The Requirements of Rule 23(a) Of The Federal Rules Of Civil Procedure**

Section 21D(a)(3)(B)(iii)(I)(cc) of the PSLRA provides that the lead plaintiff must "otherwise satisfy the requirements of Rule 23 of the Federal Rules of Civil Procedure." Typicality and adequacy of representation (Rules 23(a)(3) & (a)(4)) are the only provisions

8

relevant to a determination of lead plaintiff under the PSLRA. See In re Lernout & Hauspie Sec. Litig., 138 F. Supp. 2d 39, 46 (D. Mass. 2001).

The claims asserted by Movants are typical of those of the Class. Movants, like the members of the Class, purchased Organogenesis common stock during the Class Period at prices artificially inflated by Defendants' materially false and misleading statements, and were damaged thereby. Thus, their claims are typical, if not identical, to those of the other members of the Class because Movants suffered losses similar to those of other class members and their losses result from Defendants' common course of conduct. Lernout, 138 F. Supp. at 46; In re Bank of Boston Corp. Sec. Litig., 762 F.Supp. 1525, 1532 (D.Mass.1991). Accordingly, Movants satisfy the typicality requirement of Rule 23(a)(3).

Movants are adequate representatives for the Class because there is no antagonism between their interests and those of the Class. Lernout, 138 F. Supp. at 46; Adair v. Sorenson, 134 F.R.D. 13, 18 (D. Mass. 1991). Moreover, Movants have retained counsel highly experienced in prosecuting securities class actions, and will submit their choice to the Court for approval pursuant to Section 21D(a)(3)(B)(v), 15 U.S.C. § 78u-4(a)(3)(B)(v).

Accordingly, at this stage of the proceedings, Movants have made the preliminary showing necessary to satisfy the typicality and adequacy requirements of Rule 23 and, therefore, satisfy Section 21D(a)(3)(B)(iii)(I)(cc), 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(cc).

### C.  MOVANTS' SELECTION OF COUNSEL SHOULD BE APPROVED

The PSLRA vests authority in the lead plaintiff to select and retain lead counsel, subject to court approval. Section 21D(a)(3)(B)(v), 15 U.S.C. § 78u-4(a)(3)(B)(v). The Court

9

should interfere with the lead plaintiff's selection of counsel only when necessary "to protect the interests of the class." Section 21D(a)(3)(B)(iii)(II)(aa), 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(aa).

Movants have selected and retained Bernstein Liebhard as the proposed lead counsel for the Class and Gilman and Pastor as the proposed liaison counsel for the Class. Bernstein Liebhard and Gilman and Pastor have extensive experience prosecuting complex securities class actions, such as this one, and are well qualified to represent the Class. See Lagorio Decl., Exs. C and D for the respective firm resumes of Bernstein Liebhard and Gilman and Pastor. As a result, the Court may be assured that by approving Bernstein Liebhard as lead counsel and Gilman and Pastor as liaison counsel, the Class is receiving the best legal representation available.

## CONCLUSION

For the foregoing reasons, Movants respectfully requests that this Court: (1) consolidate the above-captioned, and all subsequently-filed, related actions; (2) appoint Movants as lead plaintiffs in the captioned, and all subsequently-filed, related actions; and (3) approve

10

Movants' selection of Bernstein Liebhard and Gilman and Pastor to represent plaintiffs and the Class.

Dated: March 22, 2004

                                        GILMAN AND PASTOR, LLP

                                        */s/ Peter A. Lagorio*

                                        David Pastor (BBO #391000)
                                        Peter A. Lagorio (BBO #567379)
                                        Stonehill Corporate Center
                                        999 Broadway Suite 500
                                        Saugus, MA 01906
                                        (781) 231-7850
                                        (781) 231-7840 (facsimile)

                                        **Liaison Counsel for Movants and**
                                        **Proposed Liaison Counsel for the Class**

                                        **BERNSTEIN LIEBHARD & LIFSHITZ, LLP**
                                        Sandy A. Liebhard
                                        Joseph R. Seidman, Jr.
                                        10 East 40th Street, 22nd Floor
                                        New York, NY 10016
                                        (212) 779-1414
                                        (212) 779-3218 (facsimile)

                                        **Counsel for Movants and**
                                        **Proposed Lead Counsel for the Class**