UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                                    :
IN RE ORGANOGENESIS SECURITIES LITIGATION   :    MASTER FILE
                                                    :    NO. 04-10027-JLT
                                                    :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**MEMORANDUM OF LAW IN SUPPORT OF**
**DEFENDANT PRICEWATERHOUSECOOPERS LLP'S MOTION TO DISMISS**

James R. Carroll
Matthew J. Matule
SKADDEN, ARPS, SLATE,
   MEAGHER & FLOM LLP
One Beacon Street
Boston, Massachusetts  02108
(617) 573-4800

Counsel for Defendant
PricewaterhouseCoopers LLP

Dated: January 14, 2005
         Boston, Massachusetts

# <u>TABLE OF CONTENTS</u>

<u>Page</u>

Table of Authorities ...................................................................................................... ii

Preliminary Statement ...................................................................................................1

Argument ........................................................................................................................4

I.      PWC SHOULD BE DISMISSED BECAUSE PLAINTIFFS DO NOT -- AND
        CANNOT -- ALLEGE FRAUD WITH THE PARTICULARITY REQUIRED
        BY RULE 9(B) AND THE PSLRA ...................................................................4

        A.      Dismissal Is Warranted Under The PSLRA And Rule 9(b) Where --
                As Here -- The Allegations Do Not Set Forth Specific Facts
                Indicating Why Or How Specific Statements Are Misleading .................4

        B.      Under This Circuit's Strict PSLRA Pleading Standards Plaintiffs'
                Conclusory Allegations Fail To Allege With The Requisite
                Particularity Any False Statements *Attributable To PwC* ........................5

        C.      None Of The So-Called "Red Flags" Allege Facts Indicating Why
                Or How PwC's 2000 Audit Opinion Was Inaccurate ...............................9

        D.      Plaintiffs Fail To Plead Any Facts Showing That PwC Should Have
                Subsequently Withdrawn Or Modified Its Opinion On The Year-
                End 2000 Financials ...............................................................................12

II.     THE COMPLAINT FAILS TO PLEAD FACTS SUFFICIENT TO RAISE
        ANY INFERENCE -- LET ALONE THE REQUISITE STRONG
        INFERENCE -- THAT PWC ACTED WITH SCIENTER ...............................13

        A.      Plaintiffs' Allegation Of "Access" To "Confidential Business
                Information" Is Insufficient To Show PwC's Alleged Scienter ..............14

        B.      Conclusory Allegations Of GAAS Or GAAP Violations Are
                Insufficient To Plead Auditor Scienter ...................................................15

        C.      Scienter Cannot Be Shown By Plaintiffs' Conclusory Allegations
                That PwC Ignored Or Disregarded Purported "Red Flags" ....................15

Conclusion ....................................................................................................................20

## TABLE OF AUTHORITIES

CASES                                                                    PAGE(S)

Arruda v. Sears, Roebuck & Co., 310 F.3d 13 (1st Cir. 2002) ........................................................1

D.E. & J Ltd. P'ship.v. Conaway, 284 F. Supp. 2d 719 (E.D. Mich. 2003) ...........................16, 17

DSAM Global Value Fund v. Altris Software, Inc., 288 F.3d 385 (9th Cir. 2002) .....................15

Fidel v. Farley, 392 F.3d 220 (6th Cir. 2004) ....................................................................... *passim*

Fin. Acquisition Partners, LP v. Blackwell, No. Civ. A. 3:02-CV-1586-K,
        2004 WL 2203253 (N.D. Tex. Sept. 29, 2004)................................................15, 18, 19, 20

Fitzer v. Security Dynamics Tech., 119 F. Supp. 2d 12 (D. Mass. 2000) ....................................7

Greebel v. FTP Software, 194 F.3d 185 (1st Cir. 1999).............................................................5, 6

Guerra v. Teradyne, Inc., No. Civ. A. 01-11789-NG,
        2004 WL 1467065 (D. Mass. Jan. 16, 2004) ...............................................................7, 11

In re Hayes Lemmerz Int'l, Inc. Equity Sec. Litig.,
        271 F. Supp. 2d 1007 (E.D. Mich. 2003)...............................................................................8

In re ICN Pharm., Inc. Sec. Litig., 299 F. Supp. 2d 1055 (C.D. Cal. 2004)..............................5, 6

In re Raytheon Sec. Litig., 157 F. Supp. 2d 131 (D. Mass. 2002)................................3, 13, 14, 15

In re Segue Software, Inc. Sec. Litig., 106 F. Supp. 2d 161 (D. Mass. 2000)............................1, 5

In re Stone &Webster, Inc. Sec. Litig., 253 F. Supp. 2d 102 (D. Mass. 2003) .................... *passim*

In re Van Wagoner Funds, No. C. 02-03383,
        2004 WL 2623972 (N.D. Cal. Jul. 27, 2004)...................................................................9, 15

Kennilworth Partners L.P. v. Cendant Corp., 59 F. Supp. 2d 417 (D.N.J. 1999)...................14, 15

PR Diamonds, Inc. v. Chandler, 364 F.3d 671 (6th Cir. 2004) ....................................................13

Reiger v. PricewaterhouseCoopers LLP, 117 F. Supp. 2d 1003 (S.D. Cal. 2000) .......................15

U.S. ex rel. Karvelas v. Melrose Wakefield Hosp., 360 F.3d 220 (1st Cir. 2004) .........................1

Van de Velde v. Coopers & Lybrand, 899 F. Supp. 731 (D. Mass. 1995) .....................................3

<u>STATUTES</u>                                                    PAGE(S)

15 U.S.C. § 78j(b) ...........................................................................................................1

17 C.F.R. § 240.10b-5 ....................................................................................................1

Fed. R. Civ. P. 9(b) ........................................................................................................5


<u>OTHER AUTHORITIES</u>                                        PAGE(S)

AICPA Auditing Standard AU § 341 ............................................................................1

