**Exhibit B**

Westlaw.

Slip Copy  
2004 WL 2623972 (N.D.Cal.)  
(Cite as: 2004 WL 2623972 (N.D.Cal.))

Page 1

Only the Westlaw citation is currently available.

United States District Court,  
N.D. California.

In re VAN WAGONER FUNDS, INC. Securities Litigation

No. C 02-03383 JSW.

July 27, 2004.

Robert Kennedy O'Reilly, Guri Ademi, Shpetim Ademi, Ademi & O'Reilly, LLP, Cudahy, WI, Azra Z. Mehdi, Lerach Coughlin Stoia & Robbins LLP, Randi D. Bandman, Milberg Weiss Bershad Hynes & Lerach LLP, San Francisco, CA, Michael E. Moskovitz, Much Shelist Freed Denenberg Ament & Rub, Chicago, IL, Lori G. Feldman, Milberg Weiss Bershad & Schulman LLP, Seattle, WA, for Plaintiffs.

Peter K. Richardson, Michael Best & Friedrich, LLP, Matthew J. Flynn, Cristina D. Hernandez-Malaby, Rachel Amanda Schneider, Quarles & Brady LLP, Milwaukee, WI, Joshua Benjamin Vinograd, Matthew A. Hodel, Michael S. Leboff, Peter M. Stone, Jay C. Gandhi, Paul, Hastings, Janofsky & Walker LLP, Costa Mesa, CA, Kimberly Bliss, Sarah A. Good, Howard, Rice, Nemerovski, Canady, Falk, San Francisco, CA, Shirish Gupta, Mayer Brown Rowe & Maw, Donald M. Falk, Mayer, Brown & Platt, Palo Alto, CA, Bennett E. Kaplan, Daniel James Delaney, Michele L. Odorizzi, Mayer Brown Rowe & Maw, Stanley J. Parzen, Mayer Brown & Platt, Chicago, IL, for Defendants.

ORDER GRANTING ERNST & YOUNG'S MOTION TO DISMISS

WHITE, J.

*1 Now before this court is the motion to dismiss the complaint of plaintiffs Stephanie and Richard Casolari ("Casolaris") for failure to satisfy the heightened pleading requirements of the Private Securities Litigation Reform Act ("PSLRA") and for failure to state a claim upon which relief can be granted under Federal Rule of Civil Procedure 12(b)(6). Having carefully reviewed the parties' papers and considered their arguments and relevant legal authority, and good cause appearing, the Court hereby GRANTS Ernst and Young's ("E & Y") motion to dismiss with leave to amend.

FACTUAL BACKGROUND

Van Wagoner Funds is an open-end management investment company. Van Wagoner Funds managed several mutual funds. The valuations of restricted securities held in some of these funds are at issue in this case. E & Y is an independent accountant that served as Van Wagoner Funds' auditor and accountant throughout the class period of February 28, 2000 through August 21, 2001. (Amended Consolidated Complaint ("ACC") ¶ 67.)

During the class period, E & Y conducted audit reports and certified year-end financial statements for Van Wagoner Funds' 1999 and 2000 annual reports. [FN1] (*Id.*) Furthermore E & Y consented to the incorporation by reference of their aforementioned audit reports in Van Wagoner Funds 2000 and 2001 registration statements. (ACC ¶¶ 158, 167.) In the audit reports E & Y represented: (1) its audit of the financial statements had been conducted in accordance with Generally Accepted Auditing Standard ("GAAS"); (2) the resulting audited financial statements were presented in accordance with Generally Accepted Accounting Principles ("GAAP"); and (3) the financial statements accurately reflected the financial position of each of the Van Wagoner Funds at the end of the year, the results of their operations for the year then ended, and the changes in their net assets. (ACC ¶ 67.)

> FN1. The Court GRANTS E & Y's requests for judicial notice as it pertains to Van Wagoner Funds' Securities and

Slip Copy
2004 WL 2623972 (N.D.Cal.)
(Cite as: 2004 WL 2623972 (N.D.Cal.))

Page 2

Exchange Commission ("SEC") filings. Documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered in ruling on a Rule 12(b)(6) motion to dismiss. Such consideration does not convert the motion to dismiss into a motion for summary judgment. *See Branch v. Tunnell,* 14 F.3d 449, 454 (9th Cir.1994); *United States v. Ritchie,* 343 F.3d 903, 908 (9th Cir.2003). The contents of SEC filings are alleged in the Casolaris' complaint and no party questions their authenticity.

Van Wagoner Funds' financials statements for 1999 and 2000 contained representations that the Van Wagoner Funds' restricted securities were "valued at fair value as determined in good faith." (ACC ¶¶ 152, 155(a), 158, 160(a), 163, 165(a), 167, 169(a).) However, the Casolaris allege the Van Wagoner Funds were not "valued at fair value as determined in good faith" because the Van Wagoner Funds valued restricted securities at cost when there were factors that supported a change in valuation including, among other things, the issuing company's bankruptcy, withdrawn initial public offering, change in business plan, announcement of layoffs, and the worsening of the general conditions. (ACC ¶¶ 155(d), 160(d), 165(d), 169(d).)

