**THE INDIVIDUAL DEFENDANTS' MISREPRESENTATIONS AND OMISSIONS**

| WHO<br>said it | WHAT<br>was said | WHEN<br>it was said | WHERE<br>it was said | WHY<br>it was false or misleading | Supporting<br>Evidence |
|---|---|---|---|---|---|
| Stein Lopolito (¶ 70) | "Production costs exceeded product sales due to the start-up costs of new product introduction and the high costs associated with low volume production." (¶ 70) | 11/15/99 (¶ 70) | 3Q:99 Form 10-Q (¶ 70) | It was not true that costs exceeded sales due to start-up costs and the high costs of low volume production and that the Company's margins would improve as production volume increased because (a) the Company was losing money on each unit of Apligraf sold, and far from lowering costs, the more units of Apligraf that Organogenesis sold, the worse its margins would be; and (b) the Company was experiencing serious problems in manufacturing Apligraf, including manufacturing contamination and product recalls, and there was "no way" the Company could feasibly mass-produce Apligraf. (¶ 76(b)) | ¶¶ 62(a) and (b), 65 |
| Stein Lopolito (¶ 70) | "We expect production volume to increase and our margins to improve." (¶ 70) | 11/15/99 (¶ 70) | 3Q:99 Form 10-Q (¶ 70) | A.  Defendants knew but failed to disclose that the Company was experiencing serious problems in manufacturing Apligraf, including manufacturing contamination and product recalls, and there was "no way" the Company could feasibly mass-produce Apligraf. (¶ 76(b))<br><br>B.  It was not true that the Company's margins would improve as production volume increased. Because the Company was losing money on each unit of Apligraf sold, far from lowering costs, the more units of Apligraf that Organogenesis sold, the worse its margins would be. (¶ 76(b)) | A.  ¶¶ 62(a) and (b)<br><br><br><br><br><br><br>B.  ¶ 65 |

| WHO<br>said it | WHAT<br>was said | WHEN<br>it was said | WHERE<br>it was said | WHY<br>it was false or misleading | Supporting<br>Evidence |
|---|---|---|---|---|---|
| Stein<br>Lopolito<br>(¶ 70) | "We expect Apligraf commercial sales to increase."<br>(¶ 70) | 11/15/99<br>(¶ 70) | 3Q:99 Form 10-Q<br>(¶ 70) | Defendants knew, but failed to disclose that the prospects for future sales growth were severely limited by (a) Novartis' lack of proper training, experience or expertise in selling Apligraf, which was resulting in significant sales and marketing problems and (b) significant problems with the manufacturing and distribution of Apligraf.<br>(¶ 76(d-e)) | ¶¶ 48, 50, 60, 61(a)-(c) |
| Stein<br>Lopolito<br>(¶ 70) | "We expect to continue to expand manufacturing operations . . . ."<br>(¶ 70) | 11/15/99<br>(¶ 70) | 3Q:99 Form 10-Q<br>(¶ 70) | This statement was untrue because Organogenesis was experiencing serious problems in manufacturing Apligraf and, according to a former Organogenesis Senior Manager of Quality Systems Compliance, there was "no way" the Company could feasibly mass-produce the product.<br>(¶76(b)) | ¶¶ 60, 62(a) |
| Stein<br>(¶ 68) | "Apligraf . . . is well-received by physicians."<br>(¶ 68) | 11/15/99<br>(¶ 68) | Press Release<br>(¶ 68) | A.  Apligraf was causing increasing frustration among physicians due to manufacturing and distribution problems, contamination issues, inadequate market support, and difficulties in obtaining reimbursement.<br>(¶ 76(c))<br><br>B.  Due to these problems, physicians were becoming less willing to order or re-order Apligraf for their patients.<br>(¶ 76(c)) | A.  ¶¶ 62(a)-(c)<br><br><br><br><br>B.  ¶ 62(d) |

| WHO<br>said it | WHAT<br>was said | WHEN<br>it was said | WHERE<br>it was said | WHY<br>it was false or misleading | Supporting<br>Evidence |
|---|---|---|---|---|---|
| Tuck<br>(¶ 69) | Apligraf sales reached a "record number" in November 1999.<br>(¶ 69) | 12/2/99<br>(¶ 69) | Press Release<br>(¶ 69) | A.  This statement gave investors the misleading impression that the Company's sales efforts were succeeding when in fact, as confirmed by several former Organogenesis employees, Novartis' marketing team did not have the proper training experience or expertise in selling Apligraf, which resulted in significant sales and marketing problems.<br>(¶ 76(d))<br><br>B.  Defendants also knew, but failed to disclose that sales and future sales development prospects were being adversely affected by the Company's serious problems relating to the manufacturing of Apligraf.<br>(¶ 76(d)) | A.  ¶¶ 47, 48, 50, 60, 61, 62<br><br><br><br><br><br><br><br>B.  ¶¶ 48, 50, 60, 62 |
| Tuck (¶ 69) | "The growth [in Apligraf sales] now being seen is due to new Apligraf marketing and sales initiatives by Novartis . . . ."<br>(¶ 69) | 12/2/99<br>(¶ 69) | Press Release<br>(¶ 69) | A.  This statement gave the misleading impression that Apligraf sales were increasing due to Novartis' superior marketing and sales efforts, when, in fact, according to former employees of Organogenesis, Novartis' lack of proper training experience and expertise in selling Apligraf was resulting in significant sales and marketing problems which were adversely impacting sales and future sales development.<br>(¶ 76(d))<br><br>B.  Defendants knew, but failed to disclose that Organogenesis was experiencing serious manufacturing problems that were impacting sales and impairing future sales development prospects. | A.  ¶¶ 61(a)-(c)<br><br><br><br><br><br><br><br><br><br>B.  ¶¶ 47, 48, 50, 60, 61(b), 62 |

| WHO said it | WHAT was said | WHEN it was said | WHERE it was said | WHY it was false or misleading | Supporting Evidence |
|---|---|---|---|---|---|
| | | | | (¶ 76(d)) | |
| Laughlin (¶ 73) | "[W]e're not concerned that we won't ultimately be successful . . . ." (¶ 73) | 1/14/00 (¶ 73) | Interview with the *Wall Street Transcript* (¶ 73) | This statement is untrue because defendants knew that Organogenesis' chances of reaching profitability were severely compromised by manufacturing and marketing problems, its inability to access vital funding to keep the company viable, the difficulties in achieving reimbursement for Apligraf, and the disruptive effect on operations that high turnover and infighting among the Company's senior management were causing. (¶ 76(f)) | ¶¶ 60-63, 65-67 |
| Laughlin Lopolito (¶ 74) | "In the opinion of management, the accompanying consolidated financial statements include all adjustments . . . necessary for a fair presentation of the financial position, results of operations and changes in cash flows for the periods presented . . . ." (¶ 74) | 2/14/00 (¶ 74) | Amended 3Q:99 Form 10-Q (¶ 74) | The Amended 3Q:99 Form 10-Q did not reflect the true financial condition of Organogenesis because it failed to disclose manufacturing, marketing, and distribution problems, the Company's inability to access vital funding to keep the company viable, the difficulties in achieving reimbursement for Apligraf, and the disruptive effect on operations that high turnover and infighting among the Company's senior management were causing. (¶ 76(f)) | ¶¶ 59-67 |
| Laughlin Lopolito (¶ 75) | "We expect production volume to increase and our margins to improve.  We expect to continue to expand manufacturing operations . . . ." (¶ 75) | 2/14/00 (¶ 75) | Amended 3Q:99 Form 10-Q (¶ 75) | A.  Defendants knew but failed to disclose that the Company was experiencing serious problems in manufacturing Apligraf, including manufacturing contamination and product recalls, and there was "no way" the Company could feasibly mass-produce Apligraf. (¶ 76(b))<br><br>B.  It was not true that the Company's margins | A.  ¶¶ 62(a) and (b)<br><br><br><br><br><br><br><br>B.  ¶ 65 |

