UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

IN RE ORGANOGENESIS SECURITIES
LITIGATION

Civ. No. 04-10027-JLT

## ANSWER AND AFFIRMATIVE DEFENSES OF DEFENDANT DONNA ABELLI LOPOLITO TO CORRECTED CONSOLIDATED AMENDED COMPLAINT

Defendant Ms. Donna Abelli Lopolito ("Ms. Lopolito"), based on her knowledge and information and belief, hereby answers the Corrected Consolidated Amended Class Action Complaint for Violation of the Federal Securities Laws ("Complaint" or "Compl."), dated December 22, 2004.  In responding to the Complaint, Ms. Lopolito does not admit that she bears the burden of proving any of the defenses set forth below, nor the relevance of any of plaintiffs' allegations.  Ms. Lopolito further states that she lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning events allegedly occurring after she left Organogenesis, Inc. on April 30, 2000, and on that basis denies them.  To the extent not explicitly admitted, all allegations of the Complaint are denied.

## FIRST DEFENSE

Ms. Lopolito denies each allegation except where specifically admitted, and in every respect denies liability, denies that she engaged in any improper conduct and denies that plaintiffs are entitled to relief.  Ms. Lopolito presently is without personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning plaintiffs' unidentified sources, including whether the source(s) actually provided the information attributed to them.  Ms. Lopolito responds to the specifically numbered allegations of the Complaint as follows:

To the extent that any response is required to plaintiffs' unnumbered Introductory Paragraph, Ms. Lopolito denies each and every allegation therein.

1.      With respect to Paragraph 1, no response is required to the allegations of that paragraph, which sets forth plaintiffs' characterization of this action, consists of legal conclusions, and does not purport to require a response from Defendants.  To the extent that this paragraph purports to contain factual assertions requiring a response, Ms. Lopolito admits that plaintiffs assert that this is a federal class action asserting claims under the Securities Exchange Act of 1934 (the "Exchange Act").  Ms. Lopolito denies that any acts occurred to give rise to violation of this Act or any other securities laws, and further denies that this action may be properly maintained as a class action.  Ms. Lopolito otherwise denies each and every allegation in Paragraph 1.

2.      With respect to Paragraph 2, Ms. Lopolito admits that during the putative Class Period Organogenesis, Inc. ("Organogenesis" or "the Company") manufactured Apligraf, which has been described as a unique skin replacement therapy used for severe skin wounds.  No response is required to the allegation concerning Organogenesis' revenue during the putative Class Period, which is set forth in publicly filed financial statements that speak for themselves. To the extent a response is required, Ms. Lopolito denies that plaintiffs completely and accurately construe and characterize those documents.  Ms. Lopolito lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning Apligraf and the Company's revenues after she left the Company on April 30, 2000, and on that basis denies them.  Ms. Lopolito otherwise denies each and every allegation in Paragraph 2.

3.      With respect to Paragraph 3, no response is required to those allegations purporting to construe and paraphrase unidentified 1999 public statements, which speak for

US1DOCS 5275437v1

themselves.  Ms. Lopolito admits that prior to and during the putative Class Period, the Company issued public statements and public filings related to its marketing agreements, its funding and its profitability, which speak for themselves.  To the extent a response to these allegations is required, Ms. Lopolito denies that plaintiffs completely and accurately construe and characterize those documents.  Ms. Lopolito admits that Organogenesis and Novartis Pharma AG (formerly Sandoz Pharma Ltd.) ("Novartis") were parties to certain contracts during the putative Class Period (collectively referred to herein as "the Novartis Contracts"), and that those documents set forth the terms of the parties' relationship.  No response is required to those allegations purporting to construe and characterize the Novartis Contracts, which speak for themselves.  To the extent a response is required, Ms. Lopolito denies Paragraph 3 completely and accurately construes and characterizes the Novartis Contracts and the parties' relationship as set forth therein.  Ms. Lopolito lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning communications allegedly made after she left the Company on April 30, 2000, and on that basis denies them.  Ms. Lopolito otherwise denies each and every allegation in Paragraph 3.

4.    With respect to Paragraph 4, Ms. Lopolito denies that the Company filed a Form 10-K with the Securities and Exchange Commission ("SEC") on March 29, 2000, but admits that the Company filed a Form 10-K with the SEC on or about March 30, 2000.  Ms. Lopolito further admits that the Form 10-K disclosed the Company's financial plan, including the need to secure additional funding.  No further response is required to the remaining allegations of Paragraph 4, which purport to construe and excerpt that document, which speaks for itself.  To the extent any further response is required, Ms. Lopolito denies that Paragraph 4 completely and accurately construes and excerpts that document.  Ms. Lopolito lacks personal knowledge or information

-3-

sufficient to form a belief as to the truth of the allegations concerning representations allegedly made after she left the Company on April 30, 2000, and on that basis denies them.  Ms. Lopolito otherwise denies each and every allegation in Paragraph 4.

5.      With respect to Paragraph 5, Ms. Lopolito lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning the purported beliefs of plaintiffs and other members of the purported class, and on that basis denies them.  Ms. Lopolito further lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning what, if anything, unidentified "[d]efendants repeatedly stated" in unidentified statements, and on that basis denies them.  Ms. Lopolito further lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning representations allegedly made after she left the Company on April 30, 2000, and on that basis denies them.  Ms. Lopolito admits that Organogenesis and Novartis were parties to the Novartis Contracts, and that those documents set forth the terms of the parties' relationship.  No response is required to those allegations purporting to construe and characterize the Novartis Contracts, which speak for themselves.  To the extent any further response is required, Ms. Lopolito denies that Paragraph 5 completely and accurately construes and characterizes the Novartis Contracts and the parties' relationship as set forth therein.  Ms. Lopolito otherwise denies each and every allegation in Paragraph 5.[1]

6.      With respect to Paragraph 6, Ms. Lopolito admits that the Company issued public statements and public filings related to its Apligraf product, the Company's funding and the Company's business plan.  Ms. Lopolito lacks personal knowledge or information sufficient to

_____

[1] With respect to footnote 1, Ms. Lopolito lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning contracts allegedly made between Organogenesis and Novartis after she left the Company on April 30, 2000.  No response is required to the allegations of that footnote, which consists of plaintiffs' characterization of "'put' options."  To the extent any further response is required, Ms. Lopolito otherwise denies each and every allegation in footnote 1.

-4-

form a belief as to the truth of the allegations concerning the statements of unidentified "defendants," and on that basis denies them. Ms. Lopolito further states that no response is required to those allegations purporting to construe and characterize unidentified public statements, which speak for themselves. Ms. Lopolito denies that Paragraph 6 accurately and completely construes and characterizes such statements. Ms. Lopolito lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning representations allegedly made after she left the Company on April 30, 2000, and on that basis denies them. Ms. Lopolito otherwise denies each and every allegation in Paragraph 6.

7.    With respect to Paragraph 7, Ms. Lopolito lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning the information purportedly obtained through any investigation by plaintiffs' counsel or their representatives, and on that basis denies them. Ms. Lopolito further lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning events allegedly occurring after she left the Company on April 30, 2000, and on that basis denies them. Ms. Lopolito otherwise denies each and every allegation in Paragraph 7.

8.    With respect to Paragraph 8, Ms. Lopolito lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning events allegedly occurring after she left the Company on April 30, 2000, and on that basis denies them. Ms. Lopolito otherwise denies each and every allegation in Paragraph 8.

9.    With respect to Paragraph 9, Ms. Lopolito lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning events allegedly occurring after she left the Company on April 30, 2000, and on that basis denies them. Ms. Lopolito otherwise denies each and every allegation in Paragraph 9.

US1DOCS 5275437v1

10.    With respect to Paragraph 10, Ms. Lopolito admits that, following the close of the putative Class Period, Organogenesis initiated a bankruptcy proceeding in the United States Bankruptcy Court for the District of Massachusetts, Eastern Division.  No response is required to those allegations concerning the facts or proceedings of the bankruptcy, which are set forth in court papers filed and orders entered in that proceeding, which speak for themselves.  Ms. Lopolito lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning events allegedly occurring after she left the Company on April 30, 2000, and on that basis denies them.  Ms. Lopolito otherwise denies each and every allegation in Paragraph 10.

11.    With respect to Paragraph 11, Ms. Lopolito lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning events allegedly occurring after she left the Company on April 30, 2000, and on that basis denies them.  Ms. Lopolito otherwise denies each and every allegation in Paragraph 11.

12.    With respect to Paragraph 12, no response is required to the allegations of that paragraph, which are not directed to Ms. Lopolito, and which concern the purported actions of non-party PricewaterhouseCoopers.  To the extent a response is required, Ms. Lopolito admits that PricewaterhouseCoopers served as Organogenesis' independent auditor from the inception of the putative Class Period through at least April 30, 2000.  Ms. Lopolito lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning Pricewaterhouse Coopers after she left the Company on April 30, 2000, and on that basis denies them.  Ms. Lopolito lacks personal knowledge or information sufficient to form a belief as to the allegations concerning the purported conduct or beliefs of PricewaterhouseCoopers, and on that basis denies them.  Ms. Lopolito otherwise denies each and every allegation in Paragraph 12.

With respect to Paragraph 12(a), no response is required to the allegations of that paragraph, which are not directed to Ms. Lopolito, and which concern the purported actions of non-party PricewaterhouseCoopers.  To the extent a response is required, Ms. Lopolito lacks personal knowledge or information sufficient to form a belief as to the allegations concerning the purported conduct or beliefs of PricewaterhouseCoopers, and on that basis denies them.  Ms. Lopolito lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning events allegedly occurring after she left the Company on April 30, 2000, and on that basis denies them.  Ms. Lopolito otherwise denies each and every allegation in Paragraph 12(a).

With respect to Paragraph 12(b), no response is required to the allegations of that paragraph, which are not directed to Ms. Lopolito, and which concern the purported actions of non-party PricewaterhouseCoopers.  To the extent a response is required, Ms. Lopolito admits that PricewaterhouseCoopers served as Organogenesis' independent auditor from the inception of the putative Class Period through at least April 30, 2000, and thus certified and audited the Company's financial statements as set forth in the 1999 Form 10-K, filed March 30, 2000, which speaks for itself.  Ms. Lopolito lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning events allegedly occurring after she left the Company on April 30, 2000, and on that basis denies them.  Ms. Lopolito lacks personal knowledge or information sufficient to form a belief as to the allegations concerning the purported conduct or beliefs of PricewaterhouseCoopers, and on that basis denies them.  Ms. Lopolito otherwise denies each and every allegation in Paragraph 12(b).

With respect to Paragraph 12(c), no response is required to the allegations of that paragraph, which are not directed to Ms. Lopolito, and which concern the purported actions of

US1DOCS 5275437v1

non-party PricewaterhouseCoopers. To the extent a response is required, Ms. Lopolito lacks personal knowledge or information sufficient to form a belief as to the allegations concerning the purported conduct or beliefs of PricewaterhouseCoopers, and on that basis denies them. Ms. Lopolito further lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning events allegedly occurring after she left the Company on April 30, 2000, and on that basis denies them. No response is required to the allegations in footnote 2, which consist of plaintiffs' legal conclusions and characterizations of the term "comfort letter." Ms. Lopolito otherwise denies each and every allegation in Paragraph 12(c).

With respect to Paragraph 12(d), no response is required to the allegations of that paragraph, which are not directed to Ms. Lopolito, and which concern the purported actions of non-party PricewaterhouseCoopers. To the extent a response is required, Ms. Lopolito lacks personal knowledge or information sufficient to form a belief as to the allegations concerning the purported conduct or beliefs of PricewaterhouseCoopers, and on that basis denies them. Ms. Lopolito further lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning events allegedly occurring after she left the Company on April 30, 2000, and on that basis denies them. Ms. Lopolito otherwise denies each and every allegation in Paragraph 12 (d).

13.    With respect to Paragraph 13, Ms. Lopolito lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning events allegedly occurring after she left the Company on April 30, 2000, and on that basis denies them. No response is required to those allegations concerning plaintiffs' opinion as to when an alleged "going concern opinion" "should have" been issued, which consist of legal conclusions. Ms. Lopolito otherwise denies each and every allegation in Paragraph 13.

14.     With respect to Paragraph 14, Ms. Lopolito lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning events allegedly occurring after she left the Company on April 30, 2000, and on that basis denies them. Ms. Lopolito otherwise denies each and every allegation in Paragraph 14.

15.     With respect to Paragraph 15, Ms. Lopolito lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning events allegedly occurring after she left the Company on April 30, 2000, and on that basis denies them. Ms. Lopolito admits that on March 7, 2000, Organogenesis' stock price reached an intra-day price as high as $22.00, but denies that it closed at this price. Ms. Lopolito otherwise denies each and every allegation in Paragraph 15.

16.     With respect to Paragraph 16, Ms. Lopolito admits that, following the close of the putative Class Period, Organogenesis initiated a bankruptcy proceeding in the United States Bankruptcy Court for the District of Massachusetts, Eastern Division. No response is required to those allegations concerning the facts or proceedings of the bankruptcy, which are set forth in court papers filed and orders entered in that proceeding, which speak for themselves. Ms. Lopolito lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning events allegedly occurring after she left the Company on April 30, 2000, and on that basis denies them. Ms. Lopolito otherwise denies each and every allegation in Paragraph 16.

17.     With respect to Paragraph 17, no response is required to the allegations of that paragraph, which consist of legal conclusions. To the extent a response is required, Ms. Lopolito admits that plaintiffs purport to bring claims pursuant to Sections 10(b) and 20(a) of the Exchange Act [15 U.S.C. §§ 78j(b) and 78t(a)] and Rule 10b-5 promulgated thereunder by the

SEC [17 C.F.R. §240.10b-5]. Ms. Lopolito otherwise denies each and every allegation in Paragraph 17.

18.    With respect to Paragraph 18, no response is required to the allegations of that paragraph, which consist of legal conclusions regarding this Court's jurisdiction. To the extent a response is required, Ms. Lopolito denies each and every allegation in Paragraph 18.

19.    With respect to Paragraph 19, no response is required to the allegations in the first sentence of that paragraph, which consist of legal conclusions with respect to venue. Ms. Lopolito admits that during the putative Class Period Organogenesis maintained its principal place of business in this District, but otherwise denies the allegations in the second sentence in Paragraph 19. Ms. Lopolito lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning events allegedly occurring after she left the Company on April 30, 2000, and on that basis denies them. Ms. Lopolito otherwise denies each and every allegation in Paragraph 19.

20.    With respect to Paragraph 20, no response is required to the allegations of Paragraph 20, which consist of legal conclusions. To the extent a response is required, Ms. Lopolito denies each and every allegation in Paragraph 20.

21.    With respect to Paragraph 21, Ms. Lopolito admits that the Court appointed Bruno Hofmann, John H. Bowie, Jr., Richard Madigan and Richard Conen as Lead Plaintiffs by an Order dated July 20, 2004. Ms. Lopolito specifically denies that any person or entity acquired Organogenesis stock at artificially inflated prices or that any person or entity was damaged. Ms. Lopolito otherwise denies each and every allegation in Paragraph 21.

22.    With respect to Paragraph 22, Ms. Lopolito admits that, during the purported Class Period, Organogenesis was a Delaware corporation with its principal place of business at

US1DOCS 5275437v1

150 Dan Road, Canton, Massachusetts 02021, and that, during the putative Class Period,

Organogenesis designed, manufactured and sold medical products containing living cells and/or

natural connective tissue, including living tissue replacements, cell-based organ asset devices

and other tissue-engineered products.  Ms. Lopolito further admits that for a portion of the

putative Class Period, Apligraf was the only product containing living human cells to have

gained U.S. Food and Drug Administration ("FDA") PMA marketing approval in the United

States.  Ms. Lopolito lacks personal knowledge or information sufficient to form a belief as to

the truth of the allegations relating to the activities or marketing efforts of non-party

Organogenesis after she left the Company on April 30, 2000, and on that basis denies them.  Ms.

Lopolito otherwise denies each and every allegation in Paragraph 22.

