UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

IN RE ORGANOGENESIS SECURITIES
LITIGATION

Civ. No. 04-10027-JLT

## ANSWER AND AFFIRMATIVE DEFENSES OF DEFENDANT MICHAEL SABOLINSKI, M.D. TO CORRECTED CONSOLIDATED AMENDED COMPLAINT

Defendant Michael Sabolinski, M.D. ("Dr. Sabolinski"), based on his knowledge and information and belief, hereby answers the Corrected Consolidated Amended Class Action Complaint for Violation of the Federal Securities Laws ("Complaint" or "Compl."), dated December 22, 2004. In responding to the Complaint, Dr. Sabolinski does not admit that he bears the burden of proving any of the defenses set forth below, nor the relevance of any of plaintiffs' allegations. Dr. Sabolinski further states that he lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning events allegedly occurring after he left Organogenesis, Inc. on September 9, 2002, and on that basis denies them. To the extent not explicitly admitted, all allegations of the Complaint are denied.

## FIRST DEFENSE

Dr. Sabolinski denies each allegation except where specifically admitted, and in every respect denies liability, denies that he engaged in any improper conduct and denies that plaintiffs are entitled to relief. Dr. Sabolinski presently is without personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning plaintiffs' unidentified sources, including whether the source(s) actually provided the information attributed to them. Dr. Sabolinski responds to the specifically numbered allegations of the Complaint as follows:

To the extent that any response is required to plaintiffs' unnumbered Introductory Paragraph, Dr. Sabolinski denies each and every allegation therein.

1.      With respect to Paragraph 1, no response is required to the allegations of that

paragraph, which sets forth plaintiffs' characterization of this action, consists of legal

conclusions, and does not purport to require a response from Defendants.  To the extent that this

paragraph purports to contain factual assertions requiring a response, Dr. Sabolinski admits that

plaintiffs assert that this is a federal class action asserting claims under the Securities Exchange

Act of 1934 (the "Exchange Act").  Dr. Sabolinski denies that any acts occurred to give rise to

violation of this Act or any other securities laws, and further denies that this action may be

properly maintained as a class action.  Dr. Sabolinski otherwise denies each and every allegation

in Paragraph 1.

2.      With respect to Paragraph 2, Dr. Sabolinski admits that during the putative Class

Period Organogenesis, Inc. ("Organogenesis" or "the Company") manufactured Apligraf, which

has been described as a unique skin replacement therapy used for severe skin wounds.  No

response is required to the allegation concerning Organogenesis' revenue during the putative

Class Period, which is set forth in publicly filed financial statements that speak for themselves.

To the extent a response is required, Dr. Sabolinski denies that plaintiffs completely and

accurately construe and characterize those documents.  Dr. Sabolinski otherwise denies each and

every allegation in Paragraph 2.

3.      With respect to Paragraph 3, no response is required to those allegations

purporting to construe and paraphrase unidentified 1999 public statements, which speak for

themselves.  Dr. Sabolinski admits that prior to and during the putative Class Period, the

Company issued public statements and public filings related to its marketing agreements, its

funding and its profitability, which speak for themselves.  To the extent a response to these

allegations is required, Dr. Sabolinski lacks personal knowledge or information sufficient to form

a belief as to the truth of the allegations concerning the content of those financial statements from 1999. Dr. Sabolinski admits that Organogenesis and Novartis Pharma AG (formerly Sandoz Pharma Ltd.) ("Novartis") were parties to certain contracts during the putative Class Period (collectively referred to herein as "the Novartis Contracts"), and that those documents set forth the terms of the parties' relationship. No response is required to those allegations purporting to construe and characterize the Novartis Contracts, which speak for themselves. To the extent a response is required, Dr. Sabolinski denies that Paragraph 3 completely and accurately construes and characterizes the Novartis Contracts and the parties' relationship as set forth therein. Dr. Sabolinski otherwise denies each and every allegation in Paragraph 3.

4.    With respect to Paragraph 4, Dr. Sabolinski denies that the Company filed a Form 10-K with the Securities and Exchange Commission ("SEC") on March 29, 2000, but admits that the Company filed a Form 10-K with the SEC on or about March 30, 2000. Dr. Sabolinski further admits that the Form 10-K disclosed the Company's financial plan, including the need to secure additional funding. No further response is required to the remaining allegations of Paragraph 4, which purport to construe and excerpt that document, which speaks for itself. To the extent any further response is required, Dr. Sabolinski denies that Paragraph 4 completely and accurately construes and excerpts that document. Dr. Sabolinski otherwise denies each and every allegation in Paragraph 4.

5.    With respect to Paragraph 5, Dr. Sabolinski lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning the purported beliefs of plaintiffs and other members of the purported class, and on that basis denies them. Dr. Sabolinski further lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning what, if anything, unidentified "[d]efendants repeatedly

stated" in unidentified statements, and on that basis denies them. Dr. Sabolinski admits that Organogenesis and Novartis were parties to the Novartis Contracts, and that those documents set forth the terms of the parties' relationship. No response is required to those allegations purporting to construe and characterize the Novartis Contracts, which speak for themselves. To the extent any further response is required, Dr. Sabolinski denies that Paragraph 5 completely and accurately construes and characterizes the Novartis Contracts and the parties' relationship as set forth therein. Dr. Sabolinski otherwise denies each and every allegation in Paragraph 5.[1]

6.       With respect to Paragraph 6, Dr. Sabolinski admits that the Company issued public statements and public filings related to its Apligraf product, the Company's funding and the Company's business plan. Dr. Sabolinski lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning the statements of unidentified "defendants," and on that basis denies them. Dr. Sabolinski further states that no response is required to those allegations purporting to construe and characterize unidentified public statements, which speak for themselves. Dr. Sabolinski denies that Paragraph 6 accurately and completely construes and characterizes such statements. Dr. Sabolinski otherwise denies each and every allegation in Paragraph 6.

7.       With respect to Paragraph 7, Dr. Sabolinski lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning the information purportedly obtained through any investigation by plaintiffs' counsel or their representatives, and on that basis denies them. Dr. Sabolinski admits that, in October 2001, Mr. John J. Arcari ("Mr. Arcari") served as the Company's Chief Financial Officer, but lacks

---

[1] With respect to footnote 1, no response is required to the allegations of that footnote, which consists of legal conclusions and plaintiffs' characterization of certain of the Novartis Contracts, which speak for themselves. To the extent any further response is required, Dr. Sabolinski denies that footnote 1 completely and accurately construes and excerpts the Novartis Contracts, and otherwise denies each and every allegation in footnote 1.

personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning the existence or content of the alleged "Confidential Arcari Document," and on that basis denies them. Dr. Sabolinski further states that, in any event, no response is required to those allegations purporting to construe and excerpt any such document, which speaks for itself. To the extent a response is required and such document exists, Dr. Sabolinski otherwise denies each and every allegation in Paragraph 7.

8.      With respect to Paragraph 8, Dr. Sabolinski denies each and every allegation in Paragraph 8.

9.      With respect to Paragraph 9, Dr. Sabolinski denies each and every allegation in Paragraph 9.

10.     With respect to Paragraph 10, Dr. Sabolinski admits that, following the close of the putative Class Period, Organogenesis initiated a bankruptcy proceeding in the United States Bankruptcy Court for the District of Massachusetts, Eastern Division. No response is required to those allegations concerning the facts or proceedings of the bankruptcy, which are set forth in court papers filed and orders entered in that proceeding, which speak for themselves. Dr. Sabolinski otherwise denies each and every allegation in Paragraph 10.

11.     With respect to Paragraph 11, Dr. Sabolinski denies each and every allegation in Paragraph 11.

12.     With respect to Paragraph 12, no response is required to the allegations of that paragraph, which are not directed to Dr. Sabolinski, and which concern the purported actions of non-party PricewaterhouseCoopers. To the extent a response is required, Dr. Sabolinski admits that PricewaterhouseCoopers served as Organogenesis' independent auditor during the putative Class Period. Dr. Sabolinski lacks personal knowledge or information sufficient to form a belief

as to the allegations concerning the purported conduct or beliefs of PricewaterhouseCoopers, and on that basis denies them.  Dr. Sabolinski otherwise denies each and every allegation in Paragraph 12.

With respect to Paragraph 12(a), no response is required to the allegations of that paragraph, which are not directed to Dr. Sabolinski, and which concern the purported actions of non-party PricewaterhouseCoopers.  To the extent a response is required, Dr. Sabolinski lacks personal knowledge or information sufficient to form a belief as to the allegations concerning the purported conduct or beliefs of PricewaterhouseCoopers, and on that basis denies them.  Dr. Sabolinski further lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning the existence or content of the alleged "Confidential Arcari Document," and on that basis denies them.  Dr. Sabolinski further states that, in any event, no response is required to those allegations purporting to construe and excerpt any such document, which speaks for itself.  Dr. Sabolinski otherwise denies each and every allegation in Paragraph 12(a).

With respect to Paragraph 12(b), no response is required to the allegations of that paragraph, which are not directed to Dr. Sabolinski, and which concern the purported actions of non-party PricewaterhouseCoopers.  To the extent a response is required, Dr. Sabolinski admits that PricewaterhouseCoopers served as Organogenesis' independent auditor during the putative Class Period, and thus certified and audited the Company's financial statements during the putative Class Period, as set forth in the 1999 Form 10-K, filed March 30, 2000 and the 2000 Form 10-K, filed April 2, 2001, which speak for themselves.  Dr. Sabolinski lacks personal knowledge or information sufficient to form a belief as to the allegations concerning the

purported conduct or beliefs of PricewaterhouseCoopers, and on that basis denies them.
Dr. Sabolinski otherwise denies each and every allegation in Paragraph 12(b).

With respect to Paragraph 12(c), no response is required to the allegations of that paragraph, which are not directed to Dr. Sabolinski, and which concern the purported actions of non-party PricewaterhouseCoopers. To the extent a response is required, Dr. Sabolinski lacks personal knowledge or information sufficient to form a belief as to the allegations concerning the purported conduct or beliefs of PricewaterhouseCoopers, and on that basis denies them. Dr. Sabolinski further lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning the existence or content of the alleged "Confidential Arcari Document," and on that basis denies them. Dr. Sabolinski further states that, in any event, no response is required to those allegations purporting to construe and excerpt any such document, which speaks for itself. No response is required to the allegations in footnote 2, which consist of plaintiffs' legal conclusions and characterizations of the term "comfort letter." Dr. Sabolinski otherwise denies each and every allegation in Paragraph 12(c).

With respect to Paragraph 12(d), no response is required to the allegations of that paragraph, which are not directed to Dr. Sabolinski, and which concern the purported actions of non-party PricewaterhouseCoopers. To the extent a response is required, Dr. Sabolinski lacks personal knowledge or information sufficient to form a belief as to the allegations concerning the purported conduct or beliefs of PricewaterhouseCoopers, and on that basis denies them.
Dr. Sabolinski otherwise denies each and every allegation in Paragraph 12 (d).

13.    With respect to Paragraph 13, Dr. Sabolinski admits that, after the close of the putative Class Period on February 7, 2002, PricewaterhouseCoopers issued a "going concern opinion" related to the Company. No response is required to those allegations concerning

plaintiffs' opinion as to when such opinion "should have" been issued, which consist of legal conclusions. Dr. Sabolinski otherwise denies each and every allegation in Paragraph 13.

14.    With respect to Paragraph 14, Dr. Sabolinski admits that the Company filed a Form 8-K with the SEC on or about January 30, 2002. No further response is required to the remaining allegations of Paragraph 14, which purport to construe and excerpt this document, which speaks for itself. To the extent any further response is required, Dr. Sabolinski denies that Paragraph 14 completely and accurately construes and excerpts that document. Dr. Sabolinski otherwise denies each and every allegation in Paragraph 14.

15.    With respect to Paragraph 15, Dr. Sabolinski admits that on February 7, 2002, Organogenesis' stock price reached an intra-day price as low as $1.32 per share, but denies that it closed at this price. Dr. Sabolinski further admits that on March 7, 2000, Organogenesis' stock price reached an intra-day price as high as $22.00, but denies that it closed at this price. Dr. Sabolinski otherwise denies each and every allegation in Paragraph 15.

16.    With respect to Paragraph 16, Dr. Sabolinski admits that in September 2002, the Company initiated a bankruptcy proceeding in the United States Bankruptcy Court for the District of Massachusetts, Eastern Division. No response is required to those allegations concerning the facts or proceedings of the bankruptcy, which are set forth in court papers filed and orders entered in that proceeding, and which speak for themselves. Dr. Sabolinski lacks personal knowledge or information sufficient to form a belief as to the allegations concerning the purported conduct and purported personal business dealings of Mr. Albert Erani ("Mr. Erani") and non-party Mr. Alan Ades ("Mr. Ades"), and on that basis denies them. Dr. Sabolinski otherwise denies each and every allegation in Paragraph 16.

17.    With respect to Paragraph 17, no response is required to the allegations of that paragraph, which consist of legal conclusions.  To the extent a response is required, Dr. Sabolinski admits that plaintiffs purport to bring claims pursuant to Sections 10(b) and 20(a) of the Exchange Act [15 U.S.C. §§ 78j(b) and 78t(a)] and Rule 10b-5 promulgated thereunder by the SEC [17 C.F.R. §240.10b-5].  Dr. Sabolinski otherwise denies each and every allegation in Paragraph 17.

18.    With respect to Paragraph 18, no response is required to the allegations of that paragraph, which consist of legal conclusions regarding this Court's jurisdiction.  To the extent a response is required, Dr. Sabolinski denies each and every allegation in Paragraph 18.

19.    With respect to Paragraph 19, no response is required to the allegations in the first sentence of that paragraph, which consist of legal conclusions with respect to venue. Dr. Sabolinski admits that during the putative Class Period Organogenesis maintained its principal place of business in this District, but otherwise denies the allegations in the second sentence in Paragraph 19.  Dr. Sabolinski otherwise denies each and every allegation in Paragraph 19.

20.    With respect to Paragraph 20, no response is required to the allegations of Paragraph 20, which consist of legal conclusions.  To the extent a response is required, Dr. Sabolinski denies each and every allegation in Paragraph 20.

21.    With respect to Paragraph 21, Dr. Sabolinski admits that the Court appointed Bruno Hofmann, John H. Bowie, Jr., Richard Madigan and Richard Conen as Lead Plaintiffs by an Order dated July 20, 2004.  Dr. Sabolinski specifically denies that any person or entity acquired Organogenesis stock at artificially inflated prices or that any person or entity was damaged.  Dr. Sabolinski otherwise denies each and every allegation in Paragraph 21.

22.     With respect to Paragraph 22, Dr. Sabolinski admits that, during the purported

Class Period, Organogenesis was a Delaware corporation with its principal place of business at

150 Dan Road, Canton, Massachusetts 02021, and that, during the putative Class Period,

Organogenesis designed, manufactured and sold medical products containing living cells and/or

natural connective tissue, including living tissue replacements, cell-based organ asset devices

and other tissue-engineered products.  Dr. Sabolinski further admits that for a portion of the

putative Class Period, Apligraf was the only product containing living human cells to have

gained U.S. Food and Drug Administration ("FDA") PMA marketing approval in the United

States.  Dr. Sabolinski lacks personal knowledge or information sufficient to form a belief as to

the truth of the allegations relating to the activities or marketing efforts of non-party

Organogenesis after September 9, 2002, when he left the Company, and on that basis denies

them.  Dr. Sabolinski otherwise denies each and every allegation in Paragraph 22.

23.     With respect to Paragraph 23, Dr. Sabolinski admits that at certain points during

the putative Class Period, non-party Novartis held shares of Organogenesis stock, as set forth in

the Form S-3 Registration Statement filed by the Company on November 1, 2001, which speaks

for itself.  Dr. Sabolinski further admits that, during the putative Class Period, Novartis was a

pharmaceutical company, and that Organogenesis and Novartis were parties to the Novartis

Contracts, which set forth the terms of the parties' relationship.  No response is required to the

allegations of Paragraph 23 that purport to construe and characterize the Novartis Contracts, the

terms of which speak for themselves.  To the extent a response to these allegations is required,

Dr. Sabolinski denies that Paragraph 23 completely and accurately construes and characterizes

the Novartis Contracts and the parties' relationship as set forth therein.  Dr. Sabolinski lacks

personal knowledge or information sufficient to form a belief as to the allegations concerning

Novartis' business operations in the United States, the origins of those operations, and the extent of those operations in the United States. Dr. Sabolinski otherwise denies each and every allegation in Paragraph 23.

24.    With respect to Paragraph 24, Dr. Sabolinski denies that PricewaterhouseCoopers remains a defendant in this action. Dr. Sabolinski admits that, throughout the putative Class Period, PricewaterhouseCoopers was the independent auditor of the Company.

25.    With respect to Paragraph 25, Dr. Sabolinski admits that Mr. Philip Laughlin ("Mr. Laughlin") served as President, Director, and member of the Executive Committee of Organogenesis on various dates from on or about October 5, 1999 through May 15, 2001. Dr. Sabolinski further admits that on or about January 1, 2000, Mr. Laughlin assumed the role of Chief Executive Officer of the Company. Dr. Sabolinski further admits that Mr. Laughlin left the Company on or about May 15, 2001. Dr. Sabolinski further admits that Mr. Laughlin signed some, but not all, of the Company's SEC filings during the putative Class Period, and states that those documents speak for themselves. Dr. Sabolinski denies that Paragraph 25 completely and accurately construes and characterizes those documents. To the extent that plaintiffs purport to construe and characterize Mr. Laughlin's departure, or the reasons therefore, Dr. Sabolinski lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 25, and on that basis denies them. Dr. Sabolinski otherwise denies each and every allegation in Paragraph 25.

26.    With respect to Paragraph 26, Dr. Sabolinski admits that during the putative Class Period, he served as President, Chief Executive Officer and member of the Board of the Company, and that he assumed those positions on or about May 16, 2001. Dr. Sabolinski further admits that, before assuming these positions, and also during the purported Class Period, he also

served as the Company's Senior Vice President, Medical and Regulatory Affairs. Dr. Sabolinski admits that he signed some, but not all, of the Company's SEC filings during the putative Class Period, and states that those documents speak for themselves. Dr. Sabolinski denies that Paragraph 26 completely and accurately construes and characterizes those documents. Dr. Sabolinski further admits that he ceased to serve as President and Chief Executive Officer on April 5, 2002, but denies that he left the Company at this time. Dr. Sabolinski admits that he left the Company on September 9, 2002. To the extent plaintiffs purport to construe and characterize his changes of position within the Company, and the reasons therefore, Dr. Sabolinski denies the allegations in Paragraph 26. Dr. Sabolinski otherwise denies each and every allegation in Paragraph 26.

27.     With respect to Paragraph 27, Dr. Sabolinski admits that during the putative Class Period, Mr. Erani served as a member of the Board of the Company, and on or about January 1, 2000, assumed the role of Chairman of the Board. Dr. Sabolinski further admits that Mr. Erani served as Chairman of the Board until he resigned from this position effective January 1, 2002, but denies that Mr. Erani departed from the Board of the Company at this time. Dr. Sabolinski admits that Mr. Erani signed some, but not all, of the Company's SEC filings during the putative Class Period, and states that those documents speak for themselves. Dr. Sabolinski denies that Paragraph 27 completely and accurately construes and characterizes those documents. To the extent that plaintiffs purport to construe and characterize Mr. Erani's resignation as Chairman of the Board of Directors, or the reasons therefore, Dr. Sabolinski lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 27, and on that basis denies them. Dr. Sabolinski otherwise denies each and every allegation in Paragraph 27.

