UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

IN RE ORGANOGENESIS SECURITIES
LITIGATION

Civ. No. 04-10027-JLT

## ANSWER AND AFFIRMATIVE DEFENSES OF DEFENDANT ALAN W. TUCK TO CORRECTED CONSOLIDATED AMENDED COMPLAINT

Defendant Alan W. Tuck ("Mr. Tuck"), based on his knowledge and information and belief, hereby answers the Corrected Consolidated Amended Class Action Complaint for Violation of the Federal Securities Laws ("Complaint" or "Compl."), dated December 22, 2004. In responding to the Complaint, Mr. Tuck does not admit that he bears the burden of proving any of the defenses set forth below, nor the relevance of any of plaintiffs' allegations. Mr. Tuck further states that he lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning events allegedly occurring after he left Organogenesis, Inc. on June 15, 2000, and on that basis denies them. To the extent not explicitly admitted, all allegations of the Complaint are denied.

## FIRST DEFENSE

Mr. Tuck denies each allegation except where specifically admitted, and in every respect denies liability, denies that he engaged in any improper conduct and denies that plaintiffs are entitled to relief. Mr. Tuck presently is without personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning plaintiffs' unidentified sources, including whether the source(s) actually provided the information attributed to them. Mr. Tuck responds to the specifically numbered allegations of the Complaint as follows:

To the extent that any response is required to plaintiffs' unnumbered Introductory Paragraph, Mr. Tuck denies each and every allegation therein.

1.      With respect to Paragraph 1, no response is required to the allegations of that paragraph, which sets forth plaintiffs' characterization of this action, consists of legal conclusions, and does not purport to require a response from Defendants.  To the extent that this paragraph purports to contain factual assertions requiring a response, Mr. Tuck admits that plaintiffs assert that this is a federal class action asserting claims under the Securities Exchange Act of 1934 (the "Exchange Act").  Mr. Tuck denies that any acts occurred to give rise to violation of this Act or any other securities laws, and further denies that this action may be properly maintained as a class action.  Mr. Tuck otherwise denies each and every allegation in Paragraph 1.

2.      With respect to Paragraph 2, Mr. Tuck admits that during the putative Class Period Organogenesis, Inc. ("Organogenesis" or "the Company") manufactured Apligraf, which has been described as a unique skin replacement therapy used for severe skin wounds.  No response is required to the allegation concerning Organogenesis' revenue during the putative Class Period, which is set forth in publicly filed financial statements that speak for themselves. To the extent a response is required, Mr. Tuck denies that plaintiffs completely and accurately construe and characterize those documents.  Mr. Tuck lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning Apligraf and the Company's revenues after he left the Company on June 15, 2000, and on that basis denies them. Mr. Tuck otherwise denies each and every allegation in Paragraph 2.

3.      With respect to Paragraph 3, no response is required to those allegations purporting to construe and paraphrase unidentified 1999 public statements, which speak for themselves.  Mr. Tuck admits that prior to and during the putative Class Period, the Company issued public statements and public filings related to its marketing agreements, its funding and its

profitability, which speak for themselves. To the extent a response to these allegations is required, Mr. Tuck denies that Paragraph 3 completely and accurately characterizes and construes those documents. Mr. Tuck admits that Organogenesis and Novartis Pharma AG (formerly Sandoz Pharma Ltd.) ("Novartis") were parties to certain contracts during the putative Class Period (collectively referred to herein as "the Novartis Contracts"), and that those documents set forth the terms of the parties' relationship. No response is required to those allegations purporting to construe and characterize the Novartis Contracts, which speak for themselves. To the extent a response is required, Mr. Tuck denies that Paragraph 3 completely and accurately construes and characterizes the Novartis Contracts and the parties' relationship as set forth therein. Mr. Tuck lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning communications allegedly made after he left the Company on June 15, 2000, and on that basis denies them. Mr. Tuck otherwise denies each and every allegation in Paragraph 3.

4.     With respect to Paragraph 4, Mr. Tuck denies that the Company filed a Form 10-K with the Securities and Exchange Commission ("SEC") on March 29, 2000, but admits that the Company filed a Form 10-K with the SEC on or about March 30, 2000. Mr. Tuck further admits that the Form 10-K disclosed the Company's financial plan, including the need to secure additional funding. No further response is required to the remaining allegations of Paragraph 4, which purport to construe and excerpt that document, which speaks for itself. To the extent any further response is required, Mr. Tuck denies that Paragraph 4 completely and accurately construes and excerpts that document. Mr. Tuck lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning representations allegedly

made after he left the Company on June 15, 2000, and on that basis denies them. Mr. Tuck

otherwise denies each and every allegation in Paragraph 4.

5.      With respect to Paragraph 5, Mr. Tuck lacks personal knowledge or information

sufficient to form a belief as to the truth of the allegations concerning the purported beliefs of

plaintiffs and other members of the purported class, and on that basis denies them. Mr. Tuck

further lacks personal knowledge or information sufficient to form a belief as to the truth of the

allegations concerning what, if anything, unidentified "[d]efendants repeatedly stated" in

unidentified statements, and on that basis denies them. Mr. Tuck admits that Organogenesis and

Novartis were parties to the Novartis Contracts, and that those documents set forth the terms of

the parties' relationship. No response is required to those allegations purporting to construe and

characterize the Novartis Contracts, which speak for themselves. To the extent any further

response is required, Mr. Tuck denies that Paragraph 5 completely and accurately construes and

characterizes the Novartis Contracts and the parties' relationship as set forth therein. Mr. Tuck

lacks personal knowledge or information sufficient to form a belief as to the truth of the

allegations concerning representations allegedly made after he left the Company on June 15,

2000, and on that basis denies them. Mr. Tuck otherwise denies each and every allegation in

Paragraph 5.[1]

6.      With respect to Paragraph 6, Mr. Tuck admits that the Company issued public

statements and public filings related to its Apligraf product, the Company's funding and the

Company's business plan. Mr. Tuck lacks personal knowledge or information sufficient to form

a belief as to the truth of the allegations concerning the statements of unidentified "defendants,"

---

[1] With respect to footnote 1, Mr. Tuck lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning contracts allegedly made between Organogenesis and Novartis after he left the Company on June 15, 2000. No response is required to the allegations of that footnote, which consists of plaintiffs' characterization of "'put' options." To the extent any further response is required, Mr. Tuck otherwise denies each and every allegation in footnote 1.

and on that basis denies them.  Mr. Tuck further states that no response is required to those allegations purporting to construe and characterize unidentified public statements, which speak for themselves.  Mr. Tuck denies that Paragraph 6 accurately and completely construes and characterizes such statements.  Mr. Tuck lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning representations allegedly made after he left the Company on June 15, 2000, and on that basis denies them.  Mr. Tuck otherwise denies each and every allegation in Paragraph 6.

7.     With respect to Paragraph 7, Mr. Tuck lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning the information purportedly obtained through any investigation by plaintiffs' counsel or their representatives, and on that basis denies them.  Mr. Tuck further lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning events allegedly occurring after he left the Company on June 15, 2000, and on that basis denies them.  Mr. Tuck otherwise denies each and every allegation in Paragraph 7.

8.     With respect to Paragraph 8, Mr. Tuck lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning representations allegedly made after he left the Company on June 15, 2000, and on that basis denies them.  Mr. Tuck otherwise denies each and every allegation in Paragraph 8.

9.     With respect to Paragraph 9, Mr. Tuck lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning representations allegedly made after he left the Company on June 15, 2000, and on that basis denies them.  Mr. Tuck otherwise denies each and every allegation in Paragraph 9.

10.     With respect to Paragraph 10, Mr. Tuck admits that, following the close of the putative Class Period, Organogenesis initiated a bankruptcy proceeding in the United States Bankruptcy Court for the District of Massachusetts, Eastern Division.  No response is required to those allegations concerning the facts or proceedings of the bankruptcy, which are set forth in court papers filed and orders entered in that proceeding, which speak for themselves.  Mr. Tuck further states that he lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning events allegedly occurring after he left the Company on June 15, 2000, and on that basis denies them.  Mr. Tuck otherwise denies each and every allegation in Paragraph 10.

11.     With respect to Paragraph 11, Mr. Tuck lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning representations allegedly made after he left the Company on June 15, 2000, and on that basis denies them.  Mr. Tuck denies each and every allegation in Paragraph 11.

12.     With respect to Paragraph 12, no response is required to the allegations of that paragraph, which are not directed to Mr. Tuck, and which concern the purported actions of non-party PricewaterhouseCoopers.  To the extent a response is required, Mr. Tuck admits that PricewaterhouseCoopers served as Organogenesis' independent auditor from the inception of the putative Class Period through at least June 15, 2000.  Mr. Tuck lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning PricewaterhouseCoopers after he left the Company on June 15, 2000, and on that basis denies them.  Mr. Tuck further lacks personal knowledge or information sufficient to form a belief as to the allegations concerning the purported conduct or beliefs of PricewaterhouseCoopers, and on that basis denies them.  Mr. Tuck otherwise denies each and every allegation in Paragraph 12.

With respect to Paragraph 12(a), no response is required to the allegations of that paragraph, which are not directed to Mr. Tuck, and which concern the purported actions of non-party PricewaterhouseCoopers.  To the extent a response is required, Mr. Tuck lacks personal knowledge or information sufficient to form a belief as to the allegations concerning the purported conduct or beliefs of PricewaterhouseCoopers, and on that basis denies them.  Mr. Tuck further lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning events allegedly occurring after he left the Company on June 15, 2000, and on that basis denies them.  Mr. Tuck otherwise denies each and every allegation in Paragraph 12(a).

With respect to Paragraph 12(b), no response is required to the allegations of that paragraph, which are not directed to Mr. Tuck, and which concern the purported actions of non-party PricewaterhouseCoopers.  To the extent a response is required, Mr. Tuck admits that PricewaterhouseCoopers served as Organogenesis' independent auditor from the inception of the putative Class Period through at least June 15, 2000, and thus certified and audited the Company's financial statements during the putative Class Period, as set forth in the 1999 Form 10-K, filed March 30, 2000, which speaks for itself.  Mr. Tuck lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning PricewaterhouseCoopers after he left the Company on June 15, 2000, and on that basis denies them.  Mr. Tuck further lacks personal knowledge or information sufficient to form a belief as to the allegations concerning the purported conduct or beliefs of PricewaterhouseCoopers, and on that basis denies them.  Mr. Tuck otherwise denies each and every allegation in Paragraph 12(b).

With respect to Paragraph 12(c), no response is required to the allegations of that paragraph, which are not directed to Mr. Tuck, and which concern the purported actions of non-

party PricewaterhouseCoopers. To the extent a response is required, Mr. Tuck lacks personal knowledge or information sufficient to form a belief as to the allegations concerning the purported conduct or beliefs of PricewaterhouseCoopers, and on that basis denies them. Mr. Tuck further lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning representations allegedly made after he left the Company on June 15, 2000, and on that basis denies them. No response is required to the allegations in footnote 2, which consist of plaintiffs' legal conclusions and characterizations of the term "comfort letter." Mr. Tuck otherwise denies each and every allegation in Paragraph 12(c).

With respect to Paragraph 12(d), no response is required to the allegations of that paragraph, which are not directed to Mr. Tuck, and which concern the purported actions of non-party PricewaterhouseCoopers. To the extent a response is required, Mr. Tuck lacks personal knowledge or information sufficient to form a belief as to the allegations concerning the purported conduct or beliefs of PricewaterhouseCoopers, and on that basis denies them. Mr. Tuck lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning representations allegedly made after he left the Company on June 15, 2000, and on that basis denies them. Mr. Tuck otherwise denies each and every allegation in Paragraph 12 (d).

13.    With respect to Paragraph 13, Mr. Tuck lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning events allegedly occurring after he left the Company on June 15, 2000, and on that basis denies them. No response is required to those allegations concerning plaintiffs' opinion as to when an alleged "going concern opinion" "should have" been issued, which consist of legal conclusions. Mr. Tuck otherwise denies each and every allegation in Paragraph 13.

14.     With respect to Paragraph 14, Mr. Tuck lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning public filings allegedly made after he left the Company on June 15, 2000, and on that basis denies them.  Mr. Tuck otherwise denies each and every allegation in Paragraph 14.

15.     With respect to Paragraph 15, Mr. Tuck lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning Organogenesis' alleged stock price after he left the Company on June 15, 2000, and on that basis denies them.  Mr. Tuck admits that on March 7, 2000, Organogenesis' stock price reached an intra-day price as high as $22.00, but denies that it closed at this price.  Mr. Tuck otherwise denies each and every allegation in Paragraph 15.

16.     With respect to Paragraph 16, Mr. Tuck admits that, following the close of the putative Class Period, Organogenesis initiated a bankruptcy proceeding in the United States Bankruptcy Court for the District of Massachusetts, Eastern Division.  No response is required to those allegations concerning the facts or proceedings of the bankruptcy, which are set forth in court papers filed and orders entered in that proceeding, which speak for themselves.  Mr. Tuck further states that he lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning events allegedly occurring after he left the Company on June 15, 2000, and on that basis denies them.  Mr. Tuck otherwise denies each and every allegation in Paragraph 16.

17.     With respect to Paragraph 17, no response is required to the allegations of that paragraph, which consist of legal conclusions.  To the extent a response is required, Mr. Tuck admits that plaintiffs purport to bring claims pursuant to Sections 10(b) and 20(a) of the Exchange Act [15 U.S.C. §§ 78j(b) and 78t(a)] and Rule 10b-5 promulgated thereunder by the

SEC [17 C.F.R. §240.10b-5]. Mr. Tuck otherwise denies each and every allegation in Paragraph 17.

18.    With respect to Paragraph 18, no response is required to the allegations of that paragraph, which consist of legal conclusions regarding this Court's jurisdiction. To the extent a response is required, Mr. Tuck denies each and every allegation in Paragraph 18.

19.    With respect to Paragraph 19, no response is required to the allegations in the first sentence of that paragraph, which consist of legal conclusions with respect to venue. Mr. Tuck admits that during the putative Class Period Organogenesis maintained its principal place of business in this District, but otherwise denies the allegations in the second sentence in Paragraph 19. Mr. Tuck lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning events allegedly occurring after he left the Company on June 15, 2000, and on that basis denies them. Mr. Tuck otherwise denies each and every allegation in Paragraph 19.

20.    With respect to Paragraph 20, no response is required to the allegations of Paragraph 20, which consist of legal conclusions. To the extent a response is required, Mr. Tuck denies each and every allegation in Paragraph 20.

21.    With respect to Paragraph 21, Mr. Tuck admits that the Court appointed Bruno Hofmann, John H. Bowie, Jr., Richard Madigan and Richard Conen as Lead Plaintiffs by an Order dated July 20, 2004. Mr. Tuck specifically denies that any person or entity acquired Organogenesis stock at artificially inflated prices or that any person or entity was damaged during the portion of the putative Class Period in which he was employed by Organogenesis. Mr. Tuck otherwise denies each and every allegation in Paragraph 21.

22.    With respect to Paragraph 22, Mr. Tuck admits that, during the purported Class Period, Organogenesis was a Delaware corporation with its principal place of business at 150 Dan Road, Canton, Massachusetts 02021, and that, during the putative Class Period, Organogenesis designed, manufactured and sold medical products containing living cells and/or natural connective tissue, including living tissue replacements, cell-based organ asset devices and other tissue-engineered products.  Mr. Tuck further admits that for a portion of the putative Class Period, Apligraf was the only product containing living human cells to have gained U.S. Food and Drug Administration ("FDA") PMA and marketing approval in the United States.  Mr. Tuck lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations relating to the activities or marketing efforts of non-party Organogenesis after he left the Company on June 15, 2000, and on that basis denies them.  Mr. Tuck otherwise denies each and every allegation in Paragraph 22.

