UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

IN RE ORGANOGENESIS SECURITIES
LITIGATION

Civ. No. 04-10027-JLT

### ANSWER AND AFFIRMATIVE DEFENSES OF DEFENDANT ALBERT ERANI
### TO CORRECTED CONSOLIDATED AMENDED COMPLAINT

Defendant Albert Erani ("Mr. Erani"), based on his knowledge and belief, hereby

answers the Corrected Consolidated Amended Class Action Complaint for Violation of the

Federal Securities Laws ("Complaint" or "Compl."), dated December 22, 2004.  In responding to

the Complaint, Mr. Erani does not admit that he bears the burden of proving any of the defenses

set forth below, nor the relevance of any of plaintiffs' allegations.  To the extent not explicitly

admitted, all allegations of the Complaint are denied.

### FIRST DEFENSE

Mr. Erani denies each allegation except where specifically admitted, and in every respect

denies liability, denies that he engaged in any improper conduct and denies that plaintiffs are

entitled to relief.  Mr. Erani presently is without personal knowledge sufficient to form a belief as

to the truth of the allegations concerning plaintiffs' unidentified sources, including whether the

source(s) actually provided the information attributed to them.  Mr. Erani responds to the

specifically numbered allegations of the Complaint as follows:

To the extent that any response is required to plaintiffs' unnumbered Introductory

Paragraph, Mr. Erani denies each and every allegation therein.

1.      With respect to Paragraph 1, no response is required to the allegations of that

paragraph, which sets forth plaintiffs' characterization of this action, consists of legal

conclusions, and does not purport to require a response from Defendants.  To the extent that this

paragraph purports to contain factual assertions requiring a response, Mr. Erani admits that

plaintiffs assert that this is a federal class action asserting claims under the Securities Exchange

Act of 1934 (the "Exchange Act"). Mr. Erani denies that any acts occurred to give rise to

violation of this Act or any other securities laws, and further denies that this action may be

properly maintained as a class action. Mr. Erani otherwise denies each and every allegation in

Paragraph 1.

2.      With respect to Paragraph 2, Mr. Erani admits that during the putative Class

Period Organogenesis, Inc. ("Organogenesis" or "the Company") manufactured Apligraf, which

has been described as a unique skin replacement therapy used for skin wounds. No response is

required to the allegation concerning Organogenesis' revenue during the putative Class Period,

which is set forth in publicly filed financial statements that speak for themselves. To the extent a

response is required, Mr. Erani denies that plaintiffs completely and accurately construe and

characterize those documents. Mr. Erani otherwise denies each and every allegation in

Paragraph 2.

3.      With respect to Paragraph 3, no response is required to those allegations

purporting to construe and paraphrase unidentified 1999 public statements, which speak for

themselves. Mr. Erani admits that prior to and during the putative Class Period, the Company

issued public statements and public filings related to its marketing agreements, its funding and its

profitability, which speak for themselves. Mr. Erani admits that Organogenesis and Novartis

Pharma AG (formerly Sandoz Pharma Ltd.) ("Novartis") were parties to certain contracts during

the putative Class Period (collectively referred to herein as "the Novartis Contracts"), and that

those documents set forth the terms of the parties' relationship. No response is required to those

allegations purporting to construe and characterize the Novartis Contracts, which speak for

themselves.  To the extent a response is required, Mr. Erani denies Paragraph 3 accurately and

completely construes and characterizes the Novartis Contracts and the parties' relationship as set

forth therein.  Mr. Erani otherwise denies each and every allegation in Paragraph 3.

4.     With respect to Paragraph 4, Mr. Erani denies that the Company filed a Form

10-K with the Securities and Exchange Commission ("SEC") on March 29, 2000, but admits that

the Company filed a Form 10-K with the SEC on or about March 30, 2000.  Mr. Erani further

admits that the Form 10-K disclosed the Company's financial plan, including the need to secure

additional funding.  No further response is required to the remaining allegations of Paragraph 4,

which purport to construe and excerpt this document, which speaks for itself.  To the extent any

further response is required, Mr. Erani denies that Paragraph 4 completely and accurately

construes and excerpts that document.  Mr. Erani otherwise denies each and every allegation in

Paragraph 4.

5.     With respect to Paragraph 5, Mr. Erani lacks personal knowledge sufficient to

form a belief as to the truth of the allegations concerning the purported beliefs of plaintiffs and

other members of the purported class, and on that basis denies them.  Mr. Erani further lacks

personal knowledge sufficient to form a belief as to the truth of the allegations concerning what,

if anything, unidentified "[d]efendants repeatedly stated" in unidentified statements, and on that

basis denies them.  Mr. Erani admits that Organogenesis and Novartis were parties to the

Novartis Contracts, and that those documents set forth the terms of the parties' relationship.  No

response is required to those allegations purporting to construe and characterize the Novartis

Contracts, which speak for themselves.  To the extent any further response is required, Mr. Erani

denies that Paragraph 5 completely and accurately construes and characterizes the Novartis

Contracts and the parties' relationship as set forth therein. Mr. Erani otherwise denies each and every allegation in Paragraph 5.[1]

6.    With respect to Paragraph 6, Mr. Erani admits that the Company issued public statements and public filings related to its Apligraf product, the Company's funding and the Company's business plan. Mr. Erani lacks personal knowledge sufficient to form a belief as to the truth of the allegations concerning the statements of unidentified "defendants," and on that basis denies them. Mr. Erani further states that no response is required to those allegations purporting to construe and characterize unidentified public statements, which speak for themselves. Mr. Erani denies that Paragraph 6 accurately and completely construes and characterizes such statements. Mr. Erani otherwise denies each and every allegation in Paragraph 6.

7.    With respect to Paragraph 7, Mr. Erani lacks personal knowledge sufficient to form a belief as to the truth of the allegations concerning any investigation by plaintiffs' counsel or their representatives, and on that basis denies them. Mr. Erani admits that, in October 2001, Mr. John J. Arcari ("Mr. Arcari") served as the Company's Chief Financial Officer, but lacks personal knowledge sufficient to form a belief as to the truth of the allegations concerning the existence or content of the alleged "Confidential Arcari Document," and on that basis denies them. Mr. Erani further states that, in any event, no response is required to those allegations purporting to construe and excerpt any such document, which would speak for itself. To the extent a response is required, Mr. Erani lacks knowledge sufficient to form a belief as to the truth

---

[1]    With respect to footnote 1, Mr. Erani admits that certain of the Novartis Contracts set forth the parties' relationship with respect to the exercise of a put option. No response is required to the allegations of footnote 1, which consists of legal conclusions and plaintiffs' characterization of certain of the Novartis Contracts, which speak for themselves. To the extent any further response is required, Mr. Erani denies that footnote 1 completely and accurately construes and excerpts the Novartis Contracts, and otherwise denies each and every allegation in footnote 1.

of allegations regarding the alleged statements of unidentified "stock brokers." Mr. Erani denies

that he sought to "manipulate[e]" Organogenesis stock, or that he "encouraged the Company to

prepare overly optimistic financial projections to existing and potential service providers."

Mr. Erani otherwise denies each and every allegation in Paragraph 7.

8.      With respect to Paragraph 8, Mr. Erani denies each and every allegation in

Paragraph 8.

9.      With respect to Paragraph 9, Mr. Erani denies each and every allegation in

Paragraph 9.

10.      With respect to Paragraph 10, Mr. Erani admits that, following the close of the

putative Class Period, Organogenesis initiated a bankruptcy proceeding in the United States

Bankruptcy Court for the District of Massachusetts, Eastern Division. No response is required to

those allegations concerning the facts or proceedings of the bankruptcy, which are set forth in

court papers filed and orders entered in that proceeding, which speak for themselves. Mr. Erani

otherwise denies each and every allegation in Paragraph 10.

11.      With respect to Paragraph 11, Mr. Erani denies each and every allegation in

Paragraph 11.

12.      With respect to Paragraph 12, no response is required to the allegations of that

paragraph that are not directed to Mr. Erani, and that concern the purported actions of non-party

PricewaterhouseCoopers. Mr. Erani admits that PricewaterhouseCoopers served as

Organogenesis' independent auditor during the putative Class Period. Mr. Erani otherwise

denies each and every allegation in Paragraph 12.

With respect to Paragraph 12(a), no response is required to the allegations of that

paragraph that are not directed to Mr. Erani, and that concern the purported actions of non-party

PricewaterhouseCoopers.  Mr. Erani lacks personal knowledge sufficient to form a belief as to the allegations concerning the purported conduct or beliefs of PricewaterhouseCoopers, and on that basis denies them.  Mr. Erani further lacks personal knowledge sufficient to form a belief as to the truth of the allegations concerning the existence or content of the alleged "Confidential Arcari Document," and on that basis denies them.  Mr. Erani further states that, in any event, no response is required to those allegations purporting to construe and excerpt any such document, which would speak for itself.  Mr. Erani otherwise denies each and every allegation in Paragraph 12(a).

With respect to Paragraph 12(b), no response is required to the allegations of that paragraph that are not directed to Mr. Erani, and that concern the purported actions of non-party PricewaterhouseCoopers.  Mr. Erani admits that PricewaterhouseCoopers served as Organogenesis' independent auditor during the putative Class Period, and thus certified and audited the Company's financial statements during the putative Class Period, as set forth in the 1999 Form 10-K, filed March 30, 2000 and the 2000 Form 10-K, filed April 2, 2001, which speak for themselves.  Mr. Erani lacks personal knowledge sufficient to form a belief as to the allegations concerning the purported conduct or beliefs of PricewaterhouseCoopers, and on that basis denies them.  Mr. Erani otherwise denies each and every allegation in Paragraph 12(b).

With respect to Paragraph 12(c), no response is required to the allegations of that paragraph that are not directed to Mr. Erani, and that concern the purported actions of non-party PricewaterhouseCoopers.  Mr. Erani lacks personal knowledge sufficient to form a belief as to the allegations concerning the purported conduct or beliefs of PricewaterhouseCoopers, and on that basis denies them.  Mr. Erani further lacks personal knowledge sufficient to form a belief as to the truth of the allegations concerning the existence or content of the alleged "Confidential

Arcari Document," and on that basis denies them. Mr. Erani further states that, in any event, no response is required to those allegations purporting to construe and excerpt any such document, which would speak for itself. Mr. Erani admits that in 2001 the Company was working with UBS Warburg. [2] Mr. Erani otherwise denies each and every allegation in Paragraph 12(c).

With respect to Paragraph 12(d), no response is required to the allegations of that paragraph, which are not directed to Mr. Erani, and which concern the purported actions of non-party PricewaterhouseCoopers. To the extent a response is required, Mr. Erani denies that the Company's financial position was not appropriately disclosed to investors, and otherwise denies each and every allegation in Paragraph 12(d).

13.    With respect to Paragraph 13, Mr. Erani admits that, in April 2002 (after the close of the putative Class Period), PricewaterhouseCoopers, in its Report of Independent Accountants, stated that it had doubts regarding Organogenesis' ability to continue as a going concern. No response is required to those allegations concerning plaintiffs' opinion as to when such statement "should have" been issued, which consist of legal conclusions. Mr. Erani otherwise denies each and every allegation in Paragraph 13.

14.    With respect to Paragraph 14, Mr. Erani admits that the Company filed a Form 8-K with the SEC on or about January 30, 2002. No further response is required to the remaining allegations of Paragraph 14, which purport to construe and excerpt this document, which speaks for itself. To the extent any further response is required, Mr. Erani denies that Paragraph 14 completely and accurately construes and excerpts that document. Mr. Erani otherwise denies each and every allegation in Paragraph 14.

---

[2]    No response is required to the allegations in footnote 2, which consist of plaintiffs' legal conclusions and characterizations of the term "comfort letter[s]."

15.    With respect to Paragraph 15, Mr. Erani admits that on February 7, 2002, Organogenesis' stock price reached an intra-day price as low as $1.32 per share, but denies that it closed at this price. Mr. Erani further admits that on March 7, 2000, Organogenesis' stock price reached an intra-day price as high as $22.00, but denies that it closed at this price. Mr. Erani otherwise denies each and every allegation in Paragraph 15.

16.    With respect to Paragraph 16, Mr. Erani admits that in September 2002 (after the putative Class Period), the Company initiated a bankruptcy proceeding in the United States Bankruptcy Court for the District of Massachusetts, Eastern Division. No response is required to those allegations concerning the facts or proceedings of the bankruptcy, which are set forth in court papers filed and orders entered in that proceeding, and which speak for themselves. Mr. Erani otherwise denies each and every allegation in Paragraph 16.

17.    With respect to Paragraph 17, no response is required to the allegations of that paragraph, which consist of legal conclusions. To the extent a response is required, Mr. Erani admits that plaintiffs purport to bring claims pursuant to Sections 10(b) and 20(a) of the Exchange Act [15 U.S.C. §§ 78j(b) and 78t(a)] and Rule 10b-5 promulgated thereunder by the SEC [17 C.F.R. §240.10b-5]. Mr. Erani otherwise denies each and every allegation in Paragraph 17.

18.    With respect to Paragraph 18, no response is required to the allegations of that paragraph, which consist of legal conclusions regarding this Court's jurisdiction. To the extent a response is required, Mr. Erani denies each and every allegation in Paragraph 18.

19.    With respect to Paragraph 19, no response is required to the allegations in the first sentence of that paragraph, which consist of legal conclusions with respect to venue. Mr. Erani admits that during the putative Class Period Organogenesis maintained its principal place of

business in this District, but otherwise denies the allegations in the second sentence in Paragraph 19.  Mr. Erani otherwise denies each and every allegation in Paragraph 19.

20.      With respect to Paragraph 20, no response is required to the allegations of Paragraph 20, which consist of legal conclusions.  To the extent a response is required, Mr. Erani denies each and every allegation in Paragraph 20.

21.      With respect to Paragraph 21, Mr. Erani admits that the Court appointed Bruno Hofmann, John H. Bowie, Jr., Richard Madigan and Richard Conen as Lead Plaintiffs by an Order dated July 20, 2004.  Mr. Erani specifically denies that any person or entity acquired Organogenesis stock at artificially inflated prices.  Mr. Erani otherwise denies each and every allegation in Paragraph 21.

22.      With respect to Paragraph 22, Mr. Erani admits that, during the purported Class Period, Organogenesis was a Delaware corporation with its principal place of business at 150 Dan Road, Canton, Massachusetts 02021, and that, during the putative Class Period, Organogenesis designed, developed and manufactured medical products containing living cells and/or natural connective tissue, including living tissue replacements, cell-based organ assist devices and other tissue-engineered products.  Mr. Erani further admits that for a portion of the putative Class Period, Apligraf was the only product containing living human cells to have gained U.S. Food and Drug Administration ("FDA") PMA marketing approval in the United States.  Mr. Erani otherwise denies each and every allegation in Paragraph 22.

23.      With respect to Paragraph 23, Mr. Erani admits that at certain points during the putative Class Period, non-party Novartis held shares of Organogenesis stock, as set forth in the Form S-3 Registration Statement filed by the Company on November 1, 2001, which speaks for itself.  Mr. Erani further admits that, during the putative Class Period, Novartis was a

pharmaceutical company, and that Organogenesis and Novartis were parties to the Novartis Contracts, which set forth the terms of the parties' relationship. No response is required to the allegations of Paragraph 23 that purport to construe and characterize the Novartis Contracts, the terms of which speak for themselves. To the extent a response to these allegations is required, Mr. Erani denies that Paragraph 23 completely and accurately construes and characterizes the Novartis Contracts and the parties' relationship as set forth therein. Mr. Erani lacks personal knowledge sufficient to form a belief as to the allegations concerning Novartis' business operations in the United States, the origins of those operations, and the extent of those operations in the United States. Mr. Erani otherwise denies each and every allegation in Paragraph 23.

24. With respect to Paragraph 24, Mr. Erani denies that PricewaterhouseCoopers remains a defendant in this action. Mr. Erani admits that, throughout the putative Class Period, PricewaterhouseCoopers was the independent auditor of the Company.

25. With respect to Paragraph 25, Mr. Erani admits that Mr. Philip Laughlin ("Mr. Laughlin") served as President and a Director of Organogenesis from on or about October 5, 1999 through May 15, 2001, and served as a member of the Executive Committee of Organogenesis from on or about January 1, 2000 through May 15, 2001. Mr. Erani further admits that on or about January 1, 2000, Mr. Laughlin assumed the role of Chief Executive Officer of the Company. Mr. Erani further admits that Mr. Laughlin left the Company on or about May 15, 2001. Mr. Erani further admits that Mr. Laughlin signed some, but not all, of the Company's SEC filings during the putative Class Period, and states that those documents speak for themselves. Mr. Erani denies that Paragraph 25 completely and accurately construes and characterizes those documents. To the extent that plaintiffs purport to construe and characterize Mr. Laughlin's departure, or the reasons therefore, Mr. Erani lacks personal knowledge sufficient

to form a belief as to the truth of the allegations of Paragraph 25, and on that basis denies them.

Mr. Erani otherwise denies each and every allegation in Paragraph 25.

26.    With respect to Paragraph 26, Mr. Erani admits that during the putative Class

Period, Michael Sabolinski, M.D. ("Dr. Sabolinski") served as President, Chief Executive

Officer and member of the Board of the Company, and that he assumed those positions on

May 16, 2001.  Mr. Erani further admits that, before assuming these positions, and also during

the purported Class Period, Dr. Sabolinski also served as the Company's Senior Vice President,

Medical and Regulatory Affairs.  Mr. Erani admits that Dr. Sabolinski signed some, but not all,

of the Company's SEC filings during the putative Class Period, and states that those documents

speak for themselves.  Mr. Erani denies that Paragraph 26 completely and accurately construes

and characterizes those documents.  Mr. Erani further admits that Dr. Sabolinski ceased to serve

as President and Chief Executive Officer on April 5, 2002, but denies that Dr. Sabolinski left the

Company at this time.  To the extent plaintiffs purport to construe and characterize Dr.

Sabolinski's changes of position within the Company, and the reasons therefore, Mr. Erani

denies the allegations in Paragraph 26. Mr. Erani otherwise denies each and every allegation in

Paragraph 26.

27.    With respect to Paragraph 27, Mr. Erani admits that during the putative Class

Period, he served as a member of the Board of the Company, and on or about January 1, 2000,

assumed the role of Chairman of the Board.  Mr. Erani further admits that he served as Chairman

of the Board until he resigned from this position effective January 1, 2002, but denies that he

departed from the Board of the Company at this time.  Mr. Erani further states that he resigned as

a director of the Company on or about June 1, 2002.  Mr. Erani admits that he signed some, but

not all, of the Company's SEC filings during the putative Class Period, and states that those

documents speak for themselves. Mr. Erani denies that Paragraph 27 completely and accurately construes and characterizes those documents. To the extent that plaintiffs purport to construe and characterize his resignation as Chairman of the Board of Directors, or the reasons therefore, Mr. Erani denies the allegations of Paragraph 27. Mr. Erani otherwise denies each and every allegation in Paragraph 27.

28.    With respect to Paragraph 28, Mr. Erani denies that Mr. Ades remains a defendant in this action, as he was dismissed by an Order of this Court dated July 20, 2005. Mr. Erani further denies that Mr. Ades was appointed Chairman, President, and Chief Executive Officer of the Company in October 2002, but admits that Mr. Ades was appointed to these positions on or about November 20, 2002 (after the putative Class Period). Mr. Erani admits that Mr. Ades is his cousin. Mr. Erani further admits that, following the close of the putative Class Period, Organogenesis initiated a bankruptcy proceeding in the Untied States Bankruptcy Court for the District of Massachusetts, Eastern Division. No response is required to those allegations concerning the facts or proceedings of the bankruptcy, which are set forth in court papers filed and orders entered in that proceeding, and which speak for themselves. Mr. Erani otherwise denies each and every allegation in Paragraph 28.

