UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE ORGANOGENESIS SECURITIES LITIGATION | Civ. No. 04-10027-JLT |

### ANSWER AND AFFIRMATIVE DEFENSES OF DEFENDANT JOHN J. ARCARI TO CORRECTED CONSOLIDATED AMENDED COMPLAINT

Defendant John J. Arcari ("Mr. Arcari"), based on his knowledge and information and belief, hereby answers the Corrected Consolidated Amended Class Action Complaint for Violation of the Federal Securities Laws ("Complaint" or "Compl."), dated December 22, 2004. In responding to the Complaint, Mr. Arcari does not admit that he bears the burden of proving any of the defenses set forth below, nor the relevance of any of plaintiffs' allegations. Mr. Arcari further generally states that he lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning events allegedly occurring before he arrived at Organogenesis, Inc. on May 1, 2000 and after he left Organogenesis, Inc. on May 14, 2002, and on that basis denies them. To the extent not explicitly admitted, all allegations of the Complaint are denied.

### FIRST DEFENSE

Mr. Arcari denies each allegation except where specifically admitted, and in every respect denies liability, denies that he engaged in any improper conduct and denies that plaintiffs are entitled to relief. Mr. Arcari presently is without personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning plaintiffs' unidentified sources, including whether the source(s) actually provided the information attributed to them. Mr. Arcari responds to the specifically numbered allegations of the Complaint as follows:

To the extent that any response is required to plaintiffs' unnumbered Introductory Paragraph, Mr. Arcari denies each and every allegation therein.

1. With respect to Paragraph 1, no response is required to the allegations of that paragraph, which sets forth plaintiffs' characterization of this action, consists of legal conclusions, and does not purport to require a response from Defendants. To the extent that this paragraph purports to contain factual assertions requiring a response, Mr. Arcari admits that plaintiffs assert that this is a federal class action asserting claims under the Securities Exchange Act of 1934 (the "Exchange Act"). Mr. Arcari denies that any acts occurred to give rise to violation of this Act or any other securities laws, and further denies that this action may be properly maintained as a class action. Mr. Arcari otherwise denies each and every allegation in Paragraph 1.

2. With respect to Paragraph 2, Mr. Arcari lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning Apligraf and revenues therefrom before he arrived at Organogenesis, Inc. ("Organogenesis" or "the Company") on May 1, 2000, and on that basis denies them. Mr. Arcari admits that during the portion of the putative Class Period in which he was employed by Organogenesis, the Company manufactured Apligraf, which has been described as a unique skin replacement therapy used for severe skin wounds. No response is required to the allegation concerning Organogenesis' revenue during the portion of the putative Class Period in which he was employed by the Company, which is set forth in publicly filed financial statements that speak for themselves. To the extent a response is required, Mr. Arcari denies that plaintiffs completely and accurately construe and characterize those documents. Mr. Arcari otherwise denies each and every allegation in Paragraph 2.

3. With respect to Paragraph 3, no response is required to those allegations purporting to construe and paraphrase unidentified 1999 public statements, which speak for themselves. Mr. Arcari lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning communications allegedly made before he arrived at the Company on May 1, 2000, and on that basis denies them. Mr. Arcari admits that during the portion of the putative Class Period in which he was employed by Organogenesis, the Company issued public statements and public filings related to its marketing agreements, its funding and its profitability, which speak for themselves. To the extent a response to these allegations is required, Mr. Arcari denies that Paragraph 3 completely and accurately characterizes and construes those documents. Mr. Arcari admits that Organogenesis and Novartis Pharma AG (formerly Sandoz Pharma Ltd.) ("Novartis") were parties to certain contracts during the putative Class Period (collectively referred to herein as "the Novartis Contracts"), and that those documents set forth the terms of the parties' relationship. No response is required to those allegations purporting to construe and characterize the Novartis Contracts, which speak for themselves. To the extent a response is required, Mr. Arcari denies that Paragraph 3 completely and accurately construes and characterizes the Novartis Contracts and the parties' relationship as set forth therein. Mr. Arcari otherwise denies each and every allegation in Paragraph 3.

