**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

|  |  |
|---|---|
| )<br>)<br>IN RE ORGANOGENESIS SECURITIES )<br>LITIGATION )<br>)<br>)<br>)<br>) | **MASTER FILE NO. 04-10027 JLT** |

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT**
**OF MOTION FOR CLASS CERTIFICATION**

**MOULTON & GANS, P.C.**
Nancy Freeman Gans
55 Cleveland Road
Wellesley, MA  02481
(781) 235-2246

**MILBERG WEISS BERSHAD**
**& SCHULMAN LLP**
Elaine S. Kusel
Peter Sloane
One Pennsylvania Plaza
New York, New York 10019
(212) 594-5300

**Table of Contents**

**Page**

I.    PRELIMINARY STATEMENT ...................................................................1

II.   STATEMENT OF FACTS AND PROCEDURAL BACKGROUND...................3

    A.    Procedural Background.................................................................3

    B.    Summary Of Defendants' Fraudulent Course of Conduct..........................3

    C.    The Truth Begins to Emerge........................................................6

III.  THE CLASS SHOULD BE CERTIFIED..............................................7

    A.    Courts Favor Class Action Treatment of Securities Fraud Actions............7

    B.    The Requirements of Rule 23 ....................................................8

    C.    The Prerequisites of Rule 23(a) are Satisfied ...............................9

        1.    The Class is so Numerous That Joinder of All Members is
             Impracticable...................................................................9

        2.    There are Common Questions of Law or Fact..............................10

        3.    Plaintiffs' Claims are Typical of Those of the Class ....................12

        4.    Plaintiffs Will Fairly and Adequately Represent the Class ...........13

    D.    The Conditions of Rule 23(b)(3) are Satisfied...........................15

        1.    Common Questions of Law or Fact Dominate ..............................15

        2.    A Class Action is Superior to Other Available Methods For
             the Fair and Efficient Adjudication of This Action ......................18

IV.   CONCLUSION.......................................................................20

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Abelson v. Strong*,
No. 85-0592-S, 1987 U.S. Dist. LEXIS 7515 (D. Mass. July 30, 1987) .....................12

*Abrams v. Van Kampen Funds, Inc.*,
No. 01 *C 7538*, 2002 U.S. Dist. LEXIS 16022 (N.D. Ill. Aug. 26, 2002) ..................15

*Adair v. Sorenson*,
134 F.R.D. 13 (D. Mass 1991) .......................................................................... 7, 12-13

*Affiliated Ute Citizens v. United States*,
406 U.S. 128 (1972)..............................................................................................16

*Amchem Products Inc. v. Windsor*,
521 U.S. 591 (1997)..............................................................................................15

*Backman v. Polaroid Corp.*,
1982 U.S. Dist. LEXIS 17640 (D. Mass. July 16, 1982)..........................................16

*In re Bank of Boston Corp. Sec. Litigation*,
762 F. Supp. 1525 (D. Mass. 1991) ..................................................................12, 13

*Basic v. Levinson*,
485 U.S. 224 (1988)........................................................................................16, 17

*In re: Biogen Sec. Litigation*,
179 F.R.D. 25 (D. Mass. 1997)...............................................................................8

*Blackie v. Barrack*,
524 F.2d 891 (9th Cir. 1975) ................................................................................18

*Cox v. American Cast Iron Pipe Co.*,
784 F.2d 1546 (11th Cir. 1986) ............................................................................10

*Eisen v. Carlisle & Jacquelin*,
417 U.S. 156 (1974).............................................................................................9

*Eisenberg v. Gagnon*,
766 F.2d 770 (3d Cir. 1985)...................................................................... 7-8, 17

*In re Elscint, Ltd. Sec. Litigation*,
    No. 85-2622-K, 1987 U.S. Dist. LEXIS 16746 (D. Mass. June 22, 1987)..................15

*Grace v. Perception Tech. Corp.*,
    128 F.R.D. 165 (D. Mass 1989).......................................................................... *passim*

*Greebel v. FTP Software*,
    939 F. Supp. 57 (D. Mass. 1996) ..............................................................................14

*Green v. Wolf Corp.*,
    406 F.2d 291 (2d Cir. 1968)......................................................................................18

*Guckenberger v. Boston University*,
    957 F. Supp. 306 (D. Mass. 1997) .............................................................................12

*John Hancock Life Insurance Co. v. Goldman Sachs & Co.*,
    No. 01-10729-RWZ, 2004 U.S. Dist. LEXIS 3701 (D. Mass. Mar. 9, 2004) ..............7

*Kirby v. Cullinet Software, Inc.*,
    116 F.R.D. 303 (D. Mass. 1987).......................................................................... *passim*

*Lamphere v. Brown University*,
    71 F.R.D. 641 (D.R.I. 1976) ........................................................................................9

*Malanka v. Data General Corp.*,
    No. 85-2154-Mc, 1986 U.S. Dist. LEXIS 23277 (D. Mass. July 2, 1986).................19

*Margaret Hall Foundation, Inc. v. Atlantic Finance Management*,
    No. 82-2534-T, 1987 U.S. Dist. LEXIS 7528 (D. Mass. July 30, 1987).....................11

*McLaughlin v. Liberty Mutual Insurance Co.*,
    224 F.R.D. 304 (D. Mass. 2004).................................................................................10

*Modell v. Eliot Sav. Bank*,
    139 F.R.D. 17 (D. Mass. 1991)...................................................................................14

*In re New England Mutual Life Insurance Co. Sales Practices Litigation*,
    183 F.R.D. 33 (D. Mass. 1998)...................................................................................11

*In re One Bancorp Sec. Litigation*,
    136 F.R.D. 526 (D. Me. 1991).................................................................................7, 17

