UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE ORGANOGENESIS SECURITIES LITIGATION | Civ. No. 04-10027-JLT |

**MEMORANDUM IN SUPPORT OF DEFENDANTS'
MOTION TO STRIKE LEAD PLAINTIFFS' SWORN CERTIFICATIONS
AND PRECLUDE RELIANCE ON THEIR STOCK TRANSACTIONS**

Albert Erani, Donna Abelli Lopolito, Philip
Laughlin, Michael Sabolinski and Alan Tuck

Jeffrey B. Rudman (BBO #433380)
Jonathan A. Shapiro (BBO #567838)
Peter J. Kolovos (BBO #632984)
Sherry Hartel Haus (BBO# 663777)
Kimberly I. Friday (BBO # 660544)
Wilmer Cutler Pickering Hale and Dorr LLP
60 State Street
Boston, MA 02109
(617) 526-6000

July 10, 2006

Defendants Albert Erani, Philip Laughlin, Donna Abelli Lopolito, Michael Sabolinski and Alan Tuck ("Defendants") respectfully submit this Memorandum in support of their Motion to Strike Lead Plaintiffs' Sworn Certifications and to Preclude Reliance on Their Stock Transactions.

## INTRODUCTION

Lead Plaintiffs' standing to maintain this purported class action lawsuit is based upon the sworn Certifications and other papers that they filed in 2004 attesting to their alleged losses from transactions in the stock of Organogenesis, Inc. ("Organogenesis"). Indeed, the Court relied upon these Certifications and the trading data disclosed therein (and assumed all of that information to be true) when it granted Lead Plaintiffs' motion to appoint them and their counsel as Lead Plaintiff and Lead Counsel, and when the Court later sustained the Consolidated Amended Complaint for which Lead Plaintiffs seek redress for those alleged losses. As recently as the Motion for Class Certification filed on May 15, 2006, Lead Plaintiffs again asked the Court to rule in their favor based upon their alleged losses in Organogenesis stock and their fitness to serve as fiduciaries for the class.

On June 28, 2006 – two days before the deadline set by this Court for the parties to produce all relevant documents – Lead Counsel revealed that issues exist with respect to *three of the four Lead Plaintiffs*. In an oblique letter to the Court on June 29, 2006, Lead Counsel disclosed that: *(i)* one Lead Plaintiff would like to withdraw; and *(ii)* there "may" be "errors" in the Certifications filed by two of the remaining Lead Plaintiffs. Lead Counsel have not yet described the extent of the "errors" in the two affidavits upon which the Court appointed Lead Plaintiffs – although it appears from the incomplete trading records available to Defendants that together those Lead Plaintiffs only disclosed 13 transactions and apparently failed to disclose at

least 84 others and potentially more than 100. Remarkably, Lead Counsel also stated that they *still have not collected trading records sufficient to "ensure" a "complete and accurate" disclosure* of the two Lead Plaintiffs' trading histories – *even though they filed sworn Certifications on this very subject over two years ago* as the evidentiary basis for their Motion to assume responsibility for litigating this case.

Lead Plaintiffs' conduct with respect to their Certifications and inexplicable failure to collect (let alone produce) their complete trading records prior to the deadline imposed by the Court, as set forth below, calls for a remedy. The two Certifications should be stricken because even the counsel who filed them lacks confidence in their veracity. Defendants also respectfully submit that the Court should enter an order precluding these two Lead Plaintiffs from submitting any evidence of their stock transactions in support of their claims. Given that Lead Plaintiffs still lack the records necessary for a "complete and accurate" disclosure of their trading history – more than two years after filing Certifications to the Court in which they attested to their trading history – an order precluding Lead Plaintiffs from relying on those transactions would be an appropriate remedy.

