# EXHIBIT C

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| IN RE: ORGANOGENESIS SECURITIES LITIGATION | C.A. No. 04-CV-10027 (JLT) |
|---|---|

**AFFIDAVIT OF JONATHAN A. SHAPIRO
IN SUPPORT OF DEFENDANTS' MOTION TO STRIKE LEAD PLAINTIFFS'
SWORN CERTIFICATIONS AND PRECLUDE RELIANCE ON THEIR STOCK
TRANSACTIONS**

I, Jonathan A. Shapiro, depose and state as follows:

1. I am a senior partner at Wilmer Cutler Pickering Hale and Dorr LLP and represent five of the seven remaining defendants in this case. Those defendants are Albert Erani, Philip Laughlin, Donna Abelli Lopolito, Michael Sabolinski and Alan Tuck.

2. I submit this affidavit in support of my clients' Motion to Strike Lead Plaintiffs' Sworn Certifications and Preclude Reliance on Their Stock Transactions.

<u>Lead Plaintiffs' Certifications and Motion for Class Certification</u>

3. On March 22, 2004, a motion was filed by Bruno Hofmann, Richard J. Madigan, Sr., John H. Bowie, Jr. and Richard Conen to be appointed Lead Plaintiffs, and to appoint Milberg Weiss Bershad Hynes & Lerach LLP as Lead Counsel and Moulton & Gans, P.C. as Liaison Counsel. That Motion was supported by trading certifications sworn by each of the proposed Lead Plaintiffs ("Certifications") and also an affidavit from Liaison Counsel, which attached a spreadsheet stating that proposed Lead Plaintiffs collectively sustained estimated losses of $465,448.47. The Court granted the Motion on July 20, 2004.

4. On May 15, 2006, Lead Plaintiffs and Lead Counsel filed a Motion for Class Certification, in which they also sought to be appointed class representatives and class counsel. In support of that Motion, Lead Plaintiffs state that their transactions and alleged losses in

Organogenesis securities (*i.e.*, those disclosed in their Certifications in 2004) are typical of those of members of the putative class and render them capable of fairly and adequately representing the putative class. Defendants' Opposition to this Motion is due on August 14, 2006. Defendants have been preparing their Opposition, including by reviewing an apparently incomplete set of documents that have been produced by Lead Counsel, and have noticed Lead Plaintiffs' depositions for dates next week and the week after.

### June 30 Discovery Deadline

5. The Court set a June 30, 2006 deadline for the parties to comply with its standard Discovery Order, which, among other things, requires the parties to produce "all documents" relevant to the disputed facts. On June 6, 2006, I sent a letter to Lead Counsel stating Defendants' position that all documents concerning the Lead Plaintiffs' transactions in Organogenesis securities (and the alleged losses for which they seek redress) are subject to the Court's Order. I also sought confirmation that a full set of trading records for each Lead Plaintiff would be produced by the June 30, 2006 deadline, given the rapidly-approaching deadline for Defendants to file their Opposition to class certification.

### Disclosure of Lead Plaintiff Issues

6. During the afternoon of June 28, 2006, I received an email from plaintiffs' counsel asking to schedule a telephone conference as soon as possible. At approximately 6:30 p.m., a colleague and I spoke with Peter Sloane (from Lead Counsel, Milberg Weiss) and Nancy Gans (from Liaison Counsel, Moulton & Gans).

7. During that conversation, Lead Counsel for the first time informed Defendants that one of the four Lead Plaintiffs wished to withdraw from that role (Richard Conen), and that errors, or potential errors, had been discovered in the Certifications sworn by two of the

remaining three Lead Plaintiffs (Richard J. Madigan, Sr. and John H. Bowie, Jr.). The following day, June 29, Lead Counsel provided similar information to the Court in a letter to Zita Lovett, Deputy Clerk. (Dkt. No. 128).

8.      During this conversation and also as stated in the June 29 letter to the Court, Lead Counsel also disclosed for the first time that, although they had collected trading records from Lead Plaintiffs, they were still in the process of collecting trading records from the brokers who executed the trades on behalf of Lead Plaintiffs. Lead Counsel said they would produce those additional documents on some not-specified date after the Court's June 30, 2006 production deadline.

