## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE ORGANOGENESIS SECURITIES LITIGATION | :<br>:<br>: Case No.:  1:04cv10027-JLT<br>:<br>: |

## PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO STRIKE LEAD PLAINTIFFS' SWORN CERTIFICATIONS AND PRECLUDE RELIANCE ON THEIR STOCK TRANSACTIONS

Plaintiffs, through their attorneys, respectfully submit this memorandum in opposition to Defendant's Motion to Strike Lead Plaintiffs' Sworn Certifications and Preclude Reliance on Their Stock Transactions (the "Motion").

## I.     INTRODUCTION

As previously disclosed by Lead Plaintiffs' counsel, the lead plaintiff certifications submitted by two of the four lead plaintiffs — John H. Bowie, Jr. and Richard J. Madigan, Jr. — (the "Certifications") contain inadvertent errors regarding their transactions in Organogenesis stock.   As set forth in the Declarations of Messrs. Madigan and Bowie filed concurrently herewith, the errors in their Certifications were simply honest mistakes.  There is no indication — and Defendants have presented no evidence — that the errors involved any intentional misstatement or attempt to mislead the Court.  Messrs. Madigan and Bowie fully understand the importance of providing the Court with complete and accurate information; they take their inadvertent errors very seriously, and they deeply regret them.[1]  After becoming aware of the possibility of these errors in the course of complying with the Court's Discovery Order, dated

---

[1] *See* Declaration of John H. Bowie, Jr. Concerning Lead Plaintiff Certification, dated July 26, 2006 ("Bowie Decl.") and Declaration of Richard J. Madigan Concerning Lead Plaintiff Certification, dated July 26, 2006 ("Madigan Decl."), attached hereto.

June 5, 2006, Plaintiffs' counsel promptly took the initiative to come forward and inform Defendants' counsel and the Court of that possibility.[2]  Plaintiffs' counsel has continued to seek relevant trading data, including data in the possession of non-parties — Messrs. Madigan's and Bowie's stock brokers — in order to determine the extent of the errors and correct them.[3]

Although Messrs. Madigan and Bowie and their counsel acknowledge and take seriously the fact that two of the certifications filed with the Court contain certain errors, we respectfully submit that Defendants' proposed remedy is unwarranted and misplaced.  Defendants have suffered no prejudice or undue burden due to the Certification errors.  Rather, Defendants have unnecessarily burdened themselves, the Court and the Class with a premature motion to strike that raises issues properly addressed on a full record in the course of briefing and depositions on Plaintiffs' class certification motion.[4]  This is not the first time in a securities class action that lead plaintiffs have made mistakes in filling out a lead plaintiff certification form; nor is it likely,

---

[2] *See* Plaintiffs' Counsel's Letter to the Court, dated June 29, 2006 (Dkt. No. 128) ("June 29, 2006 Letter") (attached as Exhibit A to the Declaration Of Peter Sloane In Support Of Plaintiffs' Opposition To Defendants' Motion to Strike Lead Plaintiffs' Sworn Certifications and Preclude Reliance on Their Stock Transactions, dated July 31, 2006 ("Sloane Decl.")) and Plaintiffs' Unopposed Motion for Extension of Briefing Schedule, dated July 21, 2006 ("Motion for Extension") (Dkt. No. 137).

[3] Mr. Bowie has decided to withdraw as a lead plaintiff and proposed class representative. Plaintiffs' counsel will be filing a motion to withdraw Mr. Bowie shortly.  Mr. Bowie is nonetheless committed to cooperating with Plaintiffs' counsel for the purpose of compiling complete transactional data and submitting a corrected certification.  Based on conversations between Plaintiffs' counsel and Defendants' counsel in which they indicated that they would be inclined to withdraw the Motion as moot in the event Messrs. Bowie and Madigan moved to withdraw as proposed class representatives, Plaintiffs presume that Defendants will withdraw their Motion as to Mr. Bowie upon filing of Mr. Bowie's motion to withdraw as lead plaintiff and proposed class representative.

