UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| IN RE ORGANOGENESIS SECURITIES LITIGATION | No. 04-CV-10027 (JLT) |
|---|---|

**DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF MOTION TO STRIKE LEAD PLAINTIFFS' SWORN CERTIFICATIONS AND PRECLUDE RELIANCE ON THEIR STOCK TRANSACTIONS**

Albert Erani, Donna Abelli Lopolito, Philip Laughlin, Michael Sabolinski and Alan Tuck

*By:*
Jeffrey B. Rudman (BBO #433380)
Jonathan A. Shapiro (BBO #567838)
Peter J. Kolovos (BBO #632984)
Sherry Hartel Haus (BBO# 663777)
Kimberly I. Friday (BBO # 660544)
Wilmer Cutler Pickering Hale and Dorr LLP
60 State Street
Boston, MA 02109
(617) 526-6000

August 8, 2006

## INTRODUCTION

Plaintiffs' Opposition (or "Opp.") is a cavalier response to the serious misconduct for which Defendants seek relief – *i.e.*, that for more than two and one-half years, Lead Plaintiffs and Counsel have prosecuted this lawsuit on the basis of demonstrably false affidavits, and have never produced accurate trading data called for by a Court Order:

- <u>False Bowie Certification.</u> Lead Plaintiff John H. Bowie *disclosed 4 trades but omitted at least 83 – roughly 95% – of his trades*.

- <u>False Madigan Certification.</u> Lead Plaintiff Richard Madigan *disclosed 9 trades but omitted at least 53 – roughly 85% – of his trades*.

- <u>False Attorney Affidavit.</u> Lead and Liaison Counsel assumed those fiduciary roles on the basis of a motion that was supported by a *similarly inaccurate attorney affidavit that misrepresented Lead Plaintiffs' alleged "losses"* – without disclosing dozens of apparently profitable sales. Since then, Counsel have relied on the same inaccurate trading data in multiple complaints, briefs and the pending Motion for Class Certification.

- <u>Disregard of Court Order.</u> Lead Counsel waited until *48 hours before the Court's production deadline* (June 30) to disclose there "may" be a problem – and *more than a month after the deadline still have not produced a full set of trading records*. Indeed, Lead Counsel concede they do not have the trading data necessary to "know with certainty the extent of the errors" in the affidavits filed some 52 months ago.[1]

The submission of false testimony is particularly striking because *just last year this Court was "profoundly disturbed" by the fact that the <u>same</u> Lead Counsel filed a false trading affidavit* in *In re Sonus Networks, Inc. Sec. Litig.*, 229 F.R.D. 339, 343 (D. Mass. 2005). In a published opinion that is conveniently omitted from the Opposition, *the Court explicitly warned Milberg Weiss that it did not want to "see anything else like that in this or other cases."* Id. at 343; *see also In re Sonus Networks Sec. Litig.*, No. 1:02-cv-11315-MLW, Tr. of June 26, 2006 Hearing at 35 (Opening Br., Ex. D) (Lead Counsel "aided and abetted perjury, probably"). The misconduct

---

[1] *See* Memorandum In Support of Defendants' Motion to Strike Lead Plaintiffs' Sworn Certifications and Preclude Reliance On Their Stock Transactions ("Opening Brief" or "Opening Br."), Exhibit A (Declaration of Nancy Freeman Gans In Support Of The Motion Of The Hofmann Group for Consolidation, Appointment As Lead Plaintiff And For Approval Of Its Selection Of Lead Counsel And Liaison Counsel, *attaching* Certification[s] of Proposed Lead Plaintiff[s] John H. Bowie, Jr. and Richard Madigan and chart prepared by Plaintiff's Counsel); Discovery Order, June 5, 2006, Dkt. No. 122; Opening Br., Exhibits B and C; Opp. at 9.

in this case is even worse than the erroneous certification that culminated in Lead Counsel's withdrawal from *Sonus* – this time, *three* affidavits are false (two by plaintiffs, one by counsel).

