# EXHIBIT A

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS


IN RE SONUS NETWORKS          )   CA 02-11315
SECURITIES LITIGATION         )   Boston, MA
                              )   March 9, 2005
                              )


BEFORE THE HONORABLE MARK L. WOLF
UNITED STATES DISTRICT JUDGE
MOTION HEARING


APPEARANCES:


(As previously noted.)


JUDITH A. TWOMEY, RPR
Official Court Reporter
One Courthouse Way
Courtroom 10~Room 5200
Boston, MA 02210
(617)946-2577

1          THE COURT:  Right.  And is it the usual practice

2     of your firm to have these affidavits certifying that the

3     schedule that's said to be attached is accurate when the

4     schedule is not attached?

5          MR. WEISS:   I can't say that that is our usual

6     practice.  No, I don't know that that is --

7          THE COURT:  Do you know that it's not your usual

8     practice?

9          MR. WEISS:   Well, I know at least in this

10    instance Ms. Laratro recalls discussing with Mr. Roberts

11    which trades were going to be included on the schedule

12    which she prepared from the document that he provided to

13    her.  In many instances, the form itself provides a place

14    to be filled in, and I presume in many instances that's

15    adequate space to provide the information, so there

16    simply is no schedule that is necessary.

17         THE COURT:  I'm concerned about this, in part,

18    because the inaccuracy of the document that was filed

19    masked an issue relating to whether Mr. Roberts was an

20    adequate class representative because of undisclosed

21    sales that he made after the end of the class period.

22    And any filing that's made in the court has to be made by

23    an attorney.  And you're representing that there's a

24    proper basis under Rule 11, among other things, and I

25    don't take filings from paralegals.  So it's a matter of

1    concern to me that you can't tell me if any attorney, you

2    know, reviewed the work to determine whether the filing

3    was reliable.

4         MR. WEISS:    It is certainly my belief that this

5    was part of -- Nancy may recall better than I -- that

6    this was part of a larger document that was filed with

7    the court as part of the lead plaintiff papers.  I'm not

8    certain about that, but that would be my understanding of

9    things and, as such, those papers would have been filed

10   under the supervision or by an attorney.

11        THE COURT:  Which attorney?

12        MR. WEISS:   Well, at the time, Sam Rudman was

13   the partner overseeing this activity, so it would be my

14   belief that he was, although I don't know that for

15   certain.

16        MR. RUDMAN:   If your Honor please, Sam Rudman

17   is not related to this Rudman.

18        MR. WEISS:   Yes.

19        THE COURT:  Because the misleading statement has

20   consequences for this case.  If somebody makes purchases

21   outside of the class period, he might be subject to

22   unique defenses that could disqualify him or her as an

23   adequate lead plaintiff or an adequate class

24   representative, depending on the totality of the

25   circumstances.

1          MR. WEISS:   Your Honor, if I might again just

2   point out that there was never any attempt to conceal

3   anything, and we in discovery freely, without objection

4   or motion practice, fully provided information regarding

5   all of Mr. Roberts' trades.  And at deposition, he was

6   more than happy to answer questions about any of his

7   transactions, both during and after the class period.  It

8   was in fact based on that very discovery that the

9   defendants made the argument that they made.  Again, the

10  PSLRA required only him to disclose class period

11  transactions.

12          THE COURT:  Well, you've got a form that he

13  signed under oath that says something different, and your

14  firm prepared the form, didn't it?

15          MR. WEISS:   I agree that the wording is not

16  precise or does not matched with the --

17          THE COURT:  The wording is very precise.  I

18  mean, it says, since December 11, 2000, which I assume is

19  the date that was put in uniquely for this case.

20          MR. WEISS:   It's the first day of the class

21  period.

22          THE COURT:  Right.  I have made the following

23  transactions in Sonus Networks.

24          Now, how is that imprecise?

25          MR. WEISS:   Clearly, that could have been

1     drafted better to match what the requirements were.

2                 THE COURT:  It could have been -- it may go

3     beyond what the PSLRA requires, but it's not imprecise.

4                 MR. WEISS:  Okay.

5                 THE COURT:  I don't think.

6                 MR. WEISS:  But, again, if there was an attempt

7     to avoid disclosing those transactions, the person who

8     drafted it would have been more careful and just matched

9     the language of the PSLRA.

10                THE COURT:  And, in fact, I don't have the sense

11    that any attorney deliberately tried to hide those

12    transactions.  But I guess I'd say at this point two

13    things.  One, this explanation essentially confirms the

14    decision I reached on February 14 that Mr. Roberts was

15    not an appropriate class representative.  I don't think

16    anybody should be signing something under oath that's not

17    complete.  I don't think anybody should be certifying the

18    attached schedule as all the transactions I made in

19    someone's stock if the schedule is not there.  And it

20    really raises questions in my mind about the way your

21    firm handles these matters and whether it's in a

22    professionally appropriate manner, because it's your firm

23    that put Mr. Roberts in this position.  I mean, I can see

24    having to mail the faxed documents back and forth, you

25    know, so the lawyer or paralegal can get the information

1    that's necessary to prepare an affidavit that somebody is

2    going to sign under oath.  But this suggests to me, if

3    it's a routine practice, a routine practice that's very

4    casual about matters that have been signed under oath.

5              MR. WEISS:    I certainly wish to assure the

6    court that we take very seriously that matters are signed

7    under oath, and documents that are filed with the court,

8    certainly, everyone at the firm takes that very

9    seriously, and there are attorneys who do supervise the

10   work of the paralegals or the people in shareholder

11   services department who are preparing these documents and

12   communicating with the client.

13             I'm also aware that the form currently used, I

14   believe, more accurately reflects the language of the

15   PSLRA.

16             THE COURT:  Currently since when?

17             MR. WEISS:    That I don't know.  I believe this

18   is, obviously, as any firm with its procedures, it is

19   common, revisiting and addressing them.

20             THE COURT:  I mean, I think that's part of the

21   reason for this.  This discussion has some relevance to

22   decisions I need to make regarding lead counsel and your

23   firm's continued role in the case.  But I think it's also

24   important that if there's instructive value to this

25   experience that it be derived.  Because I don't want in

1    this or any other case any more documents signed under

2    oath that are not prepared carefully and pursuant to

3    procedures that are designed to minimize the risk of

4    false statements under oath.

5        Then there were some issues regarding the

6    disclosures to Roberts and Scibelli by Milberg and

7    Bernstein firms of their roles in other class actions

8    against Sonus.  And if I read Mr. Scibelli's affidavit

9    right, he says in paragraph 6 that he knew approximately

10    two and-a-half years ago that the Bernstein firm was

11    counsel in the IPO litigation that involved Sonus.  And

12    in April 2004, I contacted Bernstein regarding the Sonus

13    2 litigation.  So the IPO litigation is in New York, and

14    the Sonus 2 litigation is before Judge Woodlock, is that

15    right?

16        MR. BERG:    Yes, your Honor.

17        THE COURT:  And paragraph 3C of my order asked

18    for any written records of such communications unless

19    some attorney/client privilege was asserted.

20        So Mr. Scibelli, if I read it right, is telling

21    me that sometime in 2002, if it was two and-a-half years

22    ago, he became aware of the Bernstein's firm's

23    involvement in the IPO class action.

24        Were there any documents relating to that?

25        MR. BERG:    There are no documents from that,