## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE ORGANOGENESIS SECURITIES LITIGATION | Case No.:  1:04cv10027-JLT |

### PLAINTIFFS' RESPONSE TO DEFENDANT JOHN J. ARCARI'S MOTION FOR SUMMARY JUDGMENT SEEKING A CONTINUANCE PURSUANT TO RULE 56(F)

Plaintiffs respectfully submit this Response to Defendant John J. Arcari's Motion for Summary Judgment on All Claims Asserted by Bruno Hofmann ("Summary Judgment Motion" or the "Motion").  Plaintiffs seek a continuance, pursuant to Rule 56(f) of the Federal Rules of Civil Procedure, in order to permit discovery on relevant factual issues.

## I.      INTRODUCTION

Defendant Arcari has moved for summary judgment as to Mr. Hofmann's individual claims against Mr. Arcari on the ground that, purportedly, Mr. Hofmann lacks standing to sue Mr. Arcari because Mr. Arcari did not join Organogenesis, Inc. ("Organogenesis" or the "Company") until approximately two weeks after Mr. Hofmann's last purchase of Organogenesis securities on April 13, 2000.  Given that significant discovery has yet to be completed, the Motion is premature and Plaintiffs request that the Motion be continued, under Rule 56(f), until the completion of fact discovery.[1]

The Motion is premature because all the relevant facts concerning the timing and nature of Mr. Arcari's involvement with Organogenesis and Defendants' scheme to defraud are not known and will not be known until the end of the discovery period.  Discovery was effectively

---

[1] Although a motion for summary judgment may be made at any time, the Supreme Court has indicated that motions for summary judgment should only be granted "after adequate time for discovery." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

stayed since commencement of this action until May 2006, when Defendants began producing

their initial disclosure documents in response to the Court's April 26, 2006 Discovery Order.

Since then, Defendants have produced only a few boxes of documents, and non-parties

Organogenesis, Novartis AG and PricewaterhouseCoopers LLP have not complied with

Plaintiffs' subpoenas *duce tecum*.  Plaintiffs have taken no depositions because document

discovery is incomplete.  Plaintiffs have thus not had the opportunity to depose Mr. Arcari, or

any of the other Defendants, about their roles in Organogenesis, including any role that Mr.

Arcari may have played at the Company prior to the purported commencement of his

employment.

Plaintiffs believe that Mr. Arcari may have played an earlier role in the fraud because,

among other reasons, he is the author of a document that apparently contains inside information

concerning inappropriate activity at Organogenesis beginning with events in March 2000 — at

least one month before Mr. Arcari purportedly joined the Company and two weeks before Mr.

Hofmann's last purchase of Organogenesis stock.  Further, the short time period between Mr.

Hofmann's last purchase of stock and the purported start date of Mr. Arcari's employment with

the Company — approximately 2 weeks — suggests that Mr. Arcari may have played a role in

the alleged fraud before Mr. Arcari officially assumed his position at the Company and before

Mr. Hofmann's April 13, 2000 stock purchase.  Plaintiffs are entitled to complete discovery and

to develop the relevant facts before litigating this issue.

The timing of the Summary Judgment Motion makes clear that there is no urgency to the

resolution of the Motion before the completion of fact discovery.  All of the facts upon which the

Motion relies have been a matter of record in this action since the filing of the initial complaint.

That Complaint, filed in January 2004, alleged the approximate period of Mr. Arcari's

employment with Organogenesis, and a list of the dates of all of Mr. Hofmann's stock transactions was attached thereto.  Despite this, Mr. Arcari never raised the issue of Mr. Hofmann's standing to sue when Mr. Hofmann moved to be appointed lead plaintiff in March 2004; *or* when Mr. Arcari moved to dismiss this action in its entirety in January 2005; *or* after Mr. Hofmann produced all of his relevant trading records (which reiterated the dates of his stock purchases) in March 2006; *or* even soon after Mr. Hofmann's deposition in August 2006 (when he was questioned extensively on his transactions in Organogenesis securities).  Now, over two and a half years after those facts were first made part of the record, Mr. Arcari has suddenly decided that Mr. Hofmann has a standing problem whose resolution is so pressing that it cannot await the completion of discovery.  As footnote 1 of the Summary Judgment Motion itself suggests, the supposed urgency of the Motion has more to do with Defendants' unavailing attempt to cast doubt on Mr. Hofmann's suitability as a Class representative than with dismissing a portion of Mr. Hofmann's claims.[2]

