UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE ORGANOGENESIS<br>SECURITIES LITIGATION | No. 04-CV-10027 (JLT)<br><br>(Leave to File Granted on<br>January 3, 2007) |

**DEFENDANT JOHN J. ARCARI'S REPLY MEMORANDUM
IN SUPPORT OF HIS MOTION FOR SUMMARY JUDGMENT
ON ALL CLAIMS ASSERTED BY BRUNO HOFMANN**

Defendant John J. Arcari ("Mr. Arcari") submits this Reply Memorandum in Support of his Motion for Summary Judgment on All Claims Asserted by Bruno Hofmann.

**Introduction**

In their Rule 56(f) response to Mr. Arcari's Summary Judgment Motion, plaintiffs concede that -- based on the current, undisputed record -- *Mr. Hofmann does not have standing to sue Mr. Arcari for securities fraud*. In sum, plaintiffs cannot and do not dispute that Mr. Hofmann purchased stock in Organogenesis *before* Mr. Arcari joined the company, and therefore, they concede that Mr. Hofmann did not rely on any statement by Mr. Arcari when making his investment in Organogenesis.

Faced with this undisputed record, plaintiffs argue that the summary judgment motion should be decided later because discovery *might* reveal that Mr. Arcari somehow controlled Organogenesis' public statements at a time when he was not even employed by Organogenesis. However, it is well-settled that a plaintiff in a securities fraud case must first state a claim against a defendant before proceeding with discovery; one cannot

proceed with discovery in the hope of finding a claim.[1]  Because Mr. Hofmann does not (and cannot) allege that Mr. Arcari said or did anything at Organogenesis prior to April 13, 2000, the date of Mr. Hofmann's last purchase of Organogenesis stock, Mr. Hofmann lacks standing to sue Mr. Arcari.  Accordingly, Mr. Arcari's motion for summary judgment on all claims asserted by Mr. Hofmann should be allowed.

## Argument

### I. Mr. Arcari's Motion For Summary Judgment Can, And Indeed, Must Be Decided Before The Motion For Class Certification.

In their Rule 56(f) response to Mr. Arcari's motion for summary judgment, the plaintiffs argue that Mr. Arcari's motion should be decided on the eve of trial, and certainly does not need to be decided in connection with their pending motion for class certification.  Plaintiffs are incorrect.  It is well-settled in this district that the question of standing must be resolved *before* a motion for class certification is decided.  See, e.g., Forsythe v. Sun Life Fin., Inc., 417 F. Supp. 2d 100, 118-19 (D. Mass. 2006) ("Standing is a threshold inquiry and is particularly important in securities litigation, where *strict application of standing principles is needed to avoid vexatious litigation and abusive discovery*.") (emphasis added); Modell v. Eliot Savs. Bank, 139 F.R.D. 17, 20 (D. Mass. 1991) ("When the issue of standing is raised by a party, this Court must resolve that issue *before* considering the class certification requirements of Rule 23.").

Moreover, and despite plaintiffs' protests to the contrary, the fact that Mr. Hofmann did not rely on any statements made by Mr. Arcari means that he cannot, on behalf of himself *or* a class of investors, prosecute a claim related to Mr. Arcari's post-

---

[1] See, e.g., Greebel v. FTP Software, Inc., 182 F.R.D. 370, 376 (D. Mass. 1998) ("The new law [the PSLRA] requires Plaintiffs to plead particular facts sufficient to show their case has merit *before* gaining unfettered access to Defendants' files."), aff'd 194 F.3d 185 (1st Cir. 1999).

April 13, 2000 statements. Thus, this case is distinguishable from cases cited by plaintiffs (see Dkt. No. 179, p. 3 n.2), in which a plaintiff relied on some, but not all, statements by defendants, and therefore, was deemed an appropriate class representative with regard to a series of challenged statements by those defendants. Contrast Picard Chemical Inc. Profit Sharing Plan v. Perrigo Co., 1996 WL 739170, at * 4-5 (W.D. Mich. Sept. 27, 1996) (class certified where challenged statements were deemed to arise from "common course of conduct" by all defendants) with Forsythe, 417 F. Supp. 2d at 119 ("plaintiffs may not rely on the rules-based class action procedural device as a method to 'bootstrap themselves into standing they lack'").[2]

Here, Mr. Hofmann concedes that he did not rely on *any* statement by Mr. Arcari when deciding to purchase Organogenesis stock. Thus, Mr. Hofmann cannot represent a class of investors who may have standing to sue Mr. Arcari for securities fraud. See Gross v. Summa Four, Inc., 93 F.3d 987, 993 (1st Cir. 1996) (plaintiff "cannot maintain an action on behalf of class members to redress an injury for which he has no standing in his own right") (superseded by statute on other grounds). For this reason, as well, Mr. Arcari's motion for summary judgment should be decided before the plaintiffs' motion for class certification.

