# EXHIBIT 2

```
-----BEGIN PRIVACY-ENHANCED MESSAGE-----
Proc-Type: 2001,MIC-CLEAR
Originator-Name: webmaster@www.sec.gov
Originator-Key-Asymmetric:
 MFgwCgYEVQgBAQICAf8DSgAwRwJAW2sNKK9AVtBzYZmr6aGjlWyK3XmZv3dTINen
 TWSM7vrzLADbmYQaionwg5sDW3P6oaM5D3tdezXMm7z1T+B+twIDAQAB
MIC-Info: RSA-MD5,RSA,
 IiQv7TwiUiZP/8RLMtz6PmORTRTjNV1WggJojGFRVR53sny5CAg+/l6xaRBdiyA2
 Qbjp0X6Cchu9eqVdLK93iQ==
```

<SEC-DOCUMENT>0000927016-01-501192.txt : 20010627
<SEC-HEADER>0000927016-01-501192.hdr.sgml : 20010627
ACCESSION NUMBER:		0000927016-01-501192
CONFORMED SUBMISSION TYPE:	DEF 14A
PUBLIC DOCUMENT COUNT:		1
CONFORMED PERIOD OF REPORT:	20010621
FILED AS OF DATE:		20010524

FILER:

	COMPANY DATA:
		COMPANY CONFORMED NAME:			ORGANOGENESIS INC
		CENTRAL INDEX KEY:			0000779733
		STANDARD INDUSTRIAL CLASSIFICATION:	BIOLOGICAL PRODUCTS (NO DIAG
		IRS NUMBER:				042871690
		STATE OF INCORPORATION:			DE
		FISCAL YEAR END:			1231

	FILING VALUES:
		FORM TYPE:		DEF 14A
		SEC ACT:
		SEC FILE NUMBER:	001-09898
		FILM NUMBER:		1646984

	BUSINESS ADDRESS:
		STREET 1:		150 DAN RD
		CITY:			CANTON
		STATE:			MA
		ZIP:			02021
		BUSINESS PHONE:		6175750775

	MAIL ADDRESS:
		STREET 1:		150 DAN ROAD
		STREET 2:		150 DAN ROAD
		CITY:			CANTON
		STATE:			MA
		ZIP:			01002
</SEC-HEADER>
<DOCUMENT>
<TYPE>DEF 14A
<SEQUENCE>1
<FILENAME>ddef14a.txt
<DESCRIPTION>DEFINITIVE NOTICE AND PROXY STATEMENT
<TEXT>

<PAGE>


                    SCHEDULE 14A - INFORMATION

   Proxy Statement Pursuant to Section 14(a) of the Securities Exchange Act of

```
                              1934
                       (Amendment No.  )
```

Filed by the Registrant  /X/

Filed by a Party other than the Registrant  /  /

Check the appropriate box:
/_/  Preliminary proxy statement
/_/  Confidential, for the Use of the Commission Only (as permitted by Rule
     14a-6(e)(2))
/X/  Definitive proxy statement
/_/  Definitive additional materials
/_/  Soliciting Material Pursuant to Rule 240.14a-11(c) or Rule 240.14a-12

```
                       ORGANOGENESIS INC.
         -------------------------------------------------
            (Name of Registrant as Specified in Its Charter)


         -------------------------------------------------
         (Name of Person(s) Filing Proxy Statement, if other than the Registrant)
```

Payment of Filing Fee (Check the appropriate box):

/X/  No fee required.

/_/  Fee computed on table below per Exchange Act Rules 14a-6(i)(4) and 0-11.

     (1)  Title of each class of securities to which transaction applies:
          _____

     (2)  Aggregate number of securities to which transaction applies:
          _____

     (3)  Per unit price or other underlying value of transaction computed
          pursuant to Exchange Act Rule 0-11 (set forth the amount on which the
          filing fee is calculated and state how it was determined):
          --------------------------------------------------------------------

     (4)  Proposed maximum aggregate value of transaction:
          _____

     (5)  Total fee paid:
          _____

/_/  Fee paid previously with preliminary materials.

/_/  Check box if any part of the fee is offset as provided by Exchange Act
     Rule 0-11(a)(2) and identify the filing for which the offsetting fee was
     paid previously. Identify the previous filing by registration statement
     number, or the Form or Schedule and the date of its filing.

     (1)  Amount previously paid:
          _____

     (2)  Form, Schedule or Registration Statement No.:
          _____

(3)   Filing party:

_____

(4)   Date filed:

_____

<PAGE>

ORGANOGENESIS INC.

NOTICE OF ANNUAL MEETING OF STOCKHOLDERS

Date: Thursday, June 21, 2001
Time: 10:00 a.m.
Place: The Millennium Hotel New York UN Plaza
One United Nations Plaza
44th Street at First Avenue
New York, NY 10017-3575

Dear Stockholders:

You are cordially invited to attend our Annual Meeting of Stockholders and
to vote on the following proposals:

Item 1. To elect ten (10) directors to serve for the ensuing year;

Item 2. To ratify the selection by the Board of Directors of
PricewaterhouseCoopers LLP as our independent accountants for the 2001
fiscal year; and

Item 3. To transact such other business as may properly come before the
meeting or any adjournment or adjournments thereof.

Stockholders of record at the close of business on April 25, 2001 will be
entitled to notice of, and to vote at, the meeting or any adjournment thereof.

By Order of the Board of Directors,

John J. Arcari, Secretary

150 Dan Road
Canton, Massachusetts 02021
May 24, 2001

RETURN ENCLOSED PROXY CARD

YOUR VOTE IS IMPORTANT. WHETHER OR NOT YOU EXPECT TO ATTEND THIS MEETING,
PLEASE COMPLETE, SIGN AND DATE THE ENCLOSED PROXY AND PROMPTLY MAIL IT IN THE
ENCLOSED ENVELOPE IN ORDER TO ASSURE REPRESENTATION OF YOUR SHARES AT THE
MEETING. NO POSTAGE NEED BE AFFIXED IF THE PROXY IS MAILED IN THE UNITED
STATES.
<PAGE>

ORGANOGENESIS INC.
150 Dan Road
Canton, Massachusetts 02021

PROXY STATEMENT FOR THE ANNUAL MEETING OF STOCKHOLDERS

June 21, 2001

General

   This Proxy Statement is furnished in connection with the solicitation of
proxies by the Board of Directors of Organogenesis Inc. (the "Company") for
use at the 2001 Annual Meeting of Stockholders. This meeting will be held on
Thursday, June 21, 2001 at 10:00 a.m. at The Millennium Hotel New York UN
Plaza, One United Nations Plaza, 44th Street at First Avenue, New York, NY
10017.

Voting Rights and Votes Required

   All properly signed and returned proxies will be voted in accordance with
the instructions contained therein and, if no choice is specified, the proxies
will be voted in favor of the proposals set forth in the accompanying Notice
of Annual Meeting. You have the right to revoke your proxy and change your
vote at any time prior to its exercise at the meeting by giving written notice
to that effect to the Secretary of the Company.

   The holders of a majority of the number of shares of common stock issued,
outstanding and entitled to vote on any matter shall constitute a quorum with
respect to that matter at the meeting. Shares of common stock present in
person or represented by proxy including shares which abstain or broker non-
votes (as defined below) will be counted for purposes of determining whether a
quorum is present.

