MerckTranscript

7  on the securities docket but on the master docket, docket
8  05-1151, giving notice to, I would submit, the entire world
9  as to our proposal.
10         Contrary to what Mr. Dubbs suggests, we submit that
11 the institutional investor community strongly supports the
12 proposal which we make to your Honor, not only the
13 institutions which are reflected in Mississippi's affidavit
14 but we have heard from one institution and that is it.
15         As to the safest and most prudent course, your Honor
16 had already expressed your desire, and I believe
17 appropriately so, that the good work of the lawyers who have
18 had this case for years not be wasted, that this case not be
19 delayed any further.  The structure we propose I submit
20 accomplishes that objective because the good lawyers who have
21 been working on this case for years are committed to this
22 structure and we believe that the unique institutional
23 perspective of Mississippi will add to that and it is clearly
24 in the interests of the class.
25         Your Honor has already held, I respectfully submit,

12

1  that you have the discretion and the authority to revisit the
2  lead plaintiff issue.  There is not a single case which
3  contradicts your Honor's well-founded conclusion.  The IPO
4  case, Judge Scheindlin said the PSLRA says nothing about the
5  situation we confront ourselves.  Every case he relies upon
6  is a one-lead plaintiff case and, indeed, the decisions we
7  cited to your Honor clearly say you have the discretion.
8          We submit, Judge, that the stipulation is indeed a
9  common sense practical resolution that satisfies all of
10 Mississippi's concern.  It addresses your Honor's questions

MerckTranscript

11  back in November and we think it's in the best interest of
12  the class and we ask your Honor to so order it. Thank you.
13       THE COURT: Thank you. Any of your colleagues or
14  potential future colleagues at the table wish to be heard on
15  that? Well, Mr. Dubbs, you're up.
16       MR. DUBBS: Just so the record is clear, my
17  distinguished colleague is wrong about HealthSouth but I
18  don't want to debate it.
19       Secondly and more importantly, your Honor has indeed
20  indicated on the record quite appropriately that in this
21  process somewhere the element of continuity has to come into
22  play. We agree with that. The baby should not be thrown out
23  with the bath water, but we think that a new lead plaintiff
24  proceeding can do that and, indeed, in any order that you
25  might issue in response to this, I think it would be

13

1   appropriate to say that any lead plaintiff applicant has to
2   propose or give its thoughts as to how to balance going
3   through the lead plaintiff proceeding with the interests in
4   continuity, which we agree are present and are entitled to be
5   weighed in the balance.
6        THE COURT: Thank you, Mr. Dubbs. All right. At
7   this is point I will indicate my conclusion first and then
8   proceed to my reasoning.
9        The Court is satisfied that the stipulation should
10  be approved and will sign the stipulation, and having removed
11  the suspense, the Court will proceed to explain why it has
12  concluded that, indeed, this stipulation is the best
13  resolution of the current situation.
14       The history starts off with the unfortunate

MerckTranscript

15  indictment of the Milberg Weiss firm and, as the Court
16  indicated at the last hearing, this Court takes the
17  presumption of innocence seriously.  I have read decisions by
18  other district judges dealing with the Milberg Weiss
19  situation and some of them I frankly disagree with.  In
20  short, having been a prosecutor for my entire career before I
21  became a federal judge, I came to take not only the
22  presumption of innocence very seriously but also those
23  opening words in the charge to almost any criminal jury which
24  is an indictment is merely an accusation.  It is the document
25  or the piece of paper by which the government brings criminal

14

1  charges against somebody.  It means nothing beyond that.  It
2  is no evidence.
3          For this Court to regard the indictment of the
4  Milberg Weiss firm as anything other than that, in my view,
5  would be a total abdication of our criminal justice system
6  and the way in which it's supposed to work.  For me to take
7  any meaningful action based upon that indictment, I would
8  have to conduct an evidentiary hearing of some sort into the
9  basis for it and, in effect, make at least some preliminary
10 determination as to Milberg's guilt or innocence.  That would
11 neither be wise, appropriate or even reasonable.
12         What I did indicate is that the Milberg firm has
13 demonstrated through this litigation that they have
14 prosecuted the case intelligently and effectively and in this
15 Court's view, it's very important for the plaintiff class, as
16 to which both lead plaintiffs and this Court have a fiduciary
17 obligation, to make sure that their representation is not
18 jeopardized.

Page 12

MerckTranscript

19      Now, when the Mississippi Retirement System brought
20 its motion, the Court did feel compelled to conduct some sort
21 of examination as to what was happening, and as the parties
22 here will recognize, when we appeared in court that day,
23 things were somewhat clouded with mystery.  Indeed, the Court
24 hadn't even received any certifications, if I recall
25 correctly, from the various individual lead plaintiffs at

15

1  that point in time.  Am I correct, Mr. Sandstedt?
2       MR. SANDSTEDT:  Yes, your Honor.
3       THE COURT:  And given the confusion coupled with the
4  fact that there were representations to the Court that the
5  lead plaintiffs were about to make applications for a
6  readjustment of the lead counsel situation but were trying to
7  resolve those issues, the Court felt that indeed there had to
8  be some sort of hearing.
9       The Court, however, also indicated its deep
10 reluctance and concern that proceeding in that manner might
11 cause more harm than good.
12      The Court has now had the opportunity to review the
13 certifications of the three remaining original lead
14 plaintiffs and is satisfied from those certifications that,
15 indeed, they were operating in good faith, intelligently and
16 trying to protect the interests of the class.  Under what can
17 only be described as unique and unprecedented circumstances,
18 the Court cannot fault the Mississippi Retirement System from
19 seeking to explore this issue.  Indeed, the fact that they
20 did file papers demonstrates the responsibility that
21 Mississippi System, through its attorney general, has
22 exercised in connection with this litigation.

