IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

|  |  |  |
|---|---|---|
| IN RE NOVASTAR FINANCIAL SECURITIES LITIGATION | ) ) ) ) | Case No. 04-0330-CV-W-ODS |

ORDER AND OPINION GRANTING PLAINTIFFS'
MOTION FOR CLASS CERTIFICATION

Pending is Plaintiffs' Motion for Class Certification (Doc. #171). For the following reasons, the Motion is Granted.

## I.  BACKGROUND

The above-captioned action was brought against Defendants NovaStar Financial, Inc. ("NovaStar") and certain NovaStar officers and directors by purchasers of NovaStar common stock and sellers of NovaStar put options seeking damages for violations of the Securities Exchange Act of 1934.  NovaStar, a Kansas City, Missouri-based corporation, is a specialty finance company that originates, invests in and services residential nonconforming mortgage loans – loans that do not meet the criteria for conventional loans to be owned or guaranteed by government-sponsored entities.

In the Consolidated Complaint, Plaintiffs allege that between October 29, 2003, and April 8, 2004 (the "class period"), Defendants violated section 10(b) of the Securities Exchange Act of 1934 and Rule 10b-5 of the Securities Exchange Commission by (1) repeatedly reassuring the market that it was fully complying with all applicable regulations and making no mention of any regulatory infractions; (2) violating the laws in two states and failing to publicly disclose subsequent fines; and (3) overstating company's growth through branch office expansions because the new offices were illegally conducting business.  Plaintiffs further allege that due to Defendants' false and misleading statements, NovaStar's stock price traded at inflated levels, increasing to as high as $67.00 per share on March 22, 2004, during which time the total transactions in NovaStar's securities exceeded $107 million. On April 8, 2004, the price dropped to $54.18.

In May 2003, the Massachusetts Commissioner of Banks, Mortgage Lenders and Mortgage Broker Licensing sent NovaStar, a letter informing the company of allegations of substantial non-compliance with state law. Two days after the class period began, the Massachusetts Division of Banks ordered NovaStar to immediately cease mortgage broker and mortgage lender operations in Massachusetts because of serious regulatory violations. NovaStar's branch network in Massachusetts was shut down on October 31, 2003, and remained closed for two months. Eventually, NovaStar agreed to pay a fine of $22,500.00.

From July 2003 through February 2004, NovaStar illegally conducted its operations in the State of Nevada. In February 2004, the Commissioner of Nevada's Mortgage Lending Division directed NovaStar to cease all activities in Nevada. Nevada, according to NovaStar's SEC filings, was its fifth largest market in 2001 and 2002, accounting for approximately $130 million worth of loans collateralizing mortgage securities. Subsequently, NovaStar agreed to pay a fine of $80,000.00.

Plaintiffs claim that Defendants never disclosed to public investors its violations of Massachusetts' and Nevada's laws during the class period. In fact, Defendants made several public statements about its regulatory compliance at the same time it was directed to cease operations in the non-compliant states, none of which disclosed the pending inquiries.

In addition, NovaStar's SEC filings continually stressed the importance of complying with federal and state regulations and noted the failure to comply with said regulations could adversely affect its operations and/or profitability. For example, on March 5, 2004, NovaStar filed its 2003 Form 10-K with the SEC, which stated as follows:

> Our failure to comply with federal, state or local regulation of mortgage lending, of broker compensation programs or of our local branch operations could adversely affect our operations and profitability. As a mortgage lender, we are subject to many laws and regulations. Any failure to comply with these rules and their interpretations or with any future interpretations or judicial decisions could harm our profitability or cause a change in the way we do business.

2

Similar statements were also made on November 6, 2003, in a Prospectus Supplement filed with the SEC; on November 18, 2003, in a Form S-3 Registration Statement filed with the SEC; on December 9, 2003, in an amendment to Form S-3 filed with the SEC; and, on January 16, 2002, in a Prospectus Supplement filed with the SEC.

