# EXHIBIT 4
# (Pt. 5)

# EXHIBIT E

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

BRUNO HOFMANN,                          *
                                        *
                Plaintiff,              *
                                        *
        v.                              *        Civil Action No. 04-10027-JLT
                                        *
PHILIP LAUGHLIN, et al.                 *
                                        *
                Defendants.,            *
                                        *

ORDER

April 26, 2006

TAURO, J.

        After a Conference held on April 25, 2006, this court hereby orders that:

    1.      Parties must comply with this court's Rule 26 Order by May 25, 2006;

    2.      Plaintiff may depose the following: (1) Philip Laughlin; (2) Michael Sabolinksi; (3)

            Alan Tuck; (4) Donna Abelli Lopolito; (5) Albert Erani; (6) Herbert Stein; (7)

            John Arcari; and (8) Bernard Marden;

    3.      Defendant may depose the following: (1) Bruno Hofmann; (2) John Bowie; (3)

            Richard Conen; and (4) Richard Madigan;

    4.      Third-party Discovery is permitted as discussed in open court;

    5.      Except as otherwise modified by this Order, the Parties' Joint Statement [#103] is

            ADOPTED;

    6.      All discovery must be completed by April 25, 2007;

7.    No extensions of time will be permitted;

8.    No further discovery will be permitted without leave of this court; and

9.    A Final Pre-trial Conference will be held on April 18, 2007.

IT IS SO ORDERED.

_____/s/ Joseph L. Tauro_____
United States District Judge

# EXHIBIT F

## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE ORGANOGENESIS SECURITIES LITIGATION | : <br> : <br> : Case No.: 1:04cv10027-JLT <br> : <br> : |

## LEAD PLAINTIFFS' UNOPPOSED MOTION
## TO FILE SERVE THIRD PARTY SUBPOENA

Pursuant to this Court's Discovery Order that "[n]o additional discovery shall take place without further order of the court", Lead Plaintiffs' move this Court for leave to serve a subpoena, substantially in the form attached as Exhibit A hereto, upon former Defendant PricewaterhouseCoopers, LLP ("PwC"). As grounds for this motion, Lead Plaintiffs state that PwC -- as the auditor during the Class Period for Organogenesis, Inc., the bankrupt corporation many of whose former officers and directors are the defendants in this action -- has information and documents centrally "relevant to disputed facts alleged with particularity in the pleadings." Although the Court dismissed PwC as a defendant upon PwC's motion to dismiss, the relevance of documents that are likely within PwC's possession concerning the allegations in this Complaint is clear.

The Complaint alleges — in the form of a confidential document created by the Company's then-Chief Financial Officer (the "Confidential Arcari Document"), included as Exhibit 1 to Exhibit A) —that defendant Albert Erani ("Erani"), the then-Chairman of Organogenesis, embarked on a scheme to "manipulate the market for the Company's stock" and "encouraged the Company to prepare overly optimistic financial projections to existing and potential service providers." ¶59.[1] The Confidential Arcari Document demonstrates that by

---

[1] References to "¶ __" are to a paragraph in Plaintiffs' Corrected Consolidated Amended Class Action Complaint For Violations Of Federal Securities Laws (the "Complaint").

March 2001 PwC became aware of suspicious activity by Erani that "*eroded*

*PricewaterhouseCoopers [sic] confidence in managements [sic] and the Boards [sic]*

*representations*." ¶ 111.  According to the Confidential Arcari Document, Erani had failed to

provide PwC with standard audit confirmations relating to his holdings of the Company's

convertible debt.  Other actions by Erani led to a "*loss of the Company's credibility with*

*[PwC]*." Id.  Moreover, in May 2001, PwC further lost confidence in the Company's officers

and directors when Organogenesis violated its commitment to PwC to exercise a key put option

(the "Novartis Put Option") granted by the Company's marketing partner, non-party Novartis

AG ("Novartis").  PwC apparently was so alarmed by the violation of this commitment that,

according to the Confidential Arcari Document, it refused to support the Company's future

financing initiatives by withholding further consents and comfort letters.[2]

        Despite Erani's suspicious activity, the violation of the Novartis Put Option commitment

and PwC's belief that the Company's management and Board could not be trusted, in March

2001 PwC certified the Company's year-end 2000 financial statements by issuing an unqualified

or "clean" audit opinion.

        On January 30, 2002, right before the end of the Class Period, the Company announced

for the first time that it was running out of money and that it would be forced to "curtail or

discontinue all operations" if it could not raise $15 million by the end of the first quarter of 2002.

¶¶148-49.  The Company also revealed for the first time that it would not be able to access the

remaining $10 million portion of the Novartis Put Option because of previously undisclosed

conditions to the exercise of that option, which the Company could not satisfy.  ¶¶150; 154.

---

[2] A "comfort letter" is a statement provided by an auditor to a company preparing for a public
offering that confirms that unaudited financial data in the prospectus related to the offering
conforms to GAAP.

Over two months later, on April 16, 2002, PwC issued a "going concern" opinion concerning Organogenesis, which stated that PwC had "substantial doubt" about Organogenesis' ability to continue as a going concern. ¶ 155. According to PwC, "the Company has suffered recurring losses from operations, has a working capital deficiency, a stockholder's deficit, and has long-term debt that may become immediately due upon an event of default." Id.

The proposed subpoena contains narrowly tailored requests for documents relevant to the particularized allegations in the Complaint that would be in the possession of PwC as Organogenesis' auditors.

WHEREFORE, Lead Plaintiffs respectfully request this Court grant leave for it to serve a subpoena upon PricewaterhouseCoopers LLP substantially in the form attached as Exhibit A hereto.

Dated: June 9, 2006

**MOULTON & GANS, P.C.**

By: /s/ Nancy Freeman Gans
Nancy Freeman Gans, BBO #184540
55 Cleveland Road
Wellesley, MA 02481
Telephone: (781) 235-2246
**Liaison Counsel and Local Counsel for
Plaintiffs and the Class**

**MILBERG WEISS BERSHAD
 & SCHULMAN LLP**
Elaine S. Kusel
Peter Sloane
One Pennsylvania Plaza
New York, NY 10119
(212) 594-5300

**Lead Counsel for Plaintiffs and the Class**

## CERTIFICATION PURSUANT TO LOCAL RULES 7.1 AND 37.1

I, Nancy Freeman Gans, hereby certify that I conferred via email June 7 – 8, 2006 with Jonathan A. Shapiro, Esquire, Wilmer Cutler Pickering Hale and Dorr LLP, counsel for Defendants Donna Abelli Lopolito, Michael Sabolinski, Philip Laughlin, Albert Erani and Alan Ades, and with Peter M. Saparoff, Esquire, Mintz, Levin, Cohn, Ferris, Glovsky and Popeo, P.C., counsel for Defendant Herbert M. Stein, and by telephone on June 9, 2006 with Sara Jane Shanahan, Griesinger, Tighe & Maffei, LLP counsel for Defendant John Arcari. All assented to this motion.

