# EXHIBIT 5

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------- x

**In re: Subpoena Issued to PRICEWATERHOUSECOOPERS LLP,**

for the Action Entitled *In re Organogenesis, Inc. Securities Litigation*, Civil Action No. 1:04 CV 10027-JLT, Pending in the United States District Court for the District of Massachusetts.

Miscellaneous Action No.: M8-85

---------------------------------- x

**NON-PARTY RESPONDENT PRICEWATERHOUSECOOPERS LLP'S MEMORANDUM OF LAW IN OPPOSITION TO PETITIONERS' MOTION TO COMPEL**

William P. Frank (WF-7504)
Matthew J. Matule
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
Four Times Square
New York, New York 10036
(212) 735-3000

Counsel for Respondent PricewaterhouseCoopers LLP

Dated: March 2, 2007

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ..... ii

PRELIMINARY STATEMENT ..... 1

PERTINENT BACKGROUND FACTS ..... 1

The Underlying Litigation ..... 1

The Non-Party Subpoena ..... 2

The Present Reimbursement Controversy ..... 4

ARGUMENT ..... 5

I. PETITIONERS' REFUSAL TO PROVIDE ANY REIMBURSEMENT TO NON-PARTY PWC FOR ITS SUBSTANTIAL SUBPOENA COMPLIANCE EXPENSES IS UNFAIR AND UNREASONABLE ..... 5

II. CONSISTENT WITH THE INTENT OF THE PRIVATE SECURITIES LITIGATION REFORM ACT, PWC IS ENTITLED TO THE PROTECTIONS AFFORDED BY FED. R. CIV. P. 45 ..... 8

A. PwC Is Entitled To Reimbursement For The Substantial Subpoena Compliance Costs Incurred Under Fed. R. Civ. P. 45, Which Include Attorney Fees ..... 9

B. PwC Should Be Reimbursed For Its Expenses In Full, Or At Least Have The Majority Of Such Expense Apportioned To The Petitioners ..... 12

1. PwC Has *No Interest* In The Outcome Of The Underlying Litigation ..... 13

2. Since Petitioners Alone Might Benefit From The Underlying Action, They Are The Proper Party To Bear The Costs Of PwC's Non-Party Production ..... 13

3. The Underlying Litigation Has Not Been Certified A Class Action, Diminishing Any Claim Of "Significant" Public Importance ..... 14

CONCLUSION ..... 15

## TABLE OF AUTHORITIES

**CASE** **PAGE(S)**


Angell v. Shawmut Bank of Connecticut Nat'l Ass'n, 153 F.R.D. 585 (M.D.N.C. 1994)..........10, 12

Compaq Computer Corp. v. Packard Bell Elecs., Inc., 163 F.R.D. 329 (N.D. Cal. 1995)...............10

In re First Am. Corp., 184 F.R.D. 234 (S.D.N.Y. 1998) ..........................................................5

In re Healthsouth Corp. Sec. Litig., 213 F.R.D. 447 (N.D. Ala. 2003) ..........................................14

In re Honeywell Int'l, Inc. Sec. Litig., 230 F.R.D. 293 (S.D.N.Y. 2003) ..................................11, 15

In re Law Firms of McCourts and McGrigor Donald, No. M. 19-96-JSM, 2001 WL 345233 (S.D.N.Y. Apr. 1, 2001)..........................................................5, 9, 13, 14

In re The Exxon Valdez, 142 F.R.D. 380 (D.D.C. 1992)..........................................................5, 13

Kahn v. Gen. Motors Corp., No. 88 Civ. 2982 (PNL), 1992 WL 208286 (S.D.N.Y. Aug. 14, 1992)..........................................................10, 12

McCabe v. Ernst & Young, LLP, 221 F.R.D. 423 (D.N.J. 2004).....................................................8

Pacific Gas and Electric Co. v. Lynch, No. C-01-3023-VRW, 2002 WL 32812098 (N.D. Cal. Aug. 19, 2002) ..........................................................9

Standard Chlorine of Delaware, Inc. v. Sinibaldi., 821 F. Supp. 232 (D. Del 1992) ........................9

Tobias Holdings, Inc. v. Bank United Corp., 177 F. Supp. 2d 162 (S.D.N.Y. 2001) ........................9