### Preliminary Statement[1]

PricewaterhouseCoopers LLP ("PwC") was the independent auditor to Organogenesis, Inc. ("Organogenesis"), and issued an unqualified independent auditor's report with respect to Organogenesis' financial statements for the fiscal year ended December 31, 2000, among others.  On April 16, 2002, PwC included a "going concern" opinion in its report concerning Organogenesis' fiscal year 2001 financial statements (and filed with its Form 10-K for 2001).[2]  Plaintiffs assert claims against PwC under Section 10(b) of the Securities Exchange Act (the "Exchange Act"), and Rule 10b-5 promulgated thereunder,[3] essentially pleading "fraud" on the theory that PwC should have modified or withdrawn its opinion on the fiscal year 2000 financial statements (or should have disclaimed or issued an adverse opinion in the first place) because it subsequently -- a year later -- included a going concern opinion in its report on the fiscal year 2001 financial statements.[4]  The Complaint is pure "fraud by hindsight" and should be dismissed for multiple reasons.

---

[1]    Exhibits referenced herein are included in the PricewaterhouseCoopers LLP's Appendix Of Exhibits In Support Of Its Motion To Dismiss, submitted herewith, and are cited as "Ex. __."

[2]    A "going concern opinion" is an explanatory paragraph contained in an audit report reflecting the auditor's conclusion that there is substantial doubt about the entity's ability to continue as a viable entity for a reasonable period of time, not to exceed one year beyond the date of the financial statements being audited.  AICPA Auditing Standard AU § 341.02-12.

[3]    15 U.S.C. § 78j(b); 17 C.F.R. § 240.10b-5.

[4]    For purposes of this motion, PwC assumes, but does not admit, that plaintiffs' well pleaded allegations are true.  However, bald assertions, unsubstantiated conclusions and characterizations are not so credited.  See, e.g., U.S. ex. rel Karvelas v. Melrose Wakefield Hosp., 360 F.3d 220, 224 (1st Cir. 2004), cert. denied, 125 S.Ct. 59 (U.S. Oct. 4, 2004) (affirming dismissal); Arruda v. Sears, Roebuck & Co., 310 F.3d 13, 18 (1st Cir. 2002) (affirming dismissal); In re Segue Software, Inc. Sec. Litig., 106 F. Supp. 2d 161, 165 (D. Mass. 2000) (dismissing complaint).

First, Plaintiffs' central allegations against PwC are that PwC knew or recklessly disregarded facts throughout 2001 and early 2002 indicating that PwC should have withdrawn, corrected, disclaimed or issued an adverse opinion on Organogenesis' 2000 year-end financial statements (¶ 186).[5]  The only allegations Plaintiffs can marshal to support this are based upon a conclusory -- and inactionable -- list of purported violations of Generally Accepted Auditing Standards (¶¶ 174-183) and so-called "red flags."  Nowhere does the Complaint allege -- as it must -- particularized facts indicating <u>why</u> and <u>how</u> PwC's audit opinion for fiscal year 2000 was false or misleading (either when it was issued or thereafter).  Plaintiffs also allege that a going concern opinion should have been in place since the inception of the purported class period in November 1999 -- but nowhere allege any particularized facts pertaining to the 1998-2000 time frame, let alone a reason why a going concern opinion should have been issued at that time.

Plaintiffs allege three so-called "red flags":[6]  (i) according to a "confidential" document obtained by Plaintiffs' counsel and purportedly prepared by a former Organogenesis officer, "[PwC's] 'confidence in managements [sic] and the Boards [sic] representations' had been 'eroded'" due to defendant Albert Erani's (then Chairman of the Board) purported failure to sign an auditor's confirmation in March 2001;[7] (ii) the Company's failure to exercise the Novartis

---

[5]   Citations to Plaintiffs' Corrected Consolidated Amended Class Action Complaint are referred to herein as "(¶ ___)."

[6]   In an effort to make more smoke than show any real fire, Plaintiffs actually list four purported "red flags," but the first two (¶ 174 (a-b)) are nearly identical in substance and will be considered together in this brief.  Elsewhere in the Complaint, Plaintiffs allege (citing a "confidential" document) that Erani's alleged refusal to provide an audit confirmation "'eroded'" PwC's "'confidence in managements [sic] and the boards [sic] representations'" and that "other [unpled] actions by Erani led to a 'loss of the Company's credibility with the Company's service providers, including . . . independent accountants.'" (¶¶ 12(a), 111).

[7]   Plaintiffs repeatedly rely upon (but fail to attach) a so-called "confidential" document purportedly created in October 2001 by defendant John Arcari, then the Company's CFO. (¶ 7.)  There is no allegation that PwC was aware of this document.

2

financing put in May 2001; and (iii) PwC's purported disregard of the terms of the Novartis

marketing agreement. (¶ 174.)  All of these "red flags" fail as wholly vague and conclusory,

irrelevant (because they post-date the audit fieldwork and subsequent March 2001 audit opinion

on the 2000 financials), or contradicted by the Company's numerous subsequent SEC filings.

Remarkably, Plaintiffs fail to even allege that the financial statements -- the basis for PwC's

opinion -- are incorrect.  Each of these failures is independently fatal to Plaintiffs' claims, and the

Complaint should be dismissed on those grounds alone.

      Second, Plaintiffs also must allege specific facts sufficient to raise a strong

inference of scienter -- i.e., intent to deceive by the auditor.  Judges in this district assessing

auditor scienter under Section 10(b) have rightfully "placed the bar high."  In re Raytheon Sec.

Litig., 157 F. Supp. 2d 131, 154 (D. Mass. 2001) (granting motion to dismiss 10(b) claim against

outside auditor).  To pass muster under Rule 9(b) and the PSLRA, this Complaint must plead

facts raising a "strong inference" that PwC's audit was so deficient as to amount "to no audit at

all, or an egregious refusal to see the obvious, or to investigate the doubtful, or that the

accounting judgments which were made were such that no reasonable accountant would have

made the same decision if confronted with the same facts."  Id. (quoting Van de Velde v.