On July 24, 2003, the Casolaris filed this lawsuit alleging that E & Y participated in disseminating false or misleading information by falsely representing: (1) they conducted their audit in conformance with GAAS; (2) the Van Wagoner Funds financial statements were in conformance with GAAP; and (3) the financial statements accurately reflected the financial position of each of the Van Wagoner Funds at the end of the year, the results of their operations for the year then ended, and the changes in their net assets. (ACC ¶ 67.) The Casolaris allege such misrepresentations aided the Van Wagoner Funds in artificially inflating the net asset values ("NAV") of each the Van Wagoner Funds. (*Id.*) [FN2]

> FN2. The Court GRANTS E & Y's motion to strike paragraphs 45 and 268 of the ACC pursuant to Federal Rule of Civil Procedure 12(f) because such allegations are immaterial.

ANALYSIS

I. Legal Standards.

A. Motion to Dismiss.

*2 A motion to dismiss for failure to state a claim is viewed with disfavor and is rarely granted. *Gilligan v. Jamco Dev. Corp.,* 108 F.3d 246, 249 (9th Cir.1997). A complaint should not be dismissed for failure to state a claim unless it appears beyond a reasonable doubt the plaintiff can prove no set of facts entitling her to relief. *Conley v. Gibson,* 355 U.S. 41, 45-46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). In considering a motion to dismiss a court must: (1) accept as true all of the factual allegations in the complaint, (2) construe the complaint in the light most favorable to the plaintiff, and (3) determine whether any set of facts would entitle the plaintiff to relief. *Cahill v. Liberty Mut. Ins. Co.,* 80 F.3d 336, 337-38 (9th Cir.1996).

B. Leave to Amend.

Under Federal Rule of Civil Procedure 15, leave to amend shall be freely given when justice so requires. In the Ninth Circuit, this policy is "to be applied with extreme liberality." *Eminence Capital, LLC v. Aspeon, Inc.,* 316 F.3d 1048, 1051 (9th Cir.2003). "Although there is a general rule that parties are allowed to amend their pleadings, it does not extend to cases in which any amendment would be an exercise in futility, ... or where the amended complaint would also be subject to dismissal." *D. Steckman v. Hart Brewing, Inc.,* 143 F.3d 1293, 1295 (9th Cir.1998) (citations omitted).

Specific to private securities lawsuits, a court may dismiss a plaintiff's claim for failure to meet the pleading requirements of the Private Securities Litigation Reform Act ("PSLRA"). "In any private action ..., the court shall, on motion of any defendant, dismiss the complaint if the requirements of paragraph (1) [FN3] and (2) [FN4] are not met." 15 U.S.C. § 78i-4(b)(3)(A). However, "[d]ismissal with prejudice and without leave to amend is not appropriate unless it is clear on de novo review that the complaint could not be saved by amendment." *Eminence Capital,* 316 F.3d at

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy
2004 WL 2623972 (N.D.Cal.)
(Cite as: 2004 WL 2623972 (N.D.Cal.))

Page 3

1051 (citing *Chang v. Chen,* 80 F.3d 1293, 1296 (9th Cir.1996)). Because the standards in the PSLRA are high, "[a]dherence to these principles is especially important in the context of the PSLRA." *Id.* Furthermore, the Ninth Circuit has held that a district court's denial of a request for leave to amend in a PSLRA case without articulating why dismissal should be with prejudice is an abuse of discretion. *Id.*

> FN3. Paragraph (1) states that "complaint shall specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed." 15 U.S.C. § 78u-4(b)(1)(B).

> FN4. Paragraph (2) states that the PSLRA requires that the plaintiff "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." 15 U.S.C. § 78u-4(b)(2). The required state of mind for securities fraud claims is "that the defendant made false or misleading statements either intentionally or with deliberate recklessness or, if the challenged representation is a forward looking statement, with 'actual knowledge ... that the statement was false or misleading." ' *In re Vantive Corp. Sec. Litig.,* 283 F.3d 1079, 1085 (9th Cir.2002) (citing 15 U.S.C. § 78u-5(c)(1)(B)(i)).

II. Section 11 of the Securities Act of 1933 Claim Is Dismissed.

A. Legal Standards.

The more heightened particularity requirements of Federal Rule of Civil Procedure 9(b) apply to claims brought under Section 11 of the Securities Act of 1933 ("Section 11") when they are "grounded in fraud." *In re Stac Elec. Sec. Litig.,* 89 F.3d 1399, 1404-05 (9th Cir.1996). A claim is "grounded in fraud" if the plaintiff alleges a unified course of fraudulent conduct and relies entirely on that course of conduct as the basis of his or her claim. *Vess v. Ciba-Geigy Corp. USA,* 317 F.3d 1097, 1104 (9th Cir.2003).

*3 The Casolaris, in their brief and oral argument, contend that their Section 11 claim is not subject to the heightened pleading requirements of Rule 9(b) because they expressly disclaimed and disavowed all allegations of fraud in connection with the Section 11 claim. (ACC ¶ 284.) However, the Ninth Circuit has found that a nominal disclaimer of allegations of fraud in respect to a plaintiff's Section 11 claim is unconvincing where the gravamen of the complaint is plainly fraud and no effort is made to show any other basis for the claims. *Stac Elec.,* 89 F.3d at 1405 n. 2. In their Section 11 and Section 10(b) claims, the Casolaris repeat and reallege all factual allegations made before such claims in the complaint. (ACC ¶¶ 284, 308.) The preceding factual allegations present a unified course of fraudulent conduct which the Casolaris have relied on as the basis of their Section 11 claim, thus grounding such claim in fraud. *See Vess,* 317 F.3d at 1104.