| WHO<br>said it | WHAT<br>was said | WHEN<br>it was said | WHERE<br>it was said | WHY<br>it was false or misleading | Supporting<br>Evidence |
|---|---|---|---|---|---|
| | | | | would improve as production volume increased. Because the Company was losing money on each unit of Apligraf sold, far from lowering costs, the more units of Apligraf that Organogenesis sold, the worse its margins would be.<br>(¶ 76(b)) | |
| Laughlin<br>Erani<br>Lopolito<br>Stein<br>Tuck<br>Sabolinski<br>(¶ 77) | Defendants represented that an oversubscription of Organogenesis' stock offering was the result of investors' "strong interest in the Company."<br>(¶ 77) | 2/24/00<br>(¶ 77) | Press Release<br>(¶ 77) | Defendants' representations misleadingly led investors to believe that the Company would be able to raise the additional equity and debt financing necessary to keep the company operational and to achieve profitability. Additionally, defendants failed to disclose the obstacles that existed in accessing future funding.<br>(¶ 87(f)) | ¶¶ 59, 60 |
| Laughlin<br>(¶ 84) | Results for the fourth quarter and full year 1999 were "consistent with the transition in progress from a research focused company to a research based operating company with a novel medical product in introduction phase . . . ."<br>(¶ 84) | 3/31/00<br>(¶ 84) | Press Release<br>(¶ 84) | Laughlin failed to disclose manufacturing, marketing, and distribution problems, the Company's inability to access vital funding to keep the company viable, the difficulties in achieving reimbursement for Apligraf, and the disruptive effect on operations that high turnover and infighting among the Company's senior management were causing.<br>(¶ 87(a)) | ¶¶ 59-67 |
| Laughlin<br>(¶ 84) | "[A]s sales of Apligraf begin to develop, our focus must include driving down per unit manufacturing costs through the development and implementation of more efficient methods of production." (¶ 84) | 3/31/00<br>(¶ 84) | Press Release<br>(¶ 84) | Contrary to defendants' suggestion, driving down per unit manufacturing costs and implementing more efficient methods of production would not achieve profitability for the company. As defendants were well aware, but did not disclose, and as confirmed by former employees of Organogenesis, | ¶¶ 60, 65, 66 |

| **WHO** <br> **said it** | **WHAT** <br> **was said** | **WHEN** <br> **it was said** | **WHERE** <br> **it was said** | **WHY** <br> **it was false or misleading** | **Supporting** <br> **Evidence** |
|---|---|---|---|---|---|
| | | | | Organogenesis was losing money on every unit of Apligraf that it produced because of the disadvantageous terms of the Novartis marketing agreement. As such, far from lowering costs, the more units of Apligraf that Organogenesis sold, the worse its margins would be. (¶ 87(c)) | |
| Laughlin Erani Lopolito (¶ 85) | Organogenesis "believes that future capital comprised of product sales, research and development support payments and debt equity financings will be sufficient to fund future operations into 2001 . . . ." (¶ 85) | 3/31/00 (¶ 85) | FY:99 Form 10-K (¶ 85) | A. Defendants' representations misleadingly led investors to believe that the Company would be able to raise the additional equity and debt financing necessary to keep the company operational and to achieve profitability. Additionally, defendants failed to disclose the obstacles that existed in accessing future funding. (¶ 87(f))  <br><br> B. Defendants also failed to disclose manufacturing, marketing, and distribution problems, the Company's inability to access vital funding to keep the company viable, the difficulties in achieving reimbursement for Apligraf, and the disruptive effect on operations that high turnover and infighting among the Company's senior management were causing. (¶ 87(a)) | A. ¶¶ 59, 60  <br><br><br><br><br><br><br><br><br> B. ¶¶ 59-67 |
| Laughlin Erani Lopolito (¶ 85) | Novartis has "a marketing and sales force[] with technical expertise and distribution capability." (¶ 85) | 3/31/00 (¶ 85) | FY:99 Form 10-K (¶ 85) | This statement gave investors the misleading impression that the Company's sales efforts were succeeding when in fact, as confirmed by several former Organogenesis employees, Novartis' marketing team did not have the proper training experience or expertise in | ¶¶ 48, 50, 60, 61(a)-(c) |

| WHO<br>said it | WHAT<br>was said | WHEN<br>it was said | WHERE<br>it was said | WHY<br>it was false or misleading | Supporting<br>Evidence |
|---|---|---|---|---|---|
| | | | | selling Apligraf, which resulted in significant sales and marketing problems. (¶ 87(b)) | |
| Laughlin Lopolito Erani (¶ 85) | "We expect production volume to increase and our margins to improve.  We expect to continue to expand production during the next 12 months." (¶ 85) | 3/31/00 (¶ 85) | FY:99 Form 10-K (¶ 85) | A.  Defendants knew but failed to disclose that the Company was experiencing serious problems in manufacturing Apligraf, including manufacturing contamination and product recalls, and there was "no way" the Company could feasibly mass-produce Apligraf. (¶ 76(b))<br><br>B.  It was not true that the Company's margins would improve as production volume increased. Because the Company was losing money on each unit of Apligraf sold, far from lowering costs, the more units of Apligraf that Organogenesis sold, the worse its margins would be. (¶ 87(e) and (g)) | A.  ¶¶ 62(a) and (b)<br><br><br><br><br><br>B.  ¶ 65 |
| Laughlin Lopolito Erani (¶ 85) | "We expect Apligraf commercial sales to increase." (¶ 85) | 3/31/00 (¶ 85) | FY:99 Form 10-K (¶ 85) | Defendants knew, but failed to disclose that the prospects for future sales growth were severely limited by (a) Novartis' lack of proper training, experience or expertise in selling Apligraf, which was resulting in significant sales and marketing problems and (b) significant problems with the manufacturing and distribution of Apligraf. (¶ 76(d-e)) | ¶¶ 48, 50, 60, 61(a)-(c) |

| WHO<br>said it | WHAT<br>was said | WHEN<br>it was said | WHERE<br>it was said | WHY<br>it was false or misleading | Supporting<br>Evidence |
|---|---|---|---|---|---|
| Laughlin<br>Sabolinski<br>Erani<br>Arcari<br>Tuck<br>(¶ 89) | Results for the first quarter of 2000 were "consistent with the company's ongoing transition from being a research company to being a research-based operating company . . . ."<br>(¶ 89) | 5/11/00<br>(¶ 89) | Press Release<br>(¶ 89) | Defendants failed to disclose manufacturing, marketing, and distribution problems, the Company's inability to access vital funding to keep the company viable, the difficulties in achieving reimbursement for Apligraf, and the disruptive effect on operations that high turnover and infighting among the Company's senior management were causing.<br>(¶ 91(a)) | ¶¶ 59-67 |
| Laughlin<br>(¶ 89) | "Key to Apligraf sales development are two factors: obtaining approval for diabetic foot ulcers and gaining standardized Apligraf reimbursement."<br>(¶ 89) | 5/11/00<br>(¶ 89) | Press Release<br>(¶ 89) | Defendants were aware, but did not disclose, that sales of Apligraf and future sales development prospects were hampered by serious manufacturing and marketing problems, including the Company's inability to mass produce Apligraf, Novartis' lack of training, experience, and expertise in marketing Apligraf, and decreasing physician willingness to order and re-order the product.<br>(¶ 91(b)) | ¶¶ 48, 50, 60, 61(a)-(c), 62(d) |
| Laughlin<br>Arcari<br>(¶ 90) | "In the opinion of management, the accompanying consolidated financial statements include all adjustments, consisting of normal recurring adjustments, necessary for a fair presentation of the financial position, results of operations and changes in cash flows for the periods presented."<br>(¶ 90) | 5/15/00<br>(¶ 90) | 1Q:00 Form 10-Q<br>(¶ 90) | The 1Q:00 Form 10-Q did not reflect the true financial condition of Organogenesis because it failed to disclose manufacturing, marketing, and distribution problems, the Company's inability to access vital funding to keep the company viable, the difficulties in achieving reimbursement for Apligraf, and the disruptive effect on operations that high turnover and infighting among the Company's senior management were causing.<br>(¶ 91(e)) | ¶¶ 59-67 |