   23.  With respect to Paragraph 23, Ms. Lopolito admits that at certain points during

the putative Class Period, non-party Novartis held shares of Organogenesis stock, but states that

she lacks personal knowledge or information sufficient to form a belief as to the truth of the

allegations concerning Novartis' ownership of Organogenesis' stock, or the parties' relationship,

after she left the Company on April 30, 2000, and on that basis denies them.  Ms. Lopolito

further admits that, during the putative Class Period, Novartis was a pharmaceutical company,

and that Organogenesis and Novartis were parties to the Novartis Contracts, which set forth the

terms of the parties' relationship.  No response is required to the allegations of Paragraph 23 that

purport to construe and characterize the Novartis Contracts, the terms of which speak for

themselves.  To the extent a response to these allegations is required, Ms. Lopolito denies that

Paragraph 23 completely and accurately construes and characterizes the Novartis Contracts and

the parties' relationship as set forth therein.  Ms. Lopolito lacks personal knowledge or

information sufficient to form a belief as to the allegations concerning Novartis' business

operations in the United States, the origins of those operations, and the extent of those operations in the United States. Ms. Lopolito otherwise denies each and every allegation in Paragraph 23.

24.     With respect to Paragraph 24, Ms. Lopolito denies that PricewaterhouseCoopers remains a defendant in this action. Ms. Lopolito admits that, from the inception of the putative Class Period through April 30, 2000, PricewaterhouseCoopers was the independent auditor of the Company. Ms. Lopolito lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning PricewaterhouseCoopers allegedly occurring after she left the Company on April 30, 2000, and on that basis denies them.

25.     With respect to Paragraph 25, Ms. Lopolito admits that Mr. Philip Laughlin ("Mr. Laughlin") served as President, Director, and member of the Executive Committee of Organogenesis on various dates from on or about October 5, 1999 through at least April 30, 2000. Ms. Lopolito lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning Mr. Laughlin's employment with Organogenesis after she left the Company on April 30, 2000, and on that basis denies them. Ms. Lopolito further admits that on or about January 1, 2000, Mr. Laughlin assumed the role of Chief Executive Officer of the Company. Ms. Lopolito further admits that Mr. Laughlin signed some, but not all, of the Company's SEC filings during the putative Class Period, and states that those documents speak for themselves. Ms. Lopolito denies that Paragraph 25 completely and accurately construes and characterizes those documents. To the extent that plaintiffs purport to construe and characterize Mr. Laughlin's departure, or the reasons therefore, Ms. Lopolito lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning events allegedly occurring after she left the Company on April 30, 2000, and on that basis denies them. Ms. Lopolito otherwise denies each and every allegation in Paragraph 25.

-12-

26.    With respect to Paragraph 26, Ms. Lopolito admits that Mr. Michael Sabolinski, M.D. ("Dr. Sabolinski") served as the Company's Senior Vice President, Medical and Regulatory Affairs, from before the inception of the putative Class Period until at least April 30, 2000.  Ms. Lopolito lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning Dr. Sabolinski's continued employment with Organogenesis after she left the Company on April 30, 2000.  Ms. Lopolito further lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning Dr. Sabolinski's alleged signature on SEC filings after she left the Company on April 30, 2000, and on that basis denies them.  Ms. Lopolito otherwise denies each and every allegation in Paragraph 26.

27.    With respect to Paragraph 27, Ms. Lopolito admits that during the putative Class Period, Mr. Erani served as a member of the Board of the Company, and on or about January 1, 2000, assumed the role of Chairman of the Board.  Ms. Lopolito lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning Mr. Erani's continued relationship with Organogenesis after she left the Company on April 30, 2000, and on that basis denies them.  Ms. Lopolito admits that Mr. Erani signed some, but not all, of the Company's SEC filings during the putative Class Period, and states that those documents speak for themselves.  Ms. Lopolito denies that Paragraph 27 completely and accurately construes and characterizes those documents.  Ms. Lopolito otherwise denies each and every allegation in Paragraph 27.

28.    With respect to Paragraph 28, Ms. Lopolito denies that Mr. Ades remains a defendant in this action, as he was dismissed by an Order of this Court dated July 20, 2005.  Ms. Lopolito lacks personal knowledge or information sufficient to form a belief as to the truth of the

-13-

allegations concerning Mr. Ades, who allegedly began his employment at Organogenesis after she left the Company on April 30, 2000, and on that basis denies them. Ms. Lopolito further lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning events allegedly occurring after she left the Company on April 30, 2000, and on that basis denies them. Ms. Lopolito otherwise denies each and every allegation in Paragraph 28.

29.    With respect to Paragraph 29, Ms. Lopolito admits that she served as Chief Financial Officer and Vice President, Finance and Administration of Organogenesis between on or about March 1, 1996 and April 30, 2000. Ms. Lopolito denies that she served in such capacities during any other portion of the putative Class Period, or any time thereafter. Ms. Lopolito admits that she signed some, but not all, of the Company's SEC filings during the putative Class Period, and states that those documents speak for themselves. Ms. Lopolito denies that Paragraph 29 completely and accurately construes and characterizes those documents. Ms. Lopolito otherwise denies each and every allegation in Paragraph 29.

30.    With respect to Paragraph 30, Ms. Lopolito admits that Mr. Arcari began serving as Chief Financial Officer and Vice President, Finance and Administration of Organogenesis on or about April 30, 2000. Ms. Lopolito lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning Mr. Arcari's employment by Organogenesis, or signatures on SEC filings, after she left the Company on April 30, 2000, and on that basis denies them. Ms. Lopolito otherwise denies each and every allegation in Paragraph 30.

31.    With respect to Paragraph 31, Ms. Lopolito admits that Mr. Herbert M. Stein ("Mr. Stein") served as Chairman of the Board and Chief Executive Officer of Organogenesis

-14-

until his retirement from these positions on January 1, 2000. Ms. Lopolito further admits that, after Mr. Stein's retirement, Mr. Stein remained as a member of the Board and Chairman Emeritus until the Company announced his resignation from the Board on or about March 13, 2000. Ms. Lopolito admits that, during the putative Class Period, Mr. Stein's electronic signature appears on certain of the Company's SEC filings, including Organogenesis' Form 10-Q for the third quarter of 1999, and certain Registration Statements issued in connection with the sale and offering of stock by the Company, including Registration Statements filed on December 27, 1999, an amended Registration Statement filed on February 3, 2000, and a second amended Registration filed on February 14, 2000, and states that those documents speak for themselves. Ms. Lopolito denies that Paragraph 31 completely and accurately construes and characterizes those documents. Ms. Lopolito otherwise denies each and every allegation in Paragraph 31.

32.     With respect to Paragraph 32, Ms. Lopolito admits that Mr. Alan W. Tuck ("Mr. Tuck") served as Chief Strategic Officer of the Company from the inception of the putative Class Period until at least April 30, 2000. Ms. Lopolito lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning Mr. Tuck's continued employment by Organogenesis after she left the Company on April 30, 2000, and on that basis denies them. Ms. Lopolito otherwise denies each and every allegation in Paragraph 32.

33.     With respect to Paragraph 33, no response is required to the allegations of Paragraph 33, which purport to describe and construe the allegations of the Complaint.

34.     With respect to Paragraph 34, Ms. Lopolito admits that from the inception of the putative Class Period through April 30, 2000, she served as Chief Financial Officer and Vice President, Finance and Administration of Organogenesis. Ms. Lopolito denies that she served as a director, and denies that she served as an officer during the entire putative Class Period. Ms.

-15-

Lopolito incorporates by reference her response to Paragraph 29.  Ms. Lopolito admits that at certain times, upon request and to the extent consistent with her role, she had access to certain internal corporate documents, spoke to other corporate personnel, attended management and Board of Director meetings and committees thereof and had access to certain reports and other information provided to them in connection therewith.  Ms. Lopolito presently is without personal knowledge or information sufficient to form a belief as to the specific materials she allegedly received and when.  Ms. Lopolito lacks personal knowledge or information sufficient to form a belief as to the truth of allegations concerning what documents any other unidentified "[i]ndividual [d]efendants" may have received and when they might have received them, and on that basis denies them.  Ms. Lopolito otherwise denies each and every allegation in Paragraph 34.

35.    With respect to Paragraph 35, no response is required to those allegations which consist of plaintiffs' legal conclusions as to whether defendants in this action may be treated as a "group" for pleading purposes, but to the extent a response is required, Ms. Lopolito denies those allegations.  Ms. Lopolito admits that she held a position at Organogenesis as set forth in Paragraph 29, and she incorporates by reference her response to that paragraph and Paragraph 34.  Ms. Lopolito further admits that she performed in good faith the position she held at Organogenesis during the putative Class Period, and that, at various times, she was involved with certain operations and/or business activities of Organogenesis consistent with her position.  Ms. Lopolito otherwise denies each and every allegation in Paragraph 35.

36.    With respect to Paragraph 36, no response is required to the allegations of Paragraph 36 concerning plaintiffs' characterizations of defendants' legal duties or alleged violations thereof, which consist of legal conclusions.  To the extent a response is required, Ms. Lopolito denies those allegations.  Ms. Lopolito admits that during the putative Class Period, she

-16-

held a position at Organogenesis as set forth in Paragraph 29, which she incorporates by reference herein.  She further admits that, during the putative Class Period, Organogenesis stock was traded on the American Stock Exchange ("AMEX"), and governed by the provisions of the federal securities laws.  Ms. Lopolito denies that Organogenesis is currently a publicly-held company, denies that Organogenesis stock now trades on the AMEX, and she further denies that she is now an officer of that reorganized company.  Ms. Lopolito otherwise denies each and every allegation in Paragraph 36.

37.     With respect to Paragraph 37, Ms. Lopolito admits that during the putative Class Period she and others participated in good faith in the preparation of various public communications made by Organogenesis to the extent appropriate to her position, but otherwise is presently without personal knowledge or information sufficient to form a belief as to which communications she drafted, prepared and/or approved, or when she did so.  Ms. Lopolito otherwise denies each and every allegation in Paragraph 37.

38.     With respect to Paragraph 38, Ms. Lopolito admits that at various times during the putative Class Period, she received copies of various materials that Organogenesis filed with the SEC, press releases, and other public statements related to the Company, but is presently without personal knowledge or information sufficient to form a belief as to which documents she received, or when.  Ms. Lopolito lacks personal knowledge or information sufficient to form a belief as to the truth of plaintiff's non-specific allegations concerning unidentified documents or "public reports" or "releases" she or any other unidentified "[i]ndividual [d]efendant[s]" may have received and when they might have received them, and on that basis denies them.  Ms. Lopolito otherwise denies each and every allegation in Paragraph 38.

39.    With respect to Paragraph 39, Ms. Lopolito denies each and every allegation in Paragraph 39.

40.    With respect to Paragraph 40, no response is required to the allegations in this paragraph, which consist of legal conclusions and plaintiffs' characterization of this action, and which do not purport to require a response from Ms. Lopolito.  To the extent that this paragraph purports to contain factual allegations requiring a response, Ms. Lopolito admits that plaintiffs assert that this is a putative class action pursuant to Federal Rules of Civil Procedure 23(a) and (b)(3) on behalf of a purported class.  Ms. Lopolito denies that she engaged in any unlawful or improper conduct, denies that plaintiffs or members of the purported class were damaged, and denies this action may be properly maintained as a class action.  Ms. Lopolito lacks personal knowledge or information sufficient to form a belief as to the truth of each and every other allegation contained in Paragraph 40, and on that basis denies them.

41.    With respect to Paragraph 41, no response is required to the allegations in this paragraph, which consist of legal conclusions and plaintiffs' characterization of this action, and which do not purport to require a response from Ms. Lopolito.  To the extent a response is required, Ms. Lopolito lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning Organogenesis' securities after she left the Company on April 30, 2000, and on this basis denies them.  Ms. Lopolito otherwise denies each and every allegation in Paragraph 41.

42.    With respect to Paragraph 42, no response is required to the allegations in this paragraph, which consist of legal conclusions and plaintiffs' characterization of this action, and which do not purport to require a response from Defendants.  To the extent that this paragraph

-18-

purports to contain factual assertions requiring a response, Ms. Lopolito denies each and every allegation in Paragraph 42.

43.     With respect to Paragraph 43, no response is required to the allegations in this paragraph, which consist of legal conclusions and plaintiffs' characterization of this action, and which do not purport to require a response from Defendants.  To the extent that this paragraph purports to contain factual assertions requiring a response, Ms. Lopolito denies each and every allegation in Paragraph 43.

44.     With respect to Paragraph 44 and all of its subparts, no response is required to the allegations in this paragraph, which consist of legal conclusions and plaintiffs' characterization of this action, and which do not purport to require a response from Defendants.  To the extent that this paragraph purports to contain factual assertions requiring a response, Ms. Lopolito denies each and every allegation in Paragraph 44.

45.     With respect to Paragraph 45, no response is required to the allegations in this paragraph, which consist of legal conclusions and plaintiffs' characterization of this action, and which do not purport to require a response from Defendants.  To the extent that this paragraph purports to contain factual assertions requiring a response, Ms. Lopolito denies each and every allegation in Paragraph 45.

46.     With respect to Paragraph 46, Ms. Lopolito admits that Organogenesis was organized as a Delaware corporation in 1985, and from the inception of the putative Class Period through at least April 30, 2000, described itself as a "tissue engineering firm" that designs, develops and manufactures medical products containing living human cells and natural connective tissue.  Ms. Lopolito lacks personal knowledge or information sufficient to form a

-19-

belief as to the truth of the allegations concerning representations Organogenesis allegedly made after she left the Company on April 30, 2000.

47.     With respect to Paragraph 47, Ms. Lopolito lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations relating to how plaintiffs believe Organogenesis "appeared" to others, and on that basis denies them.  Ms. Lopolito admits that Organogenesis manufactured Apligraf, and that certain lots of the product were voluntarily recalled in 1999.  Ms. Lopolito presently lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations that such recalls were for contamination reasons, and that such recalls accounted for more than 10% of monthly production at the time, and on that basis denies them.  Ms. Lopolito lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning approval of Medicare or Medicaid reimbursement of Apligraf that allegedly occurred after she left the Company on April 30, 2000. Ms. Lopolito otherwise denies each and every allegation in Paragraph 47.

48.     With respect to Paragraph 48, Ms. Lopolito admits that Organogenesis filed a Form 10-K with the SEC on March 31, 1999, which speaks for itself.  Ms. Lopolito presently lacks personal knowledge or information sufficient to form a belief as to the allegations concerning actual Apligraf sales, and whether those sales fell below the non-specified "guidance" set forth in Paragraph 48, and on that basis denies them.  Ms. Lopolito otherwise denies each and every allegation in Paragraph 48.

49.     With respect to Paragraph 49, no response is required to the allegations that purport to quote the view of an investment analyst employed by non-party Moors & Cabot, Inc. in an April 1999 edition of the *Boston Business Journal*, which speaks for itself.  Ms. Lopolito otherwise denies each and every allegation in Paragraph 49.

US1DOCS 5275437v1

50.    With respect to Paragraph 50, Ms. Lopolito admits that during the putative Class Period, the Company issued various public statements and public filings addressing the financial position of the Company and disclosing its need for additional funding.  Ms. Lopolito states that these documents speak for themselves.  Ms. Lopolito denies that Paragraph 50 completely and accurately construes and characterizes those documents, and denies that the Company issued "aggressive predictions" or made other projections as represented in Paragraph 50.  Ms. Lopolito lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning representations allegedly made after she left the Company on April 30, 2000, and on this basis denies them.  Ms. Lopolito otherwise denies each and every allegation in Paragraph 50.

51.    With respect to Paragraph 51, Ms. Lopolito denies that the Company filed a Form 10-K with the SEC on March 29, 2000, but admits that Organogenesis filed a Form 10-K for 1999 with the SEC on or about March 30, 2000.  No further response is required to the remaining allegations of Paragraph 51, which purport to construe, paraphrase and excerpt that document, which speaks for itself.  To the extent any further response is required, Ms. Lopolito denies that Paragraph 51 completely and accurately construes, paraphrases and excerpts that document.  Ms. Lopolito lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning communications that allegedly occurred after she left the Company on April 30, 2000, and on this basis denies them.  Ms. Lopolito otherwise denies each and every allegation in Paragraph 51.