28.      With respect to Paragraph 28, Dr. Sabolinski denies that Mr. Ades remains a defendant in this action, as he was dismissed by an Order of this Court dated July 20, 2005. Dr. Sabolinski lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning Mr. Ades, who allegedly began his employment with Organogenesis after Dr. Sabolinski left the Company on September 9, 2002, and on that basis denies them. Dr. Sabolinski admits that Mr. Ades and Mr. Erani are cousins. Dr. Sabolinski further admits that, following the close of the putative Class Period, Organogenesis initiated a bankruptcy proceeding in the Untied States Bankruptcy Court for the District of Massachusetts, Eastern Division. No response is required to those allegations concerning the facts or proceedings of the bankruptcy, which are set forth in court papers filed and orders entered in that proceeding, and which speak for themselves. Dr. Sabolinski otherwise denies each and every allegation in Paragraph 28.

29.      With respect to Paragraph 29, Dr. Sabolinski admits that Ms. Donna Abelli Lopolito ("Ms. Lopolito") served as Chief Financial Officer and Vice President, Finance and Administration of Organogenesis between on or about March 1, 1996 and April 30, 2000. Dr. Sabolinski denies that Ms. Lopolito served in such capacities during any other portion of the putative Class Period, or any time thereafter. Dr. Sabolinski admits that Ms. Lopolito signed some, but not all, of the Company's SEC filings during the putative Class Period, and states that those documents speak for themselves. Dr. Sabolinski denies that Paragraph 29 completely and accurately construes and characterizes those documents. Dr. Sabolinski otherwise denies each and every allegation in Paragraph 29.

30.      With respect to Paragraph 30, Dr. Sabolinski admits that Mr. Arcari served as Chief Financial Officer and Vice President, Finance and Administration of Organogenesis

between April 30, 2000 and May 14, 2002. Dr. Sabolinski admits that Mr. Arcari signed some, but not all, of the Company's SEC filings during the putative Class Period, and states that those documents speak for themselves. Dr. Sabolinski denies that Paragraph 30 completely and accurately construes and characterizes those documents. To the extent that plaintiffs purport to construe and characterize Mr. Arcari's departure, or the reasons therefore, Dr. Sabolinski lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 30, and on that basis denies them. Dr. Sabolinski otherwise denies each and every allegation in Paragraph 30.

31.    With respect to Paragraph 31, Dr. Sabolinski admits that Mr. Herbert M. Stein ("Mr. Stein") served as Chairman of the Board and Chief Executive Officer of Organogenesis until his retirement from these positions on January 1, 2000. Dr. Sabolinski further admits that, after Mr. Stein's retirement, Mr. Stein remained as a member of the Board and Chairman Emeritus until the Company announced his resignation from the Board on or about March 13, 2000. Dr. Sabolinski admits that, during the putative Class Period, Mr. Stein's electronic signature appears on certain of the Company's SEC filings, including Organogenesis' Form 10-Q for the third quarter of 1999, and certain Registration Statements issued in connection with the sale and offering of stock by the Company, including Registration Statements filed on December 27, 1999, an amended Registration Statement filed on February 3, 2000, and a second amended Registration filed on February 14, 2000, and states that those documents speak for themselves. Dr. Sabolinski denies that Paragraph 31 completely and accurately construes and characterizes those documents. Dr. Sabolinski otherwise denies each and every allegation in Paragraph 31.

32.    With respect to Paragraph 32, Dr. Sabolinski admits that Mr. Alan W. Tuck ("Mr. Tuck") served as Chief Strategic Officer of the Company at the inception of the putative Class

Period and left the Company on June 15, 2000, but denies that Mr. Tuck served in such capacities during any other portion of the putative Class Period, or any time thereafter.  Dr. Sabolinski otherwise denies each and every allegation in Paragraph 32.

33.     With respect to Paragraph 33, no response is required to the allegations of Paragraph 33, which purport to describe and construe the allegations of the Complaint.

34.     With respect to Paragraph 34, Dr. Sabolinski admits that, during the putative Class Period, he held various positions at Organogenesis, and at certain of those times served as an officer and director of the Company.  Dr. Sabolinski denies that he held officer and director positions during the entire putative Class Period.  Dr. Sabolinski incorporates by reference his response to Paragraph 26.  Dr. Sabolinski admits that at certain times, upon request and to the extent consistent with his role, he had access to certain internal corporate documents, spoke to other corporate personnel, attended management and Board of Director meetings and committees thereof and had access to certain reports and other information provided to them in connection therewith.  Dr. Sabolinski presently is without personal knowledge or information sufficient to form a belief as to the specific materials he allegedly received and when.  Dr. Sabolinski lacks personal knowledge or information sufficient to form a belief as to the truth of allegations concerning what documents any other unidentified "[i]ndividual [d]efendants" may have received and when they might have received them, and on that basis denies them.  Dr. Sabolinski otherwise denies each and every allegation in Paragraph 34.

35.     With respect to Paragraph 35, no response is required to those allegations which consist of plaintiffs' legal conclusions as to whether defendants in this action may be treated as a "group" for pleading purposes, but to the extent a response is required, Dr. Sabolinski denies those allegations.  Dr. Sabolinski admits that he held the positions set forth in Paragraph 26, and

he incorporates by reference his response to that paragraph and Paragraph 34. Dr. Sabolinski further admits that he performed in good faith all of the various positions he held at Organogenesis during the putative Class Period, and that, at various times, he was involved with certain operations and/or business activities of Organogenesis consistent with his positions. Dr. Sabolinski otherwise denies each and every allegation in Paragraph 35.

36. With respect to Paragraph 36, no response is required to the allegations of Paragraph 36 concerning plaintiffs' characterizations of defendants' legal duties or alleged violations thereof, which consist of legal conclusions. To the extent a response is required, Dr. Sabolinski denies those allegations. Dr. Sabolinski admits that during the putative Class Period, he held the positions at Organogenesis as set forth in Paragraph 26, which he incorporates by reference herein. He further admits that, during the putative Class Period, Organogenesis stock was traded on the American Stock Exchange ("AMEX"), and governed by the provisions of the federal securities laws. Dr. Sabolinski denies that Organogenesis is currently a publicly-held company, denies that Organogenesis stock now trades on the AMEX, and he further denies that he is now an officer of that reorganized company. Dr. Sabolinski otherwise denies each and every allegation in Paragraph 36.

37. With respect to Paragraph 37, Dr. Sabolinski admits that during the putative Class Period he and others participated in good faith in the preparation of various public communications made by Organogenesis to the extent appropriate to his positions, but otherwise is presently without personal knowledge or information sufficient to form a belief as to which communications he drafted, prepared and/or approved, or when he did so. Dr. Sabolinski otherwise denies each and every allegation in Paragraph 37.

38.     With respect to Paragraph 38, Dr. Sabolinski admits that at various times during the putative Class Period, he received copies of various materials that Organogenesis filed with the SEC, press releases, and other public statements related to the Company, but is presently without personal knowledge or information sufficient to form a belief as to which documents he received, or when.  Dr. Sabolinski lacks personal knowledge or information sufficient to form a belief as to the truth of plaintiff's non-specific allegations concerning unidentified documents "public reports" or "releases" he or any other unidentified "[i]ndividual [d]efendant[s]"or may have received and when they might have received them, and on that basis denies them.  Dr. Sabolinski otherwise denies each and every allegation in Paragraph 38.

39.     With respect to Paragraph 39, Dr. Sabolinski denies each and every allegation in Paragraph 39.

40.     With respect to Paragraph 40, no response is required to the allegations in this paragraph, which consist of legal conclusions and plaintiffs' characterization of this action, and which do not purport to require a response from Dr. Sabolinski.  To the extent that this paragraph purports to contain factual allegations requiring a response, Dr. Sabolinski admits that plaintiffs assert that this is a putative class action pursuant to Federal Rules of Civil Procedure 23(a) and (b)(3) on behalf of a purported class.  Dr. Sabolinski denies that he engaged in any unlawful or improper conduct, denies that plaintiffs or members of the purported class were damaged, and denies this action may be properly maintained as a class action.  Dr. Sabolinski lacks personal knowledge or information sufficient to form a belief as to the truth of each and every other allegation contained in Paragraph 40, and on that basis denies them.

41.     With respect to Paragraph 41, no response is required to the allegations in this paragraph, which consist of legal conclusions and plaintiffs' characterization of this action, and

which do not purport to require a response from Dr. Sabolinski.  To the extent a response is required, Dr. Sabolinski admits that during the putative Class Period, Organogenesis securities were traded on the AMEX as of November 2, 2001, but presently lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning how many shares were issued or outstanding at any given time, and on that basis denies them.  Dr. Sabolinski otherwise denies each and every allegation in Paragraph 41.

42. With respect to Paragraph 42, no response is required to the allegations in this paragraph, which consist of legal conclusions and plaintiffs' characterization of this action, and which do not purport to require a response from Defendants.  To the extent that this paragraph purports to contain factual assertions requiring a response, Dr. Sabolinski denies each and every allegation in Paragraph 42.

43. With respect to Paragraph 43, no response is required to the allegations in this paragraph, which consist of legal conclusions and plaintiffs' characterization of this action, and which do not purport to require a response from Defendants.  To the extent that this paragraph purports to contain factual assertions requiring a response, Dr. Sabolinski denies each and every allegation in Paragraph 43.

44. With respect to Paragraph 44 and all of its subparts, no response is required to the allegations in this paragraph, which consist of legal conclusions and plaintiffs' characterization of this action, and which do not purport to require a response from Defendants.  To the extent that this paragraph purports to contain factual assertions requiring a response, Dr. Sabolinski denies each and every allegation in Paragraph 44.

45. With respect to Paragraph 45, no response is required to the allegations in this paragraph, which consist of legal conclusions and plaintiffs' characterization of this action, and

which do not purport to require a response from Defendants.  To the extent that this paragraph purports to contain factual assertions requiring a response, Dr. Sabolinski denies each and every allegation in Paragraph 45.

46.    With respect to Paragraph 46, Dr. Sabolinski admits the allegations of Paragraph 46.

47.    With respect to Paragraph 47, Dr. Sabolinski lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations relating to how plaintiffs believe Organogenesis "appeared" to others, and on that basis denies them.  Dr. Sabolinski admits that Organogenesis manufactured Apligraf, and that certain lots of the product were voluntarily recalled in 1999.  Dr. Sabolinski denies that all such recalls were related to contamination or were evidence of the difficulties associated with production.  Dr. Sabolinski presently lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations that such recalls accounted for more than 10% of monthly production at the time, and on that basis denies them.  Dr. Sabolinski admits that Apligraf was approved for standardized Medicare or Medicaid reimbursement in all fifty states in September 2001, as set forth in a Company press release issued on September 21, 2001, which speaks for itself.  Dr. Sabolinski denies that, as characterized by plaintiffs, September 2001 was "early in the Class Period," and states that the putative Class Period, as defined by plaintiffs, is between November 15, 1999 and February 7, 2002.  Dr. Sabolinski otherwise denies each and every allegation in Paragraph 47.

48.    With respect to Paragraph 48, Dr. Sabolinski admits that Organogenesis filed a Form 10-K with the SEC on March 31, 1999, which speaks for itself.  Dr. Sabolinski presently lacks personal knowledge or information sufficient to form a belief as to the allegations

concerning actual Apligraf sales, and whether those sales fell below the non-specified

"guidance" set forth in Paragraph 48, and on that basis denies them.  Dr. Sabolinski otherwise

denies each and every allegation in Paragraph 48.

49.    With respect to Paragraph 49, no response is required to the allegations that

purport to quote the view of an investment analyst employed by non-party Moors & Cabot, Inc.

in an April 1999 edition of the *Boston Business Journal*, which speaks for itself.  Dr. Sabolinski

otherwise denies each and every allegation in Paragraph 49.

50.    With respect to Paragraph 50, Dr. Sabolinski admits that during the putative Class

Period, the Company issued various public statements and public filings addressing the financial

position of the Company and disclosing its need for additional funding.  Dr. Sabolinski states

that these documents speak for themselves.  Dr. Sabolinski denies that Paragraph 50 completely

and accurately construes and characterizes those documents, and denies that the Company issued

"aggressive predictions" or made other projections as represented in Paragraph 50.  Dr.

Sabolinski otherwise denies each and every allegation in Paragraph 50.

51.    With respect to Paragraph 51, Dr. Sabolinski denies that the Company filed a

Form 10-K with the SEC on March 29, 2000, but admits that Organogenesis filed a Form 10-K

for 1999 with the SEC on or about March 30, 2000.  No further response is required to the

remaining allegations of Paragraph 51, which purport to construe, paraphrase and excerpt that

document, which speaks for itself.  To the extent any further response is required, Dr. Sabolinski

denies that Paragraph 51 completely and accurately construes, paraphrases and excerpts that

document.  Dr. Sabolinski otherwise denies each and every allegation in Paragraph 51.

52.    With respect to Paragraph 52, no response is required to the allegations of

Paragraph 52 which purport to construe, paraphrase, and excerpt unidentified filings or

statements, which speak for themselves.  To the extent a response is required, Dr. Sabolinski

admits that Organogenesis filed various statements with the SEC during the Class Period, but

denies that Paragraph 52 completely and accurately construes and excerpts any such documents.

Dr. Sabolinski lacks personal knowledge or information sufficient to form a belief as to the truth

of allegations concerning unidentified "statements" made in unidentified "fil[ings] with the

SEC" or elsewhere by unidentified "defendants," which are not sufficiently identified in

Paragraph 52, and on that basis denies them.  Dr. Sabolinski otherwise denies each and every

allegation in Paragraph 52.

     53.     With respect to Paragraph 53, Dr. Sabolinski lacks personal knowledge or

information sufficient to form a belief as to the truth of the allegations regarding what investors

"believe" or what plaintiffs assert they were "led to believe," and on that basis denies them.  No

response is required to the remaining allegations of Paragraph 53, which purport to construe and

paraphrase unidentified "report[s]" or statements by the Company, which speak for themselves if

they exist.  Dr. Sabolinski admits that Organogenesis and Novartis were parties to the Novartis

Contracts.  No further response is required to the allegations purporting to construe and excerpt

the Novartis Contracts, which speak for themselves.  To the extent any further response is

required, Dr. Sabolinski denies that Paragraph 53 completely and accurately construes and

excerpts those contracts and the parties' relationship as set forth therein.  Dr. Sabolinski

otherwise denies each and every allegation in Paragraph 53.

     54.     With respect to Paragraph 54 and footnote 3, Dr. Sabolinski admits that

Organogenesis issued a press release on November 15, 1999, regarding FDA PMA approval of

its Apligraf product, which speaks for itself.  Dr. Sabolinski further admits that Organogenesis

discussed the Apligraf product and revenue therefrom in certain of its public statements during

the putative Class Period, but denies that Paragraph 54 accurately construes and paraphrases any such documents. Dr. Sabolinski otherwise denies each and every allegation in Paragraph 54.

55.     With respect to Paragraph 55, Dr. Sabolinski admits that the FDA approved Apligraf for marketing in the United States for the treatment of venous leg ulcers on May 26, 1998, and by the inception of the putative Class Period, FDA approval of Apligraf for diabetic leg ulcers was being pursued. Dr. Sabolinski admits that Apligraf was a registered trademark of Novartis during the putative Class Period, and that Novartis marketed Apligraf during the putative Class Period, pursuant to the terms of the Novartis Contracts. No response is required to the allegations of Paragraph 55 that purport to construe and characterize the Novartis Contracts, the terms of which speak for themselves. To the extent a response to these allegations is required, Dr. Sabolinski denies that Paragraph 55 completely and accurately construes and characterizes the Novartis Contracts and the parties' relationship as set forth therein. Dr. Sabolinski otherwise denies each and every allegation in Paragraph 55.

56.     With respect to Paragraph 56, Dr. Sabolinski admits that during the putative Class Period non-party Novartis held shares of Organogenesis stock, as set forth in the Form S-3 Registration Statement filed by the Company on November 1, 2001, which speaks for itself. Dr. Sabolinski admits that Organogenesis and Novartis were parties to the Novartis Contracts, which set forth the terms of the parties' relationship. No response is required to the allegations of Paragraph 56 that purport to construe and characterize the Novartis Contracts, the terms of which speak for themselves. To the extent a response to these allegations is required, Dr. Sabolinski denies that Paragraph 56 completely and accurately construes and characterizes the Novartis Contracts and the parties' relationship as set forth therein. Dr. Sabolinski otherwise denies each and every allegation in Paragraph 56.

57.     With respect to Paragraph 57, Dr. Sabolinski admits that Organogenesis and Novartis were parties to the Novartis Contracts.  No response is required to the allegations of Paragraph 57 that purport to construe and characterize the Novartis Contracts, the terms of which speak for themselves.  To the extent a response to these allegations is required, Dr. Sabolinski denies that Paragraph 57 completely and accurately construes and characterizes the Novartis Contracts and the parties' relationship as set forth therein.  Dr. Sabolinski lacks personal knowledge or information sufficient to form a belief as to the allegations concerning the knowledge or beliefs of plaintiffs or "investors" and as to the allegations concerning unidentified "defendants," and on that basis denies them.  Dr. Sabolinski otherwise denies each and every allegation in Paragraph 57.

58.     With respect to Paragraph 58, no response is required to the allegations of Paragraph 58, which purport to construe and paraphrase unidentified "representations" by Organogenesis or "Defendants," which are too vaguely described to permit a response, and even if identified, speak for themselves.  Dr. Sabolinski lacks personal knowledge or information sufficient to form a belief as to what unidentified "Defendants" may have said, done or "represented" to anyone else, and on that basis denies them.  Dr. Sabolinski otherwise denies each and every allegation in Paragraph 58.

59.     With respect to Paragraph 59, Dr. Sabolinski incorporates by reference his response to Paragraph 7.  Dr. Sabolinski lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning the existence or content of the alleged "Confidential Arcari Document," and on that basis denies them.  Dr. Sabolinski further states that, in any event, no response is required to those allegations purporting to construe and excerpt any such document, which speaks for itself.  To the extent a response is required and such

document exists, Dr. Sabolinski otherwise denies each and every allegation in Paragraph in Paragraph 59.

60.    With respect to Paragraph 60, Dr. Sabolinski lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning the information purportedly obtained through any investigation by plaintiffs' counsel or their representatives, and on that basis denies them.  Dr. Sabolinski admits that Organogenesis disclosed its financial results in various public filings and press releases published during the putative class period, which speak for themselves.  Dr. Sabolinski denies that Paragraph 60 completely and accurately characterizes, excerpts and paraphrases such documents, and denies that any information was improperly withheld.  Dr. Sabolinski otherwise denies each and every allegation in Paragraph 60.

61.    With respect to Paragraph 61, Dr. Sabolinski lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning the information purportedly obtained through any investigation by plaintiffs' counsel or their representatives, and on that basis denies them.  Dr. Sabolinski further lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning unidentified "statements" or failures to disclose by unidentified "defendants," and on that basis denies them. Dr. Sabolinski admits that Organogenesis disclosed its financial results in various public filings and press releases published during the putative class period, which speak for themselves. Dr. Sabolinski denies that Paragraph 61 completely and accurately characterizes, excerpts and paraphrases such documents, and denies that any information was improperly withheld. Dr. Sabolinski otherwise denies each and every allegation in Paragraph 61.

With respect to Paragraph 61(a), Dr. Sabolinski lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning the information purportedly obtained through any investigation by plaintiffs' counsel or their representatives, and on that basis denies them. No further response is required to the allegations of Paragraph 61(a) that purport to describe, construe and excerpt unidentified statements or documents, which speak for themselves. Dr. Sabolinski otherwise denies each and every allegation in Paragraph 61(a).