23.    With respect to Paragraph 23, Mr. Tuck admits that at certain points during the putative Class Period, non-party Novartis held shares of Organogenesis stock, but states that he lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning Novartis' ownership of Organogenesis' stock, or the parties' relationship, after he left the Company on June 15, 2000, and on that basis denies them.  Mr. Tuck further admits that, during the putative Class Period, Novartis was a pharmaceutical company, and that Organogenesis and Novartis were parties to the Novartis Contracts, which set forth the terms of the parties' relationship.  No response is required to the allegations of Paragraph 23 that purport to construe and characterize the Novartis Contracts, the terms of which speak for themselves.  To the extent a response to these allegations is required, Mr. Tuck denies that Paragraph 23 completely and accurately construes and characterizes the Novartis Contracts and the parties'

relationship as set forth therein.  Mr. Tuck lacks personal knowledge or information sufficient to form a belief as to the allegations concerning Novartis' business operations in the United States, the origins of those operations, and the extent of those operations in the United States.  Mr. Tuck otherwise denies each and every allegation in Paragraph 23.

24.    With respect to Paragraph 24, Mr. Tuck denies that PricewaterhouseCoopers remains a defendant in this action.  Mr. Tuck admits that, from the inception of the putative Class Period through at least June 15, 2000, PricewaterhouseCoopers was the independent auditor of the Company.  Mr. Tuck lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning PricewaterhouseCoopers allegedly occurring after he left the Company on June 15, 2000, and on that basis denies them.

25.    With respect to Paragraph 25, Mr. Tuck admits that Mr. Laughlin served as President, Director, and member of the Executive Committee of Organogenesis at various times from on or about October 5, 1999 through at least June 15, 2000.  Mr. Tuck further admits that on or about January 1, 2000, Mr. Laughlin assumed the role of Chief Executive Officer of the Company.  Mr. Tuck further admits that Mr. Laughlin signed some, but not all, of the Company's SEC filings during the putative Class Period, and states that those documents speak for themselves.  Mr. Tuck denies that Paragraph 25 completely and accurately construes and characterizes those documents.  Mr. Tuck lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning Mr. Laughlin's alleged continued employment with Organogenesis after he left the Company on June 15, 2000, and on that basis denies them.  Mr. Tuck otherwise denies each and every allegation in Paragraph 25.

26.    With respect to Paragraph 26, Mr. Tuck admits that during the putative Class Period, Michael Sabolinski, M.D. ("Dr. Sabolinski") served as the Company's Senior Vice

President, Medical and Regulatory Affairs. Mr. Tuck lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning Dr. Sabolinski's alleged continued employment with Organogenesis after he left the Company on June 15, 2000, and on that basis denies them. Mr. Tuck otherwise denies each and every allegation in Paragraph 26.

27.     With respect to Paragraph 27, Mr. Tuck admits that during the putative Class Period, Mr. Erani served as a member of the Board of the Company, and on or about January 1, 2000, assumed the role of Chairman of the Board. Mr. Tuck lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning Mr. Erani's continued relationship with Organogenesis after he left the Company on June 15, 2000, and on this basis denies them. Mr. Tuck admits that Mr. Erani signed some, but not all, of the Company's SEC filings during the putative Class Period, and states that those documents speak for themselves. Mr. Tuck denies that Paragraph 27 completely and accurately construes and characterizes those documents. Mr. Tuck otherwise denies each and every allegation in Paragraph 27.

28.     With respect to Paragraph 28, Mr. Tuck denies that Mr. Ades remains a defendant in this action, as he was dismissed by an Order of this Court dated July 20, 2005. Mr. Tuck lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning Mr. Ades, who allegedly began his employment with Organogenesis after he left the Company on June 15, 2000, and on that basis denies them. Mr. Tuck further lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning events that allegedly occurred after he left the Company on June 15, 2000, and on that basis denies them. Mr. Tuck otherwise denies each and every allegation in Paragraph 28.

29.    With respect to Paragraph 29, Mr. Tuck admits that Ms. Donna Abelli Lopolito ("Ms. Lopolito") served as Chief Financial Officer and Vice President, Finance and Administration of Organogenesis between on or about March 1, 1996 and April 30, 2000.  Mr. Tuck denies that Ms. Lopolito served in such capacities during any other portion of the putative Class Period, or any time thereafter.  Mr. Tuck admits that Ms. Lopolito signed some, but not all, of the Company's SEC filings during the putative Class Period, and states that those documents speak for themselves.  Mr. Tuck denies that Paragraph 29 completely and accurately construes and characterizes those documents.  Mr. Tuck otherwise denies each and every allegation in Paragraph 29.

30.    With respect to Paragraph 30, Mr. Tuck admits that Mr. Arcari served as Chief Financial Officer and Vice President, Finance and Administration of Organogenesis from April 30, 2000 until at least June 15, 2000.  Mr. Tuck lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning Mr. Arcari's continued employment with Organogenesis after he left the Company on June 15, 2000.  Mr. Tuck admits that Mr. Arcari signed some, but not all, of the Company's SEC filings during the putative Class Period, and states that those documents speak for themselves.  Mr. Tuck denies that Paragraph 30 completely and accurately construes and characterizes those documents.  Mr. Tuck otherwise denies each and every allegation in Paragraph 30.

31.    With respect to Paragraph 31, Mr. Tuck admits that Mr. Herbert M. Stein ("Mr. Stein") served as Chairman of the Board and Chief Executive Officer of Organogenesis until his retirement from these positions on January 1, 2000.  Mr. Tuck further admits that, after Mr. Stein's retirement, Mr. Stein remained as a member of the Board and Chairman Emeritus until the Company announced his resignation from the Board on or about March 13, 2000.  Mr.

Tuck admits that, during the putative Class Period, Mr. Stein's electronic signature appears on certain of the Company's SEC filings, including Organogenesis' Form 10-Q for the third quarter of 1999, and certain Registration Statements issued in connection with the sale and offering of stock by the Company, including Registration Statements filed on December 27, 1999, an amended Registration Statement filed on February 3, 2000, and a second amended Registration filed on February 14, 2000, and states that those documents speak for themselves. Mr. Tuck denies that Paragraph 31 completely and accurately construes and characterizes those documents. Mr. Tuck otherwise denies each and every allegation in Paragraph 31.

32.    With respect to Paragraph 32, Mr. Tuck admits that he served as Chief Strategic Officer of the Company at the inception of the putative Class Period and left the Company on June 15, 2000, but denies that he served in such capacities during any other portion of the putative Class Period, or any time thereafter. Mr. Tuck otherwise denies each and every allegation in Paragraph 32.

33.    With respect to Paragraph 33, no response is required to the allegations of Paragraph 33, which purport to describe and construe the allegations of the Complaint.

34.    With respect to Paragraph 34, Mr. Tuck admits that, during a portion the putative Class Period, he was employed at Organogenesis, and during a portion of the putative Class Period served as an officer of the Company. Mr. Tuck denies that he held a director position during the putative Class Period, and further denies that he held an officer position during the entire putative Class Period. Mr. Tuck incorporates by reference his response to Paragraph 32. Mr. Tuck admits that at certain times, upon request and to the extent consistent with his role, he had access to certain internal corporate documents, spoke to other corporate personnel, attended management and Board of Director meetings and committees thereof and had access to certain

reports and other information provided to them in connection therewith. Mr. Tuck presently is without personal knowledge or information sufficient to form a belief as to the specific materials he allegedly received and when. Mr. Tuck lacks personal knowledge or information sufficient to form a belief as to the truth of allegations concerning what documents any other unidentified "[i]ndividual [d]efendants" may have received and when they might have received them, and on that basis denies them. Mr. Tuck otherwise denies each and every allegation in Paragraph 34.

35.    With respect to Paragraph 35, no response is required to those allegations which consist of plaintiffs' legal conclusions as to whether defendants in this action may be treated as a "group" for pleading purposes, but to the extent a response is required, Mr. Tuck denies those allegations. Mr. Tuck admits that he held the position set forth in Paragraph 32, and he incorporates by reference his response to that paragraph and Paragraph 34. Mr. Tuck further admits that he performed in good faith the position he held at Organogenesis during the putative Class Period, and that, at various times, he was involved with certain operations and/or business activities of Organogenesis consistent with his position. Mr. Tuck otherwise denies each and every allegation in Paragraph 35.

36.    With respect to Paragraph 36, no response is required to the allegations of Paragraph 36 concerning plaintiffs' characterizations of defendants' legal duties or alleged violations thereof, which consist of legal conclusions. To the extent a response is required, Mr. Tuck denies those allegations. Mr. Tuck admits that during the putative Class Period, he held a position at Organogenesis as set forth in Paragraph 32, which he incorporates by reference herein. He further admits that, during the putative Class Period, Organogenesis stock was traded on the American Stock Exchange ("AMEX"), and governed by the provisions of the federal securities laws. Mr. Tuck denies that he is now an officer of the reorganized Company, and

further states that he lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning Organogenesis' current status as a publicly-held company and current listing on the AMEX.  Mr. Tuck otherwise denies each and every allegation in Paragraph 36.

37.     With respect to Paragraph 37, Mr. Tuck admits that during the putative Class Period he and others participated in good faith in the preparation of various public communications made by Organogenesis to the extent appropriate to his position, but otherwise is presently without personal knowledge or information sufficient to form a belief as to which communications he drafted, prepared and/or approved, or when he did so.  Mr. Tuck otherwise denies each and every allegation in Paragraph 37.

38.     With respect to Paragraph 38, Mr. Tuck admits that at various times during the putative Class Period, he received copies of various materials that Organogenesis filed with the SEC, press releases, and other public statements related to the Company, but is presently without personal knowledge or information sufficient to form a belief as to which documents he received, or when.  Mr. Tuck lacks personal knowledge or information sufficient to form a belief as to the truth of plaintiff's non-specific allegations concerning unidentified documents or "public reports" or "releases" he or any other unidentified "[i]ndividual [d]efendant[s]" may have received and when they might have received them, and on that basis denies them.  Mr. Tuck otherwise denies each and every allegation in Paragraph 38.

39.     With respect to Paragraph 39, Mr. Tuck denies each and every allegation in Paragraph 39.

40.     With respect to Paragraph 40, no response is required to the allegations in this paragraph, which consist of legal conclusions and plaintiffs' characterization of this action, and

which do not purport to require a response from Mr. Tuck.  To the extent that this paragraph

purports to contain factual allegations requiring a response, Mr. Tuck admits that plaintiffs assert

that this is a putative class action pursuant to Federal Rules of Civil Procedure 23(a) and (b)(3)

on behalf of a purported class.  Mr. Tuck denies that he engaged in any unlawful or improper

conduct, denies that plaintiffs or members of the purported class were damaged, and denies this

action may be properly maintained as a class action.  Mr. Tuck lacks personal knowledge or

information sufficient to form a belief as to the truth of each and every other allegation contained

in Paragraph 40, and on that basis denies them.

41.     With respect to Paragraph 41, no response is required to the allegations in this

paragraph, which consist of legal conclusions and plaintiffs' characterization of this action, and

which do not purport to require a response from Mr. Tuck.  To the extent a response is required,

Mr. Tuck lacks personal knowledge or information sufficient to form a belief as to the truth of

the allegations concerning Organogenesis' securities after he left the Company on June 15, 2000,

and on this basis denies them.  Mr. Tuck otherwise denies each and every allegation in

Paragraph 41.

42.     With respect to Paragraph 42, no response is required to the allegations in this

paragraph, which consist of legal conclusions and plaintiffs' characterization of this action, and

which do not purport to require a response from Defendants.  To the extent that this paragraph

purports to contain factual assertions requiring a response, Mr. Tuck denies each and every

allegation in Paragraph 42.

43.     With respect to Paragraph 43, no response is required to the allegations in this

paragraph, which consist of legal conclusions and plaintiffs' characterization of this action, and

which do not purport to require a response from Defendants.  To the extent that this paragraph

purports to contain factual assertions requiring a response, Mr. Tuck denies each and every allegation in Paragraph 43.

44.    With respect to Paragraph 44 and all of its subparts, no response is required to the allegations in this paragraph, which consist of legal conclusions and plaintiffs' characterization of this action, and which do not purport to require a response from Defendants.  To the extent that this paragraph purports to contain factual assertions requiring a response, Mr. Tuck denies each and every allegation in Paragraph 44.

45.    With respect to Paragraph 45, no response is required to the allegations in this paragraph, which consist of legal conclusions and plaintiffs' characterization of this action, and which do not purport to require a response from Defendants.  To the extent that this paragraph purports to contain factual assertions requiring a response, Mr. Tuck denies each and every allegation in Paragraph 45.

46.    With respect to Paragraph 46, Mr. Tuck admits that Organogenesis was organized as a Delaware corporation in 1985, and from the inception of the putative Class Period through at least June 15, 2000, described itself as a "tissue engineering firm" that designs, develops and manufactures medical products containing living human cells and natural connective tissue.  Mr. Tuck lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning representations Organogenesis allegedly made after he left the Company on June 15, 2000.  Mr. Tuck otherwise denies each and every allegation in Paragraph 46.

47.    With respect to Paragraph 47, Mr. Tuck lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations relating to how plaintiffs believe Organogenesis "appeared" to others, and on that basis denies them.  Ms. Tuck admits that Organogenesis manufactured Apligraf, and that certain lots of the product were voluntarily

-19-

recalled in 1999.  Mr. Tuck presently lacks personal knowledge or information sufficient to form

a belief as to the truth of the allegations that such recalls were for contamination reasons, and

that such recalls accounted for more than 10% of monthly production at the time, and on that

basis denies them.  Mr. Tuck lacks personal knowledge or information sufficient to form a belief

as to the truth of the allegations concerning approval of Medicare or Medicaid reimbursement of

Apligraf that allegedly occurred after she left the Company on June 15, 2000.  Mr. Tuck

otherwise denies each and every allegation in Paragraph 47.

48.    With respect to Paragraph 48, Mr. Tuck admits that Organogenesis filed a Form

10-K with the SEC on March 31, 1999, which speaks for itself.  Mr. Tuck presently lacks

personal knowledge or information sufficient to form a belief as to the allegations concerning

actual Apligraf sales, and whether those sales fell below the non-specified "guidance" set forth in

Paragraph 48, and on that basis denies them.  Mr. Tuck otherwise denies each and every

allegation in Paragraph 48.

49.    With respect to Paragraph 49, no response is required to the allegations that

purport to quote the view of an investment analyst employed by non-party Moors & Cabot, Inc.

in an April 1999 edition of the *Boston Business Journal*, which speaks for itself.  Mr. Tuck

otherwise denies each and every allegation in Paragraph 49.

50.    With respect to Paragraph 50, Mr. Tuck admits that during the putative Class

Period, the Company issued various public statements and public filings addressing the financial

position of the Company and disclosing its need for additional funding.  Mr. Tuck states that

these documents speak for themselves.  Mr. Tuck denies that Paragraph 50 completely and

accurately construes and characterizes those documents, and denies that the Company issued

"aggressive predictions" or made other projections as represented in Paragraph 50.  Mr. Tuck

presently lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning representations allegedly made after he left the Company on June 15, 2000, and on that basis denies them. Mr. Tuck otherwise denies each and every allegation in Paragraph 50.

51.     With respect to Paragraph 51, Mr. Tuck denies that the Company filed a Form 10-K with the SEC on March 29, 2000, but admits that Organogenesis filed a Form 10-K for 1999 with the SEC on or about March 30, 2000. No further response is required to the remaining allegations of Paragraph 51, which purport to construe, paraphrase and excerpt that document, which speaks for itself. To the extent any further response is required, Mr. Tuck denies that Paragraph 51 completely and accurately construes, paraphrases and excerpts that document. Mr. Tuck presently lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning representations allegedly made after he left the Company on June 15, 2000, and on that basis denies them. Mr. Tuck otherwise denies each and every allegation in Paragraph 51.