29.    With respect to Paragraph 29, Mr. Erani admits that Ms. Donna Abelli Lopolito ("Ms. Lopolito") served as Chief Financial Officer and Vice President, Finance and Administration of Organogenesis between on or about March 1, 1996 and April 30, 2000. Mr. Erani denies that Ms. Lopolito served in such capacities during any other portion of the putative Class Period, or any time thereafter. Mr. Erani admits that Ms. Lopolito signed some, but not all, of the Company's SEC filings during the putative Class Period, and states that those documents speak for themselves. Mr. Erani denies that Paragraph 29 completely and accurately

construes and characterizes those documents.  Mr. Erani otherwise denies each and every

allegation in Paragraph 29.

30.     With respect to Paragraph 30, Mr. Erani admits that Mr. Arcari served as Chief

Financial Officer and Vice President, Finance and Administration of Organogenesis between

April 30, 2000 and May 14, 2002.  Mr. Erani admits that Mr. Arcari signed some, but not all, of

the Company's SEC filings during the putative Class Period, and states that those documents

speak for themselves.  Mr. Erani denies that Paragraph 30 completely and accurately construes

and characterizes those documents.  To the extent that plaintiffs purport to construe and

characterize Mr. Arcari's departure, or the reasons therefore, Mr. Erani lacks personal knowledge

sufficient to form a belief as to the truth of the allegations of Paragraph 30, and on that basis

denies them.  Mr. Erani otherwise denies each and every allegation in Paragraph 30.

31.     With respect to Paragraph 31, Mr. Erani admits that Mr. Herbert M. Stein

("Mr. Stein") served as Chairman of the Board and Chief Executive Officer of Organogenesis

until his retirement from these positions on January 1, 2000.  Mr. Erani further admits that, after

Mr. Stein's retirement, Mr. Stein remained as a member of the Board and Chairman Emeritus

until the Company announced his resignation from the Board on or about March 13, 2000.

Mr. Erani admits that, during the putative Class Period, Mr. Stein's electronic signature appears

on certain of the Company's SEC filings, including Organogenesis' Form 10-Q for the third

quarter of 1999, and certain Registration Statements issued in connection with the sale and

offering of stock by the Company, including Registration Statements filed on December 27,

1999, an amended Registration Statement filed on February 3, 2000, and a second amended

Registration filed on February 14, 2000, and states that those documents speak for themselves.

Mr. Erani denies that Paragraph 31 completely and accurately construes and characterizes those documents. Mr. Erani otherwise denies each and every allegation in Paragraph 31.

32.    With respect to Paragraph 32, Mr. Erani admits that Mr. Alan W. Tuck ("Mr. Tuck") served as Chief Strategic Officer of the Company at the inception of the putative Class Period and left the Company on June 15, 2000, but denies that Mr. Tuck served in such capacities during any other portion of the putative Class Period, or any time thereafter. Mr. Erani otherwise denies each and every allegation in Paragraph 32.

33.    With respect to Paragraph 33, no response is required to the allegations of Paragraph 33, which purport to describe and construe the allegations of the Complaint.

34.    With respect to Paragraph 34, Mr. Erani admits that, during the putative Class Period, he served as a director of Organogenesis. Mr. Erani denies that he served as an officer of Organogenesis during the putative Class Period. Mr. Erani incorporates by reference his response to Paragraph 27. Mr. Erani admits that at certain times, upon request and to the extent consistent with his role, he had access to certain internal corporate documents, spoke to other corporate personnel, attended Board of Director meetings and committees thereof and had access to certain reports and other information provided to him in connection therewith. Mr. Erani presently is without personal knowledge sufficient to form a belief as to the specific materials he allegedly received and when. Mr. Erani lacks personal knowledge sufficient to form a belief as to the truth of allegations concerning what documents any other unidentified "[i]ndividual [d]efendants" may have received and when they might have received them, and on that basis denies them. Mr. Erani otherwise denies each and every allegation in Paragraph 34.

35.    With respect to Paragraph 35, no response is required to those allegations which consist of plaintiffs' legal conclusions as to whether defendants in this action may be treated as a

"group" for pleading purposes, but to the extent a response is required, Mr. Erani denies those allegations. Mr. Erani admits that he served as a director as set forth in Paragraph 27, but denies that he served as an officer of the Company. Mr. Erani incorporates by reference his responses to Paragraphs 27 and 34. Mr. Erani further admits that he performed in good faith all his duties as a Board member of Organogenesis during the putative Class Period, and that, at various times, he was involved with certain operations and/or business activities of Organogenesis consistent with his position. Mr. Erani otherwise denies each and every allegation in Paragraph 35.

36.     With respect to Paragraph 36, no response is required to the allegations of Paragraph 36 concerning plaintiffs' characterizations of defendants' legal duties or alleged violations thereof, which consist of legal conclusions. To the extent a response is required, Mr. Erani denies those allegations. Mr. Erani admits that during the putative Class Period, he served as a director of Organogenesis as set forth in Paragraph 27, which he incorporates by reference herein, but denies that he served as an officer of the Company. He further admits that, during the putative Class Period (but not today), Organogenesis stock was traded on the American Stock Exchange ("AMEX"), and governed by the provisions of the federal securities laws. Mr. Erani otherwise denies each and every allegation in Paragraph 36.

37.     With respect to Paragraph 37, Mr. Erani admits that during the putative Class Period he and others participated in good faith in the preparation of various public communications made by Organogenesis to the extent appropriate to his role, but otherwise is presently without personal knowledge sufficient to form a belief as to which communications he drafted, prepared and/or approved, or when he did so. Mr. Erani otherwise denies each and every allegation in Paragraph 37.

38.     With respect to Paragraph 38, Mr. Erani admits that at various times during the putative Class Period, he, along with the other directors, received copies of various materials that Organogenesis filed with the SEC, press releases, and other public statements related to the Company, but is presently without personal knowledge sufficient to form a belief as to which documents he received, or when.  Mr. Erani lacks personal knowledge sufficient to form a belief as to the truth of plaintiff's non-specific allegations concerning unidentified documents or "public reports" or "releases" he or any other unidentified "[i]ndividual [d]efendant[s]" may have received and when they might have received them, and on that basis denies them. Mr. Erani otherwise denies each and every allegation in Paragraph 38.

39.     With respect to Paragraph 39, Mr. Erani denies each and every allegation in Paragraph 39.

40.     With respect to Paragraph 40, no response is required to the allegations in this paragraph, which consist of legal conclusions and plaintiffs' characterization of this action, and which do not purport to require a response from Mr. Erani.  To the extent that this paragraph purports to contain factual allegations requiring a response, Mr. Erani admits that plaintiffs assert that this is a putative class action pursuant to Federal Rules of Civil Procedure 23(a) and (b)(3) on behalf of a purported class.  Mr. Erani denies that he engaged in any unlawful or improper conduct, denies that plaintiffs or members of the purported class were damaged, and denies this action may be properly maintained as a class action.  Mr. Erani lacks personal knowledge sufficient to form a belief as to the truth of each and every other allegation contained in Paragraph 40, and on that basis denies them.

41.     With respect to Paragraph 41, no response is required to the allegations in this paragraph, which consist of legal conclusions and plaintiffs' characterization of this action, and

which do not purport to require a response from Mr. Erani. To the extent a response is required, Mr. Erani admits that during the putative Class Period, Organogenesis securities were traded on the AMEX as of November 2, 2001, but presently lacks personal knowledge sufficient to form a belief as to the truth of the allegations concerning how many shares were issued or outstanding at any given time, and on that basis denies them. Mr. Erani otherwise denies each and every allegation in Paragraph 41.

42.    With respect to Paragraph 42, no response is required to the allegations in this paragraph, which consist of legal conclusions and plaintiffs' characterization of this action, and which do not purport to require a response from Defendants. To the extent that this paragraph purports to contain factual assertions requiring a response, Mr. Erani denies each and every allegation in Paragraph 42.

43.    With respect to Paragraph 43, no response is required to the allegations in this paragraph, which consist of legal conclusions and plaintiffs' characterization of this action, and which do not purport to require a response from Defendants. To the extent that this paragraph purports to contain factual assertions requiring a response, Mr. Erani denies each and every allegation in Paragraph 43.

44.    With respect to Paragraph 44 and all of its subparts, no response is required to the allegations in this paragraph, which consist of legal conclusions and plaintiffs' characterization of this action, and which do not purport to require a response from Defendants. To the extent that this paragraph purports to contain factual assertions requiring a response, Mr. Erani denies each and every allegation in Paragraph 44.

45.    With respect to Paragraph 45, no response is required to the allegations in this paragraph, which consist of legal conclusions and plaintiffs' characterization of this action, and

which do not purport to require a response from Defendants.  To the extent that this paragraph

purports to contain factual assertions requiring a response, Mr. Erani denies each and every

allegation in Paragraph 45.

46.     With respect to Paragraph 46, Mr. Erani admits the allegations of Paragraph 46.

47.     With respect to Paragraph 47, Mr. Erani lacks personal knowledge sufficient to

form a belief as to the truth of the allegations relating to how plaintiffs believe Organogenesis

"appeared" to others, and on that basis denies them.  Mr. Erani admits that Organogenesis

manufactured Apligraf, and that certain lots of the product were voluntarily recalled in mid-1999

(before the putative Class Period).  Mr. Erani presently lacks personal knowledge sufficient to

form a belief as to the truth of the allegations that such recalls accounted for more than 10% of

monthly production at the time, and on that basis denies them.  Mr. Erani further denies that any

such recalls were "evidence of the difficulties associated with Apligraf production."  Mr. Erani

admits that Apligraf was approved for standardized Medicare or Medicaid reimbursement in all

fifty states in September 2001, as set forth in a Company press release issued on September 21,

2001, which speaks for itself.  Mr. Erani denies that, as characterized by plaintiffs, September

2001 was "early in the Class Period," and states that the putative Class Period, as defined by

plaintiffs, is between November 15, 1999 and February 7, 2002.  Mr. Erani otherwise denies

each and every allegation in Paragraph 47.

48.     With respect to Paragraph 48, Mr. Erani admits that Organogenesis filed a Form

10-K with the SEC on March 31, 1999, which speaks for itself.  Mr. Erani presently lacks

personal knowledge sufficient to form a belief as to the allegations concerning actual Apligraf

sales, and whether those sales fell below the non-specified "guidance" set forth in Paragraph 48,

and on that basis denies them.  Mr. Erani otherwise denies each and every allegation in

Paragraph 48.

49.     With respect to Paragraph 49, no response is required to the allegations that

purport to quote the view of an investment analyst employed by non-party Moors & Cabot, Inc.

in an April 1999 edition of the *Boston Business Journal*, which speaks for itself.  Mr. Erani

otherwise denies each and every allegation in Paragraph 49.

50.     With respect to Paragraph 50, Mr. Erani admits that during the putative Class

Period, the Company issued various public statements and public filings addressing the financial

position of the Company and disclosing its need for additional funding.  Mr. Erani states that

these documents speak for themselves.  Mr. Erani denies that Paragraph 50 completely and

accurately construes and characterizes those documents, and denies that the Company issued

"aggressive predictions" or made other projections as represented in Paragraph 50.  Mr. Erani

otherwise denies each and every allegation in Paragraph 50.

51.     With respect to Paragraph 51, Mr. Erani denies that the Company filed a Form

10-K with the SEC on March 29, 2000, but admits that Organogenesis filed a Form 10-K for

1999 with the SEC on or about March 30, 2000.  No further response is required to the remaining

allegations of Paragraph 51, which purport to construe, paraphrase and excerpt that document,

which speaks for itself.  To the extent any further response is required, Mr. Erani denies that

Paragraph 51 completely and accurately construes, paraphrases and excerpts the document.

Mr. Erani otherwise denies each and every allegation in Paragraph 51.

52.     With respect to Paragraph 52, no response is required to the allegations of

Paragraph 52 which purport to construe, paraphrase, and excerpt unidentified filings or

statements, which speak for themselves.  To the extent a response is required, Mr. Erani admits

that Organogenesis filed various statements with the SEC during the Class Period, but denies that Paragraph 52 completely and accurately construes and excerpts any such documents.  Mr. Erani lacks personal knowledge sufficient to form a belief as to the truth of allegations concerning unidentified "statements" made in unidentified "fil[ings] with the SEC" or elsewhere by unidentified "defendants," which are not sufficiently identified in Paragraph 52, and on that basis denies them.  Mr. Erani otherwise denies each and every allegation in Paragraph 52.

53.     With respect to Paragraph 53, Mr. Erani lacks personal knowledge sufficient to form a belief as to the truth of the allegations regarding what investors "believe" or what plaintiffs assert they were "led to believe," and on that basis denies them.  No response is required to the remaining allegations of Paragraph 53, which purport to construe and paraphrase unidentified "report[s]" or statements by the Company, which speak for themselves if they exist. Mr. Erani admits that Organogenesis and Novartis were parties to the Novartis Contracts.  No further response is required to the allegations purporting to construe and excerpt the Novartis Contracts, which speak for themselves.  To the extent any further response is required, Mr. Erani denies that Paragraph 53 completely and accurately construes and excerpts the Novartis Contracts and the parties' relationship as set forth therein.  Mr. Erani otherwise denies each and every allegation in Paragraph 53.

54.     With respect to Paragraph 54, Mr. Erani admits that Organogenesis issued a press release on November 15, 1999, regarding FDA PMA approval of its Apligraf product, which speaks for itself.  Mr. Erani further admits that Organogenesis discussed the Apligraf product and revenue therefrom in certain of its public statements during the putative Class Period, but denies

that Paragraph 54 accurately construes and paraphrases any such documents.[3]  Mr. Erani

otherwise denies each and every allegation in Paragraph 54.

55.      With respect to Paragraph 55, Mr. Erani admits that the FDA approved Apligraf

for marketing in the United States for the treatment of venous leg ulcers on May 22, 1998, and

by the inception of the putative Class Period, FDA approval of Apligraf for diabetic leg ulcers

was being pursued.  Mr. Erani admits that Apligraf was a registered trademark of Novartis

during the putative Class Period, and that Novartis marketed Apligraf during the putative Class

Period, pursuant to the terms of the Novartis Contracts.  No response is required to the

allegations of Paragraph 55 that purport to construe and characterize the Novartis Contracts, the

terms of which speak for themselves.  To the extent a response to these allegations is required,

Mr. Erani denies that Paragraph 55 completely and accurately construes and characterizes the

Novartis Contracts and the parties' relationship as set forth therein.  Mr. Erani otherwise denies

each and every allegation in Paragraph 55.

56.      With respect to Paragraph 56, Mr. Erani admits that during the putative Class

Period non-party Novartis held shares of Organogenesis stock, as set forth in the Form S-3

Registration Statement filed by the Company on November 1, 2001, which speaks for itself.

Mr. Erani admits that Organogenesis and Novartis were parties to the Novartis Contracts, which

set forth the terms of the parties' relationship.  No response is required to the allegations of

Paragraph 56 that purport to construe and characterize the Novartis Contracts, the terms of which

speak for themselves.  To the extent a response to these allegations is required, Mr. Erani denies

that Paragraph 56 completely and accurately construes and characterizes the Novartis Contracts

---

[3]      With respect to footnote 3, no response is required to the allegations that purport to paraphrase public
statements issued by Organogenesis during the Class Period, which speak for themselves.

and the parties' relationship as set forth therein.  Mr. Erani otherwise denies each and every allegation in Paragraph 56.

57.    With respect to Paragraph 57, Mr. Erani admits that Organogenesis and Novartis were parties to the Novartis Contracts.  No response is required to the allegations of Paragraph 57 that purport to construe and characterize the Novartis Contracts, the terms of which speak for themselves.  To the extent a response to these allegations is required, Mr. Erani denies that Paragraph 57 completely and accurately construes and characterizes the Novartis Contracts and the parties' relationship as set forth therein.  Mr. Erani lacks personal knowledge sufficient to form a belief as to the allegations concerning the knowledge or beliefs of plaintiffs or "investors" and as to the allegations concerning unidentified "defendants," and on that basis denies them. Mr. Erani otherwise denies each and every allegation in Paragraph 57.

58.    With respect to Paragraph 58, no response is required to the allegations of Paragraph 58, which purport to construe and paraphrase unidentified "representations" by Organogenesis or "Defendants," which are too vaguely described to permit a response, and even if identified, speak for themselves.  Mr. Erani lacks personal knowledge sufficient to form a belief as to what unidentified "Defendants" may have said, done or "represented" to anyone else, and on that basis denies them.  Mr. Erani otherwise denies each and every allegation in Paragraph 58.

59.    With respect to Paragraph 59, Mr. Erani incorporates by reference his response to Paragraph 7.  Mr. Erani lacks personal knowledge sufficient to form a belief as to the truth of the allegations concerning the existence or content of the alleged "Confidential Arcari Document," and on that basis denies them.  Mr. Erani further states that, in any event, no response is required

to those allegations purporting to construe and excerpt any such document, which would speak for itself.  Mr. Erani otherwise denies each and every allegation in Paragraph 59.

60.    With respect to Paragraph 60, Mr. Erani lacks personal knowledge sufficient to form a belief as to the truth of the allegations concerning any investigation by plaintiffs' counsel or their representatives, and on that basis denies them.  Mr. Erani admits that Organogenesis disclosed its financial results in various public filings and press releases published during the putative class period, which speak for themselves.  Mr. Erani denies that Paragraph 60 completely and accurately characterizes, excerpts and paraphrases such documents, and denies that any information was improperly withheld.  Mr. Erani lacks personal knowledge sufficient to form a belief as to the truth of the allegations concerning the existence or content of the alleged "Confidential Arcari Document," and on that basis denies them.  Mr. Erani further states that, in any event, no response is required to those allegations purporting to construe and excerpt any such document, which would speak for itself.  Mr. Erani otherwise denies each and every allegation in Paragraph 60.

61.    With respect to Paragraph 61, Mr. Erani lacks personal knowledge sufficient to form a belief as to the truth of the allegations concerning any investigation by plaintiffs' counsel or their representatives, and on that basis denies them.  Mr. Erani further lacks personal knowledge sufficient to form a belief as to the truth of the allegations concerning unidentified "statements" or failures to disclose by unidentified "defendants," and on that basis denies them. Mr. Erani admits that Organogenesis disclosed its financial results in various public filings and press releases published during the putative class period, which speak for themselves.  Mr. Erani denies that Paragraph 61 completely and accurately characterizes, excerpts and paraphrases such

documents, and denies that any information was improperly withheld.  Mr. Erani otherwise denies each and every allegation in Paragraph 61.

With respect to Paragraph 61(a), Mr. Erani lacks personal knowledge sufficient to form a belief as to the truth of the allegations concerning any investigation by plaintiffs' counsel or their representatives, and on that basis denies them.  No further response is required to the allegations of Paragraph 61(a) that purport to describe, construe and excerpt unidentified statements or documents, which speak for themselves.  Mr. Erani otherwise denies each and every allegation in Paragraph 61(a).

With respect to Paragraph 61(b), Mr. Erani lacks personal knowledge sufficient to form a belief as to the truth of the allegations concerning any investigation by plaintiffs' counsel or their representatives, and on that basis denies them.  Mr. Erani further lacks personal knowledge sufficient to form a belief as to the truth of the allegations concerning unidentified "statements" or failures to disclose by unidentified "defendants," and on that basis denies them.  Mr. Erani admits that Organogenesis disclosed its financial results in various public filings and press releases published during the putative class period, which speak for themselves.  Mr. Erani denies that Paragraph 61(b) completely and accurately characterizes, excerpts and paraphrases such documents, and denies that any information was improperly withheld.  Mr. Erani otherwise denies each and every allegation in Paragraph 61(b).