4. With respect to Paragraph 4, Mr. Arcari lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning public filings allegedly made before he arrived at the Company on May 1, 2000, and on that basis denies them. Mr. Arcari otherwise denies each and every allegation in Paragraph 4.

5. With respect to Paragraph 5, Mr. Arcari lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning the purported beliefs of

plaintiffs and other members of the purported class, and on that basis denies them. Mr. Arcari further lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning what, if anything, unidentified "[d]efendants repeatedly stated" in unidentified statements, and on that basis denies them. Mr. Arcari admits that Organogenesis and Novartis were parties to the Novartis Contracts, and that those documents set forth the terms of the parties' relationship. No response is required to those allegations purporting to construe and characterize the Novartis Contracts, which speak for themselves. To the extent any further response is required, Mr. Arcari denies that Paragraph 5 completely and accurately construes and characterizes the Novartis Contracts and the parties' relationship as set forth therein. Mr. Arcari otherwise denies each and every allegation in Paragraph 5.[1]

6. With respect to Paragraph 6, Mr. Arcari admits that the Company issued public statements and public filings related to its Apligraf product, the Company's funding and the Company's business plan. Mr. Arcari lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning the statements of unidentified "defendants," and on that basis denies them. Mr. Arcari further states that no response is required to those allegations purporting to construe and characterize unidentified public statements, which speak for themselves. Mr. Arcari denies that Paragraph 6 accurately and completely construes and characterizes such statements. Mr. Arcari lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning

---

[1] With respect to footnote 1, Mr. Arcari admits that certain of the Novartis Contracts set forth the parties' relationship with respect to the exercise of a put option. No response is required to the allegations of that footnote, which consists of legal conclusions and plaintiffs' characterization of certain of the Novartis Contracts, which speak for themselves. To the extent any further response is required, Mr. Arcari denies that footnote 1 completely and accurately construes and excerpts the Novartis Contracts, and otherwise denies each and every allegation in footnote 1.

representations allegedly made before he arrived at the Company on May 1, 2000, and on that basis denies them. Mr. Arcari otherwise denies each and every allegation in Paragraph 6.

7. With respect to Paragraph 7, Mr. Arcari lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning the information purportedly obtained through any investigation by plaintiffs' counsel or their representatives, and on that basis denies them. Mr. Arcari further states that he has not seen a copy of the document that is referenced in the Complaint as the "Confidential Arcari Document," and therefore, he lacks personal knowledge or information sufficient to form a belief as to the authenticity of that document. Mr. Arcari admits that, in October 2001, he served as the Company's Chief Financial Officer, and admits that, at that time, he drafted a confidential document that appears to be partially quoted in this paragraph of the Complaint. No response is required to the allegations purporting to construe and excerpt the document described as the "Confidential Arcari Document," which speaks for itself. To the extent a response is required, Mr. Arcari denies that Paragraph 7 completely and accurately characterizes and excerpts the document that he drafted in October 2001. Mr. Arcari otherwise denies each and every allegation in Paragraph 7.

8. With respect to Paragraph 8, Mr. Arcari lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning representations allegedly made before he arrived at the Company on May 1, 2000, and on that basis denies them. Mr. Arcari otherwise denies each and every allegation in Paragraph 8.

9. With respect to Paragraph 9, Mr. Arcari lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning communications allegedly made before he arrived at the Company on May 1, 2000, and on that basis denies them. Mr. Arcari otherwise denies each and every allegation in Paragraph 9.

10. With respect to Paragraph 10, Mr. Arcari admits that, following the close of the putative Class Period, Organogenesis initiated a bankruptcy proceeding in the United States Bankruptcy Court for the District of Massachusetts, Eastern Division. No response is required to those allegations concerning the facts or proceedings of the bankruptcy, which are set forth in court papers filed and orders entered in that proceeding, which speak for themselves. Mr. Arcari otherwise denies each and every allegation in Paragraph 10.