*In re Oxford Health Plans, Inc. Sec. Litigation*,
    182 F.R.D. 42 (S.D.N.Y. 1998) ..................................................................................14

iii

*Phillips Petroleum Co. v. Shutts*,
　472 U.S. 797 (1985), *cert. denied*, 487 U.S. 1223 (1988) ...........................................20

*Priest v. Zayre Corp.*,
　118 F.R.D. 552 (D. Mass. 1988)....................................................................... *passim*

*Randle v. SpecTran*,
　129 F.R.D. 386 (D. Mass. 1988)....................................................................... *passim*

*Risinger v. Concannon*,
　201 F.R.D. 16 (D. Me. 2001).......................................................................................8

*RMED Int'l, Inc. v. Sloan's Supermarkets, Inc.*,
　185 F. Supp. 2d 389, 404-405 (S.D.N.Y. 2002) ...........................................................17

*Shelter Realty Corp. v. Allied Maintenance Corp.*,
　75 F.R.D. 34 (S.D.N.Y. 1977) ...................................................................................18

*Smilow v. Southwestern Bell Mobile System, Inc.*,
　323 F.3d 32 (1st Cir. 2003)...........................................................................15, 17, 19

*Swack v. Credit Suisse First Boston*,
　230 F.R.D. 250 (D. Mass. 2005).................................................................................9, 19

*In re TCW/DW N. America Government Income Trust Sec. Litigation*,
　941 F. Supp. 326 (S.D.N.Y. 1996).............................................................................14

*In re: Transkaryotic Therapies, Inc. Sec. Litigation*,
　No. 03-10165-RWZ, 2005 U.S. Dist. LEXIS 29656
　(D. Mass. Nov. 28, 2005).................................................................................... *passim*

*Zinberg v. Wash. Bankcorp. Inc.*,
　138 F.R.D. 397 (D.N.J. 1990) ...................................................................................18

## FEDERAL STATUTES

Federal Rules of Civil Procedure 23.......................................................... *passim*

I.    **PRELIMINARY STATEMENT**

Court-appointed Lead Plaintiffs Bruno Hofmann, John Bowie, Richard Madigan and Richard Conen (collectively "Plaintiffs") respectfully submit this Memorandum of Law in support of their Motion for an Order pursuant to Fed. R. Civ. P. 23 certifying a class consisting of all purchasers of the securities of Organogenesis, Inc. ("Organogenesis" or the "Company") between November 15, 1999 and February 7, 2002, inclusive ("Class Period"), and were damaged thereby (the "Class").[1]  This federal securities fraud class action should be certified under Rule 23(a) and (b)(3) because it satisfies all the pertinent requisites of Rule 23 and is eminently suitable for class treatment.

This action arises out of Defendants[2] scheme and common course of conduct to misrepresent and conceal from the investing public material facts regarding, among other things, Organogenesis' business and financial condition in violation of Sections 10(b) and 20(a) of the Securities Exchange Act of 1934, 15 U.S.C. §§ 78j(b) and 78t(a) (the "Exchange Act") and Rule 10b-5 promulgated thereunder by the Securities and Exchange Commission (the "SEC"), 17 C.F.R. § 240.10b-5.  The misrepresentations and omissions at issue were contained in SEC filings, company-issued press releases, investor conferences and media statements.  Defendants' wrongful course of conduct artificially inflated the market price of Organogenesis common stock and caused damage to Plaintiffs and members of the proposed Class.

As demonstrated herein, this action meets all of the prerequisites of Rule 23 and is ideally suited for class action treatment pursuant to Fed. R. Civ. P. 23(a) and (b)(2).  First, Rule 23(a)'s

---

[1] Excluded from the Class are Defendants, the officers and directors of Organogenesis at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns, and any entity in which Defendants have or had a controlling interest.

[2] The defendants are Philip Laughlin, Michael Sabolinski, Albert Erani, Donna Abelli Lopolito, John J. Arcari, Herbert M. Stein and Alan W. Tuck (collectively "Defendants").

requirements have been satisfied.  There can be no real dispute that the proposed Class, consisting presumably of many thousands of Organogenesis common stock investors, is so numerous that joinder of all members is impracticable.  Moreover, because this action arises out of a common course of conduct by Defendants wherein they publicly made materially false and misleading statements and omissions, questions of law and fact common to Plaintiffs and the proposed Class exist.  Further, Plaintiffs' claims are typical of the claims of the proposed Class in that they all seek to recover their damages for losses in Organogenesis securities transactions arising from the same course of material misrepresentations and omissions by Defendants during the Class Period based upon the same legal theories.  Finally, there can be no doubt that court-appointed Lead Plaintiffs Bruno Hofmann, John Bowie, Richard Madigan and Richard Conen are adequate class representatives, as no disabling conflicts exist between Plaintiffs and the Class they seek to represent and they have engaged experienced and highly qualified counsel to represent them.

The requisites of Rule 23(b)(3) have also been satisfied.  As stated above, there are questions common to Plaintiffs and the proposed Class as a result of Defendants' common course of wrongful conduct alleged in the Corrected Consolidated Amended Class Action Complaint for Violations for Federal Securities Laws (the "Amended Complaint") and summarized herein, and those questions predominate over any individual questions.  Additionally, in a securities fraud case such as this, a class action is unquestionably superior to individual actions because it would not be economically feasible for each member of the proposed Class to proceed on an individual basis.  Indeed, a class action is the most efficient manner in which to provide redress for such common injuries as those incurred here in order to preserve the reliability and integrity of the securities markets.

Courts in this Circuit have routinely certified federal securities fraud class actions, as illustrated in the judicial decisions cited below.  This action should be no exception.