## ARGUMENT

### I. LEAD PLAINTIFFS' WITHDRAWAL AND ERRONEOUS CERTIFICATIONS

#### A. Lead Plaintiffs Represented Compliance With the PSLRA For Over Two Years

In March 2004, the four Lead Plaintiffs and Lead Counsel filed a Motion for appointment to those positions in which, *inter alia*, they represented that the amount of their losses and their compliance with the Private Securities Litigation Reform Act ("PSLRA") created a rebuttable

presumption that they be granted responsibility for the case.[1] *See* 15 U.S.C. § 78u-4 (2006). That Motion was supported by (*i*) "Certifications" in which each Lead Plaintiff attested to his transactions in Organogenesis securities and other matters required by the PSLRA, *id.* § 78u-4(a)(2)(A); and (*ii*) an affidavit and spreadsheet from Plaintiffs' Counsel that Lead Plaintiffs collectively sustained losses of approximately $465,448.47. Counsel's Declaration and Lead Plaintiffs' Certifications are attached hereto as <u>Exhibit A</u>. As a result of those filings, the Court did in fact appoint them Lead Plaintiffs and Counsel on July 20, 2004.[2]

On May 15, 2006, Lead Plaintiffs filed a Motion for Class Certification, arguing "there can be no doubt" as to their fitness to prosecute this case on behalf of the class given, *inter alia*, their prior appointment and service as Lead Plaintiffs and the same "significant losses" that were previously disclosed in their Certifications.[3] Defendants' Opposition to that Class Certification is due to be filed on August 14, and Lead Plaintiff depositions have been noticed for the last week of July.

## B.     <u>Plaintiffs Disclose Problems With Lead Plaintiffs on June 28, 2006</u>

Lead Counsel for the first time revealed that issues exist with respect to three (3) of the four (4) Lead Plaintiffs during an evening telephone call with defense counsel on June 28, 2006, which Lead Counsel disclosed in a letter to the Court on the following day ("June 29 Letter").[4] In that Letter, Lead Counsel advised the Court that one of the Lead Plaintiffs (Richard Conen) would seek to withdraw from that role and also to withdraw from the Motion for Class

---

[1]     *See* Motion of the Hofmann Group for Consolidation, Appointment as Lead Plaintiff, and Approval of Lead Plaintiff's Selection of Lead Counsel and Liaison Counsel *and* Memorandum of Law in support thereof, filed March 22, 2004 (Dkt. Nos. 15, 16), *supported by* Declaration of Nancy Freeman Gans In Support Of The Motion Of The Hofmann Group For Consolidation, Appointment As Lead Plaintiff And For Approval Of Its Selection Of Lead Counsel, and Exhibits C and D thereto (Notice of Filing at Dkt. No. 17).

[2]     Lead Plaintiffs have relied on their Certifications in still other documents filed with this Court, including both their Consolidated Amended Class Action Complaint (filed in October 2004) and the Corrected Consolidated Amended Class Action Complaint (filed in December 2004), which the Court sustained. *See* Dkt. Nos. 56, 58.

[3]     *See* Plaintiffs' Motion for Class Certification (Dkt. No. 119), and Plaintiffs' Memorandum of Law in Support of Class Certification (Dkt. No. 120) at 2, filed May 15, 2006.

[4]     *See* Letter from Sloane to Lovett, filed 6/29/06 (the "June 29 Letter"), Dkt. No. 128, attached hereto as <u>Exhibit B</u>; Affidavit of Jonathan A. Shapiro ("Shapiro Aff."), attached hereto as <u>Exhibit C</u>, at ¶¶ 6-7.

Certification he filed on May 15, 2006. Ex. B. According to Lead Counsel, Dr. Conen's withdrawal was based on their consideration of his trading in light of a Supreme Court case that was decided more than a year ago, *Dura Pharm., Inc. v. Broudo*, 544 U.S. 336 (2005).[5] Ex. B.

The June 29 Letter also stated that Lead Counsel "recently discovered that there may exist certain inadvertent errors" in the sworn Certifications signed by two of the three remaining Lead Plaintiffs (John H. Bowie, Jr. and Richard J. Madigan, Sr.). Ex. B. To date, Lead Counsel have not described the nature or extent of the "errors." *Indeed, although those Certifications were filed more than two years ago, Lead Counsel has acknowledged that, at least as of June 29, they still did not have the brokerage records they deem necessary to "ensure" that the disclosure of Lead Plaintiffs' transactions is "complete and accurate."* See Ex. B.