## Lead Plaintiffs' Trading Records

9.      As noted, Lead Counsel has disclosed that errors "may" exist in Lead Plaintiffs' Certifications but to date have not disclosed the nature or extent of those errors. Having not received corrected trading data from Lead Counsel, it has been difficult (perhaps impossible) for Defendants to discern from the documents that have been produced the full extent of Lead Plaintiffs' actual transactions, and therefore, the magnitude of the errors in the Certifications that were filed in 2004. The trading records that Lead Plaintiffs produced on June 30 are heavily redacted and appear to be incomplete in a variety of ways,[1] and, of course there is no way for Defendants to know if still other transactions will be revealed in whatever additional brokerage records that Lead Counsel has stated will be produced in the future.

---

[1]     For example, all of the trading records produced by plaintiffs redacted the brokerage account numbers, and in some instances, the complete names of the brokerage accounts in which the trades took place; Mr. Madigan produced trading tickets for his purchases of Organogenesis securities but not the trading tickets from any of his sales of Organogenesis securities (and Mr. Bowie provided no trading tickets at all); Mr. Madigan only provided account statements for the periods during the Class Period in which he engaged in purchases, but did not provide statements for the months in which he engaged in sales; and none of the Lead Plaintiffs produced tax records reflecting the losses they have allegedly sustained.

10.     The trading records that have been produced do, however, indicate that the Certifications of Messrs. Bowie and Madigan may be substantially false.  At Lead Counsel's request, Defendants have not appended those records to their Motion,[2] but based on my review of the trading records produced to date, and the review of others under my direction:

*Mr. John H. Bowie, Jr.*

(a) Mr. Bowie's sworn Certification states that he engaged in four purchases of Organogenesis stock "since November 15, 1999." However, from the trading records that were produced on June 30, it appears that "since November 15, 1999" Mr. Bowie also engaged in between 50 to 75 additional transactions that were not disclosed on his Certification.[3]

(b) The spreadsheet attached to Liaison Counsel's May 22, 2004 affidavit states that the four purchases that Mr. Bowie did disclose resulted losses of $12,164.20 and $11,150.80 (a total loss of $23,315.00).  By contrast, it appears from the records that Mr. Bowie has produced that the Class Period sales not disclosed on his Certification resulted in gains of more than $75,568.00.

*Mr. Richard J. Madigan, Sr.*

(c) Mr. Madigan's sworn Certification states that he engaged in nine purchases of Organogenesis stock "since November 15, 1999." However, from the trading records that were

---

[2] In the cover letter that accompanied their June 30, 2006 production, Lead Counsel requested treatment of these documents as "Attorneys' Eyes Only."

[3] It appears from the trading records that the transactions "since November 15, 1999" that Mr. Bowie did not disclose in his Certification took place on the following dates: February 17, 2000, March 7, 2000, August 4, 2000, August 14, 2000, September 15, 2000, September 20, 2000, September 21, 2000, September 22, 2000, September 28, 2000, October 26, 2000, March 12, 2002, March 19, 2002, April 5, 2002, May 3, 2002, May 29, 2002, May 30, 2002, May 31, 2002, June 3, 2002, June 4, 2002, June 5, 2002, June 7, 2002, June 11, 2002, June 12, 2002, June 13, 2002, June 18, 2002, June 27, 2002, June 28, 2002, July 1, 2002, July 2, 2002, July 3, 2002, July 5, 2002, July 8, 2002, July 9, 2002, July 11, 2002, July 12, 2002, August 15, 2002, April 23, 2003, June 18, 2003, June 24, 2003, June 25, 2003, and August 22, 2003.

produced on June 30, it appears that "since November 15, 1999" Mr. Madigan also engaged in at least 34 additional transactions that were <u>not</u> disclosed on his Certification.[4]

11.    In the June 29 Letter to the Court, Lead Counsel stated an intention to produce to Defendants the additional trading records they expect to receive. To date none have been produced, nor have Lead Counsel given any indication as to when they will have concluded their collection and production of whatever further trading records exist.

Signed this 10th day of July 2006.

_____
Jonathan A. Shapiro

---

[4]    It appears from the trading records that the transactions "since November 15, 1999" that Mr. Madigan did not disclose in his Certification took place on the following dates: December 2, 1999, December 3, 1999, December 23, 1999, December 29, 1999, February 18, 2000, March 6, 2000, March 7, 2000, April 5, 2000, April 6, 2000, July 21, 2000, August 3, 2000, August 4, 2000, August 11, 2000, September 13, 2000, September 15, 2000, September 20, 2000, September 29, 2000, October 2, 2000, October 17, 2000, February 27, 2001, March 15, 2001, March 20, 2001, March 28, 2001, March 29, 2001, August 10, 2001, August 14, 2001, August 22, 2001, March 7, 2002, March 8, 2002, March 18, 2002, May 14, 2002 and May 15, 2002.