[4] Defendants did so, moreover, in violation of Local Rule 7.1.  Specifically, while Defendants and Plaintiffs were discussing the issues raised by the certifications, Defendants did not then nor subsequently inform Plaintiffs they were planning to file a motion or that the relief they would seek would be to strike the certifications and preclude introduction of evidence regarding Messrs. Bowie and Madigan's stock transactions.

given that people are human and are prone to make mistakes, that it will be the last.  In several cases, courts have very reasonably held that errors in lead plaintiff certifications do not disqualify lead plaintiffs as adequate class representatives, and Defendants have not cited any cases (nor are we aware of any) in which a court has taken the extreme measure of striking lead plaintiff certifications and precluding the introduction of evidence of all of a lead plaintiff's stock transactions (including those that were correctly listed on the certifications), as Defendants seek here.  *See generally Greebel v. FTP Software, Inc.*, 939 F. Supp. 57, 62 (D. Mass. 1996) (Tauro, J.) (this Court's view of the PSLRA's certification requirements).

Messrs. Bowie and Madigan should be given an opportunity to complete their attempts to obtain from their brokers all relevant trading documentation and correct their Certifications.  To the extent any issue as to Mr. Madigan's adequacy to serve as a class representative remains, it should be litigated at the appropriate time — on the motion for class certification, not on a motion to strike filed on an incomplete record.[5]

Further, even assuming, *arguendo*, that Defendants' attack were not premature, the relief they seek is wholly inappropriate.  Plaintiffs' counsel themselves found the errors in the certification and promptly brought them to the attention of Defendants and the Court.  Further, Defendants have not been adversely affected by the errors and Plaintiffs' case against Defendants does not hinge on whether Messrs. Bowie and Madigan are suitable lead plaintiffs. There is no legitimate reason, or basis in law, for striking and precluding the introduction into evidence of those Organogenesis transactions that are indisputably correct.

In the event that the Court does grant Defendants' Motion, Plaintiffs respectfully request

---

[5] The premature nature of Defendants' motion is highlighted by the fact that one of Messrs. Bowie and Madigan's stock brokers — A.G. Edwards & Sons ("A.G. Edwards") — has not yet provided to Plaintiffs' counsel all the trading data that has been requested and that is necessary in order to confirm the extent of the errors in the Certifications.  *See* Motion for Extension at 2-3.

leave to substitute new proposed class representatives for Mr. Madigan in order to protect the rights of the Class.

## II.  LEAD PLAINTIFFS' INADVERTENT ERRORS DO NOT DISQUALIFY THEM AS LEAD PLAINTIFFS OR CLASS REPRESENTATIVES AND DO NOT PRECLUDE THE INTRODUCTION OF EVIDENCE OF THEIR STOCK TRANSACTIONS

### A.  Messrs. Bowie and Madigan's Certification Errors Were Inadvertent and Plaintiffs' Counsel Are Working To Correct The Errors and To Inform the Court and The Defendants

Defendants, in a self-serving and transparent attempt to derail this litigation, have seized upon inadvertent errors in Messrs. Bowie and Madigan's certifications and assert that "failure of a named plaintiff to file a certification (implicitly, a correct one) with the complaint and to serve notice to the class members in accordance with the PSLRA are 'fatal to maintenance of the putative class action.'" [6] Def. Motion at 6.  The errors in two of the four Lead Plaintiffs' certifications were, however, wholly inadvertent.  *See generally* Bowie Decl. and Madigan Decl., attached hereto.

In his Declaration, Mr. Bowie states that "the errors in the Certification . . . were the result of an honest mistake," that he "honestly misunderstood which trades in Organogenesis stock were required to be included on the Certification form," and that he "never intended to misstate [his] trades or mislead the Court."  Bowie Decl. at ¶ 1.  Likewise, Mr. Madigan stated that the errors in his Certification were inadvertent, that he takes "very seriously the fact that there were errors in [his] Certification and [his] responsibility to provide accurate information to

---

[6]  Defendants' contention that Plaintiffs' PSLRA notice is at issue here is plainly incorrect.  The named plaintiff who filed the original complaint in this action — Mr. Bruno Hofmann — filed a certification with the original complaint, and there has been no suggestion that his certification is incomplete or incorrect.  As such, the requirements for maintenance of a putative class action under the PSLRA were met before the Lead Plaintiffs — including Messrs. Madigan and Bowie — were even appointed.  *See Greebel*, 939 F. Supp. at 60.

the Court," and that "the errors in the Certification were just that -- errors."  Madigan Decl. at ¶¶ 1-2.