The filing of false affidavits probably was inevitable because, once again, Lead Counsel *failed to take the most basic steps* necessary to ensure the truthfulness of what they filed. Chief Judge Wolf was explicit that Lead Counsel should only file affidavits that are "prepared carefully and pursuant to procedures that are designed to minimize the risk of false statements under oath." *See In re Sonus Networks Sec. Litig.*, No. 1:02-cv-11315-MLW, Tr. of Mar. 9, 2005 Motion Hearing at 12-13 (attached as Ex. A to the Affidavit of Kimberly I. Friday, filed herewith). There was no such "care" in this case – **Lead Counsel admit that they are only now collecting the trading data necessary to make "accurate" the affidavits that they filed years ago.**[2] Indeed, given the *Sonus* admonition for their "very casual" approach to affidavits, it is rather striking that Lead Counsel have conspicuously failed to say what (if anything) they did to check the accuracy of their clients' certifications – and their own attorney affidavit – before they filed them in Court.[3] *See Sonus*, Tr. of Mar. 9, 2005 Motion Hearing at 11-12 (Friday Aff. Ex. A).

Plaintiffs who are unwilling (perhaps, unable) to describe the process that resulted in the false affidavits cannot minimize their baffling omission of 92% of their trades as "an honest mistake" because "people are human." Opp. at 1-3. The superficial affidavits of Messrs. Bowie and Madigan appended to the Opposition say nothing – not even a sentence – about how they and/or counsel prepared the affidavits or derived the very inaccurate data set forth therein. Mr. Madigan makes clear that his "recollection of what happened . . . is incomplete" and is "vague,"

---

[2] *See* Letter from P. Sloane, Esq. to Z. Lovett, Deputy Clerk, filed June 29, 2006, Dkt. No. 128 (Opening Br., Ex. B) ("June 29 Letter").

[3] Lead Counsel's apparent failure to have done anything to confirm the accuracy of the affidavits – or unwillingness to say whatever they did do – is even more careless than the "very casual" approach to affidavits scrutinized in *Sonus*, where Judge Wolf admonished Milberg Weiss for abdicating responsibility for the affidavit to a paralegal as unacceptable under Rule 11. *See Sonus*, Tr. of Mar. 9, 2005 Motion Hearing at 8-12 (Friday Aff. Ex. A).

although he is "absolutely certain" that whatever "happened" was unintentional. Declaration of Richard J. Madigan, Dkt. No. 146, at ¶¶ 3-4.[4] In any event, the question of whether the affidavits were intentionally false is irrelevant to the Motion that is now before the Court, because (*i*) False testimony (knowing or accidental) is not an appropriate basis to maintain the pending Motion for Class Certification, let alone file a class action, and (*ii*) Plaintiffs still have not provided complete trading data, which Lead Counsel should have reviewed *before* filing the affidavits – and Defendants should have received *before the Court's June 30 deadline*.[5]

Today, the affidavits that Plaintiffs concede are false remain on file. Last week the Plaintiffs finally stated that one of the affiants (Mr. Bowie) would seek to withdraw as Lead Plaintiff, a motion that for weeks Defendants have been saying they would not oppose because, given the magnitude of these problems, he is not an appropriate "Lead Plaintiff." The other affiant (Mr. Madigan), however, will not withdraw his false testimony from the public record, nor withdraw his pending Motion for Class Certification based on his untruthful disclosures of "losses." His only commitment, apparently, is that he will seek to amend his Certification "if and when" Lead Counsel collect the trading data necessary to do so truthfully. Opp. at 7.

Finally, Plaintiffs' blithe assertions that it would be "premature" for the Court to address these issues, Opp. at 8-9, and that Defendants have not been "adversely affected" by any of this, Opp. at 3, are similarly misplaced. Defendants have been defending a class action for years (which is burdensome and expensive) that was filed by individuals who conferred standing on themselves through false testimony. Now Defendants are spending more time and money