Continuing the Motion will not prejudice Mr. Arcari at all.  As a practical matter, even if the Court were to grant the Motion (and thus dismiss only Mr. Hofmann's individual claims as to Mr. Arcari), Mr. Arcari will remain a defendant in this case *vis-à-vis* the other Plaintiffs' claims

---

[2] As set forth in Plaintiffs' Reply Memorandum of Law in Support of Motion for Class Certification ("Reply Memorandum"), filed under seal on November 17, 2006, the resolution of the standing issue would not affect Mr. Hofmann's suitability as a Class representative, given that a named plaintiff may represent a putative class even where he does not have standing to pursue all causes of action. *See* Reply Memorandum at 27-30.  *See also Picard Chem. Profit Sharing Plan v. Perrigo Co.*, No. 1:95-CV-141, 1996 U.S. Dist. LEXIS 16330, at *19-20 (W.D. Mich. Sept. 27, 1996) ("plaintiffs may assert claims that relate to alleged misstatements and omissions that occurred after they purchased their stock because they are alleged to arise from a common course of conduct"); *Hevesi v. Citigroup, Inc.*, 366 F.3d 70, 82 (2d Cir. 2004) ("Nothing in the PSLRA indicates that district courts must chose a lead plaintiff with standing to sue on every available cause of action."); *In re Initial Pub. Offering Secs. Litig.*, 214 F.R.D. 117, 123 (S.D.N.Y. 2002) (lead plaintiff need not have standing to sue on all causes of action); *Weinberg v. Atlas Air Worldwide Holdings, Inc.*, 216 F.R.D. 248, 253 (S.D.N.Y. 2003) ("Lead Plaintiff's claims do not have to be identical to the other class members' claims and in fact, the idea that there should be multiple Lead Plaintiffs with standing to sue on all possible causes of action has been rejected.").

and will be subject to the same discovery, motion practice and other obligations as the other

Defendants.  Consequently, Mr. Arcari will suffer no prejudice if the Court grants Plaintiffs'

Rule 56(f) request and defers the proceedings on the Motion until after the close of discovery in

April 2007 — just as he has suffered no prejudice during the over two year and half years he

waited before filing this Motion.  Plaintiffs, on the other hand, will suffer substantial prejudice

were the Court to rule against Mr. Hofmann on the Motion and find, on an incomplete record,

that Mr. Arcari played no substantial role in Defendants' fraudulent scheme prior to the date he

purportedly joined the Company.

## II.     PLAINTIFFS MEET THE STANDARD FOR A RULE 56(F) CONTINUANCE

In this Circuit, in order to invoke Rule 56(f), a request must: "(1) be presented in a timely

manner; (2) show good cause for the failure to discover the necessary facts sooner; (3) set forth a

plausible basis for believing that the necessary facts probably exist and can be learned in a

reasonable time; and (4) establish that the sought facts, if found, will influence the outcome of

the pending motion for summary judgment."  *Adorno v. Crowley Towing and Transportation

Co.*, 443 F.3d 122, 127 (1st Cir. 2006)(internal quotation omitted).[3]  *See* Declaration of Peter

Seidman in Support of Plaintiffs' Response to Defendant John J. Arcari's Motion for Summary

Judgment Seeking a Continuance Pursuant to Rule 56(f), attached hereto as Exhibit A.

---

[3] Rule 56(f) of the Federal Rules of Civil Procedure provides that:

> Should it appear from the affidavits of a party opposing the motion that the party cannot for reasons stated present by affidavit facts essential to justify the party's opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just.

**A.      Plaintiffs' Request Is Timely**

Mr. Arcari served Plaintiffs with the Summary Judgment Motion on November 8, 2006.
In accordance with Local Rule 7.1(b)(2), Plaintiffs are serving the instant Response and request
for a Rule 56(f) continuance within fourteen days after service of the Motion.