---

[2] Two of the other cases cited by plaintiffs are inapposite because they relate to motions for appointment as Lead Plaintiff, not to motions for class certification. See Weinberg v. Atlas Air Worldwide Holdings, Inc., 216 F.R.D. 248, 254 (S.D.N.Y. 2003) ("there is no need to appoint multiple Lead Plaintiffs in order to represent different causes of action when subclasses or separate representatives may be appointed, if necessary, as the litigation proceeds"); In re Initial Public Offering Secs. Litig., 214 F.R.D. 117, 123 (S.D.N.Y. 2002) ("Nowhere is it suggested that the concept of 'lead plaintiff' was intended to be coterminous with 'named plaintiffs' or 'class representatives.'"). The Second Circuit's decision in Hevesi v. Citigroup, Inc., 366 F.3d 70, 82 (2d Cir. 2004) does not help Mr. Hofmann's argument, either. There, additional named plaintiffs were added to the case in order to address the fact that the original lead plaintiff did not have standing to bring claims based upon offerings in which that plaintiff did not purchase bonds.

**II.      Mr. Arcari Did Not Join Organogenesis Until May 1, 2000.**

In further support of their request to postpone consideration of Mr. Arcari's summary judgment motion, plaintiffs contend that "it is entirely plausible that Mr. Arcari was involved with the Company" (Dkt. No. 179, p. 6) before he was even employed by Organogenesis. This suggestion is without merit.

First, the plaintiffs allege in their complaint -- based upon publicly available documents, no doubt -- that Mr. Arcari joined the company on April 30, 2000. See Comp., ¶ 30 (Dkt. No. 58); May 4, 2000 Organogenesis Press Release.[3] In his answer, Mr. Arcari admitted that he joined the company on May 1, 2000. Answer, ¶ 30 (Dkt. No. 101). According to the pleadings and the public record, therefore, it is undisputed that Mr. Arcari joined Organogenesis *after* Mr. Hofmann purchased his stock.[4] Thus, there is no basis for believing -- or pretending to believe as plaintiffs do in their Rule 56(f) response -- that Mr. Arcari worked for Organogenesis before May 1, 2000.

Moreover, the so-called "Confidential Arcari Document," which is dated October 18, 2001, does not demonstrate that Mr. Arcari was involved with Organogenesis before May 1, 2000, either. Indeed, the entries on that document (see Ex. 1 to Dkt. No. 124) relating to March 2000 describe (a) the redemption of convertible stock for cash, and (b) a decision not to sell additional stock "off the shelf," issues that were directly addressed

---

[3] The press release is attached as Ex. 1 to the January 3, 2007 Affidavit of Sara Jane Shanahan, which is filed herewith. See also Ex. 2 to the January 3, 2007 Shanahan Affidavit, which is a Definitive Notice and Proxy Statement, DEF 14A, dated May 24, 2001, which states: "Mr. Arcari joined the company in May 2000 …" (p. 8 n.3), and notes that from September 1999 to April 2000, Mr. Arcari was Chief Financial Officer of another company (p. 6).

[4] In addition, a four-year-old document produced by Mr. Arcari in this action demonstrates that his employment began on May 1, 2000. See October 29, 2002 Proof of Claim Form filed by Mr. Arcari in the Organogenesis bankruptcy (a redacted copy of which is Ex. 3 to the January 3, 2007 Shanahan Affidavit).

4

in Organogenesis' public statements in February and March 2000 (see Comp., ¶¶ 77, 80, and 83) and in Organogenesis' May 15, 2000 Form 10-Q, which was filed shortly after Mr. Arcari joined the company.[5] Thus, the "Confidential Arcari Document" does not give rise to an inference that Mr. Arcari had access to non-public information prior to the time that he joined the company.

More importantly, the document certainly does not give rise to an inference that Mr. Arcari made or controlled Organogenesis' public statements before he was even employed by the company. Because plaintiffs neither make nor support specific allegations regarding Mr. Arcari's involvement with the company's public statements before April 13, 2000, the last date Mr. Hofmann purchased Organogenesis stock, Mr. Hofmann does not state a claim against Mr. Arcari. See Lasala v. Bordier et Cie, 452 F. Supp. 2d 575, 581 (D.N.J. 2006) (holding that in order to bring Section 10(b) claim, plaintiffs "would need to show that these Defendants made fraudulent misrepresentations or omissions which harmed" plaintiffs) (citing Central Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A., 511 U.S. 164, 177-78 (1994)); Aldridge v. A.T. Cross Corp., 284 F.3d 72, 85 (1st Cir. 2002) (in order to prove "control person liability," plaintiff must demonstrate that Section 20(a) defendant "*actually exercise[d] control*

---

[5] In the May 15, 2000 Form 10-Q, which Mr. Arcari signed as one of his early acts as CFO, the company stated: "In March 2000, we redeemed for cash all outstanding shares of Series C redeemable convertible preferred stock for $6,180,000." See May 15, 2000 Form 10-Q, p. 7 (which is Ex. 4 to the January 3, 2007 Shanahan Affidavit). Moreover, the May 15, 2000 Form 10-Q also discloses a "Common Stock Issuance" in February and March 2000, after the Securities and Exchange Commission "declared effective a shelf registration for the placement of up to 3,000,000 shares of common stock." The disclosure goes on to describe the placement of 788,925 shares in February 2000 and 300,000 shares in March 2000. See id., p. 8.