   Nominees for election of directors at the meeting will be elected by a
plurality of the votes of the shares present in person or represented by proxy
at the meeting. Withholding authority to vote for a nominee for director will
have no effect to the outcome of the vote. For proposals to ratify the
appointment of PricewaterhouseCoopers LLP as the Company's independent public
accountants for the fiscal year ending December 31, 2001, the affirmative vote
of a majority of shares of common stock present or represented by proxy and
entitled to vote on the matter is necessary for approval. Because abstentions
are treated as shares present or represented and entitled to vote, abstentions
with respect to these proposals have the same effect as a vote against the
proposal.

   If you hold your shares of common stock through a broker, bank or other
representative, generally the broker or your representative may only vote the
common stock that it holds for you in accordance with your instructions.
However, if it has not timely received your instructions, the broker or your
representative may vote on certain matters for which it has discretionary
voting authority. If a broker or your representative cannot vote on a
particular matter because it does not have discretionary voting authority,
this is a "broker non-vote" on that matter. As to the election of directors,
and the ratification of independent public accountants, broker non-votes are
not deemed to be present and represented and are not entitled to vote, and
therefore will have no effect on the outcome of the vote.

Record Date and Other Information

   April 25, 2001 is the record date for the determination of stockholders
entitled to vote at the meeting. On that date, an aggregate of 34,472,460
shares of common stock (excluding treasury shares) were outstanding and
entitled to vote. Each share is entitled to one vote.

   Our Annual Report and Form 10-K for the year ended December 31, 2000 are
being mailed to stockholders concurrently with this Notice and Proxy Statement
on or about May 24, 2001.
<PAGE>

The expenses connected with soliciting proxies will be borne by the Company. In addition to solicitations by mail, directors, officers and regular employees, without additional remuneration, may solicit proxies by telephone, telegraph and personal interviews. We will pay American Stock Transfer & Trust Company to assist with the solicitation of proxies. Brokers, custodians and fiduciaries will be requested to forward proxy soliciting material to the owners of stock held in their names, and will be reimbursed for out-of-pocket expenses in connection with the distribution of proxy materials.

On the following pages, we have provided information relating to the Board of Directors, principal stockholders and executive officers, as well as other information required to be disclosed to stockholders, including a comparative stock performance graph. Following this information are the proposals, items one through three, as set forth in the Notice of Annual Meeting.

Information About the Board of Directors

The Board of Directors

The Company's Restated By-Laws provide for the Company's business to be managed by or under the direction of the Board of Directors. Under the Company's Restated By-Laws, the number of directors is fixed from time to time by the Board of Directors. The Board of Directors currently consists of nine members. The Board of Directors oversees the business and affairs of Organogenesis Inc. and monitors the performance of management. The directors keep themselves informed through discussions with the Chief Executive Officer, other key executives, and the Company's principal external advisors (legal counsel and external auditors), by reading reports and other materials that the Company's management sends to them, and by participating in Board and committee meetings.

During 2000, the Board of Directors held four meetings and seven telephonic meetings. Each incumbent director attended at least 75% of the Board of Directors meetings that were held during his or her tenure and of committees meetings on which he or she served.

The Committees of the Board

The Audit Committee is currently comprised of Dr. Anton Schrafl (chairman), Mr. James Apostolakis, Mr. David Gardner and Ms. Marguerite Piret. Mr. Apostolakis joined the Audit Committee in May 2000. The Audit Committee held two meetings during 2000. The responsibilities of this committee are to: (1) make recommendations to the Board of Directors regarding the engagement of independent accountants; (2) review the arrangements for the scope of the independent audit and the results of the audit and to report on the same to the Board of Directors; (3) establish and monitor policy relative to non-audit services performed by the independent accountants; and (4) assure that the accountants are in fact independent.

The Compensation Committee is currently comprised of Mr. James Apostolakis, Mr. Albert Erani, Mr. David Gardner, Dr. Bjorn Olsen and Ms. Marguerite Piret. Mr. Apostolakis joined the Compensation Committee in May 2000. The Compensation Committee held two meetings during 2000. This committee provides recommendations to the Board of Directors as to all elements of compensation arrangements with executive officers. It also administers the 1986 and 1995 Stock Option Plans, the 1999 Non-Qualified Stock Option Plan and the 1991 Employee Stock Purchase Plan.

The Executive Committee is currently comprised of Mr. Albert Erani

(chairman), Mr. Bernard Marden and Dr. Michael Sabolinski. Mr. Philip Laughlin served on the Executive Committee during 2000. The Executive Committee manages and participates in all aspects of the negotiations of the Company with Novartis Pharma AG and any other entity relating to the Apligraf license, and such other arrangements involving other products and with such other parties as may be deemed appropriate by the Executive Committee.

The Nominating Committee is currently comprised of Mr. Albert Erani, Mr. David Gardner, Mr. Bernard Marden and Mr. Glenn Nussdorf. Mr. Gardner and Mr. Nussdorf joined the Nominating Committee in May 2000.

<center>2</center>

<PAGE>

The Nominating Committee held one meeting during 2000. This committee identifies and recommends candidates for nomination to the Board of Directors. It does not consider nominees recommended by stockholders.

Compensation Committee Interlocks and Insider Participation. The Compensation Committee is currently comprised of Mr. James Apostolakis, Mr. Albert Erani, Mr. David Gardner, Dr. Bjorn Olsen and Ms. Marguerite Piret. Mr. Richard Cresse served as a member and the chairman of the Compensation Committee during the period beginning January 1, 2000 through December 31, 2000. Of the five members of the Compensation Committee named above, Mr. Albert Erani and Mr. David Gardner purchased $2,500,000 and $2,000,000, respectively, of 7%, five-year convertible debentures and warrants to purchase common stock, in a $20,000,000 financing completed March 31, 1999. See "Certain Transactions."

Compensation of Directors

Directors who are also officers of the Company do not receive any compensation for their services as directors. Directors who are not also officers of the Company receive $500 for each Board of Directors meeting attended, $300 for each committee meeting attended and a retainer of $1,750 per quarter. Directors are also reimbursed for out-of-pocket expenses that they incur in connection with the business and affairs of the Company.

Under the 1994 Director Stock Option Plan approved by stockholders in 1994, as amended in August 2000 (the "1994 Director Plan"), stock options to purchase 15,000 shares of common stock shall be granted to non-employee directors upon their initial election as a director. In addition, the 1994 Director Plan provides for the grant of options to purchase an additional 10,000 shares to each eligible non-employee director on the second Wednesday of March in each even numbered calendar year commencing in 1996. The 1994 Director Plan provides that the option price be at fair market value on the date of grant and vest in equal annual installments over a five-year period beginning one year from the date of grant. All options expire ten years from the date of grant. Options for 10,000 shares each were granted under the 1994 Director Plan in March 2000 to each of Mr. Cresse, Mr. Erani, Mr. Gardner, Mr. Marden, Dr. Olsen, Ms. Piret and Dr. Schrafl, at an exercise price of $18.625 per share. Options for 15,000 shares each were granted under the 1994 Director Plan in May 2000 to each of Mr. Nussdorf and Mr. Apostolakis, at an exercise price of $8.25 per share. Options for 10,000 shares each with one-year vesting were granted under the 1994 Director Plan in August 2000 to each of Mr. Apostolakis, Mr. Cresse, Mr. Erani, Mr. Gardner, Mr. Marden, Mr. Nussdorf, Ms. Piret and Dr. Schrafl, at an exercise price of $13.125 per share. Due to insufficient shares reserved under the 1994 Director Plan, the Company granted an option for 10,000 shares with one-year vesting to Dr. Olsen in August 2000, pursuant to the 1999 Non-Qualified Stock Option Plan. As of April 9, 2001

there were 1,846 shares reserved for issuance under the 1994 Director Plan.
The Company expects to make a grant of 15,000 shares to Dr. Richard Ulevitch,
if elected to the Board of Directors, under the 1999 Non-Qualified Stock
Option Plan.