Page 13

MerckTranscript

23   It now appears that through communications,
24 conversation and discussion between Mississippi and three of
25 the prior four lead plaintiffs, that they've reached a

16

1 resolution about a new lead plaintiff structure.  The Court
2 is satisfied that the introduction of a major institutional
3 plaintiff to the lead plaintiff structure indeed will benefit
4 the plaintiffs and the class.  The Court does not see any
5 indication that this litigation was, quote, "lawyer driven"
6 prior to this point in time, but there is no doubt that given
7 the somewhat unique and disturbing situation that arises from
8 Milberg's indictment, that adding additional public
9 representation, particularly through a body which is
10 represented by a state attorney general, will add additional
11 responsibility and structure to the lead plaintiff structure.
12       The Court notes that in connection with the
13 application to approve this stipulation, Jeffrey Morgan, who
14 is a Special Assistant Attorney General in Mississippi
15 representing the retirement fund, has supported it.
16 Moreover, a representation is made that the New York State
17 Teachers Retirement System, the State of Wisconsin Investment
18 Board and the Office of the Attorney General of the State of
19 Minnesota all have indicated that they support the
20 stipulation and proposed order, and nothing has been
21 presented to the Court to controvert that representation.
22       It is suggested that the Court should reopen the
23 PSLRA process for appointing lead plaintiffs and use that
24 process to add an additional lead plaintiff to this case.
25 The Court carefully considered that and, Mr. Dubbs, I will

17

MerckTranscript

1   tell you, I read all those cases and, indeed, when I was
2   presented with this stipulation initially, I concluded that
3   in the first instance this stipulation had to be presented to
4   everybody by motion so I could hear all of the parties with
5   regard to their position on it if they wished to be heard.
6           But after considering it, what I concluded is this,
7   as I went through your cases and the other cases dealing with
8   the PSLRA, what hit me is that those cases, when discussing a
9   lead plaintiff structure which involved more than one lead
10  plaintiff, focused on whether or not the group of lead
11  plaintiffs either have a prior working relationship or,
12  alternatively, are small enough and are capable of working
13  effectively.  For me to open this process up to the standard
14  PSLRA notice and motion procedure would create the potential
15  in which I would be adding an additional lead plaintiff to a
16  preexisting group of three plaintiffs willy-nilly; in short,
17  a shotgun wedding in which both camps would be forced by the
18  Court upon each other.  That does not lead to effective
19  management of a class action.
20          Instead, what I have here is through discussion, I
21  suspect through robust negotiations, I have parties who in
22  fact have indicated in unequivocal terms that they are
23  capable of working effectively and cooperatively as a lead
24  plaintiff structure and I am presented with an institutional
25  investor who has the weight and significance to in fact make

                                                            18

1   certain that this will not be a litigation which is attorney
2   driven, which of course is the primary purpose of the reforms

MerckTranscript

3   initiated by the PSLRA.
4        I'm convinced that by agreeing to this stipulation,
5   the interests of the class are most effectively served
6   through an efficient and appropriate lead plaintiff
7   structure.
8        The Court notes that, indeed, the PSLRA says nothing
9   about this situation and all of the cases which have been
10  reported to the Court for better or for worse represent the
11  best efforts of district judges dealing with situations which
12  are each separate and individual.
13       The Court reviewed, for example, the orders issued
14  by the district court in, I believe it's Pennsylvania, Judge
15  Padova -- Mr. Sandstedt, do you remember which case that is?
16       MR. CECCHI: The Weiner family trust, your Honor.
17       THE COURT: Thank you. In that particular case
18  Judge Padova concluded that reopening the situation would be
19  a waste of time under the PSLRA because no institutional
20  investors had ever evinced any interest in pursuing lead
21  plaintiff status.
22       I suspect that the reverse is entirely true here. I
23  have absolutely no doubt that any number of institutional
24  investors might wish to pursue the lead plaintiff position
25  here, but that is not the question. The question ends up

19

1   being what will in fact serve the class best and in this
2   Court's view, a structure which preserves continuity and adds
3   strength to the prior lead plaintiffs, while demonstrating
4   the ability to continue to work forward cooperatively, will
5   best serve everybody. For that reason, the application to
6   approve the stipulation is granted and the Court will sign

Page 16

```
                    MerckTranscript
7    it.  Anything further?
8           MR. CECCHI:  No, your Honor.
9           THE COURT:  All right.  I am going to want to meet
10   with counsel for defendants and plaintiffs in chambers for
11   one moment to explore where we go from here and, Mr. Dubbs,
12   if you could step up here, I'd like to just have a word with
13   you.
14          MR. DUBBS:  Yes, sir.
15          (Whereupon the proceedings are adjourned.)
16
17
18
19
20
21
22
23
24
25
```