Plaintiffs proposed the class to be defined as all persons who (1) purchased or otherwise acquired common stock of NovaStar during the class period, (2) still held shares of stock as of April 8, 2004, and (3) as a result of NovaStar's actions, suffered damages.

## II. DISCUSSION

Federal Rules of Civil Procedure 23(a) requires the moving party, as a prerequisite applicable to all class actions, to show: (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims of defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class. In addition to meeting the prerequisites of 23(a), the Court must be satisfied that "the questions of law or fact common to the members of the class predominated over any questions affecting only the individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. 23(b)(3).

Defendants' main argument against class certification is Plaintiffs' alleged abandonment of their original theory of the case, in turn rendering their new theory not only "baseless" but "fatally flawed." Defendants' contend Plaintiffs' original hypothesis was based solely on artificial price inflation, but in the instant motion change the focus to a fraud-on-the-market presumption of reliance and "price maintenance." The Court believes this argument on the merits of Plaintiffs' legal theories to be premature and should only be addressed in the summary judgment stage.

A. Rule 23(a)

1. Numerosity

Rule 23(a)(1) requires that the proposed class be "so numerous that joinder of all members is impracticable." Plaintiffs bear the burden of establishing that numerosity exists. Belles v. Schweiker, 720 F. 2d 509, 515 (8th Cir. 1983). Plaintiffs state that joinder of all members of the class would be impracticable because the class consists of "many hundreds, if not thousands, of members geographically dispersed throughout the United States." This fact has not been disputed by Defendants. During the Class Period, NovaStar had more than 22 million shares of common stock outstanding, held by more than 20,000 stock holders. As the class would include all purchasers of NovaStar common stock after October 29, 2003 who still held shares on April 8, 2004, the Court finds Plaintiffs have met the numerosity requirement.

2. Commonality

This prong of the rule is satisfied when the "legal questions linking the class members is substantially related to the resolution of the litigation." DeBoer v. Mellon Mortgage Co., 64 F. 3d 1171, 1174 (8th Cir. 1995). Common issues in this case include: 1) Whether Defendants violated Section 10(b) of the Securities Exchange Act (SEC) and Rule 10b-5 promulgated thereunder; 2) Whether Defendants' failure to disclose regulatory, licensing and compliance failures rendered their public statements materially false and misleading; 3) Whether Defendants made false and misleading statements with scienter; 4) Whether the market price of Defendant's securities was artificially inflated or maintained; and 5) The extent the members of the class have sustained damages, if any. The Court finds Plaintiffs have satisfied the commonality requirement of Rule 23(a).

3. Typicality

Typicality means there are other members of the class who have the same or similar grievances as the plaintiff. Alpern v. UtiliCorp United, Inc., 84 F. 3d 1525, 1540

(8th Cir. 1996). The burden of demonstrating typicality is fairly easy to meet so long as other class members have claims similar to the named plaintiffs. DeBoer, 64 F. 3d at 1174. As stated above, the plaintiffs in this class all have claims against NovaStar for the same or similar conduct. The Court finds Plaintiffs meet the typicality requirement.

    4. Adequate Representation

This factor generally requires "(1) that the plaintiff's attorney is qualified, experienced, and will competently and vigorously prosecute the suit, and (2) that the interest of representative is not antagonistic to or in conflict with other members of the class." Griffin v. Carlin, 755 F. 2d 1516, 1533 (11th Cir. 1995). The adequacy of representation requirement tends to merge with the commonality and typicality criteria of Rule 23(a), "which serve as guideposts for determining whether maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." Amchem Products, Inc., v. Windsor, 521 U.S. 591, 626 (1997), (quoting General Telephone Co. of Southwest v. Falcon, 457 U.S. 147, 157 (1982)). Defendants argue that neither lead plaintiff would satisfy this requirement.