/s/ Nancy Freeman Gans
Nancy Freeman Gans

## CERTIFICATE OF SERVICE

I, Peter Sloane, hereby certify that a true copy of the above document was served upon the attorney of record for each party.

/s/ Peter Sloane
Peter Sloane

| 06/13/2006 | | Judge Joseph L. Tauro : Electronic ORDER entered granting 124 Motion for Leave to File Serve Third Party Subpoena. (Abaid, Kim) (Entered: 06/14/2006) |
|---|---|---|

# EXHIBIT G



NEW YORK
LOS ANGELES

Peter Sloane
Direct Dial: 646-733-5757
psloane@milbergweiss.com

December 28, 2006

<u>VIA FEDERAL EXPRESS</u>

Matthew J. Matule, Esq.
Skadden, Arps, Slate, Meagher & Flom LLP
One Beacon Street
Boston, MA 02108

    Re:    <u>Organogenesis Securities Litigation</u>

Dear Mr. Matule:

    I write to follow up on the subpoena that Plaintiffs in the above matter issued to PricewaterhouseCoopers, to request that you expedite production of certain documents, and to schedule a meeting to discuss document requests you assert are objectionable and the format in which you will be producing electronically stored information.

    Judge Tauro granted Plaintiffs leave to subpoena PwC. The fact that PwC has submitted objections to the subpoena does not absolve it of its obligation to promptly produce all responsive documents that are not objectionable. PwC was served with the subpoena six months ago and, therefore, has had ample time to compile responsive documents. Accordingly, we expect you to promptly produce all non-objectionable documents. With respect to your objection to producing "confidential proprietary material and/or sensitive non-public information," please note that the Court has entered a protective order which covers third party productions and provides comprehensive protection to any documents designated confidential. A copy of that order is enclosed.

Milberg Weiss Bershad & Schulman LLP
One Pennsylvania Plaza · New York, NY 10119 · 212-594-5300 · Fax 212-868-1229 · www.milbergweiss.com



Matthew J. Matule, Esq.
December 28, 2006
Page 2

We disagree that any of your objections warrants the withholding of any responsive documents but are nevertheless prepared to discuss your objections. Please let us know when you are available to have a meet and confer session by telephone. We can also use this session to discuss your production of electronically stored information.

Sincerely,

Peter Sloane

PS/jlc
Enclosure

cc:    Peter Seidman, Esq.
       Nancy F. Gans, Esq.

Milberg Weiss Bershad & Schulman LLP

DOCS\388341v1                                                                    

## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE ORGANOGENESIS SECURITIES LITIGATION | No. 04-CV-10027 (JLT) |

## JOINT [PROPOSED] PROTECTIVE ORDER

For good cause shown, the Court hereby orders, pursuant to Fed. R. Civ. P. 26(c), as follows:

This Protective Order (the "Order") governs the handling of all documents, testimony and other information, including all copies, excerpts and summaries thereof (collectively, the "Material") produced, obtained or filed during the course of discovery proceedings in the above-captioned action. Third parties to these proceedings may avail themselves of this Order.

1.      This Order does not confer blanket protections on all disclosures or responses to discovery and the protection it affords extends only to the information or items that the designating party in good faith believes meets the definition of confidential under this order and requires confidential treatment.

2.      The term "Designating Party" as used herein shall mean the person who produces the Material subject to protection under this Order, and any non-party who, incident to discovery in this action, produces such information.

3.      The Designating Party shall have the right to designate any Material as "Confidential" to the extent that it believes in good faith that such Material constitutes, contains or would disclose (A) trade secrets or other confidential commercial information (i) which is not publicly available, (ii) the disclosure of which is likely to adversely affect a Designating Party's competitive position, business operations, or economic interests,

1

and (iii) in which the Designating Party holds a proprietary interest, or (B) highly sensitive personal information, including, for example, personal financial or investment data, employment or severance agreements (or documents directly related thereto), or medical information ("Confidential Material"). In addition, in the event that the Designating Party is producing documents or information that the Designating Party in good faith believes may be proprietary to another person or entity (the "Owner") and accordingly designates such documents or information as Confidential Material, the Designating Party may, but need not, inform the Owner, within 30 days of the production of the Confidential Material or the entry of this Order, whichever is later, of the designation. Thereafter, the Owner shall have 30 days from notification to designate the produced documents or information as Confidential Material, provided that the material meets the definition of Confidential Material in this Order. If no such designation is made, then the material will no longer be deemed Confidential Material.

   4.  Confidential Material shall be designated as follows:

   (a)  In the case of documents, designation shall be made by placing the legend "Confidential" on each page of such documents prior to production.

   (b)  In the case of depositions, designation of the transcript or the portion of the transcript (including exhibits) which contains Confidential Material shall be made by a statement to such effect on the record during the course of the deposition, or by a statement in writing sent to all counsel of record within ten (10) business days after the receipt of the transcript of the deposition. If the designation is made during the course of the deposition, the reporter attending such deposition shall thereafter bind the transcript thereof in separate portions containing the non-confidential material and the Confidential Material, and the reporter shall place the appropriate legend on the cover of each separately bound portion of the transcript. (The parties may modify this procedure for any particular deposition through agreement on the record at such deposition, without further court order.)

Any documents produced or testimony given in this action before entry of this Order will be deemed designated "Confidential Material" if those documents or transcripts were marked or produced pursuant to the legend "Confidential," "Attorneys' Eyes Only," or other similar designation indicating the Designating Party's intention to seek confidential treatment for those documents or transcripts.

5.    A party filing any portions of briefs, pleadings or other filings with the Court that contain or refer to Confidential Material shall attempt, as set forth below, to have the Confidential Material filed under seal. The Confidential Material shall be presented for filing in a separate, sealed envelope with a cover page of the pleading on the outside of the envelope along with the following notation: "Confidential Material Subject to Protective Order."