United States v. Columbia Broad. Sys., Inc., LLP, 666 F.2d 364 (9th Cir 1982) .........................8, 12

Wetta v. Templeton Asset Mgmt., No. M-8-85, 1998 U.S. Dist. LEXIS 13321 (S.D.N.Y. Aug. 25, 1998)..................................................11

Williams v. City of Dallas, 178 F.R.D. 103 (N.D. Tex. 1998).......................................................10


**Other Authorities**


Fed. R. Civ. P. 45 ........................................................................................................... *passim*

## PRELIMINARY STATEMENT

PricewaterhouseCoopers LLP ("PwC") opposes Petitioners' Motion to Compel Third Party PwC To Comply with Subpoena Duces Tecum because the broad relief it seeks against a non-party is unreasonable under the circumstances. To be clear, PwC is prepared to produce non-privileged documents responsive to the subpoena, but should not be required as a non-party to bear the full brunt of the expenses and other costs incurred in complying with the subpoena. As such, Petitioners fail to comport with controlling law protecting non-parties subpoenaed pursuant to Fed. R. Civ. P. 45 from significant expense. Because Petitioners have refused to provide any reimbursement -- other than basic copy and shipping costs -- this otherwise avoidable and narrow dispute is now before the Court for resolution.

## PERTINENT BACKGROUND FACTS

### The Underlying Litigation

Petitioners brought the underlying securities suit in the federal court for the District of Massachusetts, In re Organogenesis, Inc. Securities Litigation, Civil Action No. 04-10027-JLT (filed January 7, 2004) on the eve of the expiration of the applicable statute of limitations. Petitioners asserted securities fraud claims against PwC, the former independent auditor to Organogenesis, Inc. ("Organogenesis"), and certain former officers of that bankrupt entity pursuant to Section 10(b) of the Securities Exchange Act and Rule 10b-5 promulgated thereunder.

Petitioners' complaint (Sloane Declaration Exhibit B) attempted to plead fraud against PwC on the theory that it should have modified or withdrawn its opinion on the fiscal year 2000 financial statements (or should have disclaimed or issued an adverse opinion in the first place) because it subsequently --a year later -- included a going concern opinion in its report

on the fiscal year 2001 financial statements. However, the District of Massachusetts court summarily dismissed all of Petitioners' claims against PwC with prejudice:

> Plaintiffs do not allege that any of the hard financial data contained in Organogenesis' 2000 financial statements were misleading or inaccurate. Plaintiffs do not claim that the company failed to accurately report its losses. At best, Plaintiffs have pled sufficient facts that, if true, demonstrate PwC's negligence in failing to realize, early enough, that Organogenesis was destined for bankruptcy. This is not fraud. For the foregoing reasons, PwC's Motion to Dismiss is ALLOWED.

Memorandum dated July 20, 2005 (attached as Exhibit 1 to the Declaration of Matthew J. Matule In Support Of Non-Party Respondent PricewaterhouseCoopers LLP's Memorandum of Law In Opposition to Petitioners' Motion to Compel ("Matule Declaration"), filed herewith). An Order of dismissal with prejudice as to PwC issued that same day. (See Matule Declaration Exhibit 2.)

PwC subsequently moved, without opposition from Petitioners, for entry of separate and final judgment pursuant to Fed. R Civ. P. 54(b), which was granted on May 10, 2006. (See Matule Declaration Exhibit 3.) Petitioners did not appeal either the July 20, 2005 Memorandum, the July 20, 2005 Order or the May 10, 2006 Final Judgment As to PricewaterhouseCoopers LLP. The underlying District of Massachusetts action is final as to PwC.

**The Non-Party Subpoena**

Pursuant to Fed. R. Civ. P. 45, Petitioners thereafter served on June 19, 2006 a subpoena duces tecum on non-party PwC, dated June 16, 2006 (the "Subpoena"). PwC timely served its objections and responses to the Subpoena on July 11, 2006. Counsel for PwC had expressly raised with Petitioners' counsel in advance of a written response to the Subpoena the issue of reimbursement for significant expense, and the preclusive effect a lack of agreement on

that issue would have on any consequent production of documents. (See July 7, 2006 and July 11, 2006 emails between Matthew J. Matule and Peter Sloane, attached at Matule Declaration Exhibit 4.) Petitioners ignored that advance notice, and failed to offer any concessions or other measures at that time that might lessen the burden and expense imposed on non-party PwC by the Subpoena.