Coopers & Lybrand, 899 F. Supp. 731, 734 (D. Mass. 1995)).  In fact, this Court has held that

auditor scienter must verge on an "actual intent to aid in the fraud" resulting in deliberate

accounting misconduct such that "the accounting practices were so deficient that the audit

amounted to no audit at all . . ."  Id.  (internal quotations and citations omitted).

      Here, Plaintiffs fail to plead any facts raising any inference -- let alone the

requisite "strong inference" -- that PwC falsely or recklessly certified the 2000 financials.

Instead, Plaintiffs offer boilerplate "scienter" allegations that PwC "had intimate knowledge of

3

Organogenesis' financial reporting practices" by virtue of its access during the audit process to unspecified "confidential" records (¶ 172), and a list of alleged GAAS violations.  (¶¶ 176-183.)

All Plaintiffs have to bolster these plainly insufficient allegations are the same conclusory assertions about purported "red flags" that fail to sustain their burden to plead with particularity (¶ 174).  But the so-called "red flags" also fail to raise any inference of scienter because they are either:  (i) contradicted, as a matter of record, by the Company's SEC filings; (ii) irrelevant, because they occur outside of the relevant time frame; or (iii) wholly conclusory. Further, <u>all</u> of the alleged "red flags" are not even remotely alleged to be connected in any way to PwC's unqualified audit opinion.  In sum, Plaintiffs fail to allege any facts showing PwC's "intent to aid in the fraud" allegedly perpetrated by Organogenesis, and the Complaint should be dismissed on this independently sufficient ground.

<u>**Argument**</u>

## I.    PWC SHOULD BE DISMISSED BECAUSE PLAINTIFFS DO NOT -- AND CANNOT -- ALLEGE FRAUD WITH THE <u>PARTICULARITY REQUIRED BY RULE 9(B) AND THE PSLRA</u>

### A.    Dismissal Is Warranted Under The PSLRA And Rule 9(b) Where -- As Here -- The Allegations Do Not Set Forth Specific <u>Facts Indicating Why Or How Specific Statements Are Misleading</u>

In order to state a cause of action under Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder, a plaintiff asserting claims against an issuer's auditor must allege that in connection with the purchase or sale of securities, the defendant made a misrepresentation or omission of a material fact, with the requisite scienter, on which the plaintiff relied, that proximately caused the plaintiff's injury.  In pleading each of those required elements, a plaintiff must meet the stringent pleading requirements of the PSLRA and Rule 9(b) to overcome an appropriate motion to dismiss.  <u>See</u> <u>In re Stone & Webster, Inc. Sec. Litig.</u>, 253 F. Supp. 2d 102, 111 (D. Mass. 2003) (dismissing 10(b) claim against auditor) ("S&W").

4

Consistent with the PSLRA and preexisting strict pleading standards for fraud in this circuit, "'[A] complaint alleging securities fraud 'must specify (1) the statements that the plaintiff contends were fraudulent, (2) the identity of the speaker, (3) where and when the statements were made, and (4) why the statements were fraudulent.'" S&W, 253 F. Supp. 2d at 131 (citation omitted).[8] Where the allegations do not set forth "'facts that show exactly why the statements or omissions were misleading,'" dismissal is mandatory. Id. at 120 (quoting Greebel v. FTP Software., 194 F.3d 185, 193-94 (1st Cir. 1999) (emphasis added).

**B.    Under This Circuit's Strict PSLRA Pleading Standards Plaintiffs' Conclusory Allegations Fail To Allege With The Requisite Particularity Any False Statements _Attributable To PwC_**

PwC's inclusion in this case is plainly an after-thought -- indeed, nearly all of Plaintiffs' 115-page Complaint is predicated upon statements made by other defendants, excerpted from press releases, analyst reports and unaudited financial statements that have nothing to do with PwC. However, in addressing Plaintiffs' claim against PwC, the court must consider only those statements that PwC is alleged to have made concerning the 2000 financial statements. S&W, 253 F. Supp. 2d at 131 (fraud claims against auditor dismissed because "in addressing the plaintiffs' claims against [the outside auditor] I must consider only those statements that [the outside auditor] is alleged to have made [its audit opinions].") Remarkably, Plaintiffs fail to identify a material misstatement in any financial statement audited by PwC -- an elementary ingredient for a claim of accounting fraud. See In Re ICN Pharm., Inc. Sec. Litig., 299 F. Supp. 2d 1055, 1067 (C.D. Cal. 2004) (dismissing outside auditor and noting that "[m]ost important, plaintiffs do not state the 'approximate amount by which revenues and earnings were

---

[8]    "Consistent with Fed. R. Civ. P. 9(b), the complaint must set forth specific facts that make it reasonable to believe that defendant[s] knew that a statement was materially false or misleading. The rule requires that the particular times, dates, places or other details of the alleged fraudulent involvement of the actors be alleged." Segue, 106 F. Supp. 2d at 165. (internal quotations and citations omitted)

5

overstated' -- a necessary 'basic detail' in accounting fraud allegations.") (citing, inter alia,

Greebel v. FTP Software, Inc., 194 F.3d 185 (1st Cir. 1999).

In addition to alleging that PwC's unqualified audit opinion in Organogenesis'

Form 10-K for 2000 was false or misleading (the crux of Plaintiffs' allegations as to PwC), the

Complaint conclusorily alleges the following statements, insufficient as a matter of law under the

particularity requirements of Rule 9(b) and the PSLRA:

> [PwC] . . . failed to alert investors . . . that, throughout the Class Period,
> the Company lacked the ability to fund operations through product sales,
> or that Organogenesis was actually losing money on each sale of Apligraf
> due to the [] terms . . . of the Novartis marketing agreement . . . It was only
> after the end of the Class period, after the Company had finally disclosed
> that it was impossible to fund operations with product sales that [PwC]
> belatedly issued a "going concern opinion" . . . an opinion which should
> have been in place since the inception of the Class Period. (¶ 12(d)- ¶ 13.)