According to Federal Rule of Civil Procedure 9(b), "in all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." A pleading is sufficient under Rule 9(b) if it identifies the circumstances constituting fraud so a defendant can prepare an adequate answer from the allegations. *Moore v. Kayport Package Express, Inc.,* 885 F.2d 531, 540 (9th Cir.1989). Statements of the time, place and nature of the alleged fraudulent activities are sufficient, but mere conclusory allegations of fraud are not. *Id.* A plaintiff must set forth a specific description of the representations made and explain why they are false and misleading. *In re GlenFed, Inc. Sec. Litig.,* 42 F.3d 1541, 1548 (9th Cir.1994).

B. Material Misrepresentation Is Not Pled with Particularity.

The Casolaris contend that the Van Wagoner Funds' 2000 and 2001 registration statements contained untrue statements of material facts and that they and other members of the class purchased shares of the Funds during the class period without knowledge of the material untrue statements. (ACC ¶¶ 288, 291.) The Casolaris specifically allege

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy
2004 WL 2623972 (N.D.Cal.)
(Cite as: 2004 WL 2623972 (N.D.Cal.))

Page 4

the Van Wagoner Funds' 1999 and 2000 Annual Reports that were incorporated by reference into the 2000 and 2001 registration statements contained affirmative misrepresentations that the Funds were "valued at fair value as determined in good faith." (ACC ¶¶ 152, 155(a), 158, 160(a), 163, 165(a), 167, 169(a).) The Casolaris further allege that defendant E & Y consented to the incorporation of its audit reports contained in the 1999 and 2000 Annual Reports in Van Wagoner Funds' 2000 and 2001 registration statements. (ACC ¶ 289(d).) The Casolaris contend that E & Y materially misrepresented in audit reports of Van Wagoner Funds' 1999 and 2000 financial statements that the financial statements:

> present fairly, in all material respects, the financial position of the Van Wagoner Funds ..., the results of operations, the changes in its net assets and the financial highlights for the year then ended in conformity with accounting principles generally accepted in the United States.

*4 (ACC ¶¶ 152, 163.) The Casolaris further contend that E & Y also materially misrepresented that they conducted their audit report in conformance with GAAS. (Id.)

The Casolaris contend E & Y's representations were false because the Casolaris believe the Van Wagoner Funds were not valuing the Van Wagoner Funds' holdings of restricted securities at fair value, in good faith, thereby causing a material misvaluation of the restricted securities and ultimately the overinflation of the NAV of each of the Van Wagoner Funds. (ACC ¶¶ 155, 165.) The Casolaris claim their misvaluation contentions are supported by the fact the Van Wagoner Funds valued restricted securities at cost when there were factors that supported a change in valuation including, among other things, the issuing company's bankruptcy, withdrawn initial public offering, change in business plan, announcement of layoffs, and the worsening of the general conditions. (ACC ¶¶ 155(d), 160(d), 165(d), 169(d).)

Section 11 of the Securities Act of 1933 creates a private right of action for any purchaser of a security if any part of the registration statement, "when such part became effective, contained an untrue statement of material fact or omitted to state a material fact required to be stated or necessary to make the statements therein not misleading." 15 U.S.C. § 77k. A Section 11 action must be brought by a purchaser of a registered security and based on material misrepresentations or omissions in a registration statement, and can only be brought against certain parties. *Herman & McLean v. Huddleston*, 459 U.S. 375, 382, 103 S.Ct. 683, 74 L.Ed.2d 548 (1983). Section 11 permits an action against an accountant, but only as to those portions of the statement that purport to have been prepared or certified by the accountant. *Monroe v. Hughes*, 31 F.3d 772, 774 (9th Cir.1994) (citing *Herman & McLean*, 459 U.S. at 386 n. 22). No scienter is required to establish a claim under Section 11; defendants can be held liable for innocent or negligent material misrepresentations or omissions. *Herman & McLean*, 459 U.S. at 382.

E & Y contends that the Casolaris' Section 11 allegations do not meet the heightened pleading requirements of Rule 9(b) because the Casolaris do not adequately allege how and why the Van Wagoner Funds' financial statements and consequently how E & Y's approval of such was misleading when made. *See GlenFed*, 42 F.3d at 1549. E & Y specifically contends that the Van Wagoner Funds's financial statements were not misleading, and thus their approval of such reports were not misleading because the financial statements did not contain material misstatements as a matter of law. According to Section 11, a plaintiff does not state a claim if at the time of acquisition the plaintiff knew of the untruth. 15 U.S.C. § 77k(a). E & Y accurately points out that the Casolaris allege that the "fair value" that the Van Wagoners Funds were valuing the restricted securities at was at "cost." (*See* ACC at ¶ 137.) The Casolaris also allege specific public information regarding specific restricted securities that they believe show that the Van Wagoner Funds were not valuing the restricted securities at "fair value." With the financial statement disclosure that the restricted securities were valued at "cost" and the information regarding the restricted securities' issuers already public, there can be no misstatement. The Court finds that the Van Wagoner Funds' disclosures that the restricted securities were valued at cost coupled with the public information regarding the issuing companies does not constitute a material misstatement and is not materially misleading. A reasonable investor would not need additional information to decide whether to purchase or sell the Van Wagoner Fund

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy
2004 WL 2623972 (N.D.Cal.)
(Cite as: 2004 WL 2623972 (N.D.Cal.))