| WHO said it | WHAT was said | WHEN it was said | WHERE it was said | WHY it was false or misleading | Supporting Evidence |
|---|---|---|---|---|---|
| Laughlin Arcari (¶ 90) | "Cost of product sales exceeded product sales due to the start-up costs of new product introduction and the high costs associated with low volume production. We expect production to increase and our margins to improve. We expect to continue to expand production operations during 2000." (¶ 90) | 5/15/00 (¶ 90) | 1Q:00 Form 10-Q (¶ 90) | It was not true that costs exceeded sales due to start-up costs and the high costs of low volume production and that the Company's margins would improve as production volume increased because (a) the Company was losing money on each unit of Apligraf sold, and far from lowering costs, the more units of Apligraf that Organogenesis sold, the worse its margins would be; and (b) the Company was experiencing serious problems in manufacturing Apligraf, including manufacturing contamination and product recalls, and there was "no way" the Company could feasibly mass-produce Apligraf. ¶ 91(c)) | ¶¶ 62(a) and (b), 65 |
| Laughlin (¶ 94) | Organogenesis "can become profitable and will become profitable with Apligraf alone. The two main drivers of that are diabetic foot ulcer approval which happened last week ad getting that standardized Medicare reimbursement, which has been slow going. We're optimistic . . . ." (¶ 94) | 6/25/00 (¶ 94) | CNBC "Power Lunch" Interview (¶ 94) | A.  As defendants were aware, under the terms of the Novartis marketing agreement, Organogenesis was losing, and would continue to lose, money on every unit of Apligraf it produced. (¶ 100(b))  B.  Laughlin failed to disclose substantial obstacles to Organogenesis' profitability plan, including manufacturing, marketing, and distribution problems, the Company's inability to access vital funding to keep the company viable, the difficulties in achieving reimbursement for Apligraf, and the disruptive effect on operations that high turnover and infighting among the Company's senior management were causing. (¶ 100(b)) | A.  ¶ 65    B.  ¶¶ 59-67 |

| WHO<br>said it | WHAT<br>was said | WHEN<br>it was said | WHERE<br>it was said | WHY<br>it was false or misleading | Supporting<br>Evidence |
|---|---|---|---|---|---|
| Laughlin<br>(¶ 95) | Laughlin suggested that the month of July 2000 "held notable achievements significant to future sales development," but a decline in sales for that month was the result of the "summer vacation period."<br>(¶ 95) | 8/2/00<br>(¶ 95) | Press Release<br>(¶ 95) | Laughlin's representations were incomplete and misled investors because he failed to disclose Organogenesis' significant marketing and manufacturing problems, which were worsening, rather than improving, future sales development.<br>(¶ 100(e)) | ¶¶ 47, 48, 50, 60, 61, 62 |
| Laughlin<br>Sabolinski<br>Erani<br>Arcari<br>(¶ 96) | Explaining the financial results for the second quarter of 2000, defendants stated that Organogenesis was "in the process of transitioning from being a research company to becoming an operating company with a strong research base."<br>(¶ 96) | 8/14/00<br>(¶ 96) | Press Release<br>(¶ 96) | Defendants failed to disclose manufacturing, marketing, and distribution problems, the Company's inability to access vital funding to keep the company viable, the difficulties in achieving reimbursement for Apligraf, and the disruptive effect on operations that high turnover and infighting among the Company's senior management were causing.<br>(¶ 100(a)) | ¶¶ 59-67 |

| WHO<br>said it | WHAT<br>was said | WHEN<br>it was said | WHERE<br>it was said | WHY<br>it was false or misleading | Supporting<br>Evidence |
|---|---|---|---|---|---|
| Laughlin<br>(¶ 97) | "[T]wo important drivers of Apligraf sales [are] FDA approval for diabetic foot ulcers and Medicare reimbursement for the product's cost.  We now have tangible achievements in both areas."<br>(¶ 97) | 8/14/00<br>(¶ 97) | Press Release<br>(¶ 97) | Laughlin misled investors into believing that achieving these two goals were the last two pieces of the sales puzzle, and that once they were achieved, sales would increase and Organogenesis would attain profitability. However, defendants failed to disclose that sales of Apligraf and future sales development prospects were hampered by serious manufacturing and marketing problems, including the Company's inability to mass produce Apligraf, Novartis' lack of training, experience, and expertise in marketing Apligraf, and decreasing physician willingness to order and re-order the product.<br>(¶ 100(c)) | ¶¶ 48, 50, 60, 61(a)-(c), 62(d) |
| Laughlin<br>(¶ 97) | Organogenesis had "further strengthened its manufacturing and management team" with the addition of a new Vice President of Operations.<br>(¶ 97) | 8/14/00<br>(¶ 97) | Press Release<br>(¶ 97) | Despite Laughlin's representation that Organogenesis' management had been strengthened, recent turmoil among the Company's senior management and directors, including the departure of defendant Stein and others, as well as infighting among senior management, were weakening the Company's management team and adversely affecting the Company's operations. (¶ 100(f)) | ¶¶ 60,63 |

| WHO said it | WHAT was said | WHEN it was said | WHERE it was said | WHY it was false or misleading | Supporting Evidence |
|---|---|---|---|---|---|
| Laughlin Arcari (¶ 98) | "In the opinion of management, the accompanying consolidated financial statements include all adjustments, consisting of normal recurring adjustments, necessary for a fair presentation of the financial position, results of operations and changes in cash flows for the periods presented. . . ." (¶ 98) | 8/14/00 (¶ 98) | 2Q:00 Form 10-Q (¶ 98) | The 2Q:00 Form 10-Q did not reflect the true financial condition of Organogenesis because it failed to disclose manufacturing, marketing, and distribution problems, the Company's inability to access vital funding to keep the company viable, the difficulties in achieving reimbursement for Apligraf, and the disruptive effect on operations that high turnover and infighting among the Company's senior management were causing. (¶ 100(i)) | ¶¶ 59-67 |
| Laughlin Arcari (¶ 98) | "Cost of product sales continues to exceed product sales due to the high costs associated with low volume production.  We expect production volume to increase and our margins to improve.  We expect to continue to expand production operations during 2000." (¶ 98) | 8/14/00 (¶ 98) | 2Q:00 Form 10-Q (¶ 98) | It was not true that costs exceeded sales due to the high costs of low volume production and that the Company's margins would improve as production volume increased because (a) the Company was losing money on each unit of Apligraf sold because of the disadvantageous Novartis marketing agreement, and far from lowering costs, the more units of Apligraf that Organogenesis sold, the worse its margins would be; and (b) the Company was experiencing serious problems in manufacturing Apligraf, including manufacturing contamination and product recalls, and there was "no way" the Company could feasibly mass-produce Apligraf. (¶ 100(g)) | ¶¶ 62(a) and (b), 65 |
| Laughlin (¶ 99) | "Third quarter Apligraf achievements . . . laid an important foundation for future sales deve lopment." (¶ 99) | 10/3/00 (¶ 99) | Press Release (¶ 99) | Laughlin failed to disclose the fundamental marketing, management, and manufacturing problems that Organogenesis was experiencing, which actually led to a weakened foundation for developing future sales. | ¶¶ 47, 48, 50, 60, 61, 62 |