52.    With respect to Paragraph 52, no response is required to the allegations of Paragraph 52 which purport to construe, paraphrase, and excerpt unidentified filings or statements, which speak for themselves.  To the extent a response is required, Ms. Lopolito

-21-

admits that Organogenesis filed various statements with the SEC during the Class Period, but denies that Paragraph 52 completely and accurately construes and excerpts any such documents. Ms. Lopolito lacks personal knowledge or information sufficient to form a belief as to the truth of allegations concerning unidentified "statements" made in unidentified "fil[ings] with the SEC" or elsewhere by unidentified "defendants," which are not sufficiently identified in Paragraph 52, and on that basis denies them. Ms. Lopolito further presently lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning representations allegedly made after she left the Company on April 30, 2000, and on that basis denies them. Ms. Lopolito otherwise denies each and every allegation in Paragraph 52.

53.    With respect to Paragraph 53, Ms. Lopolito lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations regarding what investors "believe" or what plaintiffs assert they were "led to believe," and on that basis denies them. No response is required to the remaining allegations of Paragraph 53, which purport to construe and paraphrase unidentified "report[s]" or statements by the Company, which speak for themselves if they exist. Ms. Lopolito admits that Organogenesis and Novartis were parties to the Novartis Contracts. No further response is required to the allegations purporting to construe and excerpt the Novartis Contracts, which speak for themselves. To the extent any further response is required, Ms. Lopolito denies that Paragraph 53 completely and accurately construes and excerpts those contracts and the parties' relationship as set forth therein. Ms. Lopolito lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning representations allegedly made after she left the Company on April 30, 2000, and on this basis denies them. Ms. Lopolito otherwise denies each and every allegation in Paragraph 53.

-22-

54.    With respect to Paragraph 54 and footnote 3, Ms. Lopolito admits that Organogenesis issued a press release on November 15, 1999, regarding FDA PMA approval of its Apligraf product, which speaks for itself.  Ms. Lopolito further admits that Organogenesis discussed the Apligraf product and revenue therefrom in certain of its public statements during the putative class period, but denies that Paragraph 54 accurately construes and paraphrases any such documents.  Ms. Lopolito lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning Apligraf and revenues therefrom that allegedly occurred after she left the Company on April 30, 2000, and on this basis denies them.  Ms. Lopolito otherwise denies each and every allegation in Paragraph 54.

55.    With respect to Paragraph 55, Ms. Lopolito admits that the FDA approved Apligraf for marketing in the United States for the treatment of venous leg ulcers on May 26, 1998, and by the inception of the putative Class Period, FDA approval of Apligraf for diabetic leg ulcers was being pursued.  Ms. Lopolito admits that Apligraf was a registered trademark of Novartis during the putative Class Period, and that Novartis marketed Apligraf during the putative Class Period, pursuant to the terms of the Novartis Contracts.  No response is required to the allegations of Paragraph 55 that purport to construe and characterize the Novartis Contracts, the terms of which speak for themselves.  To the extent a response to these allegations is required, Ms. Lopolito denies that Paragraph 55 completely and accurately construes and characterizes the Novartis Contracts and the parties' relationship as set forth therein.  Ms. Lopolito lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning communications that allegedly occurred after she left the Company on April 30, 2000, and on this basis denies them.  Ms. Lopolito otherwise denies each and every allegation in Paragraph 55.

-23-

56.     With respect to Paragraph 56, Ms. Lopolito admits that during the putative Class
Period non-party Novartis held shares of Organogenesis stock, but states that she lacks personal
knowledge or information sufficient to form a belief as to the truth of the allegations concerning
Novartis' ownership of Organogenesis' stock, or the parties' relationship, after she left the
Company on April 30, 2000, and on that basis denies them.  Ms. Lopolito admits that
Organogenesis and Novartis were parties to the Novartis Contracts, which set forth the terms of
the parties' relationship.  No response is required to the allegations of Paragraph 56 that purport
to construe and characterize the Novartis Contracts, the terms of which speak for themselves.  To
the extent a response to these allegations is required, Ms. Lopolito denies that Paragraph 56
completely and accurately construes and characterizes the Novartis Contracts and the parties'
relationship as set forth therein.  Ms. Lopolito otherwise denies each and every allegation in
Paragraph 56.

57.     With respect to Paragraph 57, Ms. Lopolito admits that Organogenesis and
Novartis were parties to the Novartis Contracts.  No response is required to the allegations of
Paragraph 57 that purport to construe and characterize the Novartis Contracts, the terms of which
speak for themselves.  To the extent a response to these allegations is required, Ms. Lopolito
denies that Paragraph 57 completely and accurately construes and characterizes the Novartis
Contracts and the parties' relationship as set forth therein.  Ms. Lopolito lacks personal
knowledge or information sufficient to form a belief as to the truth of the allegations concerning
agreements between Novartis and Organogenesis that allegedly occurred after she left the
Company on April 30, 2000, and on this basis denies them.  Ms. Lopolito further lacks personal
knowledge or information sufficient to form a belief as to the allegations concerning the
knowledge or beliefs of plaintiffs or "investors" and as to the allegations concerning unidentified

-24-

"defendants," and on that basis denies them.  Ms. Lopolito otherwise denies each and every

allegation in Paragraph 57.

58.    With respect to Paragraph 58, no response is required to the allegations of

Paragraph 58, which purport to construe and paraphrase unidentified "representations" by

Organogenesis or "Defendants," which are too vaguely described to permit a response, and even

if identified, speak for themselves.  Ms. Lopolito lacks personal knowledge or information

sufficient to form a belief as to the truth of the allegations concerning representations allegedly

made after she left the Company on April 30, 2000, and on this basis denies them.  Ms. Lopolito

further lacks personal knowledge or information sufficient to form a belief as to what

unidentified "Defendants" may have said, done or "represented" to anyone else, and on that basis

denies them.  Ms. Lopolito otherwise denies each and every allegation in Paragraph 58.

59.    With respect to Paragraph 59, Ms. Lopolito incorporates by reference her

response to Paragraph 7.  Ms. Lopolito lacks personal knowledge or information sufficient to

form a belief as to the truth of the allegations concerning events allegedly occurring after she left

the Company on April 30, 2000, and on this basis denies them.  Ms. Lopolito otherwise denies

each and every allegation in Paragraph 59.

60.    With respect to Paragraph 60, Ms. Lopolito lacks personal knowledge or

information sufficient to form a belief as to the truth of the allegations concerning the

information purportedly obtained through any investigation by plaintiffs' counsel or their

representatives, and on that basis denies them.  Ms. Lopolito admits that Organogenesis

disclosed its financial results in various public filings and press releases published during the

putative class period, which speak for themselves.  Ms. Lopolito denies that Paragraph 60

completely and accurately characterizes, excerpts and paraphrases such documents, and denies

-25-

that any information was improperly withheld.  Ms. Lopolito lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning events allegedly occurring after she left the Company on April 30, 2000, and on this basis denies them. Ms. Lopolito denies that any information was improperly withheld.  Ms. Lopolito otherwise denies each and every allegation in Paragraph 60.

61.     With respect to Paragraph 61, Ms. Lopolito lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning the information purportedly obtained through any investigation by plaintiffs' counsel or their representatives, and on that basis denies them.  Ms. Lopolito further lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning unidentified "statements" or failures to disclose by unidentified "defendants," and on that basis denies them. Ms. Lopolito admits that Organogenesis disclosed its financial results in various public filings and press releases published during the putative class period, which speak for themselves.  Ms. Lopolito denies that Paragraph 61 completely and accurately characterizes, excerpts and paraphrases such documents, and denies that any information was improperly withheld.  Ms. Lopolito lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning events allegedly occurring after she left the Company on April 30, 2000, and on this basis denies them.  Ms. Lopolito otherwise denies each and every allegation in Paragraph 61.

With respect to Paragraph 61(a), Ms. Lopolito lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning the information purportedly obtained through any investigation by plaintiffs' counsel or their representatives, and on that basis denies them.  No further response is required to the allegations of Paragraph 61(a)

that purport to describe, construe and excerpt unidentified statements or documents, which speak for themselves. Ms. Lopolito otherwise denies each and every allegation in Paragraph 61(a).

With respect to Paragraph 61(b), Ms. Lopolito lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning the information purportedly obtained through any investigation by plaintiffs' counsel or their representatives, and on that basis denies them. Ms. Lopolito further lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning unidentified "statements" or failures to disclose by unidentified "defendants," and on that basis denies them. Ms. Lopolito admits that Organogenesis disclosed its financial results in various public filings and press releases published during the putative Class Period, which speak for themselves. Ms. Lopolito denies that Paragraph 61(b) completely and accurately characterizes, excerpts and paraphrases such documents, and denies that any information was improperly withheld. Ms. Lopolito otherwise denies each and every allegation in Paragraph 61(b).

With respect to Paragraph 61(c), Ms. Lopolito lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning the information purportedly obtained through any investigation by plaintiffs' counsel or their representatives, and on that basis denies them. Ms. Lopolito further lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning unidentified "statements" or failures to disclose by unidentified "defendants," and on that basis denies them. Ms. Lopolito admits that Organogenesis disclosed its financial results in various public filings and press releases published during the putative class period, which speak for themselves. Ms. Lopolito denies that Paragraph 61(c) completely and accurately characterizes, excerpts and paraphrases

such documents, and denies that any information was improperly withheld.  Ms. Lopolito otherwise denies each and every allegation in Paragraph 61(c).

62.     With respect to Paragraph 62, Ms. Lopolito lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning the information purportedly obtained through any investigation by plaintiffs' counsel or their representatives, and on that basis denies them.  Ms. Lopolito further lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning events allegedly occurring after she left the Company on April 30, 2000, and on this basis denies them.  Ms. Lopolito further denies that any information was improperly withheld, and otherwise denies each and every allegation in Paragraph 62.

With respect to Paragraph 62(a), Ms. Lopolito lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning the information purportedly obtained through any investigation by plaintiffs' counsel or their representatives, and on that basis denies them.  Ms. Lopolito further lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning events that allegedly occurred after she left the Company on April 30, 2000, and on this basis denies them.  Ms. Lopolito otherwise denies each and every allegation in Paragraph 62(a).

With respect to Paragraph 62(b), Ms. Lopolito lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning the information purportedly obtained through any investigation by plaintiffs' counsel or their representatives, and on that basis denies them.  Ms. Lopolito further lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning events that allegedly

US1DOCS 5275437v1

occurred after she left the Company on April 30, 2000, and on this basis denies them. Ms. Lopolito otherwise denies each and every allegation in Paragraph 62(b).

With respect to Paragraph 62(c), Ms. Lopolito lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning the information purportedly obtained through any investigation by plaintiffs' counsel or their representatives, and on that basis denies them. Ms. Lopolito further lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning events that allegedly occurred after she left the Company on April 30, 2000, and on this basis denies them. Ms. Lopolito otherwise denies each and every allegation in Paragraph 62(c).

With respect to Paragraph 62(d), Ms. Lopolito lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning the information purportedly obtained through any investigation by plaintiffs' counsel or their representatives, and on that basis denies them. Ms. Lopolito further lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning events that allegedly occurred after she left the Company on April 30, 2000, and on this basis denies them. Ms. Lopolito otherwise denies each and every allegation in Paragraph 62(d).

63.     With respect to Paragraph 63, Ms. Lopolito lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning the information purportedly obtained through any investigation by plaintiffs' counsel or their representatives, and on that basis denies them. Ms. Lopolito further lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning events that allegedly occurred after she left the Company on April 30, 2000, and on this basis denies them. Ms. Lopolito otherwise denies each and every allegation in Paragraph 63.

64.     With respect to Paragraph 64, Ms. Lopolito lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning the information purportedly obtained through any investigation by plaintiffs' counsel or their representatives, and on that basis denies them.  Ms. Lopolito further lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning whether unidentified "defendants" were aware of such alleged facts, and on that basis denies them.  Ms. Lopolito further lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning events allegedly occurring after she left the Company on April 30, 2000, and on this basis denies them.  Ms. Lopolito denies that any information was improperly withheld, and otherwise denies each and every allegation in Paragraph 64.

65.     With respect to Paragraph 65, Ms. Lopolito lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning the information purportedly obtained through any investigation by plaintiffs' counsel or their representatives, and on that basis denies them.  Ms. Lopolito further lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning unidentified "representations" by unidentified "defendants," and on that basis denies them.  Ms. Lopolito further lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning events allegedly occurring after she left the Company on April 30, 2000, and on this basis denies them.  Ms. Lopolito otherwise denies each and every allegation in Paragraph 65.

66.     With respect to Paragraph 66, Ms. Lopolito lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning the information purportedly obtained through any investigation by plaintiffs' counsel or their

representatives, and on that basis denies them.  Ms. Lopolito further lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning events allegedly occurring after she left the Company on April 30, 2000, and on this basis denies them. Ms. Lopolito otherwise denies each and every allegation in Paragraph 66.

      67.    With respect to Paragraph 67, Ms. Lopolito lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning the information purportedly obtained through any investigation by plaintiffs' counsel or their representatives, and on that basis denies them.  Ms. Lopolito further lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning the "motivat[ions]" of unidentified "defendants," and on that basis denies them.  Ms. Lopolito further lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning events allegedly occurring after she left the Company on April 30, 2000, and on this basis denies them.  Ms. Lopolito otherwise denies each and every allegation in Paragraph 67.

      68.    With respect to Paragraph 68, Ms. Lopolito admits that the purported Class Period begins on November 15, 1999.  Ms. Lopolito further admits that on November 15, 1999 Organogenesis published a release on *Business Wire* announcing financial results for the third quarter of 1999, the period ending September 30, 1999, in which Mr. Stein is quoted.  Ms. Lopolito denies making any of the statements in the press release.  No further response is required to the allegations of Paragraph 68 that purport to construe, paraphrase and excerpt the release, which speaks for itself.  Ms. Lopolito denies that Paragraph 68 completely and accurately construes, paraphrases and excerpts the release.  Ms. Lopolito otherwise denies each and every allegation in Paragraph 68.

US1DOCS 5275437v1

69.     With respect to Paragraph 69, Ms. Lopolito admits that on December 2, 1999 Organogenesis published a release on *Business Wire* announcing financial results, in which Mr. Tuck is quoted.  Ms. Lopolito denies making any of the statements in the press release.  No further response is required to the allegations of Paragraph 69 that purport to construe and excerpt the release, which speaks for itself.  Ms. Lopolito further denies that Paragraph 69 completely and accurately construes and excerpts the release.  Ms. Lopolito otherwise denies each and every allegation in Paragraph 69.

70.     With respect to Paragraph 70, Ms. Lopolito admits that on November 15, 1999 Organogenesis filed with the SEC its financial results for the third quarter of 1999, the period ended September 30, 1999, pursuant to its Form 10-Q.  Ms. Lopolito further admits that the electronic signatures of Mr. Stein and herself appear on that Form 10-Q.  No further response is required to the extent the allegations of Paragraph 70 purport to construe and excerpt the release, which speaks for itself.  Ms. Lopolito denies that Paragraph 70 completely and accurately construes and excerpts the release.  Ms. Lopolito otherwise denies each and every allegation in Paragraph 70.

71.     With respect to Paragraph 71, Ms. Lopolito admits that on November 15, 1999, Organogenesis' stock price reached an intra-day price as low as $6.81 per share, but denies that it closed at that price.  Ms. Lopolito further admits that on December 2, 1999, Organogenesis' stock price reached an intra-day price as high as $12.30 per share, but denies that it closed at that price.  Ms. Lopolito otherwise denies each and every allegation in Paragraph 71.

72.     With respect to Paragraph 72, Ms. Lopolito admits that the Company filed with the SEC a Registration Statement on December 27, 1999, and two amended Registration Statements, filed on February 3, 2000 and February 14, 2000, all of which incorporated by

-32-

reference the Company's Form 10-Q for the third quarter of 1999, and all of which speak for themselves.  Ms. Lopolito denies that Paragraph 72 completely and accurately construes and paraphrases those documents.   Ms. Lopolito otherwise denies each and every allegation in Paragraph 72.