With respect to Paragraph 61(b), Dr. Sabolinski lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning the information purportedly obtained through any investigation by plaintiffs' counsel or their representatives, and on that basis denies them. Dr. Sabolinski further lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning unidentified "statements" or failures to disclose by unidentified "defendants," and on that basis denies them. Dr. Sabolinski admits that Organogenesis disclosed its financial results in various public filings and press releases published during the putative class period, which speak for themselves. Dr. Sabolinski denies that Paragraph 61(b) completely and accurately characterizes, excerpts and paraphrases such documents, and denies that any information was improperly withheld. Dr. Sabolinski otherwise denies each and every allegation in Paragraph 61(b).

With respect to Paragraph 61(c), Dr. Sabolinski lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning the information purportedly obtained through any investigation by plaintiffs' counsel or their representatives, and on that basis denies them. Dr. Sabolinski further lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning unidentified "statements" or failures to disclose by unidentified "defendants," and on that basis denies them.

Dr. Sabolinski admits that Organogenesis disclosed its financial results in various public filings and press releases published during the putative class period, which speak for themselves. Dr. Sabolinski denies that Paragraph 61(c) completely and accurately characterizes, excerpts and paraphrases such documents, and denies that any information was improperly withheld. Dr. Sabolinski otherwise denies each and every allegation in Paragraph 61(c).

62.    With respect to Paragraph 62, Dr. Sabolinski lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning the information purportedly obtained through any investigation by plaintiffs' counsel or their representatives, and on that basis denies them.  Dr. Sabolinski further denies that any information was improperly withheld, and otherwise denies each and every allegation in Paragraph 62.

With respect to Paragraph 62(a), Dr. Sabolinski lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning the information purportedly obtained through any investigation by plaintiffs' counsel or their representatives, and on that basis denies them.  Dr. Sabolinski otherwise denies each and every allegation in Paragraph 62(a).

With respect to Paragraph 62(b), Dr. Sabolinski lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning the information purportedly obtained through any investigation by plaintiffs' counsel or their representatives, and on that basis denies them.  Dr. Sabolinski otherwise denies each and every allegation in Paragraph 62(b).

With respect to Paragraph 62(c), Dr. Sabolinski lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning the information purportedly obtained through any investigation by plaintiffs' counsel or their representatives, and

on that basis denies them.  Dr. Sabolinski otherwise denies each and every allegation in Paragraph 62(c).

With respect to Paragraph 62(d), Dr. Sabolinski lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning the information purportedly obtained through any investigation by plaintiffs' counsel or their representatives, and on that basis denies them.  Dr. Sabolinski otherwise denies each and every allegation in Paragraph 62(d).

63.    With respect to Paragraph 63, Dr. Sabolinski lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning the information purportedly obtained through any investigation by plaintiffs' counsel or their representatives, and on that basis denies them.  Dr. Sabolinski otherwise denies each and every allegation in Paragraph 63.

64.    With respect to Paragraph 64, Dr. Sabolinski lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning the information purportedly obtained through any investigation by plaintiffs' counsel or their representatives, and on that basis denies them.  Dr. Sabolinski further lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning whether unidentified "defendants" were aware of such alleged facts, and on that basis denies them.  Dr. Sabolinski denies that any information was improperly withheld, and otherwise denies each and every allegation in Paragraph 64.

65.    With respect to Paragraph 65, Dr. Sabolinski lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning the information purportedly obtained through any investigation by plaintiffs' counsel or their

representatives, and on that basis denies them. Dr. Sabolinski further lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning unidentified "representations" by unidentified "defendants," and on that basis denies them. Dr. Sabolinski otherwise denies each and every allegation in Paragraph 65.

66.     With respect to Paragraph 66, Dr. Sabolinski lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning the information purportedly obtained through any investigation by plaintiffs' counsel or their representatives, and on that basis denies them. Dr. Sabolinski otherwise denies each and every allegation in Paragraph 66.

67.     With respect to Paragraph 67, Dr. Sabolinski lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning the information purportedly obtained through any investigation by plaintiffs' counsel or their representatives, and on that basis denies them. Dr. Sabolinski further lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning the "motivat[ions]" of unidentified "defendants," and on that basis denies them. Dr. Sabolinski otherwise denies each and every allegation in Paragraph 67.

68.     With respect to Paragraph 68, Dr. Sabolinski admits that the purported Class Period begins on November 15, 1999. Dr. Sabolinski further admits that on November 15, 1999 Organogenesis published a release on *Business Wire* announcing financial results for the third quarter of 1999, the period ending September 30, 1999, in which Mr. Stein is quoted. Dr. Sabolinski denies making any of the statements in the press release. Dr. Sabolinski further states that he lacks personal knowledge or information concerning the truth of the allegations related to such release, and on that basis denies them. No further response is required to the allegations of

Paragraph 68 that purport to construe, paraphrase and excerpt the release, which speaks for itself. Dr. Sabolinski denies that Paragraph 68 completely and accurately construes, paraphrases and excerpts the release. Dr. Sabolinski otherwise denies each and every allegation in Paragraph 68.

69.    With respect to Paragraph 69, Dr. Sabolinski admits that on December 2, 1999 Organogenesis published a release on *Business Wire* announcing financial results, in which Mr. Tuck is quoted. Dr. Sabolinski denies making any of the statements in the press release. Dr. Sabolinski lacks personal knowledge or information concerning the truth of the allegations related to such release, and on that basis denies them. No further response is required to the allegations of Paragraph 69 that purport to construe and excerpt the release, which speaks for itself. Dr. Sabolinski further denies that Paragraph 69 completely and accurately construes and excerpts the release. Dr. Sabolinski otherwise denies each and every allegation in Paragraph 69.

70.    With respect to Paragraph 70, Dr. Sabolinski admits that on November 15, 1999 Organogenesis filed with the SEC its financial results for the third quarter of 1999, the period ended September 30, 1999, pursuant to its Form 10-Q. Dr. Sabolinski further admits that the electronic signatures of Mr. Stein and Ms. Lopolito appear on that Form 10-Q. Dr. Sabolinski denies making any of the statements in the Form 10-Q. No further response is required to the extent the allegations of Paragraph 70 purport to construe and excerpt the release, which speaks for itself. Dr. Sabolinski denies that Paragraph 70 completely and accurately construes and excerpts the release. Dr. Sabolinski otherwise denies each and every allegation in Paragraph 70.

71.    With respect to Paragraph 71, Dr. Sabolinski admits that on November 15, 1999, Organogenesis' stock price reached an intra-day price as low as $6.81 per share, but denies that it closed at that price. Dr. Sabolinski further admits that on December 2, 1999, Organogenesis'

stock price reached an intra-day price as high as $12.30 per share, but denies that it closed at that price.  Dr. Sabolinski otherwise denies each and every allegation in Paragraph 71.

72.    With respect to Paragraph 72, Dr. Sabolinski admits that the Company filed with the SEC a Registration Statement on December 27, 1999, and two amended Registration Statements, filed on February 3, 2000 and February 14, 2000, all of which incorporated by reference the Company's Form 10-Q for the third quarter of 1999, and all of which speak for themselves.  Dr. Sabolinski denies that Paragraph 72 completely and accurately construes and paraphrases those documents.   Dr. Sabolinski otherwise denies each and every allegation in Paragraph 72.

73.    With respect to Paragraph 73, Dr. Sabolinski admits that in January 2000, Mr. Laughlin presented at the Hambrecht & Quist 18th Annual Healthcare Conference in San Francisco, California.  Dr. Sabolinski presently lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning the precise date of the conference or the content of Mr. Laughlin's presentation and the purported "beliefs" of any investor(s), and on that basis denies them.  Dr. Sabolinski denies that on January 14, 2000, Mr. Laughlin provided an interview to *The Wall Street Transcript*, but admits that such an interview took place on January 13, 2000.  No further response is required to the extent the allegations of Paragraph 73 purport to construe and excerpt the transcript thereof, which speaks for itself.  Dr. Sabolinski denies that Paragraph 73 completely and accurately construes and excerpts the transcript.  Dr. Sabolinski otherwise denies each and every allegation in Paragraph 73.

74.    With respect to Paragraph 74, Dr. Sabolinski admits that on or about February 14, 2000, the Company filed a Form 10-Q/A with the SEC, but denies that it amended its financial

results.  Dr. Sabolinski further admits that the electronic signatures of Mr. Laughlin and Ms. Lopolito appear on the Form 10-Q/A.  Dr. Sabolinski denies making any of the statements in the Form 10-Q/A.  No further response is required to the extent the allegations of Paragraph 74 purport to construe and excerpt the Form 10-Q/A, which speaks for itself.  Dr. Sabolinski denies that Paragraph 74 completely and accurately construes and excerpts the Form 10-Q/A.  Dr. Sabolinski otherwise denies each and every allegation in Paragraph 74.

75.    With respect to Paragraph 75, Dr. Sabolinski incorporates by reference his response to Paragraph 74.  No further response is required to the extent the allegations of Paragraph 75 purport to construe and excerpt the Form 10-Q/A, which speaks for itself.  Dr. Sabolinski denies that he made any of the statements in the Form 10-Q/A, and denies Paragraph 75 completely and accurately construes and excerpts the Form 10-Q/A.  Dr. Sabolinski otherwise denies each and every allegation in Paragraph 75.

76.    With respect to Paragraph 76, Dr. Sabolinski lacks personal knowledge or information sufficient to form a belief as to the truth of any allegations concerning unidentified "statements" made by unidentified "defendants."  Dr. Sabolinski admits that the Company issued a press release on November 15, 1999, but denies that he made any of the statements in the press release.  He further denies that Paragraph 76 accurately and completely characterizes that press release.  Dr. Sabolinski denies that he made any of the statements in the press release or public filings during the "period November 15, 1999 through February 14, 2000" and further denies that any press release, public filing or public statement was materially false or misleading.  Dr. Sabolinski otherwise denies each and every allegation in Paragraph 76.

With respect to Paragraph 76(a), Dr. Sabolinski incorporates by reference his responses to Paragraphs 59-67.  Dr. Sabolinski lacks personal knowledge or information sufficient to form

a belief as to the truth of any allegations concerning the actions or failures to disclose by unidentified "defendants," and on that basis denies them. Dr. Sabolinski otherwise denies each and every allegation in Paragraph 76(a).

With respect to Paragraph 76(b), Dr. Sabolinski lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning the information purportedly obtained through any investigation by plaintiffs' counsel or their representatives, and on that basis denies them. Dr. Sabolinski also lacks personal knowledge or information sufficient to form a belief as to the truth of any allegations concerning unspecified "representations" in unidentified documents by unidentified "defendants," and on that basis denies them. Dr. Sabolinski otherwise denies each and every allegation in Paragraph 76(b).

With respect to Paragraph 76(c), no response is required to the allegations of Paragraph 76(c) that purport to describe, construe and excerpt unidentified statements or documents, which speak for themselves. Dr. Sabolinski further lacks personal knowledge or information sufficient to form a belief as to the truth of any allegations concerning unspecified "representations" by unidentified "defendants," and on that basis denies them. Dr. Sabolinski further lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning the information purportedly obtained through any investigation by plaintiffs' counsel or their representatives, and on that basis denies them. Dr. Sabolinski otherwise denies each and every allegation in Paragraph 76(c).

With respect to Paragraph 76(d), no response is required to the allegations of Paragraph 76(d) that purport to describe, construe and excerpt unidentified statements or documents, which speak for themselves. Dr. Sabolinski further lacks personal knowledge or information sufficient to form a belief as to the truth of any allegations concerning unspecified "public statements" by

unidentified "defendants," and on that basis denies them.  Dr. Sabolinski further lacks personal

knowledge or information sufficient to form a belief as to the truth of the allegations concerning

the information purportedly obtained through any investigation by plaintiffs' counsel or their

representatives, and on that basis denies them.  Dr. Sabolinski incorporates by reference his

responses to Paragraphs 56-67, and otherwise denies each and every allegation in

Paragraph 76(d).

 With respect to Paragraph 76(e), no response is required to the allegations of Paragraph

76(e) that purport to describe, construe and excerpt unidentified statements or documents, which

speak for themselves.  Dr. Sabolinski further lacks personal knowledge or information sufficient

to form a belief as to the truth of any allegations concerning unspecified "representations" by

unidentified "defendants," and on that basis denies them.  Dr. Sabolinski otherwise denies each

and every allegation in Paragraph 76(e).

 With respect to Paragraph 76(f), no response is required to the allegations of Paragraph

76(f) that purport to describe, construe and excerpt unidentified statements or documents, which

speak for themselves.  Dr. Sabolinski further lacks personal knowledge or information sufficient

to form a belief as to the truth of any allegations concerning unspecified "representations" by

unidentified "defendants," and on that basis denies them.  Dr. Sabolinski further lacks personal

knowledge or information sufficient to form a belief as to the truth of the allegations concerning

the information purportedly obtained through any investigation by plaintiffs' counsel or their

representatives, and on that basis denies them.  Dr. Sabolinski incorporates by reference his

responses to Paragraphs 56-67, and otherwise denies each and every allegation in

Paragraph 76(f).

With respect to Paragraph 76(g), Dr. Sabolinski further lacks personal knowledge or information sufficient to form a belief as to the truth of any allegations concerning unspecified "representations" by unidentified "defendants," and on that basis denies them. Dr. Sabolinski further lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning the information purportedly obtained through any investigation by plaintiffs' counsel or their representatives, and on that basis denies them. Dr. Sabolinski incorporates by reference his responses to Paragraphs 59-67, and otherwise denies each and every allegation in Paragraph 76(g).

77.     With respect to Paragraph 77, Dr. Sabolinski admits that on February 24, 2000, Organogenesis stock price reached an intra-day price as high as $15.625, but denies that it closed at this price. Dr. Sabolinski further admits that on February 27, 2000, the Company issued a release on *Business Wire* announcing that Organogenesis had completed the sale of 688,925 shares of common stock for net proceeds of $9.4 million. Dr. Sabolinski denies making any of the statements in the press release, and states that he lacks personal knowledge or information sufficient to form a belief as to the truth of any allegations concerning the press release, and on that basis denies them. Dr. Sabolinski further denies that Paragraph 77 completely and accurately construes and paraphrases the release, which speaks for itself. Dr. Sabolinski otherwise denies each and every allegation of Paragraph 77.

78.     With respect to Paragraph 78, no response is required to the allegations that purport to describe, construe, paraphrase and excerpt unidentified statements or documents, which speak for themselves. Dr. Sabolinski admits that on February 24, 2000 the Company issued a release on *Business Wire*, in which Mr. Tuck is quoted. Dr. Sabolinski denies making any of the statements in the press release and states that he lacks personal knowledge or

information sufficient to form a belief as to the truth of any allegations concerning the press release, or the purported knowledge, actions or statements of other unidentified "Defendants," and on that basis denies them. Dr. Sabolinski further denies that Paragraph 78 completely and accurately construes, paraphrases and excerpts the press release. Dr. Sabolinski otherwise denies each and every allegation in Paragraph 78.

79.    With respect to Paragraph 79, Dr. Sabolinski admits that on February 25, 2000, the Company issued a release announcing that it had raised an additional $1.4 million through the sale of an additional 100,000 shares. Dr. Sabolinski states that he lacks personal knowledge or information sufficient to form a belief as to the truth of any allegations concerning the press release, and on that basis denies them. Dr. Sabolinski further denies that Paragraph 79 completely and accurately construes, paraphrases and excerpts the release. Dr. Sabolinski otherwise denies each and every allegation in Paragraph 79.

80.    With respect to Paragraph 80, Dr. Sabolinski denies each and every allegation in Paragraph 80.

81.    With respect to Paragraph 81, Dr. Sabolinski denies the allegations contained in the first sentence of that paragraph. Dr. Sabolinski admits that Mr. Stein resigned from his positions as Chairman and Chief Executive Officer effective January 1, 2000, and accepted the position of Chairman Emeritus of the Board on January 1, 2000. Dr. Sabolinski further admits that the Company announced Mr. Stein's resignation from that position on or about March 13, 2000. To the extent that plaintiffs purport to construe and characterize Mr. Stein's departure, or the reasons therefore, Dr. Sabolinski lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 81, and on that basis denies them. Dr. Sabolinski otherwise denies each and every allegation in Paragraph 81.

82.     With respect to Paragraph 82, Dr. Sabolinski admits that on or about March 21, 2000, Mr. Laughlin, who served as President and CEO of Organogenesis at that time, presented at the New York Society of Securities Analysts' 4th Annual Health Care Conference in New York City.  Dr. Sabolinski otherwise denies each and every allegation in Paragraph 82.

83.     With respect to Paragraph 83, Dr. Sabolinski admits that on March 27, 2000, Organogenesis issued a press release.  No further response is required to the extent the allegations of Paragraph 83 purport to construe and paraphrase the release, which speaks for itself.  Dr. Sabolinski states that he lacks personal knowledge or information sufficient to form a belief as to the allegations concerning the release.  Dr. Sabolinski denies that Paragraph 83 completely and accurately construes and paraphrases the release, and otherwise denies each and every allegation in Paragraph 83.

84.     With respect to Paragraph 84, Dr. Sabolinski admits that on March 31, 2000, Organogenesis issued a press release published on *Business Wire* in which Mr. Laughlin is quoted.  Dr. Sabolinski denies making any of the statements in the press release, and states that he lacks personal knowledge or information sufficient to form a belief as to the allegations concerning the release.  No further response is required to the extent the allegations of Paragraph 84 purport to construe and excerpt the release, which speaks for itself.  Dr. Sabolinski denies that Paragraph 84 completely and accurately construes and excerpts the release. Dr. Sabolinski further states that he lacks personal knowledge or information sufficient to form a belief as to the allegations concerning the purported actions or intentions of defendant Laughlin, and what unidentified "investors" "believe[d]."  Dr. Sabolinski otherwise denies each and every allegation in Paragraph 84.

85.     With respect to Paragraph 85, Dr. Sabolinski admits that on March 30, 2000, Organogenesis filed with the SEC its financial results for full year 1999, pursuant to a Form 10-K.  Dr. Sabolinski further admits that the electronic signatures of Mr. Laughlin, Mr. Erani, and Ms. Lopolito appear on the Form 10-K.  Dr. Sabolinski denies making any of the statements in the Form 10-K.  No further response is required to the extent the allegations of Paragraph 85 purport to construe and excerpt the Form 10-K, which speaks for itself.  Dr. Sabolinski denies that Paragraph 85 completely and accurately construes and excerpts the Form 10-K.  Dr. Sabolinski otherwise denies each and every allegation in Paragraph 85.

86.     With respect to Paragraph 86, Dr. Sabolinski admits that on March 31, 2000, Organogenesis' stock was traded on the open market, and reached an intra-day price as high as $12.625, but denies that it closed at that price.  Dr. Sabolinski otherwise denies each and every allegation in Paragraph 86.

87.     With respect to Paragraph 87, Dr. Sabolinski admits that the Company issued a press release on March 31, 2000, and filed a Form 10-K with the SEC for its fiscal year 1999.  Dr. Sabolinski denies that he made any of the statements in those documents, and otherwise denies each and every allegation in Paragraph 87.

With respect to Paragraph 87(a), Dr. Sabolinski incorporates by reference his responses to Paragraphs 59-67, and otherwise denies each and every allegation in Paragraph 87(a).

With respect to Paragraph 87(b), Dr. Sabolinski lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning the information purportedly obtained through any investigation by plaintiffs' counsel or their representatives, and on that basis denies them.  No further response is required to the allegations of Paragraph 87(b) that purport to describe, construe and excerpt unidentified statements or documents, which speak

for themselves.  Dr. Sabolinski further lacks personal knowledge or information sufficient to form a belief as to the allegations concerning representations by unidentified "defendants," and on that basis denies them.  Dr. Sabolinski otherwise denies each and every allegation in Paragraph 87(b).