52.     With respect to Paragraph 52, no response is required to the allegations of Paragraph 52 which purport to construe, paraphrase, and excerpt unidentified filings or statements, which speak for themselves. To the extent a response is required, Mr. Tuck admits that Organogenesis filed various statements with the SEC during the Class Period, but denies that Paragraph 52 completely and accurately construes and excerpts any such documents. Mr. Tuck lacks personal knowledge or information sufficient to form a belief as to the truth of allegations concerning unidentified "statements" made in unidentified "fil[ings] with the SEC" or elsewhere by unidentified "defendants," which are not sufficiently identified in Paragraph 52, and on that basis denies them. Mr. Tuck presently lacks personal knowledge or information sufficient to

form a belief as to the truth of the allegations concerning representations allegedly made after he

left the Company on June 15, 2000, and on that basis denies them.  Mr. Tuck otherwise denies

each and every allegation in Paragraph 52.

53.    With respect to Paragraph 53, Mr. Tuck lacks personal knowledge or information

sufficient to form a belief as to the truth of the allegations regarding what investors "believe" or

what plaintiffs assert they were "led to believe," and on that basis denies them.  No response is

required to the remaining allegations of Paragraph 53, which purport to construe and paraphrase

unidentified "report[s]" or statements by the Company, which speak for themselves if they exist.

Mr. Tuck admits that Organogenesis and Novartis were parties to the Novartis Contracts.  No

further response is required to the allegations purporting to construe and excerpt the Novartis

Contracts, which speak for themselves.  To the extent any further response is required, Mr. Tuck

denies that Paragraph 53 completely and accurately construes and excerpts the Novartis

Contracts and the parties' relationship as set forth therein.  Mr. Tuck presently lacks personal

knowledge or information sufficient to form a belief as to the truth of the allegations concerning

representations allegedly made after he left the Company on June 15, 2000, and on that basis

denies them.  Mr. Tuck otherwise denies each and every allegation in Paragraph 53.

54.    With respect to Paragraph 54 and footnote 3, Mr. Tuck admits that Organogenesis

issued a press release on November 15, 1999, regarding FDA PMA approval of its Apligraf

product, which speaks for itself.  Mr. Tuck further admits that Organogenesis discussed the

Apligraf product and revenue therefrom in certain of its public statements during the putative

class period, but denies that Paragraph 54 accurately construes and paraphrases any such

documents.  Mr. Tuck presently lacks personal knowledge or information sufficient to form a

belief as to the truth of the allegations concerning Apligraf and revenues therefrom that allegedly

-22-

occurred after he left the Company on June 15, 2000, and on that basis denies them.  Mr. Tuck

otherwise denies each and every allegation in Paragraph 54.

55.     With respect to Paragraph 55, Mr. Tuck admits that by the inception of the

putative Class Period, the FDA had approved Apligraf for marketing in the United States for the

treatment of venous leg ulcers, and FDA approval of Apligraf for diabetic leg ulcers was being

pursued.  Mr. Tuck admits that Apligraf was a registered trademark of Novartis during the

putative Class Period, and that Novartis marketed Apligraf during the putative Class Period,

pursuant to the terms of the Novartis Contracts.  No response is required to the allegations of

Paragraph 55 that purport to construe and characterize the Novartis Contracts, the terms of which

speak for themselves.  To the extent a response to these allegations is required, Mr. Tuck denies

that Paragraph 55 completely and accurately construes and characterizes the Novartis Contracts

and the parties' relationship as set forth therein.  Mr. Tuck presently lacks personal knowledge or

information sufficient to form a belief as to the truth of the allegations concerning

representations allegedly made after he left the Company on June 15, 2000, and on that basis

denies them.  Mr. Tuck otherwise denies each and every allegation in Paragraph 55.

56.     With respect to Paragraph 56, Mr. Tuck admits that during the putative Class

Period non-party Novartis held shares of Organogenesis stock, but states that he lacks personal

knowledge or information sufficient to form a belief as to the truth of the allegations concerning

Novartis' ownership of Organogenesis' stock, or the parties' relationship, after he left the

Company on June 15, 2000, and on that basis denies them.  Mr. Tuck admits that Organogenesis

and Novartis were parties to the Novartis Contracts, which set forth the terms of the parties'

relationship.  No response is required to the allegations of Paragraph 56 that purport to construe

and characterize the Novartis Contracts, the terms of which speak for themselves.  To the extent

a response to these allegations is required, Mr. Tuck denies that Paragraph 56 completely and accurately construes and characterizes the Novartis Contracts and the parties' relationship as set forth therein. Mr. Tuck otherwise denies each and every allegation in Paragraph 56.

57. With respect to Paragraph 57, Mr. Tuck admits that Organogenesis and Novartis were parties to the Novartis Contracts. No response is required to the allegations of Paragraph 57 that purport to construe and characterize the Novartis Contracts, the terms of which speak for themselves. To the extent a response to these allegations is required, Mr. Tuck denies that Paragraph 57 completely and accurately construes and characterizes the Novartis Contracts and the parties' relationship as set forth therein. Mr. Tuck lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning agreements between Novartis and Organogenesis that allegedly occurred after he left the Company on June 15, 2000, and on this basis denies them. Mr. Tuck further lacks personal knowledge or information sufficient to form a belief as to the allegations concerning the knowledge or beliefs of plaintiffs or "investors" and as to the allegations concerning unidentified "defendants," and on that basis denies them. Mr. Tuck otherwise denies each and every allegation in Paragraph 57.

58. With respect to Paragraph 58, no response is required to the allegations of Paragraph 58, which purport to construe and paraphrase unidentified "representations" by Organogenesis or "Defendants," which are too vaguely described to permit a response, and even if identified, speak for themselves. Mr. Tuck lacks personal knowledge or information sufficient to form a belief as to what unidentified "Defendants" may have said, done or "represented" to anyone else, and on that basis denies them. Mr. Tuck further presently lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning

representations allegedly made after he left the Company on June 15, 2000, and on that basis
denies them. Mr. Tuck otherwise denies each and every allegation in Paragraph 58.

59.     With respect to Paragraph 59, Mr. Tuck incorporates by reference his response to
Paragraph 7. Mr. Tuck presently lacks personal knowledge or information sufficient to form a
belief as to the truth of the allegations concerning events allegedly occurring after he left the
Company on June 15, 2000, and on that basis denies them. Mr. Tuck otherwise denies each and
every allegation in Paragraph 59.

60.     With respect to Paragraph 60, Mr. Tuck lacks personal knowledge or information
sufficient to form a belief as to the truth of the allegations concerning the information
purportedly obtained through any investigation by plaintiffs' counsel or their representatives, and
on that basis denies them. Mr. Tuck admits that Organogenesis disclosed its financial results in
various public filings and press releases published during the putative class period, which speak
for themselves. Mr. Tuck denies that Paragraph 60 completely and accurately characterizes,
excerpts and paraphrases such documents, and denies that any information was improperly
withheld. Mr. Tuck presently lacks personal knowledge or information sufficient to form a
belief as to the truth of the allegations concerning events allegedly occurring after he left the
Company on June 15, 2000, and on that basis denies them. Mr. Tuck otherwise denies each and
every allegation in Paragraph 60.

61.     With respect to Paragraph 61, Mr. Tuck lacks personal knowledge or information
sufficient to form a belief as to the truth of the allegations concerning the information
purportedly obtained through any investigation by plaintiffs' counsel or their representatives, and
on that basis denies them. Mr. Tuck further lacks personal knowledge or information sufficient
to form a belief as to the truth of the allegations concerning unidentified "statements" or failures

to disclose by unidentified "defendants," and on that basis denies them. Mr. Tuck admits that Organogenesis disclosed its financial results in various public filings and press releases published during the portion of the putative class period in which he was employed by Organogenesis, which speak for themselves. Mr. Tuck denies that Paragraph 61 completely and accurately characterizes, excerpts and paraphrases such documents, and denies that any information was improperly withheld. Mr. Tuck lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning events allegedly occurring after he left the Company on June 15, 2000, and on that basis denies them. Mr. Tuck otherwise denies each and every allegation in Paragraph 61.

With respect to Paragraph 61(a), Mr. Tuck lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning the information purportedly obtained through any investigation by plaintiffs' counsel or their representatives, and on that basis denies them. No further response is required to the allegations of Paragraph 61(a) that purport to describe, construe and excerpt unidentified statements or documents, which speak for themselves. Mr. Tuck otherwise denies each and every allegation in Paragraph 61(a).

With respect to Paragraph 61(b), Mr. Tuck lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning the information purportedly obtained through any investigation by plaintiffs' counsel or their representatives, and on that basis denies them. Mr. Tuck further lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning unidentified "statements" or failures to disclose by unidentified "defendants," and on that basis denies them. Mr. Tuck admits that Organogenesis disclosed its financial results in various public filings and press releases published during the putative class period, which speak for themselves. Mr. Tuck denies that

Paragraph 61(b) completely and accurately characterizes, excerpts and paraphrases such documents, and denies that any information was improperly withheld.  Mr. Tuck otherwise denies each and every allegation in Paragraph 61(b).

With respect to Paragraph 61(c), Mr. Tuck lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning the information purportedly obtained through any investigation by plaintiffs' counsel or their representatives, and on that basis denies them.  Mr. Tuck further lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning unidentified "statements" or failures to disclose by unidentified "defendants," and on that basis denies them.  Mr. Tuck admits that Organogenesis disclosed its financial results in various public filings and press releases published during the putative class period, which speak for themselves.  Mr. Tuck denies that Paragraph 61(c) completely and accurately characterizes, excerpts and paraphrases such documents, and denies that any information was improperly withheld.  Mr. Tuck otherwise denies each and every allegation in Paragraph 61(c).

62.    With respect to Paragraph 62, Mr. Tuck lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning the information purportedly obtained through any investigation by plaintiffs' counsel or their representatives, and on that basis denies them.  Mr. Tuck presently lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning events allegedly occurring after he left the Company on June 15, 2000, and on that basis denies them.  Mr. Tuck further denies that any information was improperly withheld, and otherwise denies each and every allegation in Paragraph 62.

With respect to Paragraph 62(a), Mr. Tuck lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning the information purportedly obtained through any investigation by plaintiffs' counsel or their representatives, and on that basis denies them.  Mr. Tuck presently lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning events allegedly occurring after he left the Company on June 15, 2000, and on that basis denies them.  Mr. Tuck otherwise denies each and every allegation in Paragraph 62(a).

With respect to Paragraph 62(b), Mr. Tuck lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning the information purportedly obtained through any investigation by plaintiffs' counsel or their representatives, and on that basis denies them.  Mr. Tuck presently lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning events allegedly occurring after he left the Company on June 15, 2000, and on that basis denies them.  Mr. Tuck otherwise denies each and every allegation in Paragraph 62(b).

With respect to Paragraph 62(c), Mr. Tuck lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning the information purportedly obtained through any investigation by plaintiffs' counsel or their representatives, and on that basis denies them.  Mr. Tuck presently lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning events allegedly occurring after he left the Company on June 15, 2000, and on that basis denies them.  Mr. Tuck otherwise denies each and every allegation in Paragraph 62(c).

With respect to Paragraph 62(d), Mr. Tuck lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning the information

purportedly obtained through any investigation by plaintiffs' counsel or their representatives, and on that basis denies them. Mr. Tuck presently lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning events allegedly occurring after he left the Company on June 15, 2000, and on that basis denies them. Mr. Tuck otherwise denies each and every allegation in Paragraph 62(d).

63. With respect to Paragraph 63, Mr. Tuck lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning the information purportedly obtained through any investigation by plaintiffs' counsel or their representatives, and on that basis denies them. Mr. Tuck presently lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning events allegedly occurring after he left the Company on June 15, 2000, and on that basis denies them. Mr. Tuck otherwise denies each and every allegation in Paragraph 63.

64. With respect to Paragraph 64, Mr. Tuck lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning the information purportedly obtained through any investigation by plaintiffs' counsel or their representatives, and on that basis denies them. Mr. Tuck further lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning whether unidentified "defendants" were aware of such alleged facts, and on that basis denies them. Mr. Tuck denies that any information was improperly withheld, and otherwise denies each and every allegation in Paragraph 64.

65. With respect to Paragraph 65, Mr. Tuck lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning the information purportedly obtained through any investigation by plaintiffs' counsel or their representatives, and

on that basis denies them.  Mr. Tuck further lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning unidentified "representations" by unidentified "defendants," and on that basis denies them.  Mr. Tuck presently lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning events allegedly occurring after he left the Company on June 15, 2000, and on that basis denies them.  Mr. Tuck otherwise denies each and every allegation in Paragraph 65.

66.     With respect to Paragraph 66, Mr. Tuck lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning the information purportedly obtained through any investigation by plaintiffs' counsel or their representatives, and on that basis denies them.  Mr. Tuck presently lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning events allegedly occurring after he left the Company on June 15, 2000, and on that basis denies them.  Mr. Tuck otherwise denies each and every allegation in Paragraph 66.

67.     With respect to Paragraph 67, Mr. Tuck lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning the information purportedly obtained through any investigation by plaintiffs' counsel or their representatives, and on that basis denies them.  Mr. Tuck further lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning the "motivat[ions]" of unidentified "defendants," and on that basis denies them.  Mr. Tuck presently lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning events allegedly occurring after he left the Company on June 15, 2000, and on that basis denies them.  Mr. Tuck otherwise denies each and every allegation in Paragraph 67.

68.    With respect to Paragraph 68, Mr. Tuck admits that the purported Class Period begins on November 15, 1999.  Mr. Tuck further admits that on November 15, 1999 Organogenesis published a release on *Business Wire* announcing financial results for the third quarter of 1999, the period ending September 30, 1999, in which Mr. Stein is quoted.  Mr. Tuck denies making any of the statements in the press release.  Mr. Tuck further states that he lacks personal knowledge or information concerning the truth of the allegations related to such release, and on that basis denies them.  No further response is required to the allegations of Paragraph 68 that purport to construe, paraphrase and excerpt the release, which speaks for itself.  Mr. Tuck denies that Paragraph 68 completely and accurately construes, paraphrases and excerpts the release.  Mr. Tuck otherwise denies each and every allegation in Paragraph 68.

69.    With respect to Paragraph 69, Mr. Tuck admits that on December 2, 1999 Organogenesis published a release on *Business Wire* announcing financial results, in which he is quoted.  No further response is required to the allegations of Paragraph 69 that purport to construe and excerpt the release, which speaks for itself.  Mr. Tuck further denies that Paragraph 69 completely and accurately construes and excerpts the release.  Mr. Tuck otherwise denies each and every allegation in Paragraph 69.

70.    With respect to Paragraph 70, Mr. Tuck admits that on November 15, 1999 Organogenesis filed with the SEC its financial results for the third quarter of 1999, the period ended September 30, 1999, pursuant to its Form 10-Q.  Mr. Tuck further admits that the electronic signatures of Mr. Stein and Ms. Lopolito appear on that Form 10-Q.  Mr. Tuck denies making any of the statements in the Form 10-Q.  No further response is required to the extent the allegations of Paragraph 70 purport to construe and excerpt the release, which speaks for itself.

Mr. Tuck denies that Paragraph 70 completely and accurately construes and excerpts the release. Mr. Tuck otherwise denies each and every allegation in Paragraph 70.

71.     With respect to Paragraph 71, Mr. Tuck admits that on November 15, 1999, Organogenesis' stock price reached an intra-day price as low as $6.81 per share, but denies that it closed at that price.  Mr. Tuck further admits that on December 2, 1999, Organogenesis' stock price reached an intra-day price as high as $12.30 per share, but denies that it closed at that price. Mr. Tuck otherwise denies each and every allegation in Paragraph 71.

72.     With respect to Paragraph 72, Mr. Tuck admits that the Company filed with the SEC a Registration Statement on December 27, 1999, and two amended Registration Statements, filed on February 3, 2000 and February 14, 2000, all of which incorporated by reference the Company's Form 10-Q for the third quarter of 1999, and all of which speak for themselves.  Mr. Tuck denies that Paragraph 72 completely and accurately construes and paraphrases those documents.   Mr. Tuck otherwise denies each and every allegation in Paragraph 72.