With respect to Paragraph 61(c), Mr. Erani lacks personal knowledge sufficient to form a belief as to the truth of the allegations concerning any investigation by plaintiffs' counsel or their representatives, and on that basis denies them.  Mr. Erani further lacks personal knowledge sufficient to form a belief as to the truth of the allegations concerning unidentified "statements" or failures to disclose by unidentified "defendants," and on that basis denies them.  Mr. Erani

admits that Organogenesis disclosed its financial results in various public filings and press releases published during the putative class period, which speak for themselves. Mr. Erani denies that Paragraph 61(c) completely and accurately characterizes, excerpts and paraphrases such documents, and denies that any information was improperly withheld. Mr. Erani otherwise denies each and every allegation in Paragraph 61(c).

62.     With respect to Paragraph 62, Mr. Erani lacks personal knowledge sufficient to form a belief as to the truth of the allegations concerning any investigation by plaintiffs' counsel or their representatives, and on that basis denies them. Mr. Erani further denies that any information was improperly withheld, and otherwise denies each and every allegation in Paragraph 62.

With respect to Paragraph 62(a), Mr. Erani lacks personal knowledge sufficient to form a belief as to the truth of the allegations concerning any investigation by plaintiffs' counsel or their representatives, and on that basis denies them. Mr. Erani otherwise denies each and every allegation in Paragraph 62(a).

With respect to Paragraph 62(b), Mr. Erani lacks personal knowledge sufficient to form a belief as to the truth of the allegations concerning any investigation by plaintiffs' counsel or their representatives, and on that basis denies them. Mr. Erani otherwise denies each and every allegation in Paragraph 62(b).

With respect to Paragraph 62(c), Mr. Erani lacks personal knowledge sufficient to form a belief as to the truth of the allegations concerning any investigation by plaintiffs' counsel or their representatives, and on that basis denies them. Mr. Erani otherwise denies each and every allegation in Paragraph 62(c).

With respect to Paragraph 62(d), Mr. Erani lacks personal knowledge sufficient to form a belief as to the truth of the allegations concerning any investigation by plaintiffs' counsel or their representatives, and on that basis denies them. Mr. Erani otherwise denies each and every allegation in Paragraph 62(d).

63.     With respect to Paragraph 63, Mr. Erani lacks personal knowledge sufficient to form a belief as to the truth of the allegations concerning any investigation by plaintiffs' counsel or their representatives, and on that basis denies them. Mr. Erani otherwise denies each and every allegation in Paragraph 63.

64.     With respect to Paragraph 64, Mr. Erani lacks personal knowledge sufficient to form a belief as to the truth of the allegations concerning any investigation by plaintiffs' counsel or their representatives, and on that basis denies them. Mr. Erani further lacks personal knowledge sufficient to form a belief as to the truth of the allegations concerning whether unidentified "defendants" were aware of such alleged facts, and on that basis denies them. Mr. Erani denies that any information was improperly withheld, and otherwise denies each and every allegation in Paragraph 64.

65.     With respect to Paragraph 65, Mr. Erani lacks personal knowledge sufficient to form a belief as to the truth of the allegations concerning any investigation by plaintiffs' counsel or their representatives, and on that basis denies them. Mr. Erani further lacks personal knowledge sufficient to form a belief as to the truth of the allegations concerning unidentified "representations" by unidentified "defendants," and on that basis denies them. Mr. Erani otherwise denies each and every allegation in Paragraph 65.

66.     With respect to Paragraph 66, Mr. Erani lacks personal knowledge sufficient to form a belief as to the truth of the allegations concerning any investigation by plaintiffs' counsel

or their representatives, and on that basis denies them.  Mr. Erani otherwise denies each and every allegation in Paragraph 66.

68. With respect to Paragraph 67, Mr. Erani lacks personal knowledge sufficient to form a belief as to the truth of the allegations concerning any investigation by plaintiffs' counsel or their representatives, and on that basis denies them.  Mr. Erani further lacks personal knowledge sufficient to form a belief as to the truth of the allegations concerning the motivations of unidentified "senior management of the Company," and on that basis denies them.  Mr. Erani otherwise denies each and every allegation in Paragraph 67.

68. With respect to Paragraph 68, Mr. Erani admits that the purported Class Period begins on November 15, 1999.  Mr. Erani further admits that on November 15, 1999 Organogenesis published a release on *Business Wire* announcing financial results for the third quarter of 1999, the period ending September 30, 1999, in which Mr. Stein is quoted.  Mr. Erani denies making any of the statements in the press release.  No further response is required to the allegations of Paragraph 68 that purport to construe, paraphrase and excerpt the release, which speaks for itself.  Mr. Erani denies that Paragraph 68 completely and accurately construes, paraphrases and excerpts the release.  Mr. Erani otherwise denies each and every allegation in Paragraph 68.

69. With respect to Paragraph 69, Mr. Erani admits that on December 2, 1999 Organogenesis published a release on *Business Wire* announcing financial results, in which Mr. Tuck is quoted.  Mr. Erani denies making any of the statements in the press release.  Mr. Erani lacks personal knowledge concerning the truth of the allegations related to such release, and on that basis denies them.  No further response is required to the allegations of Paragraph 69 that purport to construe and excerpt the release, which speaks for itself.  Mr. Erani

further denies that Paragraph 69 completely and accurately construes and excerpts the release.

Mr. Erani otherwise denies each and every allegation in Paragraph 69.

70.     With respect to Paragraph 70, Mr. Erani admits that on November 15, 1999

Organogenesis filed with the SEC its financial results for the third quarter of 1999, the period

ended September 30, 1999, pursuant to its Form 10-Q.  Mr. Erani further admits that the

electronic signatures of Mr. Stein and Ms. Lopolito appear on that Form 10-Q.  Mr. Erani denies

making any of the statements in the Form 10-Q.  No further response is required to the extent the

allegations of Paragraph 70 purport to construe and excerpt the release, which speaks for itself.

Mr. Erani denies that Paragraph 70 completely and accurately construes and excerpts the release.

Mr. Erani otherwise denies each and every allegation in Paragraph 70.

71.     With respect to Paragraph 71, Mr. Erani admits that on November 15, 1999,

Organogenesis' stock price reached an intra-day price as low as $6.81 per share, but denies that it

closed at that price.  Mr. Erani further admits that on December 2, 1999, Organogenesis' stock

price reached an intra-day price as high as $12.30 per share, but denies that it closed at that price.

Mr. Erani otherwise denies each and every allegation in Paragraph 71.

72.     With respect to Paragraph 72, Mr. Erani admits that the Company filed with the

SEC a Registration Statement on December 27, 1999, and two amended Registration Statements,

filed on February 3, 2000 and February 14, 2000, all of which incorporated by reference the

Company's Form 10-Q for the third quarter of 1999, and all of which speak for themselves.

Mr. Erani denies that Paragraph 72 completely and accurately construes and paraphrases those

documents.   Mr. Erani otherwise denies each and every allegation in Paragraph 72.

73.     With respect to Paragraph 73, Mr. Erani admits that in January 2000,

Mr. Laughlin presented at the Hambrecht & Quist 18th Annual Healthcare Conference in San

Francisco, California. Mr. Erani presently lacks personal knowledge sufficient to form a belief as to the truth of the allegations concerning the precise date of the conference or the content of Mr. Laughlin's presentation and the purported "beliefs" of any investor(s), and on that basis denies them. Mr. Erani denies that on January 14, 2000, Mr. Laughlin provided an interview to *The Wall Street Transcript*, but admits that such an interview took place on January 13, 2000. No further response is required to the extent the allegations of Paragraph 73 purport to construe and excerpt the transcript thereof, which speaks for itself. Mr. Erani denies that Paragraph 73 completely and accurately construes and excerpts the transcript. Mr. Erani otherwise denies each and every allegation in Paragraph 73.

74.    With respect to Paragraph 74, Mr. Erani admits that on or about February 14, 2000, the Company filed a Form 10-Q/A with the SEC, but denies that it amended its financial results. Mr. Erani further admits that the electronic signatures of Mr. Laughlin and Ms. Lopolito appear on the Form 10-Q/A. Mr. Erani denies making any of the statements in the Form 10-Q/A. No further response is required to the extent the allegations of Paragraph 74 purport to construe and excerpt the Form 10-Q/A, which speaks for itself. Mr. Erani denies that Paragraph 74 completely and accurately construes and excerpts the Form 10-Q/A. Mr. Erani otherwise denies each and every allegation in Paragraph 74.

75.    With respect to Paragraph 75, Mr. Erani incorporates by reference his response to Paragraph 74. No further response is required to the extent the allegations of Paragraph 75 purport to construe and excerpt the Form 10-Q/A, which speaks for itself. Mr. Erani denies that he made any of the statements in the Form 10-Q/A, and denies Paragraph 75 completely and accurately construes and excerpts the Form 10-Q/A. Mr. Erani otherwise denies each and every allegation in Paragraph 75.

76.     With respect to Paragraph 76, Mr. Erani lacks personal knowledge sufficient to form a belief as to the truth of any allegations concerning unidentified "statements" made by unidentified "defendants."  Mr. Erani admits that the Company issued a press release on November 15, 1999, but denies that he made any of the statements in the press release.  He further denies that Paragraph 76 accurately and completely characterizes that press release.  Mr. Erani further denies that he made any of the statements in the December 2, 1999 press release, Form 10-Q filed on November 15, 1999, or Form 10-Q/A filed on February 14, 2000, and further denies that any press release, public filing or public statement was materially false or misleading.  Mr. Erani otherwise denies each and every allegation in Paragraph 76.

With respect to Paragraph 76(a), Mr. Erani incorporates by reference his responses to Paragraphs 59-67.  Mr. Erani lacks personal knowledge sufficient to form a belief as to the truth of any allegations concerning the actions or failures to disclose by unidentified "defendants," and on that basis denies them.  Mr. Erani otherwise denies each and every allegation in Paragraph 76(a).

With respect to Paragraph 76(b), Mr. Erani lacks personal knowledge sufficient to form a belief as to the truth of the allegations concerning any investigation by plaintiffs' counsel or their representatives, and on that basis denies them.  Mr. Erani also lacks personal knowledge sufficient to form a belief as to the truth of any allegations concerning unspecified "representations" in unidentified documents by unidentified "defendants," and on that basis denies them.  Mr. Erani otherwise denies each and every allegation in Paragraph 76(b).

With respect to Paragraph 76(c), no response is required to the allegations of Paragraph 76(c) that purport to describe, construe and excerpt unidentified statements or documents, which speak for themselves.  Mr. Erani further lacks personal knowledge sufficient to form a belief as

to the truth of any allegations concerning unspecified "representations" by unidentified "defendants," and on that basis denies them. Mr. Erani further lacks personal knowledge sufficient to form a belief as to the truth of the allegations concerning any investigation by plaintiffs' counsel or their representatives, and on that basis denies them. Mr. Erani otherwise denies each and every allegation in Paragraph 76(c).

With respect to Paragraph 76(d), no response is required to the allegations of Paragraph 76(d) that purport to describe, construe and excerpt unidentified statements or documents, which speak for themselves. Mr. Erani further lacks personal knowledge sufficient to form a belief as to the truth of any allegations concerning unspecified "public statements" by unidentified "defendants," and on that basis denies them. Mr. Erani further lacks personal knowledge sufficient to form a belief as to the truth of the allegations concerning any investigation by plaintiffs' counsel or their representatives, and on that basis denies them. Mr. Erani incorporates by reference his responses to Paragraphs 56-67, and otherwise denies each and every allegation in Paragraph 76(d).

With respect to Paragraph 76(e), no response is required to the allegations of Paragraph 76(e) that purport to describe, construe and excerpt unidentified statements or documents, which speak for themselves. Mr. Erani further lacks personal knowledge sufficient to form a belief as to the truth of any allegations concerning unspecified "representations" by unidentified "defendants," and on that basis denies them. Mr. Erani otherwise denies each and every allegation in Paragraph 76(e).

With respect to Paragraph 76(f), no response is required to the allegations of Paragraph 76(f) that purport to describe, construe and excerpt unidentified statements or documents, which speak for themselves. Mr. Erani further lacks personal knowledge sufficient to form a belief as

to the truth of any allegations concerning unspecified "representations" by unidentified "defendants," and on that basis denies them. Mr. Erani further lacks personal knowledge sufficient to form a belief as to the truth of the allegations concerning any investigation by plaintiffs' counsel or their representatives, and on that basis denies them. Mr. Erani incorporates by reference his responses to Paragraphs 56-67, and otherwise denies each and every allegation in Paragraph 76(f).

With respect to Paragraph 76(g), Mr. Erani further lacks personal knowledge sufficient to form a belief as to the truth of any allegations concerning unspecified "representations" by unidentified "defendants," and on that basis denies them. Mr. Erani further lacks personal knowledge sufficient to form a belief as to the truth of the allegations concerning any investigation by plaintiffs' counsel or their representatives, and on that basis denies them. Mr. Erani incorporates by reference his responses to Paragraphs 59-67, and otherwise denies each and every allegation in Paragraph 76(g).

77.    With respect to Paragraph 77, Mr. Erani admits that on February 24, 2000, Organogenesis stock price reached an intra-day price as high as $15.625, but denies that it closed at this price. Mr. Erani further admits that on February 27, 2000, the Company issued a release on *Business Wire* announcing that Organogenesis had completed the sale of 688,925 shares of common stock for net proceeds of $9.4 million. Mr. Erani denies making any of the statements in the press release. Mr. Erani further denies that Paragraph 77 completely and accurately construes and paraphrases the release, which speaks for itself. Mr. Erani otherwise denies each and every allegation of Paragraph 77.

78.    With respect to Paragraph 78, no response is required to the allegations that purport to describe, construe, paraphrase and excerpt unidentified statements or documents,

which speak for themselves.  Mr. Erani admits that on February 24, 2000 the Company issued a release on *Business Wire*, in which Mr. Tuck is quoted.  Mr. Erani denies making any of the statements in the press release and states that he lacks personal knowledge sufficient to form a belief as to the truth of any allegations concerning the purported knowledge, actions or statements of other unidentified "Defendants," and on that basis denies them.  Mr. Erani further denies that Paragraph 78 completely and accurately construes, paraphrases and excerpts the press release.  Mr. Erani otherwise denies each and every allegation in Paragraph 78.

79.     With respect to Paragraph 79, Mr. Erani admits the allegations in Paragraph 79.

80.     With respect to Paragraph 80, Mr. Erani admits that on March 9, 2000 the Company sold 300,000 shares of stock at $17.625 per share.  Mr. Erani further admits that stock sales announced on February 24, 2000, February 25, 2000, and March 9, 2000 totaled 1.088 million shares, at a value over $16 million. Mr. Erani denies that the stock price of the Company was artificially inflated, and otherwise denies each and every allegation in Paragraph 80.

81.     With respect to Paragraph 81, Mr. Erani denies the allegations contained in the first sentence of that paragraph.  Mr. Erani admits that Mr. Stein resigned from his positions as Chairman and Chief Executive Officer effective January 1, 2000, and accepted the position of Chairman Emeritus of the Board effective January 1, 2000.  Mr. Erani further admits that the Company announced Mr. Stein's resignation from that position on or about March 13, 2000.  To the extent that plaintiffs purport to construe and characterize Mr. Stein's departure, or the reasons therefore, Mr. Erani lacks personal knowledge sufficient to form a belief as to the truth of the allegations of Paragraph 81, and on that basis denies them.  Mr. Erani otherwise denies each and every allegation in Paragraph 81.

82.     With respect to Paragraph 82, Mr. Erani admits that on or about March 21, 2000, Mr. Laughlin, who served as President and CEO of Organogenesis at that time, presented at the New York Society of Securities Analysts' 4th Annual Health Care Conference in New York City. Mr. Erani otherwise denies each and every allegation in Paragraph 82.

83.     With respect to Paragraph 83, Mr. Erani admits that on March 27, 2000, Organogenesis issued a press release regarding the Company's redemption of its outstanding Series C convertible preferred stock.  Mr. Erani denies making any of the statements in the press release.  No further response is required to the extent the allegations of Paragraph 83 purport to construe and paraphrase the release, which speaks for itself.  Mr. Erani denies that Paragraph 83 completely and accurately construes and paraphrases the release, and otherwise denies each and every allegation in Paragraph 83.

84.     With respect to Paragraph 84, Mr. Erani admits that on March 31, 2000, Organogenesis issued a press release published on *Business Wire* in which Mr. Laughlin is quoted.  Mr. Erani denies making any of the statements in the press release.  No further response is required to the extent the allegations of Paragraph 84 purport to construe and excerpt the release, which speaks for itself.  Mr. Erani denies that Paragraph 84 completely and accurately construes and excerpts the release.  Mr. Erani further states that he lacks personal knowledge sufficient to form a belief as to the allegations concerning the purported actions or intentions of defendant Laughlin, and what unidentified "investors" "believe[d]."  Mr. Erani otherwise denies each and every allegation in Paragraph 84.

85.     With respect to Paragraph 85, Mr. Erani admits that on March 30, 2000, Organogenesis filed with the SEC its financial results for full year 1999, pursuant to a Form 10-K.  Mr. Erani further admits that the electronic signatures of himself, Mr. Laughlin and

Ms. Lopolito appear on the Form 10-K. No further response is required to the extent the allegations of Paragraph 85 purport to construe and excerpt the Form 10-K, which speaks for itself. Mr. Erani denies that Paragraph 85 completely and accurately construes and excerpts the Form 10-K. Mr. Erani otherwise denies each and every allegation in Paragraph 85.

86.      With respect to Paragraph 86, Mr. Erani admits that on March 31, 2000, Organogenesis' stock was traded on the open market, and reached an intra-day price as high as $12.625, but denies that it closed at that price. Mr. Erani otherwise denies each and every allegation in Paragraph 86.

87.      With respect to Paragraph 87, Mr. Erani admits that the Company issued a press release on March 31, 2000, and filed a Form 10-K with the SEC for its fiscal year 1999. Mr. Erani admits that his electronic signature appeared on the Form 10-K, but denies that he made any of the statements in the press release, and otherwise denies each and every allegation in Paragraph 87.

With respect to Paragraph 87(a), Mr. Erani incorporates by reference his responses to Paragraphs 59-67, and otherwise denies each and every allegation in Paragraph 87(a).

With respect to Paragraph 87(b), Mr. Erani lacks personal knowledge sufficient to form a belief as to the truth of the allegations concerning any investigation by plaintiffs' counsel or their representatives, and on that basis denies them. No further response is required to the allegations of Paragraph 87(b) that purport to describe, construe and excerpt unidentified statements or documents, which speak for themselves. Mr. Erani further lacks personal knowledge sufficient to form a belief as to the allegations concerning representations by unidentified "defendants," and on that basis denies them. Mr. Erani otherwise denies each and every allegation in Paragraph 87(b).

With respect to Paragraph 87(c), Mr. Erani lacks personal knowledge sufficient to form a belief as to the truth of the allegations concerning any investigation by plaintiffs' counsel or their representatives, and on that basis denies them. No further response is required to the allegations of Paragraph 87(c) that purport to describe, construe and excerpt unidentified statements or documents, which speak for themselves. Mr. Erani further lacks personal knowledge sufficient to form a belief as to the allegations concerning the unidentified "suggestion[s]," "aware[ness]," or alleged failures to disclose of unidentified "defendants," and on that basis denies them. Mr. Erani denies that any information was improperly withheld, and otherwise denies each and every allegation in Paragraph 87(c).

With respect to Paragraph 87(d), Mr. Erani lacks personal knowledge sufficient to form a belief as to the truth of the allegations concerning any investigation by plaintiffs' counsel or their representatives, and on that basis denies them. No response is required to the allegations of Paragraph 87(d) that purport to describe, construe and excerpt unidentified statements or documents, which speak for themselves. Mr. Erani further lacks personal knowledge sufficient to form a belief as to the allegations concerning representations by unidentified "defendants," and on that basis denies them. Mr. Erani otherwise denies each and every allegation in Paragraph 87(d).