11. With respect to Paragraph 11, Mr. Arcari denies each and every allegation in Paragraph 11.

12. With respect to Paragraph 12, no response is required to the allegations of that paragraph, which are not directed to Mr. Arcari, and which concern the purported actions of non-party PricewaterhouseCoopers. To the extent a response is required, Mr. Arcari admits that PricewaterhouseCoopers served as Organogenesis' independent auditor from at least May 1, 2000 through the conclusion of the putative Class Period. Mr. Arcari lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning PricewaterhouseCoopers before he arrived at the Company on May 1, 2000, and on that basis denies them. Mr. Arcari further lacks personal knowledge or information sufficient to form a belief as to the allegations concerning the purported conduct or beliefs of PricewaterhouseCoopers, and on that basis denies them. Mr. Arcari otherwise denies each and every allegation in Paragraph 12.

With respect to Paragraph 12(a), no response is required to the allegations of that paragraph, which are not directed to Mr. Arcari, and which concern the purported actions of non-party PricewaterhouseCoopers. To the extent a response is required, Mr. Arcari lacks personal knowledge or information sufficient to form a belief as to the allegations concerning the

purported conduct or beliefs of PricewaterhouseCoopers, and on that basis denies them. Mr. Arcari further states that he has not seen a copy of the document that is referenced in the Complaint as the "Confidential Arcari Document," and therefore, he lacks personal knowledge or information sufficient to form a belief as to the authenticity of that document. Mr. Arcari admits that, in October 2001, he drafted a confidential document that appears to be partially quoted in this paragraph of the Complaint. No response is required to the allegations purporting to construe and excerpt the document described as the "Confidential Arcari Document," which speaks for itself. To the extent a response is required, Mr. Arcari denies that Paragraph 12(a) completely and accurately characterizes and excerpts the document that he drafted in October 2001. Mr. Arcari otherwise denies each and every allegation in Paragraph 12(a).

With respect to Paragraph 12(b), no response is required to the allegations of that paragraph, which are not directed to Mr. Arcari, and which concern the purported actions of non-party PricewaterhouseCoopers. To the extent a response is required, Mr. Arcari admits that PricewaterhouseCoopers served as Organogenesis' independent auditor from at least May 1, 2000 through the conclusion of the putative Class Period, and thus certified and audited the Company's financial statements as set forth in the 2000 Form 10-K, filed April 2, 2001, which speak for itself. Mr. Arcari lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning PricewaterhouseCoopers before he arrived at the Company on May 1, 2000, and on that basis denies them. Mr. Arcari further lacks personal knowledge or information sufficient to form a belief as to the allegations concerning the purported conduct or beliefs of PricewaterhouseCoopers, and on that basis denies them. Mr. Arcari otherwise denies each and every allegation in Paragraph 12(b).

With respect to Paragraph 12(c), no response is required to the allegations of that paragraph, which are not directed to Mr. Arcari, and which concern the purported actions of non-party PricewaterhouseCoopers. To the extent a response is required, Mr. Arcari lacks personal knowledge or information sufficient to form a belief as to the allegations concerning the purported conduct or beliefs of PricewaterhouseCoopers, and on that basis denies them. Mr. Arcari further states that he has not seen a copy of the document that is referenced in the Complaint as the "Confidential Arcari Document," and therefore, he lacks personal knowledge or information sufficient to form a belief as to the authenticity of that document. Mr. Arcari admits that, in October 2001, he drafted a confidential document that appears to be partially quoted in this paragraph of the Complaint. No response is required to the allegations purporting to construe and excerpt the document described as the "Confidential Arcari Document," which speaks for itself. To the extent a response is required, Mr. Arcari denies that Paragraph 12(c) completely and accurately characterizes and excerpts the document that he drafted in October 2001. No response is required to the allegations in footnote 2, which consist of plaintiffs' legal conclusions and characterizations of the term "comfort letter." Mr. Arcari otherwise denies each and every allegation in Paragraph 12(c).