## II.    STATEMENT OF FACTS AND PROCEDURAL BACKGROUND

### A.    Procedural Background

This action was commenced on January 7, 2004, along with multiple complaints alleging similar misconduct filed by other plaintiffs around the same time.  On July 20, 2004, the Court consolidated all related actions into the instant action and appointed Bruno Hofmann, John Bowie, Richard Madigan and Richard Conen as the Lead Plaintiffs.  (Dkt. No. 43).  On December 22, 2004, Plaintiffs filed the Amended Complaint alleging violations of Sections 10(b) and 20(a) of the Exchange Act by individual defendants Philip Laughlin, Michael Sabolinski, Albert Erani, Donna Abelli Lopolito, John J. Arcari, Herbert M. Stein, Alan W. Tuck  and Alan Ades (the "Individual Defendants"), as wells and Organogenesis' auditors, PricewaterhouseCoopers LLP ("PwC").  (Dkt. No. 58).  On July 20, 2005, the Court denied the Motions to Dismiss of all the Individual Defendants except Alan Ades and granted the Motion to Dismiss of Alan Ades and PwC. (Dkt. Nos. 83-84).

### B.    Summary Of Defendants' Fraudulent Course of Conduct

Throughout the Class Period, Organogenesis was a Company with only one commercially available product – Apligraf, a unique skin replacement therapy used for severe skin wounds.  ¶¶ 2, 54.[3]  As a result, most, if not all, of the Company's revenues were generated from the sale of Apligraf, described by Defendants as its "lead product."  *Id*.  Apligraf was a registered trademark of Novartis Pharma AG ("Novartis"), the Company's Apligraf marketing partner.  ¶ 55.  At all times throughout the Class Period, Defendants were aware that the

---

[3] All paragraph citations refer to the Amended Complaint.

Company's business model was entirely dependent upon their ability to mass-produce Apligraf and market it to physicians as an "off-the-shelf," cost-effective product that doctors could use on patients absent hospitalization.  ¶¶ 3, 54.

By the inception of the Class Period, Defendants assured investors that (1) Organogenesis maintained the expertise and ability to manufacture sufficient quantities of Apligraf so that it was foreseeable that the Company could achieve economies of scale and achieve profitability through the sales of only this product; (2) the Company maintained marketing agreements with experienced partners, such as Novartis, which would allow Organogenesis to obtain the marketing support necessary to sell sufficient quantities of Apligraf; and (3) between the Company's marketing agreements with Novartis and others, and through other foreseeable sources of available debt and equity, Organogenesis could foreseeably achieve profitability and commercial self-sufficiency.  ¶¶ 3, 55-58.

More specifically, at all times during the Class Period, Organogenesis represented that it was able to make Apligraf commercially available in a cost-effective manner which, even if the Company was forced to incur losses at the early stages of development, would allow Organogenesis to ramp up production and soon be able to fund operations from sales.  ¶¶ 6, 58. In addition, Defendants consistently reported that the Company had necessary and available funding sources from foreseeable sales of debt and equity to both private and public investors, which would allow the Company to achieve Defendants' plan for manufacturing Apligraf in sufficient quantities and so that the Company would be able to achieve profitability in the future. ¶¶ 5, 53.  Central to this plan was a key agreement with Novartis, which purportedly allowed Defendants to access *at least $20 million* through the exercise of a "put" option, thereby

maintaining a mega-million dollar "safety net" for the Company. *Id.* Unbeknownst to investors, the reality was far different than Defendants' representations.

In reality, throughout the Class Period, the Company was suffering from a host of undisclosed adverse factors that were negatively impacting its business and which would cause it to report declining financial results, materially less than the market expectations defendants had cultivated. ¶¶ 8, 60. In particular, throughout the Class Period:

- It was not true that Defendants could achieve profitability through the sale of Apligraf under the terms of the Novartis marketing agreement, and in fact, during the Class Period, the Company was actually losing money on every unit of Apligraf sold due to the adverse terms of the Novartis marketing agreement;

- Undisclosed problems related to the manufacture and marketing of Apligraf were leading to even higher costs and further reducing profitability;

- Organogenesis was underfunded and there was no reasonable basis to report that the Company could foreseeably fund operations based on product sales, available sources of loans, debts and/or equity sales; and

- Defendants failed to disclose that upper management turnover and in-fighting among the senior officers and directors of the Company was having, and would continue to have a disruptive effect on the operations and oversight of Organogenesis, such that it was not foreseeable at any time during the Class Period that Organogenesis would be able to achieve profitability in the near-term or to attain the guidance sponsored and/or endorsed by Defendants.

*Id.* As a result of these undisclosed adverse conditions, Defendants lacked any reasonable basis to claim that Organogenesis was operating according to plan, that sufficient sources of funding were achieved and/or available to Organogenesis, or that the Company could maintain profitability or even remain a viable entity in the foreseeable future. *Id.* In furtherance of their scheme, Defendants withheld from investors the true facts about the Company's dismal and ever-deteriorating financial condition and business prospects. *Id.*

In addition, according to the Confidential Arcari Document,[4] during the Class Period Defendant Erani, who was then the Company's Chairman of the Board, sought to have stock brokers "manipulate the market for the Company's stock," and "encouraged the Company to prepare overly optimistic projections to existing and potential service providers." ¶¶ 7, 59.

As a direct and proximate cause of Defendants' wrongful conduct, Plaintiffs and other members of the proposed Class suffered damages in connection with their purchases of Organogenesis securities during the Class Period.

### C.    The Truth Begins to Emerge

On January 30, 2002 the truth about Organogenesis began to emerge.  On that day, Defendants announced for the first time that the Company was running out of money and would be forced into insolvency unless it could raise at least $15 million in the immediate near term. ¶¶ 14, 148.  At the same time, the Company also disclosed that it would not be able to access the $10 million funding commitment from Novartis that they had previously touted as a "safety net" because of significant conditions precedent to that funding — conditions that Defendants had never before even disclosed.  ¶¶ 14, 149-50.  As a direct result of these disclosures, the price of Organogenesis shares fell dramatically, to as low as $1.32 on February 7, 2002, a decline of almost 95% compared to the Class Period high of over $22.00 per share on March 7, 2000.  ¶¶ 15, 151.