Lead Plaintiffs have not withdrawn the Certifications or their pending Motion for Class Certification since they called into question the veracity of the trading data twelve days ago. From what Defendants are able to discern from the incomplete trading records that Lead Counsel produced to date, however, it appears that "errors" *do* (not "may") exist in both Certifications, and are substantial:

    1.    <u>The John H. Bowie, Jr. Certification</u>

On March 16, 2004, Mr. Bowie signed a Certification that "[s]ince November 15, 1999" his "transactions in Organogenesis" stock consisted of four (4) purchases of stock and that he would provide his trading records "upon request." See Ex. A. According to the spreadsheet attached to his counsel's affidavit, Mr. Bowie sustained an estimated loss of $23,315.00 from those trades. *See id.*

---

[5] Defendants have not opposed Dr. Conen's withdrawal, although it was untimely. There was no solid basis for him to have sought appointment as Lead Plaintiff in the first instance (a question that Defendants generally do not weigh in on) – and certainly not to have sought the additional role as class representative in the Motion he filed six weeks ago – because if his certification of his trading is accurate, his own individual damages claim appears untenable under case authority that governed even before *Dura* was decided in April 2005.

-4-

On June 30, 2006 – one day after Lead Counsel notified the Court that there "may" be errors in the Bowie Certification—Lead Counsel sent Defendants an assortment of heavily-redacted trading records that suggest a very substantial problem with the Certification. Ex. C (Shapiro Aff.), ¶¶ 9, 10, & fn.1.  It appears that Mr. Bowie may not have disclosed *between 50-75 Organogenesis transactions* "since November 15, 1999," *i.e.*, the period covered by his Certification. *Id.* at ¶ 10(a). It also appears from the brokerage reports that Mr. Bowie *sold* far more Organogenesis stock than he bought during the Class Period, and the undisclosed transactions resulted in gains of more than $75,568.00, which would be difficult to square with the approximately $23,000 loss he claims to have sustained from the four (4) purchases he did disclose. *Id.* at ¶ 10(b) and fn. 3.

        2.    <u>The Richard J. Madigan, Sr. Certification</u>

On March 22, 2004, Mr. Madigan signed a Certification that "since November 15, 1999" his "transactions in Organogenesis" stock consisted of nine (9) purchases of stock and that he would provide his trading records "upon request." *See* <u>Ex. A</u>. According to the spreadsheet attached to his counsel's affidavit, Mr. Bowie sustained a loss of $60,715.17 from those trades. *See* <u>Ex. A</u>.

Just like Mr. Bowie, it appears from Lead Plaintiffs' June 30, 2006 production that Mr. Madigan may have omitted far more Organogenesis transactions "since November 15, 1999" – at least 34 – than the nine (9) he disclosed in his Certification. <u>Ex. C</u> (Shapiro Aff.), ¶ 10(c) and fn. 4.

**C.**    <u>**The Lead Plaintiff Issues Are Substantial**</u>

These Lead Plaintiff irregularities present issues that go well beyond the obvious questions about the adequacy of Lead Plaintiffs and their Counsel. Lead Plaintiffs' standing to

have brought this class action in the first instance – and to have maintained it during the two-plus years that since have elapsed – is predicated on their compliance with the Certification and other requirements imposed by the PSLRA. 15 U.S.C. § 78u-4 (2006). These are not technical or trivial requirements. Failure of a named plaintiff to file a certification (implicitly, a correct one) with the complaint and to serve notice to class members in accordance with the PSLRA are "fatal to maintenance of the putative class action." *See Greebel v. FTP Software, Inc.*, 939 F. Supp. 57, 60 (D. Mass. 1996); 15 U.S.C. § 78u-4(a).

The PSLRA cannot curb "abuses of the class action device" if Lead Plaintiffs and Counsel obtain Court approval to prosecute a class action based on sworn affidavits and other pleadings that lack integrity. *Id.*, 939 F. Supp. at 58-59. The Lead Plaintiff/Lead Counsel process is not adversarial – defendants do not have a right to take discovery regarding whether would-be Lead Plaintiffs have standing under the PSLRA to sue. Thus, the Court assumes (and should be able to assume with confidence) that the Certifications filed by prospective Lead Plaintiffs are honest, and prepared with the care expected of all sworn testimony and demanded by Rule 11. 15 U.S.C. § 78u-4(a)(2).[6]