Further, when Plaintiffs' counsel discovered the possibility of errors, it promptly alerted the Court and Defendants to the fact that the Certifications might be incomplete or incorrect even before Messrs. Bowie and Madigan's stock broker had provided all the trading data Plaintiffs' counsel had requested.  *See* June 29, 2006 Letter (Dkt. No. 128), attached as Exhibit A to the Sloane Decl.  As Plaintiffs' counsel has received additional requested trading data — all of which has been produced to Defendants — Plaintiffs' counsel confirmed that errors did in fact exist and notified the Court of that fact and the status of its investigation into the issue.  *See* Motion for Extension (Dkt. No. 137).  Thus, Defendants' suggestion that there was any delay in bringing this issue to the Court's attention is completely unfounded and untrue.

**B.    Erroneous Certifications Do Not Preclude Service As Lead Plaintiff or Class Representative**

Courts have held that an erroneous lead plaintiff certification does not disqualify a plaintiff from serving as a lead plaintiff or class representative or warrant the imposition of any penalty on the plaintiff who files the certification, much less on the Class as a whole.  *See In re USEC Sec. Litig.*, 168 F. Supp. 2d 560, 568 (D. Md. 2001) (defects in lead plaintiffs' certifications "are not grounds for striking the class allegations."); *Liu v. Credit Suisse First Boston Corp.* (In re Initial Pub. Offering Sec. Litig.), 399 F. Supp. 2d 369, 373 (S.D.N.Y. 2005) (plaintiffs' certification error "did not prejudice defendants, did not affect plaintiffs' claims against [the company], and did not warrant an award of sanctions," since "plaintiffs' case against [the company] did not hinge on whether [the plaintiff] was a suitable lead plaintiff, because [the other lead plaintiff], who purchased [the company's] securities during the proposed class period, was also a putative class representative with respect to those claims."); *Pirelli Armstrong Tire*

*Corp. Retiree Med. Benefits Trust v. LaBranche & Co.*, 229 F.R.D. 395, 407 (S.D.N.Y. 2004) (holding that the "existence or adequacy of any certificates submitted [by lead plaintiffs] will not be considered a determinative factor [at the lead plaintiff appointment] stage," since it is "unsettled whether a candidate for lead plaintiff who has not filed a complaint is even required to submit such a certificate.").   *See also Greebel v. FTP Software, Inc.*, 939 F. Supp. at 62.

In *In re Honeywell International Inc., Sec. Litig.*, 211 F.R.D. 255 (D.N.J. 2002), the court identified errors in the certifications of the proposed class representatives.  Specifically, the court found that one movant failed to report the sale of a large amount of company stock, thereby overstating its losses by more than $300,000, *id.* at 263, and that a certification submitted by another plaintiff contained an error in the amount of $4000.  *Id.*  Despite these errors, the court certified the class, finding that errors in a certification filed on behalf of a plaintiff by Milberg Weiss Bershad & Schulman LLP "do not substantially call into question the firm's ability to represent the members of the proposed class."  *Id.*

In *Swack v. Credit Suisse First Boston*, 230 F.R.D. 250 (D. Mass. 2005), defendants challenged the proposed class representative's PSLRA certification and affidavit during the class certification stage, on the ground that Swack incorrectly stated that she had "bought" or "purchased shares" of company stock when in fact she had acquired the securities in exchange for shares of her company.  *Id.* at 266.  In addition, Swack had listed the transaction date as November 30, 1999, when the deal actually closed on December 1, 1999.  *Id.*  The Court was unpersuaded by Defendants' arguments given that, during her deposition, Swack stated that the transaction date error was due to her "apparently poor memory of the exact date," and provided a reasonable explanation for her stock sale decisions.  *Id.*  Moreover, the court found Swack to be a "credible witness," and the "issue of her credibility, therefore, pose[d] no real conflict of interest

with absent class members such that she could not meet the adequacy-of-representation requirement under 23(a)." *Id.* at 267.

Messrs. Bowie and Madigan, moreover, have a right to supplement their financial data and provide amended certifications. *See In re Royal Ahold N.V. Sec. & ERISA Litig.*, 219 F.R.D. 343, 349 (D. Md. 2003) (allowing lead plaintiff movant to modify its loss calculations). Plaintiffs' counsel have indicated that they are still attempting to collect all relevant trading data from Messrs. Madigan and Bowie's third party broker, and that they intend to submit corrected certifications if and when they receive the requested data and are able to definitively and correctly list all of Messrs. Bowie and Madigan's transactions. *See* June 29, 2006 Letter (Dkt. No. 128), attached as Exhibit A to the Sloane Decl.; Motion for Extension at 2-3 (Dkt. No. 137). Defendants' attempt to deprive these Lead Plaintiffs of their right to amend their certifications only highlights the fact that they are more interested in derailing this litigation than they are in ensuring the Court has sufficient transactional data and analysis to make an informed decision.