---

[4] Mr. Bowie claims to have "misunderstood" what needed to be disclosed in his affidavit attesting that "[s]ince November 15, 1999 I have made the following transactions in Organogenesis," or where the confusion came from. Declaration of John H. Bowie, Jr., Dkt. No. 145, at ¶ 3; Certification of Proposed Lead Plaintiff John H. Bowie, Jr. (Opening Br. Ex. A).
[5] Significantly, no part of Defendants' Motion rests on any claim that Lead Plaintiffs intended to provide false testimony. The Motion should be granted because, as set forth in the Defendants' Opening Brief, *two* Lead Plaintiffs filed false Certifications, the magnitude of the inaccuracies was great, and the falsity was not disclosed for *years*. Regardless of Plaintiffs' state of mind, these facts, combined with Plaintiffs' clear violation of the Court's Discovery Order, call for a remedy.

opposing a Motion for Class Certification based on the same untrue Certifications. The relief sought therefore is necessary and appropriate – not "draconian" – to address a plainly extraordinary problem that Plaintiffs created.

## ARGUMENT

I. **PLAINTIFFS STILL HAVE NOT PRODUCED COMPLETE TRADING RECORDS AND – SIX WEEKS AFTER THE COURT'S DEADLINE – STILL CANNOT SAY "IF AND WHEN" THEY WILL BE ABLE TO DO SO.**

There is no dispute that the Certifications of Messrs. Bowie and Madigan are not even close to accurate. They omitted the vast majority – *more than 90%* – of their transactions, having disclosed only thirteen (13) out of a total of at least 140 trades.[6] The problem has been exacerbated by the fact that they have not complied with the Court's Discovery Order, which required full disclosure of the trading records by June 30, 2006. Discovery Order, June 6, 2006, Dkt. No. 122.

Specifically, Plaintiffs admit they *still* do not possess the records necessary to identify all of the errors in the Certifications, more than two years after they filed the Certifications and more than five weeks after informing the Court of the errors. Opp. at 2. They do not know "if and when" they will ever have accurate information. Opp. at 7.

Plaintiffs nonetheless take the specious position that they have somehow "fully complied" with the Court's Discovery Order because they have produced all documents in their physical "possession." Opp. at 9. This is precisely the problem – without having obtained complete trading data, the Plaintiffs never should have filed the Certifications in the first place, and certainly should not be pressing forward with a Motion for Class Certification. Plaintiffs'

---

[6] Indeed, the trading records that have trickled in since this Motion was filed establish that the errors are even more substantial than Defendants believed. Defendants previously estimated "at least 84 [] and potentially more than a hundred" undisclosed trades by Messrs. Bowie and Madigan. Opening Br. at 1-2. The trading confirmations show *over 125 undisclosed trades* by Messrs. Bowie and Madigan. The trading confirmations are attached as Exhibits B (Bowie) and C (Madigan) to the Friday Affidavit.

argument also ignores that both Rule 26 and this Court's Discovery Order require the production of all documents in their "possession, custody *or control*," and not simply whatever documents are in the party's physical hands. *See* June 5, 2006 Discovery Order, Dkt. No. 122; Fed. R. Civ. P. 26(a)(1)(B) (emphasis added). Trading records from the Lead Plaintiffs' broker are clearly documents within the Lead Plaintiffs' control (*i.e.*, documents they have the legal right to obtain upon demand),[7] *yet Lead Counsel admit that they never even asked for these records until a few weeks ago. See* June 29 Letter; Opp. at 7.

Faced with Plaintiffs' failures to meet their discovery obligations, it has been left to the defendants to try to cobble together accurate trading information through the use of third-party subpoenas. Indeed, after receiving trading data in response to those subpoenas, the defendants provided copies – including all of the trading confirmations relating to Mr. Madigan – to Plaintiffs *prior* to the date Plaintiffs filed their Opposition. *See, e.g.,* Letter from J. Shapiro, Esq. to A. Tadler, Esq. dated July 19, 2006 (attached as Ex. D to Friday Affidavit).[8] Given those trading confirmations, there is no legitimate reason why Mr. Madigan has not withdrawn his Certification, because even if Plaintiffs' supposedly do not know the full extent of the errors, the documents that are available leave no question that the Certification is false beyond repair.