**B.      Plaintiffs Could Not Have Discovered The Necessary Facts Earlier Because
Discovery Did Not Begin Until May 2006 And Will Not Be Completed For
Purposes Of This Motion Until All Discovery Is Complete**

Discovery in this action was stayed under the Private Securities Litigation Reform Act,
15 U.S.C. § 78u-4(b)(3)(B), between January 7, 2004, when Mr. Hofmann filed the initial
complaint in this action, until July 20, 2005, when the Court denied Defendants' motions to
dismiss.  Further, even after the stay was lifted, it was not until May 25, 2006 — one month after
the Court's April 26, 2006 Order (Dkt. No. 115) — that Defendants first began producing
documents to Plaintiffs.[4]  To date, Plaintiffs have received from all Defendants collectively only
a few boxes of documents, including approximately 300 pages from Mr. Arcari.[5]  Because
document discovery is incomplete, Plaintiffs have taken no depositions.  It is for these reasons
that Plaintiffs have been unable to determine yet the timing and extent of Mr. Arcari's
participation in the alleged scheme.

**C.      The Confidential Arcari Document, Among Other Things, Provides A Basis
For Believing That The Necessary Facts Exist**

Plaintiffs' Corrected Consolidated Amended Class Action Complaint for Violations of
Federal Securities Laws ("Complaint") (Dkt. No. 58) alleges that Mr. Arcari "was during the

---

[4] In contrast, Plaintiffs unilaterally and voluntarily began their initial disclosure document production
more than two months earlier, on March 17, 2006.

[5] At least one of the Defendants has not even concluded his document production under the Court's June
5, 2006 Discovery Order (Dkt. No. 122), even though that Order provided that all documents were to be
produced by June 30, 2006.  On October 26, 2006 — almost four months after the June 30 deadline —
Defendant Sabolinski offered to produce for inspection approximately seven boxes of relevant documents
that were not previously produced.

relevant time period Chief Financial Officer and Vice President - Finance and Administration of

Organogenesis, having replaced Defendant Lopolito **on or about** April 30, 2000." Complaint at

¶30 (emphasis added).  The Complaint alleges only an approximate date (*i.e.*, "on or about April

30, 2000") for Mr. Arcari's assumption of the CFO and Vice President roles.  Moreover, Mr.

Arcari's own Concise Statement[6] does not even provide, or cite evidence to support,[7] a precise

start date for Mr. Arcari's employment, listing the start date in approximate terms as "***on or

about*** May 1, 2000."  *See* Concise Statement at ¶4 (emphasis added).  Even the unsupported and

approximate May 1, 2000 date alleged by Mr. Arcari is only twelve business days after Mr.

Hofmann's last purchase of Organogenesis stock on April 13, 2000.

Further, Mr. Arcari created a document in October 2001 labeled "Confidential" (the

"Confidential Arcari Document")[8] that apparently contains inside information about the

Company.  It details actions by Defendant Albert Erani to advance Defendants' fraud that began

in ***March 2000*** — at least one month before Mr. Arcari purportedly joined Organogenesis, and at

least 13 days before Mr. Hofmann's last purchase of Company stock.  Given the detailed and

apparently confidential information about the Company that Mr. Arcari possessed and set forth

in that document, it is entirely plausible that Mr. Arcari was involved with the Company, or may

have otherwise participated in the fraud, well before his purported start date at the Company.

For example, Mr. Arcari may have drafted or prepared certain public statements that are the

---

[6] The "Concise Statement" refers to Defendant John J. Arcari's Concise Statement of Material Facts in Support of His Motion for Summary Judgment on All Claims Asserted by Bruno Hofmann.

[7] Indeed, Mr. Arcari cites no evidence whatsoever for his purported start date at the Company.  Mr. Arcari cites only the allegations of the Complaint, *see* Concise Statement at ¶5, which as discussed above, references only an approximate date for Mr. Arcari's assumption of certain formal positions within the Company.