*over*" person or entity found liable as primary violator of Exchange Act) (emphasis added).[6]

In light of this background, plaintiffs have failed to meet their burden under Rule 56(f) of "set[ting] forth a plausible basis for believing that the necessary facts probably exist" to give Mr. Hofmann standing to sue Mr. Arcari. See Adorno v. Crowley Towing and Transportation, 443 F.3d 122, 127 (1st Cir. 2006). Indeed, plaintiffs have set forth no basis whatsoever for believing that Mr. Arcari was in any way involved with, let alone in

---

[6] The cases cited by plaintiffs on page 8 of their Rule 56(f) response do not support a contrary conclusion. In Fezzani v. Bear, Stearns & Co., Inc., 384 F. Supp. 2d 618, 644-45 (S.D.N.Y. 2004), the Court dismissed claims where, like here, there were "no allegations" relating to particular defendants' participation in alleged schemes. Id. at 644 ("There are no allegations, however, regarding the Apollo Defendants' manipulation of PaperClip securities, the only securities allegedly received by the Burgesses. Thus, the Burgesses have not stated a claim for market manipulation against the Apollo Defendants."). Similarly, in Quaak v. Dexia, S.A., 357 F. Supp. 2d 330, 341-42 (D. Mass. 2005), the Court was mindful of the Supreme Court's decision in Central Bank, 511 U.S. at 191, which held that "a private plaintiff may not maintain an aiding and abetting suit under § 10(b)." Indeed, the Quaak court noted that plaintiffs could state a claim only "by alleging facts sufficient to show (1) that defendants substantially participated in a fraudulent scheme; and (2) when the scheme is viewed as a whole, the plaintiffs relied on it." Id. at 341-42. In this case, however, plaintiffs do not allege that Mr. Arcari participated in the business of Organogenesis in any way whatsoever prior to the time that he joined the company. Accordingly, the "rule" of the Quaak case does not apply.

At best, therefore, through their Rule 56(f) response, plaintiffs seek expansive discovery from all defendants and numerous third parties to support a claim that *they have not even pled*, let alone pled in accordance with Fed. R. Civ. P. Rule 9(b), to wit, that Mr. Arcari "was involved at Organogenesis or participated in Defendants' scheme to defraud before Mr. Hofmann's last stock purchase…." (Dkt. No. 179, p. 8). Such a claim, if pled, would not survive a motion to dismiss, as plaintiffs can point to no facts to support their conclusory allegations. In addition, such allegations would not state a claim for violation of Section 10(b) of the Exchange Act, which imposes liability only on defendants who make or control misleading public statements that cause harm to investors, not on those who are peripherally "involved" with misleading statements or "schemes." See In re Charter Comm., Inc., Sec. Litig., 443 F.3d 987, 992 (8th Cir. 2006) (holding that "any defendant who does not make or affirmatively cause to be made a fraudulent misstatement or omission, or who does not directly engage in manipulative securities trading practices, is at most guilty of aiding and abetting and cannot be held liable under § 10(b) or any subpart of Rule 10b-5," and affirming dismissal of claims against third parties who did not make any challenged statements); Homestore.com Inc. Sec. Litig., 252 F. Supp. 2d 1018, 1038-41 (C.D. Cal. 2003) ("Because plaintiff did not (and cannot) sufficiently allege that any of the … third party … defendants substantially contributed to those [challenged] statements, it cannot state a claim against those defendants" for violation of Section 10(b)).

control of, Organogenesis' public statements prior to the time that he became employed by the company. Accordingly, plaintiffs have also failed to satisfy the Rule 56(f) requirement of demonstrating that the discovery they seek is likely to "influence the outcome of the pending motion for summary judgment." Id.; see note 6, supra. In the end, therefore, plaintiffs' Rule 56(f) response seeks nothing more than to postpone the inevitable -- dismissal of Mr. Hofmann's claims against Mr. Arcari for lack of standing.

## Conclusion

Based upon the undisputed record in this case, Mr. Hofmann does not have standing to sue Mr. Arcari for securities fraud. Moreover, Mr. Hofmann and Mr. Madigan – the two remaining named plaintiffs in this case – have stated no reasonable basis for believing that Mr. Arcari somehow controlled Organogenesis before he was even employed by Organogenesis. Accordingly, the motion for summary judgment is ripe for decision, and summary judgment should enter in Mr. Arcari's favor on all claims asserted by Mr. Hofmann.

Respectfully submitted,

JOHN J. ARCARI

By his attorneys,

/s/ Sara Jane Shanahan

Sara Jane Shanahan (BBO #567837)
Griesinger, Tighe & Maffei, LLP
176 Federal Street
Boston, MA  02110
(617) 542-9900

Dated: January 3, 2007

CERTIFICATE OF SERVICE

      I hereby certify that this document, filed through the ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing and paper copies will be sent to those indicated as non-registered participants as of January 3, 2007.

      /s/ Sara Jane Shanahan
      Sara Jane Shanahan (BBO #567837)