3

<PAGE>

Information About Principal Stockholders

   The following table sets forth certain information as of April 20, 2001 with
respect to the beneficial ownership of common stock by: (1) each person known
to own beneficially more than 5% of the outstanding shares of common stock;
(2) each director and nominee for director; (3) our Chief Executive Officer
during 2000 and the three other executive officers listed in the "Summary
Compensation Table" contained on page eight of this proxy; and (4) the
directors and executive officers as a group:

<TABLE>
<CAPTION>

| Name and Address of Beneficial Owner | Shares of Common Stock Beneficially Owned(1) | Percent of Common Stock Outstanding |
| --- | --- | --- |
| <S> | <C> | <C> |
| North American Management Corp................... | 2,591,240(2) | 7.5% |
| Ten Post Office Square | | |
| Boston, MA 02109 | | |
| Michael L. Sabolinski, M.D...................... | 433,708(3) | 1.2% |
| James J. Apostolakis........................... | 135,105(4) | * |
| Albert Erani................................... | 1,638,222(5) | 4.7% |
| David A. Gardner............................... | 758,298(6) | 2.2% |
| Bernard A. Marden.............................. | 956,912(7) | 2.8% |
| Glenn Nussdorf................................. | 28,500(8) | * |
| Bjorn R. Olsen, M.D., Ph.D..................... | 2,000(9) | * |
| Marguerite A. Piret............................ | 60,784(10) | * |
| Anton E. Schrafl, Ph.D......................... | 438,215(11) | 1.3% |
| Richard J. Ulevitch............................ | -- | -- |
| Nancy L. Parenteau, Ph.D....................... | 359,380(12) | 1.0% |
| John J. Arcari................................. | 12,000(13) | * |
| Paul J. DiCicco................................ | -- | -- |
| Philip M. Laughlin............................. | 100,000(14) | * |
| All directors and executive officers as a group (12 persons)................................... | 4,823,124(15) | 13.4% |

</TABLE>
- --------
* Less than 1%.

(1) Except as otherwise specifically noted, the number of shares stated as
    being owned beneficially includes shares believed to be held beneficially
    by spouses, minor children and grandchildren. The inclusion of such shares
    in this Proxy Statement, however, does not constitute an admission that
    the named stockholders are direct or indirect beneficial owners of such
    shares. The number of shares of common stock issued and outstanding at
    April 20, 2001 was 34,472,460. The calculation of percentage ownership for
    each listed beneficial owner is based upon the number of shares of common
    stock issued and outstanding at April 20, 2001, plus shares of common
    stock subject to options held by such person or entity at April 20, 2001
    and exercisable within 60 days thereafter. The persons and entities named

in the table have sole voting and investment power with respect to all
shares shown as beneficially owned by them, except as provided below.

(2) Includes 2,475,375 shares based on information provided by North American
Management Corp as of April 2, 2001; 86,207 shares of common stock that
are subject to conversion of the Company's 7%, five-year convertible
debentures; and 25,000 shares of common stock that are subject to warrants
granted in connection with the Company's debenture financing. Under common
forms of discretionary account agreements between investment adviser and
client, an investment adviser is vested with authority to dispose of
shares. North American is an investment adviser and is thus considered,
under Securities and Exchange Commission ("SEC") rules, to be a
"beneficial owner." An investment adviser need not have any pecuniary
interest to be considered a beneficial owner.

Additional shares of common stock may be issued to North American for
payment of future interest due on the debentures.

(3) Represents shares of common stock that are subject to outstanding options
exercisable within the 60-day period following April 20, 2001.

                                    4

<PAGE>

(4) Includes 3,000 shares of common stock that are subject to outstanding
options exercisable within the 60-day period following April 20, 2001.

(5) Includes 7,333 shares of common stock that are subject to outstanding
options exercisable within the 60-day period following April 20, 2001;
172,414 shares of common stock that are subject to conversion of the
Company's 7%, five-year convertible debentures; and 50,000 shares of
common stock that are subject to warrants granted in connection with the
Company's debenture financing. Does not include 1,500 shares held by
Stanmore Associates, as to which Mr. Erani disclaims beneficial
ownership.

Additional shares of common stock may be issued to Mr. Erani for payment
of future interest due on the debentures.

(6) Includes 3,333 shares of common stock that are subject to outstanding
options exercisable within the 60-day period following April 20, 2001;
137,931 shares of common stock that are subject to conversion of the
Company's 7%, five-year convertible debentures; and 40,000 shares of
common stock that are subject to warrants granted in connection with the
Company's debenture financing.

Additional shares of common stock may be issued to Mr. Gardner for payment
of future interest due on the debentures.

(7) Includes 3,583 shares of common stock that are subject to outstanding
options exercisable within the 60-day period following April 20, 2001;
103,448 shares of common stock that are subject to conversion of the
Company's 7%, five-year convertible debentures; and 30,000 shares of
common stock that are subject to warrants granted in connection with the
Company's debenture financing.

Additional shares of common stock may be issued to Mr. Marden for payment
of future interest due on the debentures.

(8) Includes 3,000 shares of common stock that are subject to outstanding

options exercisable within the 60-day period following April 20, 2001.

(9)  Includes 2,000 shares of common stock that are subject to outstanding
     options exercisable within the 60-day period following April 20, 2001.

(10) Includes 59,308 shares of common stock that are subject to outstanding
     options exercisable within the 60-day period following April 20, 2001.

(11) Includes 131,574 shares of common stock that are subject to outstanding
     options exercisable within the 60-day period following April 20, 2001.

(12) Represents shares of common stock that are subject to outstanding options
     exercisable within the 60-day period following April 20, 2001.

(13) Represents shares of common stock that are subject to outstanding options
     exercisable within the 60-day period following April 20, 2001.

(14) Represents shares of common stock that are subject to outstanding options
     exercisable within the 60-day period following April 20, 2001. Mr.
     Laughlin resigned from the Company on May 15, 2001.

(15) Includes 1,018,219 shares of common stock subject to outstanding stock
     options held by officers and directors that are exercisable within the
     60-day period following April 20, 2001; 413,793 shares of common stock
     that are subject to conversion of the Company's 7%, five-year convertible
     debentures; and 120,000 shares of common stock that are subject to
     warrants granted in connection with the Company's debenture financing.

                                    5
<PAGE>

Information About Executive Officers

 General

   The following table sets forth the name, age and current position of each
non-director executive officer and each such officer's business experience
during the past five years.