In its August 23, 2004 Order consolidating the cases, the Court appointed Generic Trading of Philadelphia ("Generic") and Harrold Daniels as Co-Lead Plaintiffs. Generic is a licensed institutional trading firm, is registered on the Philadelphia Stock Exchange, and its principals are registered with the National Association of Securities Dealers. Generic's traders are routinely monitored and required to trade at one of Generic's trade offices. Daniels is an individual investor who purchased NovaStar during the Class Period.

Defendants contend Generic is a unique plaintiff because it engages in daytrading, which will increase the time, expense and burden of conducting discovery, thereby outweighing any benefits of certifying a class in this case. While Generic has 20 branch offices and includes over 1000 traders, the shares purchased by Generic traders are beneficially owned by Generic and are contained in a single Generic account, including all trader sub-accounts. Even if some of Generic's transactions are

categorized as "daytrades," (and Defendants concede not all of them were) it purchased shares during the Class Period, and held some as of April 8, 2004, thereby causing Generic damage when the price dropped following the full disclosure to the market. Again, in a securities class action, reliance is presumed pursuant to the fraud-on-the-market theory, which assumes that all publicly available information about the company is reflected in its stock price. In re Control Data Corp. Sec. Litig., 933 F. 2d 616, 619-20 (8th Cir. 1991). In these relevant aspects, Generic is no different than any other institutional investor.

Defendants contend Daniels is not a long-term investor because he repeatedly liquidated his shares of NovaStar, only to repurchase the same amount shortly thereafter. That Daniels and other class members purchased shares in different amounts on different days does not make him an atypical representative. The question is not how often Plaintiffs bought or sold shares of NovaStar, but whether Plaintiffs purchased the securities during the Class Period at artificially inflated/maintained prices and, consequently, suffered damages by holding the stock at the time the market learned the facts allegedly concealed.

### 5. Milberg Weiss

Defendants also assert the indictment of Milberg Weiss renders it unsuitable as class counsel. A grand jury in the Central District of California returned an indictment against Milberg Weiss and two of its partners, David Bershad and Steven Shulman. The indictment alleges that in certain cases, attorneys directed money to represented lead plaintiffs and the firm knew about the arrangement. Defendants point out four instances where other courts have opted not to appoint the firm and contend dissatisfied members of the class will already have a built-in challenge to this action.

The attorneys listed in the indictment are not involved in this case and have, in fact, taken a leave of absence from the firm. Entwistle & Cappucci LLP, the co-lead counsel involved in this case assures all parties against any behavior of the type alleged in the indictment. Further, removal of Milberg Weiss as co-lead counsel would not only harm the class, but prematurely punish the firm for unproven allegations.

The Court does not believe it is be appropriate to consider disqualification of the firm unless and until the claims have been substantiated.

B. 23(b)(3)

Plaintiffs seek certification under 23(b)(3), which requires that questions of law or fact predominate over any individual questions and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. Amchem Products, Inc., 521 U.S. at 622. The predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation. Id. at 623.

1. Predominance

The predominance inquiry tests whether the proposed classes are sufficiently cohesive to warrant adjudication by representation. Id.  Predominance is a test readily met in certain cases alleging consumer or securities fraud. Id. at 625. The issues in this case are common to each claimant, namely, the veracity of Defendants' public statements, Defendants' state of mind, the materiality of the statements and loss causation.  Accordingly, the Court concludes that the common issues regarding Defendants' liability predominate over possible members affecting only individual members.

2. Superior

To satisfy the superiority prong if the inquiry, the class action must be "superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3).  Proceeding as a class action would further the interests of judicial economy. The Court believes that given the cost required for the litigation of a securities action, few class members would or could prosecute it on an individual basis.

### III. CONCLUSION

Plaintiffs' Motion for Class Certification is granted. The parties are ordered to submit an Amended Proposed Scheduling Order within thirty (30) days of this Order.

IT IS SO ORDERED.

Date: February 8, 2007                    /s/    Ortrie D. Smith
                                                ORTRIE D. SMITH, JUDGE
                                                UNITED STATES DISTRICT COURT