6.    If any party objects to the designation of any Material as Confidential Material, such party shall state the nature of the objections in a letter to counsel for the Designating Party within sixty (60) days from the date which the designation is first made. The Parties shall attempt in good faith to resolve all objections by agreement. If any objections cannot be resolved by agreement within thirty (30) days from when they are first made, the parties shall cooperate in jointly submitting the dispute to the Court. The Party asserting the designation has the burden of production and persuasion in defending the designation. Until an objection has been resolved by agreement of counsel or by order of the Court, the Material shall be treated as Confidential Material and subject to this Order.

7.    All material obtained by the Receiving Party from the Designating Party through discovery in this action shall be used by the Receiving Party only in this action (including any appeals), and not for any other purpose whatsoever, except that a Receiving Party may use and submit Confidential Material to the

3

court in any action in this or another district to enforce third-party discovery related to this case. Confidential Material shall not be given, shown, made available or communicated in any way to anyone except:

> Counsel of record in this action, and attorneys, paralegals and other support staff employed by such counsel who are assisting in the conduct of this action;

> The parties in this action;

> Witnesses (and their counsel) at any deposition or trial in this action or in preparation of such deposition or trial;

> The Court, court personnel and the jury in this action;

> Court reporters employed in connection with this action;

> Experts or consultants (and employees of such experts or consultants) retained or consulted by the parties, whether or not such experts or consultants are designated as testifying experts or in fact testify in this action; and

> Any person whom counsel for all Parties agrees should have access to such materials and who agrees to be bound by the terms of this Order by signing the acknowledgement attached hereto as Exhibit A.

8.     Each person identified in the last two paragraphs of Paragraph 7 above, prior to being given access to Confidential Material pursuant to Paragraph 7, shall be advised that (i) the Confidential Material is being disclosed pursuant to and subject to the terms of this Order and may not be disclosed other than pursuant to the terms hereof, and (ii) that the violation of the terms of the Order (by use of the Confidential Material for purposes other than conducting this action) may constitute contempt of a court order. Each such person must expressly acknowledge in writing that he or she is familiar with the terms of the Order and agrees to be bound by its terms prior to being granted access to the Confidential Material by signing the acknowledgement attached hereto as

Exhibit A.

9.    Nothing in this Order shall affect the right of a Party to freely disclose publicly any documents or information independently obtained by that Party, regardless of whether any identical or similar document or information has been produced by any other Party.

10.    In the event that any person not named in Paragraph 7 requests the disclosure of Confidential Material of the Designating Party through subpoena or other compulsory process, the person receiving such subpoena or compulsory process (the "Receiving Party") shall give notice in writing to counsel for the Designating Party, such notice to be delivered by fax or e-mail at least fourteen (14) days prior to the proposed disclosure; if the request is received less than fourteen (14) days prior to the proposed disclosure, notice shall be given immediately.  It shall be the obligation of the Designating Party to obtain a court order to preclude or restrict production of any Confidential Material requested pursuant to a subpoena or other compulsory process.  In the event that the Designating Party moves for such an order and so notifies the Receiving Party, the Receiving Party shall not produce or divulge the contents of any Confidential Material until such motion is resolved.  Unless the Designating Party moves for a protective order, the person receiving such subpoena or other process is not prohibited from timely complying with such subpoena or other process as required under the Federal Rules of Civil Procedure.

11.    Nothing in this Order shall operate to require the production of information or documents that are privileged or otherwise protected from discovery.

12.    Inadvertent disclosure of materials subject to the attorney client privilege, work product doctrine, or other protection from disclosure shall not constitute a waiver of, or an estoppel as to such privilege or protection and all

such inadvertent materials shall be returned upon request and not thereafter used for any purpose. If the parties are not able to resolve an issue regarding inadvertent production, the Party seeking the privilege shall bear the burden of presenting such issue to the Court, and of proving the existence and applicability of the privilege. Pending the Court's decision on such dispute, the inadvertently produced materials shall not be used for any purpose. All copies of documents found by the Court to be privileged or protected from disclosure shall be destroyed by the Receiving Party forthwith and any information contained therein (that is not otherwise available to the Receiving Party) shall not subsequently be used for any purpose. Nothing in this section shall preclude a party from challenging the propriety of the claim of privilege in accordance with the Rules of Civil Procedure.

13.   No Prejudice.

Nothing in this Order shall preclude any party from seeking and obtaining additional or different protection with respect to the confidentiality of discovery.

This Order shall not prevent a disclosure to which the Designating Party consents in writing before the disclosure takes place.

The designation of information as "Confidential," pursuant to this Order, shall not be construed as a concession by a producing party that such information is relevant or material to any issue or is otherwise discoverable, nor shall it be construed as a concession by a Receiving Party that such information is, in fact, entitled to protection under this Order or warrants any protection from disclosure.

14.   Except as provided below, the inadvertent or unintentional production of documents containing, or otherwise disclosing, private, proprietary or secret information without being designated "Confidential" at the time of

6

production or disclosure shall not be deemed a waiver in whole or in part of a Designating Party's claim of confidentiality or secrecy, either as to the specific information disclosed or as to any other information relating thereto or on the same or related subject matter. Any error in designation shall be corrected within 30 days after the Designating Party becomes aware of the error or protection under this Order for such documents or information shall be waived.

15.    This Order, insofar as it restricts the communication and use of Confidential Material, shall continue to be binding throughout and after the conclusion of this action, including any appeals, provided, however, that nothing herein shall limit the public use or admissibility of Confidential Material at trial. The trial of this case shall be public in all respects, and Confidential Material that is admitted in evidence or marked for identification at trial will no longer be deemed Confidential unless the Court approves a new confidentiality designation at the time of trial. Upon final termination of this action and at the written request of the Designating Party, all Designated Material and all copies, extracts and summaries thereof shall be returned to the person that produced the material or, at the option of the Receiving Party, shall be destroyed. However, counsel of record may retain copies of pleadings, attorney and consultant work product, and deposition transcripts (including deposition exhibits) for archival purposes.

16.    The restrictions imposed by this Order may only be modified or terminated by written stipulation of all parties, by stipulation read into a court record or deposition record, or by order of this Court. This Order shall survive termination of this action.

17.    If, after designating certain documents or information as Confidential Material, pursuant to this Order, a Designating Party makes a disclosure that is not consistent with that designation and this Order, that disclosure shall operate as an automatic waiver of the protections of this Order as

7

to such documents or information, and the Receiving Party thereafter shall not be
bound by the terms of this Order as to such Confidential Material.