In accordance with Fed. R. Civ. P. 45, PwC objected to the Subpoena, and plainly included a general objection detailing PwC's position regarding Petitioners' failure to agree to reimburse PwC for the significant expenses associated with compliance (See July 11, 2006 Objections, General Objection #2, attached at Sloane Declaration Exhibit D.) As stated in pre-response written and oral conversations, and subsequently reiterated in detail in General Objection #2, those expenses include attorney fees for (i) review of PwC's client files related to Organogenesis for responsiveness and privilege purposes and (ii) legal research, drafting objections and correspondence in connection with responding to the Subpoena. Other reasonable expenses include professional fees for administrative, support and vendor service fees and related expenses associated with the review and production of paper and electronic documents as well as photocopy, postage and other delivery fees. By the time of its July 2006 response to the Subpoena, PwC had already incurred significant expense gathering and reviewing documents to determine and identify the appropriate set of responsive documents. As set forth in General Objection #2, and the applicable case law interpreting Fed. R. Civ. P. 45(c)(2)(B), PwC is entitled to receive protection (i.e., reimbursement) for such expenses where significant.

**The Present Reimbursement Controversy**

After receiving PwC's objections and responses in July 2006, Petitioners failed to contact PwC for over six months. When Petitioners finally did respond, by letter sent on December 28, 2006, they again failed to address PwC's objection regarding reimbursement. Further, Petitioners requested an additional category of documents not previously requested in the Subpoena -- documents produced and deposition exhibits in an action brought in California state court where PwC also was a non-party. PwC responded on January 10, 2007 and February 1, 2007 by reiterating its ability to promptly produce documents upon reimbursement for significant expense and agreed to confer with Petitioners to minimize any further disputes or need for Court intervention. (See Sloane Declaration Exhibits H and J.) PwC also confirmed "that the response to the Subpoena will include the responsive, non-privileged documents located in the desk files of individuals working on the Organogenesis engagement during the relevant fiscal years," as well as the newly requested documents (to the extent permissible by the confidentiality order entered in that case). (Sloane Declaration Exhibit J, at 2.)

For the first time, nearly seven months after serving the Subpoena, Petitioners suggested alternatives to minimize PwC's compliance burdens. But Petitioners failed to acknowledge that PwC already had taken the pertinent steps to prepare a production set, and Petitioners' belated suggestions could no longer substantially minimize PwC's compliance burden -- because those costs and expenses had already been incurred. In a final attempt to break the impasse, PwC reiterated its willingness to work with Petitioners: "If plaintiffs are willing to discuss a reasonable reimbursement, I believe we can reach a compromise without the need for motion practice; however, reimbursement solely for copying and shipping alone is inadequate."

(Letter from Matthew J. Matule to Peter Sloane dated February 12, 2007 attached to Sloane Declaration Exhibit K.) Petitioners responded with this motion.[1]

## ARGUMENT

### I. PETITIONERS' REFUSAL TO PROVIDE ANY REIMBURSEMENT TO NON-PARTY PWC FOR ITS SUBSTANTIAL SUBPOENA COMPLIANCE EXPENSES IS UNFAIR AND UNREASONABLE

Although a non-party may be subject to the burden of responding to a subpoena, it is afforded protection from "significant expense" related to compliance by the procedure set forth in Fed. R. Civ. P. 45(c)(2)(B), which PwC timely followed. Fed. R. Civ. P. 45(c)(2)(B). In light of the significant expenses PwC already incurred in gathering, reviewing, and identifying the responsive documents, as well as continuing to have to engage with Petitioners over the appropriate reimbursement, it is unreasonable to expect a non-party to incur significant expense but limit itself to recovery only for out of pocket shipping and copy costs. See, e.g., In re First Am. Corp., 184 F.R.D. 234, 243 (S.D.N.Y. 1998) (conditioning production from non-party PwC upon payment of costs affording sufficient protection from significant expense per Fed. R. Civ. P. 45(c)(2)(B)); In re Law Firms of McCourts and McGrigor Donald, No. M. 19-96-JSM, 2001 WL

---

[1] Petitioners also sought to obtain unfair advantage and shorten the time applicable to PwC's responsive papers, both by serving the motion by mail over the Washington's Birthday holiday weekend, and then by purporting to move pursuant to Fed. R. Civ. P. 37. But objections to non-party subpoenas are governed by Fed. R. Civ. P. 45(c)(2)(B). See, e.g., In re The Exxon Valdez, 142 F.R.D. 380, 385 (D.D.C. 1992) ("Rule 37 by its terms applies only to a motion to compel production from a party under Rule 34. Rule 34 in turn now provides that motions to compel production from non-parties are governed by Rule 45.") (citations omitted). As such, motion practice follows the ten business day time frame set forth in S.D.N.Y. Local Civil Rule 6.1(b).