No facts are alleged showing PwC's awareness of this information, when or how

it allegedly became aware of it, or why this information, if known, would have made the audit

opinions issued by PwC misleading at the time.  No facts are specifically alleged, either about

what was known by PwC in November 1999 at the inception of the purported class period, or

thereafter.  No facts are alleged -- assuming arguendo Plaintiffs' allegation -- about what PwC

"knew" at year-end 1998, the time when PwC would need to know such facts in order to put a

going concern opinion "in place [at] the [November 1999] inception of the class period." (¶ 13.)

###### 1.    Plaintiffs Fail To Plead Any Facts Suggesting That PwC's Audit Opinion On The 2000 Financial Statements Was False Or Misleading

The only allegedly fraudulent statements made by PwC are the statements found

in PwC's standard one-paragraph audit report concerning the audited financial statements and

included in Organogenesis' Form 10-K for fiscal year 2000 (¶ 114; ¶ 116(n); ¶¶185-186):

> Defendant [PwC's] certification of the Company's financial statements [in March,
> 2001] was materially misleading and incomplete because it failed to disclose that,

6

according to the Confidential Arcari Document, PricewaterhouseCoopers' confidence in the representations of the senior officers and directors of Organogenesis had been eroded and that the Company had lost credibility in the eyes of PricewaterhouseCoopers. (¶ 116(n).)

       \*     \*     \*

[PwC's] opinions, which represented that Organogenesis' 2000 year-end financial statement was presented in conformity with GAAP, were materially false and misleading because [PwC] knew that it was required to adhere to each of the herein described standards and principles of GAAS . . . [PwC], in issuing its unqualified opinions, knew or recklessly disregarded the fact that by doing so it was engaging in gross departures from GAAS, thus making its opinions false, and issued such certifications knowing or recklessly disregarding that GAAS had been violated. (¶ 185.)

       \*     \*     \*

[PwC] knew or recklessly disregarded facts that indicated that it should have: (a) disclaimed or issued adverse opinions on Organogenesis' 2000 year-end financial statements; or (b) withdrawn, corrected or modified its opinion for the year ended December 31, 2000. (¶ 186.)

However, Plaintiffs fail to plead -- nor can they plead -- any facts sufficient to indicate why the audit opinion <u>for</u> <u>fiscal</u> <u>year</u> <u>2000</u> was false or materially misleading.  In sum, the bulk of Plaintiffs' allegations as to why PwC's audit opinion was purportedly false or misleading concern purported events ("red flags") that allegedly occurred close to the end or even after the audits at issue -- <u>i.e.</u>, after audit work on the 2000 financials was complete, or even well after the audit report itself.  Plaintiffs cannot state a claim for securities fraud based upon statements that are alleged in no way to have been false or misleading <u>when</u> <u>made</u>.  "Under such circumstances, a claim of fraud must fail."  <u>Guerra v. Teradyne Inc.</u>, No. Civ. A. 01-11789-NG, 2004 WL 1467065, at \*9 (D. Mass. Jan. 16, 2004) (Ex. A) (recommending dismissal of 10(b) claim where plaintiffs failed to plead alleged false representations with particularity); <u>Fitzer v. Sec. Dynamics Tech.</u>, 119 F. Supp. 2d 12, 38-39 (D. Mass. 2000) (dismissing securities fraud complaint where plaintiffs failed to plead why statements were fraudulent).

### 2. Plaintiffs Fail To Particularize How PwC's Conduct Departed From GAAS

Plaintiffs' claim that PwC "knew or recklessly disregarded the fact that [in issuing its opinions] it was engaging in gross departures from GAAS, thus making its opinions false." (¶ 185).  But this is a conclusion, not an allegation of fact.  Conclusory allegations of GAAS violations do not satisfy Rule 9(b) and the PSLRA.  S&W, 253 F. Supp. 2d at 133 (holding that plaintiffs failed to adequately plead GAAS violations where "each . . . claim [] of a GAAS violation [] is stated in completely conclusory terms"); See also In re Hayes Lemmerz Int'l, Inc. Equity Sec. Litig., 271 F. Supp. 2d 1007, 1024 (E.D. Mich. 2003) (dismissing 10(b) claim against auditor where complaint failed to say why or how KPMG failed to adequately supervise audit in violation of GAAS).  As the side-by-side chart attached hereto at Tab A plainly demonstrates, the Complaint's list of alleged auditing violations fails to particularize how PwC's conduct deviated from GAAS.

### 3. The Purported Red Flags Concerning Internal Controls Do Not Support A Claim That PwC's Audit Report Was False Or Misleading

Plaintiffs attempt to allege facts suggesting that PwC was aware that its unqualified audit opinion was false with the following three purported "red flags":

- According to the "confidential" document, Erani's alleged failure to sign audit confirmations in March 2001 caused a "'loss of the company's credibility with PwC,'" and by March 2001, "[PwC's] 'confidence in managements [sic] and the Boards [sic] representations' had been 'eroded.'" (¶ 174(a-b));

- According to the "confidential" document, as a result of the Company's violation of a commitment to PwC in connection with the exercise of the Novartis put by May 2001, PwC informed defendants that it would not support future financing initiatives and since then PwC has refused to grant any consents or comfort letters (¶ 174(c)); and

- "PwC knew of, or recklessly disregarded, the terms of the Novartis marketing agreement, which was economically unsustainable for Organogenesis given that Organogenesis was losing money on every unit of Apligraf that it produced and that this [sic] the Company lacked the ability to find operations through product sales." (¶ 174(d)).