Page 5

shares. *See TSC Industries, Inc. v. Northway, Inc.,* 426 U.S. 438, 449, 96 S.Ct. 2126, 48 L.Ed.2d 757 (1976). Because Van Wagoner's valuation policies were public, as well as all adverse information about the restricted securities in which Van Wagoner Funds had invested, the Casolaris have not alleged that Allied concealed any facts from its investors. *See In re Allied Capital Corp. Sec. Litig.,* 2003 WL 1964184, *5 (S.D.N.Y.2003). [FN5]

> FN5. Although this decision is unpublished and out of circuit, Ninth Circuit Rule 36-3 does not bar a district court from considering the unpublished decisions of other federal district courts; however such decisions are not binding and are at most persuasive authority. *Herring v. Teradyne, Inc.,* 256 F.Supp.2d 1118, 1128 n. 2 (S.D.Cal.2002); see also, *Alvarenga-Villalobos v. Reno,* 133 F.Supp.2d 1164, 1167 (N.D.Cal.2000) (holding a district court may cite an out of circuit unpublished decision and not run afoul of the Ninth Circuit Rule 36-3).

*5 The Casolaris also contend that E & Y's statements in Van Wagoner Funds' NSAR-B report filed with the SEC on March 1, 2002 disclosing deficiencies in Van Wagoner Funds' internal controls is circumstantial evidence that such deficiencies were present in prior years and thus makes E & Y's prior audit reports false and misleading. (ACC ¶ 229.) However, E & Y correctly contends that under GAAS, even if there were internal control problems in the past that amounted to material weaknesses, they were only required to report such problems to management. *See Monroe v. Hughes,* 31 F.3d 772, 775 (9th Cir.1994). So, even if Van Wagoner Funds' had internal control deficiencies in prior years, E & Y had no duty to report such in prior audit reports. Thus, the Court finds such circumstantial evidence unavailing and not particular enough to meet the heightened pleading standards of Rule 9(b).

C. Loss Causation Is Not Pled with Particularity.

The Casolaris contend they suffered damages because when they purchased securities pursuant to the registration statements, the NAVs were artificially inflated. (ACC ¶ 3.) E & Y contends the Casolaris failed to adequately allege that E & Y's misrepresentations regarding the Van Wagoner Funds' financial statements "touches upon" the reasons for the investment's decline in value. *See Binder v. Gillespie,* 184 F.3d 1059, 1066 (9th Cir.1999). E & Y specifically contends that the Casolaris have alleged no decline in value at all. For example, Van Wagoner Funds' Emerging Growth Fund NAV increased from 9.90 on August 21, 2001 to 10.18 on August 22, 2001, [FN6] the day after Van Wagoner Funds filed its Semi-Annual Report disclosing write downs in valuations of more than 20 restricted securities by more than 50 percent. Further, Van Wagoner Funds' Emerging Growth Fund NAV increased from 9.12 on March 1, 2002 to 9.63 on March 4, 2002, the first trading day after E & Y filed its Form NSAR-B disclosing that the Van Wagoner Funds had material weaknesses in its internal controls for the year ending December 31, 2001. For loss causation to be properly pled, a plaintiff must plead that the misrepresentation touches upon the reason for the investments decline in value. Here the Court finds there is no decline in value and thus no loss causation pled. Therefore, because the ACC does not adequately allege misrepresentation and loss causation, the Court GRANTS E & Y's motion to dismiss the Casolaris' Section 11 claim with leave to amend.

> FN6. The Court GRANTS E & Y's request for judicial notice as it pertains to the Historical Daily Net Asset Values for Van Wagoner Funds from August 20, 2001 through August 22, 2001 and from February 28, 2002 through March 4, 2002 because the Court finds such facts "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." *See* Fed.R.Evid. 201(b).

II. Section 10(b) Claim is Dismissed.

A. Section 10(b) and Private Securities Litigation Reform Act Standards.

Section 10(b) of the Securities and Exchange Act ("Section 10(b)") provides, in part, that it is unlawful "to use or employ in connection with the purchase or sale of any security registered on a national securities exchange or any security not so

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy
2004 WL 2623972 (N.D.Cal.)
(Cite as: 2004 WL 2623972 (N.D.Cal.))

Page 6

registered, any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the [SEC] may prescribe." 15 U.S.C. § 78j(b).

*6 Rule 10b-5 makes it unlawful for any person to use interstate commerce:
   (a) To employ any device, scheme, or artifice to defraud;
   (b) To make any untrue statement of material fact or to omit to state a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading, or
   (c) To engage in any act, practice, or course of business that operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security.
17 C.F.R. § 240.10b-5.

To be actionable under Section 10(b) and Rule 10b-5, a plaintiff must allege (1) a misrepresentation or omission, (2) of material fact, (3) made with scienter, (4) on which the plaintiff (5) justifiably relied, that proximately caused the alleged loss. *Binder v. Gillespie,* 184 F.3d 1059, 1063 (9th Cir.1999). Additionally, as in all actions alleging fraud, plaintiffs must state with particularity the circumstances constituting fraud. Fed.R.Civ.P. 9(b).