| **WHO**<br>said it | **WHAT**<br>was said | **WHEN**<br>it was said | **WHERE**<br>it was said | **WHY**<br>it was false or misleading | **Supporting**<br>**Evidence** |
|---|---|---|---|---|---|
| | | | | (¶ 100(h)) | |
| Laughlin<br>Sabolinski<br>Erani<br>Arcari<br>(¶ 101) | Organogenesis was still "in the process of transitioning from being a research Company to becoming an operating Company with a strong research base." (¶ 101) | 11/14/00<br>(¶ 101) | Press Release (¶ 101) | Defendants failed to disclose manufacturing, marketing, and distribution problems, the Company's inability to access vital funding to keep the company viable, the difficulties in achieving reimbursement for Apligraf, and the disruptive effect on operations that high turnover and infighting among the Company's senior management were causing. (¶ 104(a)) | ¶¶ 59-67 |
| Laughlin<br>(¶ 101) | "While unit volumes are still small, which adversely affects our cost of production, the trend is encouraging." (¶ 101) | 11/14/00<br>(¶ 101) | Press Release (¶ 101) | A.  Contrary to Laughlin's representations, Organogenesis was still experiencing substantial manufacturing problems, which were retarding and hindering the expansion of production scale. (¶ 104(b))<br><br>B.  As defendants were aware, the most important factor affecting cost of production was not "unit volumes," but rather the unfavorable terms of the Novartis contract, under which Organogenesis was reimbursed for only a fraction of production costs for units not sold and received a share of revenue on units that were sold that was far below cost. (¶ 104(b)) | A.  ¶¶ 62(a) and (b)<br><br><br><br><br>B.  ¶¶ 60, 65, 66 |

| WHO<br>said it | WHAT<br>was said | WHEN<br>it was said | WHERE<br>it was said | WHY<br>it was false or misleading | Supporting<br>Evidence |
|---|---|---|---|---|---|
| Laughlin Arcari (¶ 102) | "In the opinion of management, the accompanying consolidated financial statements include all adjustments, consisting of normal recurring adjustments, necessary for a fair presentation of the financial position, results of operations and changes in cash flows for the periods presented. . . ." (¶ 102) | 8/14/00 (¶ 102) | 3Q:00 Form 10-Q (¶ 102) | The 3Q:00 Form 10-Q did not reflect the true financial condition of Organogenesis because it failed to disclose manufacturing, marketing, and distribution problems, the Company's inability to access vital funding to keep the company viable, the difficulties in achieving reimbursement for Apligraf, and the disruptive effect on operations that high turnover and infighting among the Company's senior management were causing. (¶ 104(e)) | ¶¶ 59-67 |
| Laughlin Arcari (¶ 102) | "Cost of product sales continues to exceed product sales due to the high costs associated with low volume production.  We expect production volume to increase and our margins to improve." (¶ 102) | 8/14/00 (¶ 102) | 3Q:00 Form 10-Q (¶ 102) | A.  Defendants knew but failed to disclose that the Company was experiencing serious problems in manufacturing Apligraf, including manufacturing contamination and product recalls, and there was "no way" the Company could feasibly mass-produce Apligraf. (¶ 104(c))<br><br>B.  It was not true that the Company's margins would improve as production volume increased. Because the Company was losing money on each unit of Apligraf sold, far from lowering costs, the more units of Apligraf that Organogenesis sold, the worse its margins would be. (¶ 104(c)) | A.  ¶¶ 62(a) and (b)<br><br><br><br><br><br>B.  ¶ 65 |

| WHO<br>said it | WHAT<br>was said | WHEN<br>it was said | WHERE<br>it was said | WHY<br>it was false or misleading | Supporting<br>Evidence |
|---|---|---|---|---|---|
| Laughlin<br>(¶ 103) | "We are clearly beginning to see acceleration in the growth of Apligraf sales.  October and November establish a new, higher sales base on which to build.  While it is difficult to predict how the December holidays will impact sales, we expect to begin seeing in the first quarter the impact of the additional sales representatives that started this past summer."<br>(¶ 103) | 12/4/00<br>(¶ 103) | Press Release<br>(¶ 103) | A.  This statement gave the misleading impression that Apligraf sales were increasing due to Novartis' marketing and sales efforts, when in fact, according to former employees of Organogenesis, Novartis' lack of proper training experience and expertise in selling Apligraf was resulting in significant sales and marketing problems which were adversely impacting sales and future sales development. (¶ 104(d))<br><br>B.  Defendants knew, but failed to disclose that Organogenesis was experiencing serious manufacturing problems that were impacting sales and impairing future sales development prospects. (¶ 104(d)) | A.  ¶¶ 61(a)-(c)<br><br><br><br><br><br>B.  ¶¶ 47, 48, 50, 60, 61(b), 62 |

| **WHO**<br>said it | **WHAT**<br>was said | **WHEN**<br>it was said | **WHERE**<br>it was said | **WHY**<br>it was false or misleading | **Supporting**<br>**Evidence** |
|---|---|---|---|---|---|
| Laughlin<br>(¶ 105) | "Our Board is sensitive to shareholder dilution and views current market conditions as an opportunity to purchase shares that the Company considers to be undervalued in view of our prospects."<br>(¶ 105) | 12/6/00<br>(¶ 105) | Press Release<br>(¶ 105) | A.  Contrary to Laughlin's representations that the Company's stock was undervalued, defendants knew but failed to disclose that, according to the Confidential Arcari Document, defendant Erani sought to have stock brokers manipulate the market for the Company's stock. (¶ 108(b))<br><br>B.  Further, defendants knew but failed to disclose that the Company's ultimate prospects for profitability were compromised by manufacturing, marketing, and distribution problems, the Company's inability to access vital funding to keep the company viable, the difficulties in achieving reimbursement for Apligraf, and the disruptive effect on operations that high turnover and infighting among the Company's senior management were causing. (¶ 108(b)) | A.  ¶¶ 59, 60<br><br><br><br><br><br>B.  ¶¶ 59-67 |

| **WHO**<br>**said it** | **WHAT**<br>**was said** | **WHEN**<br>**it was said** | **WHERE**<br>**it was said** | **WHY**<br>**it was false or misleading** | **Supporting**<br>**Evidence** |
|---|---|---|---|---|---|
| Laughlin<br>(¶ 105) | "[T]he decision to authorize a stock buyback program demonstrates the confidence our Board has in the Company's future."<br>(¶ 105) | 12/6/00<br>(¶ 105) | Press Release<br>(¶ 105) | A.  Contrary to Laughlin's representations that the Company's stock was undervalued, defendants knew but failed to disclose that, according to the Confidential Arcari Document, defendant Erani sought to have stock brokers manipulate the market for the Company's stock. (¶ 108(b))<br><br>B.  Further, defendants knew but failed to disclose that the Company's ultimate prospects for profitability were compromised by manufacturing, marketing, and distribution problems, the Company's inability to access vital funding to keep the company viable, the difficulties in achieving reimbursement for Apligraf, and the disruptive effect on operations that high turnover and infighting among the Company's senior management were causing. (¶ 108(b)) | A.  ¶¶ 59, 60<br><br><br><br><br><br>B.  ¶¶ 59-67 |