73.     With respect to Paragraph 73, Ms. Lopolito admits that in January 2000, Mr. Laughlin presented at the Hambrecht & Quist 18th Annual Healthcare Conference in San Francisco, California.  Ms. Lopolito presently lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning the precise date of the conference or the content of Mr. Laughlin's presentation and the purported "beliefs" of any investor(s), and on that basis denies them.  Ms. Lopolito denies that on January 14, 2000, Mr. Laughlin provided an interview to *The Wall Street Transcript*, but admits that such an interview took place on January 13, 2000.  No further response is required to the extent the allegations of Paragraph 73 purport to construe and excerpt the transcript thereof, which speaks for itself.  Ms. Lopolito denies that Paragraph 73 completely and accurately construes and excerpts the transcript.  Ms. Lopolito otherwise denies each and every allegation in Paragraph 73.

74.     With respect to Paragraph 74, Ms. Lopolito admits that on or about February 14, 2000, the Company filed a Form 10-Q/A with the SEC, but denies that it amended its financial results.  Ms. Lopolito further admits that the electronic signatures of Mr. Laughlin and herself appear on the Form 10-Q/A.  No further response is required to the extent the allegations of Paragraph 74 purport to construe and excerpt the Form 10-Q/A, which speaks for itself.  Ms. Lopolito denies that Paragraph 74 completely and accurately construes and excerpts the Form 10-Q/A.  Ms. Lopolito otherwise denies each and every allegation in Paragraph 74.

75.    With respect to Paragraph 75, Ms. Lopolito incorporates by reference her response to Paragraph 74.  No further response is required to the extent the allegations of Paragraph 75 purport to construe and excerpt the Form 10-Q/A, which speaks for itself.  Ms. Lopolito denies Paragraph 75 completely and accurately construes and excerpts the Form 10-Q/A.  Ms. Lopolito otherwise denies each and every allegation in Paragraph 75.

76.    With respect to Paragraph 76, Ms. Lopolito lacks personal knowledge or information sufficient to form a belief as to the truth of any allegations concerning unidentified "statements" made by unidentified "defendants."  Ms. Lopolito admits that the Company issued a press release on November 15, 1999, but denies that she made any of the statements in the press release.  She further denies that Paragraph 76 accurately and completely characterizes that press release.  Ms. Lopolito admits that she signed the Company's Forms 10-Q and 10-Q/A filed on November 15, 1999 and February 14, 2000, but denies that any press release, public filing or public statement was materially false or misleading.  Ms. Lopolito otherwise denies each and every allegation in Paragraph 76.

With respect to Paragraph 76(a), Ms. Lopolito incorporates by reference her responses to Paragraphs 59-67.  Ms. Lopolito lacks personal knowledge or information sufficient to form a belief as to the truth of any allegations concerning the actions or failures to disclose by unidentified "defendants," and on that basis denies them.  Ms. Lopolito otherwise denies each and every allegation in Paragraph 76(a).

With respect to Paragraph 76(b), Ms. Lopolito lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning the information purportedly obtained through any investigation by plaintiffs' counsel or their representatives, and on that basis denies them.  Ms. Lopolito also lacks personal knowledge or information sufficient

-34-

to form a belief as to the truth of any allegations concerning unspecified "representations" in unidentified documents by unidentified "defendants," and on that basis denies them. Ms. Lopolito otherwise denies each and every allegation in Paragraph 76(b).

With respect to Paragraph 76(c), no response is required to the allegations of Paragraph 76(c) that purport to describe, construe and excerpt unidentified statements or documents, which speak for themselves. Ms. Lopolito further lacks personal knowledge or information sufficient to form a belief as to the truth of any allegations concerning unspecified "representations" by unidentified "defendants," and on that basis denies them. Ms. Lopolito further lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning the information purportedly obtained through any investigation by plaintiffs' counsel or their representatives, and on that basis denies them. Ms. Lopolito otherwise denies each and every allegation in Paragraph 76(c).

With respect to Paragraph 76(d), no response is required to the allegations of Paragraph 76(d) that purport to describe, construe and excerpt unidentified statements or documents, which speak for themselves. Ms. Lopolito further lacks personal knowledge or information sufficient to form a belief as to the truth of any allegations concerning unspecified "public statements" by unidentified "defendants," and on that basis denies them. Ms. Lopolito further lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning the information purportedly obtained through any investigation by plaintiffs' counsel or their representatives, and on that basis denies them. Ms. Lopolito incorporates by reference her responses to Paragraphs 56-67, and otherwise denies each and every allegation in Paragraph 76(d).

US1DOCS 5275437v1

With respect to Paragraph 76(e), no response is required to the allegations of Paragraph 76(e) that purport to describe, construe and excerpt unidentified statements or documents, which speak for themselves. Ms. Lopolito further lacks personal knowledge or information sufficient to form a belief as to the truth of any allegations concerning unspecified "representations" by unidentified "defendants," and on that basis denies them. Ms. Lopolito otherwise denies each and every allegation in Paragraph 76(e).

With respect to Paragraph 76(f), no response is required to the allegations of Paragraph 76(f) that purport to describe, construe and excerpt unidentified statements or documents, which speak for themselves. Ms. Lopolito further lacks personal knowledge or information sufficient to form a belief as to the truth of any allegations concerning unspecified "representations" by unidentified "defendants," and on that basis denies them. Ms. Lopolito further lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning the information purportedly obtained through any investigation by plaintiffs' counsel or their representatives, and on that basis denies them. Ms. Lopolito incorporates by reference her responses to Paragraphs 56-67, and otherwise denies each and every allegation in Paragraph 76(f).

With respect to Paragraph 76(g), Ms. Lopolito further lacks personal knowledge or information sufficient to form a belief as to the truth of any allegations concerning unspecified "representations" by unidentified "defendants," and on that basis denies them. Ms. Lopolito further lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning the information purportedly obtained through any investigation by plaintiffs' counsel or their representatives, and on that basis denies them. Ms. Lopolito

-36-

incorporates by reference her responses to Paragraphs 59-67, and otherwise denies each and every allegation in Paragraph 76(g).

77. With respect to Paragraph 77, Ms. Lopolito admits that on February 24, 2000, Organogenesis stock price reached an intra-day price as high as $15.625, but denies that it closed at this price. Ms. Lopolito further admits that on February 27, 2000, the Company issued a release on *Business Wire* announcing that Organogenesis had completed the sale of 688,925 shares of common stock for net proceeds of $9.4 million. Ms. Lopolito denies making any of the statements in the press release, and states that she lacks personal knowledge or information sufficient to form a belief as to the truth of any allegations concerning the press release, and on that basis denies them. Ms. Lopolito further denies that Paragraph 77 completely and accurately construes and paraphrases the release, which speaks for itself. Ms. Lopolito otherwise denies each and every allegation of Paragraph 77.

78. With respect to Paragraph 78, no response is required to the allegations that purport to describe, construe, paraphrase and excerpt unidentified statements or documents, which speak for themselves. Ms. Lopolito admits that on February 24, 2000 the Company issued a release on *Business Wire*, in which Mr. Tuck is quoted. Ms. Lopolito denies making any of the statements in the press release. Ms. Lopolito lacks personal knowledge or information sufficient to form a belief as to the truth of any allegations concerning the purported knowledge, actions or statements of other unidentified "Defendants," and on that basis denies them. Ms. Lopolito further denies that Paragraph 78 completely and accurately construes, paraphrases and excerpts the press release. Ms. Lopolito otherwise denies each and every allegation in Paragraph 78.

79. With respect to Paragraph 79, Ms. Lopolito admits that on February 25, 2000, the Company issued a release announcing that it had raised an additional $1.4 million through the

sale of an additional 100,000 shares.  Ms. Lopolito denies that Paragraph 79 completely and accurately construes, paraphrases and excerpts the release.  Ms. Lopolito otherwise denies each and every allegation in Paragraph 79.

80.    With respect to Paragraph 80, Ms. Lopolito denies each and every allegation in Paragraph 80.

81.    With respect to Paragraph 81, Ms. Lopolito denies the allegations contained in the first sentence of that paragraph.  Ms. Lopolito admits that Mr. Stein resigned from his positions as Chairman and Chief Executive Officer effective January 1, 2000, and accepted the position of Chairman Emeritus of the Board on January 1, 2000.  Ms. Lopolito further admits that the Company announced his resignation from that position on or about March 13, 2000.  To the extent that plaintiffs purport to construe and characterize Mr. Stein's departure, or the reasons therefore, Ms. Lopolito lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 81, and on that basis denies them.  Ms. Lopolito otherwise denies each and every allegation in Paragraph 81.

82.    With respect to Paragraph 82, Ms. Lopolito admits that on or about March 21, 2000, Mr. Laughlin, who served as President and CEO of Organogenesis at that time, presented at the New York Society of Securities Analysts' 4th Annual Health Care Conference in New York City.  Ms. Lopolito otherwise denies each and every allegation in Paragraph 82.

83.    With respect to Paragraph 83, Ms. Lopolito admits that on March 27, 2000, Organogenesis issued a press release.  No further response is required to the extent the allegations of Paragraph 83 purport to construe and paraphrase the release, which speaks for itself.  Ms. Lopolito denies that Paragraph 83 completely and accurately construes and paraphrases the release, and otherwise denies each and every allegation in Paragraph 83.

-38-

84.     With respect to Paragraph 84, Ms. Lopolito admits that on March 31, 2000, Organogenesis issued a press release published on *Business Wire* in which Mr. Laughlin is quoted. Ms. Lopolito denies making any of the statements in the press release. No further response is required to the extent the allegations of Paragraph 84 purport to construe and excerpt the release, which speaks for itself. Ms. Lopolito denies that Paragraph 84 completely and accurately construes and excerpts the release. Ms. Lopolito further states that she lacks personal knowledge or information sufficient to form a belief as to the allegations concerning the purported actions or intentions of defendant Laughlin, and what unidentified "investors" "believe[d]." Ms. Lopolito otherwise denies each and every allegation in Paragraph 84.

85.     With respect to Paragraph 85, Ms. Lopolito admits that on March 30, 2000, Organogenesis filed with the SEC its financial results for full year 1999, pursuant to a Form 10-K. Ms. Lopolito further admits that the electronic signatures of Mr. Laughlin, Mr. Erani, and herself appear on the Form 10-K. No further response is required to the extent the allegations of Paragraph 85 purport to construe and excerpt the Form 10-K, which speaks for itself. Ms. Lopolito denies that Paragraph 85 completely and accurately construes and excerpts the Form 10-K. Ms. Lopolito otherwise denies each and every allegation in Paragraph 85.

86.     With respect to Paragraph 86, Ms. Lopolito admits that on March 31, 2000, Organogenesis' stock was traded on the open market, and reached an intra-day price as high as $12.625, but denies that it closed at that price. Ms. Lopolito otherwise denies each and every allegation in Paragraph 86.

87.     With respect to Paragraph 87, Ms. Lopolito admits that the Company issued a press release on March 31, 2000, and filed a Form 10-K with the SEC for its fiscal year 1999.

Ms. Lopolito denies that she made any of the statements in the press release, and otherwise denies each and every allegation in Paragraph 87.

With respect to Paragraph 87(a), Ms. Lopolito incorporates by reference her responses to Paragraphs 59-67, and otherwise denies each and every allegation in Paragraph 87(a).

With respect to Paragraph 87(b), Ms. Lopolito lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning the information purportedly obtained through any investigation by plaintiffs' counsel or their representatives, and on that basis denies them. No further response is required to the allegations of Paragraph 87(b) that purport to describe, construe and excerpt unidentified statements or documents, which speak for themselves. Ms. Lopolito further lacks personal knowledge or information sufficient to form a belief as to the allegations concerning representations by unidentified "defendants," and on that basis denies them. Ms. Lopolito otherwise denies each and every allegation in Paragraph 87(b).

With respect to Paragraph 87(c), Ms. Lopolito lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning the information purportedly obtained through any investigation by plaintiffs' counsel or their representatives, and on that basis denies them. No further response is required to the allegations of Paragraph 87(c) that purport to describe, construe and excerpt unidentified statements or documents, which speak for themselves. Ms. Lopolito further lacks personal knowledge or information sufficient to form a belief as to the allegations concerning the unidentified "suggestion[s]," "aware[ness]," or alleged failures to disclose of unidentified "defendants," and on that basis denies them. Ms. Lopolito denies that any information was improperly withheld, and otherwise denies each and every allegation in Paragraph 87(c).

With respect to Paragraph 87(d), Ms. Lopolito lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning the information purportedly obtained through any investigation by plaintiffs' counsel or their representatives, and on that basis denies them.  No response to required to the allegations of Paragraph 87(d) that purport to describe, construe and excerpt unidentified statements or documents, which speak for themselves.  Ms. Lopolito further lacks personal knowledge or information sufficient to form a belief as to the allegations concerning representations by unidentified "defendants," and on that basis denies them.  Ms. Lopolito otherwise denies each and every allegation in Paragraph 87(d).

With respect to Paragraph 87(e), Ms. Lopolito lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning the information purportedly obtained through any investigation by plaintiffs' counsel or their representatives, and on that basis denies them.  No further response is required to the allegations of Paragraph 87(e) that purport to describe, construe and excerpt unidentified statements or documents, which speak for themselves.  Ms. Lopolito further lacks personal knowledge or information sufficient to form a belief as to the allegations concerning representations by unidentified "defendants," and on that basis denies them.  Ms. Lopolito otherwise denies each and every allegation in Paragraph 87(e).

With respect to Paragraph 87(f), no response to required to the allegations of Paragraph 87(f) that purport to describe, construe and excerpt unidentified statements or documents, which speak for themselves.  Ms. Lopolito further lacks personal knowledge or information sufficient to form a belief as to the allegations concerning any representations by unidentified "defendants," and on that basis denies them.  Ms. Lopolito also lacks personal knowledge or information sufficient to form a belief as to the allegations concerning what any

"investors" "believe[d]," and on that basis denies them.  Ms. Lopolito otherwise denies each and every allegation in Paragraph 87(f).

With respect to Paragraph 87(g), Ms. Lopolito lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning the information purportedly obtained through any investigation by plaintiffs' counsel or their representatives, and on that basis denies them.  No further response is required to the allegations of Paragraph 87(g) that purport to describe, construe and excerpt unidentified statements or documents, which speak for themselves.  Ms. Lopolito further lacks personal knowledge or information sufficient to form a belief as to the allegations concerning any representations by unidentified "defendants," and on that basis denies them.  Ms. Lopolito otherwise denies each and every allegation in Paragraph 87(g).

88.    With respect to Paragraph 88, Ms. Lopolito admits that on April 21, 2000, the Company filed with the SEC a Registration Statement, permitting Mr. Stein to register for sale of 732,423 shares of Organogenesis stock held by Mr. Stein.  Ms. Lopolito further admits that the electronic signatures of Mr. Laughlin, Mr. Erani and herself appear on the Registration Statement.  No further response is required to the extent the allegations of Paragraph 88 purport to construe and excerpt the Registration Statement, which speaks for itself.  Ms. Lopolito denies that Paragraph 88 completely and accurately construes and excerpts the Registration Statement.  Ms. Lopolito lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations relating to Mr. Stein's personal investments or finances, and on that basis denies them.  Ms. Lopolito otherwise denies each and every allegation in Paragraph 88.

89.    With respect to Paragraph 89, Ms. Lopolito lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning

-42-

communications allegedly made after she left the Company on April 30, 2000, and on this basis denies them.  Ms. Lopolito otherwise denies each and every allegation in Paragraph 89.

90.     With respect to Paragraph 90, Ms. Lopolito lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning public filings allegedly made after she left the Company on April 30, 2000, and on this basis denies them.  Ms. Lopolito otherwise denies each and every allegation in Paragraph 90.

91.     With respect to Paragraph 91, Ms. Lopolito incorporates by reference her responses to Paragraphs 56-67, and denies each and every allegation in Paragraph 91.

With respect to Paragraph 91(a), Ms. Lopolito incorporates by reference her responses to Paragraphs 59-67, and denies each and every allegation in Paragraph 91(a).

With respect to Paragraph 91(b), Ms. Lopolito lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning representations allegedly made after she left the Company on April 30, 2000, and on this basis denies them.  Ms. Lopolito otherwise denies each and every allegation in Paragraph 91(b).

With respect to Paragraph 91(c), Ms. Lopolito lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning the information purportedly obtained through any investigation by plaintiffs' counsel or their representatives, and on that basis denies them.  Ms. Lopolito further lacks personal knowledge or information sufficient to form a belief as to the allegations concerning unidentified "representations" by unidentified "defendants," and on that basis denies them.  Ms. Lopolito further lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning representations allegedly made after she left the Company on April 30, 2000, and on this basis denies them.  Ms. Lopolito otherwise denies each and every allegation in Paragraph 91(c).