With respect to Paragraph 87(c), Dr. Sabolinski lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning the information purportedly obtained through any investigation by plaintiffs' counsel or their representatives, and on that basis denies them.  No further response is required to the allegations of Paragraph 87(c) that purport to describe, construe and excerpt unidentified statements or documents, which speak for themselves.  Dr. Sabolinski further lacks personal knowledge or information sufficient to form a belief as to the allegations concerning the unidentified "suggestion[s]," "aware[ness]," or alleged failures to disclose of unidentified "defendants," and on that basis denies them. Dr. Sabolinski denies that any information was improperly withheld, and otherwise denies each and every allegation in Paragraph 87(c).

With respect to Paragraph 87(d), Dr. Sabolinski lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning the information purportedly obtained through any investigation by plaintiffs' counsel or their representatives, and on that basis denies them.  No response to required to the allegations of Paragraph 87(d) that purport to describe, construe and excerpt unidentified statements or documents, which speak for themselves.  Dr. Sabolinski further lacks personal knowledge or information sufficient to form a belief as to the allegations concerning representations by unidentified "defendants," and on that basis denies them.  Dr. Sabolinski otherwise denies each and every allegation in Paragraph 87(d).

With respect to Paragraph 87(e), Dr. Sabolinski lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning the information purportedly obtained through any investigation by plaintiffs' counsel or their representatives, and on that basis denies them.  No further response is required to the allegations of Paragraph 87(e) that purport to describe, construe and excerpt unidentified statements or documents, which speak for themselves.  Dr. Sabolinski further lacks personal knowledge or information sufficient to form a belief as to the allegations concerning representations by unidentified "defendants," and on that basis denies them.  Dr. Sabolinski otherwise denies each and every allegation in Paragraph 87(e).

With respect to Paragraph 87(f), no response to required to the allegations of Paragraph 87(f) that purport to describe, construe and excerpt unidentified statements or documents, which speak for themselves.  Dr. Sabolinski further lacks personal knowledge or information sufficient to form a belief as to the allegations concerning any representations by unidentified "defendants," and on that basis denies them.  Dr. Sabolinski also lacks personal knowledge or information sufficient to form a belief as to the allegations concerning what any "investors" "believe[d]," and on that basis denies them.  Dr. Sabolinski otherwise denies each and every allegation in Paragraph 87(f).

With respect to Paragraph 87(g), Dr. Sabolinski lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning the information purportedly obtained through any investigation by plaintiffs' counsel or their representatives, and on that basis denies them.  No further response is required to the allegations of Paragraph 87(g) that purport to describe, construe and excerpt unidentified statements or documents, which speak for themselves.  Dr. Sabolinski further lacks personal knowledge or information sufficient to

form a belief as to the allegations concerning any representations by unidentified "defendants," and on that basis denies them. Dr. Sabolinski otherwise denies each and every allegation in Paragraph 87(g).

88.     With respect to Paragraph 88, Dr. Sabolinski admits that on April 21, 2000, the Company filed with the SEC a Registration Statement, permitting Mr. Stein to register for sale of 732,423 shares of Organogenesis stock held by Mr. Stein. Dr. Sabolinski further admits that the electronic signatures of Mr. Laughlin, Ms. Lopolito and Mr. Erani appear on the Registration Statement. Dr. Sabolinski denies making any of the statements in the Registration Statement. No further response is required to the extent the allegations of Paragraph 88 purport to construe and excerpt the Registration Statement, which speaks for itself. Dr. Sabolinski denies that Paragraph 88 completely and accurately construes and excerpts the Registration Statement. Dr. Sabolinski lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations relating to Mr. Stein's personal investments or finances, and on that basis denies them. Dr. Sabolinski otherwise denies each and every allegation in Paragraph 88.

89.     With respect to Paragraph 89, Dr. Sabolinski admits that on May 11, 2000 Organogenesis issued a release published on *Business Wire* announcing financial results for the first quarter of 2000, in which Mr. Laughlin is quoted. Dr. Sabolinski denies making any of the statements in the release. No further response is required to the extent the allegations of Paragraph 89 purport to construe and excerpt the release, which speaks for itself. To the extent further response is required, Dr. Sabolinski states that he presently lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning the release, and denies that Paragraph 89 completely and accurately construes and excerpts the release. Dr. Sabolinski otherwise denies each and every allegation in Paragraph 89.

90.     With respect to Paragraph 90, Dr. Sabolinski admits that on May 15, 2000, Organogenesis filed with the SEC the Company's financial results for the first quarter of 2000, the period ended March 31, 2000, pursuant to a Form 10-Q.  Dr. Sabolinski further admits that the electronic signatures of Mr. Laughlin and Mr. Arcari appear on that Form 10-Q.  Dr. Sabolinski denies making any of the statements in the Form 10-Q.  No further response is required to the extent the allegations of Paragraph 90 purport to construe and excerpt the release, which speaks for itself.  To the extent further response is required, Dr. Sabolinski states that he presently lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning the Form 10-Q, and denies that Paragraph 90 completely and accurately construes and excerpts the Form 10-Q.  Dr. Sabolinski otherwise denies each and every allegation in Paragraph 90.

91.     With respect to Paragraph 91, Dr. Sabolinski incorporates by reference his responses to Paragraphs 56-67, and denies each and every allegation in Paragraph 91.

With respect to Paragraph 91(a), Dr. Sabolinski incorporates by reference his responses to Paragraphs 59-67, and denies each and every allegation in Paragraph 91(a).

With respect to Paragraph 91(b), no response to required to the allegations of Paragraph 91(b) that purport to describe, construe and excerpt unidentified statements or documents, which speak for themselves.  Dr. Sabolinski otherwise denies each and every allegation in Paragraph 91(b).

With respect to Paragraph 91(c), Dr. Sabolinski lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning the information purportedly obtained through any investigation by plaintiffs' counsel or their representatives, and on that basis denies them.  No response to required to the allegations of Paragraph 91(c) that

purport to describe, construe and excerpt unidentified statements or documents, which speak for themselves.  Dr. Sabolinski further lacks personal knowledge or information sufficient to form a belief as to the allegations concerning unidentified "representations" by unidentified "defendants," and on that basis denies them.  Dr. Sabolinski otherwise denies each and every allegation in Paragraph 91(c).

With respect to Paragraph 91(d), Dr. Sabolinski lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning the information purportedly obtained through any investigation by plaintiffs' counsel or their representatives, and on that basis denies them.  No response to required to the allegations of Paragraph 91(d) that purport to describe, construe and excerpt unidentified statements or documents, which speak for themselves.  Dr. Sabolinski further lacks personal knowledge or information sufficient to form a belief as to the allegations concerning unidentified "representations" by unidentified "defendants," and on that basis denies them.  Dr. Sabolinski otherwise denies each and every allegation in Paragraph 91(d).

With respect to Paragraph 91(e), Dr. Sabolinski lacks personal knowledge or information sufficient to form a belief as to the allegations concerning unidentified "representations" by unidentified "defendants," and on that basis denies them.  Dr. Sabolinski incorporates by reference his responses to Paragraphs 59-67, and denies each and every allegation in Paragraph 91(e).

92.    With respect to Paragraph 92, Dr. Sabolinski admits that on or about June 14, 2000 Mr. Laughlin, who served as President and Chief Executive Officer of Organogenesis at the time, gave a presentation at the Twenty-First Annual Goldman Sachs Healthcare Conference in Laguna Niguel, California.  Dr. Sabolinski presently lacks personal knowledge or information

sufficient to form a belief as to the truth of allegations relating to the content of that presentation, and on that basis denies them. Dr. Sabolinski otherwise denies each and every allegation in Paragraph 92.

93.    With respect to Paragraph 93, Dr. Sabolinski admits that on June 20, 2000, Organogenesis issued a release that announced that the FDA had given final approval of Apligraf for treatment of diabetic foot ulcers, in addition to its previous indication for treatment of venous leg ulcers, and which speaks for itself. Dr. Sabolinski further admits that on June 20, 2000, Organogenesis' stock was traded on the open market, and reached an intra-day high of $12.75, but denies that it closed at this price. Dr. Sabolinski otherwise denies each and every allegation in Paragraph 93.

94.    With respect to Paragraph 94, Dr. Sabolinski denies that Mr. Laughlin appeared on the cable news show, "Power Lunch" on the CNBC network on June 25, 2000, but admits that such an appearance took place on June 26, 2000. No further response is required to the extent the allegations of Paragraph 94 purport to construe and quote from the interview, the transcript of which speaks for itself. Dr. Sabolinski denies that Paragraph 94 completely and accurately construes and excerpts the interview. Dr. Sabolinski lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations relating to the extent of dissemination of the cable financial news show "Power Lunch," and on that basis denies them. Dr. Sabolinski otherwise denies each and every allegation in Paragraph 94.

95.    With respect to Paragraph 95, Dr. Sabolinski admits that on August 2, 2000, Organogenesis issued a release announcing Apligraf sales for the month of July 2000, in which Mr. Laughlin is quoted. Dr. Sabolinski denies making any statements in the release. No further response is required to the extent the allegations of Paragraph 95 purport to construe and excerpt

the release, which speaks for itself. Dr. Sabolinski denies that Paragraph 95 completely and accurately construes and excerpts the release. Dr. Sabolinski otherwise denies each and every allegation in Paragraph 95.

96. With respect to Paragraph 96, Dr. Sabolinski admits that on August 14, 2000, Organogenesis issued a release published on *Business Wire* announcing financial results for the second quarter 2000. Dr. Sabolinski denies making any of the statements in the release. No further response is required to the extent the allegations of Paragraph 96 purport to construe and excerpt the release, which speaks for itself. Dr. Sabolinski denies that Paragraph 96 completely and accurately construes and excerpts the release. Dr. Sabolinski otherwise denies each and every allegation in Paragraph 96.

97. With respect to Paragraph 97, Dr. Sabolinski incorporates by reference his response to Paragraph 96. Dr. Sabolinski admits that Mr. Laughlin is quoted in the release, but denies making any of the statements in the release. Dr. Sabolinski lacks personal knowledge or information sufficient to form a belief as to the truth of allegations concerning the alleged "use" of the release by Mr. Laughlin or what unidentified "investors" allegedly "believe[d]," and on that basis denies them. Dr. Sabolinski otherwise denies each and every allegation in Paragraph 97.

98. With respect to Paragraph 98, Dr. Sabolinski admits that on August 14, 2000, Organogenesis filed with the SEC its financial results for the second quarter of 2000, the period ended June 30, 2000, pursuant to a Form 10-Q. Dr. Sabolinski further admits that the electronic signatures of Mr. Laughlin and Mr. Arcari appear on the Form 10-Q. Dr. Sabolinski denies making any of the statements in the Form 10-Q. No further response is required to the extent the allegations of Paragraph 98 purport to construe and excerpt the Form 10-Q, which speaks for

itself.  Dr. Sabolinski denies that Paragraph 98 completely and accurately construes and excerpts the Form 10-Q.  Dr. Sabolinski otherwise denies each and every allegation in Paragraph 98.

99.     With respect to Paragraph 99, Dr. Sabolinski admits that on October 3, 2000, Organogenesis issued a release published on *Business Wire* reporting Apligraf sales for September and the third quarter of 2000, in which Mr. Laughlin is quoted.  Dr. Sabolinski denies making any of the statements in the release, and states that he lacks personal knowledge or information sufficient to form a belief as to the allegations concerning the release.  No further response is required to the extent the allegations of Paragraph 99 purport to construe and excerpt the release, which speaks for itself.  Dr. Sabolinski denies that Paragraph 99 completely and accurately construes and excerpts the release.  Dr. Sabolinski otherwise denies each and every allegation in Paragraph 99.

100.     With respect to Paragraph 100, Dr. Sabolinski lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning unidentified "statements" made by Mr. Laughlin in a CNBC interview.  Dr. Sabolinski admits that the Company issued a press release on August 2, 2000, but denies that he made any of the statements in the release.  Dr. Sabolinski further admits that the Company filed a Form 10-Q for the second quarter of 2000, but denies that he made any of the statements in the Form 10-Q.  Dr. Sabolinski states that those documents speak for themselves, and denies that Paragraph 100 completely and accurately construes and characterizes those documents.  Dr. Sabolinski further states that he lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning unidentified "statements" made by unidentified "defendants" in those documents, and on that basis denies them.  Dr. Sabolinski otherwise denies each and every allegation in Paragraph 100.

With respect to Paragraph 100(a), Dr. Sabolinski incorporates by reference his responses to Paragraphs 59-67, and denies each and every allegation in Paragraph 100(a).

With respect to Paragraph 100(b), Dr. Sabolinski lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning the information purportedly obtained through any investigation by plaintiffs' counsel or their representatives, and on that basis denies them. No response is required to the allegations of Paragraph 100(b) that purport to describe, construe and excerpt unidentified statements or documents, which speak for themselves. To the extent a response is required, Dr. Sabolinski lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning unidentified "representations" made by unidentified "defendants," and on that basis denies them. Dr. Sabolinski incorporates by reference his responses to Paragraphs 59-67, and otherwise denies each and every allegation in Paragraph 100(b).

With respect to Paragraph 100(c), Dr. Sabolinski lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning the information purportedly obtained through any investigation by plaintiffs' counsel or their representatives, and on that basis denies them. No response is required to the allegations of Paragraph 100(c) that purport to describe, construe and excerpt unidentified statements or documents, which speak for themselves. To the extent a response is required, Dr. Sabolinski lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning unidentified "statements" made by unidentified "defendants," of the beliefs of unidentified "investors," and on that basis denies them. Dr. Sabolinski otherwise denies each and every allegation in Paragraph 100(c).

With respect to Paragraph 100(d), Dr. Sabolinski lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning the information purportedly obtained through any investigation by plaintiffs' counsel or their representatives, and on that basis denies them. No response is required to the allegations of Paragraph 100(d) that purport to describe, construe and excerpt unidentified statements or documents, which speak for themselves. To the extent a response is required, Dr. Sabolinski lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning any "representations" made by unidentified "defendants," and on that basis denies them. Dr. Sabolinski otherwise denies each and every allegation in Paragraph 100(d).

With respect to Paragraph 100(e), Dr. Sabolinski lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning the information purportedly obtained through any investigation by plaintiffs' counsel or their representatives, and on that basis denies them. No response is required to the allegations of Paragraph 100(e) that purport to describe, construe and excerpt unidentified statements or documents, which speak for themselves. To the extent a response is required, Dr. Sabolinski lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning unidentified "representations" made by unidentified "defendants," and on that basis denies them. Dr. Sabolinski otherwise denies each and every allegation in Paragraph 100(e).

With respect to Paragraph 100(f), Dr. Sabolinski lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning the information purportedly obtained through any investigation by plaintiffs' counsel or their

representatives, and on that basis denies them.  No response is required to the allegations of Paragraph 100(f) that purport to describe, construe and excerpt unidentified statements or documents, which speak for themselves.  To the extent a response is required, Dr. Sabolinski lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning unidentified "representation[s]" made by unidentified "defendants," and on that basis denies them.  Dr. Sabolinski otherwise denies each and every allegation in Paragraph 100(f).

With respect to Paragraph 100(g), Dr. Sabolinski lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning the information purportedly obtained through any investigation by plaintiffs' counsel or their representatives, and on that basis denies them.  No response is required to the allegations of Paragraph 100(g) that purport to describe, construe and excerpt unidentified statements or documents, which speak for themselves.  To the extent a response is required, Dr. Sabolinski lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning unidentified "representation[s]" made by unidentified "defendants," and on that basis denies them.  Dr. Sabolinski otherwise denies each and every allegation in Paragraph 100(g).

With respect to Paragraph 100(h), Dr. Sabolinski lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning the information purportedly obtained through any investigation by plaintiffs' counsel or their representatives, and on that basis denies them.  No response is required to the allegations of Paragraph 100(h) that purport to describe, construe and excerpt unidentified statements or documents, which speak for themselves.  To the extent a response is required, Dr. Sabolinski

lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning unidentified "representation[s]" made by unidentified "defendants," and on that basis denies them. Dr. Sabolinski otherwise denies each and every allegation in Paragraph 100(h).

With respect to Paragraph 100(i), Dr. Sabolinski admits that the Company filed a second quarter 2000 Form 10-Q. Dr. Sabolinski denies making any of the statements in the Form 10-Q. No further response is required to the extent the allegations of Paragraph 100(i) purport to construe and characterize the Form 10-Q, which speaks for itself. To the extent a response is required, Dr. Sabolinski denies that Paragraph 100(i) accurately and completely construes and characterizes the Form 10-Q. Dr. Sabolinski lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning unidentified "representations" made by unidentified "defendants," and on that basis denies them. Dr. Sabolinski incorporates by reference his responses to Paragraphs 59-67, and otherwise denies each and every allegation in Paragraph 100(i).

101.    With respect to Paragraph 101, Dr. Sabolinski admits that on November 14, 2000, Organogenesis issued a release published on *Business Wire* reporting Apligraf sales for September and the third quarter of 2000, in which Mr. Laughlin is quoted. Dr. Sabolinski denies making any of the statements in the release. No further response is required to the extent the allegations of Paragraph 101 purport to construe and excerpt the release, which speaks for itself. Dr. Sabolinski denies that Paragraph 101 completely and accurately construes and excerpts the release. Dr. Sabolinski lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning unidentified "herald[ing]" performed by unidentified

"defendants," and on that basis denies them. Dr. Sabolinski otherwise denies each and every allegation in Paragraph 101.

102.    With respect to Paragraph 102, Dr. Sabolinski admits that on November 14, 2000, Organogenesis filed with the SEC its financial results for the third quarter of 2000, the period ended September 30, 2000, pursuant to a Form 10-Q. Dr. Sabolinski further admits that the electronic signatures of Mr. Laughlin and Mr. Arcari appear on the Form 10-Q. Dr. Sabolinski denies making any of the statements in the Form 10-Q. No further response is required to the extent the allegations of Paragraph 102 purport to construe and excerpt the Form 10-Q, which speaks for itself. Dr. Sabolinski denies that Paragraph 102 completely and accurately construes and excerpts the Form 10-Q. Dr. Sabolinski otherwise denies each and every allegation in Paragraph 102.

103.    With respect to Paragraph 103, Dr. Sabolinski admits that on December 4, 2000, Organogenesis issued a release reporting November sales of Apligraf, in which Mr. Laughlin is quoted. Dr. Sabolinski denies making any of the statements in the release. No further response is required to the extent the allegations of Paragraph 103 purport to construe and excerpt the release, which speaks for itself. Dr. Sabolinski denies that Paragraph 103 completely and accurately construes and excerpts the release. Dr. Sabolinski otherwise denies each and every allegation in Paragraph 103.

104.    With respect to Paragraph 104, Dr. Sabolinski admits that the Company issued press releases on October 3, 2000 and November 14, 2000, and filed a Form 10-Q for the third quarter 2000. Dr. Sabolinski denies that made any of the statements in those documents, and denies that Paragraph 104 accurately construes and characterizes those documents. Dr. Sabolinski otherwise denies each and every allegation in Paragraph 104.

With respect to Paragraph 104(a), Dr. Sabolinski incorporates by reference his responses to Paragraphs 59-67, and otherwise denies each and every allegation in Paragraph 104(a).

With respect to Paragraph 104(b), Dr. Sabolinski lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning the information purportedly obtained through any investigation by plaintiffs' counsel or their representatives, and on that basis denies them. No further response is required to the allegations of Paragraph 104(b) that purport to describe, construe and excerpt unidentified statements or documents, which speak for themselves. To the extent a response is required, Dr. Sabolinski lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning unidentified "representations" made by, or knowledge of, unidentified "defendants," and on that basis denies them. Dr. Sabolinski otherwise denies each and every allegation of Paragraph 104(b).