73.     With respect to Paragraph 73, Mr. Tuck admits that in January 2000, Mr. Laughlin presented at the Hambrecht & Quist 18th Annual Healthcare Conference in San Francisco, California.  Mr. Tuck presently lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning the precise date of the conference or the content of Mr. Laughlin's  presentation and the purported "beliefs" of any investor(s), and on that basis denies them.  Mr. Tuck denies that on January 14, 2000, Mr. Laughlin provided an interview to *The Wall Street Transcript*, but admits that such an interview took place on January 13, 2000.  No further response is required to the extent the allegations of Paragraph 73 purport to construe and excerpt the transcript thereof, which speaks for itself.  Mr. Tuck denies

that Paragraph 73 completely and accurately construes and excerpts the transcript.  Mr. Tuck

otherwise denies each and every allegation in Paragraph 73.

74.    With respect to Paragraph 74, Mr. Tuck admits that on or about February 14,

2000, the Company filed a Form 10-Q/A with the SEC, but denies that it amended its financial

results.  Mr. Tuck further admits that the electronic signatures of Ms. Lopolito and Mr. Laughlin

appear on the Form 10-Q/A.  Mr. Tuck denies making any of the statements in the Form 10-Q/A.

No further response is required to the extent the allegations of Paragraph 74 purport to construe

and excerpt the Form 10-Q/A, which speaks for itself.  Mr. Tuck denies that Paragraph 74

completely and accurately construes and excerpts the Form 10-Q/A.  Mr. Tuck otherwise denies

each and every allegation in Paragraph 74.

75.    With respect to Paragraph 75, Mr. Tuck incorporates by reference his response to

Paragraph 74.  No further response is required to the extent the allegations of Paragraph 75

purport to construe and excerpt the Form 10-Q/A, which speaks for itself.  Mr. Tuck denies

making any of the statements in the Form 10-Q/A.  Mr. Tuck denies Paragraph 75 completely

and accurately construes and excerpts the Form 10-Q/A.  Mr. Tuck otherwise denies each and

every allegation in Paragraph 75.

76.    With respect to Paragraph 76, Mr. Tuck lacks personal knowledge or information

sufficient to form a belief as to the truth of any allegations concerning unidentified "statements"

made by unidentified "defendants."  Mr. Tuck admits that the Company issued a press release on

November 15, 1999, but denies that he made any of the statements in the press release.  He

further denies that Paragraph 76 accurately and completely characterizes that press release.  Mr.

Tuck admits that the Company issued a press release on December 2, 1999, and that he is quoted

in such release.  Mr. Tuck denies that Paragraph 76 accurately and completely characterizes that

press release.  Mr. Tuck further denies that he made any of the statements in the Form 10-Q filed on November 15, 1999 or the Form 10-Q/A filed on February 14, 2000.  Mr. Tuck further denies that any press release, public filing or public statement was materially false or misleading.  Mr. Tuck otherwise denies each and every allegation in Paragraph 76.

With respect to Paragraph 76(a), Mr. Tuck incorporates by reference his responses to Paragraphs 59-67.  Mr. Tuck lacks personal knowledge or information sufficient to form a belief as to the truth of any allegations concerning the actions or failures to disclose by unidentified "defendants," and on that basis denies them.  Mr. Tuck otherwise denies each and every allegation in Paragraph 76(a).

With respect to Paragraph 76(b), Mr. Tuck lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning the information purportedly obtained through any investigation by plaintiffs' counsel or their representatives, and on that basis denies them.  Mr. Tuck also lacks personal knowledge or information sufficient to form a belief as to the truth of any allegations concerning unspecified "representations" in unidentified documents by unidentified "defendants," and on that basis denies them.  Mr. Tuck otherwise denies each and every allegation in Paragraph 76(b).

With respect to Paragraph 76(c), no response is required to the allegations of Paragraph 76(c) that purport to describe, construe and excerpt unidentified statements or documents, which speak for themselves.  Mr. Tuck further lacks personal knowledge or information sufficient to form a belief as to the truth of any allegations concerning unspecified "representations" by unidentified "defendants," and on that basis denies them.  Mr. Tuck further lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning the information purportedly obtained through any investigation by plaintiffs' counsel or their

representatives, and on that basis denies them.  Mr. Tuck otherwise denies each and every allegation in Paragraph 76(c).

With respect to Paragraph 76(d), no response is required to the allegations of Paragraph 76(d) that purport to describe, construe and excerpt unidentified statements or documents, which speak for themselves.  Mr. Tuck further lacks personal knowledge or information sufficient to form a belief as to the truth of any allegations concerning unspecified "public statements" by unidentified "defendants," and on that basis denies them.  Mr. Tuck further lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning the information purportedly obtained through any investigation by plaintiffs' counsel or their representatives, and on that basis denies them.  Mr. Tuck incorporates by reference his responses to Paragraphs 56-67, and otherwise denies each and every allegation in Paragraph 76(d).

With respect to Paragraph 76(e), no response is required to the allegations of Paragraph 76(e) that purport to describe, construe and excerpt unidentified statements or documents, which speak for themselves.  Mr. Tuck further lacks personal knowledge or information sufficient to form a belief as to the truth of any allegations concerning unspecified "representations" by unidentified "defendants," and on that basis denies them.  Mr. Tuck otherwise denies each and every allegation in Paragraph 76(e).

With respect to Paragraph 76(f), no response is required to the allegations of Paragraph 76(f) that purport to describe, construe and excerpt unidentified statements or documents, which speak for themselves.  Mr. Tuck further lacks personal knowledge or information sufficient to form a belief as to the truth of any allegations concerning unspecified "representations" by unidentified "defendants," and on that basis denies them.  Mr. Tuck further lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning

the information purportedly obtained through any investigation by plaintiffs' counsel or their representatives, and on that basis denies them.  Mr. Tuck incorporates by reference his responses to Paragraphs 56-67, and otherwise denies each and every allegation in Paragraph 76(f).

With respect to Paragraph 76(g), Mr. Tuck further lacks personal knowledge or information sufficient to form a belief as to the truth of any allegations concerning unspecified "representations" by unidentified "defendants," and on that basis denies them.  Mr. Tuck further lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning the information purportedly obtained through any investigation by plaintiffs' counsel or their representatives, and on that basis denies them.  Mr. Tuck incorporates by reference his responses to Paragraphs 59-67, and otherwise denies each and every allegation in Paragraph 76(g).

77.    With respect to Paragraph 77, Mr. Tuck admits that on February 24, 2000, Organogenesis stock price reached an intra-day price as high as $15.625, but denies that it closed at this price.  Mr. Tuck further admits that on February 27, 2000, the Company issued a release on *Business Wire* announcing that Organogenesis had completed the sale of 688,925 shares of common stock for net proceeds of $9.4 million.  Mr. Tuck further denies that Paragraph 77 completely and accurately construes and paraphrases the release, which speaks for itself.  Mr. Tuck otherwise denies each and every allegation of Paragraph 77.

78.    With respect to Paragraph 78, no response is required to the allegations that purport to describe, construe, paraphrase and excerpt unidentified statements or documents, which speak for themselves.  Mr. Tuck admits that on February 24, 2000 the Company issued a release on *Business Wire*, in which he is quoted.  Mr. Tuck lacks personal knowledge or information sufficient to form a belief as to the truth of any allegations concerning the purported

knowledge, actions or statements of other unidentified "Defendants," and on that basis denies

them.  Mr. Tuck further denies that Paragraph 78 completely and accurately construes,

paraphrases and excerpts the press release.  Mr. Tuck otherwise denies each and every allegation

in Paragraph 78.

79.      With respect to Paragraph 79, Mr. Tuck admits that on February 25, 2000, the

Company issued a release announcing that it had raised an additional $1.4 million through the

sale of an additional 100,000 shares.  Mr. Tuck denies that Paragraph 79 completely and

accurately construes, paraphrases and excerpts the release.  Mr. Tuck otherwise denies each and

every allegation in Paragraph 79.

80.      With respect to Paragraph 80, Mr. Tuck denies each and every allegation in

Paragraph 80.

81.      With respect to Paragraph 81, Mr. Tuck denies the allegations contained in the

first sentence of that paragraph.  Mr. Tuck admits that Mr. Stein resigned from his positions as

Chairman and Chief Executive Officer effective January 1, 2000, and accepted the position of

Chairman Emeritus of the Board on January 1, 2000.  Mr. Tuck further admits that the Company

announced Mr. Stein's resignation from that position on or about March 13, 2000.  To the extent

that plaintiffs purport to construe and characterize Mr. Stein's departure, or the reasons therefore,

Mr. Tuck lacks personal knowledge or information sufficient to form a belief as to the truth of

the allegations of Paragraph 81, and on that basis denies them.  Mr. Tuck otherwise denies each

and every allegation in Paragraph 81.

82.      With respect to Paragraph 82, Mr. Tuck admits that on or about March 21, 2000,

Mr. Laughlin presented at the New York Society of Securities Analysts' 4th Annual Health Care

Conference in New York City, and that Mr. Laughlin served as President and CEO of

Organogenesis at that time. Mr. Tuck otherwise denies each and every allegation in Paragraph 82.

83.    With respect to Paragraph 83, Mr. Tuck admits that on March 27, 2000, Organogenesis issued a press release. No further response is required to the extent the allegations of Paragraph 83 purport to construe and paraphrase the release, which speaks for itself. Mr. Tuck denies that Paragraph 83 completely and accurately construes and paraphrases the release, and otherwise denies each and every allegation in Paragraph 83.

84.    With respect to Paragraph 84, Mr. Tuck admits that on March 31, 2000, Organogenesis issued a press release published on *Business Wire* in which Mr. Laughlin is quoted. Mr. Tuck denies making any of the statements in the press release. No further response is required to the extent the allegations of Paragraph 84 purport to construe and excerpt the release, which speaks for itself. Mr. Tuck denies that Paragraph 84 completely and accurately construes and excerpts the release. Mr. Tuck further states that he lacks personal knowledge or information sufficient to form a belief as to the allegations concerning what unidentified "investors" "believe[d]." Mr. Tuck otherwise denies each and every allegation in Paragraph 84.

85.    With respect to Paragraph 85, Mr. Tuck admits that on March 30, 2000, Organogenesis filed with the SEC its financial results for full year 1999, pursuant to a Form 10-K. Mr. Tuck further admits that the electronic signatures of Mr. Erani, Ms. Lopolito and Mr. Laughlin appear on the Form 10-K. Mr. Tuck denies making any of the statements in the Form 10-K. No further response is required to the extent the allegations of Paragraph 85 purport to construe and excerpt the Form 10-K, which speaks for itself. Mr. Tuck denies that Paragraph 85 completely and accurately construes and excerpts the Form 10-K. Mr. Tuck otherwise denies each and every allegation in Paragraph 85.

86.     With respect to Paragraph 86, Mr. Tuck admits that on March 31, 2000, Organogenesis' stock was traded on the open market, and reached an intra-day price as high as $12.625, but denies that it closed at that price.  Mr. Tuck otherwise denies each and every allegation in Paragraph 86.

87.     With respect to Paragraph 87, Mr. Tuck admits that the Company issued a press release on March 31, 2000, and filed a Form 10-K with the SEC for its fiscal year 1999.  Mr. Tuck denies making any of the statements in the press release and Form 10-K, and otherwise denies each and every allegation in Paragraph 87.

With respect to Paragraph 87(a), Mr. Tuck incorporates by reference his responses to Paragraphs 59-67, and otherwise denies each and every allegation in Paragraph 87(a).

With respect to Paragraph 87(b), Mr. Tuck lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning the information purportedly obtained through any investigation by plaintiffs' counsel or their representatives, and on that basis denies them.  No further response is required to the allegations of Paragraph 87(b) that purport to describe, construe and excerpt unidentified statements or documents, which speak for themselves.  Mr. Tuck further lacks personal knowledge or information sufficient to form a belief as to the allegations concerning representations by unidentified "defendants," and on that basis denies them.  Mr. Tuck otherwise denies each and every allegation in Paragraph 87(b).

With respect to Paragraph 87(c), Mr. Tuck lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning the information purportedly obtained through any investigation by plaintiffs' counsel or their representatives, and on that basis denies them.  No further response is required to the allegations of Paragraph 87(c) that purport to describe, construe and excerpt unidentified statements or documents, which speak

for themselves.  Mr. Tuck further lacks personal knowledge or information sufficient to form a belief as to the allegations concerning the unidentified "suggestion[s]," "aware[ness]," or alleged failures to disclose of unidentified "defendants," and on that basis denies them.  Mr. Tuck denies that any information was improperly withheld, and otherwise denies each and every allegation in Paragraph 87(c).

With respect to Paragraph 87(d), Mr. Tuck lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning the information purportedly obtained through any investigation by plaintiffs' counsel or their representatives, and on that basis denies them.  No response to required to the allegations of Paragraph 87(d) that purport to describe, construe and excerpt unidentified statements or documents, which speak for themselves.  Mr. Tuck further lacks personal knowledge or information sufficient to form a belief as to the allegations concerning representations by unidentified "defendants," and on that basis denies them.  Mr. Tuck otherwise denies each and every allegation in Paragraph 87(d).

With respect to Paragraph 87(e), Mr. Tuck lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning the information purportedly obtained through any investigation by plaintiffs' counsel or their representatives, and on that basis denies them.  No further response is required to the allegations of Paragraph 87(e) that purport to describe, construe and excerpt unidentified statements or documents, which speak for themselves.  Mr. Tuck further lacks personal knowledge or information sufficient to form a belief as to the allegations concerning representations by unidentified "defendants," and on that basis denies them.  Mr. Tuck otherwise denies each and every allegation in Paragraph 87(e).

With respect to Paragraph 87(f), no response to required to the allegations of Paragraph 87(f) that purport to describe, construe and excerpt unidentified statements or

documents, which speak for themselves. Mr. Tuck further lacks personal knowledge or information sufficient to form a belief as to the allegations concerning any representations by unidentified "defendants," and on that basis denies them. Mr. Tuck also lacks personal knowledge or information sufficient to form a belief as to the allegations concerning what any "investors" "believe[d]," and on that basis denies them. Mr. Tuck otherwise denies each and every allegation in Paragraph 87(f).

With respect to Paragraph 87(g), Mr. Tuck lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning the information purportedly obtained through any investigation by plaintiffs' counsel or their representatives, and on that basis denies them. No further response is required to the allegations of Paragraph 87(g) that purport to describe, construe and excerpt unidentified statements or documents, which speak for themselves. Mr. Tuck further lacks personal knowledge or information sufficient to form a belief as to the allegations concerning any representations by unidentified "defendants," and on that basis denies them. Mr. Tuck otherwise denies each and every allegation in Paragraph 87(g).

88.    With respect to Paragraph 88, Mr. Tuck admits that on April 21, 2000, the Company filed with the SEC a Registration Statement, permitting Mr. Stein to register for sale of 732,423 shares of Organogenesis stock held by Mr. Stein. Mr. Tuck further admits that the electronic signatures of Ms. Lopolito, Mr. Erani and Mr. Laughlin appear on the Registration Statement. Mr. Tuck denies making any of the statements in the Registration Statement. No further response is required to the extent the allegations of Paragraph 88 purport to construe and excerpt the Registration Statement, which speaks for itself. Mr. Tuck denies that Paragraph 88 completely and accurately construes and excerpts the Registration Statement. Mr. Tuck lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations

relating to Mr. Stein's personal investments or finances, and on that basis denies them.  Mr. Tuck otherwise denies each and every allegation in Paragraph 88.

89.    With respect to Paragraph 89, Mr. Tuck admits that on May 11, 2000 Organogenesis issued a release published on *Business Wire* announcing financial results for the first quarter of 2000, in which Mr. Laughlin is quoted.  Mr. Tuck denies making any of the statements in the press release.  No further response is required to the extent the allegations of Paragraph 89 purport to construe and excerpt the release, which speaks for itself.  To the extent further response is required, Mr. Tuck denies that Paragraph 89 completely and accurately construes and excerpts the release.  Mr. Tuck otherwise denies each and every allegation in Paragraph 89.