With respect to Paragraph 87(e), Mr. Erani lacks personal knowledge sufficient to form a belief as to the truth of the allegations concerning any investigation by plaintiffs' counsel or their representatives, and on that basis denies them. No further response is required to the allegations of Paragraph 87(e) that purport to describe, construe and excerpt unidentified statements or documents, which speak for themselves. Mr. Erani further lacks personal knowledge sufficient to form a belief as to the allegations concerning representations by unidentified "defendants,"

and on that basis denies them.  Mr. Erani otherwise denies each and every allegation in

Paragraph 87(e).

With respect to Paragraph 87(f), no response is required to the allegations of

Paragraph 87(f) that purport to describe, construe and excerpt unidentified statements or

documents, which speak for themselves.  Mr. Erani further lacks personal knowledge sufficient

to form a belief as to the allegations concerning any representations by unidentified

"defendants," and on that basis denies them.  Mr. Erani also lacks personal knowledge sufficient

to form a belief as to the allegations concerning what any "investors" "believe[d]," and on that

basis denies them.  Mr. Erani otherwise denies each and every allegation in Paragraph 87(f).

With respect to Paragraph 87(g), Mr. Erani lacks personal knowledge sufficient to form a

belief as to the truth of the allegations concerning any investigation by plaintiffs' counsel or their

representatives, and on that basis denies them.  No further response is required to the allegations

of Paragraph 87(g) that purport to describe, construe and excerpt unidentified statements or

documents, which speak for themselves.  Mr. Erani further lacks personal knowledge sufficient

to form a belief as to the allegations concerning any representations by unidentified

"defendants," and on that basis denies them.  Mr. Erani otherwise denies each and every

allegation in Paragraph 87(g).

88.     With respect to Paragraph 88, Mr. Erani admits that on April 21, 2000, the

Company filed with the SEC a Registration Statement, permitting Mr. Stein to register for sale of

732,423 shares of Organogenesis stock held by Mr. Stein.  Mr. Erani further admits that the

electronic signatures of Mr. Laughlin, Ms. Lopolito and himself appear on the Registration

Statement.  No further response is required to the extent the allegations of Paragraph 88 purport

to construe and excerpt the Registration Statement, which speaks for itself.  Mr. Erani denies that

Paragraph 88 completely and accurately construes and excerpts the Registration Statement. Mr. Erani lacks personal knowledge sufficient to form a belief as to the truth of the allegations relating to Mr. Stein's personal investments or finances, and on that basis denies them. Mr. Erani otherwise denies each and every allegation in Paragraph 88.

89.     With respect to Paragraph 89, Mr. Erani admits that on May 11, 2000 Organogenesis issued a release published on *Business Wire* announcing financial results for the first quarter of 2000, in which Mr. Laughlin is quoted. Mr. Erani denies making any of the statements in the release. No further response is required to the extent the allegations of Paragraph 89 purport to construe and excerpt the release, which speaks for itself. To the extent further response is required, Mr. Erani denies that Paragraph 89 completely and accurately construes and excerpts the release. Mr. Erani otherwise denies each and every allegation in Paragraph 89.

90.     With respect to Paragraph 90, Mr. Erani admits that on May 15, 2000, Organogenesis filed with the SEC the Company's financial results for the first quarter of 2000, the period ended March 31, 2000, pursuant to a Form 10-Q. Mr. Erani further admits that the electronic signatures of Mr. Laughlin and Mr. Arcari appear on that Form 10-Q. Mr. Erani denies making any of the statements in the Form 10-Q. No further response is required to the extent the allegations of Paragraph 90 purport to construe and excerpt the release, which speaks for itself. To the extent further response is required, Mr. Erani denies that Paragraph 90 completely and accurately construes and excerpts the Form 10-Q. Mr. Erani otherwise denies each and every allegation in Paragraph 90.

91.     With respect to Paragraph 91, Mr. Erani incorporates by reference his responses to Paragraphs 56-67, and denies each and every allegation in Paragraph 91.

With respect to Paragraph 91(a), Mr. Erani incorporates by reference his responses to Paragraphs 59-67, and denies each and every allegation in Paragraph 91(a).

With respect to Paragraph 91(b), no response to required to the allegations of Paragraph 91(b) that purport to describe, construe and excerpt unidentified statements or documents, which speak for themselves. Mr. Erani otherwise denies each and every allegation in Paragraph 91(b).

With respect to Paragraph 91(c), Mr. Erani lacks personal knowledge sufficient to form a belief as to the truth of the allegations concerning any investigation by plaintiffs' counsel or their representatives, and on that basis denies them. No response to required to the allegations of Paragraph 91(c) that purport to describe, construe and excerpt unidentified statements or documents, which speak for themselves. Mr. Erani further lacks personal knowledge sufficient to form a belief as to the allegations concerning unidentified "representations" by unidentified "defendants," and on that basis denies them. Mr. Erani otherwise denies each and every allegation in Paragraph 91(c).

With respect to Paragraph 91(d), Mr. Erani lacks personal knowledge sufficient to form a belief as to the truth of the allegations concerning any investigation by plaintiffs' counsel or their representatives, and on that basis denies them. No response to required to the allegations of Paragraph 91(d) that purport to describe, construe and excerpt unidentified statements or documents, which speak for themselves. Mr. Erani further lacks personal knowledge sufficient to form a belief as to the allegations concerning unidentified "representations" by unidentified "defendants," and on that basis denies them. Mr. Erani otherwise denies each and every allegation in Paragraph 91(d).

With respect to Paragraph 91(e), Mr. Erani lacks personal knowledge sufficient to form a belief as to the allegations concerning unidentified "representations" by unidentified "defendants," and on that basis denies them. Mr. Erani incorporates by reference his responses to Paragraphs 59-67, and denies each and every allegation in Paragraph 91(e).

92.     With respect to Paragraph 92, Mr. Erani admits that on or about June 14, 2000 Mr. Laughlin, who served as President and Chief Executive Officer of Organogenesis at the time, gave a presentation at the Twenty-First Annual Goldman Sachs Healthcare Conference in Laguna Niguel, California. Mr. Erani presently lacks personal knowledge sufficient to form a belief as to the truth of allegations relating to the content of that presentation, and on that basis denies them. Mr. Erani otherwise denies each and every allegation in Paragraph 92.

93.     With respect to Paragraph 93, Mr. Erani admits that on June 20, 2000, Organogenesis issued a release that announced that the FDA had given final approval of Apligraf for treatment of diabetic foot ulcers, in addition to its previous indication for treatment of venous leg ulcers, and which speaks for itself. Mr. Erani denies making any of the statements in the release. Mr. Erani further admits that on June 20, 2000, Organogenesis' stock was traded on the open market, and reached an intra-day high of $12.75, but denies that it closed at this price. Mr. Erani otherwise denies each and every allegation in Paragraph 93.

94.     With respect to Paragraph 94, Mr. Erani denies that Mr. Laughlin appeared on the cable news show, "Power Lunch" on the CNBC network on June 25, 2000, but admits that such an appearance took place on June 26, 2000. No further response is required to the extent the allegations of Paragraph 94 purport to construe and quote from the interview, the transcript of which speaks for itself. Mr. Erani denies that Paragraph 94 completely and accurately construes and excerpts the interview. Mr. Erani lacks personal knowledge sufficient to form a belief as to

the truth of the allegations relating to the extent of dissemination of the cable financial news show "Power Lunch," and on that basis denies them. Mr. Erani otherwise denies each and every allegation in Paragraph 94.

95.    With respect to Paragraph 95, Mr. Erani admits that on August 2, 2000, Organogenesis issued a release announcing Apligraf sales for the month of July 2000, in which Mr. Laughlin is quoted. Mr. Erani denies making any statements in the release. No further response is required to the extent the allegations of Paragraph 95 purport to construe and excerpt the release, which speaks for itself. Mr. Erani denies that Paragraph 95 completely and accurately construes and excerpts the release. Mr. Erani otherwise denies each and every allegation in Paragraph 95.

96.    With respect to Paragraph 96, Mr. Erani admits that on August 14, 2000, Organogenesis issued a release published on *Business Wire* announcing financial results for the second quarter 2000. Mr. Erani denies making any of the statements in the release. No further response is required to the extent the allegations of Paragraph 96 purport to construe and excerpt the release, which speaks for itself. Mr. Erani denies that Paragraph 96 completely and accurately construes and excerpts the release. Mr. Erani otherwise denies each and every allegation in Paragraph 96.

97.    With respect to Paragraph 97, Mr. Erani incorporates by reference his response to Paragraph 96. Mr. Erani admits that Mr. Laughlin is quoted in the release, but denies making any of the statements in the release. Mr. Erani lacks personal knowledge sufficient to form a belief as to the truth of allegations concerning the alleged "use" of the release by Mr. Laughlin or what unidentified "investors" allegedly "believe[d]," and on that basis denies them. Mr. Erani otherwise denies each and every allegation in Paragraph 97.

98.     With respect to Paragraph 98, Mr. Erani admits that on August 14, 2000, Organogenesis filed with the SEC its financial results for the second quarter of 2000, the period ended June 30, 2000, pursuant to a Form 10-Q.  Mr. Erani further admits that the electronic signatures of Mr. Laughlin and Mr. Arcari appear on the Form 10-Q.  Mr. Erani denies making any of the statements in the Form 10-Q.  No further response is required to the extent the allegations of Paragraph 98 purport to construe and excerpt the Form 10-Q, which speaks for itself.  Mr. Erani denies that Paragraph 98 completely and accurately construes and excerpts the Form 10-Q.  Mr. Erani otherwise denies each and every allegation in Paragraph 98.

99.     With respect to Paragraph 99, Mr. Erani admits that on October 3, 2000, Organogenesis issued a release published on *Business Wire* reporting Apligraf sales for September and the third quarter of 2000, in which Mr. Laughlin is quoted.  Mr. Erani denies making any of the statements in the release.  No further response is required to the extent the allegations of Paragraph 99 purport to construe and excerpt the release, which speaks for itself. Mr. Erani denies that Paragraph 99 completely and accurately construes and excerpts the release. Mr. Erani otherwise denies each and every allegation in Paragraph 99.

100.     With respect to Paragraph 100, Mr. Erani lacks personal knowledge sufficient to form a belief as to the truth of the allegations concerning unidentified "statements" made by Mr. Laughlin in a CNBC interview.  Mr. Erani admits that the Company issued a press release on August 2, 2000, but denies that he made any of the statements in the release.  Mr. Erani further admits that the Company filed a Form 10-Q for the second quarter of 2000, but denies that he made any of the statements in the Form 10-Q.  Mr. Erani states that those documents speak for themselves, and denies that Paragraph 100 completely and accurately construes and characterizes those documents.  Mr. Erani further states that he lacks personal knowledge sufficient to form a

belief as to the truth of the allegations concerning unidentified "statements" made by unidentified "defendants" in those documents, and on that basis denies them. Mr. Erani otherwise denies each and every allegation in Paragraph 100.

With respect to Paragraph 100(a), Mr. Erani incorporates by reference his responses to paragraphs 59-67, *supra*, and denies each and every allegation in Paragraph 100(a).

With respect to Paragraph 100(b), Mr. Erani lacks personal knowledge sufficient to form a belief as to the truth of the allegations concerning any investigation by plaintiffs' counsel or their representatives, and on that basis denies them. No response is required to the allegations of Paragraph 100(b) that purport to describe, construe and excerpt unidentified statements or documents, which speak for themselves. To the extent a response is required, Mr. Erani lacks personal knowledge sufficient to form a belief as to the truth of the allegations concerning unidentified "representations" made by unidentified "defendants," and on that basis denies them. Mr. Erani incorporates by reference his responses to Paragraphs 59-67 and otherwise denies each and every allegation in Paragraph 100(b).

With respect to Paragraph 100(c), Mr. Erani lacks personal knowledge sufficient to form a belief as to the truth of the allegations concerning any investigation by plaintiffs' counsel or their representatives, and on that basis denies them. No response is required to the allegations of Paragraph 100(c) that purport to describe, construe and excerpt unidentified statements or documents, which speak for themselves. To the extent a response is required, Mr. Erani lacks personal knowledge sufficient to form a belief as to the truth of the allegations concerning unidentified "statements" made by unidentified "defendants," of the beliefs of unidentified "investors," and on that basis denies them. Mr. Erani otherwise denies each and every allegation in Paragraph 100(c).

With respect to Paragraph 100(d), Mr. Erani lacks personal knowledge sufficient to form a belief as to the truth of the allegations concerning any investigation by plaintiffs' counsel or their representatives, and on that basis denies them. No response is required to the allegations of Paragraph 100(d) that purport to describe, construe and excerpt unidentified statements or documents, which speak for themselves. To the extent a response is required, Mr. Erani lacks personal knowledge sufficient to form a belief as to the truth of the allegations concerning any "representations" made by unidentified "defendants," and on that basis denies them. Mr. Erani otherwise denies each and every allegation in Paragraph 100(d).

With respect to Paragraph 100(e), Mr. Erani lacks personal knowledge sufficient to form a belief as to the truth of the allegations concerning any investigation by plaintiffs' counsel or their representatives, and on that basis denies them. No response is required to the allegations of Paragraph 100(e) that purport to describe, construe and excerpt unidentified statements or documents, which speak for themselves. To the extent a response is required, Mr. Erani lacks personal knowledge sufficient to form a belief as to the truth of the allegations concerning unidentified "representations" made by unidentified "defendants," and on that basis denies them. Mr. Erani otherwise denies each and every allegation in Paragraph 100(e).

With respect to Paragraph 100(f), Mr. Erani lacks personal knowledge sufficient to form a belief as to the truth of the allegations concerning any investigation by plaintiffs' counsel or their representatives, and on that basis denies them. No response is required to the allegations of Paragraph 100(f) that purport to describe, construe and excerpt unidentified statements or documents, which speak for themselves. To the extent a response is required, Mr. Erani lacks personal knowledge sufficient to form a belief as to the truth of the allegations concerning

unidentified "representation[s]" made by unidentified "defendants," and on that basis denies them. Mr. Erani otherwise denies each and every allegation in Paragraph 100(f).

With respect to Paragraph 100(g), Mr. Erani lacks personal knowledge sufficient to form a belief as to the truth of the allegations concerning any investigation by plaintiffs' counsel or their representatives, and on that basis denies them. No response is required to the allegations of Paragraph 100(g) that purport to describe, construe and excerpt unidentified statements or documents, which speak for themselves. To the extent a response is required, Mr. Erani lacks personal knowledge sufficient to form a belief as to the truth of the allegations concerning unidentified "representation[s]" made by unidentified "defendants," and on that basis denies them. Mr. Erani otherwise denies each and every allegation in Paragraph 100(g).

With respect to Paragraph 100(h), Mr. Erani lacks personal knowledge sufficient to form a belief as to the truth of the allegations concerning any investigation by plaintiffs' counsel or their representatives, and on that basis denies them. No response is required to the allegations of Paragraph 100(h) that purport to describe, construe and excerpt unidentified statements or documents, which speak for themselves. To the extent a response is required, Mr. Erani lacks personal knowledge sufficient to form a belief as to the truth of the allegations concerning unidentified "representation[s]" made by unidentified "defendants," and on that basis denies them. Mr. Erani otherwise denies each and every allegation in Paragraph 100(h).

With respect to Paragraph 100(i), Mr. Erani admits that the Company filed a second quarter 2000 Form 10-Q. Mr. Erani denies making any of the statements in the Form 10-Q. No further response is required to the extent the allegations of Paragraph 100(i) purport to construe and characterize the Form 10-Q, which speaks for itself. To the extent a response is required, Mr. Erani denies that Paragraph 100(i) accurately and completely construes and characterizes the

Form 10-Q.  Mr. Erani lacks personal knowledge sufficient to form a belief as to the truth of the allegations concerning unidentified "representations" made by unidentified "defendants," and on that basis denies them.  Mr. Erani incorporates by reference his responses to Paragraphs 59-67 and otherwise denies each and every allegation in Paragraph 100(i).

101.    With respect to Paragraph 101, Mr. Erani admits that on November 14, 2000, Organogenesis issued a release published on *Business Wire* reporting Apligraf sales for September and the third quarter of 2000, in which Mr. Laughlin is quoted.  Mr. Erani denies making any of the statements in the release.  No further response is required to the extent the allegations of Paragraph 101 purport to construe and excerpt the release, which speaks for itself. Mr. Erani denies that Paragraph 101 completely and accurately construes and excerpts the release.  Mr. Erani lacks personal knowledge sufficient to form a belief as to the truth of the allegations concerning unidentified "herald[ing]" performed by unidentified "defendants," and on that basis denies them.  Mr. Erani otherwise denies each and every allegation in Paragraph 101.

102.    With respect to Paragraph 102, Mr. Erani admits that on November 14, 2000, Organogenesis filed with the SEC its financial results for the third quarter of 2000, the period ended September 30, 2000, pursuant to a Form 10-Q.  Mr. Erani further admits that the electronic signatures of Mr. Laughlin and Mr. Arcari appear on the Form 10-Q.  Mr. Erani denies making any of the statements in the Form 10-Q.  No further response is required to the extent the allegations of Paragraph 102 purport to construe and excerpt the Form 10-Q, which speaks for itself.  Mr. Erani denies that Paragraph 102 completely and accurately construes and excerpts the Form 10-Q.  Mr. Erani otherwise denies each and every allegation in Paragraph 102.

103.    With respect to Paragraph 103, Mr. Erani admits that on December 4, 2000, Organogenesis issued a release reporting November sales of Apligraf, in which Mr. Laughlin is quoted.  Mr. Erani denies making any of the statements in the release.  No further response is required to the extent the allegations of Paragraph 103 purport to construe and excerpt the release, which speaks for itself.  Mr. Erani denies that Paragraph 103 completely and accurately construes and excerpts the release.  Mr. Erani otherwise denies each and every allegation in Paragraph 103.

104.    With respect to Paragraph 104, Mr. Erani admits that the Company issued press releases on October 3, 2000 and November 14, 2000, and filed a Form 10-Q for the third quarter 2000.  Mr. Erani denies that he made any of the statements in those documents, and denies that Paragraph 104 accurately construes and characterizes those documents.  Mr. Erani otherwise denies each and every allegation in Paragraph 104.

With respect to Paragraph 104(a), Mr. Erani incorporates by reference his responses to Paragraphs 59-67, and otherwise denies each and every allegation in Paragraph 104(a).

With respect to Paragraph 104(b), Mr. Erani lacks personal knowledge sufficient to form a belief as to the truth of the allegations concerning any investigation by plaintiffs' counsel or their representatives, and on that basis denies them. No further response is required to the allegations of Paragraph 104(b) that purport to describe, construe and excerpt unidentified statements or documents, which speak for themselves.  To the extent a response is required, Mr. Erani lacks personal knowledge sufficient to form a belief as to the truth of the allegations concerning unidentified "representations" made by, or knowledge of, unidentified "defendants," and on that basis denies them.  Mr. Erani otherwise denies each and every allegation of Paragraph 104(b).

With respect to Paragraph 104(c), Mr. Erani lacks personal knowledge sufficient to form a belief as to the truth of the allegations concerning any investigation by plaintiffs' counsel or their representatives, and on that basis denies them. No further response is required to the allegations of Paragraph 104(c) that purport to describe, construe and excerpt unidentified statements or documents, which speak for themselves. To the extent a response is required, Mr. Erani lacks personal knowledge sufficient to form a belief as to the truth of the allegations concerning unidentified "representations" made by unidentified "defendants," or the purported "know[ledge]" of unidentified "upper management," and on that basis denies them. Mr. Erani incorporates by reference his responses to Paragraphs 59-67, and otherwise denies each and every allegation of Paragraph 104(c).