With respect to Paragraph 12(d), no response is required to the allegations of that paragraph, which are not directed to Mr. Arcari, and which concern the purported actions of non-party PricewaterhouseCoopers. To the extent a response is required, Mr. Arcari lacks personal knowledge or information sufficient to form a belief as to the allegations concerning the purported conduct or beliefs of PricewaterhouseCoopers, and on that basis denies them. Mr. Arcari lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning representations allegedly made before he arrived at the Company on May

1, 2000, and on that basis denies them. Mr. Arcari otherwise denies each and every allegation in Paragraph 12(d).

13. With respect to Paragraph 13, Mr. Arcari admits that, after the close of the putative Class Period on February 7, 2002, PricewaterhouseCoopers issued a "going concern opinion" related to the Company. No response is required to those allegations concerning plaintiffs' opinion as to when such opinion "should have" been issued, which consist of legal conclusions. Mr. Arcari otherwise denies each and every allegation in Paragraph 13.

14. With respect to Paragraph 14, Mr. Arcari admits that the Company filed a Form 8-K with the SEC on or about January 30, 2002. No further response is required to the remaining allegations of Paragraph 14, which purport to construe and excerpt this document, which speaks for itself. To the extent any further response is required, Mr. Arcari denies that Paragraph 14 completely and accurately construes and excerpts that document. Mr. Arcari otherwise denies each and every allegation in Paragraph 14.

15. With respect to Paragraph 15, Mr. Arcari admits that on February 7, 2002, Organogenesis' stock price reached an intra-day price as low as $1.32 per share, but denies that it closed at this price. Mr. Arcari further admits that on March 7, 2000, Organogenesis' stock price reached an intra-day price as high as $22.00, but denies that it closed at this price. Mr. Arcari otherwise denies each and every allegation in Paragraph 15.

16. With respect to Paragraph 16, Mr. Arcari admits that, following the close of the putative Class Period, Organogenesis initiated a bankruptcy proceeding in the United States Bankruptcy Court for the District of Massachusetts, Eastern Division. No response is required to those allegations concerning the facts or proceedings of the bankruptcy, which are set forth in

court papers filed and orders entered in that proceeding, which speak for themselves. Mr. Arcari otherwise denies each and every allegation in Paragraph 16.

17. With respect to Paragraph 17, no response is required to the allegations of that paragraph, which consist of legal conclusions. To the extent a response is required, Mr. Arcari admits that plaintiffs purport to bring claims pursuant to Sections 10(b) and 20(a) of the Exchange Act [15 U.S.C. §§ 78j(b) and 78t(a)] and Rule 10b-5 promulgated thereunder by the SEC [17 C.F.R. §240.10b-5]. Mr. Arcari otherwise denies each and every allegation in Paragraph 17.

18. With respect to Paragraph 18, no response is required to the allegations of that paragraph, which consist of legal conclusions regarding this Court's jurisdiction. To the extent a response is required, Mr. Arcari denies each and every allegation in Paragraph 18.

19. With respect to Paragraph 19, no response is required to the allegations in the first sentence of that paragraph, which consist of legal conclusions with respect to venue. Mr. Arcari admits that during the putative Class Period Organogenesis maintained its principal place of business in this District, but otherwise denies the allegations in the second sentence in Paragraph 19. Mr. Arcari lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning events allegedly occurring before he arrived at the Company on May 1, 2000 and after he left the Company on May 14, 2002, and on that basis denies them. Mr. Arcari otherwise denies each and every allegation in Paragraph 19.

20. With respect to Paragraph 20, no response is required to the allegations of Paragraph 20, which consist of legal conclusions. To the extent a response is required, Mr. Arcari denies each and every allegation in Paragraph 20.