In September 2002, the Company filed for bankruptcy protection, from which it later emerged under a plan that allowed Defendant Erani and Alan Ades to buy the Company at a steep bargain while liquidating the Company's stock, and leaving the shareholders of Organogenesis with ***nothing***.  ¶¶ 16, 161-66.

---

[4] Terms not otherwise defined have the same meaning as in the Amended Complaint.

### III.    THE CLASS SHOULD BE CERTIFIED

#### A.    Courts Favor Class Action Treatment of Securities Fraud Actions

Securities fraud cases are particularly well-suited for class certification under Rule 23.

*See, e.g., Priest v. Zayre Corp.*, 118 F.R.D. 552, 554-54 (D. Mass. 1988) ("Courts have

expressed a general preference for class certification in securities fraud cases . . . based on a

policy favoring enforcement of the federal securities laws . . . and recognition of the fact that

class actions may be the only practicable means of enforcing investors' rights.") (internal

citations omitted); *In re One Bancorp Sec. Litig.*, 136 F.R.D. 526, 533 (D. Me. 1991) ("This

Court concurs with the numerous cases that have discussed the desirability and utility of the class

action device in the context of federal securities law litigation."); *Eisenberg v. Gagnon*, 766 F.2d

770, 785 (3d Cir. 1985) ("the effectiveness of the securities laws may depend in large measure

on the application of the class action device").  Indeed, because of the utility of class actions, it

has been explicitly recognized by the courts in this District that:

> [t]here is little question that suits on behalf of shareholders
> alleging violations of federal securities laws are prime candidates
> for class action treatment and that Rule 23 of the Federal Rules of
> Civil Procedure has been liberally construed to effectuate that end.

*Grace v. Perception Tech. Corp.*, 128 F.R.D. 165, 167 (D. Mass 1989) (emphasis added); *see*

*also See John Hancock Life Ins. Co. v. Goldman Sachs & Co.*, No. 01-10729-RWZ, 2004 U.S.

Dist. LEXIS 3701, at *5 (D. Mass. Mar. 9, 2004) (same); *Adair v. Sorenson*, 134 F.R.D. 13, 16-

17 (D. Mass 1991) ("suits on behalf of shareholders alleging violations of federal securities laws

are prime candidates for class action treatment").

Moreover, because the securities laws are complex, and litigation relating thereto

expensive, without the class action device, many actionable wrongs would go uncorrected and

persons damaged thereby uncompensated.  Rule 23 of the Federal Rules of Civil Procedure,

which governs class actions, is therefore broadly structured to facilitate the certification of class

actions.  Accordingly, "the interests of justice require that in a doubtful case . . . any error, if

there is to be one, should be committed in favor of allowing a class action."  *Eisenberg*, 766 F.2d

at 785.

### B.    The Requirements of Rule 23

Fed. R. Civ. P. 23 provides that an action may be maintained as a class action if each of

the four prerequisites of Rule 23(a) is met and, in addition, the action qualifies under one of the

subdivisions of Rule 23(b).  Rule 23(a) establishes four prerequisites to class certification:

> (1) the class is so numerous that joinder of all members is
> impracticable; (2) there are questions of law or fact common to the
> class; (3) the claims or defenses of the representatives are typical
> of those of the class; and (4) the representative parties will fairly
> and adequately protect the interests of the class.

Rule 23(b)(3) provides, in pertinent part:

> An action may be maintained as a class action if the prerequisites
> of subdivision (a) are satisfied and, in addition . . . the court finds
> that the questions of law or fact common to the members of the
> class predominate over any questions affecting only individual
> members, and that a class action is superior to other available
> methods for the fair and efficient adjudication of the controversy.

The inquiry as to whether the requirements of Rule 23 have been satisfied does not

extend to the merits of the plaintiffs' claims.  Rather, the focus is limited to whether the

prerequisites of Rule 23 are met.  *See, In re: Biogen Sec. Litig.*, 179 F.R.D. 25, 41 (D. Mass.

1997) ("a Court does not consider the merits of a claim in determining class certification");

*Risinger v. Concannon*, 201 F.R.D. 16, 22 (D. Me. 2001) ("Class certification is not an

appropriate mechanism 'to conduct a preliminary inquiry into the merits of a suit'"); *Priest*, 118

F.R.D. at 554 ("Class certification is not an appropriate stage at which to address the merits of

the lawsuit.").  Indeed, as the U.S. Supreme Court has held, class certification does not require a

determination on the merits of the allegations asserted:

> [The court has no] authority to conduct a preliminary inquiry into
> the merits of a suit in order to determine whether it may be
> maintained as a class action.
>
>                   * * *
>
> In determining the propriety of a class action, the question is not
> whether plaintiff or plaintiffs have stated a cause of action or will
> prevail on the merits, but rather whether the requirements of Rule
> 23 are met.

*Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 177-178 (1974).  Therefore, for purposes of class

certification, the allegations of the Amended Complaint must be accepted as true.  *See Lamphere*

*v. Brown Univ.*, 71 F.R.D. 641, 646 (D.R.I. 1976) (acknowledging the "usual policy of accepting

the plaintiff's factual allegations as true for purposes of class certification").

      As demonstrated below, Plaintiffs have satisfied the prerequisites of Rule 23(a), and the

requirements of Rule 23(b)(3).  Class certification, therefore, is proper in this action, and

Plaintiffs' motion should be granted.