It now appears that this case has been maintained for two years by three (of four) Lead Plaintiffs who were appointed based on sworn Certifications that, at best, did not accurately convey the information required by the PSLRA to scrutinize their standing to sue. Dr. Conen's belated withdrawal suggests he was one of the "nominally interested" or placeholder plaintiffs the PSLRA sought to filter out, especially given that his Certification that he was only an

---

[6] *See also In re Sonus Networks, Inc. Sec. Litig.*, 229 F.R.D. 339, 343 (D. Mass. 2005) (Court noted the "anomaly of a plaintiff in a case alleging false and misleading statements relying upon such statements himself in an effort to be appointed a class representative and expressed the hope that it would not again 'see anything else like that in this or other cases'").

Organogenesis investor for *one week*, very early in the 26-month putative Class Period. *See* Ex. A; *see generally Greebel*, 939 F. Supp. at 58-59.[7]

Messrs. Bowie and Madigan became Lead Plaintiffs in 2004 based on Certifications of losses from a total of thirteen (13) transactions, but did not disclose any issue whatsoever about those Certifications until two days before the Court's Order required production of trading records that suggest otherwise – *i.e.*, that they apparently omitted at least eighty-four (84) more. Twelve more days have passed since their disclosure of "errors" in the Certifications and Lead Plaintiffs still have neither withdrawn nor taken any other action with respect to their admittedly suspect Certifications, apparently because according to the June 29 Letter Lead Counsel are still collecting the trading records that they should have collected and reviewed before filing suit two years ago.[8]

The suggestion in Lead Counsel's June 29 Letter that the as of yet undescribed errors were "inadvertent" and can be cured by amendment ("if necessary"), *see* Ex. B, is a strikingly casual response given that *two* Certifications are now in question and they were obligated to make sure those Certifications were accurate *before* they filed them. This is not the first time this Court has needed to address the filing of erroneous Lead Plaintiff Certifications. Last year, Milberg Weiss withdrew as Lead Counsel in *In re Sonus Networks, Inc. Sec. Litig.* after it became evident that a Lead Plaintiff Certification signed more than two years earlier was not as represented (including because, as here, an "erroneous schedule" omitted certain transactions)

---

[7] Dr. Conen's acknowledgment that his *individual* claim is vulnerable (on loss causation grounds) is both inconsistent with the Motion for Class Certification he filed just two months ago, and his request for appointment as Lead Plaintiff based on, *inter alia*, the representation that he satisfies the requirements of Rule 23. 15 U.S.C. §78u-4(a)(3)(B)(iii)(I)

[8] Another defendant has served subpoenas on the Lead Plaintiffs' brokers, seeking to obtain directly from those third parties the complete trading records that Lead Plaintiffs have not produced. While Defendants hope that the records produced pursuant to these subpoenas will provide more accurate information about Lead Plaintiffs' trading in Organogenesis than either Lead Plaintiffs or Lead Counsel have been able to provide to date, these efforts have been hampered by Lead Plaintiffs' redaction of account numbers, full account names, and other pertinent information that would facilitate these requests to third parties.

and it was uncertain that any attorney had even determined that the Certification was reliable before filing it with the Court. *See* 229 F.R.D. 339, 343 (D. Mass. 2005) (Court was "profoundly disturbed by the way that the Milberg firm had [Lead Plaintiff's] affidavit prepared"). *See also In re Sonus Networks Sec. Litig.*, No. 1:02-cv-11315-MLW, Transcript of June 26, 2006 Hearing, attached hereto as Ex. D, at 35 (noting that Lead Counsel filed inaccurate Certification and "aided and abetted perjury, probably"). The Court also stated that it did not want to "see anything else like that in this or other cases." *Sonus*, 229 F.R.D. at 343.[9]

## II.   LEAD PLAINTIFFS HAVE NOT COMPLIED WITH THE COURT'S ORDER

The Court set a June 30, 2006 deadline for the parties to comply with its standard Discovery Order calling for among other things, production of "*all documents*" relevant to the disputed facts. *See* Discovery Order, June 5, 2006, Dkt. no. 122. That deadline had already been extended once – the Court originally set a May 25 deadline at the April status conference. (Dkt. No. 115; Dkt. No. 116, at 7.) The Court has been clear the parties should "[j]ust get it all done. Don't come back with requests for extensions, okay, don't." *See* Tr. at 22-23, 24; Dkt. No. 115 ("No extensions of time will be permitted").