Based on the incomplete set of trading data assembled to date, it appears that, contrary to Defendants' speculation, Messrs. Madigan and Bowie did in fact sustain losses on their respective transactions in Organogenesis stock under the "first in, first out" ("FIFO") method of computing losses, which is an accepted method of calculating damages in securities fraud actions.[7]

---

[7] Courts have held that FIFO is appropriate to measure a plaintiff's losses in securities class actions because it only deems losses sustained on inflated *purchases* during the class period to be relevant — that is, only those shares impacted by the fraud. *See Vawter v. Comm'r*, 83 F.2d 11, 12-13 (10th Cir. 1936); *Transwestern Pipeline Co. v. FERC*, 59 F.3d 222, 229 (D.C. Cir. 1995); *In re Veeco Instruments, Inc.*, 233 F.R.D. 330, 333 (S.D.N.Y. 2005) ("FIFO is the appropriate methodology to apply in matching purchases and sales for the purpose of considering the financial stake of a movant for lead plaintiff status, just as it is the well-settled methodology for computing losses on securities for tax purposes."); *Plumbers & Pipefitters Local 572 Pension Fund v. Cisco Sys., Inc.*, No. C01-20418 JW, 2004 U.S. Dist. LEXIS 27008, at *11 (N.D. Cal. May 27, 2004) (applying FIFO to calculate movants' financial interest). The FIFO method has

Defendants improperly attempt to create suspicion regarding another Lead Plaintiff — Dr. Richard Conen — by suggesting that Dr. Conen's proposed withdrawal as a lead plaintiff and proposed class representative is somehow linked to the inadvertent errors in Messrs. Bowie and Madigan's Certifications. In fact, Dr. Conen's motion for withdrawal has no connection to the issue concerning Messrs. Bowie and Madigan's Certifications. Defendants — who have subpoenaed Dr. Conen's stock broker (as well as the brokers of all the other Lead Plaintiffs) — have not pointed to any errors in Dr. Conen's Certification, and as far as Plaintiffs' counsel are aware, there are none. *See* Plaintiffs' Unopposed Motion for Withdrawal of Dr. Richard S. Conen as Lead Plaintiff and Proposed Class Representative (Dkt. No. 131).

## III.    DEFENDANTS' ATTACKS ON THE LEAD PLAINTIFFS ARE PREMATURE

Defendants' Motion, essentially, is a challenge to the adequacy of the Lead Plaintiffs to serve as class representatives. By requesting that their Certifications be stricken and that they be precluded from relying on their Organogenesis transactions in this action, Defendants effectively seek to terminate their ability to prosecute this action on behalf of the proposed class. Issues relating to the adequacy or suitability of a proposed class representative, however, are properly decided only after the parties have had an opportunity to obtain all relevant discovery and to complete briefing on all of the issues relating to class certification and appointment of class representatives under Rule 23(a). Defendants have sought to impugn Messrs. Bowie and

---

been used by the Supreme Court, the Internal Revenue Service, the United States Tax Court, and every circuit court of appeal, as well as several district courts, to determine losses or gains from purchases or sales of stock. *See Helvering v. Campbell*, 313 U.S. 15, 20-21 (1941); 26 C.F.R. 1.1012-1(c)(1). *See also Hall v. Comm'r*, No. 15095-86, 1989 U.S. Tax Ct. LEXIS 66, at *2,*3,*11, *23,*24 (May 15, 1989); *Joseph Gann, Inc. v. Comm'r*, 701 F.2d 3, 4, 6-7 (1st Cir. 1983); *KlugerAssocs., Inc. v. Comm'r*, 617 F.2d 323, 324 (2d Cir. 1980); *Holmes v. Comm'r*, 134 F.2d 219, 221 (3d Cir. 1943); *Helvering v. Stifel*, 75 F.2d 583, 584 (4th Cir. 1935); *Woody v. Comm'r*, 197 F.2d 859, 863 (5th Cir. 1952); *Baker v. Comm'r*, 115 F.2d 987, 990 (6th Cir. 1940); *Comm'r v. Bolender*, 82 F.2d 591, 591 (7th Cir. 1936); *Keeler v. Comm'r*, 86 F.2d 265, 266-67 (8th Cir. 1936); *Bloch v. Comm'r*, 148 F.2d 452, 454 n.2 (9th Cir. 1945).