## II. PLAINTIFFS CANNOT WHITEWASH THEIR FALSE AFFIDAVITS BY ASSERTING THAT "PEOPLE ARE HUMAN."

Plaintiffs cannot excuse the falsity of their affidavits by characterizing them as "inadvertent" or "the result of an honest mistake." Opp. at 4. Nor can they trivialize a very substantial problem by pretending that false affidavits are inevitable in securities cases and

---

[7] *See* Opening Br. at 9 n.10.
[8] While Plaintiffs have filed copies of correspondence with the Court, they have only submitted their letters to Defendants, excluding Defendants' responses. The other half of the conversation is attached as Exhibit D to the Friday Affidavit.

cannot be avoided because "people are human." Opp. at 2-3.[9] This is precisely the sort of "very casual" approach to affidavits that Judge Wolf criticized in *Sonus*, where the same Lead Counsel withdrew. *See Sonus*, Tr. of Mar. 9, 2005 Motion Hearing at 11-12 (Friday Aff. Ex. A); Tr. of Feb. 4, 2005 Motion Hearing at 59-60 (Friday Aff. Ex. E) ("I don't regard things like this certification as a formality and I really do want to know how this schedule came to be inaccurate and incomplete"). Instead of addressing *Sonus* – the recent and directly relevant case from this District – Plaintiffs instead cite cases primarily from other jurisdictions to argue that because other courts take these matters lightly, this Court should do so as well.[10]

Moreover, the repeated insistence that the errors were "inadvertent" is not supported by any details whatsoever about how *two* Lead Plaintiffs and Liaison Counsel submitted affidavits with "errors" of such magnitude – approximately 85% of Mr. Madigan's trades and 95% of Mr. Bowie's were omitted.[11] Nor does the Opposition provide any information about the steps taken, if any, *at the time the Certifications were prepared* to confirm the accuracy of the information

---

[9] Indeed, Lead Counsel appear resigned to the notion that still other false certifications will be filed in the future. *See* Opp. at 2-3 (suggesting that the Court should excuse false certifications because "[t]his is not the first time in a securities class action that lead plaintiffs have made mistakes in filling out a lead plaintiff certification form; nor is it likely, given that people are human and are prone to make mistakes, that it will be the last").

[10] The cases that Plaintiffs rely upon (Opp. at 5-6) involved errors far less extreme than those at issue in this case, some of them typographical. In *Swack v. Credit Suisse First Boston*, 230 F.R.D. 250, 266 (D. Mass. 2005), the Court considered an error in listing the transaction date as November 30, 1999 instead of December 1, 1999, an inaccuracy that pales in comparison to the ones at issue (though the Certification by Bruno Hofmann, not before the Court on this motion, also contains similar errors, such as listing a transaction that occurred on April 14, 2000 as occurring on April 18, 2000, and listing two transactions that occurred on November 13, 2000 as occurring on November 16, 2000). In *In re USEC Sec. Litig.*, 168 F. Supp. 2d 560, 567 (D. Md. 2001), the plaintiffs failed to attach the trading schedule to their certification, but corrected this error prior to the filing of any responsive pleadings. The Court then granted the motion to appoint Lead Plaintiffs, noting that the correction of the error occurred prior to the filing of any responsive pleadings. *Id.* at 567-69. In *In re Initial Pub. Offering Sec. Litig.*, 399 F. Supp. 2d 369, 373 (S.D.N.Y. 2005), plaintiffs submitted an accurate Certification that showed one of the proposed Lead Plaintiffs had not traded any of the defendant's securities during the Class Period. Although the Court held that proffering the plaintiff as a class representative "was a clear and easily avoidable error," it denied the defendant's motion for sanctions because "plaintiffs voluntarily withdrew [the proposed class representative] when advised of their error." *Id.* Other cases cited by Plaintiffs are similarly inapposite. *See Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust v. LaBranche & Co., Inc.*, 229 F.R.D. 395 (S.D.N.Y. 2004) (ruling on a motion for appointment of lead plaintiffs in which filed certifications were not alleged to be inaccurate); *In re Honeywell Int'l Inc., Sec. Litig.*, 211 F.R.D. 255, 262-63 (D.N.J. 2002) (ruling on a motion for class certification, and considering whether errors in the certifications rendered plaintiffs' counsel inadequate).