[8] The Confidential Arcari Document is attached as Exhibit 1 to Lead Plaintiffs' Unopposed Motion to Serve Third Party Subpoena upon PricewaterhouseCoopers, LLP (Dkt. No. 124).

subject of this litigation, such as positive statements regarding Apligraf or the Company's financial condition, both of which figured prominently in Defendants' fraudulent scheme. The Confidential Arcari Document raises other questions as well: Was Mr. Arcari joining a scheme about which he already had knowledge and in which he was a participant or planner? Or was he brought in by someone who believed he would combat the fraud? Plaintiffs have no way of knowing without obtaining discovery, not just of Mr. Arcari, but of other Defendants and third parties as well.

**D.      Plaintiffs Can Discover The Necessary Facts Within A Reasonable Time As Part Of The Total Merits Discovery Which Will Be Completed In April 2007**

Mr. Arcari waited over two and a half years before filing the instant Motion, even though all the facts he relies on have been a matter of record since the initial complaint was filed. He cannot, therefore, now be heard to say that an additional period of only five months, until the close of discovery in April 2007, is unreasonable. The discovery that may yield Plaintiffs' sought-after facts is intertwined with other merits discovery, and cannot be restricted to some sub-universe of discovery that can be conducted on an expedited basis. The relevant discovery is not limited to reviewing Mr. Arcari's document production and taking his deposition. Rather, it necessarily includes a review of all documents to be produced, from Defendants as well as third parties, and the taking of depositions of all Defendants who were employed at Organogenesis prior to the time of Mr. Arcari's arrival. Moreover, given the Confidential Arcari Document, Mr. Arcari may have been privy to inside information about the Company from third party sources prior to formally joining the Company. Some of those sources are not yet known at this stage of discovery. Plaintiffs are entitled to determine whether to obtain discovery from these individuals and/or entities as well.

E.     **Facts Relating To Mr. Arcari's Participation At Organogenesis Prior To April 13, 2000 Will Influence The Summary Judgment Motion**

With appropriate discovery, Plaintiffs may be able to prove that Mr. Arcari was involved at Organogenesis or participated in Defendants' scheme to defraud before Mr. Hoffmann's last stock purchase in such a way that would render him liable to Mr. Hofmann under the federal securities laws.[9]  "[P]rimary liability under Section 10(b) and Rule 10b-5 may in some cases be found where a person 'substantially participates in a manipulative or deceptive scheme . . . even if a material misstatement by another person creates the nexus between the scheme and the securities market.'"  *Quaak v. Dexia, S.A.*, 357 F. Supp. 2d 330, 341 (D. Mass. 2005).[10]  Here, the Confidential Arcari Document suggests that a manipulative and deceptive scheme was at work at the Company.  *See* Confidential Arcari Document at 3 ("Brokers have called the Company to say that Albert [Erani] has requested them to manipulate the market for the Company's stock…") (Dkt. No. 124).  Until discovery is completed, Plaintiffs will not be able to determine the timing and extent of Mr. Arcari's participation.  As it currently stands, all relevant information on this issue is in the possession of Defendants and possibly third parties.[11]

---

[9] "Any person or entity, including a lawyer, accountant, or bank, who employs a manipulative device or makes a material misstatement (or omission) on which a purchaser or seller of securities relies may be liable as a primary violator under 10b-5, assuming all of the requirements for primary liability under Rule 10b-5 are met."  *Central Bank, N.A. v. First Interstate Bank, N.A.*, 511 U.S. 164, 191 (1994).

[10] For instance, in *Fezzani v. Bear, Stearns & Co.*, 384 F. Supp. 2d 618 (S.D.N.Y. 2004), plaintiffs' claims against certain defendants were upheld even though those defendants did not make any statement, did not have a fiduciary duty to speak, and plaintiffs did not even allege that they relied on any statements or omissions by defendants.  *Id*. at 644.  Instead, it was enough that the defendants "masterminded and directly participated in the fraudulent conduct."  *Id*.