<TABLE>
<CAPTION>
Name and Age                         Position and Business Experience
------------                         --------------------------------
<C>                                  <S>
John J. Arcari.............         Vice President, Finance and Administration and
  Age 55                             Chief Financial Officer, Treasurer and Secretary
                                     since May 2000; Chief Financial Officer of
                                     Intl.com from September 1999 to April 2000; Chief
                                     Financial Officer of Robotic Vision Systems Inc.
                                     from August 1997 to March 1999; Chief Financial
                                     Officer of LTX Corporation from February 1987 to
                                     July 1997.

Paul J. DiCicco...........         Vice President Operations since June 2000; Senior
  Age 49                             Vice President Operations of Verdant Brands from
                                     August 1999 to June 2000; Vice President and
                                     General Manager Operations of Mentor Urology from
                                     May 1994 to August 1999; Director of Manufacturing
                                     of C.R. Bard from November 1981 to May 1994.

Nancy L. Parenteau, Ph.D...  Senior Vice President, Research and Development
Age 47                       and Chief Scientific Officer since August 1995;
                             Vice President, Cell and Tissue Science from
                             February 1994 to August 1995.

</TABLE>

Compensation Committee Report on Executive Compensation

   Overview: The Compensation Committee of the Board of Directors is comprised
of five independent non-employee directors and is responsible for developing
and making recommendations to the Board of Directors with respect to
compensation policies regarding executive officers. The committee also
recommends to the Board of Directors the annual base cash compensation and
annual cash bonuses to be paid to each executive officer. Additionally, the
committee grants options to executive officers.

   The overall policy on compensation, as adopted by the Compensation
Committee, is to provide competitive compensation to enable the Company to
attract and retain qualified executive officers. The compensation of the
executive officers is structured and administered to promote the achievement
of the Company's business goals and, thereby, to maximize corporate
performance and stockholder returns. The Compensation Committee believes that,
in addition to adequate base cash compensation, it is important to have cash
bonuses constitute a significant portion of each executive officer's
compensation package in order to tie an individual's compensation level to
individual and corporate performance. The Compensation Committee also believes
it is important to have stock incentives constitute a significant portion of
each executive officer's compensation package to help align long-term
interests of executive officers with the interests of stockholders.

   Compensation of Executive Officers: Based upon the foregoing, the
compensation of executive officers consists of a mixture of cash base salary,
cash bonuses, fringe benefits and long-term common stock incentives. The
common stock incentives are provided through stock option plans. The Company
also maintains a contributory 401(k) program in which executive officers may
participate. The maximum contribution that may be paid in any one year by the
Company under the 401(k) program on behalf of any one employee is $900. In
determining the total amount and mixture of the compensation package for each
executive officer, the Compensation Committee, at least once a year, takes
into consideration numerous factors such as: (1) compensation of executive
officers performing similar functions at comparable and competitive companies;
(2) individual performance of each executive officer, including contribution
to the Company's goals; and (3) the Company's short-term and long-term needs
and goals, including attracting and retaining key management personnel. As a
result of this evaluation, the Compensation Committee recommends to the Board
for approval for each executive officer appropriate changes in existing base
salary effective March 1 of each year and an annual cash bonus payable after
the end of the calendar year.

                                      6

<PAGE>

   The stock option program is the Company's major long-term incentive plan to
compensate executive officers. The objectives of this program are to align the
executive officers' and stockholders' long-term interests by creating a strong
and direct link between executive pay and stockholder return and to enable the
executive officers to develop and maintain significant long-term stock
ownership in the Company's common stock. Stock options generally are granted
at an option price equal to the fair market value of the common stock on the
date of grant, have ten year terms, and vest ratably over five years. The

amount of shares granted increases as a function of higher salary and position.

   Compensation of Chief Executive Officer: Philip M. Laughlin, our Chief Executive Officer during 2000, was eligible to participate in the same executive compensation programs available to other executive officers. The Compensation Committee set Mr. Laughlin's annual compensation at a level it believes was necessary to retain Mr. Laughlin in his executive position and to be comparable with other companies in the industry. In October 1999, Mr. Laughlin's annual base salary was set at $325,000.

   Compliance with Internal Revenue Code Section 162(m): Section 162(m) of the Internal Revenue Code of 1986, as amended (the "Code"), enacted in 1993, generally disallows tax deductions to publicly traded corporations for compensation over $1 million paid to a corporation's Chief Executive Officer and any of its four other most highly compensated executive officers. Qualifying performance-based compensation will not be subject to this disallowance if certain requirements are met.

   While the tax impact of any compensation arrangement is one factor to be considered, such impact is evaluated in light of the Compensation Committee's overall compensation philosophy. The Compensation Committee intends to establish executive officer compensation programs which will maximize the Company's tax deduction if the Compensation Committee determines that such actions are consistent with its philosophy and in the best interests of the Company and its stockholders. However, from time to time, the Compensation Committee may award compensation which is not fully deductible if the Compensation Committee determines that such award is consistent with its philosophy and in the best interests of the Company and its stockholders.

                              Members of the Organogenesis Inc.
                              Compensation Committee:

                              James J. Apostolakis
                              Albert Erani
                              David A. Gardner
                              Bjorn R. Olsen, M.D., Ph.D.
                              Marguerite A. Piret

                                      7

<PAGE>

                          Summary Compensation Table

   The following table sets forth information as to the compensation received by the former Chief Executive Officer and the other most highly compensated executive officers who received cash salary and bonus in excess of $100,000 and were employed by the Company at the end of 2000 (collectively, the "Named Executive Officers") for services rendered to the Company in all capacities during the three years ended December 31, 2000:

<TABLE>
<CAPTION>

| | | | | Long-term Compensation Securities Underlying | |
| Name and Principal Position | Annual Compensation | | | Stock | All Other |
| | Year | Salary | Bonus | Options(#) | Compensation |
| --- | --- | --- | --- | --- | --- |

| <S> | <C> | <C> | <C> | <C> | <C> |
|---|---|---|---|---|---|
| Michael L. Sabolinski, M.D. (2)............................ | 2000 | $221,608 | $60,000 | 25,000 | $    900(1) |
| President and Chief Executive Officer | 1999 | 188,896 | 45,000 | 150,000 | 900(1) |
| | 1998 | 185,000 | 60,000 | 62,500 | 900(1) |
| Nancy L. Parenteau, Ph.D........ | 2000 | 221,608 | 50,000 | 25,000 | 900(1) |
| Senior Vice President, Research and | 1999 | 188,896 | 50,000 | 155,000 | 900(1) |
| Development and Chief Scientific Officer | 1998 | 184,039 | 65,000 | 68,750 | 900(1) |
| John J. Arcari (3)............. | 2000 | 118,088 | -- | 60,000 | 900(1) |
| Vice President, Finance and Administration | 1999 | -- | -- | -- | -- |
| and Chief Financial Officer, Treasurer and Secretary | 1998 | -- | -- | -- | -- |
| Philip M. Laughlin (4).......... | 2000 | 325,990 | -- | -- | 38,867(5) |
| Former President and Chief Executive | 1999 | 63,993 | -- | 500,000 | -- |
| Officer | 1998 | -- | -- | -- | -- |

</TABLE>
- --------

(1) Reflects amounts contributed by the Company pursuant to its 401(k) Plan.