IT IS SO ORDERED

Dated: __7 / 26 /__, 2006

By: _____
UNITED STATES DISTRICT JUDGE

UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE ORGANOGENESIS SECURITIES LITIGATION | No. 04-CV-10027 (JLT) |

### CONFIDENTIALITY UNDERTAKING

I hereby certify (i) my understanding that Confidential Material is being provided to me pursuant to the terms and restrictions of the Protective Order (the "Order") entered by the United States District Court for the District of Massachusetts and (ii) that I have read the Order. I understand the terms of the Order, I agree to be fully bound by the Order, and I hereby submit to the jurisdiction of the United States District Court for the District of Massachusetts for purposes of enforcement of the Order. I understand that any violation of the terms of the Order may be punishable as the Court deems appropriate under the circumstances.

Executed this _____ day of _____, 200_.

_____
Signature

10

# EXHIBIT H

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

ONE BEACON STREET

BOSTON, MASSACHUSETTS 02108-3194

———

TEL: (617) 573-4800

FAX: (617) 573-4822

www.skadden.com

FIRM/AFFILIATE OFFICES

CHICAGO
HOUSTON
LOS ANGELES
NEW YORK
PALO ALTO
SAN FRANCISCO
WASHINGTON, D.C.
WILMINGTON
———
BEIJING
BRUSSELS
FRANKFURT
HONG KONG
LONDON
MOSCOW
MUNICH
PARIS
SINGAPORE
SYDNEY
TOKYO
TORONTO
VIENNA

January 10, 2007

**BY TELECOPY AND**
**BY FIRST CLASS MAIL**

Peter Sloane
Milberg Weiss & Bershad LLP
One Pennsylvania Plaza, 48th Floor
New York, New York 10119

RE:    In Re Organogenesis Securities Litigation, (D. Mass.)
         Subpoena Served on PricewaterhouseCoopers LLP

Dear Mr. Sloane:

        Thank you for your December 28, 2006 letter and recent voicemails regarding the plaintiffs' June 16, 2006 subpoena to PricewaterhouseCoopers LLP ("PwC") in the above-referenced litigation. PwC timely responded and objected to plaintiffs' subpoena on or about July 11, 2006. To be sure, it's been a while since I've heard from you. Indeed, I never heard from you at all about the subpoena or PwC's written responses and objections until I saw your letter last week -- more than five months later.

        To reiterate what is already set out in PwC's responses and objections, and more specifically directing your attention to General Objection No. 2 and the case law consistent therewith, PwC will not produce any documents absent an agreement by plaintiffs for the complete reimbursement of all costs incurred by non-party PwC to respond to the subpoena. Based on the work performed thus far in reviewing the work papers for the multiple fiscal years at issue, such costs are expected to be $120,000 to $125,000.

        To the extent you truly wish expedition now, please confirm plaintiffs' agreement to reimburse PwC for the costs it has incurred. We will thereupon promptly prepare for production a copy set of the documents PwC indicated it would provide per its responses and objections. Upon receipt of a check payable to PwC in the amount of the total costs ultimately incurred by PwC in connection with this review and production, we will forward a copy set of the PwC documents. If, however, you believe a meet and confer is necessary, I am available either Friday morning of this week or Tuesday afternoon of next week. Let me know how you would like to proceed.

Very truly yours,

*Matthew J. Matule*

Matthew J. Matule

# EXHIBIT I



NEW YORK
LOS ANGELES

MILBERG WEISS

Peter Sloane
Direct Dial: 646-733-5757
psloane@milberg.com

January 19, 2007

<u>VIA EMAIL PDF</u>

Matthew J. Matule, Esq.
Skadden, Arps, Slate, Meagher & Flom LLP
One Beacon Street
Boston, MA 02108

Re:    <u>Organogenesis Securities Litigation</u>

Dear Matt:

Thank you for participating in the telephonic meet and confer yesterday concerning Plaintiffs' subpoena to PricewaterhouseCoopers LLP ("PwC"). I write to confirm our conversation yesterday and to respond to your letter, dated January 10, 2007.

PwC's relevance to this action stems from more than simply the fact that it was Organogenesis' auditor during the class period — a fact that alone would warrant the production of the documents requested by the subpoena. The Confidential Arcari Document (a copy of which was attached to the subpoena) states that Defendant Albert Erani encouraged the company to prepare "overly optimistic financial projections" to service providers, including PwC, and that PwC became aware of suspicious activity by Erani that "eroded PricewaterhouseCoopers [sic] confidence in managements [sic] and the Boards [sic] representations." Further, Erani failed to provide PwC with standard audit confirmations relating to his holdings of Organogenesis's convertible debt, which, along with other actions by Erani, led to a "loss of the Company's credibility with [PwC]." The Confidential Arcari Document also states that PwC further lost confidence in Organogenesis's officers and directors when the company violated its commitment to PwC to exercise the Novartis Put Option. PwC apparently was so alarmed by the violation of this commitment that it refused to support the Company's future financing initiatives by withholding further consents and comfort letters. In addition to the Confidential Arcari Document, the deposition of PwC Senior Manager John J. Crowley in *Bricoleur Capital Management LLC, et al. v. Organogenesis Inc, et al.*, Case No. GIC 792828 (San Diego Cty. Sup. Ct.) further demonstrates that PwC has information and documents that are of central relevance to the claims and defenses at issue in this action, including issues such as the "going concern" opinion issued by PwC. The subpoena is narrowly-tailored to obtain only those documents that are related to these and other issues relevant to the subject matter

Milberg Weiss & Bershad LLP

One Pennsylvania Plaza · New York, NY 10119 · 212-594-5300 · Fax 212-868-1229 · www.milbergweiss.com

Matthew J. Matule, Esq.
January 19, 2007
Page 2

of this action, and as I mentioned, Plaintiffs are willing to consider any further narrowing of the
requests in order to minimize any compliance burden.

I was pleased to hear that PwC's concern about the confidentiality of documents to be
produced is no longer an issue given the protective order entered by the Court in this case.

Plaintiffs do not agree with PwC's contention that it may unilaterally decide to produce only
quarterly and annual audit workpapers to the exclusion of any specific additional documents in
PwC's possession that are responsive to the subpoena requests. I was particularly concerned by
your assertion yesterday that PwC's intention not to produce such documents extends to documents
responsive to Request No. 1, which concerns the highly relevant issues detailed in the Confidential
Arcari Document. You said that you were not sure whether any potentially responsive documents
exist in addition to the workpapers and you agreed to check and let me know within the week.
Plaintiffs request that, to the extent any such additional responsive documents exist, PwC reconsider
its position concerning their production.