345233, at * 3 (S.D.N.Y. Apr. 9, 2001) (denying reconsideration of order conditioning production by non-party only upon receipt "in advance the reasonably estimated costs of production, including the attorney's fees to be incurred by respondents in reviewing and selecting the documents to be produced").

Upon service of the Subpoena, PwC undertook extensive and necessary efforts to comply with the Subpoena in an informed manner, including the review of approximately 30,000 pages of documents preparing the response to the 35 categories and sub-categories of requested documents. (See Matule Declaration ¶¶ 4-6.) After completing this review, PwC made timely objections, including asserting an objection to producing documents in the absence of an express written agreement for the reimbursement of its significant expenses incurred in responding to the Subpoena. (See July 11, 2006 Objections and Responses attached at Sloane Declaration Exhibit D.) Petitioners failed to respond to PwC's request for over six months and then urgently demanded PwC expedite production since it "had ample time to compile responsive documents." (See Letter from Peter Sloane to Matthew J. Matule dated December 28, 2006 attached at Sloane Declaration Exhibit G).

Petitioners' assertion that they "repeatedly offered to address PwC's concerns through vastly less expensive means" is erroneous. Petitioners' Memorandum at 11. Apparently concerned about a looming discovery deadline, Petitioners only turned their attention back to PwC at the end of 2006 for the first time since serving the Subpoena more than six months earlier, and only sometime thereafter offered so-called concessions to ease the burden of compliance. (See Letter from Peter Sloane to Matthew J. Matule dated January 19, 2007 attached to Sloane Declaration Exhibit I). Petitioners "concessions" are inapposite, as months

earlier PwC already undertook the efforts required to ready a production set. These efforts included multiple hours of attorney and legal assistant time to gather and review tens of thousands of pages of documents for privilege and responsiveness, as well as time spent preparing PwC's responses and objections to the overbroad requests. (See Matule Declaration ¶¶ 4-6.)

Further, while purporting to attempt to ease the burden on PwC by narrowing the Subpoena, Petitioners made an altogether new request for an additional category of documents. Petitioners did not include in the Subpoena a request for "all documents related to the Bricoleur action." Petitioners' Memorandum at 14. However, Petitioners are now demanding PwC produce those documents immediately because they assert there is "virtually no burden." Id. PwC noted the lack of any request for such documents per se in the Subpoena, but agreed to produce such documents that overlapped with the existing requests in the Subpoena and to the extent it was able to do so in light of the confidential order in that case.[2]

Petitioners failed to acknowledge that PwC, in an effort to fully cooperate, agreed to produce documents but needed to reach an agreement on the reasonable cost of reimbursement. The applicable case law requires that the non-party object and withhold any

---

[2] See Letter from Matthew J. Matule to Peter Sloane dated February 12, 2007 attached to Sloane Declaration Exhibit J ("Notwithstanding any of the foregoing, we are in the process of retrieving the *Bricoleur* documents, deposition transcripts and exhibits. To the extent that responsive, non-privileged materials do not overlap with the documents already included in our production set, and are not otherwise governed by the protective order entered by the court in the *Bricoleur* action, PwC will include those documents in its response to the Subpoena, subject to plaintiffs' agreement to reimburse PwC for the photocopy and delivery fees associated with producing those materials.")

production of documents absent an agreement to reimburse costs because of the inherent risk of waiver. See McCabe v. Ernst & Young, LLP, 221 F.R.D. 423, 425 (D.N.J. 2004) (Court found that party "waived their right to seek counsel fees because they did not object to the subpoenas or seek a protective order making compliance with the subpoenas conditional upon reimbursement of counsel fees.") PwC appreciates Petitioners willingness to pay the photocopy and delivery costs for the documents, but those costs are not the "starting point" of the production. Petitioner's Memorandum at 15. The true "starting point" is the "significant expense" incurred by the non-party, an amount which PwC has repeatedly indicated its willingness to reach a negotiated compromise. (See Sloane Declaration Exhibits H, J and L.)