8

Plaintiffs claim that "given these 'red flags,' PwC knew or recklessly disregarded the fact that the company suffered from a chronic and systemic lack of internal controls such that its financial reporting was inherently corruptible . . . resulting in materially false and misleading financial statements during the Class Period."  (¶ 174(e).)  But such allegations are nothing more than a patent attempt to plead impermissible "fraud by hindsight."  In any event, as a matter of law, "internal controls" are <u>not</u> <u>material</u> to the audit report itself.  <u>In re Van Wagoner Funds, Inc. Sec. Litig.</u>, No. C 02-03383, 2004 WL 2623972, at *5 (N.D. Cal. Jul. 27, 2004) (Ex. B) (dismissing 10(b) complaint against auditor, noting that "under GAAS, even if there were internal control problems in the past that amounted to material weaknesses, [the auditors] were only required to report such problems to management . . . [the auditors] had no duty to report such in prior audit reports.")

**C.    None Of The So-Called "Red Flags" Allege Facts**
       **<u>Indicating Why Or How PwC's 2000 Audit Opinion Was Inaccurate</u>**

**1.    <u>The First Alleged "Red Flag" Is Vague And Conclusory</u>**

The first purported "red flag," from the so-called "confidential" document, is defendant Erani's alleged failure to sign audit confirmations in March 2001 "'relating to his holdings of the Company's convertible debt.'"  (¶ 111; <u>see</u> <u>also</u> ¶ 174(a-b).)  This purported "red flag" allegedly "led to a 'loss of the company's credibility' with PwC" and an "'ero[sion]'" of PwC's "'confidence in managements [sic] and the boards [sic] representations'" (<u>Id.</u>)  Plaintiffs' vague allegation does not identify what management or board representations in what year as to what audit were involved, and fails to even allege that any of these purported representations were ever improperly relied upon, or what audit procedures were not implemented, if any.

Indeed, Plaintiffs' allegation of this "red flag" pleads no facts indicating that the 2000 financials were in question at the time PwC signed off on them -- or even after PwC signed

off on them, and pleads no facts indicting that PwC knew or could have known that this

purported "red flag" could or would affect the financial results upon which PwC opined.  No

facts are alleged concerning how this alleged "erosion" in confidence affected the accuracy of the

financial statement upon which PwC opined.  Simply put, plaintiffs plead no facts, let alone with

any of the requisite particularity, indicating that this purported "red flag" had any connection to

the accuracy of the financial statements that formed the basis for PwC's audit opinion, or that

PwC failed to otherwise obtain any such information from independent sources, or that PwC was

required but failed to perform alternative procedures sufficient to reduce audit risk to an

appropriate level.

2.    **The Second Alleged "Red Flag" Is
Irrelevant: It Post-Dates The Audit Opinion
And Is Contradicted By The Company's SEC Filings**

The next "red flag" (also based solely on the so-called "confidential" document)

concerns a purported violation of a commitment to exercise the "first tranche" of the Novartis put

option by May 2001 -- months after PwC's audit opinion in March 2001.  (¶ 174(c).)  Because

this information did not exist at the time of the opinion, this purported "red flag" is irrelevant.

See S&W, 253 F. Supp. 2d at 134 (holding that red flags limited to the latter time frame of the

Class Period were therefore irrelevant to the audit reports concerning earlier periods); Fidel v.

Farley, 392 F.3d 220, 229 (6th Cir. 2004) (finding that a red flag that "occurred well after the

audit report had been issued"…"do[es] not create an inference of scienter with regard to Ernst &

Young's audit of 1998 financial data.")

The purported statements in the "confidential" document also are flatly

contradicted by the Company's SEC filings (which this Court can, and should, consider on this

10

motion).[9]  As disclosed in the Company's 2001 Form 10-K filed with the SEC (and cited in the

Complaint (¶ 155)), Organogenesis did in fact exercise the "first tranche of the Novartis put

option" (or $10,000,000 security option) on June 29, 2001. (¶ 174(c); 2001 10-K excerpt at Ex.

C.)  Plaintiffs plead no facts indicating why or how the one-month difference between May and

June 2001 impacted the Company's financial statements.

Further, the assertions of the "confidential" document that PwC "refused to

support any future financing initiatives by the Company" and "'refused to grant any consents or

comfort letters'" are demonstrably untrue.  (¶ 174(c).)[10]  PwC issued multiple consents

subsequent to May 2001 (including consents filed with SEC filings cited in the Complaint) in

connection with financing initiatives (stock offerings) undertaken by the Company.  (Excerpts of

Form S-3 filed 10/31/01, Form S-3/A filed 11/20/01, Form S-3/A filed 1/30/02 (¶ 148), Form S-

3/A filed 2/7/02, and 2001 Form 10-K filed 4/16/02 (¶ 155) at Ex. D.)

### 3.  The Third Alleged "Red Flag" Is Wholly Conclusory And Is Plainly Contradicted By Express Disclosures In The Company's SEC Filings

The third purported "red flag" -- that PwC "knew, or recklessly disregarded" the

terms of the Novartis marketing agreement -- is wholly conclusory.  Plaintiffs allege no facts

suggesting that the terms (or revised terms as of January 2001) of the agreement were

economically unsustainable, nor do they allege that PwC failed to take this factor into account

---

[9]    Guerra, 2004 WL 1467065, at * 28 ("Records filed with the SEC . . . may [be] consider[ed]
in ruling on a motion to dismiss.") (Ex. A.)

[10]   The Complaint also alleges that PwC "never publicly disclosed the company's 'hindering' of
the process for obtaining critical funding or its own refusal to support the Company's future
financing initiatives." (¶ 12 (c).)  PwC certainly had no duty to disclose information that was
not true, as it did support future financing initiatives.  Moreover, the company exercised the
put in June 2001.  Plaintiffs fail to allege how the one month delay had any impact on the
Company's financial statements or even allege that the numbers in the financial statements
that were the basis for this opinion were even incorrect.

when preparing its audit report, or even why the terms of the agreement should have rendered PwC unable to issue an unqualified opinion. As such, this so-called "red flag" is insufficient on its face to allege that PwC's audit opinion was false or misleading.[11]

Plaintiffs further fail to acknowledge that the crux of this "red flag" -- that the terms were economically unsustainable because Organogenesis "was losing money of every unit of Apligraf that it produced" and that "the Company lacked the ability to fund operations through product sales"(¶ 174 (d)) -- was plainly disclosed in the 2000 10-K: The Company "ha[s] incurred operating losses in every year of [its] existence" and "will need to raise additional funds." (Excerpt of 2000 10-K at Ex. E at 5.) In addition, the 10-K plainly disclosed that product sales alone were not and would not be enough to fund operations:

> . . . we believe existing working capital at December 31, 2000, together with the proceeds of product and other revenues in 2001 and proceeds available from exercising a portion or all of a $20,000,000 equity security put with Novartis, which is at our discretion, will be sufficient to finance operations through at least the first quarter of 2002. (Ex. E at 10.)