Congress enacted the PSLRA generally to eliminate abusive securities litigation and particularly to "put an end to the practice of pleading fraud by hindsight." *In re the Vantive Corp. Sec. Litig.,* 283 F.3d 1079, 1084-85 (9th Cir.2001) (citing *In re Silicon Graphics Inc. Sec. Litig.,* 183 F.3d 970, 988 (9th Cir.1999)). In actions alleging securities fraud under the Securities Exchange Act, the PSLRA imposes even more heightened pleading requirements. The PLSRA provides that:
   (1) In any private action ... in which the plaintiff alleges the defendant (A) made an untrue statement of material fact; or (B) omitted to state a material fact necessary in order to make the statements made, in the light of the circumstance in which they were made, not misleading; the complaint shall specify each statement alleged to have been misleading, the reason why the statement is misleading, and if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed.
   (2) In any private action ... in which the plaintiff may recover money damages only on proof that the defendant acted with a particular state of mind, the complaint shall, with respect to each act or omission alleged ... state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind.
15 U.S.C. § 78u-4(b).

The Ninth Circuit has held that a private securities plaintiff proceeding under the PSLRA must plead, in great detail, facts that constitute a strong inference of deliberately reckless or conscious misconduct. *Silicon Graphics,* 183 F.3d at 974. Particular facts giving rise to a strong inference of deliberate recklessness, at a minimum, is required to satisfy the heightened pleading standard under the PSLRA. *Id.* The requirement to plead all facts with particularity means a plaintiff must provide a list of all relevant circumstances in great detail. *Id* at 984. In the absence of specifics, a court cannot determine whether there is any basis for alleging that the defendants knew that their statements were false at the time they were made. *Id.* at 985.

*7 In order to show a strong inference of deliberate recklessness, plaintiffs must state facts that come closer to demonstrating intent, as opposed to mere motive and opportunity. *Id.* at 974. Recklessness may involve a highly unreasonable misrepresentation or omission, involving an extreme departure from the standards of ordinary care that presents a danger of misleading buyers or sellers that is either known to the defendant or is so obvious that the actor must have been aware of it. *Id.* at 976 (quoting *Hollinger v. Titan Capital Corp.,* 914 F.2d 1564, 1569 (9th Cir.1990)). When determining whether a plaintiff has shown a strong inference of scienter, the court must consider all reasonable inferences to be drawn from the allegations, including inferences unfavorable to the plaintiffs. *Gomper v. VISX, Inc.,* 298 F.3d 893, 897 (9th Cir.2002). A court will consider whether the totality of all plaintiff's allegations, even though individually lacking, are sufficient to create a strong inference that defendants acted with deliberate or conscious recklessness. *No. 84 Employer-Teamster*

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy  
2004 WL 2623972 (N.D.Cal.)  
(Cite as: 2004 WL 2623972 (N.D.Cal.))

Page 7

*Joint Council Pension Trust Fund v. America West Holding Corp.*, 320 F.3d 920, 938 (9th Cir.2003).

B. Scienter and Misrepresentation Are Not Pled with Particularity.

The Casolaris contend that E & Y deliberately disregarded accounting irregularities or "red flags" of the Van Wagoner Funds and thus misleadingly certified Van Wagoner Funds' 1999 and 2000 financial statements. (ACC ¶ 29.) The Casolaris specifically contend that E & Y materially misrepresented in audit reports of Van Wagoner Funds' 1999 and 2000 financial statements that the financial statements:

present fairly, in all material respects, the financial position of the Van Wagoner Funds ..., the results of operations, the changes in its net assets and the financial highlights for the year then ended in conformity with accounting principles generally accepted in the United States.

(ACC ¶¶ 152, 163.) The Casolaris claim their misvaluation contentions are supported by the fact the Van Wagoner Funds valued restricted securities at cost when there were "red flag" factors that supported a change in valuation including, among other things, the issuing company's bankruptcy, withdrawn initial public offering, change in business plan, announcement of layoffs, and the worsening of the general conditions. (ACC ¶¶ 155(d), 160(d), 165(d), 169(d).) The Casolaris contend that with such factors present and because E & Y possessed continual and unlimited access to the Van Wagoner Funds' documentation, files and employees, E & Y knew or deliberately disregarded that the Van Wagoner Funds' were not valuing the restricted securities at fair value in good faith in violation of GAAP and GAAS. (ACC ¶ 193.)