| WHO<br>said it | WHAT<br>was said | WHEN<br>it was said | WHERE<br>it was said | WHY<br>it was false or misleading | Supporting<br>Evidence |
|---|---|---|---|---|---|
| Arcari<br>(¶ 106) | "We are pleased with the acceleration being seen in Apligraf sales growth."<br>(¶ 106) | 2/5/01<br>(¶ 106) | Press Release<br>(¶ 106) | A. This statement gave investors the misleading impression that the Company's sales efforts were succeeding when in fact, as confirmed by several former Organogenesis employees, Novartis' marketing team did not have the proper training experience or expertise in selling Apligraf, which resulted in significant sales and marketing problems.<br>(¶ 108(a))<br><br>B. Defendants also knew, but failed to disclose, that sales and future sales development prospects were being adversely affected by the Company's serious problems relating to the manufacturing of Apligraf.<br>(¶ 108(a)) | A. ¶¶ 47, 48, 50, 60, 61, 62<br><br><br><br><br><br>B. ¶¶48, 50, 60, 61(a)-(c) |
| Laughlin<br>(¶ 107) | "[The expansion of the Novartis deal] is a turning point for us. It's a major improvement in our economic situation. . . . [W]e will receive a substantial increase in the percentage of the revenue."<br>(¶ 107) | 2/27/01<br>(¶ 107) | Interview<br>(¶ 107) | As confirmed by former Organogenesis employees, even under the revised Novartis agreement, Organogenesis' share of revenue from Apligraf sales remained well below Organogenesis' manufacturing costs and could not lead to profitability. Additionally, under the revised terms of the agreement, Organogenesis was required to manufacture Apligraf in conformity with Novartis sales forecasts, which, according to a former Organogenesis employee, were "always inflated." Organogenesis took a "huge loss" every time Novartis was unable to sell units of Apligraf.<br>(¶ 108(e)) | ¶¶ 60, 61(b), 65, 66 |

| WHO<br>said it | WHAT<br>was said | WHEN<br>it was said | WHERE<br>it was said | WHY<br>it was false or misleading | Supporting<br>Evidence |
|---|---|---|---|---|---|
| Laughlin<br>(¶ 107) | "What we now feel with the increased revenue, with the funding support that we will get, we are now targeting to pass through break even and reach profitability in the [third] quarter of next year."<br>(¶ 107) | 2/27/01<br>(¶ 107) | Interview<br>(¶ 107) | This statement misled investors because defendants knew that there was no way that Organogenesis could ever reach profitability. Defendants were fully aware but failed to disclose that, even under the revised Novartis marketing agreement, Organogenesis would continue to lose money on every unit of Apligraf produced.  Additionally, defendants failed to disclose that Organogenesis did not have the ability to raise the full amount of the $20 million put option.<br>(¶ 108(f)) | ¶¶ 60, 65 |
| Laughlin<br>(¶ 107) | "[T]hey are truly convinced that there is major business here. . . . Everything is coming together.  I think they are saying, yes, this is working.  This is going to be very big business."<br>(¶ 107) | 2/27/01<br>(¶ 107) | Interview<br>(¶ 107) | A.  Defendants knew but failed to disclose that, according to the Confidential Arcari Document, defendant Erani sought to have stock brokers manipulate the market for the Company's stock.  (¶ 108(b) and (c))<br><br>B.  Further, defendants knew but failed to disclose that the Company's ultimate prospects for profitability were compromised by manufacturing, marketing, and distribution problems, the Company's inability to access vital funding to keep the company viable, the difficulties in achieving reimbursement for Apligraf, and the disruptive effect on operations that high turnover and infighting among the Company's senior management were causing.  (¶ 108(b) and (c)) | A.  ¶¶ 59, 60<br><br><br><br>B.  ¶¶ 59-67 |

| **WHO**<br>**said it** | **WHAT**<br>**was said** | **WHEN**<br>**it was said** | **WHERE**<br>**it was said** | **WHY**<br>**it was false or misleading** | **Supporting**<br>**Evidence** |
|---|---|---|---|---|---|
| Laughlin<br>(¶ 107) | "So any time during the next three years we are able at our discretion and our option to sell Novartis $20 million of shares. . . . [I]t is [a] wonderful safety net to have in our pocket."<br>(¶ 107) | 2/27/01<br>(¶ 107) | Interview<br>(¶ 107) | Contrary to Laughlin's description of the $20 million put option, Organogenesis in reality did not have the ability to raise the full amount of that funding at its discretion.  Defendants failed to disclose significant conditions precedent to the exercise of the option, which prevented the Company from accessing $10 million of the funding, ultimately leading to the Company's inability to fund operations in 2002.<br>(¶ 108(d)) | ¶¶ 60, 150 |
| Laughlin<br>(¶ 107) | "As we look into the things that go into our break even we are targeting to reach break even with or without those approvals [of additional products]."<br>(¶ 107) | 2/27/01<br>(¶ 107) | Interview<br>(¶ 107) | Defendants knew, but did not disclose, that, given the Company's loss of money on every unit of Apligraf produced, and the restrictions on the exercise of the $20 million put option, there was no way the company could break even based on sales of Apligraf alone.<br>(¶ 108(g)) | ¶¶ 60, 64, 65 |

| WHO<br>said it | WHAT<br>was said | WHEN<br>it was said | WHERE<br>it was said | WHY<br>it was false or misleading | Supporting<br>Evidence |
|---|---|---|---|---|---|
| Arcari<br>(¶ 110) | "Apligraf sales are showing sustained growth acceleration."<br>(¶ 110) | 3/5/01<br>(¶ 110) | Press Release<br>(¶ 110) | A.  This statement gave investors the misleading impression that the Company's sales efforts were succeeding when in fact, as confirmed by several former Organogenesis employees, Novartis' marketing team did not have the proper training experience or expertise in selling Apligraf, which inhibited sales and damaged future sales development prospects. (¶ 116(h))<br><br>B.  Defendants also knew, but failed to disclose that sales and future sales development prospects were being adversely affected by the Company's serious problems relating to the manufacturing of Apligraf. (¶ 116(h)) | A.  ¶¶ 47, 48, 50, 60, 61, 62<br><br><br><br><br><br><br>B.  ¶¶ 48, 50, 60, 61(a)-(c) |
| Arcari<br>(¶ 110) | "We are particularly pleased with this acceleration, because under the recently amended agreement with Novartis, Organogenesis now receives significantly higher payments for Apligraf."<br>(¶ 110) | 3/5/01<br>(¶ 110) | Press Release<br>(¶ 110) | As confirmed by former Organogenesis employees, even under the revised Novartis agreement, Organogenesis' share of revenue from Apligraf sales remained well below Organogenesis' manufacturing costs. Additionally, under the revised terms of the agreement, Organogenesis was required to manufacture Apligraf in conformity with Novartis sales forecasts, which, according to a former Organogenesis employee, were "always inflated."  Organogenesis took a "huge loss" every time Novartis was unable to sell units of Apligraf. (¶ 116(e)) | ¶¶ 60, 61(b), 65, 66 |

| WHO<br>said it | WHAT<br>was said | WHEN<br>it was said | WHERE<br>it was said | WHY<br>it was false or misleading | Supporting<br>Evidence |
|---|---|---|---|---|---|
| Laughlin<br>(¶ 112) | "Our first quarter 2001 financials will show an important increase in revenue due to a continuation of this higher unit growth rate as well as the significantly higher revenue per unit which we now receive from Novartis."<br>(¶ 112) | 3/30/01<br>(¶ 112) | Press Release<br>(¶ 112) | A.  Defendants were fully aware but failed to disclose that, even under the revised Novartis marketing agreement, Organogenesis would continue to lose money on every unit of Apligraf produced because revenue payments were well below the product's manufacturing cost.<br>(¶ 116(e))<br><br>B.  Defendants also knew, but failed to disclose that sales and future sales development prospects were being adversely affected by the Company's serious problems relating to the manufacturing of Apligraf.<br>(¶ 116(h)) | A.  ¶¶ 60, 65<br><br><br><br><br><br><br>B.  ¶¶ 48, 50, 60, 61(a)-(c) |
| Laughlin<br>(¶ 112) | "We are keeping a tight control on our corporate expenses while implementing programs to reduce our manufacturing costs."<br>(¶ 112) | 3/30/01<br>(¶ 112) | Press Release<br>(¶ 112) | Contrary to Laughlin's representation that Organogenesis was reducing manufacturing costs, the Company was incurring significant manufacturing costs due to the fact that under the revised Novartis marketing agreement, Organogenesis was required to produce Apligraf in sufficient quantities to meet Novartis' "always inflated" sales forecasts.<br>(¶ 116(i)) | ¶¶ 60, 62 |
| Laughlin<br>Erani<br>Arcari<br>(¶ 113) | Apligraf is "mass-produced."<br>(¶ 113) | 3/30/01<br>(¶ 113) | 2000 Form 10-K<br>(¶ 113) | Defendants knew but failed to disclose that the Company was experiencing serious problems in manufacturing Apligraf, including manufacturing contamination and product recalls, and there was "no way" the Company could feasibly mass-produce Apligraf.<br>(¶ 116(c)) | ¶¶ 62(a) and (b) |