-43-

With respect to Paragraph 91(d), Ms. Lopolito lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning the information purportedly obtained through any investigation by plaintiffs' counsel or their representatives, and on that basis denies them.  Ms. Lopolito further lacks personal knowledge or information sufficient to form a belief as to the allegations concerning unidentified "representations" by unidentified "defendants," and on that basis denies them.  Ms. Lopolito further lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning representations allegedly made after she left the Company on April 30, 2000, and on this basis denies them.  Ms. Lopolito otherwise denies each and every allegation in Paragraph 91(d).

With respect to Paragraph 91(e), Ms. Lopolito lacks personal knowledge or information sufficient to form a belief as to the allegations concerning unidentified "representations" by unidentified "defendants," and on that basis denies them.  Ms. Lopolito lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning representations allegedly made after she left the Company on April 30, 2000, and on this basis denies them.  Ms. Lopolito incorporates by reference her responses to Paragraphs 59-67, and denies each and every allegation in Paragraph 91(e).

92.    With respect to Paragraph 92, Ms. Lopolito lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning presentations allegedly made by Mr. Laughlin after she left the Company on April 30, 2000, and on this basis denies them.  Ms. Lopolito otherwise denies each and every allegation in Paragraph 92.

93.    With respect to Paragraph 93, Ms. Lopolito lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning representations allegedly made after she left the Company on April 30, 2000, and on this basis

-44-

denies them.  Ms. Lopolito further lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning the Company's stock price after she left the Company on April 30, 2000, and on this basis denies them.  Ms. Lopolito otherwise denies each and every allegation in Paragraph 93.

94.    With respect to Paragraph 94, Ms. Lopolito lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning television appearances allegedly made by Mr. Laughlin after she left the Company on April 30, 2000, and on this basis denies them.  Ms. Lopolito further lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations relating to the extent of dissemination of the cable financial news show "Power Lunch," and on that basis denies them.  Ms. Lopolito otherwise denies each and every allegation in Paragraph 94.

95.    With respect to Paragraph 95, Ms. Lopolito lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning representations allegedly made after she left the Company on April 30, 2000, and on this basis denies them.  Ms. Lopolito otherwise denies each and every allegation in Paragraph 95.

96.    With respect to Paragraph 96, Ms. Lopolito lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning representations allegedly made after she left the Company on April 30, 2000, and on this basis denies them.  Ms. Lopolito otherwise denies each and every allegation in Paragraph 96.

97.    With respect to Paragraph 97, Ms. Lopolito incorporates by reference her response to Paragraph 96.  Ms. Lopolito otherwise denies each and every allegation in Paragraph 97.

US1DOCS 5275437v1

98.    With respect to Paragraph 98, Ms. Lopolito lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning public filings allegedly made after she left the Company on April 30, 2000, and on this basis denies them. Ms. Lopolito otherwise denies each and every allegation in Paragraph 98.

99.    With respect to Paragraph 99, Ms. Lopolito lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning representations allegedly made after she left the Company on April 30, 2000, and on this basis denies them. Ms. Lopolito otherwise denies each and every allegation in Paragraph 99.

100.    With respect to Paragraph 100, Ms. Lopolito lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning representations allegedly made after she left the Company on April 30, 2000, and on this basis denies them. Ms. Lopolito otherwise denies each and every allegation in Paragraph 100.

With respect to Paragraph 100(a), Ms. Lopolito incorporates by reference her responses to Paragraphs 59-67, and denies each and every allegation in Paragraph 100(a).

With respect to Paragraph 100(b), Ms. Lopolito lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning the information purportedly obtained through any investigation by plaintiffs' counsel or their representatives, and on that basis denies them. Ms. Lopolito further lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning representations allegedly made after she left the Company on April 30, 2000, and on this basis denies them. Ms. Lopolito incorporates by reference her responses to Paragraphs 59-67, and otherwise denies each and every allegation in Paragraph 100(b).

-46-

With respect to Paragraph 100(c), Ms. Lopolito lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning the information purportedly obtained through any investigation by plaintiffs' counsel or their representatives, and on that basis denies them.  Ms. Lopolito further lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning representations allegedly made after she left the Company on April 30, 2000, and on this basis denies them.  Ms. Lopolito otherwise denies each and every allegation in Paragraph 100(c).

With respect to Paragraph 100(d), Ms. Lopolito lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning the information purportedly obtained through any investigation by plaintiffs' counsel or their representatives, and on that basis denies them.  Ms. Lopolito further lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning representations allegedly made after she left the Company on April 30, 2000, and on this basis denies them.  Ms. Lopolito otherwise denies each and every allegation in Paragraph 100(d).

With respect to Paragraph 100(e), Ms. Lopolito lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning the information purportedly obtained through any investigation by plaintiffs' counsel or their representatives, and on that basis denies them.  Ms. Lopolito further lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning representations allegedly made after she left the Company on April 30, 2000, and on this basis denies them.  Ms. Lopolito otherwise denies each and every allegation in Paragraph 100(e).

With respect to Paragraph 100(f), Ms. Lopolito lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning the information

purportedly obtained through any investigation by plaintiffs' counsel or their representatives, and on that basis denies them.  Ms. Lopolito further lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning representations allegedly made after she left the Company on April 30, 2000, and on this basis denies them.  Ms. Lopolito otherwise denies each and every allegation in Paragraph 100(f).

With respect to Paragraph 100(g), Ms. Lopolito lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning the information purportedly obtained through any investigation by plaintiffs' counsel or their representatives, and on that basis denies them.  Ms. Lopolito further lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning representations allegedly made after she left the Company on April 30, 2000, and on this basis denies them.  Ms. Lopolito otherwise denies each and every allegation in Paragraph 100(g).

With respect to Paragraph 100(h), Ms. Lopolito lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning the information purportedly obtained through any investigation by plaintiffs' counsel or their representatives, and on that basis denies them.  Ms. Lopolito further lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning representations allegedly made after she left the Company on April 30, 2000, and on this basis denies them.  Ms. Lopolito otherwise denies each and every allegation in Paragraph 100(h).

With respect to Paragraph 100(i), Ms. Lopolito lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning representations allegedly made after she left the Company on April 30, 2000, and on this basis denies them.  Ms. Lopolito

US1DOCS 5275437v1

incorporates by reference her responses to Paragraphs 59-67, and otherwise denies each and every allegation in Paragraph 100(i).

101.    With respect to Paragraph 101, Ms. Lopolito lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning representations allegedly made after she left the Company on April 30, 2000, and on this basis denies them.  Ms. Lopolito otherwise denies each and every allegation in Paragraph 101.

102.    With respect to Paragraph 102, Ms. Lopolito lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning public filings allegedly made after she left the Company on April 30, 2000, and on this basis denies them.  Ms. Lopolito otherwise denies each and every allegation in Paragraph 102.

103.    With respect to Paragraph 103, Ms. Lopolito lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning representations allegedly made after she left the Company on April 30, 2000, and on this basis denies them.  Ms. Lopolito otherwise denies each and every allegation in Paragraph 103.

104.    With respect to Paragraph 104, Ms. Lopolito lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning representations and public filings allegedly made after she left the Company on April 30, 2000, and on this basis denies them.  Ms. Lopolito otherwise denies each and every allegation in Paragraph 104.

With respect to Paragraph 104(a), Ms. Lopolito incorporates by reference her responses to Paragraphs 59-67, and otherwise denies each and every allegation in Paragraph 104(a).

With respect to Paragraph 104(b), Ms. Lopolito lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning the information

US1DOCS 5275437v1

purportedly obtained through any investigation by plaintiffs' counsel or their representatives, and

on that basis denies them. Ms. Lopolito further lacks personal knowledge or information

sufficient to form a belief as to the truth of the allegations concerning representations allegedly

made after she left the Company on April 30, 2000, and on this basis denies them.  Ms. Lopolito

otherwise denies each and every allegation in Paragraph 104(b).

With respect to Paragraph 104(c), Ms. Lopolito lacks personal knowledge or information

sufficient to form a belief as to the truth of the allegations concerning the information

purportedly obtained through any investigation by plaintiffs' counsel or their representatives, and

on that basis denies them.  Ms. Lopolito further lacks personal knowledge or information

sufficient to form a belief as to the truth of the allegations concerning representations allegedly

made after she left the Company on April 30, 2000, and on this basis denies them.  Ms. Lopolito

incorporates by reference her responses to Paragraphs 59-67, and otherwise denies each and

every allegation of Paragraph 104(c).

With respect to Paragraph 104(d), Ms. Lopolito lacks personal knowledge or information

sufficient to form a belief as to the truth of the allegations concerning the information

purportedly obtained through any investigation by plaintiffs' counsel or their representatives, and

on that basis denies them.  Ms. Lopolito further lacks personal knowledge or information

sufficient to form a belief as to the truth of the allegations concerning representations allegedly

made after she left the Company on April 30, 2000, and on this basis denies them.  Ms. Lopolito

otherwise denies each and every allegation in Paragraph 104(d).

With respect to Paragraph 104(e), Ms. Lopolito lacks personal knowledge or information

sufficient to form a belief as to the truth of the allegations concerning representations allegedly

made after she left the Company on April 30, 2000, and on this basis denies them.  Ms. Lopolito

US1DOCS 5275437v1

incorporates by reference her responses to Paragraphs 59-67, and otherwise denies each and every allegation in Paragraph 104(e).

105.    With respect to Paragraph 105, Ms. Lopolito lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning representations allegedly made after she left the Company on April 30, 2000, and on this basis denies them. Ms. Lopolito further lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning the Company's alleged stock price after she left the Company on April 30, 2000, and on this basis denies them. Ms. Lopolito otherwise denies each and every allegation in Paragraph 105.

106.    With respect to Paragraph 106, Ms. Lopolito lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning representations allegedly made after she left the Company on April 30, 2000, and on this basis denies them. Ms. Lopolito otherwise denies each and every allegation in Paragraph 106.

107.    With respect to Paragraph 107, Ms. Lopolito lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning representations allegedly made after she left the Company on April 30, 2000, and on this basis denies them. Ms. Lopolito further lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning television appearances allegedly made by Mr. Laughlin after she left the Company on April 30, 2000, and on this basis denies them. Ms. Lopolito admits that Organogenesis and Novartis were parties to the Novartis Contracts, which speak for themselves. Ms. Lopolito lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning contracts between Organogenesis and Novartis entered into after she left the Company on April 30, 2000, and on this basis denies them. Ms.

Lopolito further lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations relating to the extent of dissemination of the cable financial news show "Power Lunch," or the identity of its host, and on that basis denies them. Mr. Lopolito further lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning Organogenesis' stock price after she left the Company on April 30, 2000, and on this basis denies them. Ms. Lopolito otherwise denies each and every allegation in Paragraph 107.

108.    With respect to Paragraph 108, Ms. Lopolito lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning representations allegedly made after she left the Company on April 30, 2000, and on this basis denies them. Ms. Lopolito otherwise denies each and every allegation in Paragraph 108.

With respect to Paragraph 108(a), Ms. Lopolito incorporates by reference her responses to Paragraphs 59-67, and denies each and every allegation in Paragraph 108(a).

With respect to Paragraph 108(b), Ms. Lopolito lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning the information purportedly obtained through any investigation by plaintiffs' counsel or their representatives, and on that basis denies them. Ms. Lopolito further lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning representations allegedly made after she left the Company on April 30, 2000, and on this basis denies them. Ms. Lopolito incorporates by reference her responses to Paragraphs 59-67, and otherwise denies each and every allegation in Paragraph 108(b).

With respect to Paragraph 108(c), Ms. Lopolito lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning the information

purportedly obtained through any investigation by plaintiffs' counsel or their representatives, and

on that basis denies them.  Ms. Lopolito further lacks personal knowledge or information

sufficient to form a belief as to the truth of the allegations concerning representations allegedly

made after she left the Company on April 30, 2000, and on this basis denies them.  Ms. Lopolito

otherwise denies each and every allegation in Paragraph 108(c).

With respect to Paragraph 108(d), Ms. Lopolito lacks personal knowledge or information

sufficient to form a belief as to the truth of the allegations concerning representations allegedly

made after she left the Company on April 30, 2000, and on this basis denies them.  Ms. Lopolito

otherwise denies each and every allegation in Paragraph 108(d).

With respect to Paragraph 108(e), Ms. Lopolito lacks personal knowledge or information

sufficient to form a belief as to the truth of the allegations concerning the information

purportedly obtained through any investigation by plaintiffs' counsel or their representatives, and

on that basis denies them.  Ms. Lopolito further lacks personal knowledge or information

sufficient to form a belief as to the truth of the allegations concerning representations allegedly

made after she left the Company on April 30, 2000, and on this basis denies them.  Ms. Lopolito

admits that Organogenesis and Novartis were parties to the Novartis Contracts.  Ms. Lopolito

lacks personal knowledge or information sufficient to form a belief as to the truth of the

allegations concerning contracts between Organogenesis and Novartis allegedly entered into

after she left the Company on April 30, 2000, and on this basis denies them.  Ms. Lopolito

otherwise denies each and every allegation in Paragraph 108(e).

With respect to Paragraph 108(f), Ms. Lopolito lacks personal knowledge or information

sufficient to form a belief as to the truth of the allegations concerning representations allegedly

made after she left the Company on April 30, 2000, and on this basis denies them.  Ms. Lopolito

US1DOCS 5275437v1

admits Organogenesis and Novartis were parties to the Novartis Contracts.  Ms. Lopolito lacks

personal knowledge or information sufficient to form a belief as to the truth of the allegations

concerning contracts between Organogenesis and Novartis allegedly entered into after she left

the Company on April 30, 2000, and on this basis denies them.  Ms. Lopolito otherwise denies

each and every allegation in Paragraph 108(f).

With respect to Paragraph 108(g), Ms. Lopolito lacks personal knowledge or information

sufficient to form a belief as to the truth of the allegations concerning representations allegedly

made after she left the Company on April 30, 2000, and on this basis denies them.  Ms. Lopolito

admits that Organogenesis and Novartis were parties to the Novartis Contracts.  Ms. Lopolito

lacks personal knowledge or information sufficient to form a belief as to the truth of the

allegations concerning contracts between Organogenesis and Novartis allegedly entered into

after she left the Company on April 30, 2000, and on this basis denies them.  Ms. Lopolito

otherwise denies each and every allegation in Paragraph 108(g).

109.    With respect to Paragraph 109, no response is required to the allegations that

purport to quote from an analyst report issued by non-party Needham & Co. on an undisclosed

date, which presumably speaks for itself, if it in fact exists.  Ms. Lopolito otherwise denies each

and every allegation in Paragraph 109.

110.    With respect to Paragraph 110, Ms. Lopolito lacks personal knowledge or

information sufficient to form a belief as to the truth of the allegations concerning

representations allegedly made after she left the Company on April 30, 2000, and on this basis

denies them.  Ms. Lopolito otherwise denies each and every allegation in Paragraph 110.

111.    With respect to Paragraph 111, Ms. Lopolito lacks personal knowledge or

information sufficient to form a belief as to the truth of the allegations concerning the purported

beliefs or knowledge of the public, and on that basis denies them. Ms. Lopolito further lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning events allegedly occurring after she left the Company on April 30, 2000, and on this basis denies them. Ms. Lopolito otherwise denies each and every allegation in Paragraph 111.

112.    With respect to Paragraph 112, Ms. Lopolito lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning representations allegedly made after she left the Company on April 30, 2000, and on this basis denies them. Ms. Lopolito otherwise denies each and every allegation in Paragraph 112.

113.    With respect to Paragraph 113, Ms. Lopolito lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning public filings allegedly made after she left the Company on April 30, 2000, and on this basis denies them. Ms. Lopolito otherwise denies each and every allegation in Paragraph 113.

114.    With respect to Paragraph 114, Ms. Lopolito lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning the purported beliefs or emotions of non-party PricewaterhouseCoopers, and on that basis denies them. Ms. Lopolito further lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning events allegedly occurring after she left the Company on April 30, 2000, and on this basis denies them. Ms. Lopolito otherwise denies each and every allegation in Paragraph 114.