With respect to Paragraph 104(c), Dr. Sabolinski lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning the information purportedly obtained through any investigation by plaintiffs' counsel or their representatives, and on that basis denies them. No further response is required to the allegations of Paragraph 104(c) that purport to describe, construe and excerpt unidentified statements or documents, which speak for themselves. To the extent a response is required, Dr. Sabolinski lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning unidentified "representations" made by unidentified "defendants," or the purported "know[ledge]" of unidentified "upper management," and on that basis denies them. Dr. Sabolinski incorporates by reference his responses to Paragraphs 59-67, and otherwise denies each and every allegation of Paragraph 104(c).

With respect to Paragraph 104(d), Dr. Sabolinski lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning the information purportedly obtained through any investigation by plaintiffs' counsel or their representatives, and on that basis denies them. No further response is required to the allegations of Paragraph 104(d) that purport to describe, construe and excerpt unidentified statements or documents, which speak for themselves. To the extent a response is required, Dr. Sabolinski lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning unidentified "public statements" made by unidentified "defendants," and on that basis denies them. Dr. Sabolinski otherwise denies each and every allegation of Paragraph 104(d).

With respect to Paragraph 104(e), Dr. Sabolinski lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning unidentified "representations" made by unidentified "defendants," and on that basis denies them. Dr. Sabolinski incorporates by reference his responses to Paragraphs 59-67, and otherwise denies each and every allegation in Paragraph 104(e).

105.    With respect to Paragraph 105, Dr. Sabolinski admits that on December 6, 2000, Organogenesis issued a release announcing that the Board of the Company had authorized the repurchase of up to 500,000 shares of Organogenesis common stock, in which Mr. Laughlin was quoted. Dr. Sabolinski denies making any of the statements in the release. No further response is required to the extent the allegations of Paragraph 105 purport to construe and excerpt the release, which speaks for itself. Dr. Sabolinski denies that Paragraph 105 completely and accurately construes and excerpts the release. Dr. Sabolinski further admits that on December 6, 2000, Organogenesis' stock was traded on the open market, and admits that its price closed at

$7.50 per share on December 6, 2000.  Dr. Sabolinski otherwise denies each and every allegation in Paragraph 105.

106.    With respect to Paragraph 106, Dr. Sabolinski admits that on February 5, 2001, Organogenesis issued a release announcing sales of Apligraf in January 2001, in which Mr. Arcari is quoted.  Dr. Sabolinski denies making any of the statements in the release.  No further response is required to the extent the allegations of Paragraph 106 purport to construe and excerpt the release, which speaks for itself.  Dr. Sabolinski denies that Paragraph 106 completely and accurately construes and excerpts the release.  Dr. Sabolinski otherwise denies each and every allegation in Paragraph 106.

107.    With respect to Paragraph 107, Dr. Sabolinski admits that on February 26, 2001, Organogenesis issued a release announcing an amendment to its 1996 agreement with Novartis. No further response is required to the extent the allegations of Paragraph 107 purport to construe and paraphrase the release, which speaks for itself.  Dr. Sabolinski denies that Paragraph 107 completely and accurately construes and paraphrases the release.  Dr. Sabolinski further admits that Organogenesis and Novartis were parties to the Novartis Contracts.  No response is required to those allegations purporting to construe and characterize the Novartis Contracts, which speak for themselves.  To the extent a response is required, Dr. Sabolinski denies that Paragraph 107 completely and accurately construes and paraphrases the Novartis Contracts and the parties' relationship as set forth therein.  Dr. Sabolinski denies that on February 27, 2001, Mr. Laughlin appeared on the cable financial news show "Power Lunch," on the CNBC network, but admits that such an appearance took place on February 28, 2001.  No response is required to the extent the allegations of Paragraph 107 purport to construe and quote from the interview, the transcript of which speaks for itself.  Dr. Sabolinski denies that Paragraph 107 completely and accurately

construes and excerpts the interview.  Dr. Sabolinski lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations relating to the extent of dissemination of the cable financial news show "Power Lunch," or the identity of its host, and on that basis denies them.  Dr. Sabolinski further admits that on February 27, 2001, Organogenesis' stock was traded on the open market, and reached an intra-day price as high as $12.00 per share, but denies that Organogenesis' stock price closed above $12.00 on the same day.  Dr. Sabolinski otherwise denies each and every allegation in Paragraph 107.

108.    With respect to Paragraph 108, Dr. Sabolinski denies that on February 27, 2001, Mr. Laughlin made any statements in an interview on the CNBC network, but admits that an interview of Mr. Laughlin on that network took place on February 28, 2001.  Dr. Sabolinski admits that the Company issued a press release on February 5, 2001, but denies making any of the statements in the release.  No response is required to the extent the allegations of Paragraph 108 purport to construe and characterize the February 28 interview and the February 5 press release, as the interview transcript and press release speak for themselves.  Dr. Sabolinski denies that Paragraph 108 completely and accurately construes and excerpts the interview and press release.  Dr. Sabolinski otherwise denies each and every allegation in Paragraph 108.

With respect to Paragraph 108(a), Dr. Sabolinski incorporates by reference his responses to Paragraphs 59-67, and denies each and every allegation in Paragraph 108(a).

With respect to Paragraph 108(b), Dr. Sabolinski lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning the information purportedly obtained through any investigation by plaintiffs' counsel or their representatives, and on that basis denies them.  No response is required to the allegations of Paragraph 108(b) that purport to describe, construe and excerpt unidentified statements or

documents, which speak for themselves.  To the extent a response is required, Dr. Sabolinski

lacks personal knowledge or information sufficient to form a belief as to the truth of the

allegations concerning the knowledge of or unidentified "representations" made by unidentified

"defendants," and on that basis denies them.  Dr. Sabolinski incorporates by reference his

responses to Paragraphs 59-67, and otherwise denies each and every allegation in

Paragraph 108(b).

    With respect to Paragraph 108(c), Dr. Sabolinski lacks personal knowledge or

information sufficient to form a belief as to the truth of the allegations concerning the

information purportedly obtained through any investigation by plaintiffs' counsel or their

representatives, and on that basis denies them.  No response is required to the allegations of

Paragraph 108(c) that purport to describe, construe and excerpt unidentified statements or

documents, which speak for themselves.  To the extent a response is required, Dr. Sabolinski

lacks personal knowledge or information sufficient to form a belief as to the truth of the

allegations concerning unidentified "representation[s]" made by Mr. Laughlin and on that basis

denies them.  Dr. Sabolinski otherwise denies each and every allegation of Paragraph 108(c).

    With respect to Paragraph 108(d), no response is required to the allegations of Paragraph

108(d) that purport to describe, construe and excerpt unidentified statements or documents,

which speak for themselves.  To the extent a response is required, Dr. Sabolinski lacks personal

knowledge or information sufficient to form a belief as to the truth of the allegations concerning

unidentified "representations" made by Mr. Laughlin, or the knowledge of or unidentified

"reve[lations]" by unidentified "defendants," and on that basis denies them.  Dr. Sabolinski

otherwise denies each and every allegation of Paragraph 108(d).

With respect to Paragraph 108(e), Dr. Sabolinski lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning the information purportedly obtained through any investigation by plaintiffs' counsel or their representatives, and on that basis denies them.  No response is required to the allegations of Paragraph 108(e) that purport to describe, construe and excerpt unidentified statements or documents, which speak for themselves.  To the extent a response is required, Dr. Sabolinski lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning "statements" purportedly made by Mr. Laughlin, and on that basis denies them.  Dr. Sabolinski admits that Organogenesis and Novartis were parties to the Novartis Contracts.  No further response is required to the allegations of Paragraph 108(e) that purport to describe, construe and paraphrase those contracts, which speak for themselves.  To the extent a response is required, Dr. Sabolinski denies that Paragraph 108(e) accurately and completely construes and characterizes those contracts and the parties' relationship as set forth therein. Dr. Sabolinski otherwise denies each and every allegation of Paragraph 108(e).

With respect to Paragraph 108(f), no response is required to the allegations of Paragraph 108(f) that purport to describe, construe and excerpt unidentified statements or documents, which speak for themselves.  To the extent a response is required, Dr. Sabolinski lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning "representation[s]" purportedly made by Mr. Laughlin, and on that basis denies them.  Dr. Sabolinski admits Organogenesis and Novartis were parties to the Novartis Contracts.  No further response is required to the allegations of Paragraph 108(f) that purport to describe, construe and paraphrase those contracts, which speak for themselves.  To the extent a response is required, Dr. Sabolinski denies that Paragraph 108(f) accurately and completely construes and

characterizes those contracts and the parties' relationship as set forth therein.  Dr. Sabolinski

otherwise denies each and every allegation of Paragraph 108(f).

    With respect to Paragraph 108(g), no response is required to the allegations of Paragraph

108(g) that purport to describe, construe and excerpt unidentified statements or documents,

which speak for themselves.  To the extent a response is required, Dr. Sabolinski lacks personal

knowledge or information sufficient to form a belief as to the truth of the allegations concerning

"representation[s]" purportedly made by Mr. Laughlin, and on that basis denies them.  Dr.

Sabolinski admits that Organogenesis and Novartis were parties to the Novartis Contracts.  No

further response is required to the allegations of Paragraph 108(g) that purport to describe,

construe and paraphrase those contracts, which speak for themselves.  To the extent a response is

required, Dr. Sabolinski denies that Paragraph 108(g) accurately and completely construes and

characterizes those contracts and the parties' relationship as set forth therein.  Dr. Sabolinski

otherwise denies each and every allegation of Paragraph 108(g).

    109.    With respect to Paragraph 109, no response is required to the allegations that

purport to quote from an analyst report issued by non-party Needham & Co. on an undisclosed

date, which presumably speaks for itself, if it in fact exists.  Dr. Sabolinski otherwise denies each

and every allegation in Paragraph 109.

    110.    With respect to Paragraph 110, Dr. Sabolinski admits that on March 5, 2001,

Organogenesis issued a release announcing sales of Apligraf in February 2001, in which Mr.

Arcari is quoted.  Dr. Sabolinski denies making any of the statements in the release.  No further

response is required to the extent the allegations of Paragraph 110 purport to construe and

excerpt the release, which speaks for itself.  Dr. Sabolinski denies that Paragraph 110 completely

and accurately construes and excerpts the release.  Dr. Sabolinski otherwise denies each and every allegation in Paragraph 110.

111.    With respect to Paragraph 111, Dr. Sabolinski lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning the purported beliefs or knowledge of the public, and on that basis denies them.  Dr. Sabolinski lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning the existence or content of the alleged "Confidential Arcari Document," and on that basis denies them.  Dr. Sabolinski further states that, in any event, no response is required to those allegations purporting to construe and excerpt any such document, which speaks for itself.  To the extent a response is required and such document exists, Dr. Sabolinski otherwise denies each and every allegation in Paragraph 111.

112.    With respect to Paragraph 112, Dr. Sabolinski admits that on March 30, 2001, Organogenesis issued a release published on *Business Wire* announcing financial results for the fourth quarter and full year 2000, in which Mr. Laughlin is quoted.  Dr. Sabolinski denies making any of the statements in the release.  No further response is required to the extent the allegations of Paragraph 112 purport to construe and excerpt the release, which speaks for itself.  Dr. Sabolinski denies that Paragraph 112 completely and accurately construes and excerpts the release.  Dr. Sabolinski otherwise denies each and every allegation in Paragraph 112.

113.    With respect to Paragraph 113, Dr. Sabolinski denies that that on March 30, 2001, Organogenesis filed with the SEC its financial results for they full year 2000, but admits that the Company filed such results on April 2, 2001, pursuant to a Form 10-K.  Dr. Sabolinski further admits that the electronic signatures of Messrs. Laughlin, Erani and Arcari appear on the Form 10-K.  Dr. Sabolinski denies making any of the statements in the Form 10-K.  No further

response is required to the extent the allegations of Paragraph 113 purport to construe and excerpt the Form 10-K, which speaks for itself. Dr. Sabolinski denies that Paragraph 113 completely and accurately construes and excerpts the Form 10-K. Dr. Sabolinski otherwise denies each and every allegation in Paragraph 113.

114.    With respect to Paragraph 114, Dr. Sabolinski lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning the purported beliefs or emotions of non-party PricewaterhouseCoopers, and on that basis denies them. Dr. Sabolinski admits that PricewaterhouseCoopers issued a "Report of Independent Accountants" dated March 13, 2001 certifying Organogenesis' financial statements. No response is required to the extent the allegations of Paragraph 114 purport to construe and excerpt the report, which speaks for itself. Dr. Sabolinski denies that Paragraph 114 completely and accurately construes and excerpts the report. Dr. Sabolinski otherwise denies each and every allegation in Paragraph 114.

115.    With respect to Paragraph 115, Dr. Sabolinski admits that Organogenesis hosted presentations at the Tucker Anthony Sutro Capital Markets 2001 Health Care Conference in Laguna Niguel, California, on April 4, 2001, and at the Fifth Annual American Stock Exchange Emerging Growth Conference in New York, New York on April 4, 2001. No response is required to the allegations that purport to construe and paraphrase an analyst report purportedly issued by non-party Needham & Co. on April 19, 2001, which speaks for itself. Dr. Sabolinski otherwise denies each and every allegation in Paragraph 115.

116.    With respect to Paragraph 116, Dr. Sabolinski admits that the Company issued press releases on March 5 and March 30 2001, and admits that the Company filed a 2000 Form 10-K on April 2, 2001, but denies that he made any of the statements in such documents. No

response is required to the extent the allegations of Paragraph 116 purport to construe and characterize those documents, which speak for themselves. Dr. Sabolinski denies that Paragraph 116 completely and accurately construes and characterizes those documents, and otherwise denies each and every allegation in Paragraph 116.

With respect to Paragraph 116(a), Dr. Sabolinski incorporates by reference his responses to Paragraphs 59-67, and denies each and every allegation in Paragraph 116(a).

With respect to Paragraph 116(b), no response is required to the allegations of Paragraph 116(b) that purport to excerpt and construe unidentified statements or documents, which speak for themselves. To the extent a response is required, Dr. Sabolinski lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning the knowledge of or unidentified "representations" made by unidentified "defendants," and on that basis denies them. Dr. Sabolinski otherwise denies those allegations, and denies each and every allegation in Paragraph 116(b).

With respect to Paragraph 116(c), Dr. Sabolinski lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning the information purportedly obtained through any investigation by plaintiffs' counsel or their representatives, and on that basis denies them. No response is required to the allegations of Paragraph 116(c) that purport to excerpt and construe unidentified statements or documents, which speak for themselves. To the extent a response is required, Dr. Sabolinski lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning the unidentified "representation[s]" made by unidentified "defendants," and on that basis denies them. Dr. Sabolinski otherwise denies each and every allegation in Paragraph 116(c).

With respect to Paragraph 116(d), Dr. Sabolinski lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning the information purportedly obtained through any investigation by plaintiffs' counsel or their representatives, and on that basis denies them. No response is required to the allegations of Paragraph 116(d) that excerpt to describe and construe unidentified statements or documents, which speak for themselves. To the extent a response is required, Dr. Sabolinski lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning the knowledge of or unidentified "representations" made by unidentified "defendants," and on that basis denies them. Dr. Sabolinski otherwise denies each and every allegation in Paragraph 116(d).

With respect to Paragraph 116(e), Dr. Sabolinski admits Organogenesis and Novartis were parties to the Novartis Contracts. No further response is required to the allegations of Paragraph 116(e) that purport to describe, construe and paraphrase those contracts, which speak for themselves. To the extent a response is required, Dr. Sabolinski denies that Paragraph 116(e) accurately and completely construes and characterizes those contracts and the parties' relationship as set forth therein. No response is required to the allegations of Paragraph 116(e) that purport to excerpt and construe unidentified statements or documents, which speak for themselves. To the extent a response is required, Dr. Sabolinski lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning the knowledge of or unidentified "representation[s]" made by unidentified "defendants," and on that basis denies them. Dr. Sabolinski otherwise denies each and every allegation in Paragraph 116(e).

With respect to Paragraph 116(f), Dr. Sabolinski admits Organogenesis and Novartis were parties to the Novartis Contracts. No further response is required to the allegations of

Paragraph 116(f) that purport to describe, construe and paraphrase those contracts, which speak for themselves. To the extent a response is required, Dr. Sabolinski denies that Paragraph 116(f) accurately and completely construes and characterizes those contracts and the parties' relationship as set forth therein. No response is required to the allegations of Paragraph 116(f) that purport to excerpt and construe unidentified statements or documents, which speak for themselves. To the extent a response is required, Dr. Sabolinski lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning the knowledge of or unidentified "representation[s]" made by unidentified "defendants," and on that basis denies them. Dr. Sabolinski otherwise denies each and every allegation in Paragraph 116(f).

With respect to Paragraph 116(g), Dr. Sabolinski lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning the information purportedly obtained through any investigation by plaintiffs' counsel or their representatives, and on that basis denies them. No response is required to the allegations of Paragraph 116(g) that purport to describe and construe unidentified statements or documents, which speak for themselves. To the extent a response is required, Dr. Sabolinski lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning the knowledge of or unidentified "representation[s]" made by unidentified "defendants," and on that basis denies them. Dr. Sabolinski otherwise denies each and every allegation in Paragraph 116(g).

With respect to Paragraph 116(h), Dr. Sabolinski lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning the information purportedly obtained through any investigation by plaintiffs' counsel or their representatives, and on that basis denies them. No response is required to the allegations of

Paragraph 116(h) that purport to describe and construe unidentified statements or documents, which speak for themselves.  To the extent a response is required, Dr. Sabolinski lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning the knowledge of or unidentified "representations" made by unidentified "defendants," and on that basis denies them.  Dr. Sabolinski otherwise denies each and every allegation in Paragraph 116(h).

With respect to Paragraph 116(i), Dr. Sabolinski lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning the information purportedly obtained through any investigation by plaintiffs' counsel or their representatives, and on that basis denies them.  No response is required to the allegations of Paragraph 116(i) that purport to describe and construe unidentified statements or documents, which speak for themselves.  To the extent a response is required, Dr. Sabolinski lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning the knowledge of or unidentified "representation[s]" made by unidentified "defendants," and on that basis denies them.  Dr. Sabolinski otherwise denies each and every allegation in Paragraph 116(i).

With respect to Paragraph 116(j), Dr. Sabolinski lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning the information purportedly obtained through any investigation by plaintiffs' counsel or their representatives, and on that basis denies them.  No response is required to the allegations of Paragraph 116(j) that purport to describe and construe unidentified statements or documents, which speak for themselves.  To the extent a response is required, Dr. Sabolinski lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning

the unidentified "representation[s]" made by unidentified "defendants," and on that basis denies

them.  Dr. Sabolinski otherwise denies each and every allegation in Paragraph 116(j).

With respect to Paragraph 116(k), no response is required to the allegations of

Paragraph 116(k) that purport to describe and construe unidentified statements or documents,

which speak for themselves.  To the extent a response is required, Dr. Sabolinski further lacks

personal knowledge or information sufficient to form a belief as to the truth of the allegations

concerning unidentified "representation[s]" made by unidentified "defendants," and on that basis

denies them.  Dr. Sabolinski otherwise denies each and every allegation in Paragraph 116(k).