90.    With respect to Paragraph 90, Mr. Tuck admits that on May 15, 2000, Organogenesis filed with the SEC the Company's financial results for the first quarter of 2000, the period ended March 31, 2000, pursuant to a Form 10-Q.  Mr. Tuck further admits that the electronic signatures of Mr. Arcari and Mr. Laughlin appear on that Form 10-Q.  Mr. Tuck denies making any of the statements in the Form 10-Q.  No further response is required to the extent the allegations of Paragraph 90 purport to construe and excerpt the release, which speaks for itself.  To the extent further response is required, Mr. Tuck denies that Paragraph 90 completely and accurately construes and excerpts the Form 10-Q.  Mr. Tuck otherwise denies each and every allegation in Paragraph 90.

91.    With respect to Paragraph 91, Mr. Tuck denies making any of the statements in the May 11, 2000 press release and Form 10-Q for the first quarter of 2000.  Mr. Tuck incorporates by reference his responses to Paragraphs 56-67, and denies each and every allegation in Paragraph 91.

With respect to Paragraph 91(a), Mr. Tuck incorporates by reference his responses to Paragraphs 59-67, and denies each and every allegation in Paragraph 91(a).

With respect to Paragraph 91(b), no response to required to the allegations of Paragraph 91(b) that purport to describe, construe and excerpt unidentified statements or documents, which speak for themselves.  Mr. Tuck otherwise denies each and every allegation in Paragraph 91(b).

With respect to Paragraph 91(c), Mr. Tuck lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning the information purportedly obtained through any investigation by plaintiffs' counsel or their representatives, and on that basis denies them.  No response to required to the allegations of Paragraph 91(c) that purport to describe, construe and excerpt unidentified statements or documents, which speak for themselves.  Mr. Tuck further lacks personal knowledge or information sufficient to form a belief as to the allegations concerning unidentified "representations" by unidentified "defendants," and on that basis denies them.  Mr. Tuck otherwise denies each and every allegation in Paragraph 91(c).

With respect to Paragraph 91(d), Mr. Tuck lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning the information purportedly obtained through any investigation by plaintiffs' counsel or their representatives, and on that basis denies them.  No response to required to the allegations of Paragraph 91(d) that purport to describe, construe and excerpt unidentified statements or documents, which speak for themselves.  Mr. Tuck further lacks personal knowledge or information sufficient to form a belief as to the allegations concerning unidentified "representations" by unidentified

"defendants," and on that basis denies them. Mr. Tuck otherwise denies each and every allegation in Paragraph 91(d).

With respect to Paragraph 91(e), Mr. Tuck lacks personal knowledge or information sufficient to form a belief as to the allegations concerning unidentified "representations" by unidentified "defendants," and on that basis denies them. Mr. Tuck incorporates by reference his responses to Paragraphs 59-67, and denies each and every allegation in Paragraph 91(e).

92.     With respect to Paragraph 92, Mr. Tuck admits that on or about June 14, 2000, Mr. Laughlin gave a presentation at the Twenty-First Annual Goldman Sachs Healthcare Conference in Laguna Niguel, California, and that Mr. Laughlin served as President and Chief Executive Officer of Organogenesis at the time. Mr. Tuck presently lacks personal knowledge or information sufficient to form a belief as to the truth of allegations relating to the content of that presentation, and on that basis denies them. Mr. Tuck otherwise denies each and every allegation in Paragraph 92.

93.     With respect to Paragraph 93, Mr. Tuck lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning representations allegedly made after he left the Company on June 15, 2000, and on this basis denies them. Mr. Tuck further lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning the Company's stock price after he left the Company on June 15, 2000, and on this basis denies them. Mr. Tuck otherwise denies each and every allegation in Paragraph 93.

94.     With respect to Paragraph 94, Mr. Tuck lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning television appearances allegedly made by Mr. Laughlin after he left the Company on June 15, 2000, and on this basis

denies them.  Mr. Tuck further lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations relating to the extent of dissemination of the cable financial news show "Power Lunch," and on that basis denies them.  Mr. Tuck otherwise denies each and every allegation in Paragraph 94.

94.     With respect to Paragraph 95, Mr. Tuck lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning representations allegedly made after he left the Company on June 15, 2000, and on this basis denies them.  Mr. Tuck otherwise denies each and every allegation in Paragraph 95.

96.     With respect to Paragraph 96, Mr. Tuck lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning representations allegedly made after he left the Company on June 15, 2000, and on this basis denies them.  Mr. Tuck otherwise denies each and every allegation in Paragraph 96.

97.     With respect to Paragraph 97, Mr. Tuck incorporates by reference his response to Paragraph 96.  Mr. Tuck otherwise denies each and every allegation in Paragraph 97.

98.     With respect to Paragraph 98, Mr. Tuck lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning public filings allegedly made after he left the Company on June 15, 2000, and on this basis denies them.  Mr. Tuck otherwise denies each and every allegation in Paragraph 98.

99.     With respect to Paragraph 99, Mr. Tuck lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning representations allegedly made after he left the Company on June 15, 2000, and on this basis denies them.  Mr. Tuck otherwise denies each and every allegation in Paragraph 99.

100.    With respect to Paragraph 100, Mr. Tuck lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning representations allegedly made after he left the Company on June 15, 2000, and on this basis denies them.  Mr. Tuck otherwise denies each and every allegation in Paragraph 100.

With respect to Paragraph 100(a), Mr. Tuck incorporates by reference his responses to Paragraphs 59-67, and denies each and every allegation in Paragraph 100(a).

With respect to Paragraph 100(b), Mr. Tuck lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning the information purportedly obtained through any investigation by plaintiffs' counsel or their representatives, and on that basis denies them.  Mr. Tuck further lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning representations allegedly made after he left the Company on June 15, 2000, and on this basis denies them.  Mr. Tuck incorporates by reference his responses to Paragraphs 59-67, and otherwise denies each and every allegation in Paragraph 100(b).

With respect to Paragraph 100(c), Mr. Tuck lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning the information purportedly obtained through any investigation by plaintiffs' counsel or their representatives, and on that basis denies them.  Mr. Tuck further lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning representations allegedly made after he left the Company on June 15, 2000, and on this basis denies them.  Mr. Tuck otherwise denies each and every allegation in Paragraph 100(c).

With respect to Paragraph 100(d), Mr. Tuck lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning the information

purportedly obtained through any investigation by plaintiffs' counsel or their representatives, and

on that basis denies them. Mr. Tuck further lacks personal knowledge or information sufficient

to form a belief as to the truth of the allegations concerning representations allegedly made after

he left the Company on June 15, 2000, and on this basis denies them. Mr. Tuck otherwise denies

each and every allegation in Paragraph 100(d).

With respect to Paragraph 100(e), Mr. Tuck lacks personal knowledge or information

sufficient to form a belief as to the truth of the allegations concerning the information

purportedly obtained through any investigation by plaintiffs' counsel or their representatives, and

on that basis denies them. Mr. Tuck further lacks personal knowledge or information sufficient

to form a belief as to the truth of the allegations concerning representations allegedly made after

he left the Company on June 15, 2000, and on this basis denies them. Mr. Tuck otherwise denies

each and every allegation in Paragraph 100(e).

With respect to Paragraph 100(f), Mr. Tuck lacks personal knowledge or information

sufficient to form a belief as to the truth of the allegations concerning the information

purportedly obtained through any investigation by plaintiffs' counsel or their representatives, and

on that basis denies them. Mr. Tuck further lacks personal knowledge or information sufficient

to form a belief as to the truth of the allegations concerning representations allegedly made after

he left the Company on June 15, 2000, and on this basis denies them. Mr. Tuck otherwise denies

each and every allegation in Paragraph 100(f).

With respect to Paragraph 100(g), Mr. Tuck lacks personal knowledge or information

sufficient to form a belief as to the truth of the allegations concerning the information

purportedly obtained through any investigation by plaintiffs' counsel or their representatives, and

on that basis denies them. Mr. Tuck further lacks personal knowledge or information sufficient

to form a belief as to the truth of the allegations concerning representations allegedly made after he left the Company on June 15, 2000, and on this basis denies them. Mr. Tuck otherwise denies each and every allegation in Paragraph 100(g).

With respect to Paragraph 100(h), Mr. Tuck lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning the information purportedly obtained through any investigation by plaintiffs' counsel or their representatives, and on that basis denies them. Mr. Tuck further lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning representations allegedly made after he left the Company on June 15, 2000, and on this basis denies them. Mr. Tuck otherwise denies each and every allegation in Paragraph 100(h).

With respect to Paragraph 100(i), Mr. Tuck lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning representations allegedly made after he left the Company on June 15, 2000, and on this basis denies them. Mr. Tuck incorporates by reference his responses to Paragraphs 59-67, and otherwise denies each and every allegation in Paragraph 100(i).

101.    With respect to Paragraph 101, Mr. Tuck lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning representations allegedly made after he left the Company on June 15, 2000, and on this basis denies them. Mr. Tuck otherwise denies each and every allegation in Paragraph 101.

102.    With respect to Paragraph 102, Mr. Tuck lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning public filings allegedly made after he left the Company on June 15, 2000, and on this basis denies them. Mr. Tuck otherwise denies each and every allegation in Paragraph 102.

103.    With respect to Paragraph 103, Mr. Tuck lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning representations allegedly made after he left the Company on June 15, 2000, and on this basis denies them.  Mr. Tuck otherwise denies each and every allegation in Paragraph 103.

104.    With respect to Paragraph 104, Mr. Tuck lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning representations and public filings allegedly made after he left the Company on June 15, 2000, and on this basis denies them.  Mr. Tuck otherwise denies each and every allegation in Paragraph 104.

With respect to Paragraph 104(a), Mr. Tuck incorporates by reference his responses to Paragraphs 59-67, and otherwise denies each and every allegation in Paragraph 104(a).

With respect to Paragraph 104(b), Mr. Tuck lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning the information purportedly obtained through any investigation by plaintiffs' counsel or their representatives, and on that basis denies them. Mr. Tuck further lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning representations allegedly made after he left the Company on June 15, 2000, and on this basis denies them.  Mr. Tuck otherwise denies each and every allegation of Paragraph 104(b).

With respect to Paragraph 104(c), Mr. Tuck lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning the information purportedly obtained through any investigation by plaintiffs' counsel or their representatives, and on that basis denies them. Mr. Tuck further lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning representations allegedly made after

he left the Company on June 15, 2000, and on this basis denies them.  Mr. Tuck incorporates by reference his responses to Paragraphs 59-67, and otherwise denies each and every allegation of Paragraph 104(c).

With respect to Paragraph 104(d), Mr. Tuck lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning the information purportedly obtained through any investigation by plaintiffs' counsel or their representatives, and on that basis denies them.  Mr. Tuck further lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning representations allegedly made after he left the Company on June 15, 2000, and on this basis denies them.  Mr. Tuck otherwise denies each and every allegation of Paragraph 104(d).

With respect to Paragraph 104(e), Mr. Tuck lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning representations allegedly made after he left the Company on June 15, 2000, and on this basis denies them.  Mr. Tuck incorporates by reference his responses to Paragraphs 59-67, and otherwise denies each and every allegation in Paragraph 104(e).

105.    With respect to Paragraph 105, Mr. Tuck lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning representations allegedly made after he left the Company on June 15, 2000, and on this basis denies them.  Mr. Tuck further lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning the Company's alleged stock price after he left the Company on June 15, 2000, and on this basis denies them.  Mr. Tuck otherwise denies each and every allegation in Paragraph 105.

106.    With respect to Paragraph 106, Mr. Tuck lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning representations allegedly made after he left the Company on June 15, 2000, and on this basis denies them.  Mr. Tuck otherwise denies each and every allegation in Paragraph 106.

107.    With respect to Paragraph 107, Mr. Tuck lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning representations allegedly made after he left the Company on June 15, 2000, and on this basis denies them.  Mr. Tuck further lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning television appearances allegedly made by Mr. Laughlin after he left the Company on June 15, 2000, and on this basis denies them.  Mr. Tuck admits that Organogenesis and Novartis were parties to the Novartis Contracts, which speak for themselves.  Mr. Tuck lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning contracts between Organogenesis and Novartis entered into after he left the Company on June 15, 2000, and on this basis denies them.  Mr. Tuck further lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations relating to the extent of dissemination of the cable financial news show "Power Lunch," or the identity of its host, and on that basis denies them.  Mr. Tuck further lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning Organogenesis' stock price after he left the Company on June 15, 2000, and on this basis denies them.  Mr. Tuck otherwise denies each and every allegation in Paragraph 107.

108.    With respect to Paragraph 108, Mr. Tuck lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning

representations allegedly made after he left the Company on June 15, 2000, and on this basis denies them. Mr. Tuck otherwise denies each and every allegation in Paragraph 108.

With respect to Paragraph 108(a), Mr. Tuck incorporates by reference his responses to Paragraphs 59-67, and denies each and every allegation in Paragraph 108(a).

With respect to Paragraph 108(b), Mr. Tuck lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning the information purportedly obtained through any investigation by plaintiffs' counsel or their representatives, and on that basis denies them. Mr. Tuck lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning representations allegedly made after he left the Company on June 15, 2000, and on this basis denies them. Mr. Tuck incorporates by reference his responses to Paragraphs 59-67, and otherwise denies each and every allegation in Paragraph 108(b).

With respect to Paragraph 108(c), Mr. Tuck lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning the information purportedly obtained through any investigation by plaintiffs' counsel or their representatives, and on that basis denies them. Mr. Tuck lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning representations allegedly made after he left the Company on June 15, 2000, and on this basis denies them. Mr. Tuck otherwise denies each and every allegation of Paragraph 108(c).

With respect to Paragraph 108(d Mr. Tuck lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning representations allegedly made after he left the Company on June 15, 2000, and on this basis denies them. Mr. Tuck otherwise denies each and every allegation of Paragraph 108(d).

With respect to Paragraph 108(e), Mr. Tuck lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning the information purportedly obtained through any investigation by plaintiffs' counsel or their representatives, and on that basis denies them.  Mr. Tuck further lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning representations allegedly made after he left the Company on June 15, 2000, and on this basis denies them.  Mr. Tuck admits that Organogenesis and Novartis were parties to the Novartis Contracts.  Mr. Tuck lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning contracts between Organogenesis and Novartis allegedly entered into after he left the Company on June 15, 2000, and on this basis denies them.  Mr. Tuck otherwise denies each and every allegation of Paragraph 108(e).

With respect to Paragraph 108(f), Mr. Tuck lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning representations allegedly made after he left the Company on June 15, 2000, and on this basis denies them.  Mr. Tuck admits Organogenesis and Novartis were parties to the Novartis Contracts.  Mr. Tuck lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning contracts between Organogenesis and Novartis allegedly entered into after he left the Company on June 15, 2000, and on this basis denies them.  Mr. Tuck otherwise denies each and every allegation of Paragraph 108(f).

With respect to Paragraph 108(g), Mr. Tuck lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning representations allegedly made after he left the Company on June 15, 2000, and on this basis denies them.  Mr. Tuck admits that Organogenesis and Novartis were parties to the Novartis Contracts.  Mr. Tuck lacks

personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning contracts between Organogenesis and Novartis allegedly entered into after he left the Company on June 15, 2000, and on this basis denies them. Mr. Tuck otherwise denies each and every allegation of Paragraph 108(g).

109.    With respect to Paragraph 109, no response is required to the allegations that purport to quote from an analyst report issued by non-party Needham & Co. on an undisclosed date, which presumably speaks for itself, if it in fact exists. Mr. Tuck otherwise denies each and every allegation in Paragraph 109.

110.    With respect to Paragraph 110, Mr. Tuck lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning representations allegedly made after he left the Company on June 15, 2000, and on this basis denies them. Mr. Tuck otherwise denies each and every allegation in Paragraph 110.

111.    With respect to Paragraph 111, Mr. Tuck lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning the purported beliefs or knowledge of the public, and on that basis denies them. Mr. Tuck further lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning events allegedly occurring after he left the Company on June 15, 2000, and on that basis denies them. Mr. Tuck otherwise denies each and every allegation in Paragraph 111.