With respect to Paragraph 104(d), Mr. Erani lacks personal knowledge sufficient to form a belief as to the truth of the allegations concerning any investigation by plaintiffs' counsel or their representatives, and on that basis denies them. No further response is required to the allegations of Paragraph 104(d) that purport to describe, construe and excerpt unidentified statements or documents, which speak for themselves. To the extent a response is required, Mr. Erani lacks personal knowledge sufficient to form a belief as to the truth of the allegations concerning unidentified "public statements" made by unidentified "defendants," and on that basis denies them. Mr. Erani otherwise denies each and every allegation of Paragraph 104(d).

With respect to Paragraph 104(e), Mr. Erani lacks personal knowledge sufficient to form a belief as to the truth of the allegations concerning unidentified "representations" made by unidentified "defendants," and on that basis denies them. Mr. Erani incorporates by reference his responses to Paragraphs 59-67, and otherwise denies each and every allegation in Paragraph 104(e).

105.    With respect to Paragraph 105, Mr. Erani admits that on December 6, 2000, Organogenesis issued a release announcing that the Board of the Company had authorized the repurchase of up to 500,000 shares of Organogenesis common stock, in which Mr. Laughlin was quoted. Mr. Erani denies making any of the statements in the release. No further response is required to the extent the allegations of Paragraph 105 purport to construe and excerpt the release, which speaks for itself. Mr. Erani denies that Paragraph 105 completely and accurately construes and excerpts the release. Mr. Erani further admits that on December 6, 2000, Organogenesis' stock was traded on the open market, and admits that its price closed at $7.50 per share on December 6, 2000. Mr. Erani otherwise denies each and every allegation in Paragraph 105.

106.    With respect to Paragraph 106, Mr. Erani admits that on February 5, 2001, Organogenesis issued a release announcing sales of Apligraf in January 2001, in which Mr. Arcari is quoted. Mr. Erani denies making any of the statements in the release. No further response is required to the extent the allegations of Paragraph 106 purport to construe and excerpt the release, which speaks for itself. Mr. Erani denies that Paragraph 106 completely and accurately construes and excerpts the release. Mr. Erani otherwise denies each and every allegation in Paragraph 106.

107.    With respect to Paragraph 107, Mr. Erani admits that on February 26, 2001, Organogenesis issued a release announcing an amendment to its 1996 agreement with Novartis. No further response is required to the extent the allegations of Paragraph 107 purport to construe and paraphrase the release, which speaks for itself. Mr. Erani denies that Paragraph 107 completely and accurately construes and paraphrases the release. Mr. Erani further admits that Organogenesis and Novartis were parties to the Novartis Contracts. No response is required to

those allegations purporting to construe and characterize the Novartis Contracts, which speak for

themselves. To the extent a response is required, Mr. Erani denies that Paragraph 107

completely and accurately construes and paraphrases the Novartis Contracts and the parties'

relationship as set forth therein. Mr. Erani denies that on February 27, 2001, Mr. Laughlin

appeared on the cable financial news show "Power Lunch," on the CNBC network, but admits

that such an appearance took place on February 28, 2001. No response is required to the extent

the allegations of Paragraph 107 purport to construe and quote from the interview, the transcript

of which speaks for itself. Mr. Erani denies that Paragraph 107 completely and accurately

construes and excerpts the interview. Mr. Erani lacks personal knowledge sufficient to form a

belief as to the truth of the allegations relating to the extent of dissemination of the cable

financial news show "Power Lunch," or the identity of its host, and on that basis denies them.

Mr. Erani further admits that on February 27, 2001, Organogenesis' stock was traded on the open

market, and reached an intra-day price as high as $12.00 per share, but denies that

Organogenesis' stock price closed above $12.00 on the same day. Mr. Erani otherwise denies

each and every allegation in Paragraph 107.

108.    With respect to Paragraph 108, Mr. Erani denies that on February 27, 2001,

Mr. Laughlin made any statements in an interview on the CNBC network, but admits that an

interview of Mr. Laughlin on that network took place on February 28, 2001. Mr. Erani admits

that the Company issued a press release on February 5, 2001, but denies making any of the

statements in the release. No response is required to the extent the allegations of Paragraph 108

purport to construe and characterize the February 28 interview or the February 5 press release, as

the interview transcript and press release speaks for themselves. Mr. Erani denies that

Paragraph 108 completely and accurately construes and excerpts the interview and press release. Mr. Erani otherwise denies each and every allegation in Paragraph 108.

With respect to Paragraph 108(a), Mr. Erani incorporates by reference his responses to Paragraphs 59-67, and denies each and every allegation in Paragraph 108(a).

With respect to Paragraph 108(b), Mr. Erani lacks personal knowledge sufficient to form a belief as to the truth of the allegations concerning any investigation by plaintiffs' counsel or their representatives, and on that basis denies them. No response is required to the allegations of Paragraph 108(b) that purport to describe, construe and excerpt unidentified statements or documents, which speak for themselves. To the extent a response is required, Mr. Erani lacks personal knowledge sufficient to form a belief as to the truth of the allegations concerning the knowledge of or unidentified "representations" made by unidentified "defendants," and on that basis denies them. Mr. Erani incorporates by reference his responses to Paragraphs 59-67, and otherwise denies each and every allegation in Paragraph 108(b).

With respect to Paragraph 108(c), Mr. Erani lacks personal knowledge sufficient to form a belief as to the truth of the allegations concerning any investigation by plaintiffs' counsel or their representatives, and on that basis denies them. No response is required to the allegations of Paragraph 108(c) that purport to describe, construe and excerpt unidentified statements or documents, which speak for themselves. To the extent a response is required, Mr. Erani lacks personal knowledge sufficient to form a belief as to the truth of the allegations concerning unidentified "representation[s]" made by Mr. Laughlin and on that basis denies them. Mr. Erani otherwise denies each and every allegation of Paragraph 108(c).

With respect to Paragraph 108(d), no response is required to the allegations of Paragraph 108(d) that purport to describe, construe and excerpt unidentified statements or documents,

which speak for themselves. To the extent a response is required, Mr. Erani lacks personal

knowledge sufficient to form a belief as to the truth of the allegations concerning unidentified

"representations" made by Mr. Laughlin, or the knowledge of or unidentified "reve[lations]" by

unidentified "defendants," and on that basis denies them. Mr. Erani otherwise denies each and

every allegation of Paragraph 108(d).

With respect to Paragraph 108(e), Mr. Erani lacks personal knowledge sufficient to form

a belief as to the truth of the allegations concerning any investigation by plaintiffs' counsel or

their representatives, and on that basis denies them. No response is required to the allegations of

Paragraph 108(e) that purport to describe, construe and excerpt unidentified statements or

documents, which speak for themselves. To the extent a response is required, Mr. Erani lacks

personal knowledge sufficient to form a belief as to the truth of the allegations concerning

"statements" purportedly made by Mr. Laughlin, and on that basis denies them. Mr. Erani

admits that Organogenesis and Novartis were parties to the Novartis Contracts. No further

response is required to the allegations of Paragraph 108(e) that purport to describe, construe and

paraphrase those contracts, which speak for themselves. To the extent a response is required,

Mr. Erani denies that Paragraph 108(e) accurately and completely construes and characterizes

those contracts and the parties' relationship as set forth therein. Mr. Erani otherwise denies each

and every allegation of Paragraph 108(e).

With respect to Paragraph 108(f), no response is required to the allegations of Paragraph

108(f) that purport to describe, construe and excerpt unidentified statements or documents, which

speak for themselves. To the extent a response is required, Mr. Erani lacks personal knowledge

sufficient to form a belief as to the truth of the allegations concerning "representation[s]"

purportedly made by Mr. Laughlin, and on that basis denies them. Mr. Erani admits

Organogenesis and Novartis were parties to the Novartis Contracts. No further response is required to the allegations of Paragraph 108(f) that purport to describe, construe and paraphrase those contracts, which speak for themselves. To the extent a response is required, Mr. Erani denies that Paragraph 108(f) accurately and completely construes and characterizes those contracts and the parties' relationship as set forth therein. Mr. Erani otherwise denies each and every allegation of Paragraph 108(f).

With respect to Paragraph 108(g), no response is required to the allegations of Paragraph 108(g) that purport to describe, construe and excerpt unidentified statements or documents, which speak for themselves. To the extent a response is required, Mr. Erani lacks personal knowledge sufficient to form a belief as to the truth of the allegations concerning "representation[s]" purportedly made by Mr. Laughlin, and on that basis denies them. Mr. Erani admits that Organogenesis and Novartis were parties to the Novartis Contracts. No further response is required to the allegations of Paragraph 108(g) that purport to describe, construe and paraphrase those contracts, which speak for themselves. To the extent a response is required, Mr. Erani denies that Paragraph 108(g) accurately and completely construes and characterizes those contracts and the parties' relationship as set forth therein. Mr. Erani otherwise denies each and every allegation of Paragraph 108(g).

109.    With respect to Paragraph 109, no response is required to the allegations that purport to quote from an analyst report issued by non-party Needham & Co. on an undisclosed date, which presumably speaks for itself, if it in fact exists. Mr. Erani otherwise denies each and every allegation in Paragraph 109.

110.    With respect to Paragraph 110, Mr. Erani admits that on March 5, 2001, Organogenesis issued a release announcing sales of Apligraf in February 2001, in which

Mr. Arcari is quoted.  Mr. Erani denies making any of the statements in the release.  No further response is required to the extent the allegations of Paragraph 110 purport to construe and excerpt the release, which speaks for itself.  Mr. Erani denies that Paragraph 110 completely and accurately construes and excerpts the release.  Mr. Erani otherwise denies each and every allegation in Paragraph 110.

111.    With respect to Paragraph 111, Mr. Erani admits that, in March 2001, Mr. Arcari was Chief Financial Officer of Organogenesis and PricewaterhouseCoopers was the Company's auditor.  Mr. Erani lacks personal knowledge sufficient to form a belief as to the truth of the allegations concerning the existence or content of the alleged "Confidential Arcari Document", and on that basis denies them.  Mr. Erani further states that, in any event, no response is required to those allegations purporting to construe and excerpt statements allegedly made in any such document, which would speak for itself.  Mr. Erani otherwise denies each and every allegation in Paragraph 111.

112.    With respect to Paragraph 112, Mr. Erani admits that on March 30, 2001, Organogenesis issued a release published on *Business Wire* announcing financial results for the fourth quarter and full year 2000, in which Mr. Laughlin is quoted.  Mr. Erani denies making any of the statements in the release.  No further response is required to the extent the allegations of Paragraph 112 purport to construe and excerpt the release, which speaks for itself.  Mr. Erani denies that Paragraph 112 completely and accurately construes and excerpts the release.  Mr. Erani otherwise denies each and every allegation in Paragraph 112.

113.    With respect to Paragraph 113, Mr. Erani denies that that on March 30, 2001, Organogenesis filed with the SEC its financial results for the full year 2000, but admits that the Company filed such results on April 2, 2001, pursuant to a Form 10-K.  Mr. Erani further admits

that the electronic signatures of himself and Messrs. Laughlin and Arcari appear on the Form

10-K.  No further response is required to the extent the allegations of Paragraph 113 purport to

construe and excerpt the Form 10-K, which speaks for itself.  Mr. Erani denies that

Paragraph 113 completely and accurately construes and excerpts the Form 10-K.  Mr. Erani

otherwise denies each and every allegation in Paragraph 113.

114.    With respect to Paragraph 114, Mr. Erani lacks personal knowledge sufficient to

form a belief as to the truth of the allegations concerning the purported beliefs or emotions of

non-party PricewaterhouseCoopers, and on that basis denies them.  Mr. Erani admits that

PricewaterhouseCoopers issued a "Report of Independent Accountants" dated March 13, 2001

certifying Organogenesis' financial statements.  No response is required to the extent the

allegations of Paragraph 114 purport to construe and excerpt the report, which speaks for itself.

Mr. Erani denies that Paragraph 114 completely and accurately construes and excerpts the report.

Mr. Erani otherwise denies each and every allegation in Paragraph 114.

115.    With respect to Paragraph 115, Mr. Erani admits that Organogenesis hosted

presentations at the Tucker Anthony Sutro Capital Markets 2001 Health Care Conference in

Laguna Niguel, California, on April 4, 2001, and at the Fifth Annual American Stock Exchange

Emerging Growth Conference in New York, New York on April 4, 2001.  No response is

required to the allegations that purport to construe and paraphrase an analyst report purportedly

issued by non-party Needham & Co. on April 19, 2001, which would speak for itself.  Mr. Erani

otherwise denies each and every allegation in Paragraph 115.

116.    With respect to Paragraph 116, Mr. Erani admits that the Company issued press

releases on March 5 and March 30 2001, and admits that the Company filed a 2000 Form 10-K

on April 2, 2001.  Mr. Erani admits that his electronic signature appears on the Form 10-K, but

denies that he made any of the statements in the press releases. No response is required to the extent the allegations of Paragraph 116 purport to construe and characterize those documents, which speak for themselves. Mr. Erani denies that Paragraph 116 completely and accurately construes and characterizes those documents, and otherwise denies each and every allegation in Paragraph 116.

With respect to Paragraph 116(a), Mr. Erani incorporates by reference his responses to Paragraphs 59-67, and denies each and every allegation in Paragraph 116(a).

With respect to Paragraph 116(b), no response is required to the allegations of Paragraph 116(b) that purport to excerpt and construe unidentified statements or documents, which speak for themselves. To the extent a response is required, Mr. Erani lacks personal knowledge sufficient to form a belief as to the truth of the allegations concerning the knowledge of or unidentified "representations" made by unidentified "defendants," and on that basis denies them. Mr. Erani otherwise denies those allegations, and denies each and every allegation in Paragraph 116(b).

With respect to Paragraph 116(c), Mr. Erani lacks personal knowledge sufficient to form a belief as to the truth of the allegations concerning any investigation by plaintiffs' counsel or their representatives, and on that basis denies them. No response is required to the allegations of Paragraph 116(c) that purport to excerpt and construe unidentified statements or documents, which speak for themselves. To the extent a response is required, Mr. Erani lacks personal knowledge sufficient to form a belief as to the truth of the allegations concerning the unidentified "representation[s]" made by unidentified "defendants," and on that basis denies them. Mr. Erani otherwise denies each and every allegation in Paragraph 116(c).

With respect to Paragraph 116(d), Mr. Erani lacks personal knowledge sufficient to form a belief as to the truth of the allegations concerning any investigation by plaintiffs' counsel or their representatives, and on that basis denies them. No response is required to the allegations of Paragraph 116(d) that excerpt to describe and construe unidentified statements or documents, which speak for themselves. To the extent a response is required, Mr. Erani lacks personal knowledge sufficient to form a belief as to the truth of the allegations concerning the knowledge of or unidentified "representations" made by unidentified "defendants," and on that basis denies them. Mr. Erani otherwise denies each and every allegation in Paragraph 116(d).

With respect to Paragraph 116(e), Mr. Erani admits Organogenesis and Novartis were parties to the Novartis Contracts. No further response is required to the allegations of Paragraph 116(e) that purport to describe, construe and paraphrase those contracts, which speak for themselves. To the extent a response is required, Mr. Erani denies that Paragraph 116(e) accurately and completely construes and characterizes those contracts and the parties' relationship as set forth therein. No response is required to the allegations of Paragraph 116(e) that purport to excerpt and construe unidentified statements or documents, which speak for themselves. To the extent a response is required, Mr. Erani lacks personal knowledge sufficient to form a belief as to the truth of the allegations concerning the knowledge of or unidentified "representation[s]" made by unidentified "defendants," and on that basis denies them. Mr. Erani otherwise denies each and every allegation in Paragraph 116(e).

With respect to Paragraph 116(f), Mr. Erani admits Organogenesis and Novartis were parties to the Novartis Contracts. No further response is required to the allegations of Paragraph 116(f) that purport to describe, construe and paraphrase those contracts, which speak for themselves. To the extent a response is required, Mr. Erani denies that Paragraph 116(f)

accurately and completely construes and characterizes those contracts and the parties'
relationship as set forth therein.  No response is required to the allegations of Paragraph 116(f)
that purport to excerpt and construe unidentified statements or documents, which speak for
themselves.  To the extent a response is required, Mr. Erani lacks personal knowledge sufficient
to form a belief as to the truth of the allegations concerning the knowledge of or unidentified
"representation[s]" made by unidentified "defendants," and on that basis denies them.  Mr. Erani
otherwise denies each and every allegation in Paragraph 116(f).

        With respect to Paragraph 116(g), Mr. Erani lacks personal knowledge sufficient to form
a belief as to the truth of the allegations concerning any investigation by plaintiffs' counsel or
their representatives, and on that basis denies them.  No response is required to the allegations of
Paragraph 116(g) that purport to describe and construe unidentified statements or documents,
which speak for themselves.  To the extent a response is required, Mr. Erani lacks personal
knowledge sufficient to form a belief as to the truth of the allegations concerning the knowledge
of or unidentified "representation[s]" made by unidentified "defendants," and on that basis
denies them.  Mr. Erani otherwise denies each and every allegation in Paragraph 116(g).

        With respect to Paragraph 116(h), Mr. Erani lacks personal knowledge sufficient to form
a belief as to the truth of the allegations concerning any investigation by plaintiffs' counsel or
their representatives, and on that basis denies them.  No response is required to the allegations of
Paragraph 116(h) that purport to describe and construe unidentified statements or documents,
which speak for themselves.  To the extent a response is required, Mr. Erani lacks personal
knowledge sufficient to form a belief as to the truth of the allegations concerning the knowledge
of or unidentified "representations" made by unidentified "defendants," and on that basis denies
them.  Mr. Erani otherwise denies each and every allegation in Paragraph 116(h).

With respect to Paragraph 116(i), Mr. Erani lacks personal knowledge sufficient to form a belief as to the truth of the allegations concerning any investigation by plaintiffs' counsel or their representatives, and on that basis denies them. No response is required to the allegations of Paragraph 116(i) that purport to describe and construe unidentified statements or documents, which speak for themselves. To the extent a response is required, Mr. Erani lacks personal knowledge sufficient to form a belief as to the truth of the allegations concerning the knowledge of or unidentified "representation[s]" made by unidentified "defendants," and on that basis denies them. Mr. Erani otherwise denies each and every allegation in Paragraph 116(i).

With respect to Paragraph 116(j), Mr. Erani lacks personal knowledge sufficient to form a belief as to the truth of the allegations concerning any investigation by plaintiffs' counsel or their representatives, and on that basis denies them. No response is required to the allegations of Paragraph 116(j) that purport to describe and construe unidentified statements or documents, which speak for themselves. To the extent a response is required, Mr. Erani lacks personal knowledge sufficient to form a belief as to the truth of the allegations concerning the unidentified "representation[s]" made by unidentified "defendants," and on that basis denies them. Mr. Erani otherwise denies each and every allegation in Paragraph 116(j).

With respect to Paragraph 116(k), no response is required to the allegations of Paragraph 116(k) that purport to describe and construe unidentified statements or documents, which speak for themselves. To the extent a response is required, Mr. Erani further lacks personal knowledge sufficient to form a belief as to the truth of the allegations concerning unidentified "representation[s]" made by unidentified "defendants," and on that basis denies them. Mr. Erani otherwise denies each and every allegation in Paragraph 116(k).

With respect to Paragraph 116(*l*), Mr. Erani lacks personal knowledge sufficient to form a belief as to the truth of the allegations concerning any investigation by plaintiffs' counsel or their representatives, and on that basis denies them. No response is required to the allegations of Paragraph 116(*l*) that purport to describe and construe unidentified statements or documents, which speak for themselves. To the extent a response is required, Mr. Erani lacks personal knowledge sufficient to form a belief as to the truth of the allegations concerning the "herald[ing]" of unidentified "representations" by unidentified "defendants," and on that basis denies them. Mr. Erani otherwise denies each and every allegation in Paragraph 116(*l*).