21. With respect to Paragraph 21, Mr. Arcari admits that the Court appointed Bruno Hofmann, John H. Bowie, Jr., Richard Madigan and Richard Conen as Lead Plaintiffs by an Order dated July 20, 2004. Mr. Arcari specifically denies that any person or entity acquired Organogenesis stock at artificially inflated prices or that any person or entity was damaged. Mr. Arcari otherwise denies each and every allegation in Paragraph 21.

22. With respect to Paragraph 22, Mr. Arcari admits that, during the purported Class Period, Organogenesis was a Delaware corporation with its principal place of business at 150 Dan Road, Canton, Massachusetts 02021, and that, during the putative Class Period, Organogenesis designed, manufactured and sold medical products containing living cells and/or natural connective tissue, including living tissue replacements, cell-based organ asset devices and other tissue-engineered products. Mr. Arcari further admits that for a portion of the putative Class Period, Apligraf was the only product containing living human cells to have gained U.S. Food and Drug Administration ("FDA") PMA marketing approval in the United States. Mr. Arcari lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations relating to the activities or marketing efforts of non-party Organogenesis before he arrived at the Company on May 1, 2000 and after he left the Company on May 14, 2002, and on that basis denies them. Mr. Arcari otherwise denies each and every allegation in Paragraph 22.

23. With respect to Paragraph 23, Mr. Arcari admits that at certain points during the putative Class Period, non-party Novartis held shares of Organogenesis stock, as set forth in the Form S-3 Registration Statement filed by the Company on November 1, 2001, which speaks for itself. Mr. Arcari further admits that, during the putative Class Period, Novartis was a pharmaceutical company, and that Organogenesis and Novartis were parties to the Novartis Contracts, which set forth the terms of the parties' relationship. No response is required to the

allegations of Paragraph 23 that purport to construe and characterize the Novartis Contracts, the terms of which speak for themselves. To the extent a response to these allegations is required, Mr. Arcari denies that Paragraph 23 completely and accurately construes and characterizes the Novartis Contracts and the parties' relationship as set forth therein. Mr. Arcari lacks personal knowledge or information sufficient to form a belief as to the allegations concerning Novartis' business operations in the United States, the origins of those operations, and the extent of those operations in the United States. Mr. Arcari otherwise denies each and every allegation in Paragraph 23.

24.  With respect to Paragraph 24, Mr. Arcari denies that PricewaterhouseCoopers remains a defendant in this action. Mr. Arcari admits that, from at least May 1, 2000 through the conclusion of the putative Class Period, PricewaterhouseCoopers was the independent auditor of the Company. Mr. Arcari lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning PricewaterhouseCoopers allegedly occurring before he arrived at the Company on May 1, 2000, and on that basis denies them.

25.  With respect to Paragraph 25, Mr. Arcari admits that Mr. Laughlin served as President, Director, Chief Executive Officer, and member of the Executive Committee of Organogenesis at various times from at least May 1, 2000 through May 15, 2001. Mr. Arcari lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning Mr. Laughlin's alleged employment with Organogenesis before he arrived at the Company on May 1, 2000, and on that basis denies them. Mr. Arcari admits that Mr. Laughlin left the Company on or about May 15, 2001. Mr. Arcari further admits that Mr. Laughlin signed some, but not all, of the Company's SEC filings during the putative Class Period, and states that those documents speak for themselves. Mr. Arcari denies that Paragraph

25 completely and accurately construes and characterizes those documents. To the extent that plaintiffs purport to construe and characterize Mr. Laughlin's departure, or the reasons therefore, Mr. Arcari denies the allegations of Paragraph 25. Mr. Arcari otherwise denies each and every allegation in Paragraph 25.

26. With respect to Paragraph 26, Mr. Arcari admits that during the putative Class Period, Michael Sabolinski, M.D. ("Dr. Sabolinski") served as President, Chief Executive Officer and member of the Board of the Company, and that he assumed those positions on May 16, 2001. Mr. Arcari further admits that, before assuming these positions, and also during the purported Class Period, Dr. Sabonlinski also served as the Company's Senior Vice President, Medical and Regulatory Affairs. Mr. Arcari lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning Dr. Sabolinski's continued employment with Organogenesis before he arrived at the Company on May 1, 2000 and after he left the Company on May 14, 2002, and on this basis denies them. Mr. Arcari otherwise denies each and every allegation in Paragraph 26.