      **C.**    **The Prerequisites of Rule 23(a) are Satisfied**

      **1.**    **The Class is so Numerous That Joinder of All Members is Impracticable**

      Under Rule 23(a)(1), the proposed class must be so numerous that joinder of all class

members is impracticable.  "'The party instituting the action need not show the exact number of

potential members in order to satisfy' the numerosity prerequisite, but she 'does bear the burden

of showing impracticability and mere speculation as to the number of parties involved is not

sufficient to satisfy Rule 23(a) (1).'"  *Swack v. Credit Suisse First Boston*, 230 F.R.D. 250, 258

(D. Mass. 2005).  As courts in this District have held, "numerosity can be assumed where the

number of shares traded is so great that common sense dictates the class is very large."  *Grace*,

128 F.R.D. at 167.

The numerosity requirement is easily met here.  As of May 6, 2002, the Company had over 44.6 million shares issued and outstanding.  During the Class Period, Organogenesis' common stock was registered with the SEC and listed and actively traded on the American Stock Exchange (the "AMEX"), an open and efficient market.  ¶ 36.  The daily volume of Organogenesis stock traded during the Class Period numbered in the hundreds of thousands.  Although the exact number of Class Members is unknown at this time, Plaintiffs believe that there are possibly thousands of individuals and entities located throughout the United States who purchased or otherwise acquired Organogenesis common stock at artificially inflated prices during the Class Period.

Courts routinely certify classes in actions where the size of the proposed class is far smaller than the one proposed here.  *See Randle v. SpecTran*, 129 F.R.D. 386, 390 (D. Mass. 1988) (certifying a class where more than 4.5 million shares of common stock were outstanding and actively traded); *McLaughlin v. Liberty Mut. Ins. Co.*, 224 F.R.D. 304, 307 (D. Mass. 2004) ("courts in this district have noted that a 40 person class is 'generally found to establish numerosity.'"); *Cox v. American Cast Iron Pipe Co.*, 784 F. 2d 1546, 1553 (11th Cir. 1986) ("while there is no fixed numerosity rule, 'generally less than twenty-one is inadequate, more than forty adequate, with numbers between varying according to other factors'").    The proposed Class, therefore, satisfies the numerosity requirement of Rule 23.  *See Kirby v. Cullinet Software, Inc.*, 116 F.R.D. 303, 306 (D. Mass. 1987) (" 'an assumption that the class members are not so numerous as to make joinder impracticable would be, in light of the number of shares traded during the class period, ridiculous'").

### 2.    There are Common Questions of Law or Fact

Rule 23(a)(2) requires that there be common questions of law or fact, not "that every question be common."  *Kirby*, 116 F.R.D. at 306.  In fact, Rule 23(a)(2) may be satisfied even

where there is only a single issue common to the entire class. *Margaret Hall Found., Inc. v. Atl. Fin. Mgmt.*, No. 82-2534-T, 1987 U.S. Dist. LEXIS 7528 (D. Mass. July 30, 1987). "'The threshold of commonality is not a difficult one to meet,' especially when 'there are a number of common issues of fact and law that the class members would be required to establish to prove the defendants' liability, as well as their entitlement to damages.'" *In re: Transkaryotic Therapies, Inc. Sec. Litig.*, No. 03-10165-RWZ, 2005 U.S. Dist. LEXIS 29656 (D. Mass. Nov. 28, 2005).

Common questions of law and fact abound where, as here, the allegations involve material misrepresentations in uniform statements to the investing public. *See, e.g., Randle*, 129 F.R.D. at 390 ("Plaintiffs present common questions in their allegations of misstatements and omission in various [Corporate] public financial documents."). Among the questions of law and fact common to the proposed Class here are:

1) whether the federal securities laws were violated by Defendants' alleged acts as alleged in the Amended Complaint;

2) whether statements made by Defendants to the investing public during the Class Period misrepresented material facts about the business, operations and managements of Organogenesis; and

3) to what extent the members of the Class have sustained damages and the proper measure of damages.

¶ 44.

These central issues, which are common to all Class members' claims, satisfy the requirement that there be common questions of law or fact. Indeed, proving the existence and nature of Defendants' material omissions and misleading statements, the most important issues in a securities case, will be common to all members of the proposed Class in this action. *See Grace*, 128 F.R.D. at 167 ("all plaintiffs will have to prove the same misrepresentations and omissions. . . . Thus, it is obvious that common questions exist."); *Priest*, 118 F.R.D. at 554; *In*

*re New England Mut. Life Ins. Co. Sales Practices Litig.*, 183 F.R.D. 33, 39 (D. Mass. 1998) (court able to identify common issues of fact and law where allegations were of common course of fraudulent conduct by high-level decision makers).  Moreover, Defendants' alleged false statements and omissions were uniformly made to all Class members, as set forth in the Amended Complaint.  The existence and predominance of common questions of fact and law cannot be doubted.

### 3.      Plaintiffs' Claims are Typical of Those of the Class

The typicality requirement Rule 23(a) is satisfied where, as here, "'the [named] plaintiff's injuries arise from the same events or course of conduct as do the injuries that form the basis of the class claims,' and 'when the plaintiff's claims and those of the class are based on the same legal theory.'"  *Guckenberger v. Boston Univ.*, 957 F. Supp. 306, 325 (D. Mass. 1997) (quoting *In re Bank of Boston Corp. Sec. Litig.*, 762 F. Supp. 1525, 1532 (D. Mass. 1991)); *see also In re: Transkaryotic Therapies*, 2005 U.S. Dist. LEXIS 29656 at *11; *Adair*, 134 F.R.D. at 17.  The typicality requirement, like commonality, is not demanding, as "the burden on plaintiffs in proving typicality is not 'very substantial.'"  *Abelson v. Strong*, No. 85-0592-S, 1987 U.S. Dist. LEXIS 7515, at *8 (D. Mass. July 30, 1987) (citations omitted).  As the Court in *Randle* explained:

> In order to meet the typicality requirement of Rule 23(a)(3) "plaintiffs need not show substantial identity between their claims and those of absent class members, but need only show that their claims arise from the same course of conduct that gave rise to the claims of absent members. . . . The question is simply whether a named plaintiff, in presenting his case, will necessarily present the claims of the absent plaintiffs."