As noted, on the eve of the June 30 deadline, Lead Counsel revealed that they had not finished collecting brokerage records of Lead Plaintiffs' Organogenesis transactions and "expected" to produce them at some unspecified date "after June 30, 2006." *See* Ex. B. Plaintiffs' June 29 Letter was not accompanied by a motion to extend the June 30 deadline, perhaps because the Court repeatedly stated it would not entertain any. Now, ten more days have

---

[9] *See also In re Terayon Comm. Sys., Inc., Sec. Litig.*, 2004 WL 413277, at *9 (N.D. Cal. 2004) (The court was "greatly troubled by an apparent attempt [by Milberg Weiss] to mislead the court as to the scope and nature of lead plaintiffs' holdings in Terayon stock," where the certifications did not reveal put transactions or short sales in the stock and "counsel made no effort to update the certifications so they would accord to the requirements" of the PSLRA. Such failures "g[ave] rise to the presumption that these actions were taken intentionally to avoid closer court scrutiny of plaintiffs").

passed since the deadline, and Lead Plaintiffs' production of trading records still is not complete. *See* Ex. C. (Shapiro Aff.) at ¶ 11.

There is no question that the Order obligated Lead Plaintiffs to produce by June 30 the brokerage records that Lead Counsel acknowledged on June 29 had not yet been collected. Trading records are fundamental to *every* securities class action – and here the records that have not been produced have been described by Lead Counsel as necessary for an "complete and accurate" account of the transactions upon which Lead Plaintiffs sue. Nor is there any question that the documents held by Lead Plaintiffs' brokers are within Lead Plaintiffs' "possession, custody or control."[10]

Lead Plaintiffs' failure to comply with the Order is particularly difficult to understand because they and their Counsel should have assembled "complete and accurate" trading records and data years ago – *before* they filed a securities fraud lawsuit in 2004 (alleging that their losses conferred standing to sue under the Exchange Act) and *before* they sought to proceed as fiduciaries for a class by filing sworn Certifications attesting (apparently, incorrectly) to what supposedly were all of their transactions. *See* Ex. B. They certainly also should not have filed on May 15, 2006 a Motion for class certification without first confirming that the sworn statements they were making about their trading history were, in fact, correct. *See* Dkt. No. 120.

The trading records that have been produced raise additional questions about Lead Plaintiffs' compliance with the Court's Discovery Order. *See* Dkt. No. 122. Despite repeated requests, Plaintiffs have failed to provide tax returns illustrating the losses Plaintiffs allegedly

---

[10] *See* Order, June 5, 2006, Dkt. No. 122; *Alexander v. Federal Bureau of Investigation*, 194 F.R.D. 299, 301 (D.D.C. 2000) ("It is well-established that 'control', which is defined not as possession, but as the legal right to obtain documents on demand, is the test as to whether the production is required"); *Addamax Corp. v. Open Software Foundation, Inc.* 148 F.R.D. 462, 467-68 (D. Mass. 1993) ("control" means "legal right," "access to" and "ability to obtain the documents"). In this regard, one of the Lead Plaintiffs, John H. Bowie, Jr., is an NASD-registered broker formerly employed at A.G. Edwards, the broker-dealer in possession of trading records for both Mr. Bowie and Mr. Madigan. There is also some indication, from the documents provided by plaintiffs, that Mr. Bowie served as Mr. Madigan's financial advisor, but the plaintiffs have not affirmatively disclosed whether such is the case.

suffered as a result of their holdings of Organogenesis securities. Plaintiffs have also only provided heavily redacted trading records, including redactions not just of trading in securities other than Organogenesis, but redactions of account numbers, full names on accounts, addresses of account holders, and total gains and losses.[11]

### III.   DEFENDANTS ARE ENTITLED TO RELIEF

This Court has broad discretion, under the Rules of Civil Procedure and its own inherent authority, to ensure compliance with its orders and appropriate case management. The First Circuit "ha[s] made it plain that 'a litigant who ignores case-management deadlines does so at his peril.'" *Tower Ventures, Inc. v. City of Westfield*, 296 F.3d 43, 45-46 (1st Cir. 2002), *citing Rosario-Diaz v. Gonzalez*, 140 F.3d 312, 315 (1st Cir. 1998).