Madigan's adequacy before they or Plaintiffs have been able to obtain from the Lead Plaintiffs'

broker all relevant trading data, and thus before the parties even know with certainty the extent

of the errors in the Certifications; before any depositions have been taken; before Defendants

have filed a response to the Motion for Class Certification; and before Plaintiffs have filed their

reply brief on class certification.

Further, there is no urgency to the question of whether Messrs. Bowie and Madigan's

certifications should be stricken or their reliance on their Organogenesis transactions precluded.

Mr. Bowie intends to withdraw his motion for appointment as class representative. *See* Note 3,

*supra*. In the event the Court decides that Mr. Madigan would not be an adequate class

representative, the Court will have the opportunity to reject his appointment at the class

certification stage.

## IV.    IT IS DEFENDANTS, NOT PLAINTIFFS, WHO HAVE FAILED TO COMPLY WITH THE COURT'S DISCOVERY ORDER

Defendants accuse Plaintiffs of not complying with this Court's June 5, 2006 Discovery

Order, alleging that "Lead Plaintiffs' production of trading records is still not complete." (Def.

Motion at 9). This assertion is specious. Plaintiffs fully complied with the Discovery Order and

produced all documents in Lead Plaintiffs' possession by June 30, 2006, in accordance with the

Discovery Order. The only outstanding relevant documents are the complete set of trading

records that Plaintiffs have requested, and Defendants have subpoenaed, from non-party A.G.

Edwards — Messrs. Bowie and Madigan's broker. As we informed Defendants and the Court

(*see* June 29, 2006 Letter (Dkt. No. 128), attached as Exhibit A to the Sloane Decl., and the

Motion for Extension), despite diligent attempts to obtain these documents from A.G. Edwards,

Plaintiffs' counsel has still not received all of the requested data. Further, Defendants

themselves have subpoenaed trading records from A.G. Edwards directly, and thus are not

dependent on Plaintiffs' production of the documents it receives from A.G. Edwards in response to Plaintiffs' requests.[8]

The possibility of errors in the certifications was discovered by Plaintiffs' counsel during the process of complying with this Court's June 5, 2006 Discovery Order to produce all relevant discovery on or before June 30, 2006. *See* June 29, 2006 Letter (Dkt. No. 128), attached as Exhibit A to Sloane Decl. Lead Plaintiffs began a rolling production of relevant documents, including trading records, on March 17, 2006 — long before Defendants produced any documents at all. *See* Letter, dated March 17, "2004" [should be 2006], from Plaintiffs' Counsel to Defendants' Counsel, attached as Exhibit D to Sloane Decl. On June 30, 2006, in accordance with the Discovery Order, Lead Plaintiffs produced the remainder of the relevant documents in their possession and informed Defendants that they had done so. *See* Letter, dated June 30, 2006, from Plaintiffs' Counsel to Defendants' Counsel (attached as Exhibit E to Sloane Decl.).

Indeed, Defendants' assertion of non-compliance is hypocritical given that it is Defendants who have not complied with the Court's Discovery Order. On July 14, 2006, two weeks after the June 30, 2006 production deadline, Defendants produced additional documents without explaining why those documents were not timely produced. *See* Defendants' Letter to Plaintiffs, dated July 14, 2006, attached as Exhibit F to Sloane Decl. Despite Plaintiffs' requests to Defendants to explain their tardy production, Defendants have not responded.

Moreover, Defendants never responded, or produced documents in response to Plaintiffs' document requests, served on April 21, 2006. During the April 25, 2006 Court conference, the

---

[8] Plaintiffs have produced to Defendants all documents received from Messrs. Madigan and Bowie's brokers in response to Plaintiffs' counsel's requests promptly upon receipt from the brokers. *See* Letter, dated July 20, 2006, from Plaintiffs' Counsel to Defendants' Counsel (attached as Exhibit B to Sloane Decl.) and Letter, dated July 14, 2006, from Plaintiffs' Counsel to Defendants' Counsel (attached as Exhibit C to Sloane Decl.). Plaintiffs, of course, will continue to share promptly any additional documents that are received.