[11] *See* Exhibits B and C to Friday Affidavit (Mr. Bowie made at least *eighty-seven* (87) trades in Organogenesis stock after November 15, 1999; of those, Mr. Bowie only disclosed *four* (4); Mr. Madigan engaged in at least *fifty-three* (53) transactions in Organogenesis stock after November 15, 1999 that were not disclosed on his Certification, as compared to the *nine* (9) transactions he did disclose).

being submitted to the Court under penalty of perjury – as they were obligated to do. Fed. R. Civ. P. 11. The Declarations of Messrs. Bowie and Madigan, attached to Plaintiffs' Opposition, are fact-free; as noted, they declare their good faith (which, if true, is irrelevant) but never describe the circumstances surrounding how the accident happened.

The only thing that *is* clear from the record is what Lead Plaintiffs and Counsel did *not* do: namely, they did not obtain and review the relevant trading records before filing the Certifications – even though to do so would be the most basic step to ensure the accuracy of the information being put before the Court. Plaintiffs' counsel also should have – but plainly did not – confirmed the accuracy of the trading data before they submitted their own attorney affidavit, which incorrectly attested to the amount of their clients' supposed losses. And even today, Lead Counsel concede they still do not have the data necessary to make the affidavits "accurate" or "know with certainty the extent of the errors." June 29 Letter; Opp. at 9. These failures cannot be brushed aside because "people are human." Opp. at 2-3.

### III.   PLAINTIFFS CANNOT DEFER THE PROBLEM AS "PREMATURE."

Plaintiff's assertion that it would be "premature" for the Court to consider this Motion, Opp. at 8, is simply an attempt to further delay a problem that will not go away. First, Plaintiffs have not been "diligent." Opp. at 9; June 29 Letter. They filed affidavits over two years ago without the data they needed to make the testimony "accurate." June 29 Letter. They only disclosed the problem 48 hours before the June 30 deadline, when it became obvious from the hodgepodge of records they produced that the affidavits were false.

Second, Plaintiffs violated a Court Order and, in fact, still claim to be looking for complete trading data. In the meantime, Defendants continue to defend themselves in an action brought by Lead Plaintiffs who assert standing on the basis of false Certifications – and still are

pressing ahead with a Motion for Class Certification that Defendants must oppose by September 14.

Third, Lead Counsel were not cheated out of a "meet-and-confer" opportunity under L.R. 7.1 to discuss the false Certifications prior to the filing of this Motion. *Compare* Opp. at 2 n.4. Defendants have been asking for these trading records for nearly two months, having written three letters and also asked on the telephone.[12] Defendants also advised Lead Counsel that they were going to file an appropriate motion to address this situation, which Lead Plaintiffs acknowledged.[13] And Defendants offered an extension of time within which Plaintiffs could file their Opposition, so Lead Counsel could consider whether to file a motion to withdraw Messrs. Bowie and Madigan as Lead Plaintiffs.[14] The notion that the parties didn't confer is therefore nonsense.[15]

### IV. THE RELIEF SOUGHT BY DEFENDANTS IS REASONABLE AND APPROPRIATE (NOT "DRACONIAN") UNDER THE CIRCUMSTANCES.

Defendants' Motion seeks a court order that strikes the Certifications of Messrs. Bowie and Madigan from the record, and precludes their reliance on their stock transactions. The Court plainly has authority to provide such relief, or fashion any other remedy. Opening Br. at 10-11. The relief sought is reasonable and tailored to the circumstances before the Court.

Specifically, it would not be "draconian," Opp. at 12, for the Court to strike the Certifications – even Lead Plaintiffs and Counsel acknowledge that their affidavits are not true. Although Plaintiffs assert that to do so would be "extreme," Opp. at 3, they proffer no reason

---

[12] *See* correspondence from J. Shapiro, Esq. to P. Sloane, Esq. dated June 6, 2006, June 19, 2006, and June 29, 2006 (Friday Aff. Ex. D).
[13] *See, e.g.,* Letter from P. Sloane, Esq. to J. Shapiro, Esq. dated June 30, 2006, attached as Exhibit E to Plaintiffs' Opposition.
[14] *See* Letter from J. Shapiro, Esq. to A. Tadler, Esq. dated July 19, 2006 (Friday Aff. Ex. D).
[15] As Plaintiffs have not filed a motion to amend any of the Certifications, despite repeated admissions that the Certifications are inaccurate, their assertion that Defendants are "attempt[ing] to deprive these Lead Plaintiffs of their right to amend their certifications" is incongruous. Opp. at 7. Moreover, contrary to the assertion in their Opposition, Plaintiffs also have not filed a motion to substitute new class representatives. *See* Opp. at 14.

why false affidavits should remain on a public record. Indeed, Plaintiffs do not think any relief is appropriate, and appear content to leave the false Certifications on file (they say there is no "urgency," Opp. at 9) and deal with the issues at a later date.