[11] Indeed, "where, as here, plaintiffs' case turns so largely on their ability to secure evidence within the possession of defendants, courts should not render summary judgment because of gaps in a plaintiff's proof without first determining that plaintiff has had a fair chance to obtain necessary and available evidence from the other party."  *Carmona v. Toledo*, 215 F.3d 124, 133 (1st Cir. 2000).

Plaintiffs should be given an opportunity to obtain this information before they are forced to respond to any motions for summary judgment.

## III.      CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court defer consideration of Mr. Arcari's Summary Judgment Motion under Rule 56(f) until Plaintiffs have had an opportunity to complete all fact discovery.

Dated: November 22, 2006                              **MOULTON & GANS, P.C.**

By:      /s/ Nancy Freeman Gans
Nancy Freeman Gans, BBO #184540
55 Cleveland Road
Wellesley, MA 02481
Telephone:  (781) 235-2246

*Liaison Counsel and Local Counsel
for Plaintiffs and the Class*

**MILBERG WEISS BERSHAD
  & SCHULMAN LLP**
Sanford P. Dumain
Ariana J. Tadler
Peter Sloane
Peter Seidman
S. Melisa Twomey
One Pennsylvania Plaza
New York, NY  10119
(212) 594-5300

*Lead Counsel for Plaintiffs and the Class*

## CERTIFICATE OF SERVICE

I, Nancy Freeman Gans, hereby certify that a true copy of the above document was served upon the attorney of record for each party via ECF.

/s/ Nancy Freeman Gans
Nancy Freeman Gans

# EXHIBIT A

## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE ORGANOGENESIS SECURITIES LITIGATION | Case No.: 1:04cv10027-JLT |

### DECLARATION OF PETER SEIDMAN IN SUPPORT OF PLAINTIFFS' RESPONSE TO DEFENDANT JOHN J. ARCARI'S MOTION FOR SUMMARY JUDGMENT SEEKING A CONTINUANCE PURSUANT TO RULE 56(F)

I, Peter Seidman, hereby declare as follows:

I am a member of the firm Milberg Weiss Bershad & Schulman LLP, Lead Counsel for Plaintiffs and the proposed Class in this action. I submit this Declaration in support of Plaintiffs' Response to Defendant John J. Arcari's Motion for Summary Judgment Seeking a Continuance Pursuant to Rule 56(f) of the Federal Rules of Civil Procedure.

1.      The Motion asserts that Mr. Hofmann has no standing to sue Mr. Arcari because Mr. Arcari did not join the company until two weeks after Mr. Hofmann's last purchase of Organogenesis securities on April 13, 2000.

2.      Plaintiffs cannot at this time present by affidavit facts essential to justify Plaintiffs' opposition to Arcari's Motion for Summary Judgment for the following reasons:

a.      Document discovery is incomplete and discovery by deposition has not begun;

b.      Plaintiffs believe, based on the Confidential Arcari Document (as defined in the accompanying memorandum of law), and the short period of time between Mr. Hofmann's last purchase of Organogenesis stock (April 13, 2000) and Mr. Arcari's purported start date at Organogenesis (May 1, 2000), that Mr. Arcari may have participated in the fraudulent scheme

alleged in the complaint before Mr. Hofmann's last purchase of Organogenesis securities, and that evidence of such participation may be developed during discovery;

      c.     The relevant discovery is intertwined with all other merits discovery and cannot be efficiently divided in order to be conducted on an expedited basis before the conclusion of all fact discovery; and

      d.     Only five months of discovery remain before the discovery cut-off, providing a reasonably limited time within which to conduct the necessary discovery.

      3.     This discovery has not been conducted because (a) discovery in this action did not commence until May 2006, when Defendants began producing their initial disclosure documents in response to the Court's April 26, 2006 Order (Dkt. No. 115), and (b) since then, Defendants have produced only a few boxes of documents and non-parties Organogenesis, Novartis AG and PricewaterhouseCoopers LLP have not complied with Plaintiffs' subpoenas *duce tecum*. Plaintiffs have taken no depositions because document discovery is incomplete.

I declare under penalty of perjury that the foregoing is true and correct.  Executed on this 22nd day of November, 2006.

                /s/ Peter Seidman
                Peter Seidman