(2) Dr. Sabolinski was Senior Vice President, Medical and Regulatory Affairs, from August 1995 until his appointment as President and Chief Executive Officer on May 15, 2001.

(3) Mr. Arcari joined the Company in May 2000 as Vice President, Finance and Administration and Chief Financial Officer, Treasurer and Secretary. His annual salary rate for 2000 was set at $180,000.

(4) Mr. Laughlin resigned from the Company on May 15, 2001.

(5) Amount shown includes $37,967 for 2000 related to relocation expenses paid in accordance with Mr. Laughlin's employment agreement and $900 contributed by the Company pursuant to its 401(k) Plan.

## Option Grants in Last Fiscal Year

The following table sets forth information regarding options granted during the year ended December 31, 2000 to the Named Executive Officers:

<TABLE>
<CAPTION>

| | Individual Grants | | | | Potential Re at Assumed of Stock Pri for Opti |
|---|---|---|---|---|---|
| Name | Number Of Securities Underlying Options Granted (#) | Percent of Total Options Granted to Employees In Fiscal Year | Exercise Price (1) ($/Share) | Expiration Date | At 5% |
| - ---- | ---------- | ------------- | --------- | ---------- | ---------- |
| <S> | <C> | <C> | <C> | <C> | <C> |
| Michael L. Sabolinski, M.D. .................. | 25,000 | 3.59 | $13.1250 | 8/09/10 | $    205,721 |

```
Nancy L. Parenteau,
  Ph.D. ...............    25,000     3.59    13.1250  8/09/10    205,721
John J. Arcari..........    60,000     8.61    11.3125  5/01/10    426,862
Philip M. Laughlin......      --        --        --      --         --
</TABLE>
```

8

<PAGE>

- --------

(1) All options were granted at an exercise price equal to the fair market
    value of common stock on the date of grant. Options are exercisable in
    five equal annual installments of 20% each year commencing one year from
    the date of grant. In addition, the options vest fully in the event of a
    change in control. See "Compensation Arrangements."

(2) Amounts shown under these columns are the results of calculations of the
    5% and 10% rates required by the SEC and are not intended to forecast
    future appreciation of the stock price. The table does not take into
    account any appreciation in the price of the common stock to date. This
    table includes the number of shares covered by both exercisable and
    unexercisable stock options as of December 31, 2000 and the values of "in-
    the-money" options.

    The following table sets forth certain information regarding options held as
of December 31, 2000 by the Named Executive Officers. This table includes the
number of shares covered by both exercisable and unexercisable stock options
as of December 31, 2000 and the values of "in-the-money" options.

                    Aggregated Option Exercises in Last Fiscal Year
                       and Fiscal Year-End Option Values

<TABLE>
<CAPTION>

| Name | Shares Acquired on Exercise (#) | Value Realized $ (3) | Number of Securities Underlying Unexercised Options at Fiscal Year-End (1) | | Valu In-th Fisca |
| | | | Exercisable | Unexercisable | Exerci |
| --- | --- | --- | --- | --- | --- |
| <S> | <C> | <C> | <C> | <C> | <C> |
| Michael L. Sabolinski, M.D. ................. | 12,208 | $105,040 | 379,958 | 227,419 | $1,007 |
| Nancy L. Parenteau, Ph.D. ................ | -- | -- | 301,428 | 239,077 | 645 |
| John J. Arcari.......... | -- | -- | -- | 60,000 | |
| Philip M. Laughlin...... | -- | -- | 100,000 | 400,000 | 211 |
</TABLE>

- --------

(1) Options granted under the 1986 and 1995 Stock Option Plans become
    exercisable in five equal annual installments of 20% each year commencing
    one year from the date of grant.

(2) The value of unexercised in-the-money options represents the difference
    between the closing price of the Company's common stock on the American
    Stock Exchange on December 31, 2000 and the option exercise price.

(3) The value realized represents the difference between the closing price of
    the Company's common stock on the American Stock Exchange on the date of

exercise and the option exercise price, multiplied by the number of shares acquired on exercise.

Employment Contracts, Change-in-Control Arrangements and Compensation Arrangements

Based substantially on the terms of Mr. Laughlin's 1999 employment contract, as previously described in the Company's proxy statement in 2000, the Company has agreed to pay Mr. Laughlin the following sums in connection with the cessation of his employment with the Company, effective in May 2001: (1) $650,000, which is an amount equal to two year's base salary, to be paid over 24 months commencing on June 1, 2001, (2) a bonus payment in the aggregate amount of $200,000, to be paid over 24 months commencing on March 1, 2002, (3) a fiscal year 2000 bonus payment of $120,000, to be paid on May 23, 2001, (4) a payment of $72,500 in consideration of Mr. Laughlin's waiver of his vested right to exercise an option to purchase 100,000 shares of common stock of the Company, to be paid by September 20, 2001, (5) a payment of $145,000 in consideration of Mr. Laughlin's waiver of his right to accelerated vesting of an option to purchase 200,000 shares of common stock of the Company, to be paid by September 20, 2001, and (6) reimbursement for insurance premiums paid by Mr. Laughlin. In addition, Mr. Laughlin must comply with the Non-Competition and Non-Disclosure Agreement, dated September 30, 1999 (the "Non-Competition Agreement"). The Non-Competition Agreement provides for, among other things, a 24-month period during which Mr. Laughlin shall not engage in similar or related activities to those he engaged in during the two years prior to his termination for, or render services to, any entity that directly competes, or plans to directly compete, with the Company.

<div align="center">9</div>

<PAGE>

The Company has a Severance Benefits Plan for certain of its executive officers that provides for benefit payments in the event that an officer's employment is terminated involuntarily following a change in control of the Company. As defined in the Severance Benefits Plan, a change in control will occur: (1) in the event that any person acquires 30% or more of the combined voting power of the Company's then outstanding securities; (2) if a majority of the Board of Directors changes, unless the change was approved by a vote of at least a majority of the Board of Directors prior to such change; (3) in the event that the stockholders approve a merger or consolidation of the Company, other than a merger or consolidation that would result in the voting securities outstanding immediately prior thereto continuing to represent more than 50% of the combined voting power of the voting securities of the Company or the surviving entity outstanding immediately after such merger or consolidation, or a merger or consolidation effected to implement a recapitalization of the Company in which no person acquires more than 30% of the combined voting power of the Company's then outstanding securities; or (4) in the event that the stockholders of the Company approve a plan of complete liquidation or the sale of all or substantially all of the Company's assets.

All stock options held by employees, including executive officers and directors fully vest upon a change in control, as defined above.