As I stated, PwC's demand that Plaintiffs immediately pay over $100,000 — purportedly to
cover various expenses, including all legal fees relating to your firm's analysis of, and written
responses to, the subpoena — before receiving even a single document is unjustified and
unacceptable. Although complying with a subpoena inevitably entails a certain burden to the
producing party, nothing that you stated in your letter or our conversation yesterday indicates any
undue burden to PwC; indeed, the limited universe of documents you intend to produce and the fact
that they are readily identifiable suggest the contrary. You estimated that the total volume of these
documents consists of four boxes of hard copy documents and approximately 4,000 electronic
documents. Assuming your estimates of 7 pages per electronic document, and 5000-6000 pages per
box, are correct, the volume of electronic documents you intend to produce is approximately 5
boxes, thus making the total volume of all documents (electronic and hard copy) that you intend to
produce approximately 9 boxes. You also confirmed that the only documents that PwC intends to
produce (i.e., quarterly and annual workpapers concerning Organogenesis) consist of a discrete set
of materials that are maintained together and are easily identifiable. Given that the task of locating
and identifying the documents that you intend to produce is largely, if not entirely, absent here, we
do not understand how PwC reasonably expects to incur $120,000 to $125,0000 in order to produce
approximately 9 boxes of documents, even were we to take into account any time to review the
documents for privilege, responsiveness and confidentiality and to copy and bates stamp them —
costs that would be mostly, if not entirely, eliminated by the proposals I made yesterday and that are
detailed below. To the extent that PwC persists in demanding payment of this sum, Plaintiffs
request that PwC provide us with copies of your firm's itemized bills, and any other itemized bills,
detailing the amount and nature of any fees and costs that PwC has incurred to date in responding to
the subpoena.

Nor do we believe that PwC is entitled to any special accommodation in this action given
that, as demonstrated by the evidence above, PwC is hardly an innocent bystander to this case.
PwC was presumably well paid for the audit work it performed for Organogenesis; it was a

Milberg Weiss & Bershad LLP

Matthew J. Matule, Esq.
January 19, 2007
Page 3

defendant in this action; as an auditor, it routinely receives requests from regulators and private litigants concerning its clients; it has been drawn into other litigation concerning alleged fraud at Organogenesis (in which it apparently produced documents pursuant to subpoena); and it could easily have foreseen being called upon to produce relevant documents in this case.

Plaintiffs are, however, willing to work with PwC to attempt to minimize, to the extent possible, any burden that would result from its compliance. As I proposed in our telephone conversation, in order to alleviate any burden to PwC in connection with reviewing documents for responsiveness, Plaintiffs are willing to travel to wherever PwC's documents are located and review the originals of the documents for responsiveness. Under this arrangement, Plaintiffs would also agree to a clawback right, whereby PwC's counsel would have the opportunity to review for privilege any subset of documents selected by Plaintiffs as responsive and to withhold from production any privileged documents (although PwC would, of course, be required to provide a privilege log of all documents withheld). In order to further alleviate any privilege concerns, I offered to agree that the production would not entail a waiver of any of PwC's privileges. I also offered to agree to blanket confidentiality protection under the Court's protective order for all documents made available for inspection, thus eliminating any need to review the documents for confidentiality. I offered to pay for all reasonable copying and shipping charges of any documents obtained by Plaintiffs, whether the documents are made available for inspection or shipped directly to Plaintiffs by PwC. With respect to electronic documents, I offered to have an IT specialist — paid for by Plaintiffs — conduct an electronic search of PwC's computer systems to identify any responsive documents that are not part of the readily identifiable documents that you already have located, subject to the same clawback, waiver and confidentiality protections applicable to hard copy documents. Plaintiffs are also willing to make an IT specialist available — at our expense — to work with PwC to conduct systems searches using inexpensive electronic search programs or other low cost methods. Finally, although we believe our requests are already narrowly-tailored, I also offered to consider any request by PwC that Plaintiffs narrow the document requests in order to further reduce any burden. We believe that these proposals eliminate mostly all, if not all, of the burden of compliance to PwC while still protecting PwC's rights. You agreed to check with your client as to whether these proposals are acceptable and get back to me within the week.

As a first step, PwC could easily, and with minimal or no burden, make a copy of those documents and deposition transcripts that it previously produced in the *Bricoleur* action (including the exhibits to the Crowley deposition and all documents produced in connection with that deposition, but excluding the transcript of his July 2, 2003 deposition, which we already have) and immediately produce them. PwC was represented in *Bricoleur* by your firm (indeed, Mr. Crowley was defended at his deposition by James R. Caroll, Esq., who was earlier involved in defending PwC in the instant action) and presumably your firm maintained a copy set of the documents it produced and the transcripts of PwC depositions that were taken. Given that producing those documents and transcripts would entail no costs of searching for, identifying, or reviewing documents, and given that Plaintiffs have offered to pay for reasonable copying and shipping costs, we believe there is no justification for not producing those documents immediately. Please let me

Milberg Weiss & Bershad LLP

Matthew J. Matule, Esq.
January 19, 2007
Page 4


know whether PwC has already collected and/or produced any documents responsive to the
subpoena in connection with any other investigation or lawsuit, including the *Bricoleur* action, and
whether PwC is willing to produce those documents immediately and without cost to Plaintiffs,
other than reasonable copying and shipping charges.

      You agreed to get back to me by Thursday, January 25, 2007.  I look forward to hearing
from you.


                                Sincerely,


                                Peter Sloane


cc:     Peter Seidman, Esq.
          Nancy F. Gans, Esq.


Milberg Weiss & Bershad LLP

# EXHIBIT J

# SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

ONE BEACON STREET

BOSTON, MASSACHUSETTS 02108-3194

TEL: (617) 573-4800

FAX: (617) 573-4822

www.skadden.com

FIRM/AFFILIATE OFFICES

CHICAGO
HOUSTON
LOS ANGELES
NEW YORK
PALO ALTO
SAN FRANCISCO
WASHINGTON, D.C.
WILMINGTON

BEIJING
BRUSSELS
FRANKFURT
HONG KONG
LONDON
MOSCOW
MUNICH
PARIS
SINGAPORE
SYDNEY
TOKYO
TORONTO
VIENNA

February 1, 2007

**BY TELECOPY AND**
**BY FIRST CLASS MAIL**

Peter Sloane
Milberg Weiss & Bershad LLP
One Pennsylvania Plaza, 48th Floor
New York, New York 10119

RE:    In Re Organogenesis Securities Litigation (D. Mass.)
       Subpoena Served on PricewaterhouseCoopers LLP

Dear Mr. Sloane:

          Thank you for your January 19, 2007 letter regarding the recent teleconference we held in connection with non-party PricewaterhouseCoopers LLP's ("PwC") response to its subpoena ("Subpoena") in the above-referenced litigation. Without getting into a point-by-point refutation of your letter, and thereby increasing PwC's costs in connection with its responses to the Subpoena, please consider the following.