Petitioners offer to only reimburse PwC for the photocopy and shipment fees of the production set is inadequate. In effect, Petitioners expect PwC to incur all the legal fees that made the production set possible; this is unjust and against the rationale behind Rule 45. See United States v. Columbia Broad. Sys., Inc., 666 F.2d 364, 371 (9th Cir. 1982), cert. denied, 457 U.S. 1118 (1982) ("Although party witnesses must generally bear the burden of discovery requests, the rationale for the general rule is inapplicable where the discovery demands are made on nonparties.")

## II. CONSISTENT WITH THE INTENT OF THE PRIVATE SECURITIES LITIGATION REFORM ACT, PWC IS ENTITLED TO THE PROTECTIONS AFFORDED BY FED. R. CIV. P. 45

Petitioners also fail to support their argument that PwC should bear the entire cost of compliance. As an initial matter, PwC has been dismissed from the underlying litigation and, as such, should expect to minimize its on-going expenses, not incurring them. Indeed, the Private Securities Litigation Reform Act was enacted to help alleviate the burden and expense

associated with discovery requests in securities litigation. See Tobias Holdings, Inc. v. Bank United Corp., 177 F. Supp. 2d 162, 165 (S.D.N.Y. 2001) (Court stated that "[t]he purpose of the [PSLRA] was to restrict abuses in securities class action litigation" which includes "prevent[ing] the unnecessary imposition of discovery costs").

PwC, a non-party to the underlying action, is afforded protection from significant expenses arising from an order to compel production. See Fed. R. Civ. P. 45(c)(2)(B); see also Standard Chlorine of Delaware, Inc. v. Sinibaldi, 821 F. Supp. 232, 265 (D. Del. 1992). Accordingly, PwC reiterates that once the conditions for reimbursement have been determined, PwC will produce the documents identified in its July 11, 2006 responses and subsequent meet-and-confer correspondence. See, e.g., In re Law Firms of McCourts and McGrigor Donald, 2001 WL 345233, at *3 (Court held that the factors weighed in favor of the respondents and ordered petitioners "to produce the requested documents only after receiving in advance the reasonably estimated costs of production, including attorney's fees to be incurred by respondents in reviewing and selecting the documents to be produced").

### A. PwC Is Entitled To Reimbursement For The Substantial Subpoena Compliance Costs Incurred Under Fed. R. Civ. P. 45, Which Include Attorney Fees

Although Petitioners assert that only photocopy and shipment expenses are acceptable items of reimbursement under this Rule, numerous courts have found that additional necessary categories of costs and expenses are applicable and properly available for reimbursement. "[T]he cost of compliance with the [S]ubpoena . . . extends well beyond [photocopy and shipment] costs." Pacific Gas and Elec. Co. v. Lynch, No. C-01-3023-VRW, 2002 WL 32812098, at *3 (N.D. Cal. Aug. 19, 2002). "Labor costs involved in production must

also be borne" under Rule 45, as well as "legal work done to facilitate compliance." Id.; see also Kahn v. Gen. Motors Corp., No. 88 Civ. 2982-PNL, 1992 WL 208286, at *2 (S.D.N.Y. Aug. 14, 1992) (holding that "reasonable expenses of production" in response to non-party subpoena included items such as "attorney's fee for necessary professional work performed in connection with the production of documents" and "proper reimbursable activities" include "the retrieval, identification and review of documents called for by the subpoena").

One of the most significant expenses in any production is the time expended by counsel in the selection of documents: "separating privileged or irrelevant material from responsive documents" which "could require the services of an attorney." Angell v. Shawmut Bank of Connecticut Nat. Ass'n, 153 F.R.D. 585, 590 (M.D.N.C. 1994). Employee time, both attorney and administrative, is a "recoverable cost" because although the result may be a relatively small number of total documents copied, the time needed retrieve, conduct a broad expedited search, and cull the responsive documents is necessary and reasonable. Id.; see also Williams v. City of Dallas, 178 F.R.D. 103, 113 (N.D. Tex. 1998) (Court ordered reimbursement for attorney and paralegal fees incurred in review of documents to respond to non-party subpoena); Compaq Computer Corp. v. Packard Bell Elecs., Inc., 163 F.R.D. 329, 339 (N.D. Cal. 1995) (Non-party entitled to reimbursement for search and review of responsive materials"). A later request to limit the request does not alleviate the burden of the initial search efforts. Angell, 153 F.R.D. at 590.