**D.    Plaintiffs Fail To Plead Any Facts Showing
That PwC Should Have Subsequently Withdrawn Or
Modified Its Opinion On The Year-End 2000 Financials**

Plaintiffs fail to plead any reason why PwC should have subsequently withdrawn or modified its March 2001 unqualified opinion. Plaintiffs' purported GAAS violations and "red flags" are insufficient to plead that PwC's issuance of the audit opinion was false or misleading in the first place, let alone after the fact. Indeed, the only red flag that allegedly occurred

---

[11]    See, e.g., Fidel, 392 F.3d at 229 ("even with regard to red flags that may have occurred in 1998, there is no indication that Ernst & Young knew or could have known that these red flags affected the 1998 financial results . . . [plaintiffs] pleaded no facts with particularity suggesting . . . that Ernst & Young knew that the number of actual returns had increased over the previous year); S&W, 253 F. Supp. at 133 (holding scienter allegations insufficient where plaintiffs "fail[ed] to allege, in other than conclusory terms, that PwC was even aware of some of the alleged red flags").

subsequent to that opinion concerns the purported failure to exercise the put option in May 2001 -- the company exercised that option in June 2001. Plaintiffs fail to plead any reason why or how the difference between May and June 2001 would have impacted PwC's audit opinion issued months before. Indeed, Plaintiffs fail to plead that those year 2000 financial statements -- the basis for PwC's March 2001 unqualified opinion -- are even incorrect. Plaintiffs' allegations simply are devoid of any allegations indicating why or how the alleged GAAS violations and red flags should have required PwC to subsequently withdraw or modify its audit report.

## II.    THE COMPLAINT FAILS TO PLEAD FACTS SUFFICIENT TO RAISE ANY INFERENCE -- LET ALONE THE REQUISITE STRONG INFERENCE -- THAT PWC ACTED WITH SCIENTER

All of the foregoing dispositive deficiencies aside,[12] this Complaint should be dismissed for the independent reason that it fails to plead <u>any</u> facts sufficient to raise a strong inference "that the accounting practices were so deficient that the audit amounted to <u>no audit at all</u> such that no reasonable accountant would have made the same decision if confronted with the same facts." <u>Raytheon</u>, 157 F. Supp. 2d at 154 (dismissing 10(b) claim against an auditor).[13] Indeed, as this Court has recognized, "[c]ourts assessing claims against independent auditors under the PSLRA have placed the bar high:"

> For recklessness on the part of a non-fiduciary accountant to satisfy securities fraud scienter, such recklessness must be conduct that is highly

---

[12]   This Court has stated that if Plaintiffs "cannot plead facts tending to show why a statement is false or misleading it follows that they have not alleged facts giving rise to a strong inference of scienter . . . " <u>S&W</u>, 253 F. Supp. 2d at 133.

[13]   <u>See</u> <u>also</u> <u>S&W</u>, 253 F. Supp. 2d at 133 (dismissing Section 10(b) claim for failing to meet the stringent standard of pleading <u>scienter</u> against an auditor); <u>PR Diamonds, Inc. v. Chandler</u>, 364 F.3d 671, 694 (6th Cir. 2004) (affirming dismissal of 10(b) claim against auditor and holding that "[t]o allege that that an independent accountant or auditor acted with scienter, the complaint must identify specific, highly suspicious facts and circumstances available to the auditor at the time of the audit and allege that these facts were ignored, either deliberately or recklessly." (internal quotations and citations omitted))

unreasonable, representing an extreme departure from the standards of ordinary care. It must, in fact, approximate an actual <u>intent to aid in the fraud</u> being perpetrated by the audited company. <u>Id.</u> (citation omitted).

Plaintiffs assert that PwC acted with scienter based on conclusory allegations that PwC: (i) had access to Organogenesis' confidential internal information (¶ 173); (ii) committed various GAAS violations (¶ 176-183); and (iii) PwC disregarded so-called "red flags" (¶ 174). None of those allegations supports the requisite strong inference of scienter.

A.    **Plaintiffs' Allegation Of "Access" To "Confidential Business Information" Is Insufficient To Show PwC's Alleged Scienter**

Plaintiffs attempt to allege that PwC acted with scienter with the generic allegation that "PwC and its personnel were regularly present at Organogenesis and had intimate knowledge of Organogenesis' financial reporting practices based on its access to confidential internal corporate, financial, operating and business information." (¶ 172.) Plaintiffs then conclusorily assert that "[w]ith knowledge of Organogenesis' true financial condition or in reckless disregard thereof, PwC certified the materially false and misleading financial statements . . . and provided unqualified Independent Auditors' Reports . . . without [which] the fraud alleged above could not have been perpetrated." (¶ 173.)

However, numerous courts -- including this Court -- have repeatedly held that such unsupported allegations based merely on an outside auditor's role as the company's auditor do not satisfy the strict requirement that Plaintiffs plead facts that give a "strong inference" that an independent auditor acted with <u>scienter</u>. <u>See</u> <u>S&W</u>, 253 F. Supp. 2d at 133-34 (dismissing Section 10(b) claim against auditor where allegation that auditor "'had continual access to and knowledge of . . . private and confidential corporate financial and business information'" was

insufficient because "'it might make every auditor liable in cases of securities fraud'") (quoting Kennilworth Partners L.P. v. Cendant Corp., 59 F. Supp. 2d 417, 429 (D.N.J. 1999)).[14]

As one court put it (just prior to dismissing 10(b) claims against an auditor): "This ["access to files" scienter] argument invites too much speculation to satisfy either the particularity or the strong inference requirements of the Reform Act."  Reiger v. PricewaterhouseCoopers LLP, 117 F. Supp. 2d 1003, 1012 (S.D. Cal. 2000), aff'd, DSAM Global Value Fund v. Altris Software, Inc., 288 F.3d 385 (9th Cir. 2002).