E & Y contends the Casolaris have not alleged with the requisite particularity that E & Y has made any misrepresentation intentionally or with deliberate recklessness. "A large independent accountant will rarely, if ever, have any rational economic incentive to participate in its client's fraud. The accountant's success depends on maintaining a reputation for honesty and integrity, requiring a plaintiff to overcome the irrational inference that the accountant would risk its professional reputation to participate in the fraud of a single client." *Reiger v. Price Waterhouse Coopers LLP*, 117 F.Supp.2d 1003, 1007 (S.D.Cal.2000). The lack of a rational economic incentive for an independent accountant to participate in fraud, the client's central role in providing information to the accountant, and the complex professional judgment required to perform an audit, make it exceedingly difficult for a securities plaintiff to plead facts suggesting that an independent accountant acted with the deliberate state of mind required to withstand a motion to dismiss. *Id.* at 1008. It is highly improbable that an accountant would risk surrendering a valuable reputation for honesty and careful work by participating in a fraud merely to obtain increased fees. *In re Worlds of Wonder Sec. Litig.*, 35 F.3d 1407, 1427 (9th Cir.1994) (quoting *SEC v. Price Waterhouse*, 797 F.Supp. 1217, 1242 n. 60 (S.D.N.Y.1992)). Therefore, where a transaction derives its suspiciousness from specific details associated with the audited company's business, the plaintiff must plead facts suggesting the accountant's awareness of those details or "red flags." *Reiger*, 117 F.Supp.2d at 1009.

*8 In the instant case, the Casolaris contend that E & Y, through its auditing relationship with Van Wagoner Funds should have known about restricted securities' "red flags" and thus was deliberately reckless in certifying the financial statements. (ACC ¶ 186.) [FN7] However, the Casolaris do not allege facts sufficient to constitute a strong inference that E & Y knew of such red flags and deliberately disregarded them when they certified the financial statements. An independent accountant's acquired familiarity with the company's business does not impute the accountant with knowledge of the specific facts that made certain transactions suspicious. *Reiger*, 117 F.Supp.2d at 1009. Therefore, even if E & Y does have a familiarity with Van Wagoner Funds' business it is not enough to support an strong inference of knowledge of all the restricted securities' "red flags."

> FN7. Due to a typographical error in the ACC, there are two paragraph 186s, the Court is citing to ¶ 186 on page 91.

The Casolaris also contend that because E & Y had unlimited access to Van Wagoner Funds information in connection with its audits, and because there existed adverse information about the restricted securities, such shows that the Van

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy
2004 WL 2623972 (N.D.Cal.)
(Cite as: 2004 WL 2623972 (N.D.Cal.))

Page 8

Wagoner Funds' financial statements did not comport with GAAP and E & Y's audit constituted an extreme departure from GAAS and thus supports a strong inference that E & Y acted with knowledge or reckless disregard. (ACC ¶ 187.) [FN8] However, simply because an accountant had access to documents that revealed the company's fraud when it conducted its audit, it does not strongly compel an inference of intentional or deliberately reckless conduct as opposed to ordinary carelessness. *DSAM Global Value Fund v. Altris Software, Inc.*, 288 F.3d 385, 390 (9th Cir.2002). A plaintiff must allege facts to establish that the accountant knew or must have known of the fraud, intentionally or knowingly falsified the financial statements, or that the audit was such an extreme departure from reasonable accounting practice that the accountants knew or had to have known that its conclusions would mislead investors. *Id.* at 390-391. Violations of GAAP or GAAS, standing alone, do not satisfy the particularity or strong inference requirements of the PSLRA because they provide no specific facts upon which a court can infer the state of mind of the accountant or its client. *Reiger,* 117 F.Supp.2d at 1009-1010.

>    FN8. The Court is citing to ¶ 187 on page 91-92.

The Casolaris provide no specific contentions beyond their allegations that the Van Wagoner Funds did not value the restricted securities at a fair value in good faith and that E & Y had continual and complete access to Van Wagoner Funds' records to support their contention that E & Y knew or recklessly disregarded that such records showed that Van Wagoner Funds were not valuing the restricted securities at fair value in good faith. When alleging accounting irregularities, plaintiffs should particularly allege the following: (1) approximate amount of the overstatement, (2) the dates of any of the transactions; and (3) the identities of any of the customers or employees involved in the transactions. *In re McKesson HBOC, Inc. Sec. Litig.,* 126 F.Supp. 1248, 1273 (N.D.Cal.2000). Equipped with this information, a court can discern whether the alleged GAAP violations were minor or technical in nature, or whether they constituted widespread and significant inflation of asset values and thus whether such creates a strong inference that the defendant intentionally misstated valuations. *See id.* The ACC contains no specific allegations of overstatements of valuations only that there were such overstatements. As explained above, mere access to Van Wagoner Funds' documentation is not enough to establish a strong inference of knowledge or reckless disregard. *DSAM,* 288 F.3d at 390. Therefore, the Court finds the Casolaris' allegations of E & Y's GAAS violations unable to support a strong inference of scienter on the part of E & Y.

*9 The Casolaris also contend that the Van Wagoner Funds' misstatement of the NAVs was so large that it could not have possibly gone unnoticed by E & Y. (ACC ¶ 233.) However, inferring scienter from the magnitude of fraud invites a court to speculate as to the existence of specific warning signs that show the accountant acted with scienter. *Reiger,* 117 F.Supp.2d at 1013. A court should not infer an independent accountant's scienter based solely on the magnitude of his client's fraud. *Id.* Magnitude of fraud only supports an inference of scienter when the plaintiff alleges specific and detailed facts showing that the magnitude either enhanced the suspiciousness of specifically identified transactions or made the overall fraud glaringly conspicuous. *Id.* Here, the Casolaris only allege that the overstatements were large, but do not specifically allege how large. Therefore, the Court finds the Casolaris' allegations of the magnitude of the fraud unable to support a strong inference of scienter on the part of E & Y.