| **WHO**<br>**said it** | **WHAT**<br>**was said** | **WHEN**<br>**it was said** | **WHERE**<br>**it was said** | **WHY**<br>**it was false or misleading** | **Supporting**<br>**Evidence** |
|---|---|---|---|---|---|
| Laughlin<br>Erani<br>Arcari<br>(¶ 113) | Apligraf is "available to physicians on demand."<br>(¶ 113) | 3/30/01<br>(¶ 113) | 2000 Form 10-K<br>(¶ 113) | Contrary to defendants' representation that Apligraf was so readily available, according to a former Tissue Engineering Specialist at Novartis during the class period, contamination of Apligraf frequently resulted in physicians not receiving the product when necessary as well as in recalls of the product after it had already been shipped out to physicians.  These issues caused increasing frustration and disappointment with the product among physicians.<br>(¶ 116(d)) | ¶¶ 60, 62 |
| Laughlin<br>Erani<br>Arcari<br>(¶ 113) | The recent amendment to the Novartis marketing agreement "significantly increases payments we receive for Apligraf units."<br>(¶ 113) | 3/30/01<br>(¶ 113) | 2000 Form 10-K<br>(¶ 113) | As confirmed by former Organogenesis employees, even under the revised Novartis agreement, Organogenesis' share of revenue from Apligraf sales remained well below Organogenesis' manufacturing costs. Additionally, under the revised terms of the agreement, Organogenesis was required to manufacture Apligraf in conformity with Novartis sales forecasts, which, according to a former Organogenesis employee, were "always inflated."  Organogenesis took a "huge loss" every time Novartis was unable to sell units of Apligraf.<br>(¶116(e) and (l)) | ¶¶ 60, 61(b), 64, 65, 66 |

| **WHO**<br>said it | **WHAT**<br>was said | **WHEN**<br>it was said | **WHERE**<br>it was said | **WHY**<br>it was false or misleading | **Supporting**<br>**Evidence** |
|---|---|---|---|---|---|
| Laughlin<br>Erani<br>Arcari<br>(¶ 113) | Organogenesis developed a "long-term strategic relationship with Novartis, who has marketing and sales forces with technical expertise and distribution capability."<br>(¶ 113) | 3/30/01<br>(¶ 113) | 2000 Form<br>10-K<br>(¶ 113) | Contrary to defendants' misleading representations, and as confirmed by several former Organogenesis employees, Novartis' marketing team did not have the proper training experience or expertise in selling Apligraf, which resulted in significant sales and marketing problems.  In fact, Novartis "had no idea what they were doing" when it came to manufacturing a living-tissue product like Apligraf.<br>(¶ 113(l)) | ¶¶ 50, 60, 61, 62 |
| Laughlin<br>Erani<br>Arcari<br>(¶ 113) | "We expect Apligraf commercial sales to continue to increase."<br>(¶ 113) | 3/30/01<br>(¶ 113) | 2000 Form<br>10-K<br>(¶ 113) | Defendants knew, but failed to disclose that the prospects for future sales growth were severely limited by (a) Novartis' lack of proper training, experience or expertise in selling Apligraf, which was resulting in significant sales and marketing problems and (b) significant problems with the manufacturing and distribution of Apligraf, which led to reluctance among physicians to order or to re-order Apligraf, thus damaging Apligraf's future sales development prospects.<br>(¶ 116(g)) | ¶¶ 48, 50, 60, 61(a)-(c) |

| WHO<br>said it | WHAT<br>was said | WHEN<br>it was said | WHERE<br>it was said | WHY<br>it was false or misleading | Supporting<br>Evidence |
|---|---|---|---|---|---|
| Laughlin<br>Erani<br>Arcari<br>(¶ 113) | "We expect production volume to increase due to recent Medicare progress with coverage for Apligraf . . . and expanded Novartis sales and marketing support."<br>(¶ 113) | 3/30/01<br>(¶ 113) | 2000 Form 10-K<br>(¶ 113) | A.  Defendants failed to disclose the increasing physician resistance to Apligraf due to significant problems with manufacture and distribution of the product, including contamination and product recalls.  Defendants also knew but did not disclose the difficulties they were encountering in obtaining Medicare and Medicaid reimbursement for Apligraf. (¶116(d)and (k)) | A.  ¶¶ 60, 62 |
|  |  |  |  | B.  This statement gave the misleading impression that Apligraf sales were increasing due to Novartis' superior marketing and sales efforts, when in fact, according to former employees of Organogenesis, Novartis' lack of proper training, experience and expertise in selling Apligraf was resulting in significant sales and marketing problems which were adversely impacting sales and future sales development. (¶ 116(l)) | B.  ¶¶ 61(a)-(c) |
|  |  |  |  | C.  Defendants knew, but failed to disclose that Organogenesis was experiencing serious manufacturing problems that were impacting sales and impairing future sales development prospects. (¶ 116(g)-(i)) | C.  ¶¶ 47, 48, 50, 60, 61(b), 62 |

| **WHO**<br>said it | **WHAT**<br>was said | **WHEN**<br>it was said | **WHERE**<br>it was said | **WHY**<br>it was false or misleading | **Supporting**<br>**Evidence** |
|---|---|---|---|---|---|
| Laughlin<br>Erani<br>Arcari<br>(¶ 113) | "[W]e believe existing working capital at December 31, 2000, together with the proceeds of product and other revenues in 2001 and proceeds available from exercising a portion or all of a $20,000,000 equity security put with Novartis, which is at our discretion, will be sufficient to finance operations through at least the first quarter of 2002."<br>(¶ 113) | 3/30/01<br>(¶ 113) | 2000 Form 10-K<br>(¶ 113) | As defendants were well aware, but did not disclose, (a) revenues from Apligraf sales were well below costs of production and thus the product was causing Organogenesis to lose money; and (b) significant conditions precedent to the exercise of the put option prevented the company from accessing $10 million of the put option funding, which ultimately led to the company's inability to fund operations in 2002.<br>(¶ 116(m)) | ¶¶ 60, 65 |
| PwC<br>(¶ 114) | "In our opinion, the accompanying consolidated financial statements [Organogenesis' 2000 Form 10-K] . . . present fairly, in all material respects, the financial position of Organogenesis. . . ."<br>(¶ 114) | 3/31/01<br>(¶ 114) | Report of Independent Accountants<br>(¶ 114) | PricewaterhouseCoopers' certification of Organogenesis' financial statements failed to disclose that, according to the Confidential Arcari Document, PricewaterhouseCoopers' confidence in the senior officers and directors of Organogenesis had been eroded, and Organogenesis had lost credibility in the eyes of PricewaterhouseCoopers.<br>(¶ 116(n)) | ¶ 60 |
| Laughlin<br>Sabolinski<br>Erani<br>Arcari<br>(¶ 117) | A new marketing agreement with Novartis gave Organogenesis "significantly higher payments" on sales of Apligraf.<br>(¶ 117) | 4/27/01<br>(¶ 117) | Press Release<br>(¶ 117) | This statement misled investors because it failed to disclose that even under the amended agreement, Organogenesis was still receiving revenue payments from Novartis that were well below the product's manufacturing cost. As a result, Organogenesis was losing money on every unit of Apligraf.<br>(¶ 119(d)) | ¶ 60 |