115.    With respect to Paragraph 115, Ms. Lopolito lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning presentations allegedly made by the Company after she left on April 30, 2000, and on this basis denies them. No response is required to the allegations that purport to construe and paraphrase an analyst

US1DOCS 5275437v1

report purportedly issued by non-party Needham & Co. on April 19, 2001, which speaks for itself. Ms. Lopolito otherwise denies each and every allegation in Paragraph 115.

116.    With respect to Paragraph 116, Ms. Lopolito lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning representations and public filings allegedly made after she left the Company on April 30, 2000, and on this basis denies them. Ms. Lopolito otherwise denies each and every allegation in Paragraph 116.

With respect to Paragraph 116(a), Ms. Lopolito incorporates by reference her responses to Paragraphs 59-67, and denies each and every allegation in Paragraph 116(a).

With respect to Paragraph 116(b), Ms. Lopolito lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning representations allegedly made after she left the Company on April 30, 2000, and on this basis denies them. Ms. Lopolito otherwise denies each and every allegation in Paragraph 116(b).

With respect to Paragraph 116(c), Ms. Lopolito lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning the information purportedly obtained through any investigation by plaintiffs' counsel or their representatives, and on that basis denies them. Ms. Lopolito further lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning representations allegedly made after she left the Company on April 30, 2000, and on this basis denies them. Ms. Lopolito otherwise denies each and every allegation in Paragraph 116(c).

With respect to Paragraph 116(d), Ms. Lopolito lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning the information purportedly obtained through any investigation by plaintiffs' counsel or their representatives, and

-56-

on that basis denies them.  Ms. Lopolito further lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning representations allegedly made after she left the Company on April 30, 2000, and on this basis denies them.  Ms. Lopolito otherwise denies each and every allegation in Paragraph 116(d).

With respect to Paragraph 116(e), Ms. Lopolito admits Organogenesis and Novartis were parties to the Novartis Contracts.  Ms. Lopolito lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning contracts between Organogenesis and Novartis allegedly entered into after she left the Company on April 30, 2000, and on this basis denies them.  Ms. Lopolito further lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning representations allegedly made after she left the Company on April 30, 2000, and on this basis denies them.  Ms. Lopolito otherwise denies each and every allegation in Paragraph 116(e).

With respect to Paragraph 116(f), Ms. Lopolito admits Organogenesis and Novartis were parties to the Novartis Contracts.  Ms. Lopolito lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning contracts between Organogenesis and Novartis allegedly entered into after she left the Company on April 30, 2000, and on this basis denies them.  Ms. Lopolito further lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning representations allegedly made after she left the Company on April 30, 2000, and on this basis denies them.  Ms. Lopolito otherwise denies each and every allegation in Paragraph 116(f).

With respect to Paragraph 116(g), Ms. Lopolito lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning the information purportedly obtained through any investigation by plaintiffs' counsel or their representatives, and

on that basis denies them.  Ms. Lopolito further lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning representations allegedly made after she left the Company on April 30, 2000, and on this basis denies them.  Ms. Lopolito otherwise denies each and every allegation in Paragraph 116(g).

With respect to Paragraph 116(h), Ms. Lopolito lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning the information purportedly obtained through any investigation by plaintiffs' counsel or their representatives, and on that basis denies them.  Ms. Lopolito further lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning representations allegedly made after she left the Company on April 30, 2000, and on this basis denies them.  Ms. Lopolito otherwise denies each and every allegation in Paragraph 116(h).

With respect to Paragraph 116(i), Ms. Lopolito lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning the information purportedly obtained through any investigation by plaintiffs' counsel or their representatives, and on that basis denies them.  Ms. Lopolito further lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning representations allegedly made after she left the Company on April 30, 2000, and on this basis denies them.  Ms. Lopolito otherwise denies each and every allegation in Paragraph 116(i).

With respect to Paragraph 116(j), Ms. Lopolito lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning the information purportedly obtained through any investigation by plaintiffs' counsel or their representatives, and on that basis denies them.  Ms. Lopolito further lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning representations allegedly

-58-

made after she left the Company on April 30, 2000, and on this basis denies them. Ms. Lopolito

otherwise denies each and every allegation in Paragraph 116(j).

With respect to Paragraph 116(k), Ms. Lopolito lacks personal knowledge or information

sufficient to form a belief as to the truth of the allegations concerning representations allegedly

made after she left the Company on April 30, 2000, and on this basis denies them. Ms. Lopolito

otherwise denies each and every allegation in Paragraph 116(k).

With respect to Paragraph 116(*l*), Ms. Lopolito lacks personal knowledge or information

sufficient to form a belief as to the truth of the allegations concerning the information

purportedly obtained through any investigation by plaintiffs' counsel or their representatives, and

on that basis denies them. Ms. Lopolito further lacks personal knowledge or information

sufficient to form a belief as to the truth of the allegations concerning representations allegedly

made after she left the Company on April 30, 2000, and on this basis denies them. Ms. Lopolito

otherwise denies each and every allegation in Paragraph 116(*l*).

With respect to Paragraph 116(m), Ms. Lopolito lacks personal knowledge or information

sufficient to form a belief as to the truth of the allegations concerning representations allegedly

made after she left the Company on April 30, 2000, and on this basis denies them. Ms. Lopolito

otherwise denies each and every allegation in Paragraph 116(m).

With respect to Paragraph 116(n), no response is required to the allegations of

Paragraph 116(n) that related to the purported actions, beliefs and emotions of non-party

PricewaterhouseCoopers. To the extent that a response is required, Ms. Lopolito lacks personal

knowledge or information sufficient to form a belief as to the truth of the allegations concerning

the beliefs of non-party PricewaterhouseCoopers. Ms. Lopolito further lacks personal

knowledge or information sufficient to form a belief as to the truth of the allegations concerning

US1DOCS 5275437v1

events allegedly occurring after she left the Company on April 30, 2000, and on this basis denies them. Ms. Lopolito otherwise denies each and every allegation in Paragraph 116(n).

117.    With respect to Paragraph 117, Ms. Lopolito lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning representations allegedly made after she left the Company on April 30, 2000, and on this basis denies them. Ms. Lopolito otherwise denies each and every allegation in Paragraph 117.

118.    With respect to Paragraph 118, Ms. Lopolito lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning public filings allegedly made after she left the Company on April 30, 2000, and on this basis denies them. Ms. Lopolito otherwise denies each and every allegation in Paragraph 118.

119.    With respect to Paragraph 119, Ms. Lopolito lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning representations and public filings allegedly made after she left the Company on April 30, 2000, and on this basis denies them. Ms. Lopolito otherwise denies each and every allegation in Paragraph 119.

With respect to Paragraph 119(a), Ms. Lopolito incorporates by reference her responses to Paragraphs 59-67, and denies each and every allegation in Paragraph 119(a).

With respect to Paragraph 119(b), Ms. Lopolito lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning representations allegedly made after she left the Company on April 30, 2000, and on this basis denies them. Ms. Lopolito otherwise denies each and every allegation in Paragraph 119(b).

With respect to Paragraph 119(c), Ms. Lopolito lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning representations allegedly

US1DOCS 5275437v1

made after she left the Company on April 30, 2000, and on this basis denies them.  Ms. Lopolito otherwise denies each and every allegation in Paragraph 119(c).

With respect to Paragraph 119(d), Ms. Lopolito lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning representations allegedly made after she left the Company on April 30, 2000, and on this basis denies them.  Ms. Lopolito otherwise denies each and every allegation in Paragraph 119(d).

With respect to Paragraph 119(e), Ms. Lopolito lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning the information purportedly obtained through any investigation by plaintiffs' counsel or their representatives, and on that basis denies them.  Ms. Lopolito further lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning representations allegedly made after she left the Company on April 30, 2000, and on this basis denies them.  Ms. Lopolito otherwise denies each and every allegation in Paragraph 119(e).

With respect to Paragraph 119(f), Ms. Lopolito lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning the information purportedly obtained through any investigation by plaintiffs' counsel or their representatives, and on that basis denies them.  Ms. Lopolito further lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning representations allegedly made after she left the Company on April 30, 2000, and on this basis denies them.  Ms. Lopolito otherwise denies each and every allegation in Paragraph 119(f).

With respect to Paragraph 119(g), Ms. Lopolito incorporates by reference her responses to Paragraphs 59-67, and denies each and every allegation in Paragraph 119(g).

US1DOCS 5275437v1

120.    With respect to Paragraph 120 and footnote 4, Ms. Lopolito lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning representations allegedly made after she left the Company on April 30, 2000, and on this basis denies them.  Ms. Lopolito further lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning contracts allegedly entered into by Organogenesis after she left the Company on April 30, 2000, and on this basis denies them.  Ms. Lopolito otherwise denies each and every allegation in Paragraph 120 and footnote 4.

121.    With respect to Paragraph 121, no response is required to the allegations that purport to quote the statements, views and actions of analysts employed by non-party Needham & Co.  To an extent a response is required, Ms. Lopolito denies each and every allegation in Paragraph 121.

122.    With respect to Paragraph 122, Ms. Lopolito lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning representations allegedly made after she left the Company on April 30, 2000, and on this basis denies them.  Ms. Lopolito otherwise denies each and every allegation in Paragraph 122.

123.    With respect to Paragraph 123, Ms. Lopolito lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning public filings allegedly made after she left the Company on April 30, 2000, and on this basis denies them.  Ms. Lopolito otherwise denies each and every allegation in Paragraph 123.

124.    With respect to Paragraph 124, Ms. Lopolito lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning events allegedly occurring after she left the Company on April 30, 2000, and on this basis denies them. No response is required to the allegations that concern the purported conduct, beliefs, emotions

and statements of non-party PricewaterhouseCoopers.  To the extent a response is required, Ms. Lopolito lacks personal knowledge or information sufficient to form a belief as to the allegations concerning the purported conduct, beliefs, emotions and statements of non-party PricewaterhouseCoopers, and on that basis denies them.  Ms. Lopolito otherwise denies each and every allegation in Paragraph 124.

125.    With respect to Paragraph 125, Ms. Lopolito presently lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning representations allegedly made after she left the Company on April 30, 2000, and on this basis denies them.  Ms. Lopolito otherwise denies each and every allegation in Paragraph 125.

126.    With respect to Paragraph 126, Ms. Lopolito presently lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning representations allegedly made after she left the Company on April 30, 2000, and on this basis denies them.  Ms. Lopolito further presently lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning alleged sales of Apligraf after she left the Company on April 30, 2000, and on this basis denies them.  No response is required to the allegations that purport to quote from an analyst report issued by non-party Needham & Co. on June 6, 2001, which speaks for itself.  Ms. Lopolito otherwise denies each and every allegation in Paragraph 126.

127.    With respect to Paragraph 127, Ms. Lopolito presently lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning events allegedly occurring after she left the Company on April 30, 2000, and on this basis denies them.  Ms. Lopolito otherwise denies each and every allegation in Paragraph 127.

128.    With respect to Paragraph 128, Ms. Lopolito presently lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning representations allegedly made after she left the Company on April 30, 2000, and on this basis denies them.  Ms. Lopolito otherwise denies each and every allegation in Paragraph 128.

129.    With respect to Paragraph 129, Ms. Lopolito presently lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning representations allegedly made after she left the Company on April 30, 2000, and on this basis denies them.  Ms. Lopolito otherwise denies each and every allegation in Paragraph 129.

130.    With respect to Paragraph 130, Ms. Lopolito presently lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning representations allegedly made after she left the Company on April 30, 2000, and on this basis denies them.  Ms. Lopolito otherwise denies each and every allegation in Paragraph 130.

131.    With respect to Paragraph 131, Ms. Lopolito presently lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning public filings allegedly made after she left the Company on April 30, 2000, and on this basis denies them.  Ms. Lopolito otherwise denies each and every allegation in Paragraph 131.

132.    With respect to Paragraph 132, Ms. Lopolito presently lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning public filings allegedly made after she left the Company on April 30, 2000, and on this basis denies them.  Ms. Lopolito otherwise denies each and every allegation in Paragraph 132.

133.    With respect to Paragraph 133, Ms. Lopolito presently lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning representations and public filings allegedly made after she left the Company on April 30, 2000,

-64-

and on this basis denies them. Ms. Lopolito otherwise denies each and every allegation in Paragraph 133.

With respect to Paragraph 133(a), Ms. Lopolito incorporates by reference her responses to Paragraphs 59-67, and denies each and every allegation in Paragraph 133(a).

With respect to Paragraph 133(b), Ms. Lopolito presently lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning representations allegedly made after she left the Company on April 30, 2000, and on this basis denies them. Ms. Lopolito otherwise denies each and every allegation in Paragraph 133(b).

With respect to Paragraph 133(c), Ms. Lopolito presently lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning representations allegedly made after she left the Company on April 30, 2000, and on this basis denies them. Ms. Lopolito otherwise denies each and every allegation in Paragraph 133(c).

With respect to Paragraph 133(d), Ms. Lopolito lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning the information purportedly obtained through any investigation by plaintiffs' counsel or their representatives, and on that basis denies them. Ms. Lopolito further presently lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning representations allegedly made after she left the Company on April 30, 2000, and on this basis denies them. Ms. Lopolito otherwise denies each and every allegation in Paragraph 133(d).

With respect to Paragraph 133(e), Ms. Lopolito lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning the information purportedly obtained through any investigation by plaintiffs' counsel or their representatives, and on that basis denies them. Ms. Lopolito presently lacks personal knowledge or information

-65-

sufficient to form a belief as to the truth of the allegations concerning representations allegedly made after she left the Company on April 30, 2000, and on this basis denies them. Ms. Lopolito otherwise denies each and every allegation in Paragraph 133(e).

With respect to Paragraph 133(f), Ms. Lopolito incorporates by reference her responses to Paragraphs 59-67, and denies each and every allegation in Paragraph 133(f).

134.    With respect to Paragraph 134, no response is required to the allegations that purport to quote from an analyst report purportedly issued by non-party Needham & Co. on August 14, 2001, which speaks for itself. Ms. Lopolito otherwise denies each and every allegation in Paragraph 134.

135.    With respect to Paragraph 135, Ms. Lopolito presently lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning representations allegedly made after she left the Company on April 30, 2000, and on this basis denies them. Ms. Lopolito otherwise denies each and every allegation in Paragraph 135.

136.    With respect to Paragraph 136, Ms. Lopolito presently lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning representations allegedly made after she left the Company on April 30, 2000, and on this basis denies them. Ms. Lopolito otherwise denies each and every allegation in Paragraph 136.

137.    With respect to Paragraph 137, Ms. Lopolito presently lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning news reports about Organogenesis allegedly published after she left the Company on April 30, 2000, and on this basis denies them. Ms. Lopolito otherwise denies each and every allegation in Paragraph 137.

138.    With respect to Paragraph 138, Ms. Lopolito presently lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning representations allegedly made after she left the Company on April 30, 2000, and on this basis denies them. Ms. Lopolito otherwise denies each and every allegation in Paragraph 138.

139.    With respect to Paragraph 139, Ms. Lopolito presently lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning representations allegedly made after she left the Company on April 30, 2000, and on this basis denies them. Ms. Lopolito otherwise denies each and every allegation in Paragraph 139.

140.    With respect to Paragraph 140, Ms. Lopolito presently lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning presentations allegedly made by Organogenesis after she left the Company on April 30, 2000, and on this basis denies them. Ms. Lopolito otherwise denies each and every allegation in Paragraph 140.

141.    With respect to Paragraph 141, Ms. Lopolito presently lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning representations allegedly made after she left the Company on April 30, 2000, and on this basis denies them. Ms. Lopolito otherwise denies each and every allegation in Paragraph 141.

142.    With respect to Paragraph 142, Ms. Lopolito presently lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning news reports concerning Organogenesis allegedly published after she left the Company on April 30, 2000, and on this basis denies them. Ms. Lopolito otherwise denies each and every allegation in Paragraph 142.

143.     With respect to Paragraph 143, Ms. Lopolito presently lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning representations allegedly made after she left the Company on April 30, 2000, and on this basis denies them.  Ms. Lopolito otherwise denies each and every allegation in Paragraph 143.