With respect to Paragraph 116(*l*), Dr. Sabolinski lacks personal knowledge or

information sufficient to form a belief as to the truth of the allegations concerning the

information purportedly obtained through any investigation by plaintiffs' counsel or their

representatives, and on that basis denies them.  No response is required to the allegations of

Paragraph 116(*l*) that purport to describe and construe unidentified statements or documents,

which speak for themselves.  To the extent a response is required, Dr. Sabolinski lacks personal

knowledge or information sufficient to form a belief as to the truth of the allegations concerning

the "herald[ing]" of unidentified "representations" by unidentified "defendants," and on that

basis denies them.  Dr. Sabolinski otherwise denies each and every allegation in

Paragraph 116(*l*).

With respect to Paragraph 116(m), no response is required to the allegations of

Paragraph 116(m) that purport to describe and construe unidentified statements or documents,

which speak for themselves.  To the extent a response is required, Dr. Sabolinski further lacks

personal knowledge or information sufficient to form a belief as to the truth of the allegations

concerning the knowledge of or unidentified "representation[s]" made by unidentified

"defendants," and on that basis denies them.  Dr. Sabolinski otherwise denies each and every allegation in Paragraph 116(m).

With respect to Paragraph 116(n), no response is required to the allegations of Paragraph 116(n) that related to the purported actions, beliefs and emotions of non-party PricewaterhouseCoopers.  To the extent that a response is required, Dr. Sabolinski lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning the beliefs of non-party PricewaterhouseCoopers, or the existence or content of the alleged "Confidential Arcari Document," and on that basis denies them.  Dr. Sabolinski further states that, in any event, no response is required to those allegations purporting to construe and excerpt any such document, which speaks for itself.  To the extent a response is required and such document exists, Dr. Sabolinski denies each and every allegation in Paragraph 116(n).

117.    With respect to Paragraph 117, Dr. Sabolinski admits that on April 27, 2001 the Company issued a release announcing results for the first quarter of 2001, in which Mr. Arcari is quoted.  Dr. Sabolinski denies making any of the statements in the release.  No further response is required to the extent the allegations of Paragraph 117 purport to construe and excerpt the release, which speaks for itself.  Dr. Sabolinski denies that Paragraph 117 completely and accurately construes and excerpts the release.  Dr. Sabolinski otherwise denies each and every allegation in Paragraph 117.

118.    With respect to Paragraph 118, Dr. Sabolinski denies that on April 27, 2001 the Company filed with the SEC its financial results for the first quarter of 2001, the period ended March 31, 2001, but admits that the Company filed such results with the SEC on April 26, 2001, pursuant to a Form 10-Q.  Dr. Sabolinski further admits that the electronic signatures of Messrs Laughlin and Arcari appear on the Form 10-Q.  Dr. Sabolinski denies making any of the

statements in the Form 10-Q.  No further response is required to the extent the allegations of Paragraph 118 purport to construe and excerpt the Form 10-Q, which speaks for itself. Dr. Sabolinski specifically denies that the language plaintiffs purport to quote from that 10-Q appears therein, and generally denies that Paragraph 118 completely and accurately construes and excerpts the Form 10-Q.  Dr. Sabolinski otherwise denies each and every allegation in Paragraph 118.

119.     With respect to Paragraph 119, Dr. Sabolinski admits that the Company issued a press release on April 7, 2001 and filed a Form 10-Q for the first quarter of 2001, but denies that he made any of the statements in those documents.  Dr. Sabolinski denies that Paragraph 119 accurately and completely characterizes and construes such documents, and otherwise denies each and every allegation in Paragraph 119.

With respect to Paragraph 119(a), Dr. Sabolinski incorporates by reference his responses to Paragraphs 59-67, and denies each and every allegation in Paragraph 119(a).

With respect to Paragraph 119(b), no response is required to the allegations of Paragraph 119(b) that purport to excerpt and construe unidentified statements or documents, which speak for themselves.  To the extent a response is required, Dr. Sabolinski further lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning the knowledge of or unidentified "representation[s]" made by unidentified "defendants," and on that basis denies them.  Dr. Sabolinski otherwise denies each and every allegation in Paragraph 119(b).

With respect to Paragraph 119(c), no response is required to the allegations of Paragraph 119(c) that purport to excerpt and construe unidentified statements or documents, which speak for themselves.  To the extent a response is required, Dr. Sabolinski further lacks

personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning the knowledge of or unidentified statements made by unidentified "defendants," and on that basis denies them. Dr. Sabolinski otherwise denies each and every allegation in Paragraph 119(c).

With respect to Paragraph 119(d), no response is required to the allegations of Paragraph 119(d) that excerpt to describe and construe unidentified statements or documents, which speak for themselves. To the extent a response is required, Dr. Sabolinski further lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning the knowledge of or unidentified "representation[s]" made by unidentified "defendants," and on that basis denies them. Dr. Sabolinski otherwise denies each and every allegation in Paragraph 119(d).

With respect to Paragraph 119(e), Dr. Sabolinski lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning the information purportedly obtained through any investigation by plaintiffs' counsel or their representatives, and on that basis denies them. No response is required to the allegations of Paragraph 119(e) that purport to excerpt and construe unidentified statements or documents, which speak for themselves. To the extent a response is required, Dr. Sabolinski further lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning the knowledge of or unidentified "representation[s]" made by unidentified "defendants," and on that basis denies them. Dr. Sabolinski otherwise denies each and every allegation in Paragraph 119(e).

With respect to Paragraph 119(f), Dr. Sabolinski lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning the

information purportedly obtained through any investigation by plaintiffs' counsel or their representatives, and on that basis denies them. No response is required to the allegations of Paragraph 119(f) that purport to excerpt and construe unidentified statements or documents, which speak for themselves. To the extent a response is required, Dr. Sabolinski lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning the knowledge of unidentified "upper management" or unidentified "representation[s]" made by unidentified "defendants," and on that basis denies them. Dr. Sabolinski otherwise denies each and every allegation in Paragraph 119(f).

With respect to Paragraph 119(g), Dr. Sabolinski incorporates by reference his responses to Paragraphs 59-67, and denies each and every allegation in Paragraph 119(g).

120.    With respect to Paragraph 120 and footnote 4, Dr. Sabolinski admits that on April 27, 2001, Organogenesis issued a release announcing it had filed with the SEC a Post-Effective Amendment to its Registration Statement on Form S-3. Dr. Sabolinski further admits that on May 8, 2001, Organogenesis issued a release announcing that the Company had entered into an underwriting agreement with UBS Warburg LLC, as underwriter. No further response is required to the extent the allegations of Paragraph 120 and footnote 4 purport to construe and paraphrase the releases, which speak for themselves. Dr. Sabolinski denies that Paragraph 120 and footnote 4 completely and accurately construe and paraphrase the releases. Dr. Sabolinski otherwise denies each and every allegation in Paragraph 120 and footnote 4.

121.    With respect to Paragraph 121, no response is required to the allegations that purport to quote the statements, views and actions of analysts employed by non-party Needham & Co. To an extent a response is required, Dr. Sabolinski denies each and every allegation in Paragraph 121.

122.    With respect to Paragraph 122, Dr. Sabolinski admits that on May 16, 2001 the Company issued a release announcing Mr. Laughlin's resignation from the Company and that Dr. Sabolinski, who had previously served as Senior Vice President, Medical and Regulatory Affairs, would become President, Chief Executive Officer and a member of the Board of the Company, and further admits that he is quoted in the release. No further response is required to the extent the allegations of Paragraph 122 purport to construe and excerpt the release, which speaks for itself. Dr. Sabolinski denies that Paragraph 122 completely and accurately construes and excerpts the release. To the extent that plaintiffs purport to construe and characterize Mr. Laughlin's departure, Dr. Sabolinski lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 122, and on that basis denies them. Dr. Sabolinski otherwise denies each and every allegation in Paragraph 122.

123.    With respect to Paragraph 123, Dr. Sabolinski admits that on May 17, 2001 the Company filed a Prospectus Supplement with the SEC. No further response is required to the extent the allegations of Paragraph 123 purport to construe and excerpt the Prospectus Supplement, which speaks for itself. Dr. Sabolinski denies that Paragraph 123 completely and accurately construes and paraphrases the Prospectus Supplement. Dr. Sabolinski specifically denies that the price of Organogenesis shares was "artificial[ly] inflate[ed]," and except as specifically admitted herein, denies each and every allegation in Paragraph 123.

124.    With respect to Paragraph 124, Dr. Sabolinski lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning the existence or content of the alleged "Confidential Arcari Document," and on that basis denies them. Dr. Sabolinski further states that, in any event, no response is required to those allegations purporting to construe and excerpt any such document, which speaks for itself. To the extent a response is

required and such document exists, Dr. Sabolinski otherwise denies each and every allegation in Paragraph 124, and incorporates by reference his response to Paragraph 7. No response is required to the allegations that concern the purported conduct, beliefs, emotions and statements of non-party PricewaterhouseCoopers. To the extent a response is required, Dr. Sabolinski lacks personal knowledge or information sufficient to form a belief as to the allegations concerning the purported conduct, beliefs, emotions and statements of non-party PricewaterhouseCoopers, and on that basis denies them. Dr. Sabolinski otherwise denies each and every allegation in Paragraph 124.

125.    With respect to Paragraph 125, Dr. Sabolinski admits that on June 5, 2001, Organogenesis issued a release announcing the Company's sales for May 2001, in which he is quoted. No further response is required to the extent the allegations of Paragraph 125 purport to construe and excerpt the release, which speaks for itself. Dr. Sabolinski denies that Paragraph 125 completely and accurately construes and excerpts the release. Dr. Sabolinski otherwise denies each and every allegation in Paragraph 125.

126.    With respect to Paragraph 126, Dr. Sabolinski presently lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning numerical sales of Apligraf in May and April 2001, and on this basis denies them. No response is required to the allegations that purport to quote from an analyst report issued by non-party Needham & Co. on June 6, 2001, which speaks for itself. Dr. Sabolinski otherwise denies each and every allegation in Paragraph 126.

127.    With respect to Paragraph 127, Dr. Sabolinski admits that on May 7, 2001, Organogenesis entered into an underwriting agreement with UBS Warburg LLC. Pursuant to this agreement, between May 21, 2001 and June 18, 2001, Organogenesis filed fifteen prospectus

supplements with the SEC pursuant to Forms 424B2, disclosing the sale of 186,200 common

shares.  Dr. Sabolinski further admits that the total from those proceeds exceeded $1.44 million.

To the extent not specifically admitted herein, Dr. Sabolinski denies each and every allegation in

Paragraph 127.

128.    With respect to Paragraph 128, Dr. Sabolinski admits that on August 2, 2001,

Organogenesis issued a release announcing its monthly sales in July 2001, in which he is quoted.

No further response is required to the extent the allegations of Paragraph 128 purport to construe

and excerpt the release, which speaks for itself.  Dr. Sabolinski denies that Paragraph 128

completely and accurately construes and excerpts the release.  Dr. Sabolinski otherwise denies

each and every allegation in Paragraph 128.

129.    With respect to Paragraph 129, Dr. Sabolinski admits that on August 7, 2001

Organogenesis issued a release announcing it had elected to sell $10 million in equity to

Novartis.  Dr. Sabolinski denies that Paragraph 129 accurately and completely construes and

paraphrases the release.  Dr. Sabolinski otherwise denies each and every allegation in Paragraph

129.

130.    With respect to Paragraph 130, Dr. Sabolinski admits that on August 13, 2001,

Organogenesis issued a release announcing financial results for the second quarter 2001, the

period ended June 30, 2001, in which Mr. Arcari is quoted.  Dr. Sabolinski denies making any of

the statements in the release.  No further response is required to the extent the allegations of

Paragraph 130 purport to construe and excerpt the release, which speaks for itself.

Dr. Sabolinski denies that he prepared the release, and denies that Paragraph 130 completely and

accurately construes and excerpts the release.  Dr. Sabolinski otherwise denies each and every

allegation in Paragraph 130.

131.    With respect to Paragraph 131, Dr. Sabolinski admits that on August 14, 2001, Organogenesis filed with the SEC the Company's financial results for the second quarter 2001, the period ended June 30, 2001, pursuant to a Form 10-Q.  Dr. Sabolinski further admits that the electronic signatures of Dr. Sabolinski and Mr. Arcari appear on that Form 10-Q.  No further response is required to the extent the allegations of Paragraph 131 purport to construe and excerpt the Form 10-Q, which speaks for itself.  Dr. Sabolinski denies that Paragraph 131 completely and accurately construes and excerpts the Form 10-Q.  Dr. Sabolinski otherwise denies each and every allegation in Paragraph 131.

132.    With respect to Paragraph 132, Dr. Sabolinski admits that Organogenesis filed with the SEC the Company's financial results for the second quarter 2001 pursuant to a Form 10-Q.  No further response is required to the extent the allegations of Paragraph 132 purport to construe and paraphrase the Form 10-Q, which speaks for itself.  Dr. Sabolinski denies that Paragraph 132 completely and accurately construes and excerpts the Form 10-Q.  Dr. Sabolinski otherwise denies each and every allegation in Paragraph 132.

133.    With respect to Paragraph 133, Dr. Sabolinski admits that the Company issued press releases on August 2, 2001 and August 13, 2001 and filed a Form 10-Q for the second quarter of 2001.  Dr. Sabolinski denies that Paragraph 133 accurately and completely characterizes and construes such documents, and otherwise denies each and every allegation in Paragraph 133.

With respect to Paragraph 133(a), Dr. Sabolinski incorporates by reference his responses to Paragraphs 59-67, and denies each and every allegation in Paragraph 133(a).

With respect to Paragraph 133(b), no response is required to the allegations of Paragraph 133(b) that purport to excerpt and construe unidentified statements or documents,

which speak for themselves. To the extent a response is required, Dr. Sabolinski lacks personal

knowledge or information sufficient to form a belief as to the truth of the allegations concerning

unidentified "announcements" made by unidentified "defendants," and on that basis denies them.

Dr. Sabolinski otherwise denies each and every allegation in Paragraph 133(b).

With respect to Paragraph 133(c), no response is required to the allegations of

Paragraph 133(c) that purport to excerpt and construe unidentified statements or documents,

which speak for themselves. To the extent a response is required, Dr. Sabolinski lacks personal

knowledge or information sufficient to form a belief as to the truth of the allegations concerning

the knowledge of or unidentified "representation[s]" made by unidentified "defendants," and on

that basis denies them. Dr. Sabolinski otherwise denies each and every allegation in

Paragraph 133(c).

With respect to Paragraph 133(d), Dr. Sabolinski lacks personal knowledge or

information sufficient to form a belief as to the truth of the allegations concerning the

information purportedly obtained through any investigation by plaintiffs' counsel or their

representatives, and on that basis denies them. No response is required to the allegations of

Paragraph 133(d) that excerpt to describe and construe unidentified statements or documents,

which speak for themselves. To the extent a response is required. Dr. Sabolinski denies those

allegations. Dr. Sabolinski otherwise denies each and every allegation in Paragraph 133(d).

With respect to Paragraph 133(e), Dr. Sabolinski lacks personal knowledge or

information sufficient to form a belief as to the truth of the allegations concerning the

information purportedly obtained through any investigation by plaintiffs' counsel or their

representatives, and on that basis denies them. No response is required to the allegations of

Paragraph 133(e) that purport to excerpt and construe unidentified statements or documents,

which speak for themselves.  To the extent a response is required. Dr. Sabolinski lacks personal

knowledge or information sufficient to form a belief as to the truth of the allegations concerning

the knowledge of or unidentified "representation[s]" made by unidentified "defendants," and on

that basis denies them.  Dr. Sabolinski otherwise denies each and every allegation in

Paragraph 133(e).

With respect to Paragraph 133(f), Dr. Sabolinski incorporates by reference his responses

to Paragraphs 59-67, and denies each and every allegation in Paragraph 133(f).

134.    With respect to Paragraph 134, no response is required to the allegations that

purport to quote from an analyst report purportedly issued by non-party Needham & Co. on

August 14, 2001, which speaks for itself.  Dr. Sabolinski otherwise denies each and every

allegation in Paragraph 134.

135.    With respect to Paragraph 135, Dr. Sabolinski admits that on September 6, 2001,

Organogenesis issued a press release announcing its monthly sales in August 2001, in which he

is quoted.  No further response is required to the extent the allegations of Paragraph 135 purport

to construe and excerpt the release, which speaks for itself.  Dr. Sabolinski denies that

Paragraph 135 completely and accurately construes and excerpts the release.  Dr. Sabolinski

otherwise denies each and every allegation in Paragraph 135.

136.    With respect to Paragraph 136, Dr. Sabolinski admits that on September 7, 2001,

Organogenesis issued a press release in which he is quoted, and that the press release announced

that Organogenesis had increased its capacity to manufacture Apligraf.  No further response is

required to the extent the allegations of Paragraph 136 purport to construe and excerpt the

release, which speaks for itself.  Dr. Sabolinski denies that Paragraph 136 completely and

accurately construes and excerpts the release.  Dr. Sabolinski otherwise denies each and every allegation in Paragraph 136.

137.    With respect to Paragraph 137, Dr. Sabolinski admits the allegations in Paragraph 137.

138.    With respect to Paragraph 138, Dr. Sabolinski admits that on September 24, 2001, Organogenesis issued a press release announcing that the Company would begin commercializing three additional products during the fourth quarter of 2001, and that he is quoted in this release.  No further response is required to the extent the allegations of Paragraph 138 purport to construe and excerpt the release, which speaks for itself. Dr. Sabolinski denies that Paragraph 138 completely and accurately construes and excerpts the release.  Dr. Sabolinski otherwise denies each and every allegation in Paragraph 138.

139.    With respect to Paragraph 139, Dr. Sabolinski admits that on October 4, 2001, Organogenesis issued a press release announcing Apligraf sales for the third quarter of 2001, in which he is quoted.  No further response is required to the extent the allegations of Paragraph 139 purport to construe and excerpt the release, which speaks for itself. Dr. Sabolinski denies that Paragraph 139 completely and accurately construes and excerpts the release.  Dr. Sabolinski otherwise denies each and every allegation in Paragraph 139.

140.    With respect to Paragraph 140, Dr. Sabolinski admits the allegations in Paragraph 140.

141.    With respect to Paragraph 141, Dr. Sabolinski admits that on October 16, 2001, Organogenesis issued a press release announcing that Organogenesis raised $20.25 million from various financing activities, and that he is quoted in this release.  No further response is required to the extent that the allegations of Paragraph 141 purport to construe, paraphrase and excerpt the

release, which speaks for itself.  Dr. Sabolinski denies that Paragraph 141 completely and accurately construes, paraphrases and excerpts the release.  Dr. Sabolinski otherwise denies each and every allegation in Paragraph 141.

142.    With respect to Paragraph 142, Dr. Sabolinski admits that on November 1, 2001, the *Dow Jones* news service reported that Organogenesis had registered 2.7 million shares of common stock on behalf of certain shareholders.  No further response is required to the extent the allegations of Paragraph 142 purport to construe and paraphrase the news report, which speaks for itself.  Dr. Sabolinski denies that Paragraph 142 completely and accurately construes and paraphrases the release.  Dr. Sabolinski otherwise denies each and every allegation in Paragraph 142.

143.    With respect to Paragraph 143, Dr. Sabolinski admits that on November 13, 2001, Organogenesis issued a press release on *Business Wire*, announcing its financial results for the third quarter of 2001, the period ended September 30, 2001, and that he is quoted in this release.  No further response is required to the extent the allegations of Paragraph 143 purport to construe and excerpt the release, which speaks for itself.  Dr. Sabolinski denies that Paragraph 143 completely and accurately construes and excerpts the release.  Dr. Sabolinski otherwise denies each and every allegation in Paragraph 143.