112.    With respect to Paragraph 112, Mr. Tuck lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning representations allegedly made after he left the Company on June 15, 2000, and on that basis denies them. Mr. Tuck otherwise denies each and every allegation in Paragraph 112.

113.    With respect to Paragraph 113, Mr. Tuck lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning public filings allegedly made after he left the Company on June 15, 2000, and on that basis denies them. Mr. Tuck otherwise denies each and every allegation in Paragraph 113.

114.    With respect to Paragraph 114, Mr. Tuck lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning the purported beliefs or emotions of non-party PricewaterhouseCoopers, and on that basis denies them. Mr. Tuck further lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning events allegedly occurring after he left the Company on June 15, 2000, and on that basis denies them. Mr. Tuck otherwise denies each and every allegation in Paragraph 114.

115.    With respect to Paragraph 115, Mr. Tuck lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning presentations allegedly given by Organogenesis after he left the Company on June 15, 2000, and on that basis denies them. No response is required to the allegations that purport to construe and paraphrase an analyst report purportedly issued by non-party Needham & Co. on April 19, 2001, which speaks for itself. Mr. Tuck otherwise denies each and every allegation in Paragraph 115.

116.    With respect to Paragraph 116, Mr. Tuck lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning representations and public filings allegedly made after he left the Company on June 15, 2000, and on that basis denies them. Mr. Tuck otherwise denies each and every allegation in Paragraph 116.

With respect to Paragraph 116(a), Mr. Tuck incorporates by reference his responses to Paragraphs 59-67, and denies each and every allegation in Paragraph 116(a).

With respect to Paragraph 116(b), Mr. Tuck lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning representations allegedly made after he left the Company on June 15, 2000, and on that basis denies them. Mr. Tuck otherwise denies those allegations, and denies each and every allegation in Paragraph 116(b).

With respect to Paragraph 116(c), Mr. Tuck lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning the information purportedly obtained through any investigation by plaintiffs' counsel or their representatives, and on that basis denies them. Mr. Tuck further lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning representations allegedly made after he left the Company on June 15, 2000, and on that basis denies them. Mr. Tuck otherwise denies each and every allegation in Paragraph 116(c).

With respect to Paragraph 116(d), Mr. Tuck lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning the information purportedly obtained through any investigation by plaintiffs' counsel or their representatives, and on that basis denies them. Mr. Tuck further lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning representations allegedly made after he left the Company on June 15, 2000, and on that basis denies them. Mr. Tuck otherwise denies each and every allegation in Paragraph 116(d).

With respect to Paragraph 116(e), Mr. Tuck admits Organogenesis and Novartis were parties to the Novartis Contracts. Mr. Tuck lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning contracts between Organogenesis

and Novartis allegedly entered into after he left the Company on June 15, 2000, and on this basis denies them. Mr. Tuck further lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning representations allegedly made after he left the Company on June 15, 2000, and on this basis denies them. Mr. Tuck otherwise denies each and every allegation in Paragraph 116(e).

With respect to Paragraph 116(f), Mr. Tuck admits Organogenesis and Novartis were parties to the Novartis Contracts. Mr. Tuck lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning contracts between Organogenesis and Novartis allegedly entered into after he left the Company on June 15, 2000, and on this basis denies them. Mr. Tuck further lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning representations allegedly made after he left the Company on June 15, 2000, and on this basis denies them. Mr. Tuck otherwise denies each and every allegation in Paragraph 116(f).

With respect to Paragraph 116(g), Mr. Tuck lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning the information purportedly obtained through any investigation by plaintiffs' counsel or their representatives, and on that basis denies them. Mr. Tuck further lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning representations allegedly made after he left the Company on June 15, 2000, and on this basis denies them. Mr. Tuck otherwise denies each and every allegation in Paragraph 116(g).

With respect to Paragraph 116(h), Mr. Tuck lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning the information purportedly obtained through any investigation by plaintiffs' counsel or their representatives, and

on that basis denies them.  Mr. Tuck further lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning representations allegedly made after he left the Company on June 15, 2000, and on this basis denies them.  Mr. Tuck otherwise denies each and every allegation in Paragraph 116(h).

With respect to Paragraph 116(i), Mr. Tuck lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning the information purportedly obtained through any investigation by plaintiffs' counsel or their representatives, and on that basis denies them.  Mr. Tuck further lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning representations allegedly made after he left the Company on June 15, 2000, and on this basis denies them.  Mr. Tuck otherwise denies each and every allegation in Paragraph 116(i).

With respect to Paragraph 116(j), Mr. Tuck lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning the information purportedly obtained through any investigation by plaintiffs' counsel or their representatives, and on that basis denies them.  Mr. Tuck further lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning representations allegedly made after he left the Company on June 15, 2000, and on this basis denies them.  Mr. Tuck otherwise denies each and every allegation in Paragraph 116(j).

With respect to Paragraph 116(k), Mr. Tuck lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning representations allegedly made after he left the Company on June 15, 2000, and on this basis denies them.  Mr. Tuck otherwise denies each and every allegation in Paragraph 116(k).

With respect to Paragraph 116(*l*), Mr. Tuck lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning the information purportedly obtained through any investigation by plaintiffs' counsel or their representatives, and on that basis denies them. Mr. Tuck further lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning representations allegedly made after he left the Company on June 15, 2000, and on this basis denies them. Mr. Tuck otherwise denies each and every allegation in Paragraph 116(*l*).

With respect to Paragraph 116(m), Mr. Tuck lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning representations allegedly made after he left the Company on June 15, 2000, and on this basis denies them. Mr. Tuck otherwise denies each and every allegation in Paragraph 116(m).

With respect to Paragraph 116(n), no response is required to the allegations of Paragraph 116(n) that related to the purported actions, beliefs and emotions of non-party PricewaterhouseCoopers. To the extent that a response is required, Mr. Tuck lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning the beliefs of non-party PricewaterhouseCoopers. Mr. Tuck further lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning events allegedly occurring after he left the Company on June 15, 2000, and on that basis denies them. Mr. Tuck otherwise denies each and every allegation in Paragraph 116(n).

117.    With respect to Paragraph 117, Mr. Tuck lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning representations allegedly made after he left the Company on June 15, 2000, and on this basis denies them. Mr. Tuck otherwise denies each and every allegation in Paragraph 117.

118.    With respect to Paragraph 118, Mr. Tuck lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning public filings allegedly made after he left the Company on June 15, 2000, and on this basis denies them.  Mr. Tuck otherwise denies each and every allegation in Paragraph 118.

119.    With respect to Paragraph 119, Mr. Tuck lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning representations and public filings allegedly made after he left the Company on June 15, 2000, and on this basis denies them.  Mr. Tuck otherwise denies each and every allegation in Paragraph 119.

With respect to Paragraph 119(a), Mr. Tuck incorporates by reference his responses to Paragraphs 59-67, and denies each and every allegation in Paragraph 119(a).

With respect to Paragraph 119(b), Mr. Tuck lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning representations allegedly made after he left the Company on June 15, 2000, and on this basis denies them.  Mr. Tuck otherwise denies each and every allegation in Paragraph 119(b).

With respect to Paragraph 119(c), Mr. Tuck lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning representations allegedly made after he left the Company on June 15, 2000, and on this basis denies them.  Mr. Tuck otherwise denies each and every allegation in Paragraph 119(c).

With respect to Paragraph 119(d), Mr. Tuck lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning representations allegedly made after he left the Company on June 15, 2000, and on this basis denies them.  Mr. Tuck otherwise denies each and every allegation in Paragraph 119(d).

With respect to Paragraph 119(e), Mr. Tuck lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning the information purportedly obtained through any investigation by plaintiffs' counsel or their representatives, and on that basis denies them. Mr. Tuck further lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning representations allegedly made after he left the Company on June 15, 2000, and on this basis denies them. Mr. Tuck otherwise denies each and every allegation in Paragraph 119(e).

With respect to Paragraph 119(f), Mr. Tuck lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning the information purportedly obtained through any investigation by plaintiffs' counsel or their representatives, and on that basis denies them. Mr. Tuck further lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning representations allegedly made after he left the Company on June 15, 2000, and on this basis denies them. Mr. Tuck otherwise denies each and every allegation in Paragraph 119(f).

With respect to Paragraph 119(g), Mr. Tuck incorporates by reference his responses to Paragraphs 59-67, and denies each and every allegation in Paragraph 119(g).

120.    With respect to Paragraph 120 and footnote 4, Mr. Tuck lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning representations allegedly made after he left the Company on June 15, 2000, and on this basis denies them. Mr. Tuck further lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning contracts allegedly entered into by Organogenesis after he left the Company on June 15, 2000, and on this basis denies them. Mr. Tuck otherwise denies each and every allegation in Paragraph 120 and footnote 4.

121.    With respect to Paragraph 121, no response is required to the allegations that purport to quote the statements, views and actions of analysts employed by non-party Needham & Co.  To an extent a response is required, Mr. Tuck denies each and every allegation in Paragraph 121.

122.    With respect to Paragraph 122, Mr. Tuck lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning representations allegedly made after he left the Company on June 15, 2000, and on this basis denies them.  Mr. Tuck otherwise denies each and every allegation in Paragraph 122.

123.    With respect to Paragraph 123, Mr. Tuck lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning public filings allegedly made after he left the Company on June 15, 2000, and on this basis denies them.  Mr. Tuck specifically denies that the price of Organogenesis shares was "artificial[ly] inflate[ed]," and except as specifically admitted herein, denies each and every allegation in Paragraph 123.

124.    With respect to Paragraph 124, Mr. Tuck lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning events allegedly occurring after he left the Company on June 15, 2000, and on that basis denies them.  Mr. Tuck otherwise denies each and every allegation in Paragraph 124, and incorporates by reference his response to Paragraph 7.  No response is required to the allegations that concern the purported conduct, beliefs, emotions and statements of non-party PricewaterhouseCoopers.  To the extent a response is required, Mr. Tuck lacks personal knowledge or information sufficient to form a belief as to the allegations concerning the purported conduct, beliefs, emotions and statements of non-party PricewaterhouseCoopers, and on that basis denies them.  Mr. Tuck otherwise denies each and every allegation in Paragraph 124.

125.    With respect to Paragraph 125, Mr. Tuck lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning representations allegedly made after he left the Company on June 15, 2000, and on that basis denies them.  Mr. Tuck otherwise denies each and every allegation in Paragraph 125.

126.    With respect to Paragraph 126, Mr. Tuck lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning representations allegedly made after he left the Company on June 15, 2000, and on that basis denies them.  Mr. Tuck further presently lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning alleged sales of Apligraf after he left the Company on June 15, 2000, and on this basis denies them.  No response is required to the allegations that purport to quote from an analyst report issued by non-party Needham & Co. on June 6, 2001, which speaks for itself.  Mr. Tuck otherwise denies each and every allegation in Paragraph 126.

127.    With respect to Paragraph 127, Mr. Tuck lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning events allegedly occurring after he left the Company on June 15, 2000, and on that basis denies them.  Mr. Tuck otherwise denies each and every allegation in Paragraph 127.

128.    With respect to Paragraph 128, Mr. Tuck lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning representations allegedly made after he left the Company on June 15, 2000, and on that basis denies them.  Mr. Tuck otherwise denies each and every allegation in Paragraph 128.

129.    With respect to Paragraph 129, Mr. Tuck lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning

representations allegedly made after he left the Company on June 15, 2000, and on that basis denies them.  Mr. Tuck otherwise denies each and every allegation in Paragraph 129.

130.    With respect to Paragraph 130, Mr. Tuck lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning representations allegedly made after he left the Company on June 15, 2000, and on that basis denies them.  Mr. Tuck otherwise denies each and every allegation in Paragraph 130.

131.    With respect to Paragraph 131, Mr. Tuck lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning public filings allegedly made after he left the Company on June 15, 2000, and on that basis denies them.  Mr. Tuck otherwise denies each and every allegation in Paragraph 131.

132.    With respect to Paragraph 132, Mr. Tuck lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning public filings allegedly made after he left the Company on June 15, 2000, and on that basis denies them.  Mr. Tuck otherwise denies each and every allegation in Paragraph 132.

133.    With respect to Paragraph 133, Mr. Tuck lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning representations and public filings allegedly made after he left the Company on June 15, 2000, and on that basis denies them.  Mr. Tuck otherwise denies each and every allegation in Paragraph 133.

With respect to Paragraph 133(a), Mr. Tuck incorporates by reference his responses to Paragraphs 59-67, and denies each and every allegation in Paragraph 133(a).

With respect to Paragraph 133(b), Mr. Tuck lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning representations allegedly

made after he left the Company on June 15, 2000, and on that basis denies them. Mr. Tuck otherwise denies each and every allegation in Paragraph 133(b).

With respect to Paragraph 133(c), Mr. Tuck lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning representations allegedly made after he left the Company on June 15, 2000, and on that basis denies them. Mr. Tuck otherwise denies each and every allegation in Paragraph 133(c).

With respect to Paragraph 133(d), Mr. Tuck lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning the information purportedly obtained through any investigation by plaintiffs' counsel or their representatives, and on that basis denies them. Mr. Tuck further lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning representations allegedly made after he left the Company on June 15, 2000, and on that basis denies them. Mr. Tuck otherwise denies each and every allegation in Paragraph 133(d).

With respect to Paragraph 133(e), Mr. Tuck lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning the information purportedly obtained through any investigation by plaintiffs' counsel or their representatives, and on that basis denies them. Mr. Tuck further lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning representations allegedly made after he left the Company on June 15, 2000, and on that basis denies them. Mr. Tuck otherwise denies each and every allegation in Paragraph 133(e).

With respect to Paragraph 133(f), Mr. Tuck incorporates by reference his responses to Paragraphs 59-67, and denies each and every allegation in Paragraph 133(f).

134.    With respect to Paragraph 134, no response is required to the allegations that purport to quote from an analyst report purportedly issued by non-party Needham & Co. on August 14, 2001, which speaks for itself.  Mr. Tuck otherwise denies each and every allegation in Paragraph 134.

135.    With respect to Paragraph 135, Mr. Tuck lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning representations allegedly made after he left the Company on June 15, 2000, and on that basis denies them.  Mr. Tuck otherwise denies each and every allegation in Paragraph 135.

136.    With respect to Paragraph 136, Mr. Tuck lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning representations allegedly made after he left the Company on June 15, 2000, and on that basis denies them.  Mr. Tuck otherwise denies each and every allegation in Paragraph 136.

137.    With respect to Paragraph 137, Mr. Tuck lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning news reports about Organogenesis allegedly published after he left the Company on June 15, 2000, and on that basis denies them.  Mr. Tuck otherwise denies each and every allegation in Paragraph 137.

138.    With respect to Paragraph 138, Mr. Tuck lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning representations allegedly made after he left the Company on June 15, 2000, and on that basis denies them.  Mr. Tuck otherwise denies each and every allegation in Paragraph 138.

139.    With respect to Paragraph 139, Mr. Tuck lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning

representations allegedly made after he left the Company on June 15, 2000, and on that basis denies them. Mr. Tuck otherwise denies each and every allegation in Paragraph 139.

140.    With respect to Paragraph 140, Mr. Tuck lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning presentations allegedly made after he left the Company on June 15, 2000, and on that basis denies them. Mr. Tuck otherwise denies each and every allegation in Paragraph 140.

141.    With respect to Paragraph 141, Mr. Tuck lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning representations allegedly made after he left the Company on June 15, 2000, and on that basis denies them. Mr. Tuck otherwise denies each and every allegation in Paragraph 141.

142.    With respect to Paragraph 142, Mr. Tuck lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning news reports about Organogenesis allegedly published after he left the Company on June 15, 2000, and on that basis denies them. Mr. Tuck otherwise denies each and every allegation in Paragraph 142.

143.    With respect to Paragraph 143, Mr. Tuck lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning representations allegedly made after he left the Company on June 15, 2000, and on that basis denies them. Mr. Tuck otherwise denies each and every allegation in Paragraph 143.