With respect to Paragraph 116(m), no response is required to the allegations of Paragraph 116(m) that purport to describe and construe unidentified statements or documents, which speak for themselves. To the extent a response is required, Mr. Erani further lacks personal knowledge sufficient to form a belief as to the truth of the allegations concerning the knowledge of or unidentified "representation[s]" made by unidentified "defendants," and on that basis denies them. Mr. Erani otherwise denies each and every allegation in Paragraph 116(m).

With respect to Paragraph 116(n), no response is required to the allegations of Paragraph 116(n) that relate to the purported actions, beliefs and emotions of non-party PricewaterhouseCoopers. To the extent that a response is required, Mr. Erani lacks personal knowledge sufficient to form a belief as to the truth of the allegations concerning the beliefs of non-party PricewaterhouseCoopers, or the existence or content of the alleged "Confidential Arcari Document," and on that basis denies them. Mr. Erani further states that, in any event, no response is required to those allegations purporting to construe and excerpt any such document, which would speak for itself. Mr. Erani otherwise denies each and every allegation in Paragraph 116(n).

117.    With respect to Paragraph 117, Mr. Erani admits that on April 27, 2001 the Company issued a release announcing results for the first quarter of 2001, in which Mr. Arcari is quoted.  Mr. Erani denies making any of the statements in the release.  No further response is required to the extent the allegations of Paragraph 117 purport to construe and excerpt the release, which speaks for itself.  Mr. Erani denies that Paragraph 117 completely and accurately construes and excerpts the release.  Mr. Erani otherwise denies each and every allegation in Paragraph 117.

118.    With respect to Paragraph 118, Mr. Erani denies that on April 27, 2001 the Company filed with the SEC its financial results for the first quarter of 2001, the period ended March 31, 2001, but admits that the Company filed such results with the SEC on April 26, 2001, pursuant to a Form 10-Q.  Mr. Erani further admits that the electronic signatures of Messrs Laughlin and Arcari appear on the Form 10-Q.  Mr. Erani denies making any of the statements in the Form 10-Q.  No further response is required to the extent the allegations of Paragraph 118 purport to construe and excerpt the Form 10-Q, which speaks for itself.  Mr. Erani specifically denies that the language plaintiffs purport to quote from that 10-Q appears therein, and generally denies that Paragraph 118 completely and accurately construes and excerpts the Form 10-Q. Mr. Erani otherwise denies each and every allegation in Paragraph 118.

119.    With respect to Paragraph 119, Mr. Erani admits that the Company issued a press release on April 7, 2001 and filed a Form 10-Q for the first quarter of 2001, but denies that he made any of the statements in those documents.  Mr. Erani denies that Paragraph 119 accurately and completely characterizes and construes such documents, and otherwise denies each and every allegation in Paragraph 119.

With respect to Paragraph 119(a), Mr. Erani incorporates by reference his responses to Paragraphs 59-67, and denies each and every allegation in Paragraph 119(a).

With respect to Paragraph 119(b), no response is required to the allegations of Paragraph 119(b) that purport to excerpt and construe unidentified statements or documents, which speak for themselves. To the extent a response is required, Mr. Erani further lacks personal knowledge sufficient to form a belief as to the truth of the allegations concerning the knowledge of or unidentified "representation[s]" made by unidentified "defendants," and on that basis denies them. Mr. Erani otherwise denies each and every allegation in Paragraph 119(b).

With respect to Paragraph 119(c), no response is required to the allegations of Paragraph 119(c) that purport to excerpt and construe unidentified statements or documents, which speak for themselves. To the extent a response is required, Mr. Erani further lacks personal knowledge sufficient to form a belief as to the truth of the allegations concerning the knowledge of or unidentified statements made by unidentified "defendants," and on that basis denies them. Mr. Erani otherwise denies each and every allegation in Paragraph 119(c).

With respect to Paragraph 119(d), no response is required to the allegations of Paragraph 119(d) that excerpt to describe and construe unidentified statements or documents, which speak for themselves. To the extent a response is required, Mr. Erani further lacks personal knowledge sufficient to form a belief as to the truth of the allegations concerning the knowledge of or unidentified "representation[s]" made by unidentified "defendants," and on that basis denies them. Mr. Erani otherwise denies each and every allegation in Paragraph 119(d).

With respect to Paragraph 119(e), Mr. Erani lacks personal knowledge sufficient to form a belief as to the truth of the allegations concerning any investigation by plaintiffs' counsel or their representatives, and on that basis denies them. No response is required to the allegations of

Paragraph 119(e) that purport to excerpt and construe unidentified statements or documents, which speak for themselves.  To the extent a response is required, Mr. Erani further lacks personal knowledge sufficient to form a belief as to the truth of the allegations concerning the knowledge of or unidentified "representation[s]" made by unidentified "defendants," and on that basis denies them.  Mr. Erani otherwise denies each and every allegation in Paragraph 119(e).

With respect to Paragraph 119(f), Mr. Erani lacks personal knowledge sufficient to form a belief as to the truth of the allegations concerning any investigation by plaintiffs' counsel or their representatives, and on that basis denies them.  No response is required to the allegations of Paragraph 119(f) that purport to excerpt and construe unidentified statements or documents, which speak for themselves.  To the extent a response is required, Mr. Erani lacks personal knowledge sufficient to form a belief as to the truth of the allegations concerning the knowledge of unidentified "upper management" or unidentified "representation[s]" made by unidentified "defendants," and on that basis denies them.  Mr. Erani otherwise denies each and every allegation in Paragraph 119(f).

With respect to Paragraph 119(g), Mr. Erani incorporates by reference his responses to Paragraphs 59-67, and denies each and every allegation in Paragraph 119(g).

120.    With respect to Paragraph 120, Mr. Erani admits that on April 27, 2001, Organogenesis issued a release announcing it had filed with the SEC a Post-Effective Amendment to its Registration Statement on Form S-3.  Mr. Erani further admits that on May 8, 2001, Organogenesis issued a release announcing that the Company had entered into an underwriting agreement with UBS Warburg LLC, as underwriter.  No further response is required to the extent the allegations of Paragraph 120 purport to construe and paraphrase the releases, which speak for themselves.  Mr. Erani denies that Paragraph 120 completely and

accurately construe and paraphrase the releases.[4]  Mr. Erani otherwise denies each and every

allegation in Paragraph 120.

121.     With respect to Paragraph 121, no response is required to the allegations that

purport to quote the statements, views and actions of analysts employed by non-party Needham

& Co.  To an extent a response is required, Mr. Erani denies each and every allegation in

Paragraph 121.

122.     With respect to Paragraph 122, Mr. Erani admits that on May 16, 2001 the

Company issued a release announcing Mr. Laughlin's resignation from the Company and that

Dr. Sabolinski, who had previously served as Senior Vice President, Medical and Regulatory

Affairs, would become President, Chief Executive Officer and a member of the Board of the

Company, and further admits that Dr. Sabolinski is quoted in the release.  Mr. Erani denies

making any of the statements in the release.  No further response is required to the extent the

allegations of Paragraph 122 purport to construe and excerpt the release, which speaks for itself.

Mr. Erani denies that Paragraph 122 completely and accurately construes and excerpts the

release.  To the extent that plaintiffs purport to construe and characterize Mr. Laughlin's

departure, Mr. Erani lacks personal knowledge sufficient to form a belief as to the truth of the

allegations of Paragraph 122, and on that basis denies them.  Mr. Erani otherwise denies each

and every allegation in Paragraph 122.

123.     With respect to Paragraph 123, Mr. Erani admits that on May 17, 2001 the

Company filed a Prospectus Supplement with the SEC.  No further response is required to the

extent the allegations of Paragraph 123 purport to construe and excerpt the Prospectus

---

[4]     With respect to footnote 4, no response is required to the extent the allegations of footnote 4 purport to construe and paraphrase the releases, which speak for themselves.  Mr. Erani denies that footnote 4 completely and accurately construes and paraphrases the releases.

Supplement, which speaks for itself.  Mr. Erani denies that Paragraph 123 completely and accurately construes and paraphrases the Prospectus Supplement.  Mr. Erani specifically denies that the price of Organogenesis shares was "artificial[ly] inflate[ed]," and except as specifically admitted herein, denies each and every allegation in Paragraph 123.

124.    With respect to Paragraph 124, Mr. Erani lacks personal knowledge sufficient to form a belief as to the truth of the allegations concerning the existence or content of the alleged "Confidential Arcari Document," and on that basis denies them and incorporates by reference his response to Paragraph 7.  Mr. Erani further states that, in any event, no response is required to those allegations purporting to construe and excerpt any such document, which would speak for itself.  Mr. Erani admits that in 2001 the Company was working with UBS Warburg.  Mr. Erani lacks personal knowledge sufficient to form a belief as to the allegations concerning the subjective thought process of non-party PricewaterhouseCoopers, and on that basis denies them. Mr. Erani otherwise denies each and every allegation in Paragraph 124.

125.    With respect to Paragraph 125, Mr. Erani admits that on June 5, 2001, Organogenesis issued a release announcing the Company's sales for May 2001, in which Dr. Sabolinski is quoted.  Mr. Erani denies making any of the statements in the release.  No further response is required to the extent the allegations of Paragraph 125 purport to construe and excerpt the release, which speaks for itself.  Mr. Erani denies that Paragraph 125 completely and accurately construes and excerpts the release.  Mr. Erani otherwise denies each and every allegation in Paragraph 125.

126.    With respect to Paragraph 126, Mr. Erani presently lacks personal knowledge sufficient to form a belief as to the truth of the allegations concerning numerical sales of Apligraf in May and April 2001, and on this basis denies them.  No response is required to the allegations

that purport to quote from an analyst report issued by non-party Needham & Co. on June 6,

2001, which speaks for itself.  Mr. Erani otherwise denies each and every allegation in

Paragraph 126.

127.    With respect to Paragraph 127, Mr. Erani admits that on May 7, 2001,

Organogenesis entered into an underwriting agreement with UBS Warburg LLC.  Pursuant to

this agreement, between May 21, 2001 and June 18, 2001, Organogenesis filed fifteen prospectus

supplements with the SEC pursuant to Forms 424B2, disclosing the sale of 186,200 common

shares.  Mr. Erani further admits that the total from those proceeds exceeded $1.44 million.  To

the extent not specifically admitted herein, Mr. Erani denies each and every allegation in

Paragraph 127.

128.    With respect to Paragraph 128, Mr. Erani admits that on August 2, 2001,

Organogenesis issued a release announcing its monthly sales in July 2001, in which Dr.

Sabolinski is quoted.  Mr. Erani denies making any of the statements in the release.  No further

response is required to the extent the allegations of Paragraph 128 purport to construe and

excerpt the release, which speaks for itself.  Mr. Erani denies that Paragraph 128 completely and

accurately construes and excerpts the release.  Mr. Erani otherwise denies each and every

allegation in Paragraph 128.

129.    With respect to Paragraph 129, Mr. Erani admits that on August 7, 2001

Organogenesis issued a release announcing it had elected to sell $10 million in equity to

Novartis.  Mr. Erani denies that Paragraph 129 accurately and completely construes and

paraphrases the release.  Mr. Erani otherwise denies each and every allegation in Paragraph 129.

130.    With respect to Paragraph 130, Mr. Erani admits that on August 13, 2001,

Organogenesis issued a release announcing financial results for the second quarter 2001, the

period ended June 30, 2001, in which Mr. Arcari is quoted. Mr. Erani denies making any of the statements in the release. No further response is required to the extent the allegations of Paragraph 130 purport to construe and excerpt the release, which speaks for itself. Mr. Erani denies that Paragraph 130 completely and accurately construes and excerpts the release. Mr. Erani otherwise denies each and every allegation in Paragraph 130.

131.    With respect to Paragraph 131, Mr. Erani admits that on August 14, 2001, Organogenesis filed with the SEC the Company's financial results for the second quarter 2001, the period ended June 30, 2001, pursuant to a Form 10-Q. Mr. Erani further admits that the electronic signatures of Dr. Sabolinski and Mr. Arcari appear on that Form 10-Q. Mr. Erani denies making any of the statements in the Form 10-Q. No further response is required to the extent the allegations of Paragraph 131 purport to construe and excerpt the Form 10-Q, which speaks for itself. Mr. Erani denies that Paragraph 131 completely and accurately construes and excerpts the Form 10-Q. Mr. Erani otherwise denies each and every allegation in Paragraph 131.

132.    With respect to Paragraph 132, Mr. Erani admits that Organogenesis filed with the SEC the Company's financial results for the second quarter 2001 pursuant to a Form 10-Q. Mr. Erani denies making any of the statements in the Form 10-Q. No further response is required to the extent the allegations of Paragraph 132 purport to construe and paraphrase the Form 10-Q, which speaks for itself. Mr. Erani denies that Paragraph 132 completely and accurately construes and excerpts the Form 10-Q. Mr. Erani otherwise denies each and every allegation in Paragraph 132.

133.    With respect to Paragraph 133, Mr. Erani admits that the Company issued press releases on August 2, 2001 and August 13, 2001 and filed a Form 10-Q for the second quarter of 2001. Mr. Erani denies making any of the statements in those documents. Mr. Erani further

denies that Paragraph 133 accurately and completely characterizes and construes such documents, and otherwise denies each and every allegation in Paragraph 133.

With respect to Paragraph 133(a), Mr. Erani incorporates by reference his responses to Paragraphs 59-67, and denies each and every allegation in Paragraph 133(a).

With respect to Paragraph 133(b), Mr. Erani denies each and every allegation in Paragraph 133(b).

With respect to Paragraph 133(c), no response is required to the allegations of Paragraph 133(c) that purport to excerpt and construe unidentified statements or documents, which speak for themselves. To the extent a response is required, Mr. Erani lacks personal knowledge sufficient to form a belief as to the truth of the allegations concerning the knowledge of or unidentified "representation[s]" made by unidentified "defendants," and on that basis denies them. Mr. Erani otherwise denies each and every allegation in Paragraph 133(c).

With respect to Paragraph 133(d), Mr. Erani lacks personal knowledge sufficient to form a belief as to the truth of the allegations concerning any investigation by plaintiffs' counsel or their representatives, and on that basis denies them. No response is required to the allegations of Paragraph 133(d) that excerpt to describe and construe unidentified statements or documents, which speak for themselves. To the extent a response is required. Mr. Erani denies those allegations. Mr. Erani otherwise denies each and every allegation in Paragraph 133(d).

With respect to Paragraph 133(e), Mr. Erani lacks personal knowledge sufficient to form a belief as to the truth of the allegations concerning any investigation by plaintiffs' counsel or their representatives, and on that basis denies them. No response is required to the allegations of Paragraph 133(e) that purport to excerpt and construe unidentified statements or documents, which speak for themselves. To the extent a response is required. Mr. Erani lacks personal

knowledge sufficient to form a belief as to the truth of the allegations concerning the knowledge

of or unidentified "representation[s]" made by unidentified "defendants," and on that basis

denies them. Mr. Erani otherwise denies each and every allegation in Paragraph 133(e).

With respect to Paragraph 133(f), Mr. Erani incorporates by reference his responses to

Paragraphs 59-67, and denies each and every allegation in Paragraph 133(f).

134.    With respect to Paragraph 134, no response is required to the allegations that

purport to quote from an analyst report purportedly issued by non-party Needham & Co. on

August 14, 2001, which speaks for itself. Mr. Erani otherwise denies each and every allegation

in Paragraph 134.

135.    With respect to Paragraph 135, Mr. Erani admits that on September 6, 2001,

Organogenesis issued a press release announcing its monthly sales in August 2001, in which Dr.

Sabolinski is quoted. Mr. Erani denies making any of the statements in the press release. No

further response is required to the extent the allegations of Paragraph 135 purport to construe and

excerpt the release, which speaks for itself. Mr. Erani denies that Paragraph 135 completely and

accurately construes and excerpts the release. Mr. Erani otherwise denies each and every

allegation in Paragraph 135.

136.    With respect to Paragraph 136, Mr. Erani admits that on September 7, 2001,

Organogenesis issued a press release in which Dr. Sabolinski is quoted, and that the press release

announced that Organogenesis had increased its capacity to manufacture Apligraf. Mr. Erani

denies making any of the statements in the press release. No further response is required to the

extent the allegations of Paragraph 136 purport to construe and excerpt the release, which speaks

for itself. Mr. Erani denies that Paragraph 136 completely and accurately construes and excerpts

the release. Mr. Erani otherwise denies each and every allegation in Paragraph 136.

137.    With respect to Paragraph 137, Mr. Erani admits the allegations in Paragraph 137.

138.    With respect to Paragraph 138, Mr. Erani admits that on September 24, 2001, Organogenesis issued a press release announcing that the Company would begin commercializing three additional products during the fourth quarter of 2001, and that Dr. Sabolinski is quoted in this release. Mr. Erani denies making any of the statements in the release. No further response is required to the extent the allegations of Paragraph 138 purport to construe and excerpt the release, which speaks for itself. Mr. Erani denies that Paragraph 138 completely and accurately construes and excerpts the release. Mr. Erani otherwise denies each and every allegation in Paragraph 138.

139.    With respect to Paragraph 139, Mr. Erani admits that on October 4, 2001, Organogenesis issued a press release announcing Apligraf sales for the third quarter of 2001, in which Dr. Sabolinski is quoted. Mr. Erani denies making any of the statements in the release. No further response is required to the extent the allegations of Paragraph 139 purport to construe and excerpt the release, which speaks for itself. Mr. Erani denies that Paragraph 139 completely and accurately construes and excerpts the release. Mr. Erani otherwise denies each and every allegation in Paragraph 139.

140.    With respect to Paragraph 140, Mr. Erani admits the allegations in Paragraph 140.

141.    With respect to Paragraph 141, Mr. Erani admits that on October 16, 2001, Organogenesis issued a press release announcing that Organogenesis raised $20.25 million from various financing activities, and that Dr. Sabolinski is quoted in this release. Mr. Erani denies making any of the statements in the release. No further response is required to the extent that the allegations of Paragraph 141 purport to construe, paraphrase and excerpt the release, which speaks for itself. Mr. Erani denies that Paragraph 141 completely and accurately construes,

paraphrases and excerpts the release.  Mr. Erani otherwise denies each and every allegation in Paragraph 141.

142.    With respect to Paragraph 142, Mr. Erani admits that on November 1, 2001, the *Dow Jones* news service reported that Organogenesis had registered 2.7 million shares of common stock on behalf of certain shareholders.  No further response is required to the extent the allegations of Paragraph 142 purport to construe and paraphrase the release, which speaks for itself.  Mr. Erani denies that Paragraph 142 completely and accurately construes and paraphrases the release.  Mr. Erani otherwise denies each and every allegation in Paragraph 142.

143.    With respect to Paragraph 143, Mr. Erani admits that on November 13, 2001, Organogenesis issued a press release on *Business Wire*, announcing its financial results for the third quarter of 2001, the period ended September 30, 2001, and that Dr. Sabolinski is quoted in this release.  Mr. Erani denies making any of the statements in the release.  No further response is required to the extent the allegations of Paragraph 143 purport to construe and excerpt the release, which speaks for itself.  Mr. Erani denies that Paragraph 143 completely and accurately construes and excerpts the release.  Mr. Erani otherwise denies each and every allegation in Paragraph 143.