27. With respect to Paragraph 27, Mr. Arcari admits that during the putative Class Period, Mr. Erani served as a member of the Board of the Company and Chairman of the Board. Mr. Arcari lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning Mr. Erani's relationship with Organogenesis before he arrived at the Company on May 1, 2000 and after he left the Company on May 14, 2002, and on this basis denies them. Mr. Arcari admits that Mr. Erani signed some, but not all, of the Company's SEC filings during the putative Class Period, and states that those documents speak for themselves. Mr. Arcari denies that Paragraph 27 completely and accurately construes and characterizes those documents. Mr. Arcari otherwise denies each and every allegation in Paragraph 27.

28. With respect to Paragraph 28, Mr. Arcari denies that Mr. Ades remains a defendant in this action, as he was dismissed by an Order of this Court dated July 20, 2005. Mr. Arcari lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning Mr. Ades, who allegedly began his employment with Organogenesis after Mr. Arcari left the Company on May 14, 2002, and on that basis denies them. Mr. Arcari further lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning events that allegedly occurred after he left the Company on May 14, 2002, and on that basis denies them. Mr. Arcari otherwise denies each and every allegation in Paragraph 28.

29. With respect to Paragraph 29, Mr. Arcari admits that Ms. Donna Abelli Lopolito ("Ms. Lopolito") served as Chief Financial Officer and Vice President, Finance and Administration of Organogenesis until April 30, 2000. Mr. Arcari lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning Ms. Lopolito's employment by Organogenesis before Mr. Arcari arrived at the Company on May 1, 2000, and on that basis denies them. Mr. Arcari admits that Ms. Lopolito signed some, but not all, of the Company's SEC filings during the putative Class Period, and states that those documents speak for themselves. Mr. Arcari denies that Paragraph 29 completely and accurately construes and characterizes those documents. Mr. Arcari otherwise denies each and every allegation in Paragraph 29.

30. With respect to Paragraph 30, Mr. Arcari admits that he served as Chief Financial Officer and Vice President, Finance and Administration of Organogenesis from May 1, 2000 until May 14, 2002. Mr. Arcari admits that he signed some, but not all, of the Company's SEC filings during the putative Class Period, and states that those documents speak for themselves.

Mr. Arcari denies that Paragraph 30 completely and accurately construes and characterizes those documents. Mr. Arcari otherwise denies each and every allegation in Paragraph 30.

31.     With respect to Paragraph 31, Mr. Arcari lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning Mr. Herbert M. Stein's ("Mr. Stein") employment by Organogenesis before he arrived at the Company on May 1, 2000, and on that basis denies them. Mr. Arcari further lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning public filings allegedly made before he arrived at the Company on May 1, 2000, and on that basis denies them. Mr. Arcari otherwise denies each and every allegation in Paragraph 31.

32.     With respect to Paragraph 32, Mr. Arcari lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning Mr. Alan W. Tuck's ("Mr. Tuck") employment by Organogenesis before he arrived at the Company on May 1, 2000, and on that basis denies them. Mr. Arcari admits that Mr. Alan W. Tuck ("Mr. Tuck") served as Chief Strategic Officer of the Company from at least May 1, 2000 until June 15, 2000. Mr. Arcari otherwise denies each and every allegation in Paragraph 32.

33.     With respect to Paragraph 33, no response is required to the allegations of Paragraph 33, which purport to describe and construe the allegations of the Complaint.