129 F.R.D. at 391 (quoting *Priest*, 118 F.R.D. at 555).

Here, there can be no question that Plaintiffs' claims arise from the same course of conduct that give rise to the claims of absent members of the proposed Class.  Plaintiffs' claims

arise from the same events and practices and are based on the same legal theories as the claims of

absent Class members.  Plaintiffs allege that Defendants violated the federal securities laws by

publicly disseminating a series of false and misleading statements, that they purchased or

otherwise acquired Organogenesis stock at prices inflated by Defendants' misrepresentations in

reliance on the market, and that they were damaged thereby in violation of Sections 10(b) and

20(a) of the Exchange Act.  In sum, Plaintiffs are purchasers of Organogenesis common stock

that seek to prove Defendants' liability on theories that are identical to those available to other

Class members and are based upon an identical set of facts as set forth in the Amended

Complaint.  Accordingly, Plaintiffs' claims are typical of the proposed Class.

### 4.    Plaintiffs Will Fairly and Adequately Represent the Class

Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect

the interests of the class."  Fed. R. Civ. P. 23(a)(4).  In *Guckenberger*, this Court summarized the

adequacy test of Rule 23(a)(4) as follows:

> In marking the required determination regarding the adequacy of
> the named plaintiffs as class representatives, a court must decide
> "first, whether any potential conflicts exist between the named
> plaintiffs and the prospective class members, and, second, whether
> the named plaintiffs and their counsel will prosecute the case
> vigorously."

957 F. Supp. at 326 (quoting *In re Bank of Boston*, 762 F. Supp. at 1534); *see also Adair*, 134

F.R.D. at 19.  Each of these elements is satisfied here.

As demonstrated above, Plaintiffs' interests are not antagonistic to or in conflict with

those of prospective Class members; rather, they are coextensive.  Plaintiffs purchased

Organogenesis common stock during the Class Period at artificially inflated prices and suffered

significant losses as a result.  Plaintiffs, like all Class members, were injured by Defendants'

wrongful acts, including Defendants' misrepresentation and omission of material facts, and are

victims of the same wrongful conduct as all other Class members. Thus, Plaintiffs have been damaged by the same alleged conduct, and possess the incentive to fairly represent all Class members' claims and to achieve the maximum possible recovery. Proof of Plaintiffs' claims will establish the same issues of law and fact as the claims of the proposed Class as a whole.

Additionally, having suffered substantial monetary losses as a result of the securities law violations alleged in the Amended Complaint, Plaintiffs are committed to the vigorous prosecution of this action. Plaintiffs are represented by counsel who are thoroughly experienced in federal securities litigation and have the ability and willingness to protect the interests of the proposed Class. *See Modell v. Eliot Sav. Bank*, 139 F.R.D. 17, 23 (D. Mass. 1991) (approving of lead counsel because lead counsel was "familiar with and experienced in this type of litigation"); *In re TCW/DW N. Am. Gov't Income Trust Sec. Litig.*, 941 F. Supp. 326, 341 (S.D.N.Y. 1996) ("this Court is in agreement with the 'recent trend in this district [in complex securities cases] to assess the adequacy of the representative's attorney rather than the personal qualifications of the named plaintiff.'") (citations omitted). Plaintiffs' Lead Counsel, Milberg Weiss Bershad & Schulman LLP ("Milberg Weiss"), and Plaintiffs' Liaison Counsel, Moulton & Gans, P.C. ("Moulton & Gans"), are highly experienced in complex securities class actions and have successfully prosecuted numerous securities class action suits throughout the country. *See generally In re Oxford Health Plans, Inc. Sec. Litig.*, 182 F.R.D. 42, 50 (S.D.N.Y. 1998) (stating that co-lead counsel, including Milberg Weiss, are "competent," "experienced," and "qualified" counsel who "will work together to maximize recovery for the proposed class"); *Greebel v. FTP Software*, 939 F. Supp. 57, 64 (D. Mass. 1996) (noting "expertise of Milberg, Weiss . . . in securities class actions"). *See also* Firm Resumes (updated) for Milberg Weiss and Moulton & Gans attached hereto as Exhibits 1 and 2, respectively. Accordingly, Plaintiffs will fairly and

adequately protect the interests of the proposed Class.  The requirements of Rule 23(a)(4) are therefore satisfied.

### D.    The Conditions of Rule 23(b)(3) are Satisfied

In addition to meeting the requirements of Rule 23(a), this action also satisfies the requirements of Rule 23(b) that common questions of law or fact predominate over individual questions, and that class action treatment be superior to other available methods of adjudication. As set forth below, this case meets all the criteria set forth in Rule 23(b)(3).

### 1.    Common Questions of Law or Fact Dominate

Rule 23(b)(3) does not require that *all* questions of law or fact be common; it only requires that the common questions predominate over the individual questions.  *See Smilow v. Southwestern Bell Mobile Sys., Inc.*, 323 F.3d 32, 39 (1st Cir. 2003) ("Rule 23(b)(3) requires merely that common issues predominate, not that all issues be common to the class."); *Amchem Prods. Inc. v. Windsor*, 521 U.S. 591, 615 (1997).  In *Amchem*, the Supreme Court stated that "[p]redominance is a test readily met in certain cases alleging . . . securities fraud . . ."  521 U.S. at 625.  In this regard, it is well-established that the Court's inquiry under Rule 23(b)(3) should be directed toward the issue of liability.  *See In re Elscint, Ltd. Sec. Litigation*, No. 85-2622-K, 1987 U.S. Dist. LEXIS 16746, at *29 (D. Mass. June 22, 1987) ("questions concerning the defendants' liability for alleged misstatements and omissions, predominate over any individual questions in this action"); *Abrams v. Van Kampen Funds, Inc.*, No. 01 C 7538, 2002 U.S. Dist. LEXIS 16022, at *12 (N.D. Ill. Aug. 26, 2002) (a "court should direct its inquiry primarily toward the issue of liability, rather than damages, in determining whether common questions predominate.").  If the liability issues are common to the class, common questions are held to predominate over individual questions.  *See Randle*, 129 F.R.D. at 393 ("I conclude that the common questions with respect to the existence and materiality of misleading statements or

omissions in documents or press releases concerning [the Company's] securities, along with the related questions of defendants' liability for such alleged statements or omissions, predominate over any individual questions in this action.").