Under Rule 37(b)(2), the Court may craft a wide range of appropriate remedies for a party's failure to obey orders – such as its June 5, 2006 Discovery Order. *See* Fed. R. Civ. P. 37(b)(2); Advisory Committee Note to the 1980 Amendment of Rule 37, 85 F.R.D. 521, 532-533. *See also Smith v. Kmart Corp.*, 177 F.3d 19, 28 (1st Cir. 1999) ("[T]he choice of sanctions for failing to comply with a discovery order lies within the sound discretion of the court"). Rule 16(f) "incorporates by reference the compendium of remedies listed in Fed. R. Civ. P. 37," *Velez v. Awning Windows, Inc.*, 375 F.3d 35, 42 (1st Cir. 2004), and thus also allows the Court to limit the evidence that a party can submit in support of his claims. Fed. R. Civ. P. 37(b)(2)(B). The Court also may enter "[a]n order striking out the pleadings . . . dismissing an action or proceeding or any part thereof, or rendering a judgment by default against the disobedient party." Fed. R. Civ. P. 37(b)(2)(C); *Diaz-Fonseca v. Puerto Rico*, 2006 WL 1652490, at *6-*7, --- F.3d --- (1st Cir., June 16, 2006) (affirming district court's entry of default against a party under Fed.

---

[11]   Plaintiffs' Counsel stated during a telephone conference on Friday, July 7, that he would consider providing the account numbers for plaintiffs' brokerage accounts.

R. Civ. P. 37(b)(2)(C) for failure to comply with court's discovery orders); *Serra-Lugo v. Mayaguez Consortium-Las Marias*, 271 F.3d 5, 6 (1st Cir. 2001) (similar).[12]

Defendants submit that the remedy for Lead Plaintiffs' conduct here should be an Order striking the Certifications in question – which Lead Counsel have admitted are and/or "may" be erroneous, but have not yet withdrawn. Even beyond the apparent magnitude of the errors in the Certifications, there is no excuse for Lead Plaintiffs and their Counsel to have delayed their collection of the basic trading records that even they acknowledge are necessary to make a "complete and accurate" disclosure to this Court – because they should have ensured the veracity of those Certifications before filing them years ago.

Defendants also submit that the Court should enter an Order precluding Messrs. Bowie and Madigan from introducing evidence of their stock transactions in support of their claims. Given Lead Plaintiffs' recent concession that they still lack – and thus have not produced by the June 30 deadline – records for Messrs. Bowie and Madigan necessary to make a "complete and accurate" representation of their trading history, a remedy crafted to preclude reliance on this trading history is appropriate. *See Velez*, 375 F.3d at 42, 45 (court may prohibit litigant "from introducing designated matters in evidence" for noncompliance with scheduling order); Fed. R. Civ. P. 37(b)(2)(B) (remedy for discovery violation can include "refusing to allow the disobedient party to support or oppose designated claims or defenses").

---

[12]   *See also Sonus*, 229 F.R.D. at 347, *citing* Fed. R. Civ. P. 23(d)(3) ("The court has the authority to issue orders to assure the orderly processing of litigation and to control its calendar.")

## CONCLUSION

For all of these reasons, Defendants request that the Court enter an Order striking the sworn Certifications of Lead Plaintiffs Bowie and Madigan, and precluding Messrs. Bowie and Madigan from introducing any evidence of their stock transactions in support of their claims in this matter.

Respectfully,

WILMER CUTLER PICKERING HALE AND DORR LLP

By: /s/ Jonathan A. Shapiro
Jeffrey B. Rudman (BBO #433380)
Jonathan A. Shapiro (BBO #567838)
Peter J. Kolovos (BBO #632984)
Sherry Hartel Haus (BBO# 663777)
Kimberly I. Friday (BBO # 660544)
60 State Street
Boston, MA 02109
(617) 526-6000

*Counsel for Defendants Albert Erani, Donna Abelli Lopolito, Philip Laughlin, Michael Sabolinski, and Alan Tuck*

Dated: July 10, 2006