Court recognized Plaintiffs' document requests as "identify[ing] those documents that [Plaintiffs] think are important [] to get under Rule 26." Transcript of April 25, 2006 Proceedings ("Tr.") at 6, attached as Exhibit G to Sloane Decl. The Court allowed these document requests as descriptive of what was relevant under Federal Rule of Civil Procedure 26 and this Court's discovery procedures. Defendants' counsel acknowledged at the conference their understanding that Defendants were required to comply with the requests by May 25, 2006. *See* Tr. at 6, 7, 8 and 10 (The Court: "So what [Plaintiffs] have done is filed - you have identified those documents that you think are important for you to get under Rule 26"; Defendants' counsel: "the benefit, Your Honor, of now having received the document requests is that we can do this ***all at once***."; The Court: "Well, I take it the requests for documents [Plaintiffs] did as part of the Rule 26. And [Defendants] have said that they're going to turn all that stuff over to you or am I missing something?") (The Court: "All right. So how much time do you need to turn over ***all this material***?" Defendants' Counsel: "Your Honor, we can certainly make our production within the period of time allowed by the rules, the thirty days.") (emphasis added). Despite Plaintiffs' document requests, and repeated attempts by Plaintiffs to determine the scope of Defendants' document production, Defendants not only have failed to respond to the requests, but have also refused to state whether they have produced all documents responsive to them in compliance with their obligations under Rule 26 and the Court's Discovery Order. Thus, Defendants are in violation of the Court's oral order at the April 25, 2006 conference, the Court's Discovery Order, the Federal Rules of Civil Procedure and the Local Rules.[9]

---

[9] Defendants also take issue with Plaintiffs' objection to Defendants' unreasonable demand that the Lead Plaintiffs produce their tax returns. As a preliminary matter, these documents bear no relation to Defendants' current Motion. Further, tax returns are not discoverable as a matter of public policy, and "the production of tax returns should not be ordered unless it clearly appears they are relevant to the subject matter of the action or to the issues raised thereunder, and further, that there is a compelling need therefor because the information contained therein is not

Defendants also object to the redaction from the Lead Plaintiffs' trading records of irrelevant and highly personal financial and investment data. As Plaintiffs have explained to Defendants, the only information contained in the Lead Plaintiffs' trading records that Plaintiffs redacted is information that does ***not*** relate to Organogenesis — *e.g.*, Lead Plaintiffs' private financial and investment information, such as the balances in their brokerage accounts and their trades in the securities of companies other than Organogenesis. Plaintiffs have not redacted any information that pertains to Organogenesis or the Lead Plaintiffs' trades in Organogenesis stock. Nothing more is relevant or required. *See Malanka*, 1986 U.S. Dist. LEXIS 23277 at *5 ("documents of plaintiff's investment services and sophistication unrelated to [the current] claim are not relevant and are, therefore, not discoverable.").

Further, in an effort to err on the side of greater disclosure, Plaintiffs made a supplemental production to Defendants in which Plaintiffs provided all trading records with the Lead Plaintiffs' account numbers unredacted. *See* Letter, dated July 14, 2006, from Plaintiffs' Counsel to Defendants' Counsel, attached as Exhibit C to the Sloane Decl. Moreover, Defendants' suggestion that their defense of this action has been hampered by the redaction of irrelevant information contained in the trading records (*see* Shapiro Affidavit in Support of Defendants' Motion at 3-4), is disingenuous. Defendants have subpoenaed Lead Plaintiffs' trading records directly from the Lead Plaintiffs' brokers, and in response have received those records in completely unredacted form.

## V.    THE UNIQUE AND DRACONIAN RELIEF DEFENDANTS SEEK IS ENTIRELY UNWARRANTED

Defendants' suggested relief — the striking of Plaintiffs' sworn certifications and

---

otherwise readily obtainable." *Cooper v. Hallgarten & Co.*, 34 F.R.D. 482, 483-484 (S.D.N.Y. 1964).

preclusion of evidence of their stock transactions in Organogenesis securities, is wholly unsupported by the case law they cite.[10]  Indeed, Defendants do not cite a single decision in which a court has imposed this drastic remedy, much less imposed it in response to honest inadvertent errors in a certification form.  Further, Defendants cannot point to any prejudice to them that has resulted from the erroneous Certifications.