An Order precluding Plaintiffs' reliance on their stock transactions is similarly appropriate, as Plaintiffs still have not complied with the Court's Discovery Order and Defendants should not have to defend claims, nor spend time and money preparing an Opposition to a Motion for Class Certification, that are based on investment losses that even the Plaintiffs cannot verify – and do not know "if and when" they will even be in a position to disclose the trading "losses" for which they sued years ago. Opp. at 7.

### V.    PLAINTIFFS CANNOT EXCUSE THEIR MISCONDUCT BY SPECIOUSLY ASSERTING THAT DEFENDANTS BREACHED THE DISCOVERY ORDER.

Similarly unavailing is Plaintiffs' attempt to obscure their misconduct by raising irrelevant and petty complaints about Defendants' document productions. Nevertheless, it bears noting that Plaintiffs' assertions not only are trivial and unrelated to the false Certifications they have filed, but also are false.

Specifically, Defendants have met both the Court's Discovery Order deadline of June 30, 2006, and the parties' agreed deadline of July 14, 2006 for the exchange of privilege and redaction logs.[16] If Plaintiffs disagree, their recourse is to file a motion to compel, instead of inventing an irrelevant side issue to shift the focus from their own behavior.

---

[16]    On July 14, Defendants produced privilege and redaction logs, and in doing so, produced eight documents that, after further examination, were determined to be either not privileged, or only partially privileged, as Defendants' letter accompanying the production (attached as Exhibit F to Plaintiffs' Opposition) explained. Plaintiffs produced no privilege or redaction logs, despite their copious redactions of documents produced to Defendants. (*Continued next page*)

## CONCLUSION

For all of these reasons, Defendants request that the Court grant Defendants' Motion to Strike Lead Plaintiffs' Sworn Certifications and Preclude Reliance on Their Stock Transactions.

Respectfully,

WILMER CUTLER PICKERING HALE AND DORR LLP

By: /s/ Jonathan A. Shapiro
Jeffrey B. Rudman (BBO #433380)
Jonathan A. Shapiro (BBO #567838)
Peter J. Kolovos (BBO #632984)
Sherry Hartel Haus (BBO# 663777)
Kimberly I. Friday (BBO # 660544)
60 State Street
Boston, MA 02109
(617) 526-6000

Dated: August 8, 2006

*Counsel for Defendants Albert Erani, Donna Abelli Lopolito, Philip Laughlin, Michael Sabolinski, and Alan Tuck*

## CERTIFICATE OF SERVICE

I, Kimberly I. Friday, hereby certify that a true copy of this document, filed through the ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF).

/s/ Kimberly I. Friday

---

With regard to Plaintiffs' document requests, Plaintiffs' selective excerption of the transcript from the April 25, 2006 scheduling conference fails to include (much less address) the dialogue in which the Court stated that Plaintiffs should not have filed the document requests without the Court's permission, "so scratch that." Tr. of Apr. 25, 2006 Proceedings ("Tr.") at 5. As Plaintiffs' note, they represented to the Court that the document requests "identified those documents that [Plaintiffs] think are important [] to get under Rule 26." Tr. at 6; Opp. at 11. On June 30, 2006, Defendants completed their production of all documents required under Rule 26 (Defendants have produced approximately 5,581 pages to Plaintiffs in total). In discussing Plaintiffs' document requests, the Court noted, "Well, I scratched it because it should be unnecessary." Tr. at 6. Since Defendants have produced all relevant documents under Rule 26, it is unnecessary. Defendants have repeatedly informed Plaintiffs that all documents required under Rule 26 were produced on June 30.