Report of the Audit Committee

The Audit Committee of the Board of Directors, which consists entirely of directors who meet the independence and experience requirements of the American Stock Exchange, has furnished the following report:

The Audit Committee assists the Board in overseeing and monitoring the

integrity of the Company's financial reporting process, its compliance with legal and regulatory requirements and the quality of its internal and external audit processes. The role and responsibilities of the Audit Committee are set forth in a written Charter adopted by the Board (which is attached as Exhibit A to this Proxy Statement). The Audit Committee reviews and reassesses the Charter annually and recommends any changes to the Board for approval. The Audit Committee is responsible for overseeing the Company's overall financial reporting process. In fulfilling its responsibilities for the financial statements for fiscal year ended December 31, 2000, the Audit Committee took the following actions:

- Reviewed and discussed the audited financial statements for the fiscal year ended December 31, 2000 with management and PricewaterhouseCoopers LLP, the Company's independent auditors;

- Discussed with PricewaterhouseCoopers LLP the matters required to be discussed by Statement on Auditing Standards No. 61 relating to the conduct of the audit; and

- Received written disclosures and the letter from PricewaterhouseCoopers LLP regarding its independence as required by Independence Standards Board Standard No. 1. The Audit Committee further discussed with PricewaterhouseCoopers LLP their independence. The Audit Committee also considered taxation matters and other areas of oversight relating to the financial reporting and audit process that the Committee determined appropriate.

Based on the Audit Committee's review of the audited financial statements and discussions with management and PricewaterhouseCoopers LLP, the Audit Committee recommended to the Board that the audited financial statements be included in the Company's Annual Report on Form 10-K for the fiscal year ended December 31, 2000 for filing with the Securities and Exchange Commission.

> Members of the Organogenesis Inc.
>  Audit Committee:
>
> Anton E. Schrafl Ph.D., Chairman
> James J. Apostolakis
> David A. Gardner
> Marguerite A. Piret

                                10
<PAGE>

Section 16(a) Beneficial Ownership Reporting Compliance

Section 16(a) of the Securities Exchange Act of 1934, as amended, requires directors, officers and persons who own more than 10% of the Company's common stock to file with the SEC initial reports of beneficial ownership and reports of changes in ownership of the common stock and other equity securities of the Company. Such persons are required by SEC regulation to furnish the Company with copies of all Section 16(a) forms they file.

Based solely on a review of the copies of such forms received by the Company with respect to the fiscal year ended December 31, 2000, or written representations that no other reports were required, the Company believes that, during the preceding year, directors, officers and persons who own more than 10% of the Company's common stock have complied with all applicable section 16(a) filing requirements, except that one report, covering initial beneficial ownership, was filed late by Paul DiCicco.

Certain Transactions

    As of March 31, 1999, the Company raised $20,000,000 through the private placement of 7%, five-year convertible debentures and 400,000 warrants to purchase common stock. The debentures are convertible at a fixed price of $14.50 per share and mature on March 29, 2004. The warrants grant the right to purchase one share of common stock at the exercise price of $21.75 for each $50.00 in face value of the convertible debentures at any time before March 30, 2004. Mr. Erani, Mr. Gardner and Mr. Marden, all members of the Board of Directors, purchased $2,500,000, $2,000,000 and $1,500,000, respectively, of the convertible debentures, and North American Management Corporation, a principal stockholder, purchased $1,250,000 of the convertible debentures.

Scientific Advisory Board

    The Company has a Scientific Advisory Board comprised of five physicians, professors and scientists in various fields of medicine and science (the "SAB"). The SAB meets from time to time to advise and consult with management and scientific staff. Members of the SAB receive a $1,000 fee for each meeting attended and are reimbursed for expenses in attending meetings. Non-statutory stock options have been granted to members of the SAB. As of April 25, 2001, members of the SAB held options, in connection with their service as SAB members, to purchase an aggregate of 4,883 shares of common stock at an average exercise price of $8.32 per share under the 1986 Stock Option Plan.

                                    11
<PAGE>

Comparative Stock Performance Graph

    The graph below compares the cumulative total stockholder return on the Company's common stock against the cumulative total return of the Standard & Poor's 500 Stock Index and the AMEX Biotechnology Index during the five years ending December 31, 2000. The graph and table assume $100 was invested on December 31, 1995 in the Company's common stock and in each of the foregoing indices. The Company has not paid any dividends on the common stock and no dividends are included in the representation of the Company's performance. The stock price performance on the graph below is not necessarily indicative of future price performance. This graph is not "soliciting material", is not deemed filed with the Securities and Exchange Commission and is not to be incorporated by reference in any filing of the Company under the Securities Act of 1933 or the Securities and Exchange Act of 1934 whether made before or after the date hereof and irrespective of any general incorporation language in any such filing.

|                             | 1995   | 1996   | 1997   | 1998   | 1999   | 2000   |
| --------------------------- | ------ | ------ | ------ | ------ | ------ | ------ |
| Organogenesis Inc.......... | 100.00 | 123.81 | 228.53 | 116.92 | 93.01  | 95.56  |
| S&P 500 Index.............. | 100.00 | 122.90 | 163.89 | 210.72 | 255.06 | 231.84 |
| AMEX Biotechnology Index.... | 100.00 | 175.85 | 197.93 | 225.60 | 477.02 | 474.19 |

                                    12
<PAGE>

                            ITEM NO. 1

                        ELECTION OF DIRECTORS

The Company's Restated By-Laws provide for the Company's business to be managed by or under the direction of the Board of Directors. Under the Company's Restated By-Laws, the number of directors is fixed from time to time by the Board of Directors. The Board of Directors currently consists of nine members. Unless otherwise instructed, the persons named in the enclosed proxy will vote to elect as directors the ten nominees named below. Each director will be elected to hold office until the next annual meeting of stockholders or until his or her successor is elected and qualified. If a nominee becomes unavailable, the person acting under the proxy may vote the proxy for the election of a substitute. We do not presently contemplate that any of the nominees will be unavailable.

The following table sets forth the name and age of each nominee and the positions and offices held by him or her, his or her principal occupation and business experience during the past five years, when he or she first became a director of the Company and the names of other publicly held companies of which he or she serves as a director:

```
<TABLE>
<CAPTION>
```

| Name and Age | Principal Occupation, Business Experience and Directorships | First Became a Director |
|---|---|---|
| `<C>` | `<S>` | `<C>` |
| James J. Apostolakis......... Age 58 | Vice Chairman, President, and Director of Columbia Laboratories Inc. since January 1999; Managing Director at Poseidon Capital Corporation, an investment banking firm, since February of 1998; President of Lexington Shipping & Trading Corporation since 1973. | 2000 |
| Albert Erani................. Age 60 | Founder and Principal of A&E Stores, Inc. for the past five years. | 1998 |
| David A. Gardner............. Age 53 | Mr. Gardner has been President of Gardner Capital Corporation for the past five years. | 1999 |
| Bernard A. Marden........... Age 81 | Mr. Marden has been a private investor for the past five years. | 1999 |
| Glenn Nussdorf.............. Age 46 | Chairman and Chief Executive Officer of QK Healthcare since 1999; President and Chief Executive Officer of Quality King since 1996, and Senior Vice President from 1994 to 1996. | 2000 |
| Bjorn R. Olsen, M.D., Ph.D... Age 60 | Professor of Cell Biology, Harvard Medical School; Chairman, Harvard-Forsyth Department of Oral Biology, Harvard School of Dental Medicine since 1998; Hersey Professor of Cell Biology, Department of Cell Biology, Harvard Medical School prior to 1998. | 1994 |
| Marguerite A. Piret......... | President of Newbury, Piret & | 1995 |

```
                                                                                 
Age 53                      Company, Inc., an investment banking
                            company, since 1981.

Michael L. Sabolinski, M.D...  President and Chief Executive Officer    May 15,
    Age 45                      of Organogenesis Inc. since May 15,      2001
                                2001; Senior Vice President, Medical
                                and Regulatory Affairs from August
                                1995 to May 15, 2001; Vice President,
                                Medical and Regulatory Affairs from
                                February 1994 to August 1995.

Anton E. Schrafl, Ph.D.......  Deputy Chairman of "Holderbank"          1987
    Age 69                      Financiere Glaris Ltd., a Swiss
                                manufacturer of cement, since July
                                1984; Director of Apogee Technology,
                                Inc.

Richard J. Ulevitch, Ph.D....  Chairman, Department of Immunology,     Nominee
    Age 57                      The Scripps Research Institute since
                                1994 and professor since 1990.
</TABLE>
```

                                    13

<PAGE>

    A plurality of the shares voted affirmatively at the Annual Meeting is
required to elect each nominee as a director.