          While we appreciate your suggestions to minimize the burden and have taken them into consideration, most of your proposal is meaningless in the current context because it was made months after PwC had already taken the necessary steps to respond to the Subpoena. Indeed, PwC responded and objected to the Subpoena almost eight months ago and incurred substantial expense in connection with preparing such responses. Nothing in your letter or points raised by you in our telephone conversation provides any basis for departing from the requirement that plaintiffs provide reimbursement for the costs routinely ordered to be reimbursed, including: 1) attorney fees for a review of PwC's client files related to Organogenesis, Inc. ("Organogenesis") for responsiveness and privilege purposes; 2) attorney fees for professional services rendered responding to the Subpoena, including legal research, drafting objections and responses, and correspondence related to the objections and responses and the production documents; 3) photocopy fees for review and production purposes; 4) electronic and database related fees for review and production purposes; 5) professional fees for administrative, support and vendor service fees associated with the review and production of paper and electronic documents; and 6) postage and other delivery fees. PwC's response, including time spent reviewing the documents and responding to the Subpoena, has thus far consumed approximately 20 hours of my time and 180 hours of associate time.

Peter Sloane
February 1, 2007
Page 2

        As we understand your proposal, at this time plaintiffs have not agreed to provide
reimbursement for PwC's attorney fees or other professional fees related to its responses and objections
to the Subpoena (items 1, 2 and 5 above) but will agree to provide reimbursement for customary costs
of photocopying and shipping (items 3 and 6 above). In light of the current case law providing for
reimbursement of all the above-mentioned categories of expenses, plaintiffs' proposal is simply
inadequate. Further, PwC is compelled by the same case law entitling it to the reimbursement it is
seeking to reach an explicit agreement with plaintiffs <u>before</u> providing <u>any</u> documents, or face the risk
of waiving its right to such reimbursement. As such, it is not possible to send you documents on a
rolling basis or piecemeal.

        Notwithstanding any of the foregoing, we are in the process of retrieving the *Bricoleur*
documents, deposition transcripts and exhibits. To the extent that responsive, non-privileged materials
do not overlap with the documents already included in our production set, and are not otherwise
governed by the protective order entered by the court in the *Bricoleur* action, PwC will include those
documents in its response to the Subpoena, subject to plaintiffs' agreement to reimburse PwC for the
photocopy and delivery fees associated with producing those materials. This also will confirm that the
response to the Subpoena will include the responsive, non-privileged documents located in the desk
files of individuals working on the Organogenesis engagement during the relevant fiscal years.

        Again, PwC would like to resolve this issue in a prompt and mutually satisfactory
manner. Please contact me and let me know whether an agreement regarding reimbursement can be
made with the Plaintiffs.

                        Very truly yours,

                        Matthew J. Matule

# EXHIBIT K



Peter Sloane
Direct Dial: 646-733-5757
psloane@milbergweiss.com

February 8, 2007

**VIA E-MAIL PDF**

Matthew J. Matule, Esq.
Skadden, Arps, Slate, Meagher & Flom LLP
One Beacon Street
Boston, MA 02108

   Re: <u>Organogenesis Securities Litigation</u>

Dear Matt:

   I write in response to your February 1, 2007 letter. As I understand PwC's position, PwC continues to refuse to produce a single responsive document (with the possible exception of the *Bricoleur* documents, which are addressed below) unless Plaintiffs agree to pay approximately $120,000 to $125,000. Given that PwC is evidently not willing to compromise in the slightest, and has rejected all of Plaintiffs' cost-saving propsosals out of hand, it is clear that we have reached an impasse that cannot be resolved without Court intervention. Consequently, I do not believe that further debating the points raised in the second and third paragraphs of your letter would serve any productive purpose.

   Your position with respect to the *Bricoleur* documents is not clear. I left you a voicemail yesterday to try to clarify your position without the need for continued letter-writing, but I have not received any response. Your letter states that PwC "will include those documents in its response to the subpoena" subject to Plaintiffs' agreement to reimburse PwC's expenses for photocopying and delivery. However, as I understand PwC's position, PwC's "response to the subpoena" does not envision any production of documents at all. I also do not understand your caveat that, even as to the *Bricoleur* documents, they will be included in PwC's "response to the subpoena" only to the extent they do not "overlap with materials already in [PwC's] production set." Given that the *Bricoleur* documents have already been produced in another action, and, therefore, do not require any review for privilege or responsiveness or preparation for production, and given that Plaintiffs have already agreed to pay for reasonable costs of copying and shipment, there is no legitimate reason for PwC to withhold these documents simply because they may "overlap with materials already in [PwC's] production set." For the same reason, we see no legitimate reason that production of these documents should continue to be delayed by

Milberg Weiss & Bershad LLP
One Pennsylvania Plaza · New York, NY 10119 · 212-594-5300 · Fax 212-868-1229 · www.milbergweiss.com

Matthew J. Matule, Esq.
February 8, 2007
Page 2


PwC or needs to be the subject of continued letter-writing.  Either PwC intends to produce the *Bricoleur* documents promptly or it does not.

Please let me know plainly (1) whether PwC will produce all the *Bricoleur* documents without exception, (2) whether PwC will do so without any condition other than Plaintiffs' agreement to pay for reasonable copying and shipment costs, (3) and whether PwC will do so not later than February 12, 2007.  If PwC intends to produce these documents by February 12, 2007, please let me know in advance the volume of the production and the estimated copying and shipment charges so that Plaintiffs determine whether less expensive copying and shipment alternatives are available.  I would appreciate a response with respect to the issue of the *Bricoleur* documents not later than February 12, 2007, so that Plaintiffs can know whether this issue needs to be raised in the motion to compel we intend to file in connection with the other responsive documents.


                                        Sincerely,

                                        Peter Sloane


PS/jlc

cc:     Peter Seidman, Esq.
        Nancy Freeman Gans, Esq.