Upon service of the Subpoena, PwC informed Petitioners that production of the responsive documents was contingent upon the execution of an agreement regarding reimbursement of the costs and expenses. (See Matule Declaration ¶ 2). In order to prepare

responses and objections in an informed manner, PwC took the necessary and appropriate step of gathering and reviewing all potentially responsive documents, totaling approximately 30,000 pages, to the thirty-five document request categories and sub-categories. (Id. ¶ 4.) The review process, as well as preparing the responses and objections, occupied approximately 200 attorney hours, including 20 partner hours and 180 associate hours, as well as the assistance of numerous legal assistants, legal technology support staff and administrative assistants. (Id. ¶ 6.) The entire process was divided into a number of parts to ensure that the person with the appropriate experience and skill would handle the appropriate tasks in the most cost-effective manner. (Id.) The hourly rate applied to each person was standard and reasonable given the nature of the litigation. (Id.) To date, PwC has paid all compliance costs in expectation of Petitioners' reimbursement.[3] (Id. ¶ 7.)

PwC has a legitimate interest in being made whole. PwC engaged counsel to comply with Petitioners' Subpoena and paid for the reasonable expenses set forth above. Petitioners' unsubstantiated claims that this method was the "most expensive" approach does not diminish the fact that reasonable and proper measures were taken. Further, neither of the cases Petitioner relies upon, In re Honeywell Int'l, Inc. Sec Litig., 230 F.R.D. 293 (S.D.N.Y. 2003) and Wetta v. Templeton Asset Mgmt., No. M-8-85, 1998 U.S. Dist. LEXIS 13321 (S.D.N.Y. Aug. 25, 1998) are apposite to this dispute. In Wetta, the non-party was moving to quash the subpoena based on relevancy, not protection from "significant expense" per Fed R. Civ. P.

---

3 PwC will submit its invoices in camera if the Court requires a more detailed review in order to establish a reasonable reimbursement amount.

45(c)(2)(B). In re Honeywell primarily concerned the method of production, i.e. hard copy versus electronic, and the refusal to produce certain categories of documents. The Honeywell court ultimately denied reimbursement for costs because respondent did not offer a basis to substantiate those costs. Here, PwC has detailed its method of compliance, explained to Petitioners' counsel orally and in writing the extensive work undertaken and the hours expanded and, further, offered to submit its invoices for an in camera review.[4]

**B. PwC Should Be Reimbursed For Its Expenses In Full, Or At Least Have The Majority Of Such Expense Apportioned To The Petitioners**

Recognizing that partial reimbursement is an alternative, if the Court does not order full reimbursement, Petitioners should still bear the majority of PwC's expenses. This standard for apportionment is based on the rationale that "[n]onparty witnesses are powerless to control the scope of litigation and discovery, and should not be forced to subsidize an unreasonable share of the costs of a litigation to which they are not a party." Columbia Broad. Sys., Inc., 666 F.2d at 371. In deciding what is a reasonable share of the costs courts review three factors: 1) "whether the non-party actually has an interest in the outcome of the case," 2) "whether the non-party can more readily bear the costs than the requesting party," and 3)

---

4 These expenses are typical of the routine procedure any company and law firm would engage in to respond the Petitioners' Subpoena. See Angell, 153 F.R.D. at 590; Kahn, 1992 WL 208286, at *2. While the total cost is significant, Petitioners cannot contend that it was "the most expensive approach to compliance" when the Subpoena they served included a broad request for thirty-five different categories and sub-categories of documents and further requested expedited production without so much as offering some of the cost-saving measures it now belatedly acknowledges are necessary and reasonable to lessen PwC's burden. Petitioners' Memorandum at 16.