**B.    Conclusory Allegations Of GAAS Or GAAP
Violations Are Insufficient To Plead Auditor Scienter**

It is well-settled that allegations of a failure to conform to GAAP and GAAS, without more, are insufficient to plead scienter under Section 10(b) and Rule 10b-5.  See, e.g., S&W, 253 F. Supp. 2d at 133 ("'[W]ithout additional allegations of particular facts and circumstances[,] violations of GAAP and GAAS generally do not give rise to an inference of scienter.'" (quoting Raytheon, 157 F. Supp. 2d at 155).[15]  Plaintiffs do not plead anything "more."

**C.    Scienter Cannot Be Shown By Plaintiffs' Conclusory
Allegations That PwC Ignored Or Disregarded Purported "Red Flags"**

Plaintiffs fare no better in attempting to bolster their assertions of GAAS or GAAP violations by conclusorily alleging that PwC ignored or disregarded purported "red

---

[14]    See also Fidel, 392 F.3d at 229 (holding that allegations "that Ernst & Young had 'unfettered access' to documents and frequent meetings with management" are "'insufficiently concrete' to raise an inference of scienter."); Fin. Acquisition Partners, LP v. Blackwell,  No. Civ. A. 3:02-CV-1586-K, 2004 WL 2203253, at *23 (N.D. Tex. Sept. 29, 2004) (dismissing second amended complaint with prejudice in part for failure to plead scienter, noting that "[m]erely pleading that an auditor had access to the company's personal and business records does not adequately allege scienter") ( Ex. F.)

[15]    Van Wagoner Funds, 2004 WL 2623972, at *8 (granting auditor's motion to dismiss securities fraud claims and stating that "[v]iolations of GAAP or GAAS, standing alone, do not satisfy the particularity or strong inference requirements of the PSLRA because they provide no specific facts upon which a court can infer the state of mind of the accountant or its client." (citations omitted) (Ex. B.)

flags."  All but one of the purported "red flags" alleged concern events in 2001 (or even post-dating the audit work at issue or the audit report itself) and come from the mysterious "confidential" document.  These "red flags" -- the same red flags that are insufficient to plead any false or misleading statements by PwC -- are also, in any event, so vague and conclusory that they cannot support any inference of scienter.  See D.E. & J Ltd. P'ship v. Conaway, 284 F. Supp. 2d 719, 746 (E.D. Mich. 2003) (holding that "vague, fact-deficient allegations are not sufficient to establish a 'strong inference' of [auditor's] scienter.").

1.    **Vague Allegations Of A "Red Flag" -- Not Linked In Any Way To The Financial Statements At Issue -- Fail To Raise Any Inference That PwC Acted With Intent To Defraud**

Plaintiffs attempt to package the single purported failure of Erani to sign audit confirmations in March 2001 "'relating to his holdings of the Company's convertible debt'" (¶ 111) which allegedly caused a "'loss of the Company's credibility'" with PwC, and the "'ero[sion]'" of PwC's "'confidence in managements [sic] and the boards [sic] representations.'" (¶ 174(a-b).)  That convoluted and vague allegation fails to identify what management or Board representations in what year as to what audit were involved, nor do Plaintiffs even allege how this alleged "erosion" in confidence or "'loss of credibility'" affected the accuracy of the financial statement upon which PwC opined.  Plaintiffs plead no facts indicating that the 2000 financials were in question at the time PwC signed off on them -- or even after PwC signed off on them -- nor any facts indicating that PwC knew or could have known that this purported "red flag" could or would affect the financial results upon which PwC opined.

D.E. & J Ltd. P'ship, 284 F. Supp. 2d at 746, is instructive.  There, plaintiffs argued that scienter could be inferred from statements in letters of employees stating that the auditing firm was "'hesitant to pursue the [ ] issues [raised by the letter writers] or even question obvious changes in revenue and expense patterns' and 'had specific knowledge of [unspecified]

16

unacceptable accounting practices.'" <u>Id.</u>  The Court held that such "vague, fact-deficient

allegations are not sufficient to support a 'strong inference' of [the auditor's] scienter." <u>Id.</u>

Simply put, Plaintiffs here plead no facts, let alone with any of the requisite particularity,

indicating that this purported "red flag" had any connection to the accuracy of the financial

statements that formed the basis for PwC's audit opinion.

> **2.    A Purported Red Flag Post-Dating The
> Audit Report On The 2000 Financials Cannot Establish
> <u>That PwC Acted With Scienter In Certifying That Report</u>**

The next "red flag" alleged by Plaintiffs is a purported violation of a commitment

made by Organogenesis' management to PwC to exercise the first tranche of the Novartis put

option by May 2001. (¶ 174(c).)  In connection with this purported violation, Plaintiffs repeat the

demonstrably false assertions that since then PwC has "refused to support any future financing

initiatives" and "has refused to grant any consents or comfort letters."  (<u>Id.</u>)

Plaintiffs' allegation that PwC had no basis for issuing an unqualified audit

opinion in March 2001 (on the basis of facts that did not exist at the time of the opinion) -- and

did not even exist until May 2001 (months after its audit work and publication of that opinion) --

defies common sense.  As such, this purported "red flag" is irrelevant to the March 2001 audit

report.  <u>See</u> <u>S&W,</u> 253 F. Supp. 2d at 134 (D. Mass. 2003) (holding that red flags limited to the

latter time frame of the Class Period were therefore irrelevant to the audit reports at issue); <u>see

also</u> <u>Fidel</u>, 392 F.3d at 229 ("It appears that as far as Ernst & Young knew the 1998 financials

were not in question at the time that it signed off on them . . . one of the red flags, the $60

million in write-offs, occurred well after the audit report had been issued.")