The Casolaris' allegations, taken as a whole, do not raise a strong inference that E & Y had the required state of mind when conducting their audits. The ACC alleges that the values for the restricted securities were kept fraudulently high; however, the facts alleged do not create a strong inference that E & Y knew such valuations were fraudulent or intended to mislead or spread false information intentionally or with deliberate recklessness. The Casolaris do not "point to any specific evidence, such as contemporaneous reports or statements of others in support of their allegations of scienter." *In re Read-Rite Corp. Sec. Litig.*, 335 F.3d 843, 847 (9th Cir.2003). Therefore, the Casolaris' ACC fails to satisfy the scienter or the falsity pleading standards of the PSLRA.

C. Reliance Is Not Pled with Particularity.

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy
2004 WL 2623972 (N.D.Cal.)
(Cite as: 2004 WL 2623972 (N.D.Cal.))

Page 9

The Casolaris contend that in ignorance of the condition of the Van Wagoner Funds, they and other members of the Class, relying on the integrity of the market and/or on E & Y's statements that contained misleading information and omissions of material facts, purchased or otherwise acquired Van Wagoner Fund shares. (ACC ¶ 314.) The United Supreme Court has held that reliance is a necessary element of a Rule 10b-5 cause of action. *Basic v. Levinson,* 485 U.S. 243, 246 (1988). Reliance provides the requisite causal connection between a defendant's misrepresentation and a plaintiff's injury. *Id.* The Casolaris only generally allege they relied on E & Y's statements. (*See* ACC ¶ 314.) The Casolaris make no specific allegations that they read the annual reports or registration statements which contained statement or consents prepared by E & Y. Because all averments of fraud must be pled with particularity, the Court finds the Casolaris' general allegations of reliance insufficient.

The Casolaris urged in their brief and at oral argument that they have alleged sufficient allegations for "fraud on the market" reliance. The fraud on the market theory presumes that the market price of shares traded on well-developed, efficient markets reflect all publicly available information and hence, any material misrepresentation. *Id.* In a fraud on the market case, the plaintiffs need not show that they themselves actually relied on any particular misrepresentation or omission. *In re Convergent Technologies Sec. Litig.,* 948 F.2d 507, 512 n. 2 (9th Cir.1991). They need only show that they relied on the integrity of the price of the stock as established by the market, which in turn is influenced by information or the lack of it. *Id.*

*10 The Ninth Circuit has found the *Cammer v. Bloom* factors helpful in determining whether a market is well developed or efficient. *Binder v. Gillespie,* 184 F.3d 1059, 1064 (9th Cir.1999); *see also Cammer v. Bloom,* 711 F.Supp. 1264, 1286-87 (D.N.J.1989). The factors are whether: (1) the stock trades at a high weekly volume, (2) the securities analysts follow and report on the stock, (3) the stock has market makers and arbitrageurs, (4) the company is eligible to file SEC registration form S-3, as opposed to S-1 or S-2, and (5) there are empirical facts showing a cause and effect relationship between unexpected corporate events or financial releases and an immediate response in stock price. *Binder v. Gillespie,* 184 F.3d at 1065 (citing *Cammer,* 711 F.Supp. at 1286-87). The Casolaris only make a general allegation that they relied on the integrity of the market and do not particularly allege any other fact to establish fraud on the market reliance. Further, although a Southern District of Texas decision is not binding upon the Court, the Court finds its decision in *Young v. Nationwide Life Insurance Company* persuasive. *See* 183 F.R.D. 502, 510 (S.D.Tex.1998) The court found that fraud on the market does not apply to mutual funds because the share price of a mutual fund is not affected by alleged misrepresentations or omissions; the share price of a mutual fund is determined by the value of all underlying securities it holds at a given time. *Id.* Therefore, because the Casolaris have not pled particular facts establishing an efficient market and because a mutual fund share price is not determined by the market, but the underlying asset value, the Court finds the Casolaris have not sufficiently pled fraud on the market reliance.

D. Loss Causation Is Not Pled with Particularity.

As explained above, the Casolaris contend they suffered damages because when they purchased securities pursuant to the registration statements, the NAVs were artificially inflated. (ACC ¶ 314.) E & Y contends the Casolaris failed to adequately allege that E & Y's misrepresentations regarding the Van Wagoner Funds' financial statements "touches upon" the reasons for the investment's decline in value. *See Binder,* 184 F.3d 1059, 1066 (9th Cir.1999). E & Y specifically contends that the Casolaris have alleged no decline in value at all. For example, Van Wagoner Funds' Emerging Growth Fund NAV increased from 9.90 on August 21, 2001 to 10.18 on August 22, 2001, the day after Van Wagoner Funds filed its Semi-Annual Report disclosing write downs in valuations of more than 20 restricted securities by more than 50 percent. Further, Van Wagoner Funds' Emerging Growth Fund NAV increased from 9.12 on March 1, 2002 to 9.63 on March 4, 2002, the first trading day after E & Y filed its Form NSAR-B disclosing that the Van Wagoner Funds had material weaknesses in its internal controls for the year ending December 31, 2001. For loss causation to be properly pled, a plaintiff must plead that the misrepresentation touches upon the reason for the investments decline

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy
2004 WL 2623972 (N.D.Cal.)
(Cite as: 2004 WL 2623972 (N.D.Cal.))