| WHO<br>said it | WHAT<br>was said | WHEN<br>it was said | WHERE<br>it was said | WHY<br>it was false or misleading | Supporting<br>Evidence |
|---|---|---|---|---|---|
| Laughlin<br>Sabolinski<br>Erani<br>Arcari<br>(¶ 117) | Product revenues for the first quarter of 2001 were up "due to increased sales of Apligraf and the higher payments Organogenesis now receives from Novartis for each unit of Apligraf."<br>(¶ 117) | 4/27/01<br>(¶ 117) | Press Release<br>(¶ 117) | Defendants knew but failed to disclose that Organogenesis was incurring significant manufacturing costs because the revised Novartis marketing agreement required Organogenesis to produce Apligraf in sufficient quantities to meet Novartis' "always inflated" sales forecasts. For every unit of Apligraf manufactured but not sold, Organogenesis was required to bear an even greater share of the manufacturing costs than for units that were sold.<br>(¶ 119(e)) | ¶¶ 60, 64, 65 |
| Arcari<br>(¶ 117) | "Not only did product revenue increase, but per unit costs decreased as a result of process improvements. We tightly controlled our corporate expenses while increasing our investment in process development to further reduce manufacturing costs."<br>(¶ 117) | 4/27/01<br>(¶ 117) | Press Release<br>(¶ 117) | Contrary to Arcari's representation that Organogenesis was reducing manufacturing costs, the Company was incurring significant manufacturing costs due to the fact that under the revised Novartis marketing agreement, Organogenesis was required to produce Apligraf in sufficient quantities to meet Novartis' "always inflated" sales forecasts.<br>(¶ 119(e)) | ¶¶ 60, 64, 65 |

| WHO<br>said it | WHAT<br>was said | WHEN<br>it was said | WHERE<br>it was said | WHY<br>it was false or misleading | Supporting<br>Evidence |
|---|---|---|---|---|---|
| Laughlin<br>Arcari<br>(¶ 118) | "In the opinion of management, the accompanying consolidated financial statements include all adjustments, consisting of normal recurring adjustments, necessary for a fair presentation of the financial position, results of operations, and changes in cash flows for the periods presented."<br>(¶ 118) | 4/27/01<br>(¶ 118) | 1Q:01 Form 10-Q<br>(¶ 118) | The 1Q:01 Form 10-Q did not reflect the true financial condition of Organogenesis because it failed to disclose manufacturing, marketing, and distribution problems, the Company's inability to access vital funding to keep the company viable, the difficulties in achieving reimbursement for Apligraf, and the disruptive effect on operations that high turnover and infighting among the Company's senior management were causing.<br>(¶ 119(g)) | ¶¶ 59-67 |

| **WHO**<br>said it | **WHAT**<br>was said | **WHEN**<br>it was said | **WHERE**<br>it was said | **WHY**<br>it was false or misleading | **Supporting**<br>**Evidence** |
|---|---|---|---|---|---|
| Laughlin Arcari<br>(¶ 118) | "Cost of product sales continues to exceed product sales due to the high costs associated with low volume production.  We expect production volume to increase and our margins to continue to improve during 2001."<br>(¶ 118) | 4/27/01<br>(¶ 118) | 1Q:01 Form 10-Q<br>(¶ 118) | A.  Defendants knew but failed to disclose that the Company was experiencing serious problems in manufacturing Apligraf, including manufacturing contamination and product recalls, and there was "no way" the Company could feasibly mass-produce Apligraf.<br>(¶ 119(f))<br><br>B.  It was not true that costs exceeded sales due to the high costs of low volume production, and that the company's margins would improve as production volume increased.  As confirmed by former Organogenesis employees, it was well known by upper management that Organogenesis was losing money on every sale of Apligraf because of the disadvantageous terms of the revised Novartis marketing agreement, under which Novartis shared revenue from Apligraf sales that was well below the product's manufacturing cost to Organogenesis.  As such, the more units of Apligraf produced, the worse Organogenesis' margins would be.<br>(¶ 119(f)) | A.  ¶¶ 62(a) and (b)<br><br>B.  ¶ 60 |

| WHO<br>said it | WHAT<br>was said | WHEN<br>it was said | WHERE<br>it was said | WHY<br>it was false or misleading | Supporting<br>Evidence |
|---|---|---|---|---|---|
| Laughlin Arcari (¶ 118) | "[W]e believe existing working capital at December 31, 2000, together with the proceeds of product and other revenues in 2001 and proceeds available from sales of shares to the underwriter and/or exercising a portion or all of a $20,000,000 equity security put with Novartis, which is at our discretion, will be sufficient to finance operations through at least the first quarter of 2002." (¶ 118) | 4/27/01 (¶ 118) | 1Q:01 Form 10-Q (¶ 118) | A.  Contrary to defendants' representations about the certainty of the $20 million option, Organogenesis in reality did not have the ability to raise the full amount of that funding option at the discretion of the company.  As defendants knew well, but did not disclose, there were significant conditions precedent to the exercise of the put option that prevented the company from accessing $10 million of the funding, which ultimately led to the Company's inability to fund operations in 2002. (¶ 119(b) and (c)) | A.  ¶¶ 60, 150 |

| WHO said it | WHAT was said | WHEN it was said | WHERE it was said | WHY it was false or misleading | Supporting Evidence |
|---|---|---|---|---|---|
| Sabolinski (¶ 125) | "The May sales figures show sustained support for Apligraf use, and we have accelerated our plans to ramp up production to meet the strong growth forecast for the second half of this year." (¶ 125) | 6/5/01 (¶ 125) | Press Release (¶ 125) | Defendants misled investors because they failed to disclose that significant manufacturing and distribution problems, contamination issues, inadequate market support, and difficulties in obtaining reimbursement for Apligraf were causing increasing frustration among physicians, who were becoming less willing to order or re-order Apligraf for their patients. Further, defendants also knew but failed to disclose that the strong growth forecast was illusory, given that Novartis' sales forecasts were "always inflated." (¶ 133(d)) | ¶¶ 59-67 |
| Sabolinski (¶ 128) | "We are delighted with the growth in sales seen between June and July. Apligraf unit sales have multiple drivers in place. . . . We are planning accelerating growth in Apligraf production to meet the increasing demand anticipated." (¶ 128) | 8/2/01 (¶ 128) | Press Release (¶ 128) | Defendants misled investors because they failed to disclose significant manufacturing, marketing, and distribution problems, the Company's inability to access vital funding to keep the company viable, and the difficulties in achieving reimbursement for Apligraf, which were causing increasing frustration among physicians, who were becoming less willing to order or re-order Apligraf for their patients. Further, defendants also knew but failed to disclose that the increasing demand was illusory, given that Novartis' sales forecasts were "always inflated." (¶ 133(d)) | ¶¶ 59-67 |

| WHO<br>said it | WHAT<br>was said | WHEN<br>it was said | WHERE<br>it was said | WHY<br>it was false or misleading | Supporting<br>Evidence |
|---|---|---|---|---|---|
| Sabolinski<br>Erani<br>Arcari<br>(¶ 130) | "[There was] sustained market demand for Apligraf and the Company accelerated its plans to ramp up production to meet the strong sales forecast for the second half of this year."<br>(¶ 130) | 8/13/01<br>(¶ 130) | Press<br>Release<br>(¶ 130) | Defendants misled investors because they failed to disclose significant manufacturing, marketing, and distribution problems, the Company's inability to access vital funding to keep the company viable, and the difficulties in achieving reimbursement for Apligraf, which were causing increasing frustration among physicians, who were becoming less willing to order or re-order Apligraf for their patients. Further, defendants also knew but failed to disclose that the sustained market demand was illusory, given that Novartis' sales forecasts were "always inflated."<br>(¶ 133(d)) | ¶¶ 59-67 |
| Arcari<br>(¶ 130) | "To strengthen our cash position, we have exercised our right to sell Novartis $10 million in equity."<br>(¶ 130) | 8/13/01<br>(¶ 130) | Press<br>Release<br>(¶ 130) | Arcari's statement was materially misleading and incomplete because Arcari knew but failed to disclose that the Company was informed that defendant Erani had sought to have stock brokers "manipulate the market for the Company's stock."<br>(¶ 133(b)) | ¶ 59 |