144.     With respect to Paragraph 144, Ms. Lopolito presently lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning public filings allegedly made after she left the Company on April 30, 2000, and on this basis denies them.  Ms. Lopolito otherwise denies each and every allegation in Paragraph 144.

145.     With respect to Paragraph 145, Ms. Lopolito presently lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning representations and public filings allegedly made after she left the Company on April 30, 2000, and on this basis denies them.  Ms. Lopolito otherwise denies each and every allegation in Paragraph 145.

With respect to Paragraph 145(a), Ms. Lopolito incorporates by reference her responses to Paragraphs 59-67, and denies each and every allegation in Paragraph 145(a).

With respect to Paragraph 145(b), Ms. Lopolito presently lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning representations allegedly made after she left the Company on April 30, 2000, and on this basis denies them.  Ms. Lopolito otherwise denies each and every allegation in Paragraph 145(b).

With respect to Paragraph 145(c), Ms. Lopolito lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning the information purportedly obtained through any investigation by plaintiffs' counsel or their representatives, and on that basis denies them.  Ms. Lopolito further presently lacks personal knowledge or

information sufficient to form a belief as to the truth of the allegations concerning representations allegedly made after she left the Company on April 30, 2000, and on this basis denies them. Ms. Lopolito incorporates by reference her responses to Paragraphs 59-67, and otherwise denies each and every allegation in Paragraph 145(c).

With respect to Paragraph 145(d), Ms. Lopolito lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning the information purportedly obtained through any investigation by plaintiffs' counsel or their representatives, and on that basis denies them. Ms. Lopolito further presently lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning representations allegedly made after she left the Company on April 30, 2000, and on this basis denies them. Ms. Lopolito otherwise denies each and every allegation in Paragraph 145(d).

With respect to Paragraph 145(e), Ms. Lopolito lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning the information purportedly obtained through any investigation by plaintiffs' counsel or their representatives, and on that basis denies them. Ms. Lopolito further presently lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning representations allegedly made after she left the Company on April 30, 2000, and on this basis denies them. Ms. Lopolito otherwise denies each and every allegation in Paragraph 145(e).

With respect to Paragraph 145(f), Ms. Lopolito lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning the information purportedly obtained through any investigation by plaintiffs' counsel or their representatives, and on that basis denies them. Ms. Lopolito further presently lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning

-69-

representations allegedly made after she left the Company on April 30, 2000, and on this basis

denies them. Ms. Lopolito otherwise denies each and every allegation in Paragraph 145(f).

With respect to Paragraph 145(g), Ms. Lopolito presently lacks personal knowledge or

information sufficient to form a belief as to the truth of the allegations concerning

representations allegedly made after she left the Company on April 30, 2000, and on this basis

denies them. Ms. Lopolito incorporates by reference her responses to Paragraphs 59-67, and

otherwise denies each and every allegation in Paragraph 145(g).

146.    With respect to Paragraph 146, no response is required to the allegations that

purport to quote from an analyst report purportedly issued by non-party Needham & Co. on

November 16, 2001, which speaks for itself. Ms. Lopolito otherwise denies each and every

allegation in Paragraph 146.

147.    With respect to Paragraph 147, Ms. Lopolito presently lacks personal knowledge

or information sufficient to form a belief as to the truth of the allegations concerning

representations allegedly made, and events allegedly occurring, after she left the Company on

April 30, 2000, and on this basis denies them. Ms. Lopolito denies that January 4, 2002 is "days

before the end of the [purported] Class Period," and states that January 4, 2002 is over one

month before the end of the purported Class Period, which according to plaintiffs, ends on

February 7, 2002. Ms. Lopolito otherwise denies each and every allegation in Paragraph 147.

148.    With respect to Paragraph 148, Ms. Lopolito presently lacks personal knowledge

or information sufficient to form a belief as to the truth of the allegations concerning public

filings allegedly made after she left the Company on April 30, 2000, and on this basis denies

them. Ms. Lopolito otherwise denies each and every allegation in Paragraph 148.

149.    With respect to Paragraph 149, Ms. Lopolito presently lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning public filings allegedly made after she left the Company on April 30, 2000, and on this basis denies them.  Ms. Lopolito otherwise denies each and every allegation in Paragraph 149.

150.    With respect to Paragraph 150, Ms. Lopolito presently lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning public filings allegedly made after she left the Company on April 30, 2000, and on this basis denies them.  Ms. Lopolito further lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning the unidentified "previous report[s]" of unidentified "defendants," and on that basis denies them.  Ms. Lopolito otherwise denies each and every allegation in Paragraph 150.

151.    With respect to Paragraph 151, Ms. Lopolito presently lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning Organogenesis' alleged stock price after she left the Company on April 30, 2000, and on this basis denies them.  Ms. Lopolito otherwise denies each and every allegation in Paragraph 151.

152.    With respect to Paragraph 152 and footnote 5, Ms. Lopolito presently lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning press releases allegedly published after she left the Company on April 30, 2000, and on this basis denies them.  Ms. Lopolito further presently lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning news reports concerning Organogenesis allegedly published after she left the Company on April 30, 2000, and on this basis denies them.  No response is required to the allegations in footnote 5, which consist

of plaintiffs' characterizations of convertible shares. Ms. Lopolito otherwise denies each and every allegation in Paragraph 152.

153.    With respect to Paragraph 153, Ms. Lopolito presently lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning communications allegedly made after she left the Company on April 30, 2000, and on this basis denies them. Ms. Lopolito otherwise denies each and every allegation in Paragraph 153.

154.    With respect to Paragraph 154, Ms. Lopolito presently lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning communications allegedly made after she left the Company on April 30, 2000, and on this basis denies them. Ms. Lopolito otherwise denies each and every allegation in Paragraph 154.

155.    With respect to Paragraph 155, Ms. Lopolito presently lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning public filings allegedly made after she left the Company on April 30, 2000, and on this basis denies them. Ms. Lopolito further presently lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning documents allegedly authored by Pricewaterhouse Coopers concerning Organogenesis after she left the Company on April 30, 2000, and on this basis denies them. Ms. Lopolito otherwise denies each and every allegation in Paragraph 155.

156.    With respect to Paragraph 156, Ms. Lopolito presently lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning the alleged price of Organogenesis' stock after she left the Company on April 30, 2000, and on this basis denies them. Ms. Lopolito otherwise denies each and every allegation in Paragraph 156.

US1DOCS 5275437v1

157.    With respect to Paragraph 157, Ms. Lopolito presently lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning representations allegedly made after she left the Company on April 30, 2000, and on this basis denies them.  Ms. Lopolito further presently lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning news reports concerning Organogenesis allegedly published after she left the Company on April 30, 2000, and on this basis denies them.  Ms. Lopolito otherwise denies each and every allegation in Paragraph 157.

158.    With respect to Paragraph 158, Ms. Lopolito presently lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning the alleged price of Organogenesis' stock after she left the Company on April 30, 2000, and on this basis denies them.  No response is required to the allegations that purport to quote from and characterize an analyst report purportedly issued by non-party Needham & Co. on July 12, 2002, which speaks for itself.  Ms. Lopolito otherwise denies each and every allegation in Paragraph 158.

159.    With respect to Paragraph 159, Ms. Lopolito presently lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning representations allegedly made after she left the Company on April 30, 2000, and on this basis denies them.  Ms. Lopolito further presently lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning news reports concerning Organogenesis allegedly published after she left the Company on April 30, 2000, and on this basis denies them.  Ms. Lopolito otherwise denies each and every allegation in Paragraph 159.

160.    With respect to Paragraph 160, Ms. Lopolito presently lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning events

allegedly occurring after she left the Company on April 30, 2000, and on this basis denies them. Ms. Lopolito otherwise denies each and every allegation in Paragraph 160.

161.     With respect to Paragraph 161, Ms. Lopolito admits that, following the close of the putative Class Period, Organogenesis initiated a bankruptcy proceeding in the United States Bankruptcy Court for the District of Massachusetts, Eastern Division.  No response is required to those allegations concerning the facts or proceedings of the bankruptcy, which are set forth in court papers filed and orders entered in that proceeding, which speak for themselves.  Ms. Lopolito further states that she lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning events allegedly occurring after she left the Company on April 30, 2000, and on that basis denies them.  Ms. Lopolito otherwise denies each and every allegation in Paragraph 161.

162.     With respect to Paragraph 162, Ms. Lopolito presently lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning events allegedly occurring after she left the Company on April 30, 2000, and on this basis denies them. Ms. Lopolito otherwise denies each and every allegation in Paragraph 162.

163.     With respect to Paragraph 163, Ms. Lopolito presently lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations regarding news reports concerning Organogenesis allegedly published after she left the Company on April 30, 2000, and on this basis denies them.  Ms. Lopolito otherwise denies each and every allegation in Paragraph 163.

164.     With respect to Paragraph 164, Ms. Lopolito admits that, following the close of the putative Class Period, Organogenesis initiated a bankruptcy proceeding in the United States Bankruptcy Court for the District of Massachusetts, Eastern Division.  No response is required to

those allegations concerning the facts or proceedings of the bankruptcy, which are set forth in court papers filed and orders entered in that proceeding, which speak for themselves. Ms. Lopolito further states that she lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning events allegedly occurring, and communications allegedly made, after she left the Company on April 30, 2000, and on that basis denies them. Ms. Lopolito otherwise denies each and every allegation in Paragraph 164.

165.    With respect to Paragraph 165, Ms. Lopolito presently lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations regarding news reports concerning Organogenesis allegedly published after she left the Company on April 30, 2000, and on this basis denies them. Ms. Lopolito otherwise denies each and every allegation in Paragraph 165.

166.    With respect to Paragraph 166, Ms. Lopolito admits that, following the close of the putative Class Period, Organogenesis initiated a bankruptcy proceeding in the United States Bankruptcy Court for the District of Massachusetts, Eastern Division. No response is required to those allegations concerning the facts or proceedings of the bankruptcy, which are set forth in court papers filed and orders entered in that proceeding, which speak for themselves. Ms. Lopolito further states that she lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning events allegedly occurring after she left the Company on April 30, 2000, and on that basis denies them. Ms. Lopolito further denies that the Company emerged from bankruptcy under the "full dominance and control" of the "Individual Defendants," as that term is defined by plaintiffs in Paragraph 33 of the Complaint. Ms. Lopolito otherwise denies each and every allegation in Paragraph 166.

US1DOCS 5275437v1

167.    With respect to Paragraph 167, Ms. Lopolito presently lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning events allegedly occurring after she left the Company on April 30, 2000, and on this basis denies them. Ms. Lopolito otherwise denies each and every allegation in Paragraph 167.

168.    With respect to Paragraph 168, no response is required to the allegations of Paragraph 168 relating to the openness, efficiency and development of the market for Organogenesis stock, which consist of legal conclusions.  Ms. Lopolito denies that the Organogenesis common stock traded at artificially inflated prices during the putative Class Period.  Ms. Lopolito lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations relating to whether plaintiffs and other members of the purported class purchased or otherwise acquired Organogenesis securities in reliance on the integrity of the market price of Organogenesis securities and market information relating to Organogenesis, and on that basis denies them.  Ms. Lopolito denies that this action may be properly maintained as a class action, and further denies that plaintiffs or any member of the purported class have been damaged.  Ms. Lopolito otherwise denies each and every allegation in Paragraph 168.

169.    With respect to Paragraph 169, no response is required to the allegations that consist merely of conclusions of law.  Ms. Lopolito otherwise denies each and every allegation in Paragraph 169.

170.    With respect to Paragraph 170, no response is required to the allegations that consist merely of conclusions of law.  Ms. Lopolito otherwise denies each and every allegation in Paragraph 170.

171.    With respect to Paragraph 171, Ms. Lopolito states that these allegations concern and are directed to non-party PricewaterhouseCoopers, are not directed against Ms. Lopolito or

-76-

any other defendant in this action, and that no response is therefore required, and on that basis denies each and every allegation in Paragraph 171. To the extent a response is required, Ms. Lopolito admits that PricewaterhouseCoopers served as the Company's independent auditor during the portion of the putative Class Period in which she was employed by Organogenesis, but otherwise lacks personal knowledge or information sufficient to form a belief as to the truth of each and every allegation in Paragraph 171, and on that basis denies them.

172.    With respect to Paragraph 172, Ms. Lopolito states that these allegations are directed to non-party PricewaterhouseCoopers, are not directed against Ms. Lopolito or any other defendant in this action, and that no response is therefore required, and on that basis denies each and every allegation in Paragraph 172. To the extent a response is required, Ms. Lopolito admits that PricewaterhouseCoopers served as Organogenesis' auditor and principal accounting firm prior to and during the portion of the putative Class Period in which she was employed by Organogenesis, and that PricewaterhouseCoopers had knowledge of Organogenesis' financial reporting practices. Ms. Lopolito otherwise lacks personal knowledge or information sufficient to form a belief as to the truth of each and every allegation in Paragraph 172, and on that basis denies them.

173.    With respect to Paragraph 173 and footnote 6, Ms. Lopolito states that these allegations are directed to non-party PricewaterhouseCoopers, are not directed against Ms. Lopolito or any other defendant in this action, and that no response is therefore required, and on that basis denies each and every allegation in Paragraph 173. To the extent a response is required, Ms. Lopolito admits that PricewaterhouseCoopers served as the Company's independent auditor during the portion of the putative Class Period in which she was employed by Organogenesis, but otherwise lacks personal knowledge or information sufficient to form a

belief as to the truth of each and every allegation in Paragraph 173, and on that basis denies them.

174.    With respect to Paragraph 174, Ms. Lopolito states that these allegations are directed to non-party PricewaterhouseCoopers, are not directed against Ms. Lopolito or any other defendant in this action, and that no response is therefore required, and on that basis denies each and every allegation in Paragraph 174.  To the extent a response is required, Ms. Lopolito admits that PricewaterhouseCoopers served as the Company's independent auditor during the portion of the putative Class Period in which she was employed by Organogenesis, but otherwise lacks personal knowledge or information sufficient to form a belief as to the truth of each and every allegation in Paragraph 174, and on that basis denies them.

With respect to Paragraph 174(a), Ms. Lopolito states that these allegations are directed to non-party PricewaterhouseCoopers, are not directed against Ms. Lopolito or any other defendant in this action, and that no response is therefore required, and on that basis denies each and every allegation in Paragraph 174(a).  To the extent a response is required, Ms. Lopolito lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning events allegedly occurring after she left the Company on April 30, 2000 and on that basis denies them.  Ms. Lopolito further lacks personal knowledge or information sufficient to form a belief as to the truth of each and every allegation other in Paragraph 174(a), and on that basis denies them.

With respect to Paragraph 174(b), Ms. Lopolito states that these allegations are directed to non-party PricewaterhouseCoopers, are not directed against Ms. Lopolito or any other defendant in this action, and that no response is therefore required, and on that basis denies each and every allegation in Paragraph 174(b).  To the extent a response is required, Ms. Lopolito

lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning events allegedly occurring after she left the Company on April 30, 2000 and on that basis denies them.  Ms. Lopolito further lacks personal knowledge or information sufficient to form a belief as to the truth of each and every allegation other in Paragraph 174(b), and on that basis denies them.

With respect to Paragraph 174(c), Ms. Lopolito states that these allegations are directed to non-party PricewaterhouseCoopers, are not directed against Ms. Lopolito or any other defendant in this action, and that no response is therefore required, and on that basis denies each and every allegation in Paragraph 174(c).  To the extent a response is required, Ms. Lopolito lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning events allegedly occurring after she left the Company on April 30, 2000 and on that basis denies them.  Ms. Lopolito further lacks personal knowledge or information sufficient to form a belief as to the truth of each and every allegation other in Paragraph 174(c), and on that basis denies them.

With respect to Paragraph 174(d), Ms. Lopolito states that these allegations are directed to non-party PricewaterhouseCoopers, are not directed against Ms. Lopolito or any other defendant in this action, and that no response is therefore required, and on that basis denies each and every allegation in Paragraph 174(d).  To the extent a response is required, Ms. Lopolito lacks personal knowledge or information sufficient to form a belief as to the truth of each and every allegation in Paragraph 174(d), and on that basis denies them.