144.    With respect to Paragraph 144, Dr. Sabolinski admits that on November 14, 2001, Organogenesis filed with the SEC the Company's financial results for the third quarter 2001, the period ended September 30, 2001, pursuant to a Form 10-Q.  Dr. Sabolinski further admits that his electronic signature and that of Mr. Arcari appear on that Form 10-Q.  No further response is required to the extent the allegations of Paragraph 144 purport to construe and excerpt the Form 10-Q, which speaks for itself.  Dr. Sabolinski denies that Paragraph 144 completely and

accurately construes and excerpts the Form 10-Q.  Dr. Sabolinski otherwise denies each and every allegation in Paragraph 144.

145.    With respect to Paragraph 145, Dr. Sabolinski admits that the Company issued press releases on the dates set forth in the first sentence of the paragraph, and that the Company filed a Form 10-Q for the third quarter of 2001 with the SEC.  No further response is required to the allegations of Paragraph 145 that purport to construe and excerpt those releases and Form 10-Q, which speak for themselves. Dr. Sabolinski denies that Paragraph 145 accurately construes and characterizes those documents, and otherwise denies each and every allegation in Paragraph 145.

With respect to Paragraph 145(a), Dr. Sabolinski incorporates by reference his responses to Paragraphs 59-67, and denies each and every allegation in Paragraph 145(a).

With respect to Paragraph 145(b), no response is required to the allegations of Paragraph 145(b) that purport to excerpt and construe unidentified statements or documents, which speak for themselves.  To the extent a response is required, Dr. Sabolinski admits that the Company issued a press release on October 16, 2001.  No response is required to the extent Paragraph 145 purports to construe and excerpt the release, which speaks for itself. Dr. Sabolinski denies that Paragraph 145(b) completely and accurately construes and excerpts any statement made by him, and otherwise denies each and every allegation in Paragraph 145(b).

With respect to Paragraph 145(c), Dr. Sabolinski lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning the information purportedly obtained through any investigation by plaintiffs' counsel or their representatives, and on that basis denies them.  No response is required to the allegations of Paragraph 145(c) that purport to excerpt and construe unidentified statements or documents,

which speak for themselves. To the extent a response is required, Dr. Sabolinski lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning unidentified "representation[s]" made by unidentified "defendants," and on that basis denies them. Dr. Sabolinski incorporates by reference his responses to Paragraphs 59-67, and otherwise denies each and every allegation in Paragraph 145(c).

With respect to Paragraph 145(d), Dr. Sabolinski lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning the information purportedly obtained through any investigation by plaintiffs' counsel or their representatives, and on that basis denies them. No response is required to the allegations of Paragraph 145(d) that purport to excerpt and construe unidentified statements or documents, which speak for themselves. To the extent a response is required, Dr. Sabolinski lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning the knowledge of or unidentified "representation[s]" made by unidentified "defendants," and on that basis denies them. Dr. Sabolinski otherwise denies each and every allegation in Paragraph 145(d).

With respect to Paragraph 145(e), Dr. Sabolinski lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning the information purportedly obtained through any investigation by plaintiffs' counsel or their representatives, and on that basis denies them. No response is required to the allegations of Paragraph 145(e) that purport to excerpt and construe unidentified statements or documents, which speak for themselves. To the extent a response is required, Dr. Sabolinski lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning the knowledge of unidentified "defendants," and on that basis denies them. Dr. Sabolinski

denies Paragraph 145(e) completely and accurately construes and excerpts any statement made by him, and otherwise denies each and every allegation in Paragraph 145(e).

With respect to Paragraph 145(f), Dr. Sabolinski lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning the information purportedly obtained through any investigation by plaintiffs' counsel or their representatives, and on that basis denies them.  No response is required to the allegations of Paragraph 145(f) that purport to excerpt and construe unidentified statements or documents, which speak for themselves.  To the extent a response is required, Dr. Sabolinski lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning the knowledge of unidentified "defendants," and on that basis denies them.  Dr. Sabolinski otherwise denies each and every allegation in Paragraph 145(f).

With respect to Paragraph 145(g), Dr. Sabolinski lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning the knowledge of unidentified "defendants," and on that basis denies them.  Dr. Sabolinski incorporates by reference his responses to Paragraphs 59-67, and otherwise denies each and every allegation in Paragraph 145(g).

146.    With respect to Paragraph 146, no response is required to the allegations that purport to quote from an analyst report purportedly issued by non-party Needham & Co. on November 16, 2001, which speaks for itself.  Dr. Sabolinski otherwise denies each and every allegation in Paragraph 146.

147.    With respect to Paragraph 147, Dr. Sabolinski admits that the Company issued a press release on January 4, 2002.  Dr. Sabolinski further admits that Mr. Erani resigned his position as Chairman of the Board of Directors effective January 1, 2002, but denies that the

release characterized his resignation as "sudden and unexpected."  Dr. Sabolinski further denies that Mr. Erani "depart[ed]" Organogenesis at this time, stating that Mr. Erani remained on the Company's Board as a director.  Dr. Sabolinski further denies that January 4, 2002 is "days before the end of the [purported] Class Period," and states that January 4, 2002 is over one month before the end of the purported Class Period, which according to plaintiffs, ends on February 7, 2002.  No further response is required to the extent that the allegations of Paragraph 147 purport to construe and excerpt the release, which speaks for itself.  Dr. Sabolinski otherwise denies each and every allegation in Paragraph 147.

148.    With respect to Paragraph 148, Dr. Sabolinski admits that on January 30, 2002, Organogenesis filed with the SEC a Form 8-K pursuant to Section 13 or 15(d) of Securities and Exchange Act of 1934.  Dr. Sabolinski further admits that the electronic signature of Mr. Arcari appears on that Form 8-K.  Dr. Sabolinski denies making any of the statements in the Form 8-K.  No further response is required to the extent the allegations of Paragraph 148 purport to construe, excerpt and paraphrase the Form 8-K, which speaks for itself.  Dr. Sabolinski denies that Paragraph 148 completely and accurately construes, excerpts and paraphrases the Form 8-K.  Dr. Sabolinski otherwise denies each and every allegation in Paragraph 148.

149.    With respect to Paragraph 149, Dr. Sabolinski admits that Organogenesis filed with the SEC a Form 8-K pursuant to Section 13 or 15(d) of Securities and Exchange Act of 1934.  Dr. Sabolinski denies making any of the statements in the Form 8-K.  No further response is required to the extent the allegations of Paragraph 149 purport to construe, excerpt and paraphrase the Form 8-K, which speaks for itself.  Dr. Sabolinski denies that Paragraph 149 completely and accurately construes, excerpts and paraphrases the Form 8-K.  Dr. Sabolinski otherwise denies each and every allegation in Paragraph 149.

150.    With respect to Paragraph 150, Dr. Sabolinski admits that Organogenesis filed with the SEC a Form 8-K pursuant to Section 13 or 15(d) of Securities and Exchange Act of 1934.  Dr. Sabolinski denies making any of the statements in the Form 8-K.  No further response is required to the extent the allegations of Paragraph 150 purport to construe, excerpt and paraphrase the Form 8-K, which speaks for itself.  Dr. Sabolinski denies that Paragraph 150 completely and accurately construes, excerpts and paraphrases the Form 8-K.  Dr. Sabolinski further lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning the unidentified "previous report[s]" of unidentified "defendants," and on that basis denies them.  Dr. Sabolinski otherwise denies each and every allegation in Paragraph 150.

151.    With respect to Paragraph 151, Dr. Sabolinski admits that Organogenesis' stock was traded on the open market in January and February of 2002.  Dr. Sabolinski further admits that on January 28, 2002, Organogenesis' stock reached an intra-day price as high as $3.70 per share, but denies that Organogenesis' stock closed at that price.  Dr. Sabolinski further admits that on January 30, 2002, Organogenesis' stock reached an intra-day price as low as $2.44 per share, but denies that the stock closed at that price.  Dr. Sabolinski further admits that on February 7, 2002 Organogenesis' stock reached an intra-day price as low as $1.32 per share, but denies that Organogenesis' stock price closed at that price.  Dr. Sabolinski further admits that on March 7, 2000, Organogenesis' stock reached an intra-day price as high as $22.00 per share, but denies that it closed  "over $22.00" on that date.  Dr. Sabolinski lacks personal knowledge or information sufficient to form a belief as to the allegations regarding the volume, expectancy, and other statistics related to the Company's stock price, and on this basis denies them.  Dr. Sabolinski otherwise denies each and every allegation in Paragraph 151.

152.    With respect to Paragraph 152 and footnote 5, Dr. Sabolinski admits that on February 25, 2002, the *Dow Jones* news service reported that Organogenesis had announced a restructuring, and that on May 21, 2002 the *Dow Jones* news service reported that Organogenesis had raised about $16 million from a private placement of preferred and common stock. Dr. Sabolinski further admits that the Company issued a press release on May 21, 2002.  No further response is required to the extent the allegations of Paragraph 152 purport to construe, paraphrase and excerpt the *Dow Jones* reports and the Company's May 21, 2002 release, which speak for themselves.  Dr. Sabolinski denies that Paragraph 152 completely and accurately construes, paraphrases and excerpts the *Dow Jones* reports and the Company's May 21, 2002 release.  Dr. Sabolinski lacks personal knowledge or information sufficient to form a belief as to the truth of allegations related to unidentified "vulture capitalists" or "institutional shareholders." No response is required to the allegations in footnote 5, which consist of plaintiffs' characterizations of convertible shares.  Dr. Sabolinski otherwise denies each and every allegation in Paragraph 152.

153.    With respect to Paragraph 153, Dr. Sabolinski admits that on May 21, 2002 the Company issued a press release announcing sales of Apligraf for the first quarter 2002.  No further response is required to the extent the allegations of Paragraph 153 purport to construe and paraphrase the release, which speaks for itself.  Dr. Sabolinski denies that Paragraph 153 completely and accurately construes and paraphrases the release.  Dr. Sabolinski further admits that on April 11, 2002 the Company hosted a conference call, the transcript of which was subsequently published.  No further response is required to the extent the allegations of Paragraph 153 purport to construe, paraphrase and excerpt the call, the transcript of which speaks for itself.  Dr. Sabolinski denies that he participated in the conference call, and denies that

Paragraph 153 completely and accurately construes, paraphrases and excerpts the call. Dr. Sabolinski otherwise denies each and every allegation in Paragraph 153.

154.    With respect to Paragraph 154, Dr. Sabolinski admits that on April 11, 2002 the Company hosted a conference call, the transcript of which was subsequently published. No further response is required to the extent the allegations of Paragraph 154 purport to construe, paraphrase and excerpt the call, the transcript of which speaks for itself. Dr. Sabolinski denies that he participated in the call, and denies that Paragraph 154 completely and accurately construes, paraphrases and excerpts the call. Dr. Sabolinski lacks personal knowledge or information sufficient to form a belief as to the truth of allegations related to unidentified "state[ments]" by unidentified "defendants" and on that basis denies them. Dr. Sabolinski otherwise denies each and every allegation in Paragraph 154.

155.    With respect to Paragraph 155, Dr. Sabolinski admits that Organogenesis filed a year-end financial statement with the SEC pursuant to Form 10-K on April 16, 2002. Dr. Sabolinski further admits that Organogenesis' independent auditor PricewaterhouseCoopers LLP issued a "going concern" opinion dated April 4, 2002. No further response is required to the extent the allegations of Paragraph 155 purport to construe, paraphrase and excerpt the opinion, which speaks for itself. Dr. Sabolinski denies that Paragraph 155 completely and accurately construes and excerpts the opinion. Dr. Sabolinski otherwise denies each and every allegation in Paragraph 155.

156.    With respect to Paragraph 156, Dr. Sabolinski admits that on April 17, 2002, Organogenesis stock reached an intra-day price as low as $0.60, but denies that the stock closed at that price. Dr. Sabolinski further admits that at one point on May 1, 2002, Organogenesis

stock reached an intra-day price as low as $0.41, but denies that the stock closed at that price. Dr. Sabolinski otherwise denies each and every allegation in Paragraph 156.

157.    With respect to Paragraph 157, Dr. Sabolinski admits that on April 16, 2002, Organogenesis issued a release on *Business Wire*.  Dr. Sabolinski denies making any of the statements in the release.  No further response is required to the extent the allegations of Paragraph 157 purport to construe, paraphrase and excerpt the release, which speaks for itself. Dr. Sabolinski denies Paragraph 157 completely and accurately construes, paraphrases and excerpts the release.  Dr. Sabolinski admits that, in a *Dow Jones* report published on August 16, 2002, Organogenesis stated it was reviewing whether it needed to take an asset impairment charge and would delay filing its quarterly report for the second quarter of 2002 with the SEC. Dr. Sabolinski denies making any statements in the *Dow Jones* report.  No further response is required to the extent the allegations of Paragraph 157 purport to construe, paraphrase and excerpt the report, which speaks for itself.  Dr. Sabolinski denies that Paragraph 157 completely and accurately construes, paraphrases and excerpts the report.  Dr. Sabolinski otherwise denies each and every allegation in Paragraph 157.

158.    With respect to Paragraph 158, Dr. Sabolinski admits that on July 12, 2002 Organogenesis shares were trading at a price below $0.20.  No response is required to the allegations that purport to quote from and characterize an analyst report purportedly issued by non-party Needham & Co. on July 12, 2002, which speaks for itself.  Dr. Sabolinski otherwise denies each and every allegation in Paragraph 158.

159.    With respect to Paragraph 159, Dr. Sabolinski admits that on August 21, 2002 Organogenesis shares were trading at a price below $0.09, and that on that date the Company's common stock was suspended from trading on the AMEX.  Dr. Sabolinski admits that on

September 13, 2002, Organogenesis issued a press release announcing that it had temporarily halted shipments of Apligraf and had furloughed 110 employees, but denies that he made any of the statements in that release.  No further response is required to the extent the allegations of Paragraph 159 purport to construe, paraphrase and excerpt the release, which speaks for itself. Dr. Sabolinski denies Paragraph 159 completely and accurately construes, paraphrases, and excerpts the release.  Dr. Sabolinski specifically denies that the September 13, 2002  release described Organogenesis' marketing agreement with Novartis as "not sustainable."  Dr. Sabolinski further states that he lacks personal knowledge or information sufficient to form a belief as to what unidentified "defendants" might have "revealed."  Dr. Sabolinski otherwise denies each and every allegation in Paragraph 159.

160.     With respect to Paragraph 160, Dr. Sabolinski admits that sporadic recalls of Apligraf occurred after 1999, but presently lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning the number of recalls, and on that basis denies them.  Dr. Sabolinski further lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning a recall that allegedly occurred after he left the Company on September 9, 2002, and on that basis denies them.  Dr. Sabolinski otherwise denies each and every allegation in Paragraph 160.

161.     With respect to Paragraph 161, Dr. Sabolinski admits that, in September 2002, Organogenesis initiated a bankruptcy proceeding in the United States Bankruptcy Court for the District of Massachusetts, Eastern Division.  No response is required to those allegations concerning the facts or proceedings of the bankruptcy, which are set forth in court papers filed and orders entered in that proceeding, which speak for themselves.  Dr. Sabolinski otherwise denies each and every allegation in Paragraph 161.

162.    With respect to Paragraph 162, Dr. Sabolinski lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning events allegedly occurring after he left the Company on September 9, 2002, and on that basis denies them.  Dr. Sabolinski otherwise denies each and every allegation in Paragraph 162.

163.    With respect to Paragraph 163, Dr. Sabolinski lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning events allegedly occurring after he left the Company on September 9, 2002, and on that basis denies them.  Dr. Sabolinski otherwise denies each and every allegation in Paragraph 163.

164.    With respect to Paragraph 164, Dr. Sabolinski admits that, in September 2002, Organogenesis initiated a bankruptcy proceeding in the United States Bankruptcy Court for the District of Massachusetts, Eastern Division.  No response is required to those allegations concerning the facts and proceedings of the bankruptcy, which are set forth in court papers filed and orders entered in that proceeding, which speak for themselves.  Dr. Sabolinski lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning events allegedly occurring after he left the Company on September 9, 2002, and on that basis denies them.  Dr. Sabolinski otherwise denies each and every allegation in Paragraph 164.

165.    With respect to Paragraph 165, Dr. Sabolinski lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning events allegedly occurring after he left the Company on September 9, 2002, and on that basis denies them.  Dr. Sabolinski otherwise denies each and every allegation in Paragraph 165.

166.    With respect to Paragraph 166, Dr. Sabolinski admits that, in September 2002, Organogenesis initiated a bankruptcy proceeding in the United States Bankruptcy Court for the District of Massachusetts, Eastern Division.  No response is required to those allegations

concerning the facts and proceedings of the bankruptcy, which are set forth in court papers filed

and orders entered in that proceeding, which speak for themselves.  Dr. Sabolinski lacks personal

knowledge or information sufficient to form a belief as to the truth of the allegations concerning

events allegedly occurring after he left the Company on September 9, 2002, and on that basis

denies them.  Dr. Sabolinski denies that the Company emerged from bankruptcy under the "full

dominance and control" of the "Individual Defendants," as that term is defined by plaintiffs in

Paragraph 33 of the Complaint.  Dr. Sabolinski otherwise denies each and every allegation in

Paragraph 166.

167.    With respect to Paragraph 167, Dr. Sabolinski admits that, in September 2002,

Organogenesis initiated a bankruptcy proceeding in the United States Bankruptcy Court for the

District of Massachusetts, Eastern Division.  No response is required to those allegations

concerning the facts or proceedings of the bankruptcy, which are set forth in court papers filed

and orders entered in that proceeding, which speak for themselves.  Dr. Sabolinski otherwise

denies each and every allegation in Paragraph 167.

168.    With respect to Paragraph 168, no response is required to the allegations of

Paragraph 168 relating to the openness, efficiency and development of the market for

Organogenesis stock, which consist of legal conclusions.  Dr. Sabolinski denies that the

Organogenesis common stock traded at artificially inflated prices during the putative Class

Period.  Dr. Sabolinski lacks personal knowledge or information sufficient to form a belief as to

the truth of the allegations relating to whether plaintiffs and other members of the purported class

purchased or otherwise acquired Organogenesis securities in reliance on the integrity of the

market price of Organogenesis securities and market information relating to Organogenesis, and

on that basis denies them.  Dr. Sabolinski denies that this action may be properly maintained as a

class action, and further denies that plaintiffs or any member of the purported class have been damaged. Dr. Sabolinski otherwise denies each and every allegation in Paragraph 168.

169.    With respect to Paragraph 169, no response is required to the allegations that consist merely of conclusions of law. Dr. Sabolinski otherwise denies each and every allegation in Paragraph 169.

170.    With respect to Paragraph 170, no response is required to the allegations that consist merely of conclusions of law. Dr. Sabolinski otherwise denies each and every allegation in Paragraph 170.

171.    With respect to Paragraph 171, Dr. Sabolinski states that these allegations concern and are directed to non-party PricewaterhouseCoopers, are not directed against Dr. Sabolinski or any other defendant in this action, and that no response is therefore required, and on that basis denies each and every allegation in Paragraph 171. To the extent a response is required, Dr. Sabolinski admits that PricewaterhouseCoopers served as the Company's independent auditor during the putative Class Period, but otherwise lacks personal knowledge or information sufficient to form a belief as to the truth of each and every allegation in Paragraph 171, and on that basis denies them.

172.    With respect to Paragraph 172, Dr. Sabolinski states that these allegations are directed to non-party PricewaterhouseCoopers, are not directed against Dr. Sabolinski or any other defendant in this action, and that no response is therefore required, and on that basis denies each and every allegation in Paragraph 172. To the extent a response is required, Dr. Sabolinski admits that PricewaterhouseCoopers served as Organogenesis' auditor and principal accounting firm prior to and during the putative Class Period, and that PricewaterhouseCoopers had knowledge of Organogenesis' financial reporting practices. Dr. Sabolinski otherwise lacks

personal knowledge or information sufficient to form a belief as to the truth of each and every allegation in Paragraph 172, and on that basis denies them.