144.    With respect to Paragraph 144, Mr. Tuck lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning public filings allegedly made after he left the Company on June 15, 2000, and on that basis denies them. Mr. Tuck otherwise denies each and every allegation in Paragraph 144.

145.    With respect to Paragraph 145, Mr. Tuck lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning representations and public filings allegedly made after he left the Company on June 15, 2000, and on that basis denies them.  Mr. Tuck otherwise denies each and every allegation in Paragraph 145.

With respect to Paragraph 145(a), Mr. Tuck incorporates by reference his responses to Paragraphs 59-67, and denies each and every allegation in Paragraph 145(a).

With respect to Paragraph 145(b), Mr. Tuck lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning representations allegedly made after he left the Company on June 15, 2000, and on that basis denies them.  Mr. Tuck otherwise denies each and every allegation in Paragraph 145(b).

With respect to Paragraph 145(c), Mr. Tuck lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning the information purportedly obtained through any investigation by plaintiffs' counsel or their representatives, and on that basis denies them.  Mr. Tuck further lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning representations allegedly made after he left the Company on June 15, 2000, and on that basis denies them.  Mr. Tuck incorporates by reference his responses to Paragraphs 59-67, and otherwise denies each and every allegation in Paragraph 145(c).

With respect to Paragraph 145(d), Mr. Tuck lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning the information purportedly obtained through any investigation by plaintiffs' counsel or their representatives, and on that basis denies them.  Mr. Tuck further lacks personal knowledge or information sufficient

to form a belief as to the truth of the allegations concerning representations allegedly made after he left the Company on June 15, 2000, and on that basis denies them. Mr. Tuck otherwise denies each and every allegation in Paragraph 145(d).

With respect to Paragraph 145(e), Mr. Tuck lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning the information purportedly obtained through any investigation by plaintiffs' counsel or their representatives, and on that basis denies them. Mr. Tuck further lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning representations allegedly made after he left the Company on June 15, 2000, and on that basis denies them. Mr. Tuck otherwise denies each and every allegation in Paragraph 145(e).

With respect to Paragraph 145(f), Mr. Tuck lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning the information purportedly obtained through any investigation by plaintiffs' counsel or their representatives, and on that basis denies them. Mr. Tuck further lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning representations allegedly made after he left the Company on June 15, 2000, and on that basis denies them. Mr. Tuck otherwise denies each and every allegation in Paragraph 145(f).

With respect to Paragraph 145(g), Mr. Tuck lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning representations allegedly made after he left the Company on June 15, 2000, and on that basis denies them. Mr. Tuck incorporates by reference his responses to Paragraphs 59-67, and otherwise denies each and every allegation in Paragraph 145(g).

146.    With respect to Paragraph 146, no response is required to the allegations that purport to quote from an analyst report purportedly issued by non-party Needham & Co. on November 16, 2001, which speaks for itself.  Mr. Tuck otherwise denies each and every allegation in Paragraph 146.

147.    With respect to Paragraph 147, Mr. Tuck lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning representations allegedly made after he left the Company on June 15, 2000, and on that basis denies them.  Mr. Tuck further lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning events allegedly occurring after he left the Company on June 15, 2000, and on that basis denies them.  Mr. Tuck further denies that January 4, 2002 is "days before the end of the [purported] Class Period," and states that January 4, 2002 is over one month before the end of the purported Class Period, which according to plaintiffs, ends on February 7, 2002.  Mr. Tuck otherwise denies each and every allegation in Paragraph 147.

148.    With respect to Paragraph 148, Mr. Tuck lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning public filings allegedly made after he left the Company on June 15, 2000, and on that basis denies them.  Mr. Tuck otherwise denies each and every allegation in Paragraph 148.

149.    With respect to Paragraph 149, Mr. Tuck lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning public filings allegedly made after he left the Company on June 15, 2000, and on that basis denies them.  Mr. Tuck otherwise denies each and every allegation in Paragraph 149.

150.    With respect to Paragraph 150, Mr. Tuck lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning public filings allegedly made after he left the Company on June 15, 2000, and on that basis denies them.  Mr. Tuck further lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning the unidentified "previous report[s]" of unidentified "defendants," and on that basis denies them.  Mr. Tuck otherwise denies each and every allegation in Paragraph 150.

151.    With respect to Paragraph 151, Mr. Tuck lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning Organogenesis' alleged stock price after he left the Company on June 15, 2000, and on that basis denies them.  Mr. Tuck otherwise denies each and every allegation in Paragraph 151.

152.    With respect to Paragraph 152 and footnote 5, Mr. Tuck lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning news reports about Organogenesis allegedly published after he left the Company on June 15, 2000, and on that basis denies them.  Mr. Tuck further lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning press releases allegedly published after he left the Company on June 15, 2000, and on that basis denies them.  No response is required to the allegations in footnote 5, which consist of plaintiffs' characterizations of convertible shares.  Mr. Tuck otherwise denies each and every allegation in Paragraph 152.

153.    With respect to Paragraph 153, Mr. Tuck lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning communications allegedly made after he left the Company on June 15, 2000, and on that basis denies them.  Mr. Tuck otherwise denies each and every allegation in Paragraph 153.

154.    With respect to Paragraph 154, Mr. Tuck lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning communications allegedly made after he left the Company on June 15, 2000, and on that basis denies them.  Mr. Tuck otherwise denies each and every allegation in Paragraph 154.

155.    With respect to Paragraph 155, Mr. Tuck lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning public filings allegedly made after he left the Company on June 15, 2000, and on that basis denies them.  Mr. Tuck further presently lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning documents allegedly authored by PricewaterhouseCoopers concerning Organogenesis after he left the Company on June 15, 2000, and on this basis denies them.  Mr. Tuck otherwise denies each and every allegation in Paragraph 155.

156.    With respect to Paragraph 156, Mr. Tuck lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning Organogenesis' alleged stock prices after he left the Company on June 15, 2000, and on that basis denies them.  Mr. Tuck otherwise denies each and every allegation in Paragraph 156.

157.    With respect to Paragraph 157, Mr. Tuck lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning press releases allegedly published after he left the Company on June 15, 2000, and on that basis denies them.  Mr. Tuck further lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning news reports about Organogenesis allegedly published after he left the Company on June 15, 2000, and on that basis denies them.  Mr. Tuck otherwise denies each and every allegation in Paragraph 157.

158.     With respect to Paragraph 158, Mr. Tuck lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning Organogenesis' alleged stock prices after he left the Company on June 15, 2000, and on that basis denies them.  No response is required to the allegations that purport to quote from and characterize an analyst report purportedly issued by non-party Needham & Co. on July 12, 2002, which speaks for itself.  Mr. Tuck otherwise denies each and every allegation in Paragraph 158.

159.     With respect to Paragraph 159, Mr. Tuck lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning Organogenesis' stock after he left the Company on June 15, 2000, and on that basis denies them.  Mr. Tuck lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning press releases allegedly published after he left the Company on June 15, 2000, and on that basis denies them.  Mr. Tuck otherwise denies each and every allegation in Paragraph 159.

160.     With respect to Paragraph 160, Mr. Tuck lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning events allegedly occurring after he left the Company on June 15, 2000, and on that basis denies them.  Mr. Tuck otherwise denies each and every allegation in Paragraph 160.

161.     With respect to Paragraph 161, Mr. Tuck admits that, following the close of the putative Class Period, Organogenesis initiated a bankruptcy proceeding in the United States Bankruptcy Court for the District of Massachusetts, Eastern Division.  No response is required to those allegations concerning the facts or proceedings of the bankruptcy, which are set forth in court papers filed and orders entered in that proceeding, which speak for themselves.  Mr. Tuck further states that he lacks personal knowledge or information sufficient to form a belief as to the

truth of the allegations concerning events allegedly occurring after he left the Company on June 15, 2000, and on that basis denies them. Mr. Tuck otherwise denies each and every allegation in Paragraph 161.

162.    With respect to Paragraph 162, Mr. Tuck lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning events allegedly occurring after he left the Company on June 15, 2000, and on that basis denies them. Mr. Tuck otherwise denies each and every allegation in Paragraph 162.

163.    With respect to Paragraph 163, Mr. Tuck lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning events allegedly occurring after he left the Company on June 15, 2000, and on that basis denies them. Mr. Tuck further lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning news reports about Organogenesis allegedly published after he left the Company on June 15, 2000, and on that basis denies them. Mr. Tuck otherwise denies each and every allegation in Paragraph 163.

164.    With respect to Paragraph 164, Mr. Tuck admits that, following the close of the putative Class Period, Organogenesis initiated a bankruptcy proceeding in the United States Bankruptcy Court for the District of Massachusetts, Eastern Division. No response is required to those allegations concerning the facts or proceedings of the bankruptcy, which are set forth in court papers filed and orders entered in that proceeding, which speak for themselves. Mr. Tuck further states that he lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning events allegedly occurring, and communications allegedly made, after he left the Company on June 15, 2000, and on that basis denies them. Mr. Tuck otherwise denies each and every allegation in Paragraph 164.

165.     With respect to Paragraph 165, Mr. Tuck lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning news reports about Organogenesis allegedly published after he left the Company on June 15, 2000, and on that basis denies them.  Mr. Tuck otherwise denies each and every allegation in Paragraph 165.

166.     With respect to Paragraph 166, Mr. Tuck admits that, following the close of the putative Class Period, Organogenesis initiated a bankruptcy proceeding in the United States Bankruptcy Court for the District of Massachusetts, Eastern Division.  No response is required to those allegations concerning the facts or proceedings of the bankruptcy, which are set forth in court papers filed and orders entered in that proceeding, which speak for themselves.  Mr. Tuck further states that he lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning events allegedly occurring after he left the Company on June 15, 2000, and on that basis denies them.  Mr. Tuck further denies that the Company emerged from bankruptcy under the "full dominance and control" of the "Individual Defendants," as that term is defined by plaintiffs in Paragraph 33 of the Complaint.  Mr. Tuck otherwise denies each and every allegation in Paragraph 166.

167.     With respect to Paragraph 167, Mr. Tuck lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning events allegedly occurring after he left the Company on June 15, 2000, and on that basis denies them.  Mr. Tuck otherwise denies each and every allegation in Paragraph 167.

168.     With respect to Paragraph 168, no response is required to the allegations of Paragraph 168 relating to the openness, efficiency and development of the market for Organogenesis stock, which consist of legal conclusions.  Mr. Tuck denies that the Organogenesis common stock traded at artificially inflated prices during the portion of the

putative Class Period in which he was employed by Organogenesis.  Mr. Tuck lacks personal

knowledge or information sufficient to form a belief as to the truth of the allegations relating to

whether plaintiffs and other members of the purported class purchased or otherwise acquired

Organogenesis securities in reliance on the integrity of the market price of Organogenesis

securities and market information relating to Organogenesis, and on that basis denies them.  Mr.

Tuck denies that this action may be properly maintained as a class action, and further denies that

plaintiffs or any member of the purported class have been damaged.  Mr. Tuck otherwise denies

each and every allegation in Paragraph 168.

169.    With respect to Paragraph 169, no response is required to the allegations that

consist merely of conclusions of law.  Mr. Tuck otherwise denies each and every allegation in

Paragraph 169.

170.    With respect to Paragraph 170, no response is required to the allegations that

consist merely of conclusions of law.  Mr. Tuck otherwise denies each and every allegation in

Paragraph 170.

171.    With respect to Paragraph 171, Mr. Tuck states that these allegations concern and

are directed to non-party PricewaterhouseCoopers, are not directed against Mr. Tuck or any other

defendant in this action, and that no response is therefore required, and on that basis denies each

and every allegation in Paragraph 171.  To the extent a response is required, Mr. Tuck admits

that PricewaterhouseCoopers served as the Company's independent auditor during the portion of

the putative Class Period in which he was employed by Organogenesis, but otherwise lacks

personal knowledge or information sufficient to form a belief as to the truth of each and every

allegation in Paragraph 171, and on that basis denies them.

172.     With respect to Paragraph 172, Mr. Tuck states that these allegations are directed to non-party PricewaterhouseCoopers, are not directed against Mr. Tuck or any other defendant in this action, and that no response is therefore required, and on that basis denies each and every allegation in Paragraph 172.  To the extent a response is required, Mr. Tuck admits that PricewaterhouseCoopers served as Organogenesis' auditor and principal accounting firm during the portion of the putative Class Period in which he was employed by Organogenesis, and that PricewaterhouseCoopers had knowledge of Organogenesis' financial reporting practices.  Mr. Tuck otherwise lacks personal knowledge or information sufficient to form a belief as to the truth of each and every allegation in Paragraph 172, and on that basis denies them.

173.     With respect to Paragraph 173 and footnote 6, Mr. Tuck states that these allegations are directed to non-party PricewaterhouseCoopers, are not directed against Mr. Tuck or any other defendant in this action, and that no response is therefore required, and on that basis denies each and every allegation in Paragraph 173.  To the extent a response is required, Mr. Tuck admits that PricewaterhouseCoopers served as the Company's independent auditor during the portion of the putative Class Period in which he was employed by Organogenesis, but otherwise lacks personal knowledge or information sufficient to form a belief as to the truth of each and every allegation in Paragraph 173, and on that basis denies them.

174.     With respect to Paragraph 174, Mr. Tuck states that these allegations are directed to non-party PricewaterhouseCoopers, are not directed against Mr. Tuck or any other defendant in this action, and that no response is therefore required, and on that basis denies each and every allegation in Paragraph 174.  To the extent a response is required, Mr. Tuck admits that PricewaterhouseCoopers served as the Company's independent auditor during the portion of the putative Class Period in which he was employed by Organogenesis, but otherwise lacks personal

knowledge or information sufficient to form a belief as to the truth of each and every allegation in Paragraph 174, and on that basis denies them.

With respect to Paragraph 174(a), Mr. Tuck states that these allegations are directed to non-party PricewaterhouseCoopers, are not directed against Mr. Tuck or any other defendant in this action, and that no response is therefore required, and on that basis denies each and every allegation in Paragraph 174(a). To the extent a response is required, Mr. Tuck lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning events allegedly occurring after he left the Company on June 15, 2000, and on that basis denies them. Mr. Tuck further lacks personal knowledge or information sufficient to form a belief as to the truth of each and every allegation other in Paragraph 174(a), and on that basis denies them.

With respect to Paragraph 174(b), Mr. Tuck states that these allegations are directed to non-party PricewaterhouseCoopers, are not directed against Mr. Tuck or any other defendant in this action, and that no response is therefore required, and on that basis denies each and every allegation in Paragraph 174(b). To the extent a response is required, Mr. Tuck lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning events allegedly occurring after he left the Company on June 15, 2000, and on that basis denies them. Mr. Tuck further lacks personal knowledge or information sufficient to form a belief as to the truth of each and every allegation other in Paragraph 174(b), and on that basis denies them.

With respect to Paragraph 174(c), Mr. Tuck states that these allegations are directed to non-party PricewaterhouseCoopers, are not directed against Mr. Tuck or any other defendant in this action, and that no response is therefore required, and on that basis denies each and every allegation in Paragraph 174(c). To the extent a response is required, Mr. Tuck lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning

events allegedly occurring after he left the Company on June 15, 2000, and on that basis denies

them.  Mr. Tuck further lacks personal knowledge or information sufficient to form a belief as to

the truth of each and every allegation other in Paragraph 174(c), and on that basis denies them.

With respect to Paragraph 174(d), Mr. Tuck states that these allegations are directed to

non-party PricewaterhouseCoopers, are not directed against Mr. Tuck or any other defendant in

this action, and that no response is therefore required, and on that basis denies each and every

allegation in Paragraph 174(d).  To the extent a response is required, Mr. Tuck lacks personal

knowledge or information sufficient to form a belief as to the truth of each and every allegation

in Paragraph 174(d), and on that basis denies them.