144.    With respect to Paragraph 144, Mr. Erani admits that on November 14, 2001, Organogenesis filed with the SEC the Company's financial results for the third quarter 2001, the period ended September 30, 2001, pursuant to a Form 10-Q.  Mr. Erani further admits that the electronic signatures of Dr. Sabolinski and Mr. Arcari appear on that Form 10-Q.  Mr. Erani denies making any of the statements in the Form 10-Q.  No further response is required to the extent the allegations of Paragraph 144 purport to construe and excerpt the Form 10-Q, which

speaks for itself.  Mr. Erani denies that Paragraph 144 completely and accurately construes and

excerpts the Form 10-Q.  Mr. Erani otherwise denies each and every allegation in Paragraph 144.

145.     With respect to Paragraph 145, Mr. Erani admits that the Company issued press

releases on the dates set forth in the first sentence of the paragraph, and that the Company filed a

Form 10-Q for the third quarter of 2001 with the SEC.  Mr. Erani denies making any of the

statements in those documents.  No further response is required to the allegations of

Paragraph 145 that purport to construe and excerpt those releases and Form 10-Q, which speak

for themselves. Mr. Erani denies that Paragraph 145 accurately construes and characterizes those

documents, and otherwise denies each and every allegation in Paragraph 145.

With respect to Paragraph 145(a), Mr. Erani incorporates by reference his responses to

Paragraphs 59-67, and denies each and every allegation in Paragraph 145(a).

With respect to Paragraph 145(b), no response is required to the allegations of

Paragraph 145(b) that purport to excerpt and construe unidentified statements or documents,

which speak for themselves.  Mr. Erani admits that the Company issued a press release on

October 16, 2001, which speaks for itself.  Mr. Erani denies that Paragraph 145(b) completely

and accurately construes and excerpts the release.  Mr. Erani otherwise denies each and every

allegation in Paragraph 145(b).

With respect to Paragraph 145(c), Mr. Erani lacks personal knowledge sufficient to form

a belief as to the truth of the allegations concerning any investigation by plaintiffs' counsel or

their representatives, and on that basis denies them.  No response is required to the allegations of

Paragraph 145(c) that purport to excerpt and construe unidentified statements or documents,

which speak for themselves.  To the extent a response is required, Mr. Erani lacks personal

knowledge sufficient to form a belief as to the truth of the allegations concerning unidentified

"representation[s]" made by unidentified "defendants," and on that basis denies them. Mr. Erani incorporates by reference his responses to paragraphs 59-67, and otherwise denies each and every allegation in Paragraph 145(c).

With respect to Paragraph 145(d), Mr. Erani lacks personal knowledge sufficient to form a belief as to the truth of the allegations concerning any investigation by plaintiffs' counsel or their representatives, and on that basis denies them. No response is required to the allegations of Paragraph 145(d) that purport to excerpt and construe unidentified statements or documents, which speak for themselves. To the extent a response is required, Mr. Erani lacks personal knowledge sufficient to form a belief as to the truth of the allegations concerning the knowledge of or unidentified "representation[s]" made by unidentified "defendants," and on that basis denies them. Mr. Erani otherwise denies each and every allegation in Paragraph 145(d).

With respect to Paragraph 145(e), Mr. Erani lacks personal knowledge sufficient to form a belief as to the truth of the allegations concerning any investigation by plaintiffs' counsel or their representatives, and on that basis denies them. No response is required to the allegations of Paragraph 145(e) that purport to excerpt and construe unidentified statements or documents, which speak for themselves. To the extent a response is required, Mr. Erani lacks personal knowledge sufficient to form a belief as to the truth of the allegations concerning the knowledge of unidentified "defendants," and on that basis denies them. Mr. Erani denies Paragraph 145(e) completely and accurately construes and excerpts any statement made by Dr. Sabolinski, and otherwise denies each and every allegation in Paragraph 145(e).

With respect to Paragraph 145(f), Mr. Erani lacks personal knowledge sufficient to form a belief as to the truth of the allegations concerning any investigation by plaintiffs' counsel or their representatives, and on that basis denies them. No response is required to the allegations of

Paragraph 145(f) that purport to excerpt and construe unidentified statements or documents, which speak for themselves. To the extent a response is required, Mr. Erani lacks personal knowledge sufficient to form a belief as to the truth of the allegations concerning the knowledge of unidentified "defendants," and on that basis denies them. Mr. Erani otherwise denies each and every allegation in Paragraph 145(f).

With respect to Paragraph 145(g), Mr. Erani lacks personal knowledge sufficient to form a belief as to the truth of the allegations concerning the knowledge of unidentified "defendants," and on that basis denies them. Mr. Erani incorporates by reference his responses to Paragraphs 59-67, and otherwise denies each and every allegation in Paragraph 145(g).

146.    With respect to Paragraph 146, no response is required to the allegations that purport to quote from an analyst report purportedly issued by non-party Needham & Co. on November 16, 2001, which speaks for itself. Mr. Erani otherwise denies each and every allegation in Paragraph 146.

147.    With respect to Paragraph 147, Mr. Erani admits that the Company issued a press release on January 4, 2002. Mr. Erani further admits that he resigned his position as Chairman of the Board of Directors effective January 1, 2002, but denies that the release characterized his resignation as "sudden and unexpected." Mr. Erani further denies that he "depart[ed]" Organogenesis at this time, and states that he remained on the Company's Board as a director. Mr. Erani further denies that January 4, 2002 is "days before the end of the [purported] Class Period," and states that January 4, 2002 is over one month before the end of the purported Class Period, which according to plaintiffs, ends on February 7, 2002. No further response is required to the extent that the allegations of Paragraph 147 purport to construe and excerpt the release, which speaks for itself. Mr. Erani otherwise denies each and every allegation in Paragraph 147.

148.    With respect to Paragraph 148, Mr. Erani admits that on January 30, 2002, Organogenesis filed with the SEC a Form 8-K pursuant to Section 13 or 15(d) of Securities and Exchange Act of 1934.  Mr. Erani further admits that the electronic signature of Mr. Arcari appears on that Form 8-K.  Mr. Erani denies making any of the statements in the Form 8-K.  No further response is required to the extent the allegations of Paragraph 148 purport to construe, excerpt and paraphrase the Form 8-K, which speaks for itself.  Mr. Erani denies that Paragraph 148 completely and accurately construes, excerpts and paraphrases the Form 8-K.  Mr. Erani otherwise denies each and every allegation in Paragraph 148.

149.    With respect to Paragraph 149, Mr. Erani admits that Organogenesis filed with the SEC a Form 8-K pursuant to Section 13 or 15(d) of Securities and Exchange Act of 1934.  Mr. Erani denies making any of the statements in the Form 8-K.  No further response is required to the extent the allegations of Paragraph 149 purport to construe, excerpt and paraphrase the Form 8-K, which speaks for itself.  Mr. Erani denies that Paragraph 149 completely and accurately construes, excerpts and paraphrases the Form 8-K.  Mr. Erani otherwise denies each and every allegation in Paragraph 149.

150.    With respect to Paragraph 150, Mr. Erani admits that Organogenesis filed with the SEC a Form 8-K pursuant to Section 13 or 15(d) of Securities and Exchange Act of 1934.  Mr. Erani denies making any of the statements in the Form 8-K.  No further response is required to the extent the allegations of Paragraph 150 purport to construe, excerpt and paraphrase the Form 8-K, which speaks for itself.  Mr. Erani denies that Paragraph 150 completely and accurately construes, excerpts and paraphrases the Form 8-K.  Mr. Erani further lacks personal knowledge sufficient to form a belief as to the truth of the allegations concerning the unidentified

"previous report[s]" of unidentified "defendants," and on that basis denies them. Mr. Erani otherwise denies each and every allegation in Paragraph 150.

151.    With respect to Paragraph 151, Mr. Erani admits that Organogenesis' stock was traded on the open market in January and February of 2002. Mr. Erani further admits that on January 28, 2002, Organogenesis' stock reached an intra-day price as high as $3.70 per share, but denies that Organogenesis' stock closed at that price. Mr. Erani further admits that on January 30, 2002, Organogenesis' stock reached an intra-day price as low as $2.44 per share, but denies that the stock closed at that price. Mr. Erani further admits that on February 7, 2002 Organogensis' stock reached an intra-day price as low as $1.32 per share, but denies that Organogenesis' stock closed at that price. Mr. Erani further admits that on March 7, 2000, Organogenesis' stock reached an intra-day price as high as $22.00 per share, but denies that it closed "over $22.00" on that date. Mr. Erani lacks personal knowledge sufficient to form a belief as to the allegations regarding the volume, expectancy, and other statistics related to the Company's stock price. Mr. Erani otherwise denies each and every allegation in Paragraph 151.

152.    With respect to Paragraph 152 and footnote 5, Mr. Erani admits that on February 25, 2002 (after the putative Class Period), the *Dow Jones* news service reported that Organogenesis had announced a restructuring, and that on March 21, 2002 (after the putative Class Period) the *Dow Jones* news service reported that Organogenesis had raised about $16 million from a private placement of preferred and common stock. Mr. Erani further admits that the Company issued a press release on March 21, 2002 (after the putative Class Period). No further response is required to the extent the allegations of Paragraph 152 purport to construe, paraphrase and excerpt the *Dow Jones* reports and the Company's March 21, 2002 release, which speak for themselves. Mr. Erani denies that Paragraph 152 completely and accurately construes,

paraphrases and excerpts the *Dow Jones* reports and the Company's March 21, 2002 release.

Mr. Erani lacks personal knowledge sufficient to form a belief as to the truth of allegations

related to unidentified "vulture capitalists" or "institutional shareholders."[5]  Mr. Erani otherwise

denies each and every allegation in Paragraph 152.

153.    With respect to Paragraph 153, Mr. Erani admits that on April 3, 2002 (after the

putative Class Period) the Company issued a press release announcing sales of Apligraf for the

first quarter 2002.  No further response is required to the extent the allegations of Paragraph 153

purport to construe and paraphrase the release, which speaks for itself.  Mr. Erani denies that

Paragraph 153 completely and accurately construes and paraphrases the release.  Mr. Erani

further admits that on April 11, 2002 (after the putative Class Period) the Company hosted a

conference call, the transcript of which was subsequently published.  No further response is

required to the extent the allegations of Paragraph 153 purport to construe, paraphrase and

excerpt the call, the transcript of which speaks for itself.  Mr. Erani denies that Paragraph 153

completely and accurately construes, paraphrases and excerpts the call.  Mr. Erani otherwise

denies each and every allegation in Paragraph 153.

154.    With respect to Paragraph 154, Mr. Erani admits that on April 11, 2002 (after the

putative Class Period) the Company hosted a conference call, the transcript of which was

subsequently published.  No further response is required to the extent the allegations of

Paragraph 154 purport to construe, paraphrase and excerpt the call, the transcript of which speaks

for itself.  Mr. Erani denies that Paragraph 154 completely and accurately construes, paraphrases

and excerpts the call.  Mr. Erani lacks personal knowledge sufficient to form a belief as to the

---

[5]    With respect to footnote 5, no response is required to the allegations in footnote 5, which consist of plaintiffs'
characterizations of convertible shares.

truth of allegations related to unidentified "state[ments]" by unidentified "defendants" and on

that basis denies them.  Mr. Erani otherwise denies each and every allegation in Paragraph 154.

155.    With respect to Paragraph 155, Mr. Erani admits that Organogenesis filed a year-

end financial statement with the SEC pursuant to Form 10-K on April 16, 2002 (after the close of

the putative Class Period).  Mr. Erani further admits that Organogenesis' independent auditor

PricewaterhouseCoopers LLP, in its Report of Independent Accountants dated April 4, 2002

(after the putative Class Period), stated that it had doubt about Organogenesis' ability to continue

as a going concern. No further response is required to the extent the allegations of Paragraph 155

purport to construe, paraphrase and excerpt the Report, which speaks for itself.  Mr. Erani denies

that Paragraph 155 completely and accurately construes and excerpts the Report.  Mr. Erani

otherwise denies each and every allegation in Paragraph 155.

156.    With respect to Paragraph 156, Mr. Erani admits that on April 17, 2002 (after the

putative Class Period), Organogenesis stock reached an intra-day price as low as $0.60, but

denies that the stock closed at that price.  Mr. Erani further admits that at one point on May 1,

2002 (after the putative Class Period), Organogenesis stock reached an intra-day price as low as

$0.41, but denies that the stock closed at that price.  Mr. Erani otherwise denies each and every

allegation in Paragraph 156.

157.    With respect to Paragraph 157, Mr. Erani admits that on April 16, 2002 (after the

putative Class Period), Organogenesis issued a release on *Business Wire*.  No further response is

required to the extent the allegations of Paragraph 157 purport to construe, paraphrase and

excerpt the release, which speaks for itself.  Mr. Erani denies Paragraph 157 completely and

accurately construes, paraphrases and excerpts the release.  Mr. Erani lacks personal knowledge

or information sufficient to form a belief as to the truth of the allegations concerning statements

allegedly made after he resigned as a director of the Company on or around June 1, 2002, and on that basis denies them. Mr. Erani otherwise denies each and every allegation in Paragraph 157.

158.    With respect to Paragraph 158, Mr. Erani lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning Organogenesis' alleged stock prices after he resigned as a director of the Company on or around June 1, 2002, and on that basis denies them.  No response is required to the allegations that purport to quote from and characterize an analyst report purportedly issued by non-party Needham & Co. on July 12, 2002 (after the putative Class Period), which would speak for itself. Mr. Erani otherwise denies each and every allegation in Paragraph 158.

159.     With respect to Paragraph 159, Mr. Erani lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning Organogenesis' stock after he resigned as a director of the Company on or around June 1, 2002, and on that basis denies them.  Mr. Erani further lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning press releases allegedly published after he resigned as a director the Company on or around June 1, 2002, and on that basis denies them.  Mr. Erani otherwise denies each and every allegation in Paragraph 159.

160.    With respect to Paragraph 160, Mr. Erani lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning events allegedly occurring after he resigned as a director of the Company on or about June 1, 2002, and on that basis denies them.  Mr. Erani admits that recalls of Apligraf occurred after 1999, but otherwise denies each and every allegation in Paragraph 160.

161.    With respect to Paragraph 161, Mr. Erani admits that, on September 25, 2002 (after the putative Class Period), Organogenesis initiated a bankruptcy proceeding in the United

States Bankruptcy Court for the District of Massachusetts, Eastern Division.  No response is required to those allegations concerning the facts or proceedings of the bankruptcy, which are set forth in court papers filed and orders entered in that proceeding, which speak for themselves. Mr. Erani otherwise denies each and every allegation in Paragraph 161.

162.    With respect to Paragraph 162, Mr. Erani admits that, on September 25, 2002 (after the putative Class Period), Organogenesis initiated a bankruptcy proceeding in the United States Bankruptcy Court for the District of Massachusetts, Eastern Division.  No response is required to those allegations concerning the facts and proceedings of the bankruptcy, which are set forth in court papers filed and orders entered in that proceeding, which speak for themselves. Mr. Erani denies that November 20, 2002 may be characterized as a date "immediately after" the filing of the Company's bankruptcy on September 25, 2002.  Mr. Erani otherwise denies each and every allegation in Paragraph 162.

163.    With respect to Paragraph 163, Mr. Erani admits that on November 21, 2002 (after the putative Class Period), the *Boston Globe* published a report relating to Organogenesis. No further response is required to the extent the allegations of Paragraph 163 purport to construe, paraphrase and excerpt the *Globe's* report, which speaks for itself.  Mr. Erani denies that Paragraph 163 completely and accurately construes, paraphrases and excerpts the report. Mr. Erani further states that he presently lacks personal knowledge sufficient to form a belief as to the truth of the allegations relating to the purported sealing of terms by the Bankruptcy Court and the purported statements of Mr. Jeffrey L. Dow, and on that basis denies them.  Mr. Erani otherwise denies each and every allegation in Paragraph 163.

164.    With respect to Paragraph 164, Mr. Erani admits that, on September 25, 2002 (after the putative Class Period), Organogenesis initiated a bankruptcy proceeding in the United

States Bankruptcy Court for the District of Massachusetts, Eastern Division.  No response is required to those allegations concerning the facts and proceedings of the bankruptcy, which are set forth in court papers filed and orders entered in that proceeding, which speak for themselves. Mr. Erani otherwise denies each and every allegation in Paragraph 164.

165.    With respect to Paragraph 165, Mr. Erani admits that on June 26, 2003 (after the putative Class Period), the *Boston Globe* published a report relating to Organogenesis' bankruptcy proceedings.  No further response is required to the extent the allegations of Paragraph 165 purport to construe, paraphrase and excerpt the *Globe's* report, which speaks for itself.  Mr. Erani denies that Paragraph 165 completely and accurately construes, paraphrases and excerpts the report.  No response is required to those allegations concerning the facts and proceedings of the bankruptcy, which are set forth in court papers filed and orders entered in that proceeding, which speak for themselves.  Mr. Erani otherwise denies each and every allegation in Paragraph 165.

166.    With respect to Paragraph 166, Mr. Erani admits that on August 13, 2003 (after the putative Class Period), Judge William Hillman in the U.S. Bankruptcy Court for the District of Massachusetts, Eastern Division, issued an Order Confirming Third Amended Plan of Reorganization of Organogenesis, Inc. Under Chapter 11 of the Bankruptcy Code, which speaks for itself.  Mr. Erani admits that non-party Alan Ades is his cousin, and that they work together at A&E Stores.  Mr. Erani further admits that Mr. Ades acted as interim CEO of Organogenesis for a period of time during and immediately following the bankruptcy proceedings.  No response is required to those allegations concerning the facts or proceedings of the bankruptcy, which are set forth in court papers filed and orders entered in that proceeding, which speak for themselves. Mr. Erani otherwise denies each and every allegation in Paragraph 166.

167.    With respect to Paragraph 167, Mr. Erani admits that, on September 25, 2002 (after the putative Class Period), Organogenesis initiated a bankruptcy proceeding in the United States Bankruptcy Court for the District of Massachusetts, Eastern Division.  No response is required to those allegations concerning the facts or proceedings of the bankruptcy, which are set forth in court papers filed and orders entered in that proceeding, which speak for themselves. Mr. Erani otherwise denies each and every allegation in Paragraph 167.

168.    With respect to Paragraph 168, no response is required to the allegations of Paragraph 168 relating to the openness, efficiency and development of the market for Organogenesis stock, which consist of legal conclusions.  Mr. Erani denies that the Organogenesis common stock traded at artificially inflated prices during the putative Class Period.  Mr. Erani lacks personal knowledge sufficient to form a belief as to the truth of the allegations relating to whether plaintiffs and other members of the purported class purchased or otherwise acquired Organogenesis securities in reliance on the integrity of the market price of Organogenesis securities and market information relating to Organogenesis, and on that basis denies them.  Mr. Erani denies that this action may be properly maintained as a class action, and otherwise denies each and every allegation in Paragraph 168.

169.    With respect to Paragraph 169, no response is required to the allegations that consist merely of conclusions of law.  Mr. Erani otherwise denies each and every allegation in Paragraph 169.

170.    With respect to Paragraph 170, no response is required to the allegations that consist merely of conclusions of law.  Mr. Erani otherwise denies each and every allegation in Paragraph 170.

171.    With respect to Paragraph 171, Mr. Erani states that these allegations concern and are directed to non-party PricewaterhouseCoopers, are not directed against any of the defendants in this action, and that no response is therefore required, and on that basis denies each and every allegation in Paragraph 171.  To the extent a response is required, Mr. Erani admits that PricewaterhouseCoopers served as the Company's independent auditor during the putative Class Period, but otherwise lacks personal knowledge sufficient to form a belief as to the truth of each and every allegation in Paragraph 171, and on that basis denies them.