34.     With respect to Paragraph 34, Mr. Arcari admits that from May 1, 2000 through May 14, 2002, he served as Chief Financial Officer and Vice President, Finance and Administration of Organogenesis. Mr. Arcari denies that he served as a director, and denies that he served as an officer during the entire putative Class Period. Mr. Arcari incorporates by reference his response to Paragraph 30. Mr. Arcari admits that at certain times, upon request and to the extent consistent with his role, he had access to certain internal corporate documents,

spoke to other corporate personnel, attended management and Board of Director meetings and Audit Committee meetings, and had access to certain reports and other information provided to him in connection therewith. Mr. Arcari presently is without personal knowledge or information sufficient to form a belief as to the specific materials he allegedly received and when. Mr. Arcari lacks personal knowledge or information sufficient to form a belief as to the truth of allegations concerning what documents any other unidentified "[i]ndividual [d]efendants" may have received and when they might have received them, and on that basis denies them. Mr. Arcari otherwise denies each and every allegation in Paragraph 34.

35.     With respect to Paragraph 35, no response is required to those allegations which consist of plaintiffs' legal conclusions as to whether defendants in this action may be treated as a "group" for pleading purposes, but to the extent a response is required, Mr. Arcari denies those allegations. Mr. Arcari admits that he held a position at Organogenesis as set forth in Paragraph 30, and he incorporates by reference his response to that paragraph and Paragraph 34. Mr. Arcari further admits that he performed in good faith the position he held at Organogenesis during the putative Class Period, and that, at various times, he was involved with certain operations and/or business activities of Organogenesis consistent with his position. Mr. Arcari otherwise denies each and every allegation in Paragraph 35.

36.     With respect to Paragraph 36, no response is required to the allegations of Paragraph 36 concerning plaintiffs' characterizations of defendants' legal duties or alleged violations thereof, which consist of legal conclusions. To the extent a response is required, Mr. Arcari denies those allegations. Mr. Arcari admits that during the putative Class Period, he held a position at Organogenesis as set forth in Paragraph 30, which response he incorporates by reference herein. He further admits that, during the putative Class Period, Organogenesis stock

was traded on the American Stock Exchange ("AMEX"), and governed by the provisions of the federal securities laws. Mr. Arcari denies that Organogenesis is currently a publicly-held company, denies that Organogenesis stock now trades on the AMEX, and he further denies that he is now an officer of that reorganized company. Mr. Arcari otherwise denies each and every allegation in Paragraph 36.

37. With respect to Paragraph 37, Mr. Arcari admits that during the putative Class Period he and others participated in good faith in the preparation of various public communications made by Organogenesis to the extent appropriate to his position, but otherwise is presently without personal knowledge or information sufficient to form a belief as to which communications he drafted, prepared and/or approved, or when he did so. Mr. Arcari otherwise denies each and every allegation in Paragraph 37.

38. With respect to Paragraph 38, Mr. Arcari admits that at various times during the putative Class Period, he received copies of various materials that Organogenesis filed with the SEC, press releases, and other public statements related to the Company, but is presently without personal knowledge or information sufficient to form a belief as to which documents he received, or when. Mr. Arcari lacks personal knowledge or information sufficient to form a belief as to the truth of plaintiff's non-specific allegations concerning unidentified documents or "public reports" or "releases" he or any other unidentified "[i]ndividual [d]efendant[s]" may have received and when they might have received them, and on that basis denies them. Mr. Arcari otherwise denies each and every allegation in Paragraph 38.

39. With respect to Paragraph 39, Mr. Arcari denies each and every allegation in Paragraph 39.

40. With respect to Paragraph 40, no response is required to the allegations in this paragraph, which consist of legal conclusions and plaintiffs' characterization of this action, and which do not purport to require a response from Mr. Arcari. To the extent that this paragraph purports to contain factual allegations requiring a response, Mr. Arcari admits that plaintiffs assert that this is a putative class action pursuant to Federal Rules of Civil Procedure 23(a) and (b)(3) on behalf of a purported class. Mr. Arcari denies that he engaged in any unlawful or improper conduct, denies that plaintiffs or members of the purported class were damaged, and denies this action may be properly maintained as a class action. Mr. Arcari lacks personal knowledge or information sufficient to form a belief as to the truth of each and every other allegation contained in Paragraph 40, and on that basis denies them.