As discussed above, this action involves allegations of Defendants' material omissions and misrepresentations in statements publicly disseminated during the Class Period. Plaintiffs have alleged that a series of misrepresentations and omissions in violation of the federal securities laws have been perpetrated against the members of the proposed Class. Thus, critical issues of law and fact raised in this action include whether the Defendants made the omissions and misrepresentations alleged in the Amended Complaint and whether those omissions and misrepresentations were material and resulted in damage to members of the Class. *See Backman v. Polaroid Corp.*, 1982 U.S. Dist. LEXIS 17640, at *10 (D. Mass. July 16, 1982) ("The questions of materiality, nondisclosure, reliance, and causation are common to the class and they predominate over any individual issues which may arise at trial. . . . Where, as here, the liability issue is common to the class, common questions predominate and the plaintiffs meet the first requirement of Rule 23(b)(3)."). With the exception of individual damage calculations, each of the factual and legal elements of liability in this case is common to all members of the proposed Class, and common issues predominate, thereby meeting the requirements for class certification.

Moreover, the common questions presented in the Amended Complaint predominate over any differences between individual Class members with respect to reliance or damages. Indeed, any "reliance" challenges are irrelevant to Plaintiffs' Section 10(b) claim because of the presumption of reliance created by the Supreme Court in *Basic v. Levinson*, 485 U.S. 224, 247 (1988) (reliance of misrepresentation presumed) and *Affiliated Ute Citizens v. United States*, 406 U.S. 128, 153-154 (1972) (reliance of omissions presumed). *See Grace*, 128 F.R.D. at 171 ("In

fraud on the market cases, common questions of law and fact predominate over individual questions"); *Kirby*, 116 F.R.D. at 311 (same), *Randle*, 129 F.R.D. at 393 (same). In *Basic*, the Supreme Court found "that where materially misleading statements have been disseminated into an impersonal, well-developed market for securities, the reliance of individual plaintiffs on the integrity of the market price may be presumed." 485 U.S. at 247. The Amended Complaint alleges each of the elements required to invoke the fraud-on-the-market doctrine. ¶¶ 190-91. At all relevant times, Organogenesis' common stock traded on an open and efficient market, namely the AMEX, and the price of those shares reflected all publicly available information about the Company. ¶ 190. "[N]umerous courts have held that stock trading on the AMEX are almost always entitled to the [fraud-on-the-market] presumption." *RMED Int'l, Inc. v. Sloan's Supermarkets, Inc.*, 185 F. Supp. 2d 389, 404-405 (S.D.N.Y. 2002). Moreover, any argument against the application of the fraud-on-the-market doctrine involves questions of fact not cognizable on a class certification motion. *See, e.g., Basic*, 485 U.S. at 249 n.29; *Kirby*, 116 F.R.D. at 307. Courts recognize that the potential of individual issues of reliance "does not mean that the common questions of law and fact do not predominate over questions affecting individual [class] members." *Eisenberg*, 766 F.2d at 786. Thus, Plaintiffs' fraud claims under Section 10(b) of the Exchange Act allege a fraud-on-the-market theory, which presumes reliance and is ideally suited to class actions alleging securities fraud.

Likewise, the fact that individual issues of damages may have to be addressed after the common issues are determined does ***not*** overcome the fact that common questions predominate. *See Smilow*, 323 F.3d at 40 ("Where . . . common questions predominate regarding liability, then courts generally find the predominance requirement to be satisfied even if individual damages issues remain."); *In re: Transkaryotic Therapies*, 2005 U.S. Dist. LEXIS 29656 at *10 (same); *In*

*re One Bancorp Sec. Litig.*, 136 F.R.D. at 533 ("The utility of the class action device in Rule 10b-5 actions would be severely impaired were the Court to hold that damages issues preclude class action treatment here."); *Zinberg v. Wash. Bankcorp. Inc.*, 138 F.R.D. 397, 410 (D.N.J. 1990) ("Differences among class members concerning their individual damages are inherent in securities class litigation, but do not render individual questions predominant.").  Indeed, once common questions of liability are resolved, all that remains is the mechanical act of computing the amount of damages suffered by each class member that can readily be accomplished through the use of a simple mathematical formula.  *See Shelter Realty Corp. v. Allied Maint. Corp.*, 75 F.R.D. 34, 38 (S.D.N.Y. 1977).  In any event, questions regarding the computation of individual damages do not preclude class certification.  *Green v. Wolf Corp.*, 406 F.2d 291, 301 (2d Cir. 1968); *Blackie v. Barrack*, 524 F.2d 891, 908-10 (9th Cir. 1975).

In sum, it is difficult to discern any liability issues that are not common to the claims of Plaintiffs and each member of the proposed Class.  As such, common issues of law and fact predominate over those affecting only individual Class members.

### 2.     A Class Action is Superior to Other Available Methods For the Fair and Efficient Adjudication of This Action

To determine whether the "superiority" requirement of Rule 23(b)(3) is satisfied, the Court must consider the following:

1) the interest of members of the Class in individually controlling the prosecution of separate actions;

2) the extent and nature of any litigation concerning the controversy already commenced by members of the Class;

3) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and

4) the difficulties likely to be encountered in the management of a class action.

*See* Fed. R. Civ. P. 23(b)(3)(A)-(D).