Defendants' sought-after relief is also manifestly unjust, given that although the Certifications failed to list certain transactions, there are transactions on both Messrs. Bowie and Madigan's certifications that are valid and correct.  There is no reason to preclude evidence of those correctly-listed transactions.

## VI.    IN THE ALTERNATIVE, PLAINTIFFS REQUEST LEAVE TO SUBSTITUTE NEW PROPOSED CLASS REPRESENTATIVES TO REPLACE MR. MADIGAN

In the event that this Court grants Defendants' motion — which would effectively preclude Mr. Madigan from serving as a class representative — Plaintiffs respectfully request leave to substitute new plaintiffs to replace Mr. Madigan as a proposed class representative.  It is routine in class actions in order to protect the rights of the Class for new plaintiffs to seek to be

---

[10] None of the cases that Defendants cite in support of their request for relief involve errors in certifications, or other affidavit-type documents.  Rather, they each involve a blatant disregard for discovery orders.  *See Tower Ventures, Inc. v. City of Westfield*, 296 F.3d 43, 48 (1st Cir. 2002) (plaintiff blatantly disregarded the court's scheduling order and extension for time to file its summary judgment motion); *Rosario-Diaz v. Gonzalez*, 140 F.3d 312, 315 (1st Cir. 1998) (appellants "docketed their motions for summary judgment eight and fifteen weeks, respectively, after the (twice-extended) deadline for filing dispositive motions had expired."); *Smith v. Kmart Corp.*, 177 F.3d 19, 21 (1st Cir. 1999) (review of sanction instruction for failure to produce a witness at deposition); *Velez v. Awning Windows, Inc.*, 375 F.3d 35, 41 (1st Cir. 2004) ("defendants failed to file an opposition to the motion for partial summary judgment by the court-appointed deadline."); *Diaz-Fonseca v. Puerto Rico*, 451 F.3d 13, 26 (1st Cir. 2006) ("All of the defendants violated discovery orders either by missing clearly established deadlines or by representing to the court that they had complied fully with their obligations, even when their submissions (timely or otherwise) were incomplete, vague, or evasive."); *Serra-Lugo v. Mayaguez Consortium-Las Marias*, 271 F.3d 5, 6 (1st Cir. 2001) (plaintiffs' counsel failed to appear at a scheduling conference and file a timely memorandum).  Unlike the parties in these cases, Plaintiffs here have fully complied with the Court's Discovery Order.  *See* Part IV, *supra*.

substituted as proposed class representatives where one or more plaintiffs has been found to be inadequate as a class representative.  *See, e.g., In re Pharm. Indus. Average Wholesale Price Litig.*, 230 F.R.D. 61, 80 (D. Mass. 2005) ("where replacement of a class representative is necessary, 'courts generally allow class counsel time to make reasonable efforts to recruit and identify a new representative.'").  During the class period, Organogenesis' common stock was actively listed on the American Stock Exchange, an open and efficient market, and the daily volume of Organogenesis stock traded during the class period numbered in the hundreds of thousands.  In a securities class action such as this, where Organogenesis was a public corporation whose stock was widely-traded during the class period, there may exist hundreds or thousands of potential class members who likely would meet the requirements under Rule 23 to serve as a class representative.

Accordingly, in the event the Court grants Defendants' motion, the Court should also grant Plaintiffs' motion to substitute new class representatives and should be provided adequate time to do so.

Dated: July 31, 2006

**MOULTON & GANS, P.C.**

By:  /s/ Nancy Freeman Gans
Nancy Freeman Gans, BBO #184540
55 Cleveland Road
Wellesley, MA 02481
Telephone:  (781) 235-2246
**Liaison Counsel and Local Counsel for Plaintiffs and the Class**

**MILBERG WEISS BERSHAD
 & SCHULMAN LLP**
Sanford P. Dumain
Ariana J. Tadler
Peter Sloane
Peter E. Seidman
One Pennsylvania Plaza
New York, NY  10119
(212) 594-5300

**Lead Counsel for Plaintiffs and the Class**

## <u>CERTIFICATE OF SERVICE</u>

I, Nancy Freeman Gans, hereby certify that a true copy of the above document was served upon the attorney of record for each party by ECF filing.

<u>/s/ Nancy Freeman Gans</u>
Nancy Freeman Gans