    The Board of Directors Recommends a Vote "FOR" Electing These Ten Nominees

                                ITEM NO. 2

            PROPOSAL TO RATIFY THE SELECTION OF INDEPENDENT ACCOUNTANTS

    The Board of Directors has selected PricewaterhouseCoopers LLP as
independent accountants for the 2001 fiscal year. PricewaterhouseCoopers LLP
has served as our independent accountants since 1986. Representatives of
PricewaterhouseCoopers LLP are expected to be present at the Annual Meeting.
They will have the opportunity to make a statement if they so desire and will
also be available to respond to appropriate questions from stockholders.
Stockholders are being asked to ratify this selection at the Annual Meeting.

Audit Fees

    The Company paid PricewaterhouseCoopers LLP a total of $126,238 for its
audit of the Company's annual financial statements for the fiscal year ended
December 31, 2000 and for their review of the Company's quarterly consolidated
financial statements filed on Forms 10-Q filed during the last fiscal year.

Financial Information Systems Design and Implementation Fees

    During the Company's fiscal year ended December 31, 2000,
PricewaterhouseCoopers LLP did not provide any financial information systems
design or implementation services to the Company.

All Other Fees

    During the Company's fiscal year ended December 31, 2000, the Company paid
PricewaterhouseCoopers LLP a total of $76,955 for its provision of services

related to the private placement of securities and tax planning and compliance matters.

The Audit Committee has considered whether the provision of the services described under the caption All Other Fees is compatible with maintaining PricewaterhouseCoopers' independence.

The Board of Directors Recommends a Vote "FOR" Ratification of the Selection of the Independent Accountants

ITEM NO. 3

OTHER MATTERS

We do not know of any other matters that may come before the meeting. However, if any other matters are properly presented to the Annual Meeting, it is the intention of the persons named in the accompanying proxy to vote, or otherwise act, in accordance with their judgment on such matters.

Deadline for Submission of Stockholders Proposals

In order to be considered for addition to the agenda for the Annual Meeting of Stockholders in the year 2002 and to be included in the Proxy Statement and form of proxy, stockholders' proposals must be received by the Company no later than January 24, 2002. In order to be considered for presentation at the Annual Meeting of Stockholders in the year 2002, although not included in the proxy statement, a stockholder proposal must comply with the requirements of the Company's Restated By-Laws and be received by us no later than April 9, 2002

14

<PAGE>

and no earlier than March 10, 2002. Stockholder proposals should be delivered in writing to the Secretary, Organogenesis Inc., 150 Dan Road, Canton, Massachusetts 02021. A copy of the Company's Restated By-Laws may be obtained from us upon written request to the Secretary.

By Order of the Board of Directors,

John J. Arcari, Secretary

Canton, Massachusetts
May 24, 2001

THE BOARD OF DIRECTORS HOPES THAT STOCKHOLDERS WILL ATTEND THE ANNUAL MEETING. WHETHER OR NOT YOU PLAN TO ATTEND, YOU ARE URGED TO COMPLETE, SIGN, DATE AND RETURN THE ENCLOSED PROXY IN THE ACCOMPANYING ENVELOPE. PROMPT RESPONSE WILL GREATLY FACILITATE ARRANGEMENTS FOR THE ANNUAL MEETING AND YOUR COOPERATION IS APPRECIATED. STOCKHOLDERS WHO ATTEND THE ANNUAL MEETING MAY VOTE THEIR STOCK PERSONALLY EVEN THOUGH THEY HAVE SENT IN THEIR PROXIES.

THE COMPANY'S ANNUAL REPORT ON FORM 10-K FOR THE FISCAL YEAR ENDED DECEMBER 31, 2000 (INCLUDING FINANCIAL STATEMENTS, BUT EXCLUDING ALL OTHER EXHIBITS THERETO) FILED WITH THE SECURITIES AND EXCHANGE COMMISSION, WHICH PROVIDES ADDITIONAL INFORMATION ABOUT THE COMPANY IS AVAILABLE TO BENEFICIAL OWNERS OF THE COMPANY'S COMMON STOCK WITHOUT CHARGE, UPON WRITTEN REQUEST TO JOHN J. ARCARI, SECRETARY, ORGANOGENESIS INC., 150 DAN ROAD, CANTON, MA 02021.

15

&lt;PAGE&gt;

Exhibit A

ORGANOGENESIS INC.

Audit Committee Charter

1.Mission

  The Audit Committee will assist the Board of Directors in fulfilling its
  oversight responsibilities. The Audit Committee shall provide assistance to
  the Board in fulfilling its responsibility to the shareholders, potential
  shareholders, and investment community relating to corporate accounting,
  reporting practices of the corporation, and the quality and integrity of
  the corporation's financial reports. In performing its duties, the
  Committee will maintain effective working relationships with the Board of
  Directors, management and the external auditors.

2.Membership

  The following details about the organization of the Audit Committee are in
  compliance with the December 14, 1999 SEC approved amendments to the
  American Stock Exchange's independent director and audit committee listing
  standards and with SEC Release No. 34-42266 (Dec. 23, 1999).

  .  Structure and Membership Requirements:
     The Audit Committee must have a minimum of three members and be
     comprised of independent Directors only. All Directors must be able to
     read and understand fundamental financial statements, including a
     Company's balance sheet, income statement and cash flow statement. At
     least one Director must have past employment experience in finance or
     accounting requisite professional certification in accounting or other
     comparable experience or background, including a current or past
     position as a chief executive or financial officer or other senior
     officer with financial oversight responsibilities.

  .  Independence of Members:
     For purposes of serving as a member of the Audit Committee, a Director
     must be considered "independent". A Director will not be considered
     "independent" if, among other things, he or she has:

     .  Been employed by the corporation or its affiliates in the current or
        past three years;

     .  Accepted any compensation from the corporation or its affiliates in
        excess of $60,000 during the previous fiscal year (except for board
        service, retirement plan benefits, or non-discretionary
        compensation);

     .  An immediate family member who is, or has been in the past three
        years, employed by the corporation or its affiliates as an executive
        officer;

     .  Been a partner, controlling shareholder or an executive officer of
        any for-profit business to which the corporation made, or from which
        it received, payments (other than those which arise solely from
        investments in the corporation's securities) that exceed five
        percent of the organization's consolidated gross revenues for that
        year, or $ 200,000, whichever is more, in any of the past three

years; or

. Been employed as an executive of another entity where any of the
Company's executives serve on that entity's compensation committee.