Milberg Weiss & Bershad LLP

DOCS\393685v1

# EXHIBIT L

# SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

ONE BEACON STREET

BOSTON, MASSACHUSETTS 02108-3194

TEL: (617) 573-4800
FAX: (617) 573-4822
www.skadden.com

February 12, 2007

FIRM/AFFILIATE OFFICES
CHICAGO
HOUSTON
LOS ANGELES
NEW YORK
PALO ALTO
SAN FRANCISCO
WASHINGTON, D.C.
WILMINGTON
———
BEIJING
BRUSSELS
FRANKFURT
HONG KONG
LONDON
MOSCOW
MUNICH
PARIS
SINGAPORE
SYDNEY
TOKYO
TORONTO
VIENNA

**BY TELECOPY AND**
**BY FIRST CLASS MAIL**

Peter Sloane
Milberg Weiss & Bershad LLP
One Pennsylvania Plaza, 48th Floor
New York, New York 10119

>          RE:    In Re Organogenesis Securities Litigation (D. Mass.)
>                 Subpoena Served on PricewaterhouseCoopers LLP

Dear Mr. Sloane:

          Thank you for your February 8, 2007 letter regarding the subpoena to
PricewaterhouseCoopers LLP ("PwC") in the above-referenced litigation. Insofar as plaintiffs refuse
to comply with applicable law entitling PwC to reimbursement for its costs of compliance with the
subpoena, and plaintiffs are apparently unwilling to discuss any amount of reimbursement to PwC
other than costs of copying and shipping, we regrettably have reached an impasse. If plaintiffs are
willing to discuss a reasonable reimbursement, I believe we can reach a compromise without the need
for motion practice; however, reimbursement solely for copying and shipping alone is inadequate.

          As to the Bricoleur documents referenced in my letter of February 1, 2007, let me be
clear: documents that were produced in that separate action may be included in and among the
documents PwC is prepared to produce promptly upon plaintiffs' agreement to reimburse expenses.
That said, the Bricoleur production was not one of the categories of documents requested in plaintiffs
subpoena, and the subpoena and PwC's response govern any consequent production in connection with
this litigation. Finally, any production by PwC is entirely contingent on plaintiffs' agreement regarding
costs reimbursement, and under that case law no production can begin until such agreement is reached
or we have the Court's guidance on how to further proceed from here. Consequently, no documents
will be produced by February 12, 2007.

>                         Very truly yours,
>
>                         Matthew J. Matule

# EXHIBIT M

## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE ORGANOGENESIS SECURITIES LITIGATION | No. 04-CV-10027 (JLT) |

## JOINT [PROPOSED] PROTECTIVE ORDER

For good cause shown, the Court hereby orders, pursuant to Fed. R. Civ. P. 26(c), as follows:

This Protective Order (the "Order") governs the handling of all documents, testimony and other information, including all copies, excerpts and summaries thereof (collectively, the "Material") produced, obtained or filed during the course of discovery proceedings in the above-captioned action. Third parties to these proceedings may avail themselves of this Order.

1. This Order does not confer blanket protections on all disclosures or responses to discovery and the protection it affords extends only to the information or items that the designating party in good faith believes meets the definition of confidential under this order and requires confidential treatment.

2. The term "Designating Party" as used herein shall mean the person who produces the Material subject to protection under this Order, and any non-party who, incident to discovery in this action, produces such information.

3. The Designating Party shall have the right to designate any Material as "Confidential" to the extent that it believes in good faith that such Material constitutes, contains or would disclose (A) trade secrets or other confidential commercial information (i) which is not publicly available, (ii) the disclosure of which is likely to adversely affect a Designating Party's competitive position, business operations, or economic interests,

1

and (iii) in which the Designating Party holds a proprietary interest, or (B) highly sensitive personal information, including, for example, personal financial or investment data, employment or severance agreements (or documents directly related thereto), or medical information ("Confidential Material"). In addition, in the event that the Designating Party is producing documents or information that the Designating Party in good faith believes may be proprietary to another person or entity (the "Owner") and accordingly designates such documents or information as Confidential Material, the Designating Party may, but need not, inform the Owner, within 30 days of the production of the Confidential Material or the entry of this Order, whichever is later, of the designation. Thereafter, the Owner shall have 30 days from notification to designate the produced documents or information as Confidential Material, provided that the material meets the definition of Confidential Material in this Order. If no such designation is made, then the material will no longer be deemed Confidential Material.

      4.     Confidential Material shall be designated as follows:

      (a)     In the case of documents, designation shall be made by placing the legend "Confidential" on each page of such documents prior to production.

      (b)     In the case of depositions, designation of the transcript or the portion of the transcript (including exhibits) which contains Confidential Material shall be made by a statement to such effect on the record during the course of the deposition, or by a statement in writing sent to all counsel of record within ten (10) business days after the receipt of the transcript of the deposition. If the designation is made during the course of the deposition, the reporter attending such deposition shall thereafter bind the transcript thereof in separate portions containing the non-confidential material and the Confidential Material, and the reporter shall place the appropriate legend on the cover of each separately bound portion of the transcript. (The parties may modify this procedure for any particular deposition through agreement on the record at such deposition, without further court order.)

Any documents produced or testimony given in this action before entry of this Order will be deemed designated "Confidential Material" if those documents or transcripts were marked or produced pursuant to the legend "Confidential," "Attorneys' Eyes Only," or other similar designation indicating the Designating Party's intention to seek confidential treatment for those documents or transcripts.

5.      A party filing any portions of briefs, pleadings or other filings with the Court that contain or refer to Confidential Material shall attempt, as set forth below, to have the Confidential Material filed under seal. The Confidential Material shall be presented for filing in a separate, sealed envelope with a cover page of the pleading on the outside of the envelope along with the following notation: "Confidential Material Subject to Protective Order."

6.      If any party objects to the designation of any Material as Confidential Material, such party shall state the nature of the objections in a letter to counsel for the Designating Party within sixty (60) days from the date which the designation is first made. The Parties shall attempt in good faith to resolve all objections by agreement. If any objections cannot be resolved by agreement within thirty (30) days from when they are first made, the parties shall cooperate in jointly submitting the dispute to the Court. The Party asserting the designation has the burden of production and persuasion in defending the designation. Until an objection has been resolved by agreement of counsel or by order of the Court, the Material shall be treated as Confidential Material and subject to this Order.