"whether the litigation is of public importance." In re Law Firms of McCourts and McGrigor Donald, 2001 WL 345233, at *1 (ordering payment of attorney's fees and other costs of production); see also In re The Exxon Valdez, 142 F.R.D. 380, 384 (D.D.C. 1992) (allocating 71% of expenses to party seeking documents). None of those three factors weigh in favor of the Petitioners.

### 1. PwC Has *No Interest* In The Outcome Of The Underlying Litigation

It is of little moment to the issue of cost reimbursement that PwC was formerly the auditor for Organogenesis or had been a party to the underlying litigation. The District of Massachusetts court found Petitioners' conclusory statements against PwC insufficient and granted their motion to dismiss. The matter before the Court is one of mandatory protection of non-parties not involved in the litigation or affected by its outcome. To wit, PwC has been dismissed with prejudice, has had separate and final judgment entered in its favor and Petitioners have waived any appeal regarding PwC's dismissal. Further, PwC will neither benefit nor be burdened by the ultimate result obtained in the D. Mass. litigation. As such, PwC is completely disinterested in the outcome of this case.

### 2. Since Petitioners Alone Might Benefit From The Underlying Action, They Are The Proper Party To Bear The Costs Of PwC's Non-Party Production

Even in cases where the respondent is deemed to have an interest in the litigation, courts acknowledge that "Rule 45(c) does require petitioners to bear the major portion of the costs". For example, a non-party trade association with a substantial interest in the outcome of a case was ordered to absorb only 29% of the cost of production; the 71% balance was to be borne by the party seeking the documents. In re The Exxon Valdez, 142 F.R.D. at 384.

Further, Petitioners erroneously suggest that they are "a class of Organogenesis shareholders." Petitioners' Memorandum at 17. No class has been certified as yet by the court in the District of Massachusetts, and it is an open question whether any of the remaining proposed class representatives will pass Fed. R. Civ. P. 23 muster. (See docket in In re Organogenesis Securities Litigation, Civ. A. No. 04-10027-JLT, attached to Matule Declaration at Exhibit 5.) Two of the four proposed class representatives have already withdrawn (See Document #131 and #151 and respective electronic orders dated July 31, 2006 and August 14, 2006), and the fate of the remaining two is pending in the District of Massachusetts court following oral argument held on February 5, 2007. (See Transcript attached to Matule Declaration at Exhibit 6).

**3. The Underlying Litigation Has Not Been Certified A Class Action, Diminishing Any Claim Of "Significant" Public Importance**

Petitioners' self-serving declaration that the underlying action is a case of great public importance is a gross overstatement. As stated above, class certification in the underlying action has still not been approved and is far from a certain result. Further, even if the underlying case can be deemed to be of public importance, that factor alone does not justify having a non-party bear the costs of production in light of the other factors weighing in PwC's favor. See In re Law Firms of McCourts and McGrigor Donald, 2001 WL 345233, at *3 (Court found that "[w]hile the [Lockerbie terrorist bombing case] is undoubtedly of high public interest, that factor alone does not justify [respondents] to bear a portion of the costs" and ordered reimbursement of all costs of production incurred by the non-party).

Further, Petitioners' blanket statement that "non-parties should bear more of the costs of production where the litigation is of public importance" is not supported by the courts. Petitioners' Memorandum at 18. The In re Healthsouth Corp. Sec. Litig., 213 F.R.D. 447 (N.D.

Ala. 2003) case did not involve a non-party subpoena. The In re Honeywell court did not even analyze this prong of the test, finding that the non-party was an interested party and did not demonstrate the basis of its costs. See In re Honeywell Int'l Sec. Litig., 230 F.R.D. at 303. Neither case supports Petitioners' request that non-party PwC be denied protection from significant expense per Fed. R. Civ. P. 45(c)(2)(B).

## CONCLUSION

For all of the foregoing reasons, PwC respectfully requests that this Court deny Petitioner's Motion to Compel insofar as it seeks to deny PwC any protection from the significant expense incurred in responding to the non-party Subpoena and otherwise seeks to broaden the scope of the Subpoena or documents requested therein.

Dated: March 2, 2007

Respectfully submitted,

William P. Frank (WF-7504)
Matthew J. Matule
SKADDEN, ARPS, SLATE,
MEAGHER & FLOM LLP
Four Times Square
New York, New York
(212) 735-3000

Counsel for Respondent
PricewaterhouseCoopers LLP