Further, the purported statements in the "confidential" document are contradicted

by the Company's subsequent SEC filings -- which plainly disclose that Organogenesis exercised

the "first tranche" of the Novartis put in June 2001.  (Ex. C at 18.)  Plaintiffs plead no facts

indicating that the exercise of the put in June 2001 rather than May 2001 had any impact whatsoever on Organogenesis' financial statements. PwC also issued multiple consents subsequent to May 2001 in connection with financing initiatives. (Ex. D.) As such, to the extent that Plaintiffs contend that this "red flag" raises an inference of scienter with respect to that fact that PwC did not "withdraw[] correct[] or modif[y]" its March 2001 opinion on Organogenesis' 2000 financials, the allegation fails as a matter of law. (¶ 186.)

### 3. No Inference Of Scienter Is Warranted Due To Plaintiffs' Failure To Allege Why Or How The Third "Red Flag" Would Have Impacted PwC's Unqualified Audit Opinion

Plaintiffs conclusorily allege that "[PwC] knew, or recklessly disregarded, the terms of the Novartis marketing agreement," which was purportedly "economically unsustainable for Organogenesis given that Organogenesis was losing money on every unit of Apligraf that it produced and that this the [sic] Company lacked the ability to fund operations through product sales." (¶ 174(d).) Indeed, the underlying premise of this allegation is that "due to the adverse terms of the marketing agreement with Novartis" defendants "lacked any reasonable basis to claim . . . that the Company could maintain profitability or even remain a viable entity in the foreseeable near-term." (¶¶ 8, 12(d), 60.) But Plaintiffs fail to allege why or how this purported "red flag" -- the terms of the Novartis marketing agreement -- should have impacted PwC's audit opinion.[16] Specifically, Plaintiffs simply fail to allege, other than in the most conclusory fashion, that the terms of this agreement were economically unsustainable, or in any event, that PwC failed to take the terms of this agreement into account in issuing its audit report, or how the terms of this agreement would have impacted the financial statements upon which PwC opined -- e.g.,

---

[16] Such allegations are insufficient to raise an inference of scienter. See Fin. Acquisition Partners, 2004 WL 2203253, at *22 (granting auditor's motion to dismiss 10(b) claim where plaintiffs failed to allege why purported "red flags" should have caused auditor to issue a "going concern" opinion.) (Ex. F.)

why the terms of this agreement should have caused PwC to issue an adverse, going concern, or

no opinion on the 2000 year-end financial statements.

      Recently, the Northern District of Texas dismissed with prejudice 10(b) claims

against an auditor based upon the auditor's alleged failure to issue a "going concern" opinion

disclosing that the company was in danger of not being able to continue as an ongoing entity.

Fin. Acquisition Partners, 2004 WL 2203253, at *12-24.  (Ex. F.)  There, the plaintiffs alleged

that because "the company suffered large operating losses for three consecutive years, had been

selling off its assets to raise capital, and had violated its loan covenants and was actively seeking

new sources of funding" the auditor was required to issue a going concern qualification.  Id. at

*19.  The court held that plaintiffs failure to plead "specific facts demonstrating that these factors

would likely prevent [the company] from continuing as a viable company . . . alone defeats their

claim."  Id.  The court further held that the company's public disclosure of those very facts

plaintiffs did plead "undermine[s] the existence of any inference of an intent to deceive, let along

[sic] a strong inference."  Id. at *22; see also S&W (dismissing complaint against auditor where

"red flags" were disclosed and accounted for in company's financial statements).

      Significantly, the plaintiffs' alleged "red flags" that purportedly should have

caused Deloitte to value assets differently and issue a going concern opinion -- such as

increasing past due rate of loans in the company's loan portfolio and the potential loss of

warehouse financing.  However, the court found that the complaint "does not allege why that is

the case."  Id. (emphasis added).  The court further found that  "[a]lso absent from [the

complaint] . . . are any specific factual allegations showing . . . that [the company] had no chance

to obtain the warehouse financing facility [that the company] acknowledge[d] that it needed to

operate."  Id.  No inference of scienter is raised where, as here, previously disclosed possible

financial difficulties actually come to pass:

19

"[The] Complaint only alleges that what [the company] said could happen actually happened: the percentage of past-due loans continued to increase and it was unable to obtain warehouse financing, thus causing the value of its retained interests . . . to decrease.  Such allegations are not sufficient to support an inference of scienter."  Id.

This case is on all-fours with Fin. Acquisition Partners.  Plaintiffs do not allege why the terms of the agreement warranted a going concern or adverse opinion, or that the company had no chance to achieve profitability.  Further, the Company disclosed in the fiscal 2000 Form 10-K that it had incurred operating losses in every year of its existence, had not achieved profitability and expected to continue to incur net losses through at least the first half of 2002, and that the Company "will need to raise additional funds" -- i.e., that product sales alone were not and would not be enough to fund operations.  (Ex. E at 10.)  Plaintiffs' assertion that the agreement's terms should have been a "red flag" to PwC -- and, as such, raises a strong inference of scienter -- cannot stand up where the fiscal year 2000 Form 10-K disclosed that the company's ability to fund operations was dependent on obtaining additional funding, not product sales.

### Conclusion

For the foregoing reasons, PwC should be dismissed with prejudice.

Dated: January 14, 2005
       Boston, Massachusetts

Respectfully submitted,

/s/ James R. Carroll
James R. Carroll (BBO #554426)
Matthew J. Matule (BBO #632075)
SKADDEN, ARPS, SLATE,
   MEAGHER & FLOM LLP
One Beacon Street
Boston, Massachusetts  02108
(617) 573-4800

Counsel for Defendant
PricewaterhouseCoopers LLP