Page 10

in value. Here the Court finds there is no decline in value and thus no loss causation pled. Therefore, because the Court has found that the Casolaris have not sufficiently pled scienter, reliance and loss causation for the foregoing reasons, the Court GRANTS E & Y's motion to dismiss the Casolaris' Section 10(b) claim.

*11 The allegations currently made in the ACC and subsequent factual allegations made both in the Casolaris' brief and oral argument strongly suggest that the claims against E & Y should be dismissed without leave to amend. However, due to the Ninth Circuit's extreme liberality in granting leave to amend, particularly in PSLRA cases, the Court is obliged to provide the Casolaris with an opportunity to amend their ACC, if they so desire. The current complaint fails to show any culpability by E & Y in their audit reports of the Van Wagoner Funds restricted securities. An amended complaint will only be successful if it alleges specific facts that suggest with particularity that E & Y was aware or was deliberately reckless in not being aware of the alleged misvaluations. The Casolaris are permitted to amend their complaint, but the Casolaris are cautioned that any amendment must overcome the deficiencies addressed in this Order for the amendment to be successful.

C. There Is No Private Right of Action under Section 34(b) of the Investment Company Act of 1940.

There is no binding Ninth Circuit authority on whether there is a private right of action under Section 34(b) of the Investment Company Act of 1940 ("ICA"). *See Pegasus Fund, Inc. v. Laraneta,* 617 F.2d 1335, 1341 (9th Cir.1980) (finding it "doubtful that [Section 34(b) ] implies a private right of action" in dicta). The Second Circuit and Eastern District of Wisconsin, following the United States Supreme Court decision in *Alexander v. Sandoval,* have found that there are no implied private rights of action under the ICA. *See Alexander v. Sandoval,* 535 U.S. 275, 286-90 (2001); *see also Olmsted v. Pruco Life Ins. Co. of New Jersey,* 283 F.3d 429, 432 (2d Cir.2002) (finding there is no private right of action under Section 26(f) and 27(I) of the ICA), *White v. Heartland High-Yield Mun. Bond Fund,* 237 F.Supp.2d 982, 986 (E.D.Wis.2002) (finding there is no private right of action under Sections 22 and 34(b) of the ICA).

The United States Supreme Court held in *Sandoval* that "like substantive federal law itself, private rights of action to enforce federal law must be created by Congress." 535 U.S. at 286 (citing *Touche Ross & Co. v. Redington,* 442 U.S. 560, 578, 99 S.Ct. 2479, 61 L.Ed.2d 82 (1979)). In determining whether a private right of action exists, a court must look to the statutory intent of Congress. *Sandoval,* 535 U.S. at 286. Statutory intent is determinative; "without it, a cause of action does not exist and courts may not create one, no matter how desirable that might be as a policy matter, or how compatible with the statute." *Id.* at 286-87. If a statute focuses on the person regulated rather than the individuals protected it creates "no implication of an intent to confer rights on a particular class of persons." *Id.* at 289 (quoting *California v. Sierra Club,* 451 U.S. 287, 294, 101 S.Ct. 1775, 68 L.Ed.2d 101 (1981)). Further, the express provision of one method of enforcing a substantive rule suggests that Congress intended to preclude others. *Id.* at 290 (citing *Karahalios v. Fed. Employees,* 489 U.S. 527, 533, 109 S.Ct. 1282, 103 L.Ed.2d 539 (1989)).

*12 Section 34(b) provides that "it shall be unlawful for any person to make any untrue statement of material fact in any registration statement ... filed or transmitted pursuant to this subchapter." 15 U.S.C. § 80a-33(b). The language of Section 34(b) only describes actions by any person, including accountants or auditors, that are prohibited; it does not mention investors such as the Casolaris. Therefore, because Section 34(b) focuses on the person regulated rather than the investors, it is likely Congress did not intend to confer any private rights on the investor. *See Sandoval,* 535 U.S. at 289.

Section 42 of the Investment Company Act explicitly provides for enforcement of all ICA provisions by the Securities and Exchange Commission through investigations and civil suits for injunction and penalties. *See* 15 U.S.C. § 80a-41 . Therefore, this express provision of one method of enforcement suggests that Congress intended to preclude a private right of action. *See Sandoval,* 535 U.S. at 290. Therefore, because any

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy
2004 WL 2623972 (N.D.Cal.)
**(Cite as: 2004 WL 2623972 (N.D.Cal.))**

Page 11

amendment would be futile, the Court GRANTS E & Y's motion to dismiss the Casolaris' Section 34(b) claim without leave to amend.

## CONCLUSION

For the foregoing reasons, E & Y's motion to dismiss is GRANTED. The Casolaris have failed to state a claim upon which relief can be granted under Section 11 of the Securities Act, Section 10(b) of the Securities Exchange Act, and Section 34(b) of Investment Company Act of 1940. However, the Court will grant the Casolaris leave to amend in order to address the lack of any particularity as to E & Y's participation in the alleged fraud as it pertains to their Section 10(b) and Section 11 claims. The Court does not grant the Casolaris leave to amend their Section 34(b) of the Investment Company Act claim as any amendment will be futile.

IT IS SO ORDERED.

2004 WL 2623972 (N.D.Cal.)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.