| **WHO**<br>**said it** | **WHAT**<br>**was said** | **WHEN**<br>**it was said** | **WHERE**<br>**it was said** | **WHY**<br>**it was false or misleading** | **Supporting**<br>**Evidence** |
|---|---|---|---|---|---|
| Arcari<br>(¶ 130) | "We retain the right to sell Novartis an additional $10 million in equity."<br>(¶ 130) | 8/13/01<br>(¶ 130) | Press Release<br>(¶ 130) | Contrary to defendants' representations about the certainty of the $20 million option, Organogenesis in reality did not have the ability to raise the full amount of that funding option at the discretion of the company. As defendants knew well, but did not disclose, there were significant conditions precedent to the exercise of the put option that prevented the company from accessing $10 million of the funding, which ultimately led to the Company's inability to fund operations in 2002.<br>(¶ 133(c)) | ¶¶ 60, 150 |
| Arcari<br>Sabolinski<br>(¶ 131) | "In the opinion of management, the accompanying consolidated financial statements include all adjustments, consisting of normal recurring adjustments, necessary for a fair presentation of the financial position, results of operations, and changes in cash flows for the periods presented. . . . "<br>(¶ 131) | 8/14/01<br>(¶ 131) | 2Q:01 Form 10-Q<br>(¶ 131) | The 2Q:01 Form 10-Q did not reflect the true financial condition of Organogenesis because it failed to disclose manufacturing, marketing, and distribution problems, the Company's inability to access vital funding to keep the company viable, the difficulties in achieving reimbursement for Apligraf, and the disruptive effect on operations that high turnover and infighting among the Company's senior management were causing.<br>(¶ 133(f)) | ¶¶ 59-67 |

| WHO<br>said it | WHAT<br>was said | WHEN<br>it was said | WHERE<br>it was said | WHY<br>it was false or misleading | Supporting<br>Evidence |
|---|---|---|---|---|---|
| Arcari<br>Sabolinski<br>(¶ 131) | "We expect production volume to increase and our margins to continue to improve during 2001."<br>(¶ 131) | 8/14/01<br>(¶ 131) | 2Q:01 Form 10-Q<br>(¶ 131) | A.  Defendants knew but failed to disclose that the Company was experiencing serious problems in manufacturing Apligraf, including manufacturing contamination and product recalls, and there was "no way" the Company could feasibly mass-produce Apligraf.<br>(¶ 133(e))<br><br>B.  It was not true that the Company's margins would improve as production volume increased. Because the Company was losing money on each unit of Apligraf sold, far from lowering costs, the more units of Apligraf that Organogenesis sold, the worse its margins would be.<br>(¶ 133(e)) | A.  ¶¶ 62(a) and (b)<br><br><br><br><br><br><br>B.  ¶ 65 |
| Sabolinski<br>(¶ 135) | "We are pleased with the sustained strength in Apligraf sales that has been seen through the summer months."<br>(¶ 135) | 9/6/01<br>(¶ 135) | Press Release<br>(¶ 135) | Defendants misled investors because they failed to disclose significant manufacturing, marketing, and distribution problems, the Company's inability to access vital funding to keep the company viable, and the difficulties in achieving reimbursement for Apligraf, which were causing increasing frustration among physicians, who were becoming less willing to order or re-order Apligraf for their patients. Further, defendants also knew but failed to disclose that the sustained strength in Apligraf sales was illusory, given that Novartis' sales forecasts were "always inflated."<br>(¶ 145(d)) | ¶¶ 59-67 |

| WHO<br>said it | WHAT<br>was said | WHEN<br>it was said | WHERE<br>it was said | WHY<br>it was false or misleading | Supporting<br>Evidence |
|---|---|---|---|---|---|
| Sabolinski<br>(¶ 136) | "We anticipate increasing this production rate in the near term to meet forecasted demand."<br>(¶ 136) | 9/7/01<br>(¶ 136) | Press Release<br>(¶ 136) | This statement was materially misleading and incomplete because Organogenesis was continuing to experience significant manufacturing and marketing problems which made it unfeasible to sufficiently increase the production scale. Additionally, the purported forecasted demand was illusory, given that Novartis' sales forecasts were "always inflated."<br>(¶ 145(e)) | ¶¶ 59-67 |
| Sabolinski<br>(¶ 138) | "We look forward to having these [new] products contributing to the overall profitability of the Company."<br>(¶ 138) | 9/24/01<br>(¶ 138) | Press Release<br>(¶ 138) | Contrary to Sabolinski's representations that new initiatives were helping to make Organogenesis profitable, defendants knew that the Company's chances for achieving profitability were compromised by manufacturing, marketing, and distribution problems, the Company's inability to access vital funding to keep the company viable, the difficulties in achieving reimbursement for Apligraf, and the disruptive effect on operations that high turnover and infighting among the Company's senior management were causing.<br>(¶ 145(c)) | ¶¶ 59-67 |
| Sabolinski<br>(¶ 141) | "We are pleased to have completed this round of financing, an important step in achieving key corporate milestones including realizing profitability sooner."<br>(¶ 141) | 10/16/01<br>(¶ 141) | Press Release<br>(¶ 141) | Sabolinski's statement misled investors because he failed to disclose that defendant Erani sought to have stock brokers "manipulate the market for the Company's stock."<br>(¶ 145(b)) | ¶ 59 |

| WHO<br>said it | WHAT<br>was said | WHEN<br>it was said | WHERE<br>it was said | WHY<br>it was false or misleading | Supporting<br>Evidence |
|---|---|---|---|---|---|
| Arcari<br>Sabolinski<br>(¶ 144) | "In the opinion of management, the accompanying consolidated financial statements include all adjustments, consisting of normal recurring adjustments, necessary for a fair presentation of the financial position, results of operations, and changes in cash flows for the periods presented. . . . "<br>(¶ 144) | 11/14/01<br>(¶ 144) | 3Q:01 Form 10-Q<br>(¶ 144) | The 3Q:01 Form 10-Q did not reflect the true financial condition of Organogenesis because it failed to disclose manufacturing, marketing, and distribution problems, the Company's inability to access vital funding to keep the company viable, the difficulties in achieving reimbursement for Apligraf, and the disruptive effect on operations that high turnover and infighting among the Company's senior management were causing.<br>(¶ 145(g)) | ¶¶ 59-67 |
| Arcari<br>Sabolinski<br>(¶ 144) | "We expect production volume to increase and our margins to continue to improve during the remainder of 2001."<br>(¶ 144) | 11/14/01<br>(¶ 144) | 3Q:01 Form 10-Q<br>(¶ 144) | A.  Defendants knew but failed to disclose that the Company was experiencing serious problems in manufacturing Apligraf, including manufacturing contamination and product recalls, and there was "no way" the Company could feasibly mass-produce Apligraf.<br>(¶ 145(f))<br><br>B.  It was not true that the Company's margins would improve as production volume increased. Because the Company was losing money on each unit of Apligraf sold, far from lowering costs, the more units of Apligraf that Organogenesis sold, the worse its margins would be.<br>(¶ 145(f)) | A.  ¶¶ 62(a) and (b)<br><br><br><br><br><br><br>B.  ¶ 65 |