175.    With respect to Paragraph 175, Ms. Lopolito states that these allegations are directed to non-party PricewaterhouseCoopers, are not directed against Ms. Lopolito or any other defendant in this action, and that no response is therefore required, and on that basis denies each

and every allegation in Paragraph 175. To the extent a response is required, Ms. Lopolito admits that PricewaterhouseCoopers served as the Company's independent auditor during the portion of the putative Class Period in which she was employed by Organogenesis, but lacks personal knowledge or information sufficient to form a belief as to the truth of each and every other allegation in Paragraph 175, and on that basis denies them.

176.     With respect to Paragraph 176, Ms. Lopolito states that these allegations are directed to non-party PricewaterhouseCoopers, are not directed against Ms. Lopolito or any other defendant in this action, and that no response is therefore required, and on that basis denies each and every allegation in Paragraph 176. To the extent a response is required, Ms. Lopolito admits that PricewaterhouseCoopers served as the Company's independent auditor during the portion of the putative Class Period in which she was employed by Organogenesis, but lacks personal knowledge or information sufficient to form a belief as to the truth of each and every other allegation Paragraph 176, and on that basis denies them.

177.     With respect to Paragraph 177, Ms. Lopolito states that these allegations are directed to non-party PricewaterhouseCoopers, are not directed against Ms. Lopolito or any other defendant in this action, and that no response is therefore required, and on that basis denies each and every allegation in Paragraph 177. To the extent a response is required, Ms. Lopolito admits that PricewaterhouseCoopers served as the Company's independent auditor during the portion of the putative Class Period in which she was employed by Organogenesis, but lacks personal knowledge or information sufficient to form a belief as to the truth of each and every other allegation in Paragraph 177 and on that basis denies them.

178.     With respect to Paragraph 178, Ms. Lopolito states that these allegations are directed to non-party PricewaterhouseCoopers, are not directed against Ms. Lopolito or any other

defendant in this action, and that no response is therefore required, and on that basis denies each and every allegation in Paragraph 178. To the extent a response is required, Ms. Lopolito admits that PricewaterhouseCoopers served as the Company's independent auditor during the portion of the putative Class Period in which she was employed by Organogenesis, but lacks personal knowledge or information sufficient to form a belief as to the truth of each and every other allegation in Paragraph 178, and on that basis denies them.

179.    With respect to Paragraph 179, Ms. Lopolito states that these allegations are directed to non-party PricewaterhouseCoopers, are not directed against Ms. Lopolito or any other defendant in this action, and that no response is therefore required, and on that basis denies each and every allegation in Paragraph 179. To the extent a response is required, Ms. Lopolito admits that PricewaterhouseCoopers served as the Company's independent auditor during the portion of the putative Class Period in which she was employed by Organogenesis, but lacks personal knowledge or information sufficient to form a belief as to the truth of each and every other allegation in Paragraph 179, and on that basis denies them.

180.    With respect to Paragraph 180, Ms. Lopolito states that these allegations are directed to non-party PricewaterhouseCoopers, are not directed against Ms. Lopolito or any other defendant in this action, and that no response is therefore required, and on that basis denies each and every allegation in Paragraph 180. To the extent a response is required, Ms. Lopolito admits that PricewaterhouseCoopers served as the Company's independent auditor during the portion of the putative Class Period in which she was employed by Organogenesis, but lacks personal knowledge or information sufficient to form a belief as to the truth of each and every other allegation in Paragraph 180, and on that basis denies them.

US1DOCS 5275437v1

181.    With respect to Paragraph 181, Ms. Lopolito states that these allegations are directed to non-party PricewaterhouseCoopers, are not directed against Ms. Lopolito or any other defendant in this action, and that no response is therefore required, and on that basis denies each and every allegation in Paragraph 181.  To the extent a response is required, Ms. Lopolito admits that PricewaterhouseCoopers served as the Company's independent auditor during the portion of the putative Class Period in which she was employed by Organogenesis, but lacks personal knowledge or information sufficient to form a belief as to the truth of each and every other allegation in Paragraph 181, and on that basis denies them.

182.    With respect to Paragraph 182, Ms. Lopolito states that these allegations are directed to non-party PricewaterhouseCoopers, are not directed against Ms. Lopolito or any other defendant in this action, and that no response is therefore required, and on that basis denies each and every allegation in Paragraph 182.  To the extent a response is required, Ms. Lopolito admits that PricewaterhouseCoopers served as the Company's independent auditor during the portion of the putative Class Period in which she was employed by Organogenesis, but lacks personal knowledge or information sufficient to form a belief as to the truth of each and every other allegation in Paragraph 182, and on that basis denies them.

183.    With respect to Paragraph 183, Ms. Lopolito states that these allegations are directed to non-party PricewaterhouseCoopers, are not directed against Ms. Lopolito or any other defendant in this action, and that no response is therefore required, and on that basis denies each and every allegation in Paragraph 183.  To the extent a response is required, Ms. Lopolito admits that PricewaterhouseCoopers served as the Company's independent auditor during the portion of the putative Class Period in which she was employed by Organogenesis, but lacks personal

knowledge or information sufficient to form a belief as to the truth of each and every other allegation in Paragraph 183, and on that basis denies them.

184.    With respect to Paragraph 184, Ms. Lopolito states that these allegations are directed to non-party PricewaterhouseCoopers, are not directed against Ms. Lopolito or any other defendant in this action, and that no response is therefore required, and on that basis denies each and every allegation in Paragraph 184.  To the extent a response is required, Ms. Lopolito admits that PricewaterhouseCoopers served as the Company's independent auditor during the portion of the putative Class Period in which she was employed by Organogenesis, but lacks personal knowledge or information sufficient to form a belief as to the truth of each and every other allegation in Paragraph 184, and on that basis denies them.

185.    With respect to Paragraph 185, Ms. Lopolito states that these allegations are directed to non-party PricewaterhouseCoopers, are not directed against Ms. Lopolito or any other defendant in this action, and that no response is therefore required, and on that basis denies each and every allegation in Paragraph 185.  To the extent a response is required, Ms. Lopolito admits that PricewaterhouseCoopers served as the Company's independent auditor during the portion of the putative Class Period in which she was employed by Organogenesis, but lacks personal knowledge or information sufficient to form a belief as to the truth of each and every other allegation in Paragraph 185, and on that basis denies them.

186.    With respect to Paragraph 186, Ms. Lopolito states that these allegations are directed to non-party PricewaterhouseCoopers, are not directed against Ms. Lopolito or any other defendant in this action, and that no response is therefore required, and on that basis denies each and every allegation in Paragraph 186.  To the extent a response is required, Ms. Lopolito admits that PricewaterhouseCoopers served as the Company's independent auditor during the portion of

the putative Class Period in which she was employed by Organogenesis, but lacks personal knowledge or information sufficient to form a belief as to the truth of each and every other allegation in Paragraph 186, and on that basis denies them.

187.    With respect to Paragraph 187, no response is required to the allegations that consist merely of conclusions of law. Ms. Lopolito otherwise denies each and every allegation in Paragraph 187.

188.    With respect to Paragraph 188, Ms. Lopolito denies each and every allegation in Paragraph 188.

189.    With respect to Paragraph 189, Ms. Lopolito denies each and every allegation in Paragraph 189.

190.    With respect to Paragraph 190, Ms. Lopolito admits that during the portion of the putative Class Period in which she was employed by the Company, Organogenesis was listed and traded on the American Stock Exchange, filed periodic reports with the SEC, was followed by securities analysts who disseminated reports and issued press releases to the public. No response is required to those allegations of Paragraph 190 regarding the efficiency of the market for Organogenesis stock, which consist of legal conclusions. Ms. Lopolito otherwise denies each and every allegation in Paragraph 190.

191.    With respect to Paragraph 191, no response is required to those allegations of Paragraph 191 regarding the rate at which market information was "digested." To the extent that a response to such allegations is required, Ms. Lopolito lacks personal knowledge or information sufficient to form a belief as to those allegations. Ms. Lopolito denies that the price of Organogenesis stock was artificially inflated. Ms. Lopolito further denies that plaintiffs or members of the purported class suffered injury, and if such injury exists (which is denied), Ms.

Lopolito denies that plaintiffs and members of the purported class suffered "similar injury."  Ms. Lopolito otherwise denies each and every allegation in Paragraph 191.

192.     With respect to Paragraph 192, no response is required to the allegations of Paragraph 192, which consist merely of conclusions of law.  To the extent a response is required, Ms. Lopolito denies the allegations of Paragraph 192.

193.     With respect to Paragraph 193, Ms. Lopolito repeats and incorporates by reference each of her prior responses to Paragraphs 1-192, as though set forth herein in their entirety.

194.     No response is required to the allegations contained in Paragraph 194, which consist merely of conclusions of law.  To the extent the allegations of Paragraph 194 contain allegations of fact, Ms. Lopolito denies each and every allegation in Paragraph 194.

195.     No response is required to the allegations contained in Paragraph 195, which consist merely of conclusions of law.  To the extent the allegations of Paragraph 195 contain allegations of fact, Ms. Lopolito denies each and every allegation in Paragraph 195.

196.     No response is required to the allegations contained in Paragraph 196, which consist merely of conclusions of law.  To the extent the allegations of Paragraph 196 contain allegations of fact, Ms. Lopolito denies each and every allegation in Paragraph 196.

197.     No response is required to the allegations contained in Paragraph 197, which consist merely of conclusions of law.  To the extent the allegations of Paragraph 197 contain allegations of fact, Ms. Lopolito denies each and every allegation in Paragraph 197.

198.     No response is required to the allegations contained in Paragraph 198, which consist merely of conclusions of law.  To the extent the allegations of Paragraph 198 contain allegations of fact, Ms. Lopolito denies each and every allegation in Paragraph 198.

US1DOCS 5275437v1

199.    No response is required to the allegations contained in Paragraph 199, which consist merely of conclusions of law.  To the extent the allegations of Paragraph 199 contain allegations of fact, Ms. Lopolito denies each and every allegation in Paragraph 199.

200.    No response is required to the allegations contained in Paragraph 200, which consist merely of conclusions of law.  To the extent the allegations of Paragraph 200 contain allegations of fact, Ms. Lopolito denies each and every allegation in Paragraph 200.

201.    No response is required to the allegations contained in Paragraph 201, which consist merely of conclusions of law.  To the extent the allegations of Paragraph 201 contain allegations of fact, Ms. Lopolito denies each and every allegation in Paragraph 201.

202.    No response is required to the allegations contained in Paragraph 202, which consist merely of conclusions of law.  To the extent the allegations of Paragraph 202 contain allegations of fact, Ms. Lopolito denies each and every allegation in Paragraph 202.

203.    No response is required to the allegations contained in Paragraph 203, which consist merely of conclusions of law.  To the extent the allegations of Paragraph 203 contain allegations of fact, Ms. Lopolito denies each and every allegation in Paragraph 203.

204.    With respect to Paragraph 204, Ms. Lopolito repeats and incorporates by reference each of her prior responses to Paragraphs 1-204, as though set forth herein in their entirety.

205.    With respect to Paragraph 205, no response is required to the allegations contained in Paragraph 205 that consist merely of conclusions of law.  To the extent that Paragraph 205 contains allegations of fact, Ms. Lopolito admits that, during a portion of the putative Class Period, she was served as an officer of Organogenesis, but denies that she ever served as a director of the Company.  Ms. Lopolito denies that she held an officer position during

-86-

the entire putative Class Period.  Ms. Lopolito incorporates by reference her response to

Paragraph 29.  Ms. Lopolito admits that while employed by Organogenesis, to the extent

consistent with her role, upon request, she had access to certain internal corporate documents and

other information provided to her in connection therewith.  Ms. Lopolito presently is without

personal knowledge or information sufficient to form a belief as to the specific materials she

allegedly received and when.  Ms. Lopolito lacks personal knowledge or information sufficient

to form a belief as to the truth of allegations concerning what documents any other unidentified

"[i]ndividual [d]efendants" may have received and when they might have received them, and on

that basis denies them.  Ms. Lopolito further admits that she performed in good faith the position

which she held, and otherwise denies each and every allegation in Paragraph 205.

206.    With respect to Paragraph 206, no response is required to the allegations

contained in Paragraph 206 that consist merely of conclusions of law.  To the extent that

Paragraph 206 contains allegations of fact, Ms. Lopolito admits that she was an officer of the

Company for a portion of the putative Class Period, and incorporates by reference her response

to Paragraph 29.  Ms. Lopolito further admits that she performed all duties and responsibilities

related to the position which she held.  Ms. Lopolito otherwise denies each and every allegation

in Paragraph 206.

207.    No response is required to the allegations contained in Paragraph 207, which

consist merely of conclusions of law.  To the extent the allegations of Paragraph 207 contain

allegations of fact, Ms. Lopolito denies each and every allegation in Paragraph 207.

208.    No response is required to the allegations contained in Paragraph 208, which

consist merely of conclusions of law.  To the extent the allegations of Paragraph 208 contain

allegations of fact, Ms. Lopolito denies each and every allegation in Paragraph 208.

US1DOCS 5275437v1

To the extent that any response is required to Plaintiffs' prayer for relief, Ms. Lopolito denies each and every allegation contained therein.

## SECOND DEFENSE

The Complaint and each purported cause of action alleged therein fails to state a claim upon which relief may be granted.

## THIRD DEFENSE

Plaintiffs have failed to plead fraud or its predicate acts with sufficient particularity.

## FOURTH DEFENSE

Plaintiffs' claims as to the Defendants are barred in whole or in part by the applicable statute of limitations.

## FIFTH DEFENSE

Plaintiffs lack standing to assert the claims in the Complaint.

## SIXTH DEFENSE

Plaintiffs' claims under Section 20(a) of the Exchange Act fail because defendants were not controlling persons, did not exercise actual control over others allegedly liable for a primary violation, in every respect acted in good faith, were not culpable participants in any misconduct, and did not directly or indirectly induce any acts allegedly constituting a primary violation of the Exchange Act or any rule or regulation promulgated thereunder.

## SEVENTH DEFENSE

Defendants did not act with <u>scienter</u> but instead exercised reasonable due diligence and acted in good faith and in conformity with all applicable standards and state and federal statutes, including but not limited to the Securities Exchange Act of 1934, as amended, the Private Securities Litigation Reform Act of 1995, and all applicable rules and regulations promulgated thereunder.

-88-

## EIGHTH DEFENSE

Plaintiffs are estopped from obtaining relief, or their claims are barred, by their own conduct or the disclosure of, or plaintiffs' assumption of, the risks of their investment.

## NINTH DEFENSE

Plaintiffs' claims are barred by the Private Securities Litigation Reform Act.

## TENTH DEFENSE

Plaintiffs' claims are barred because they failed to join indispensable parties.

## ELEVENTH DEFENSE

The business judgment rule protects defendants' alleged actions and, thus, bars recovery by plaintiffs and the purported class on their claims.

## TWELFTH DEFENSE

Plaintiffs' claims are barred in whole or in part because plaintiffs failed to make reasonable efforts to mitigate their injuries or damages.

## THIRTEENTH DEFENSE

Plaintiffs' claims are barred in whole or in part because any decline in the market price of the Organogenesis securities purchased by the plaintiffs were caused by factors other than defendants' alleged conduct.

## FOURTEENTH DEFENSE

Plaintiffs' claims are barred in whole or in part by In re: Organogenesis, Inc., No. 02-16944-WCH (Bankr. D. Mass. 2003).

## FIFTEENTH DEFENSE

Plaintiffs' claims are barred in whole or in part by the doctrines of waiver, estoppel, ratification and/or unclean hands.

US1DOCS 5275437v1

Ms. Lopolito reserves the right to assert additional defenses as they become known through the course of discovery.

WHEREFORE, Ms. Lopolito respectfully requests that this Court dismiss the Complaint and plaintiffs' claims, enter judgment in favor of the defendants and against plaintiffs, award defendants the reasonable attorneys' fees, costs, and expenses they have incurred in the defense of this action, and grant defendants any additional relief that is fair and appropriate.

DONNA ABELLI LOPOLITO

By her attorneys,

 _/s/ Jonathan A. Shapiro_____
Jeffrey B. Rudman (BBO #433380)
Jonathan A. Shapiro (BBO #567838)
Kimberly Friday (BBO #660544)
Wilmer Cutler Pickering Hale and Dorr LLP
60 State Street, Boston, MA  02109
(617) 526-6000

September 16, 2005