173.     With respect to Paragraph 173 and footnote 6, Dr. Sabolinski states that these allegations are directed to non-party PricewaterhouseCoopers, are not directed against Dr. Sabolinski or any other defendant in this action, and that no response is therefore required, and on that basis denies each and every allegation in Paragraph 173.  To the extent a response is required, Dr. Sabolinski admits that PricewaterhouseCoopers served as the Company's independent auditor during the putative Class Period, but otherwise lacks personal knowledge or information sufficient to form a belief as to the truth of each and every allegation in Paragraph 173, and on that basis denies them.

174.     With respect to Paragraph 174, Dr. Sabolinski states that these allegations are directed to non-party PricewaterhouseCoopers, are not directed against Dr. Sabolinski or any other defendant in this action, and that no response is therefore required, and on that basis denies each and every allegation in Paragraph 174.  To the extent a response is required, Dr. Sabolinski admits that PricewaterhouseCoopers served as the Company's independent auditor during the putative Class Period, but otherwise lacks personal knowledge or information sufficient to form a belief as to the truth of each and every allegation in Paragraph 174, and on that basis denies them.

With respect to Paragraph 174(a), Dr. Sabolinski states that these allegations are directed to non-party PricewaterhouseCoopers, are not directed against Dr. Sabolinski or any other defendant in this action, and that no response is therefore required, and on that basis denies each and every allegation in Paragraph 174(a).  To the extent a response is required, Dr. Sabolinski lacks personal knowledge or information sufficient to form a belief as to the truth of the

allegations concerning the existence or content of the alleged "Confidential Arcari Document," and on that basis denies them.  Dr. Sabolinski further states that, in any event, no response is required to those allegations purporting to construe and excerpt any such document, which speaks for itself.  Dr. Sabolinski further lacks personal knowledge or information sufficient to form a belief as to the truth of each and every allegation other in Paragraph 174(a), and on that basis denies them.

With respect to Paragraph 174(b), Dr. Sabolinski states that these allegations are directed to non-party PricewaterhouseCoopers, are not directed against Dr. Sabolinski or any other defendant in this action, and that no response is therefore required, and on that basis denies each and every allegation in Paragraph 174(b).  To the extent a response is required, Dr. Sabolinski lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning the existence or content of the alleged "Confidential Arcari Document," and on that basis denies them.  Dr. Sabolinski further states that, in any event, no response is required to those allegations purporting to construe and excerpt any such document, which speaks for itself.  Dr. Sabolinski further lacks personal knowledge or information sufficient to form a belief as to the truth of each and every allegation other in Paragraph 174(b), and on that basis denies them.

With respect to Paragraph 174(c), Dr. Sabolinski states that these allegations are directed to non-party PricewaterhouseCoopers, are not directed against Dr. Sabolinski or any other defendant in this action, and that no response is therefore required, and on that basis denies each and every allegation in Paragraph 174(c).  To the extent a response is required, Dr. Sabolinski lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning the existence or content of the alleged "Confidential Arcari Document,"

and on that basis denies them. Dr. Sabolinski further states that, in any event, no response is required to those allegations purporting to construe and excerpt any such document, which speaks for itself. Dr. Sabolinski further lacks personal knowledge or information sufficient to form a belief as to the truth of each and every allegation other in Paragraph 174(c), and on that basis denies them.

With respect to Paragraph 174(d), Dr. Sabolinski states that these allegations are directed to non-party PricewaterhouseCoopers, are not directed against Dr. Sabolinski or any other defendant in this action, and that no response is therefore required, and on that basis denies each and every allegation in Paragraph 174(d). To the extent a response is required, Dr. Sabolinski lacks personal knowledge or information sufficient to form a belief as to the truth of each and every allegation in Paragraph 174(d), and on that basis denies them.

175. With respect to Paragraph 175, Dr. Sabolinski states that these allegations are directed to non-party PricewaterhouseCoopers, are not directed against Dr. Sabolinski or any other defendant in this action, and that no response is therefore required, and on that basis denies each and every allegation in Paragraph 175. To the extent a response is required, Dr. Sabolinski admits that PricewaterhouseCoopers served as the Company's independent auditor during the putative Class Period, but lacks personal knowledge or information sufficient to form a belief as to the truth of each and every other allegation in Paragraph 175, and on that basis denies them.

176. With respect to Paragraph 176, Dr. Sabolinski states that these allegations are directed to non-party PricewaterhouseCoopers, are not directed against Dr. Sabolinski or any other defendant in this action, and that no response is therefore required, and on that basis denies each and every allegation in Paragraph 176. To the extent a response is required, Dr. Sabolinski admits that PricewaterhouseCoopers served as the Company's independent auditor during the

putative Class Period, but lacks personal knowledge or information sufficient to form a belief as to the truth of each and every other allegation Paragraph 176, and on that basis denies them.

177.    With respect to Paragraph 177, Dr. Sabolinski states that these allegations are directed to non-party PricewaterhouseCoopers, are not directed against Dr. Sabolinski or any other defendant in this action, and that no response is therefore required, and on that basis denies each and every allegation in Paragraph 177.  To the extent a response is required, Dr. Sabolinski admits that PricewaterhouseCoopers served as the Company's independent auditor during the putative Class Period, but lacks personal knowledge or information sufficient to form a belief as to the truth of each and every other allegation in Paragraph 177 and on that basis denies them.

178.    With respect to Paragraph 178, Dr. Sabolinski states that these allegations are directed to non-party PricewaterhouseCoopers, are not directed against Dr. Sabolinski or any other defendant in this action, and that no response is therefore required, and on that basis denies each and every allegation in Paragraph 178.  To the extent a response is required, Dr. Sabolinski admits that PricewaterhouseCoopers served as the Company's independent auditor during the putative Class Period, but lacks personal knowledge or information sufficient to form a belief as to the truth of each and every other allegation in Paragraph 178, and on that basis denies them.

179.    With respect to Paragraph 179, Dr. Sabolinski states that these allegations are directed to non-party PricewaterhouseCoopers, are not directed against Dr. Sabolinski or any other defendant in this action, and that no response is therefore required, and on that basis denies each and every allegation in Paragraph 179.  To the extent a response is required, Dr. Sabolinski admits that PricewaterhouseCoopers served as the Company's independent auditor during the putative Class Period, but lacks personal knowledge or information sufficient to form a belief as to the truth of each and every other allegation in Paragraph 179, and on that basis denies them.

180.    With respect to Paragraph 180, Dr. Sabolinski states that these allegations are directed to non-party PricewaterhouseCoopers, are not directed against Dr. Sabolinski or any other defendant in this action, and that no response is therefore required, and on that basis denies each and every allegation in Paragraph 180.  To the extent a response is required, Dr. Sabolinski admits that PricewaterhouseCoopers served as the Company's independent auditor during the putative Class Period, but lacks personal knowledge or information sufficient to form a belief as to the truth of each and every other allegation in Paragraph 180, and on that basis denies them.

181.    With respect to Paragraph 181, Dr. Sabolinski states that these allegations are directed to non-party PricewaterhouseCoopers, are not directed against Dr. Sabolinski or any other defendant in this action, and that no response is therefore required, and on that basis denies each and every allegation in Paragraph 181.  To the extent a response is required, Dr. Sabolinski admits that PricewaterhouseCoopers served as the Company's independent auditor during the putative Class Period, but lacks personal knowledge or information sufficient to form a belief as to the truth of each and every other allegation in Paragraph 181, and on that basis denies them.

182.    With respect to Paragraph 182, Dr. Sabolinski states that these allegations are directed to non-party PricewaterhouseCoopers, are not directed against Dr. Sabolinski or any other defendant in this action, and that no response is therefore required, and on that basis denies each and every allegation in Paragraph 182.  To the extent a response is required, Dr. Sabolinski admits that PricewaterhouseCoopers served as the Company's independent auditor during the putative Class Period, but lacks personal knowledge or information sufficient to form a belief as to the truth of each and every other allegation in Paragraph 182, and on that basis denies them.

183.    With respect to Paragraph 183, Dr. Sabolinski states that these allegations are directed to non-party PricewaterhouseCoopers, are not directed against Dr. Sabolinski or any

other defendant in this action, and that no response is therefore required, and on that basis denies each and every allegation in Paragraph 183. To the extent a response is required, Dr. Sabolinski admits that PricewaterhouseCoopers served as the Company's independent auditor during the putative Class Period, but lacks personal knowledge or information sufficient to form a belief as to the truth of each and every other allegation in Paragraph 183, and on that basis denies them.

184.     With respect to Paragraph 184, Dr. Sabolinski states that these allegations are directed to non-party PricewaterhouseCoopers, are not directed against Dr. Sabolinski or any other defendant in this action, and that no response is therefore required, and on that basis denies each and every allegation in Paragraph 184. To the extent a response is required, Dr. Sabolinski admits that PricewaterhouseCoopers served as the Company's independent auditor during the putative Class Period, but lacks personal knowledge or information sufficient to form a belief as to the truth of each and every other allegation in Paragraph 184, and on that basis denies them.

185.     With respect to Paragraph 185, Dr. Sabolinski states that these allegations are directed to non-party PricewaterhouseCoopers, are not directed against Dr. Sabolinski or any other defendant in this action, and that no response is therefore required, and on that basis denies each and every allegation in Paragraph 185. To the extent a response is required, Dr. Sabolinski admits that PricewaterhouseCoopers served as the Company's independent auditor during the putative Class Period, but lacks personal knowledge or information sufficient to form a belief as to the truth of each and every other allegation in Paragraph 185, and on that basis denies them.

186.     With respect to Paragraph 186, Dr. Sabolinski states that these allegations are directed to non-party PricewaterhouseCoopers, are not directed against Dr. Sabolinski or any other defendant in this action, and that no response is therefore required, and on that basis denies each and every allegation in Paragraph 186. To the extent a response is required, Dr. Sabolinski

admits that PricewaterhouseCoopers served as the Company's independent auditor during the putative Class Period, but lacks personal knowledge or information sufficient to form a belief as to the truth of each and every other allegation in Paragraph 186, and on that basis denies them.

187.    With respect to Paragraph 187, no response is required to the allegations that consist merely of conclusions of law.  Dr. Sabolinski otherwise denies each and every allegation in Paragraph 187.

188.    With respect to Paragraph 188, Dr. Sabolinski denies each and every allegation in Paragraph 188.

189.    With respect to Paragraph 189, Dr. Sabolinski denies each and every allegation in Paragraph 189.

190.    With respect to Paragraph 190, Dr. Sabolinski admits that during the putative Class Period Organogenesis was listed and traded on the American Stock Exchange, filed periodic reports with the SEC, was followed by securities analysts who disseminated reports and issued press releases to the public.  No response is required to those allegations of Paragraph 190 regarding the efficiency of the market for Organogenesis stock, which consist of legal conclusions.  Dr. Sabolinski otherwise denies each and every allegation in Paragraph 190.

191.    With respect to Paragraph 191, no response is required to those allegations of Paragraph 191 regarding the rate at which market information was "digested."  To the extent that a response to such allegations is required, Dr. Sabolinski lacks personal knowledge or information sufficient to form a belief as to those allegations.  Dr. Sabolinski denies that the price of Organogenesis stock was artificially inflated.  Dr. Sabolinski further denies that plaintiffs or members of the purported class suffered injury, and if such injury exists (which is

denied), Dr. Sabolinski denies that plaintiffs and members of the purported class suffered

"similar injury." Dr. Sabolinski otherwise denies each and every allegation in Paragraph 191.

192. With respect to Paragraph 192, no response is required to the allegations of

Paragraph 192, which consist merely of conclusions of law. To the extent a response is required,

Dr. Sabolinski denies the allegations of Paragraph 192.

193. With respect to Paragraph 193, Dr. Sabolinski repeats and incorporates by

reference each of his prior responses to Paragraphs 1-192, as though set forth herein in their

entirety.

194. No response is required to the allegations contained in Paragraph 194, which

consist merely of conclusions of law. To the extent the allegations of Paragraph 194 contain

allegations of fact, Dr. Sabolinski denies each and every allegation in Paragraph 194.

195. No response is required to the allegations contained in Paragraph 195, which

consist merely of conclusions of law. To the extent the allegations of Paragraph 195 contain

allegations of fact, Dr. Sabolinski denies each and every allegation in Paragraph 195.

196. No response is required to the allegations contained in Paragraph 196, which

consist merely of conclusions of law. To the extent the allegations of Paragraph 196 contain

allegations of fact, Dr. Sabolinski denies each and every allegation in Paragraph 196.

197. No response is required to the allegations contained in Paragraph 197, which

consist merely of conclusions of law. To the extent the allegations of Paragraph 197 contain

allegations of fact, Dr. Sabolinski denies each and every allegation in Paragraph 197.

198. No response is required to the allegations contained in Paragraph 198, which

consist merely of conclusions of law. To the extent the allegations of Paragraph 198 contain

allegations of fact, Dr. Sabolinski denies each and every allegation in Paragraph 198.

199.    No response is required to the allegations contained in Paragraph 199, which consist merely of conclusions of law.  To the extent the allegations of Paragraph 199 contain allegations of fact, Dr. Sabolinski denies each and every allegation in Paragraph 199.

200.    No response is required to the allegations contained in Paragraph 200, which consist merely of conclusions of law.  To the extent the allegations of Paragraph 200 contain allegations of fact, Dr. Sabolinski denies each and every allegation in Paragraph 200.

201.    No response is required to the allegations contained in Paragraph 201, which consist merely of conclusions of law.  To the extent the allegations of Paragraph 201 contain allegations of fact, Dr. Sabolinski denies each and every allegation in Paragraph 201.

202.    No response is required to the allegations contained in Paragraph 202, which consist merely of conclusions of law.  To the extent the allegations of Paragraph 202 contain allegations of fact, Dr. Sabolinski denies each and every allegation in Paragraph 202.

203.    No response is required to the allegations contained in Paragraph 203, which consist merely of conclusions of law.  To the extent the allegations of Paragraph 203 contain allegations of fact, Dr. Sabolinski denies each and every allegation in Paragraph 203.

204.    With respect to Paragraph 204, Dr. Sabolinski repeats and incorporates by reference each of his prior responses to Paragraphs 1-204, as though set forth herein in their entirety.

205.    With respect to Paragraph 205, no response is required to the allegations contained in Paragraph 205 that consist merely of conclusions of law.  To the extent that Paragraph 205 contains allegations of fact, Dr. Sabolinski admits that, during the putative Class Period, he held various positions at Organogenesis, and at certain of those times served as an officer and director of the Company.  Dr. Sabolinski denies that he held officer and director

positions during the entire putative Class Period.  Dr. Sabolinski incorporates by reference his response to Paragraph 26.  Dr. Sabolinski admits that at certain times, to the extent consistent with his role, upon request, he had access to certain internal corporate documents and other information provided to him in connection therewith.  Dr. Sabolinski presently is without personal knowledge or information sufficient to form a belief as to the specific materials he allegedly received and when.  Dr. Sabolinski lacks personal knowledge or information sufficient to form a belief as to the truth of allegations concerning what documents any other unidentified "[i]ndividual [d]efendants" may have received and when they might have received them, and on that basis denies them.  Dr. Sabolinski further admits that he performed in good faith all positions which he held, and otherwise denies each and every allegation in Paragraph 205.

206.    With respect to Paragraph 206, no response is required to the allegations contained in Paragraph 206 that consist merely of conclusions of law.  To the extent that Paragraph 206 contains allegations of fact, Dr. Sabolinski admits that he was an officer and director of the Company for a portion of the putative Class Period, and incorporates by reference his response to Paragraph 26.  Dr. Sabolinski further admits that he performed all duties and responsibilities related to the positions which he held.  Dr. Sabolinski otherwise denies each and every allegation in Paragraph 206.

207.    No response is required to the allegations contained in Paragraph 207, which consist merely of conclusions of law.  To the extent the allegations of Paragraph 207 contain allegations of fact, Dr. Sabolinski denies each and every allegation in Paragraph 207.

208.    No response is required to the allegations contained in Paragraph 208, which consist merely of conclusions of law.  To the extent the allegations of Paragraph 208 contain allegations of fact, Dr. Sabolinski denies each and every allegation in Paragraph 208.

To the extent that any response is required to Plaintiffs' prayer for relief, Dr. Sabolinski denies each and every allegation contained therein.

## SECOND DEFENSE

The Complaint and each purported cause of action alleged therein fails to state a claim upon which relief may be granted.

## THIRD DEFENSE

Plaintiffs have failed to plead fraud or its predicate acts with sufficient particularity.

## FOURTH DEFENSE

Plaintiffs' claims as to the Defendants are barred in whole or in part by the applicable statute of limitations.

## FIFTH DEFENSE

Plaintiffs lack standing to assert the claims in the Complaint.

## SIXTH DEFENSE

Plaintiffs' claims under Section 20(a) of the Exchange Act fail because defendants were not controlling persons, did not exercise actual control over others allegedly liable for a primary violation, in every respect acted in good faith, were not culpable participants in any misconduct, and did not directly or indirectly induce any acts allegedly constituting a primary violation of the Exchange Act or any rule or regulation promulgated thereunder.

## SEVENTH DEFENSE

Defendants did not act with scienter but instead exercised reasonable due diligence and acted in good faith and in conformity with all applicable standards and state and federal statutes, including but not limited to the Securities Exchange Act of 1934, as amended, the Private Securities Litigation Reform Act of 1995, and all applicable rules and regulations promulgated thereunder.

## EIGHTH DEFENSE

Plaintiffs are estopped from obtaining relief, or their claims are barred, by their own

conduct or the disclosure of, or plaintiffs' assumption of, the risks of their investment.

## NINTH DEFENSE

Plaintiffs' claims are barred by the Private Securities Litigation Reform Act.

## TENTH DEFENSE

Plaintiffs' claims are barred because they failed to join indispensable parties.

## ELEVENTH DEFENSE

The business judgment rule protects defendants' alleged actions and, thus, bars recovery

by plaintiffs and the purported class on their claims.

## TWELFTH DEFENSE

Plaintiffs' claims are barred in whole or in part because plaintiffs failed to make

reasonable efforts to mitigate their injuries or damages.

## THIRTEENTH DEFENSE

Plaintiffs' claims are barred in whole or in part because any decline in the market price of

the Organogenesis securities purchased by the plaintiffs were caused by factors other than

defendants' alleged conduct.

## FOURTEENTH DEFENSE

Plaintiffs' claims are barred in whole or in part by In re: Organogenesis, Inc., No. 02-

16944-WCH (Bankr. D. Mass. 2003).

## FIFTEENTH DEFENSE

Plaintiffs' claims are barred in whole or in part by the doctrines of waiver, estoppel,

ratification and/or unclean hands.

Dr. Sabolinski reserves the right to assert additional defenses as they become known through the course of discovery.

WHEREFORE, Dr. Sabolinski respectfully requests that this Court dismiss the Complaint and plaintiffs' claims, enter judgment in favor of the defendants and against plaintiffs, award defendants the reasonable attorneys' fees, costs, and expenses they have incurred in the defense of this action, and grant defendants any additional relief that is fair and appropriate.

MICHAEL SABOLINSKI, M.D.

By his attorneys,

 _/s/ Jonathan A. Shapiro_____
Jeffrey B. Rudman (BBO #433380)
Jonathan A. Shapiro (BBO #567838)
Kimberly Friday (BBO #660544)
Wilmer Cutler Pickering Hale and Dorr LLP
60 State Street, Boston, MA  02109
(617) 526-6000

September 16, 2005