175.    With respect to Paragraph 175, Mr. Tuck states that these allegations are directed

to non-party PricewaterhouseCoopers, are not directed against Mr. Tuck or any other defendant

in this action, and that no response is therefore required, and on that basis denies each and every

allegation in Paragraph 175.  To the extent a response is required, Mr. Tuck admits that

PricewaterhouseCoopers served as the Company's independent auditor during the portion of the

putative Class Period in which he was employed by Organogenesis, but lacks personal

knowledge or information sufficient to form a belief as to the truth of each and every other

allegation in Paragraph 175, and on that basis denies them.

176.    With respect to Paragraph 176, Mr. Tuck states that these allegations are directed

to non-party PricewaterhouseCoopers, are not directed against Mr. Tuck or any other defendant

in this action, and that no response is therefore required, and on that basis denies each and every

allegation in Paragraph 176.  To the extent a response is required, Mr. Tuck admits that

PricewaterhouseCoopers served as the Company's independent auditor during the portion of the

putative Class Period in which he was employed by Organogenesis, but lacks personal

knowledge or information sufficient to form a belief as to the truth of each and every other

allegation Paragraph 176, and on that basis denies them.

177.    With respect to Paragraph 177, Mr. Tuck states that these allegations are directed

to non-party PricewaterhouseCoopers, are not directed against Mr. Tuck or any other defendant

in this action, and that no response is therefore required, and on that basis denies each and every

allegation in Paragraph 177.  To the extent a response is required, Mr. Tuck admits that

PricewaterhouseCoopers served as the Company's independent auditor during the portion of the

putative Class Period in which he was employed by Organogenesis, but lacks personal

knowledge or information sufficient to form a belief as to the truth of each and every other

allegation in Paragraph 177 and on that basis denies them.

178.    With respect to Paragraph 178, Mr. Tuck states that these allegations are directed

to non-party PricewaterhouseCoopers, are not directed against Mr. Tuck or any other defendant

in this action, and that no response is therefore required, and on that basis denies each and every

allegation in Paragraph 178.  To the extent a response is required, Mr. Tuck admits that

PricewaterhouseCoopers served as the Company's independent auditor during the portion of the

putative Class Period in which he was employed by Organogenesis, but lacks personal

knowledge or information sufficient to form a belief as to the truth of each and every other

allegation in Paragraph 178, and on that basis denies them.

179.    With respect to Paragraph 179, Mr. Tuck states that these allegations are directed

to non-party PricewaterhouseCoopers, are not directed against Mr. Tuck or any other defendant

in this action, and that no response is therefore required, and on that basis denies each and every

allegation in Paragraph 179.  To the extent a response is required, Mr. Tuck admits that

PricewaterhouseCoopers served as the Company's independent auditor during the portion of the

putative Class Period in which he was employed by Organogenesis, but lacks personal knowledge or information sufficient to form a belief as to the truth of each and every other allegation in Paragraph 179, and on that basis denies them.

180.    With respect to Paragraph 180, Mr. Tuck states that these allegations are directed to non-party PricewaterhouseCoopers, are not directed against Mr. Tuck or any other defendant in this action, and that no response is therefore required, and on that basis denies each and every allegation in Paragraph 180.  To the extent a response is required, Mr. Tuck admits that PricewaterhouseCoopers served as the Company's independent auditor during the portion of the putative Class Period in which he was employed by Organogenesis, but lacks personal knowledge or information sufficient to form a belief as to the truth of each and every other allegation in Paragraph 180, and on that basis denies them.

181.    With respect to Paragraph 181, Mr. Tuck states that these allegations are directed to non-party PricewaterhouseCoopers, are not directed against Mr. Tuck or any other defendant in this action, and that no response is therefore required, and on that basis denies each and every allegation in Paragraph 181.  To the extent a response is required, Mr. Tuck admits that PricewaterhouseCoopers served as the Company's independent auditor during the portion of the putative Class Period in which he was employed by Organogenesis, but lacks personal knowledge or information sufficient to form a belief as to the truth of each and every other allegation in Paragraph 181, and on that basis denies them.

182.    With respect to Paragraph 182, Mr. Tuck states that these allegations are directed to non-party PricewaterhouseCoopers, are not directed against Mr. Tuck or any other defendant in this action, and that no response is therefore required, and on that basis denies each and every allegation in Paragraph 182.  To the extent a response is required, Mr. Tuck admits that

PricewaterhouseCoopers served as the Company's independent auditor during the portion of the putative Class Period in which he was employed by Organogenesis, but lacks personal knowledge or information sufficient to form a belief as to the truth of each and every other allegation in Paragraph 182, and on that basis denies them.

183.    With respect to Paragraph 183, Mr. Tuck states that these allegations are directed to non-party PricewaterhouseCoopers, are not directed against Mr. Tuck or any other defendant in this action, and that no response is therefore required, and on that basis denies each and every allegation in Paragraph 183.  To the extent a response is required, Mr. Tuck admits that PricewaterhouseCoopers served as the Company's independent auditor during the portion of the putative Class Period in which he was employed by Organogenesis, but lacks personal knowledge or information sufficient to form a belief as to the truth of each and every other allegation in Paragraph 183, and on that basis denies them.

184.    With respect to Paragraph 184, Mr. Tuck states that these allegations are directed to non-party PricewaterhouseCoopers, are not directed against Mr. Tuck or any other defendant in this action, and that no response is therefore required, and on that basis denies each and every allegation in Paragraph 184.  To the extent a response is required, Mr. Tuck admits that PricewaterhouseCoopers served as the Company's independent auditor during the portion of the putative Class Period in which he was employed by Organogenesis, but lacks personal knowledge or information sufficient to form a belief as to the truth of each and every other allegation in Paragraph 184, and on that basis denies them.

185.    With respect to Paragraph 185, Mr. Tuck states that these allegations are directed to non-party PricewaterhouseCoopers, are not directed against Mr. Tuck or any other defendant in this action, and that no response is therefore required, and on that basis denies each and every

allegation in Paragraph 185. To the extent a response is required, Mr. Tuck admits that PricewaterhouseCoopers served as the Company's independent auditor during the portion of the putative Class Period in which he was employed by Organogenesis, but lacks personal knowledge or information sufficient to form a belief as to the truth of each and every other allegation in Paragraph 185, and on that basis denies them.

186. With respect to Paragraph 186, Mr. Tuck states that these allegations are directed to non-party PricewaterhouseCoopers, are not directed against Mr. Tuck or any other defendant in this action, and that no response is therefore required, and on that basis denies each and every allegation in Paragraph 186. To the extent a response is required, Mr. Tuck admits that PricewaterhouseCoopers served as the Company's independent auditor during the portion of the putative Class Period in which he was employed by Organogenesis, but lacks personal knowledge or information sufficient to form a belief as to the truth of each and every other allegation in Paragraph 186, and on that basis denies them.

187. With respect to Paragraph 187, no response is required to the allegations that consist merely of conclusions of law. Mr. Tuck otherwise denies each and every allegation in Paragraph 187.

188. With respect to Paragraph 188, Mr. Tuck denies each and every allegation in Paragraph 188.

189. With respect to Paragraph 189, Mr. Tuck denies each and every allegation in Paragraph 189.

190. With respect to Paragraph 190, Mr. Tuck admits that, during the portion of the putative Class Period in which he was employed by Organogenesis, the Company was listed and traded on the American Stock Exchange, filed periodic reports with the SEC, was followed by

securities analysts who disseminated reports and issued press releases to the public. No response is required to those allegations of Paragraph 190 regarding the efficiency of the market for Organogenesis stock, which consist of legal conclusions. Mr. Tuck otherwise denies each and every allegation in Paragraph 190.

191.    With respect to Paragraph 191, no response is required to those allegations of Paragraph 191 regarding the rate at which market information was "digested." To the extent that a response to such allegations is required, Mr. Tuck lacks personal knowledge or information sufficient to form a belief as to those allegations. Mr. Tuck denies that the price of Organogenesis stock was artificially inflated during the portion of the putative Class Period in which he was employed by Organogenesis. Mr. Tuck further denies that plaintiffs or members of the purported class suffered injury, and if such injury exists (which is denied), Mr. Tuck denies that plaintiffs and members of the purported class suffered "similar injury." Mr. Tuck otherwise denies each and every allegation in Paragraph 191.

192.    With respect to Paragraph 192, no response is required to the allegations of Paragraph 192, which consist merely of conclusions of law. To the extent a response is required, Mr. Tuck denies the allegations of Paragraph 192.

193.    With respect to Paragraph 193, Mr. Tuck repeats and incorporates by reference each of his prior responses to Paragraphs 1-192, as though set forth herein in their entirety.

194.    No response is required to the allegations contained in Paragraph 194, which consist merely of conclusions of law. To the extent the allegations of Paragraph 194 contain allegations of fact, Mr. Tuck denies each and every allegation in Paragraph 194.

195.    No response is required to the allegations contained in Paragraph 195, which consist merely of conclusions of law.  To the extent the allegations of Paragraph 195 contain allegations of fact, Mr. Tuck denies each and every allegation in Paragraph 195.

196.    No response is required to the allegations contained in Paragraph 196, which consist merely of conclusions of law.  To the extent the allegations of Paragraph 196 contain allegations of fact, Mr. Tuck denies each and every allegation in Paragraph 196.

197.    No response is required to the allegations contained in Paragraph 197, which consist merely of conclusions of law.  To the extent the allegations of Paragraph 197 contain allegations of fact, Mr. Tuck denies each and every allegation in Paragraph 197.

198.    No response is required to the allegations contained in Paragraph 198, which consist merely of conclusions of law.  To the extent the allegations of Paragraph 198 contain allegations of fact, Mr. Tuck denies each and every allegation in Paragraph 198.

199.    No response is required to the allegations contained in Paragraph 199, which consist merely of conclusions of law.  To the extent the allegations of Paragraph 199 contain allegations of fact, Mr. Tuck denies each and every allegation in Paragraph 199.

200.    No response is required to the allegations contained in Paragraph 200, which consist merely of conclusions of law.  To the extent the allegations of Paragraph 200 contain allegations of fact, Mr. Tuck denies each and every allegation in Paragraph 200.

201.    No response is required to the allegations contained in Paragraph 201, which consist merely of conclusions of law.  To the extent the allegations of Paragraph 201 contain allegations of fact, Mr. Tuck denies each and every allegation in Paragraph 201.

202.    No response is required to the allegations contained in Paragraph 202, which consist merely of conclusions of law.  To the extent the allegations of Paragraph 202 contain allegations of fact, Mr. Tuck denies each and every allegation in Paragraph 202.

203.    No response is required to the allegations contained in Paragraph 203, which consist merely of conclusions of law.  To the extent the allegations of Paragraph 203 contain allegations of fact, Mr. Tuck denies each and every allegation in Paragraph 203.

204.    With respect to Paragraph 204, Mr. Tuck repeats and incorporates by reference each of his prior responses to Paragraphs 1-204, as though set forth herein in their entirety.

205.    With respect to Paragraph 205, no response is required to the allegations contained in Paragraph 205 that consist merely of conclusions of law.  To the extent that Paragraph 205 contains allegations of fact, Mr. Tuck admits that, during the putative Class Period, he held a position at Organogenesis, and during a portion of the putative Class Period served as an officer of the Company.  Mr. Tuck denies that he held a director position at the Company, and denies that he held an officer position during the entire putative Class Period.  Mr. Tuck incorporates by reference his response to Paragraph 32.  Mr. Tuck admits that at certain times, to the extent consistent with his role, upon request, he had access to certain internal corporate documents and other information provided to him in connection therewith.  Mr. Tuck presently is without personal knowledge or information sufficient to form a belief as to the specific materials he allegedly received and when.  Mr. Tuck lacks personal knowledge or information sufficient to form a belief as to the truth of allegations concerning what documents any other unidentified "[i]ndividual [d]efendants" may have received and when they might have received them, and on that basis denies them.  Mr. Tuck further admits that he performed in good

faith all positions which he held, and otherwise denies each and every allegation in Paragraph 205.

206.    With respect to Paragraph 206, no response is required to the allegations contained in Paragraph 206 that consist merely of conclusions of law.  To the extent that Paragraph 206 contains allegations of fact, Mr. Tuck admits that he was an officer of the Company for a portion of the putative Class Period, but denies that he was a director of the Company.  Mr. Tuck incorporates by reference his response to Paragraph 32.  Mr. Tuck further admits that he performed in good faith all duties and responsibilities related to the positions which he held.  Mr. Tuck otherwise denies each and every allegation in Paragraph 206.

207.    No response is required to the allegations contained in Paragraph 207, which consist merely of conclusions of law.  To the extent the allegations of Paragraph 207 contain allegations of fact, Mr. Tuck denies each and every allegation in Paragraph 207.

208.    No response is required to the allegations contained in Paragraph 208, which consist merely of conclusions of law.  To the extent the allegations of Paragraph 208 contain allegations of fact, Mr. Tuck denies each and every allegation in Paragraph 208.

To the extent that any response is required to Plaintiffs' prayer for relief, Mr. Tuck denies each and every allegation contained therein.

### SECOND DEFENSE

The Complaint and each purported cause of action alleged therein fails to state a claim upon which relief may be granted.

### THIRD DEFENSE

Plaintiffs have failed to plead fraud or its predicate acts with sufficient particularity.

## FOURTH DEFENSE

Plaintiffs' claims as to the Defendants are barred in whole or in part by the applicable statute of limitations.

## FIFTH DEFENSE

Plaintiffs lack standing to assert the claims in the Complaint.

## SIXTH DEFENSE

Plaintiffs' claims under Section 20(a) of the Exchange Act fail because defendants were not controlling persons, did not exercise actual control over others allegedly liable for a primary violation, in every respect acted in good faith, were not culpable participants in any misconduct, and did not directly or indirectly induce any acts allegedly constituting a primary violation of the Exchange Act or any rule or regulation promulgated thereunder.

## SEVENTH DEFENSE

Defendants did not act with scienter but instead exercised reasonable due diligence and acted in good faith and in conformity with all applicable standards and state and federal statutes, including but not limited to the Securities Exchange Act of 1934, as amended, the Private Securities Litigation Reform Act of 1995, and all applicable rules and regulations promulgated thereunder.

## EIGHTH DEFENSE

Plaintiffs are estopped from obtaining relief, or their claims are barred, by their own conduct or the disclosure of, or plaintiffs' assumption of, the risks of their investment.

## NINTH DEFENSE

Plaintiffs' claims are barred by the Private Securities Litigation Reform Act.

## TENTH DEFENSE

Plaintiffs' claims are barred because they failed to join indispensable parties.

## ELEVENTH DEFENSE

The business judgment rule protects defendants' alleged actions and, thus, bars recovery by plaintiffs and the purported class on their claims.

## TWELFTH DEFENSE

Plaintiffs' claims are barred in whole or in part because plaintiffs failed to make reasonable efforts to mitigate their injuries or damages.

## THIRTEENTH DEFENSE

Plaintiffs' claims are barred in whole or in part because any decline in the market price of the Organogenesis securities purchased by the plaintiffs were caused by factors other than defendants' alleged conduct.

## FOURTEENTH DEFENSE

Plaintiffs' claims are barred in whole or in part by In re: Organogenesis, Inc., No. 02-16944-WCH (Bankr. D. Mass. 2003).

## FIFTEENTH DEFENSE

Plaintiffs' claims are barred in whole or in part by the doctrines of waiver, estoppel, ratification and/or unclean hands.

Mr. Tuck reserves the right to assert additional defenses as they become known through the course of discovery.

WHEREFORE, Mr. Tuck respectfully requests that this Court dismiss the Complaint and plaintiffs' claims, enter judgment in favor of the defendants and against plaintiffs, award defendants the reasonable attorneys' fees, costs, and expenses they have incurred in the defense of this action, and grant defendants any additional relief that is fair and appropriate.

ALAN W. TUCK

By his attorneys,

_/s/ Jonathan A. Shapiro_____
Jeffrey B. Rudman (BBO #433380)
Jonathan A. Shapiro (BBO #567838)
Kimberly Friday (BBO #660544)
Wilmer Cutler Pickering Hale and Dorr LLP
60 State Street, Boston, MA  02109
(617) 526-6000

September 16, 2005