172.    With respect to Paragraph 172, Mr. Erani states that these allegations are directed to non-party PricewaterhouseCoopers, are not directed against any of the defendants in this action, and that no response is therefore required, and on that basis denies each and every allegation in Paragraph 172.  To the extent a response is required, Mr. Erani admits that PricewaterhouseCoopers served as Organogenesis' auditor and principal accounting firm prior to and during the putative Class Period, and that PricewaterhouseCoopers had knowledge of Organogenesis' financial reporting practices.  Mr. Erani otherwise lacks personal knowledge sufficient to form a belief as to the truth of each and every allegation in Paragraph 172, and on that basis denies them.

173.    With respect to Paragraph 173, Mr. Erani states that these allegations are directed to non-party PricewaterhouseCoopers, are not directed against any of the defendants in this action, and that no response is therefore required, and on that basis denies each and every allegation in Paragraph 173.  To the extent a response is required, Mr. Erani admits that PricewaterhouseCoopers served as the Company's independent auditor during the putative Class

Period, but otherwise lacks personal knowledge sufficient to form a belief as to the truth of each and every allegation in Paragraph 173, and on that basis denies them.[6]

174.     With respect to Paragraph 174, Mr. Erani states that these allegations are directed to non-party PricewaterhouseCoopers, are not directed against any of the defendants in this action, and that no response is therefore required, and on that basis denies each and every allegation in Paragraph 174.  To the extent a response is required, Mr. Erani admits that PricewaterhouseCoopers served as the Company's independent auditor during the putative Class Period, but otherwise lacks personal knowledge sufficient to form a belief as to the truth of each and every allegation in Paragraph 174, and on that basis denies them.

With respect to Paragraph 174(a), Mr. Erani states that these allegations are directed to non-party PricewaterhouseCoopers, are not directed against any of the defendants in this action, and that no response is therefore required, and on that basis denies each and every allegation in Paragraph 174(a).  To the extent a response is required, Mr. Erani lacks personal knowledge sufficient to form a belief as to the allegations concerning the purported conduct or beliefs of PricewaterhouseCoopers, and on that basis denies them.  Mr. Erani further lacks personal knowledge sufficient to form a belief as to the truth of the allegations concerning the existence or content of the alleged "Confidential Arcari Document," and on that basis denies them.  Mr. Erani further states that, in any event, no response is required to those allegations purporting to construe and excerpt any such document, which would speak for itself.  Mr. Erani further lacks personal knowledge sufficient to form a belief as to the truth of each and every allegation other in Paragraph 174(a), and on that basis denies them.

---

[6]     With respect to footnote 6, no response is required to the allegations in footnote 6, which consist of plaintiffs' characterizations of Generally Accepted Auditing Standards.

With respect to Paragraph 174(b), Mr. Erani lacks personal knowledge sufficient to form a belief as to the truth of the allegations concerning the existence or content of the alleged "Confidential Arcari Document," and on that basis denies them. Mr. Erani further states that, in any event, no response is required to those allegations purporting to construe and excerpt any such document, which would speak for itself. Mr. Erani otherwise denies each and every allegation in Paragraph 174(b).

With respect to Paragraph 174(c), Mr. Erani lacks personal knowledge sufficient to form a belief as to the truth of the allegations concerning the existence or content of the alleged "Confidential Arcari Document," and on that basis denies them. Mr. Erani further states that, in any event, no response is required to those allegations purporting to construe and excerpt any such document, which would speak for itself. Mr. Erani otherwise denies each and every allegation in Paragraph 174(c).

With respect to Paragraph 174(d), Mr. Erani states that these allegations are directed to non-party PricewaterhouseCoopers, are not directed against any of the defendants in this action, and that no response is therefore required, and on that basis denies each and every allegation in Paragraph 174(d). To the extent a response is required, Mr. Erani lacks personal knowledge sufficient to form a belief as to the truth of each and every allegation in Paragraph 174(d), and on that basis denies them.

175.    With respect to Paragraph 175, Mr. Erani states that these allegations are directed to non-party PricewaterhouseCoopers, are not directed against any of the defendants in this action, and that no response is therefore required, and on that basis denies each and every allegation in Paragraph 175. To the extent a response is required, Mr. Erani admits that PricewaterhouseCoopers served as the Company's independent auditor during the putative Class

Period, but lacks personal knowledge sufficient to form a belief as to the truth of each and every

other allegation in Paragraph 175, and on that basis denies them.

176.    With respect to Paragraph 176, Mr. Erani states that these allegations are directed

to non-party PricewaterhouseCoopers, are not directed against any of the defendants in this

action, and that no response is therefore required, and on that basis denies each and every

allegation in Paragraph 176.  To the extent a response is required, Mr. Erani admits that

PricewaterhouseCoopers served as the Company's independent auditor during the putative Class

Period, but lacks personal knowledge sufficient to form a belief as to the truth of each and every

other allegation Paragraph 176, and on that basis denies them.

177.    With respect to Paragraph 177, Mr. Erani states that these allegations are directed

to non-party PricewaterhouseCoopers, are not directed against any of the defendants in this

action, and that no response is therefore required, and on that basis denies each and every

allegation in Paragraph 177.  To the extent a response is required, Mr. Erani admits that

PricewaterhouseCoopers served as the Company's independent auditor during the putative Class

Period, but lacks personal knowledge sufficient to form a belief as to the truth of each and every

other allegation in Paragraph 177 and on that basis denies them.

178.    With respect to Paragraph 178, Mr. Erani states that these allegations are directed

to non-party PricewaterhouseCoopers, are not directed against any of the defendants in this

action, and that no response is therefore required, and on that basis denies each and every

allegation in Paragraph 178.  To the extent a response is required, Mr. Erani admits that

PricewaterhouseCoopers served as the Company's independent auditor during the putative Class

Period, but lacks personal knowledge sufficient to form a belief as to the truth of each and every

other allegation in Paragraph 178, and on that basis denies them.

179.    With respect to Paragraph 179, Mr. Erani states that these allegations are directed to non-party PricewaterhouseCoopers, are not directed against any of the defendants in this action, and that no response is therefore required, and on that basis denies each and every allegation in Paragraph 179.  To the extent a response is required, Mr. Erani admits that PricewaterhouseCoopers served as the Company's independent auditor during the putative Class Period, but lacks personal knowledge sufficient to form a belief as to the truth of each and every other allegation in Paragraph 179, and on that basis denies them.

180.    With respect to Paragraph 180, Mr. Erani states that these allegations are directed to non-party PricewaterhouseCoopers, are not directed against any of the defendants in this action, and that no response is therefore required, and on that basis denies each and every allegation in Paragraph 180.  To the extent a response is required, Mr. Erani admits that PricewaterhouseCoopers served as the Company's independent auditor during the putative Class Period, but lacks personal knowledge sufficient to form a belief as to the truth of each and every other allegation in Paragraph 180, and on that basis denies them.

181.    With respect to Paragraph 181, Mr. Erani states that these allegations are directed to non-party PricewaterhouseCoopers, are not directed against any of the defendants in this action, and that no response is therefore required, and on that basis denies each and every allegation in Paragraph 181.  To the extent a response is required, Mr. Erani admits that PricewaterhouseCoopers served as the Company's independent auditor during the putative Class Period, but lacks personal knowledge sufficient to form a belief as to the truth of each and every other allegation in Paragraph 181, and on that basis denies them.

182.    With respect to Paragraph 182, Mr. Erani states that these allegations are directed to non-party PricewaterhouseCoopers, are not directed against any of the defendants in this

action, and that no response is therefore required, and on that basis denies each and every allegation in Paragraph 182. To the extent a response is required, Mr. Erani admits that PricewaterhouseCoopers served as the Company's independent auditor during the putative Class Period, but lacks personal knowledge sufficient to form a belief as to the truth of each and every other allegation in Paragraph 182, and on that basis denies them.

183.    With respect to Paragraph 183, Mr. Erani states that these allegations are directed to non-party PricewaterhouseCoopers, are not directed against any of the defendants in this action, and that no response is therefore required, and on that basis denies each and every allegation in Paragraph 183. To the extent a response is required, Mr. Erani admits that PricewaterhouseCoopers served as the Company's independent auditor during the putative Class Period, but lacks personal knowledge sufficient to form a belief as to the truth of each and every other allegation in Paragraph 183, and on that basis denies them.

184.    With respect to Paragraph 184, Mr. Erani states that these allegations are directed to non-party PricewaterhouseCoopers, are not directed against any of the defendants in this action, and that no response is therefore required, and on that basis denies each and every allegation in Paragraph 184. To the extent a response is required, Mr. Erani admits that PricewaterhouseCoopers served as the Company's independent auditor during the putative Class Period, but lacks personal knowledge sufficient to form a belief as to the truth of each and every other allegation in Paragraph 184, and on that basis denies them.

185.    With respect to Paragraph 185, Mr. Erani states that these allegations are directed to non-party PricewaterhouseCoopers, are not directed against any of the defendants in this action, and that no response is therefore required, and on that basis denies each and every allegation in Paragraph 185. To the extent a response is required, Mr. Erani admits that

PricewaterhouseCoopers served as the Company's independent auditor during the putative Class Period, but lacks personal knowledge sufficient to form a belief as to the truth of each and every other allegation in Paragraph 185, and on that basis denies them.

186.    With respect to Paragraph 186, Mr. Erani states that these allegations are directed to non-party PricewaterhouseCoopers, are not directed against any of the defendants in this action, and that no response is therefore required, and on that basis denies each and every allegation in Paragraph 186.  To the extent a response is required, Mr. Erani admits that PricewaterhouseCoopers served as the Company's independent auditor during the putative Class Period, but lacks personal knowledge sufficient to form a belief as to the truth of each and every other allegation in Paragraph 186, and on that basis denies them.

187.    With respect to Paragraph 187, no response is required to the allegations that consist merely of conclusions of law.  To the extent the allegations of Paragraph 187 contain allegations of fact, Mr. Erani denies each and every allegation in Paragraph 187.

188.    With respect to Paragraph 188, Mr. Erani admits that, during the putative Class Period, Organogenesis raised capital through private equity offerings and public stock offerings and that the identified individuals registered to sell and/or sold stock during the putative Class Period.  Mr. Erani states that he did not sell a single share of Organogenesis stock during the putative Class Period.  Mr. Erani otherwise denies each and every allegation in Paragraph 188.

189.    With respect to Paragraph 189, Mr. Erani admits that, during the putative Class Period, Organogenesis raised capital through private equity offerings and public stock offerings.  Mr. Erani further states that, in March 2000, Organogenesis used $6.2 million from the proceeds of private placements and/or offerings to redeem the Company's outstanding Series C

convertible preferred stock.  Mr. Erani otherwise denies each and every allegation in Paragraph 189.

190.    With respect to Paragraph 190, Mr. Erani admits that during the putative Class Period Organogenesis was listed and traded on the American Stock Exchange, filed periodic reports with the SEC, was followed by securities analysts who disseminated reports and issued press releases to the public.  No response is required to those allegations of Paragraph 190 regarding the efficiency of the market for Organogenesis stock, which consist of legal conclusions.  Mr. Erani otherwise denies each and every allegation in Paragraph 190.

191.    With respect to Paragraph 191, no response is required to those allegations of Paragraph 191 regarding the rate at which market information was "digested," which consist of legal conclusions.  To the extent that a response to such allegations is required, Mr. Erani lacks personal knowledge sufficient to form a belief as to those allegations.  Mr. Erani denies that the price of Organogenesis stock was artificially inflated.  Mr. Erani otherwise denies each and every allegation in Paragraph 191.

192.    No response is required to the allegations of Paragraph 192, which consist merely of conclusions of law.  To the extent the allegations of Paragraph 192 contain allegations of fact, Mr. Erani denies each and every allegation in Paragraph 192.

193.    With respect to Paragraph 193, Mr. Erani repeats and incorporates by reference each of his prior responses to Paragraphs 1-192, as though set forth herein in their entirety.

194.    No response is required to the allegations contained in Paragraph 194, which consist merely of conclusions of law.  To the extent the allegations of Paragraph 194 contain allegations of fact, Mr. Erani denies each and every allegation in Paragraph 194.

195.     No response is required to the allegations contained in Paragraph 195, which consist merely of conclusions of law.  To the extent the allegations of Paragraph 195 contain allegations of fact, Mr. Erani denies each and every allegation in Paragraph 195.

196.     No response is required to the allegations contained in Paragraph 196, which consist merely of conclusions of law.  To the extent the allegations of Paragraph 196 contain allegations of fact, Mr. Erani denies each and every allegation in Paragraph 196.

197.     No response is required to the allegations contained in Paragraph 197, which consist merely of conclusions of law.  To the extent the allegations of Paragraph 197 contain allegations of fact, Mr. Erani denies each and every allegation in Paragraph 197.

198.     No response is required to the allegations contained in Paragraph 198, which consist merely of conclusions of law.  To the extent the allegations of Paragraph 198 contain allegations of fact, Mr. Erani denies each and every allegation in Paragraph 198.

199.     No response is required to the allegations contained in Paragraph 199, which consist merely of conclusions of law.  To the extent the allegations of Paragraph 199 contain allegations of fact, Mr. Erani denies each and every allegation in Paragraph 199.

200.     No response is required to the allegations contained in Paragraph 200, which consist merely of conclusions of law.  To the extent the allegations of Paragraph 200 contain allegations of fact, Mr. Erani denies each and every allegation in Paragraph 200.

201.     No response is required to the allegations contained in Paragraph 201, which consist merely of conclusions of law.  To the extent the allegations of Paragraph 201 contain allegations of fact, Mr. Erani denies each and every allegation in Paragraph 201.

202.    No response is required to the allegations contained in Paragraph 202, which consist merely of conclusions of law.  To the extent the allegations of Paragraph 202 contain allegations of fact, Mr. Erani denies each and every allegation in Paragraph 202.

203.    No response is required to the allegations contained in Paragraph 203, which consist merely of conclusions of law.  To the extent the allegations of Paragraph 203 contain allegations of fact, Mr. Erani denies each and every allegation in Paragraph 203.

204.    With respect to Paragraph 204, Mr. Erani repeats and incorporates by reference each of his prior responses to Paragraphs 1-204, as though set forth herein in their entirety.

205.    With respect to Paragraph 205, no response is required to the allegations contained in Paragraph 205 that consist merely of conclusions of law.  To the extent that Paragraph 205 contains allegations of fact, Mr. Erani admits that, during the putative Class Period, he served as a director of Organogenesis, but denies that he served as an officer of the Company.  Mr. Erani incorporates by reference his response to Paragraph 27.  Mr. Erani admits that at certain times, to the extent consistent with his role, upon request, he had access to certain internal corporate documents and other information provided to him in connection therewith. Mr. Erani presently is without personal knowledge sufficient to form a belief as to the specific materials he allegedly received and when.  Mr. Erani lacks personal knowledge sufficient to form a belief as to the truth of allegations concerning what documents any other unidentified "[i]ndividual [d]efendants" may have received and when they might have received them, and on that basis denies them.  Mr. Erani otherwise denies each and every allegation in Paragraph 205.

206.    With respect to Paragraph 206, no response is required to the allegations contained in Paragraph 206 that consist merely of conclusions of law.  To the extent that Paragraph 206 contains allegations of fact, Mr. Erani admits that he served as a director of

Organogenesis during the putative Class Period, but denies that he served as an officer of the Company.  Mr. Erani incorporates by reference his response to Paragraph 27.  Mr. Erani further admits that he performed all duties and responsibilities related to the position which he held.  Mr. Erani otherwise denies each and every allegation in Paragraph 206.

207.    No response is required to the allegations contained in Paragraph 207, which consist merely of conclusions of law.  To the extent the allegations of Paragraph 207 contain allegations of fact, Mr. Erani denies each and every allegation in Paragraph 207.

208.    No response is required to the allegations contained in Paragraph 208, which consist merely of conclusions of law.  To the extent the allegations of Paragraph 208 contain allegations of fact, Mr. Erani denies each and every allegation in Paragraph 208.

To the extent that any response is required to Plaintiffs' prayer for relief, Mr. Erani denies each and every allegation contained therein.

## SECOND DEFENSE

The Complaint and each purported cause of action alleged therein fails to state a claim upon which relief may be granted.

## THIRD DEFENSE

Plaintiffs have failed to plead fraud or its predicate acts with sufficient particularity.

## FOURTH DEFENSE

Plaintiffs' claims as to the Defendants are barred in whole or in part by the applicable statute of limitations.

## FIFTH DEFENSE

Plaintiffs lack standing to assert the claims in the Complaint.

## SIXTH DEFENSE

Plaintiffs' claims under Section 20(a) of the Exchange Act fail because defendants were not controlling persons, did not exercise actual control over others allegedly liable for a primary violation, in every respect acted in good faith, were not culpable participants in any misconduct, and did not directly or indirectly induce any acts allegedly constituting a primary violation of the Exchange Act or any rule or regulation promulgated thereunder.

## SEVENTH DEFENSE

Defendants did not act with <u>scienter</u> but instead exercised reasonable due diligence and acted in good faith and in conformity with all applicable standards and state and federal statutes, including but not limited to the Securities Exchange Act of 1934, as amended, the Private Securities Litigation Reform Act of 1995, and all applicable rules and regulations promulgated thereunder.

## EIGHTH DEFENSE

Plaintiffs are estopped from obtaining relief, or their claims are barred, by their own conduct or the disclosure of, or plaintiffs' assumption of, the risks of their investment.

## NINTH DEFENSE

Plaintiffs' claims are barred by the Private Securities Litigation Reform Act.

## TENTH DEFENSE

Plaintiffs' claims are barred because they failed to join indispensable parties.

## ELEVENTH DEFENSE

The business judgment rule protects defendants' alleged actions and, thus, bars recovery by plaintiffs and the purported class on their claims.

## TWELFTH DEFENSE

Plaintiffs' claims are barred in whole or in part because plaintiffs failed to make reasonable efforts to mitigate their injuries or damages.

## THIRTEENTH DEFENSE

Plaintiffs' claims are barred in whole or in part because any decline in the market price of the Organogenesis securities purchased by the plaintiffs were caused by factors other than defendants' alleged conduct.

## FOURTEENTH DEFENSE

Plaintiffs' claims are barred in whole or in part by In re: Organogenesis, Inc., No. 02-16944-WCH (Bankr. D. Mass. 2003).

## FIFTEENTH DEFENSE

Plaintiffs' claims are barred in whole or in part by the doctrines of waiver, estoppel, ratification and/or unclean hands.

Mr. Erani reserves the right to assert additional defenses as they become known through the course of discovery.

WHEREFORE, Mr. Erani respectfully requests that this Court dismiss the Complaint and plaintiffs' claims, enter judgment in favor of the defendants and against plaintiffs, award defendants the reasonable attorneys' fees, costs, and expenses they have incurred in the defense of this action, and grant defendants any additional relief that is fair and appropriate.

ALBERT ERANI

By his attorneys,

 /s/ Kimberly Friday
Jeffrey B. Rudman (BBO #433380)
Jonathan A. Shapiro (BBO #567838)
Kimberly Friday (BBO #660544)
Wilmer Cutler Pickering Hale and Dorr LLP
60 State Street, Boston, MA  02109
(617) 526-6000

October 20, 2005

CERTIFICATE OF SERVICE

I, Kimberly Friday, hereby certify that I caused a copy of the within document to be served on the following counsel:

Nancy Freeman Gans, Esq.                    Steven G. Schulman, Esq.
Moulton & Gans, P.C.                        Milberg Weiss Bershad & Schulman LLP
33 Broad Street, Suite 1100                 One Pennsylvania Plaza - 49th Floor
Boston, MA  02109-4216                      New York, NY  10119


Peter M. Saparoff, Esq.                     James R. Carroll, Esq.
Mintz, Levin, Cohn, Ferris, Glovsky & Popeo, PC   Skadden, Arps, Slate, Meagher & Flom LLP
One Financial Center                        One Beacon Street
Boston, MA 02111                            Boston, MA  02108


                                            /s/ Kimberly Friday
                                            Kimberly Friday


Dated:  October 20, 2005