41. With respect to Paragraph 41, no response is required to the allegations in this paragraph, which consist of legal conclusions and plaintiffs' characterization of this action, and which do not purport to require a response from Mr. Arcari. To the extent a response is required, Mr. Arcari admits that during the putative Class Period, Organogenesis securities were traded on the AMEX as of November 2, 2001, but presently lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning how many shares were issued or outstanding at any given time, and on that basis denies them. Mr. Arcari otherwise denies each and every allegation in Paragraph 41.

42. With respect to Paragraph 42, no response is required to the allegations in this paragraph, which consist of legal conclusions and plaintiffs' characterization of this action, and which do not purport to require a response from Defendants. To the extent that this paragraph purports to contain factual assertions requiring a response, Mr. Arcari denies each and every allegation in Paragraph 42.

43.     With respect to Paragraph 43, no response is required to the allegations in this paragraph, which consist of legal conclusions and plaintiffs' characterization of this action, and which do not purport to require a response from Defendants. To the extent that this paragraph purports to contain factual assertions requiring a response, Mr. Arcari denies each and every allegation in Paragraph 43.

44.     With respect to Paragraph 44 and all of its subparts, no response is required to the allegations in this paragraph, which consist of legal conclusions and plaintiffs' characterization of this action, and which do not purport to require a response from Defendants. To the extent that this paragraph purports to contain factual assertions requiring a response, Mr. Arcari denies each and every allegation in Paragraph 44.

45.     With respect to Paragraph 45, no response is required to the allegations in this paragraph, which consist of legal conclusions and plaintiffs' characterization of this action, and which do not purport to require a response from Defendants. To the extent that this paragraph purports to contain factual assertions requiring a response, Mr. Arcari denies each and every allegation in Paragraph 45.

46.     With respect to Paragraph 46, Mr. Arcari admits that Organogenesis was organized as a Delaware corporation in 1985, and from at least May 1, 2000 through May 14, 2002, described itself as a "tissue engineering firm" that designs, develops and manufactures medical products containing living human cells and natural connective tissue. Mr. Arcari lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning representations Organogenesis allegedly made before he arrived at the Company on May 1, 2000 and after he left the Company on May 14, 2002, and on that basis denies them. Mr. Arcari otherwise denies each and every allegation in Paragraph 46.

47. With respect to Paragraph 47, Mr. Arcari lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations relating to how plaintiffs believe Organogenesis "appeared" to others, and on that basis denies them. Mr. Arcari presently lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning events allegedly occurring before he arrived at Organogenesis on May 1, 2000, and on that basis denies them. Mr. Arcari admits that Apligraf was approved for standardized Medicare or Medicaid reimbursement in all fifty states in September 2001, as set forth in a Company press release issued on September 21, 2001, which speaks for itself. Mr. Arcari denies that, as characterized by plaintiffs, September 2001 was "early in the Class Period," and states that the putative Class Period, as defined by plaintiffs, is between November 15, 1999 and February 7, 2002. Mr. Arcari otherwise denies each and every allegation in Paragraph 47.

48. With respect to Paragraph 48, Mr. Arcari presently lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning public filings allegedly made before he arrived at Organogenesis on May 1, 2000, and on that basis denies them. Mr. Arcari further presently lacks personal knowledge or information sufficient to form a belief as to the truth of the allegations concerning events allegedly occurring before he arrived at Organogenesis on May 1, 2000, and on that basis denies them. Mr. Arcari otherwise denies each and every allegation in Paragraph 48.

49. With respect to Paragraph 49, no response is required to the allegations that purport to quote the view of an investment analyst employed by non-party Moors & Cabot, Inc. in an April 1999 edition of the *Boston Business Journal*, which speaks for itself. Mr. Arcari otherwise denies each and every allegation in Paragraph 49.