Each of these factors weighs strongly in favor of class certification here.  It is well recognized that the class action device is a superior method of adjudication in securities fraud cases, which involve numerous defrauded investors whose claims could not economically be litigated individually.  As explained in *Randle*:

> in light of plaintiffs' allegations concerning the large number of outstanding [Company] shares during the class period, the relatively small financial stake of class members who may have been injured and the likely geographical dispersion of class members, a class action is superior to other methods of adjudicating this controversy. . . .

129 F.R.D. at 393; *see also Grace*, 128 F.R.D. at 171; *Priest*, 118 F.R.D. at 553-54; *Kirby*, 116 F.R.D. at 311; *Malanka v. Data Gen. Corp.*, No. 85-2154-Mc, 1986 U.S. Dist. LEXIS 23277, at *2 (D. Mass. July 2, 1986) ("It is well established that a class action is not only a superior method of expediting securities claims, but it is often the only feasible method.").

Here, the interest of potential Class members in individually controlling the prosecution of separate actions is minimal, and the costs and expenses of such individual actions would be prohibitive when weighed against the potential individual recoveries.  Indeed, as in other securities fraud cases, "the piecemeal adjudication of numerous separate lawsuits covering the same or substantially similar issues – i.e., the defendants' allegedly illegal conduct and the impact thereof on the market price of [Organogenesis] stock – would be an inefficient allocation of limited court resources.  Furthermore, and even more importantly, is the very real risk that potential class members with relatively small claims would not have the financial incentives or wherewithal to seek legal redress for their injuries."  *In re: Transkaryotic Therapies*, 2005 U.S. Dist. LEXIS 29656 at *10 (quoting *Swack v. Credit Suisse First Boston*, 230 F.R.D. 250, 273 (D. Mass. 2005)); *see also Smilow*, 323 F.3d at 41 ("The core purpose of Rule 23(b)(3) is to vindicate the claims of . . . groups of people whose individual claims would be too small to

warrant litigation."). Moreover, the adjudication of separate actions arising out of the same facts would place a significant burden on the courts. Thus, with respect to the first two factors, all relevant considerations weigh in favor of class certification.[5] *See* Fed. R. Civ. P. 23(b)(3)(A)-(B).

Courts have uniformly recognized that the class action is superior to other available methods – particularly duplicative individual lawsuits – for the fair and efficient resolution of large-scale securities fraud actions. The Supreme Court has recognized that "[c]lass actions . . . permit the plaintiffs to pool claims which would be uneconomical to litigate individually . . . . [M]ost of the plaintiffs would have no realistic day in court if a class action were not available." *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 809 (1985), *cert. denied*, 487 U.S. 1223 (1988). Consistent with the requirements of Rule 23(b)(3), the certification of this litigation as a class action would not only be "superior to other available methods for the fair and efficient adjudication of the controversy" (Fed. R. Civ. P. 23(b)(3)), but appears to be the sole method for fairly and efficiently litigating the claims of all members of the proposed Class. Accordingly, the proposed Class should be certified.

## IV.    **CONCLUSION**

For the foregoing reasons, Plaintiffs respectfully request that (1) this action be certified as a class action under Fed. R. Civ. P. 23(a) and (b)(3) on behalf of the Class defined herein, (2) that Lead Plaintiffs be certified as the representatives of the Class, and (3) that Milberg Weiss be

---

[5] As for Rule 23(b)(3)(C), Organogenesis' principal place of business was located in this District, and the Company transacted substantial business here. Much of the conduct complained of occurred in this District, much of the evidence and many of the witnesses relevant to Plaintiffs' claims are located here. This forum, therefore, is the most desirable in which to prosecute this action. With respect to subparagraph (D), there is no reason to believe that Plaintiffs' attorneys, who have substantial experience in class action litigation in this and other districts, will encounter significant or unusual difficulties in the management of this litigation.

appointed Lead Counsel for the Class and Moulton & Gans be appointed Liaison Counsel for the

Class.

DATED:  May 15, 2006

> **MOULTON & GANS, P.C.**
>
> By:      /s/ Nancy Freeman Gans
>          Nancy Freeman Gans, BBO #184540
>          55 Cleveland Road
>          Wellesley, MA 02481
>          Telephone:  (781) 235-2246
>          Facsimile:  (781) 239-0353
>
> ***Liaison Counsel for Plaintiffs and the Class***
>
> **MILBERG WEISS BERSHAD
>   & SCHULMAN LLP**
> Elaine S. Kusel (Admitted *Pro Hac Vice*)
> Peter Sloane (Admitted *Pro Hac Vice*)
> One Pennsylvania Plaza
> New York, NY  10119
> (212) 594-5300
>
> ***Lead Counsel for Plaintiffs and the Class***

## **CERTIFICATE OF SERVICE**

I certify that on the 15th day of May, 2006 I caused a copy of Plaintiffs' Memorandum of Law in Support of Motion for Class Certification to be served via Email PDF and First Class Mail upon:

Jonathan A. Shapiro, Esq.
WILMER CUTLER PICKERING HALE AND DORR, LLP
60 State Street
Boston, MA  02109
Jonathan.Shapiro@wilmerhale.com

***Counsel for Defendants Albert Erani, Donna Abelli Lopolito, Philip Laughlin, Michael Sabolinski, Bernard A. Marden and Alan W. Tuck***

Peter M. Saparoff, Esq.
Breton T. Leone-Quick, Esq.
MINTZ LEVIN, COHN, FERRIS, GLOVSKY & POPEO, PC
One Financial Center
Boston, MA  02111
psaparoff@mintz.com
BLeone-Quick@mintz.com

***Counsel for Defendant Herbert M. Stein***

Sara Jane Shanahan
GRIESINGER, TIGHE & MAFFIE, LLP
176 Federal Street
Boston, MA 02110
sshanahan@gtmllp.com

***Counsel for Defendant John J. Arcari***

*/s/ Nancy Freeman Gans*_____
 Nancy Freeman Gans