3. Appointment of Members and Chairperson

The Board of Directors appoints the Members and the Chairperson of the
Audit Committee by majority of the whole Board annually. Members and
Chairperson can be reappointed.


A-1

<PAGE>

4. Frequency of Meetings

The Audit Committee will meet no less frequently than semi-annually. These
meetings will generally be held in November (scope of audit and technical
update) and March (review of annual financial statements), unless otherwise
determined and agreed to by the Audit Committee and external auditors.

5. Advice

The Audit Committee shall have the authority to retain special legal,
accounting or other consultants to advise the Committee. The Audit
Committee may request any officer or employee of the Company or the
Company's outside counsel or independent auditor to attend a meeting of the
Committee or to meet with any members of, or consultants to, the Committee.

6. Roles and Responsibilities

6.1 Financial Reporting

General
. Review significant accounting and reporting issues, including recent
professional and regulatory pronouncements, and understand their
impact on the financial statements; and

. Ask management and the external auditors about significant risks and
exposures and the plans to minimize such risks.

Annual Financial Statements
. Review with management and the external auditors the annual
financial statements and the results of the audit;

. Review the financial statements with regard to their completeness
and consistency with information known to Committee Members;

. Pay particular attention to complex and/or unusual transactions such
as financings, acquisitions, restructuring charges and derivative
disclosures.

Interim Financial Statements
. The Committee Chairperson or designee prior to their release will
review interim Financial Statements.

6.2 Compliance with Laws and Regulations

. Review the effectiveness of the system for monitoring compliance

with laws and regulations and the results of management's investigation and follow-up (including disciplinary action) on any fraudulent acts or accounting irregularities;

. Periodically obtain updates from management, general counsel, and tax accountants regarding compliance; and

. Review the findings of any examinations by regulatory agencies such as the Securities and Exchange Commission.

6.3 Compliance with Code of Conduct

. Obtain updates from management and general counsel regarding compliance to the code of conduct.

6.4 Auditors

. Recommend to the Board the appointment of the independent auditors. The Audit Committee Board, as representatives of the shareholders, shall have ultimate authority and responsibility for selecting, evaluating, and where necessary, replacing the independent auditor.

A-2

<PAGE>

. Recommend to the Board the fees to be paid to the independent auditor.

. Receive periodic reports from the independent auditor regarding the auditor's independence, and discuss such reports with the auditor.

. Review with the independent auditor any problems or difficulties the auditor may have encountered and any management letter provided by the auditor and Company's response to that letter. Such review should include:

a) Any difficulties encountered in the course of the audit work, including any restrictions on the scope of activities or access to required information.

b) Any changes required in the planned scope of the audit.

. Discuss with the independent auditor the matters required to be discussed by Statement on Auditing Standards no. 61 relating to the conduct of the audit.

. Prepare the report required by the rules of the Securities and Exchange Commission to be included in the Company's annual proxy statement.

6.5 Charter update

. Review and update the charter, receive approval of changes from the Board at least annually.

6.6. Reporting

. Regularly update the Board of Directors about Committee activities and make appropriate recommendations.

6.7 Safe Harbor

No report issued by this Committee shall be used as "soliciting material" or incorporated by reference into any document filed under the Securities Act or the Exchange Act, unless the Audit Committee unanimously approves such use, in which case such approval shall be indicated in the body of the report. Any report issued by this Committee shall contain a legend to the effect that the report is not intended as and shall not constitute "soliciting material" and shall not be incorporated by reference in any document to be filed with the Securities and Exchange Commission.

While the Audit Committee has the responsibilities and powers set forth in this Charter, it is not the duty of the Audit Committee to plan or conduct audits or to determine that the Company's financial statements are complete and accurate and are in accordance with generally accepted accounting principles. This is the responsibility of the management and the independent auditor. Nor is it the duty of the Audit Committee to conduct investigations, to resolve disagreements, if any, between the management and the independent auditor or to ensure compliance with laws and regulations and the Company's written policies.

A-3

<PAGE>

PROXY                                                                    PROXY

ORGANOGENESIS INC.
150 Dan Road
Canton, MA 02021
Annual Meeting of Stockholders - June 21, 2001


THIS PROXY IS SOLICITED ON BEHALF OF THE BOARD OF DIRECTORS OF THE COMPANY


The undersigned, revoking all prior proxies, hereby acknowledges receipt of the Notice and Proxy Statement dated May 24, 2001 in connection with the Annual Meeting of Stockholders, and hereby appoint(s) Michael L. Sabolinski, M.D. and John J. Arcari and each of them, with full power of substitution, as proxies to represent and vote, as designated hereon, all shares of stock of Organogenesis Inc. that the undersigned would be entitled to vote if personally present at the Annual Meeting of Stockholders to be held at The Millennium Hotel New York UN Plaza, One United Nations Plaza, 44th Street at First Avenue, New York, NY 10017 on Thursday, June 21, 2001 at 10:00 A.M., local time, and at any adjournment thereof.

IN THEIR DISCRETION, THE PROXIES ARE AUTHORIZED TO VOTE UPON SUCH OTHER MATTERS AS PROPERLY MAY COME BEFORE THE MEETING OR ANY ADJOURNMENT THEREOF.

This proxy, when properly executed, will be voted in the manner directed herein by the undersigned stockholder(s). If no direction is given, this proxy will be voted FOR the election of Directors and FOR Item 2. Attendance of the undersigned at the meeting or at any adjournment thereof will not be deemed to revoke this proxy unless the undersigned shall revoke this proxy in writing.

PLEASE FILL IN, DATE, SIGN AND MAIL THIS PROXY IN THE ENCLOSED
POST-PAID RETURN ENVELOPE

(Continued and to be signed on reverse side)
<PAGE>

Please mark your votes as in this example:  [X]

UNLESS OTHERWISE INSTRUCTED, THIS PROXY WILL BE VOTED IN FAVOR OF THE ITEMS
                          SET FORTH BELOW.
        THE BOARD OF DIRECTORS RECOMMENDS A VOTE "FOR" ITEMS 1 AND 2.

1.   Election of Directors          Nominees

                                    James J. Apostolakis
                                    Albert Erani
                                    David A. Gardner
                                    Bernard A. Marden
                                    Glenn Nussdorf
                                    Bjorn R. Olsen, M.D., Ph.D.
                                    Marguerite A. Piret
                                    Michael L Sabolinski, M.D.
                                    Anton E. Schrafl, Ph.D.
                                    Richard J. Ulevitch, Ph.D.

FOR AGAINST

   [_]    [_]

FOR, except vote WITHHELD from the following nominee(s):

- --------------------------------------------------------

2.   Ratify the selection by the Board of Directors of PricewaterhouseCoopers
     LLP as independent accountants for the 2001 fiscal year.

     FOR          AGAINST        ABSTAIN
     [_]          [_]            [_]

SIGNATURE                                          DATE
          ---------------------------------------        ----------------------

SIGNATURE                                          DATE
          ---------------------------------------        ----------------------

Please sign exactly as name(s) appears hereon. If the stock is registered in the
names of two or more persons, each should sign. Executors, administrators,
trustees, guardians, attorneys and corporate officers should add their titles.
</TEXT>
</DOCUMENT>
</SEC-DOCUMENT>
-----END PRIVACY-ENHANCED MESSAGE-----