7.      All material obtained by the Receiving Party from the Designating Party through discovery in this action shall be used by the Receiving Party only in this action (including any appeals), and not for any other purpose whatsoever, except that a Receiving Party may use and submit Confidential Material to the

3

court in any action in this or another district to enforce third-party discovery
related to this case.  Confidential Material shall not be given, shown, made
available or communicated in any way to anyone except:

> Counsel of record in this action, and attorneys, paralegals and other
support staff employed by such counsel who are assisting in the conduct of this
action;

> The parties in this action;

> Witnesses (and their counsel) at any deposition or trial in this
action or in preparation of such deposition or trial;

> The Court, court personnel and the jury in this action;

> Court reporters employed in connection with this action;

> Experts or consultants (and employees of such experts or
consultants) retained or consulted by the parties, whether or not such experts or
consultants are designated as testifying experts or in fact testify in this action; and

> Any person whom counsel for all Parties agrees should have access
to such materials and who agrees to be bound by the terms of this Order by
signing the acknowledgement attached hereto as Exhibit A.

8.      Each person identified in the last two paragraphs of Paragraph 7
above, prior to being given access to Confidential Material pursuant to Paragraph
7, shall be advised that (i) the Confidential Material is being disclosed pursuant to
and subject to the terms of this Order and may not be disclosed other than
pursuant to the terms hereof, and (ii) that the violation of the terms of the Order
(by use of the Confidential Material for purposes other than conducting this
action) may constitute contempt of a court order.  Each such person must
expressly acknowledge in writing that he or she is familiar with the terms of the
Order and agrees to be bound by its terms prior to being granted access to the
Confidential Material by signing the acknowledgement attached hereto as

4

Exhibit A.

9.    Nothing in this Order shall affect the right of a Party to freely

disclose publicly any documents or information independently obtained by that

Party, regardless of whether any identical or similar document or information has

been produced by any other Party.

10.    In the event that any person not named in Paragraph 7 requests the

disclosure of Confidential Material of the Designating Party through subpoena or

other compulsory process, the person receiving such subpoena or compulsory

process (the "Receiving Party") shall give notice in writing to counsel for the

Designating Party, such notice to be delivered by fax or e-mail at least fourteen

(14) days prior to the proposed disclosure; if the request is received less than

fourteen (14) days prior to the proposed disclosure, notice shall be given

immediately.  It shall be the obligation of the Designating Party to obtain a court

order to preclude or restrict production of any Confidential Material requested

pursuant to a subpoena or other compulsory process.  In the event that the

Designating Party moves for such an order and so notifies the Receiving Party,

the Receiving Party shall not produce or divulge the contents of any Confidential

Material until such motion is resolved.  Unless the Designating Party moves for a

protective order, the person receiving such subpoena or other process is not

prohibited from timely complying with such subpoena or other process as

required under the Federal Rules of Civil Procedure.

11.    Nothing in this Order shall operate to require the production of

information or documents that are privileged or otherwise protected from

discovery.

12.    Inadvertent disclosure of materials subject to the attorney client

privilege, work product doctrine, or other protection from disclosure shall not

constitute a waiver of, or an estoppel as to such privilege or protection and all

such inadvertent materials shall be returned upon request and not thereafter used
for any purpose. If the parties are not able to resolve an issue regarding
inadvertent production, the Party seeking the privilege shall bear the burden of
presenting such issue to the Court, and of proving the existence and applicability
of the privilege. Pending the Court's decision on such dispute, the inadvertently
produced materials shall not be used for any purpose. All copies of documents
found by the Court to be privileged or protected from disclosure shall be
destroyed by the Receiving Party forthwith and any information contained therein
(that is not otherwise available to the Receiving Party) shall not subsequently be
used for any purpose. Nothing in this section shall preclude a party from
challenging the propriety of the claim of privilege in accordance with the Rules of
Civil Procedure.

       13.    No Prejudice.

             Nothing in this Order shall preclude any party from seeking and
obtaining additional or different protection with respect to the confidentiality of
discovery.

             This Order shall not prevent a disclosure to which the Designating
Party consents in writing before the disclosure takes place.

             The designation of information as "Confidential," pursuant to this
Order, shall not be construed as a concession by a producing party that such
information is relevant or material to any issue or is otherwise discoverable, nor
shall it be construed as a concession by a Receiving Party that such information
is, in fact, entitled to protection under this Order or warrants any protection from
disclosure.

       14.    Except as provided below, the inadvertent or unintentional
production of documents containing, or otherwise disclosing, private, proprietary
or secret information without being designated "Confidential" at the time of

production or disclosure shall not be deemed a waiver in whole or in part of a Designating Party's claim of confidentiality or secrecy, either as to the specific information disclosed or as to any other information relating thereto or on the same or related subject matter. Any error in designation shall be corrected within 30 days after the Designating Party becomes aware of the error or protection under this Order for such documents or information shall be waived.

15.    This Order, insofar as it restricts the communication and use of Confidential Material, shall continue to be binding throughout and after the conclusion of this action, including any appeals, provided, however, that nothing herein shall limit the public use or admissibility of Confidential Material at trial. The trial of this case shall be public in all respects, and Confidential Material that is admitted in evidence or marked for identification at trial will no longer be deemed Confidential unless the Court approves a new confidentiality designation at the time of trial. Upon final termination of this action and at the written request of the Designating Party, all Designated Material and all copies, extracts and summaries thereof shall be returned to the person that produced the material or, at the option of the Receiving Party, shall be destroyed. However, counsel of record may retain copies of pleadings, attorney and consultant work product, and deposition transcripts (including deposition exhibits) for archival purposes.

16.    The restrictions imposed by this Order may only be modified or terminated by written stipulation of all parties, by stipulation read into a court record or deposition record, or by order of this Court. This Order shall survive termination of this action.

17.    If, after designating certain documents or information as Confidential Material, pursuant to this Order, a Designating Party makes a disclosure that is not consistent with that designation and this Order, that disclosure shall operate as an automatic waiver of the protections of this Order as

7

to such documents or information, and the Receiving Party thereafter shall not be
bound by the terms of this Order as to such Confidential Material.

IT IS SO ORDERED

Dated: ___7/26/___, 2006

By: _____
UNITED STATES DISTRICT JUDGE

8

# EXHIBIT A

9

## UNITED STATES DISTRICT COURT

## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE ORGANOGENESIS SECURITIES LITIGATION | No. 04-CV-10027 (JLT) |

## CONFIDENTIALITY UNDERTAKING

I hereby certify (i) my understanding that Confidential Material is being provided to me pursuant to the terms and restrictions of the Protective Order (the "Order") entered by the United States District Court for the District of Massachusetts and (ii) that I have read the Order. I understand the terms of the Order, I agree to be fully bound by the Order, and I hereby submit to the jurisdiction of the United States District Court for the District of Massachusetts for purposes of enforcement of the Order. I understand that any violation of the terms of the Order may be punishable as the Court deems appropriate under the circumstances.

Executed this _____ day of _____, 200_.

_____
Signature

10