# EXHIBIT 7

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re Subpoena Issued to **PRICEWATERHOUSECOOPERS LLP, for the Action Entitled *In re Organogenesis, Inc. Securities Litigation*, Civil Action No. 1:04 CV 10027-JLT, Pending in the United States District Court for the District of Massachusetts.** | Miscellaneous Action No: M8-85 |



RECEIVED
MAR 0 5 2007
U.S.D.C. S.D. N.Y.
CASHIERS

## PETITIONERS' REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF THEIR MOTION TO COMPEL THIRD PARTY PRICEWATERHOUSECOOPERS LLP TO COMPLY WITH *SUBPOENA DUCES TECUM*

Dated:  March 5, 2007

Peter Sloane (PS-4672)
Peter E. Seidman (PS-8769)
**MILBERG WEISS & BERSHAD LLP**
One Pennsylvania Plaza
New York, NY  10119
(212) 594-5300

*Counsel for Petitioners*

## TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ...................................................................................1

ARGUMENT...............................................................................................................4

I.     PWC CANNOT NOW DEMAND PAYMENT FOR $120,000-PLUS IN EXPENSES INCURRED BEFORE INFORMING PETITIONERS THAT IT INTENDED TO PREPARE ITS DOCUMENTS FOR PRODUCTION AND USE THE MOST INEFFICIENT AND EXPENSIVE METHODS IN DOING SO...................................................................................................4

II.    PWC FAILS TO DEMONSTRATE THAT ANY OF THE FACTORS SUPPORTING APPORTIONMENT OF A NON-PARTY'S EXPENSES APPLY HERE ....................................................................................................6

       A.    PwC Does Not Dispute That It Is Not A Typical "Disinterested Bystander" Or That It Could Have Foreseen Being Drawn Into This And Other Litigation Concerning Organogenesis ........................................6

       B.    PwC Does Not Dispute That It Is Better Able To Bear The Costs Of Production Than Petitioners ...................................................7

       C.    The Fact That The *Organogenesis* Action Has Not Yet Been Certified As A Class Action Does Not Detract From Its Significant Public Importance ................................................................................7

III.    PWC DOES NOT DISPUTE THAT PRODUCING THE *BRICOLEUR* DOCUMENTS WOULD ENTAIL VIRTUALLY NO BURDEN OR EXPENSE AT ALL...............................................................................10

IV.    PWC HAS NOT SUBSTANTIATED ITS PURPORTED EXPENSES OR ESTABLISHED THAT THE WORK IT PERFORMED WAS REASONABLE .....................................................................................11

V.    PWC'S UNTIMELY OPPOSITION SHOULD BE STRICKEN FOR FAILURE TO COMPLY WITH LOCAL RULE 6.1(A)......................................12

CONCLUSION.........................................................................................................14

i

Petitioners respectfully submit this reply memorandum of law in further support of their motion to compel PricewaterhouseCoopers LLP ("PwC") to comply with the Subpoena[1] and in response to Non-Party Respondent PricewaterhouseCoopers LLP's Memorandum Of Law In Opposition To Petitioners' Motion To Compel, dated March 2, 2007 ("PwC Opp.").

## PRELIMINARY STATEMENT

As a preliminary matter, PwC's opposition to the Motion to Compel should be stricken for failure to comply with Local Rule 6.1(a). The Motion to Compel properly invoked Fed. R. Civ. P. 37 as the basis of the Court's jurisdiction to compel a non-party's subpoena compliance. Under Local Rule 6.1(a), which governs motions under Fed. Civ. P. 37, PwC's opposition was due on February 26, 2007. PwC served its opposition on March 2, 2007, taking twice the amount of time to respond as allowed by the Local Rule 6.1(a).

Even were this Court to entertain the tardy opposition, PwC's position is untenable. PwC asserts that it informed Petitioners that it would condition compliance upon Petitioners' agreement to reimburse its compliance costs and that Petitioners "ignored that advance notice." PwC Opp. at 3. But PwC fails to point out that it *never informed Petitioners* that, regardless of whether Petitioners agreed to this condition, it intended to go ahead and undertake the review and preparation for production of responsive documents, and to employ the most expensive and inefficient methods available in doing so. Indeed, PwC's responses and objections were served on Petitioners *after PwC had already incurred the vast majority ($110,000) of its compliance costs*. Those responses and objections, along with an email from PwC's counsel that same day,

---

[1] Unless otherwise noted, all capitalized terms herein have the meanings ascribed to them in Petitioners' Memorandum Of Law In Support Of Their Motion To Compel PricewaterhouseCoopers LLP To Comply With *Subpoena Duces Tecum*, dated February 16, 2007 ("Pet.'s Opening Br.").

stated that PwC would not comply with the Subpoena until and unless Petitioners agreed — *in advance* — to reimburse PwC for all of its expenses. As PwC does not dispute, *Petitioners never agreed to that reimbursement condition*. PwC therefore cannot now claim that it incurred expenses in the expectation that Petitioners would reimburse those expenses, where Petitioners never agreed to do so and where PwC never informed Petitioners that it intended to take "pertinent steps to prepare a production set" (PwC Opp. at 4), whether Petitioners agreed or not. Plainly, a non-party cannot undertake the most labor-intensive and expensive compliance methods and then shift its expenses to the other side simply by presenting the Court with those expenses as a "*fait accompli.*"

PwC also has failed to demonstrate that any of the three factors considered by courts — including this Court in *In re Honeywell Int'l Sec. Litig.*, 230 F.R.D 293 (S.D.N.Y. 2003) — in determining whether, and in what amount, to apportion compliance costs supports its position. Although PwC claims that it has no litigation interest in the *Organogenesis* Action because it has been dismissed as defendant, it does not dispute that it is not the typical "disinterested, innocent bystander" to this litigation or that it could have foreseen being drawn into, and in fact was drawn into, this and other litigation concerning its audit work for Organogenesis. Nor does PwC dispute that it is "better able to bear the costs of production" than Petitioners or that this is a case of public importance to at least a certain degree. Instead, it merely points to the fact that the *Organogenesis* court has not yet ruled on Petitioners' pending motion for class certification. PwC, however, does not explain how this fact affects this Court's determination in any way. Indeed, in *Honeywell*, this Court rejected PwC's request for reimbursement of compliance costs where it was a non-party to a *putative* securities fraud class action.

2

The unreasonableness of PwC's payment demand is highlighted by its refusal to produce any of the *Bricoleur* documents. PwC does not dispute that producing these documents — which were previously produced by PwC as a non-party to a separate action for fraud involving Organogenesis — would entail virtually no burden and no cost at all to PwC. PwC would not need to search for, review, or "prepare" these documents for production because they have already been produced to a third party. Nevertheless, PwC refuses to produce them without Petitioners' agreement to pay $120,000-plus.

Even with respect to its audit workpapers (which apparently make up the bulk of PwC's production), PwC has not justified the exorbitant $110,000 sum it purports to have already incurred in attorney time, not counting an additional unspecified amount for administrative staff time, simply to review for responsiveness and privilege approximately 12 boxes of documents. PwC does not dispute that many of its responsive documents — its audit workpapers relating to one client, Organogenesis — were already collected and maintained together in discrete files that were identifiable as relating to Organogenesis so as to be ready for audit. Thus, with respect to these audit workpapers, no time or expense was required to locate or organize them for Petitioners' inspection. Further, as documents that PwC expected to be reviewed by third parties such as Petitioners and regulators, these "audit-ready" files are not likely to contain privileged or confidential documents and thus did not require a time-consuming pre-production review by PwC for privilege or confidentiality.

As the case law makes clear, $120,000-plus in expenses would be unjustified even for a much larger document production, but for the relatively small volume of fewer than 10 boxes that PwC intends to produce here, it is patently unreasonable. This exorbitant sum is all the more unwarranted given that PwC has not provided a sufficient basis for this Court or Petitioners to

3

determine whether its demand is reasonable. PwC has not offered any documentation or supporting detail concerning any of the work it performed, any breakdown of the tasks and time allocated to the tasks that it performed, or any legal bills, invoices or other documents that would substantiate its demand for reimbursement of 200 hours of attorney time, plus unspecified staff and administrative time.

In sum, if PwC has already employed its own drastically more expensive (and time-consuming) compliance procedures using its own lawyers and its own personnel, and has done so without informing Petitioners of its intention to do so, its efforts to pass such unnecessary costs on to Petitioners should be rejected.

### ARGUMENT

**I.    PWC CANNOT NOW DEMAND PAYMENT FOR $120,000-PLUS IN EXPENSES INCURRED BEFORE INFORMING PETITIONERS THAT IT INTENDED TO PREPARE ITS DOCUMENTS FOR PRODUCTION AND USE THE MOST INEFFICIENT AND EXPENSIVE METHODS IN DOING SO**

PwC's argument that it has already undertaken most or all of the work required to comply with the Subpoena and thus cannot adopt any of Petitioners' time- and cost-saving proposals does not justify a shifting of its compliance costs given the facts of this case as conceded by PwC. PwC illogically asserts that it "has paid all compliance costs in expectation of Petitioners' reimbursement" (PwC Opp. at 11)[2] but it concedes that Petitioners *never agreed* to reimburse PwC for its costs (other than for photocopying and shipment). It makes no sense for PwC to suggest, on the one hand, that Petitioners should have made their time- and cost-saving proposals

---

[2] PwC cites paragraph 7 of the Matule Declaration in support of this assertion. Nothing in that paragraph or in Judge Tauro's order dismissing PwC as a defendant in the *Organogenesis* Action, which that paragraph references, suggests that PwC had any expectation — reasonable or otherwise — of reimbursement from Petitioners.

earlier so as to spare PwC the effort and expense of preparing the documents for production, but to claim, on the other hand, that the vast majority of work that it performed (purportedly amounting to $110,000) was done *before it even served its responses and objections to the Subpoena* on July 11, 2006. *See* Declaration Of Matthew J. Matule In Support Of Non-Party Respondent PricewaterhouseCoopers LLP's Memorandum Of Law In Opposition To Petitioners' Motion To Compel ("Matule Declaration" or "Matule Decl.") at ¶¶ 3-5 ("As of [PwC's] July 11, 2006 response to the Subpoena, PwC's costs of compliance in connection with all of the foregoing work were approximately $110,000.") and PwC Opp. at 3. PwC cannot logically contend that Petitioners were required to make their cost-saving proposals to PwC before Petitioners even knew that PwC would make its entire production conditional upon an advance agreement to reimburse all of its costs in complying with the Subpoena.

For this reason, PwC's assertion that Petitioners "failed to acknowledge that PwC already had taken the pertinent steps to prepare a production set" (PwC Opp. at 4 (original emphasis)) and thus that Petitioners' cost-saving proposals were moot, is a red herring. Petitioners did not advance their cost-saving proposals sooner because PwC never informed Petitioners that it intended to take, or already had taken, any measures to prepare a production set. If PwC genuinely believed that Petitioners needed to agree in advance to reimburse its costs before PwC was required to comply, logically it would not have undertaken any efforts to comply without Petitioners' agreement, much less proceeded to incur $110,000 of expenses in doing so. Instead, without any reimbursement agreement from Petitioners, PwC first incurred the expenses, then made the reimbursement demand in its responses and objections, and then refused to produce any documents.

5

Plainly, PwC cannot declare its intention not to comply with the Subpoena without a reimbursement agreement, fail to inform Petitioners of its intention to prepare the documents for production and use the most costly methods of doing so, and then attempt to retroactively saddle Petitioners with all of its unnecessary costs.

## II.    PWC FAILS TO DEMONSTRATE THAT ANY OF THE FACTORS SUPPORTING APPORTIONMENT OF A NON-PARTY'S EXPENSES APPLY HERE

### A.    PwC Does Not Dispute That It Is Not A Typical "Disinterested Bystander" Or That It Could Have Foreseen Being Drawn Into This And Other Litigation Concerning Organogenesis

PwC claims that it has "no interest" in the outcome of this litigation because it has been dismissed as a defendant. PwC Opp. at 13. But as this Court made clear in *First Am. Corp. v. Price Waterhouse LLP*, 184 F.R.D. 234 (S.D.N.Y. 1998), the relevant issue is not whether the subpoena recipient is currently a party to the litigation, but whether the recipient was a "disinterested bystander" and was "substantially involved in the underlying transaction and could have anticipated that [the failed transaction would] reasonably spawn some litigation." *Id.* at 242.

Here, as in *First Am. Corp.*, PwC is "not the quintessential innocent," having been substantially involved in the underlying facts of this litigation. PwC served as Organogenesis's auditor throughout the Class Period, certified the financial statements at issue in this litigation, is a former defendant, and was subpoenaed for documentary and testimonial evidence in a separate action alleging fraud perpetrated by Organogenesis (the *Bricoleur* Action). Even in *First Am. Corp.*, which involved a non-party's expenses associated with pursuing extraordinary foreign legal proceedings rather than the reimbursement for reviewing and preparing documents for production, the Court reduced the reimbursement demand made by the non-party by almost 65%, based on the fact that — as here — the non-party could have reasonably anticipated being drawn

6

into the litigation and the litigation was of significant public importance. *First Am. Corp.*, 184 F.R.D. at 243.

**B.**    **PwC Does Not Dispute That It Is Better Able To Bear The Costs Of Production Than Petitioners**

PwC does not dispute that it is "better able to bear the costs of production" than Petitioners. *Cf.* Pet.'s Opening Br. at 17.  Nor does it dispute that it is under independent regulatory obligations to make available for inspection to regulators many of the requested documents and that the expense of complying with a request for inspection of client files is a cost of doing business anticipated by any auditor of a public company. *Id.*

Instead, PwC merely points to the fact that the *Organogenesis* Action has not yet been certified as a class action. PwC Opp. at 14.  Neither PwC nor Petitioners can foresee whether the District of Massachusetts will grant or deny Petitioners' motion for class certification, which is currently under submission.  In the meantime, discovery in the *Organogenesis* Action continues. PwC does not, and cannot explain how this "open question" (*id.*) affects the undisputed fact that it is better able to bear the costs of production or how it makes any difference to the Court's determination of whether to apportion expenses.

**C.**    **The Fact That The *Organogenesis* Action Has Not Yet Been Certified As A Class Action Does Not Detract From Its Significant Public Importance**

Similarly, PwC does not explain how the fact that Petitioners' motion for class certification has not yet been decided diminishes the fact that this litigation seeks to expose securities fraud and redress wrongs perpetrated on possibly thousands of innocent investors. Implicitly conceding that this litigation is of public importance to some degree, PwC asserts that this factor "alone" does not justify its bearing its own discovery costs. PwC Opp. at 14.  But PwC ignores the fact that Petitioners do not rely on this factor alone and have amply demonstrated how all three factors support Petitioners' position.  Further, contrary to PwC's

7

suggestion, nothing in the Private Securities Litigation Reform Act suggests that non-parties to securities litigation are entitled to shift the costs of routine subpoena compliance. Indeed, if anything, the fact that the Amended Complaint in the *Organogenesis* Action was in large part sustained despite the individual defendants' challenges under the PSLRA suggests that this is precisely the type of non-frivolous securities litigation that the PSLRA sought to encourage.

This Court's *Honeywell* decision is directly on point and illustrates the strength of Petitioners' position on this motion. In *Honeywell*, plaintiffs in a putative securities fraud class action sued a corporation and several of its former directors, alleging that they made materially false and misleading statements about the corporation's financial condition. Plaintiffs served a document subpoena on PwC, the corporation's auditors. PwC requested that this Court direct plaintiffs to pay for the costs PwC had incurred in "gathering and copying documents." *Honeywell*, 230 F.R.D. at 302. Finding that PwC was "not a classic disinterested nonparty" and had not provided a basis for determining the reasonable costs of compliance, the Court denied PwC's request in its entirety and refused to apportion to plaintiffs any of the costs of compliance with the subpoena. *Id.* at 303.

This Court's reasoning in *Honeywell* applies with equal force here. As in *Honeywell*, the petitioners here are plaintiffs in a putative securities fraud class action and the non-party recipient of the subpoena was the auditor of the corporation at the heart of the litigation. As in *Honeywell*, PwC here is not "the classic disinterested nonparty." *See supra* at 8-9. Further, PwC's vague, generalized and undocumented description of the work it purports to have performed does not constitute sufficient basis for this Court to determine the reasonableness of its purported compliance costs. As in *Honeywell*, this Court should deny PwC's assertion that it is entitled to reimbursement of any of its expenses (other than reasonable copying and shipping

8

costs, which were not even assessed to the plaintiffs in *Honeywell*).[3] *See also Wertheim Schroder & Co. Inc., v. Avon Products, Inc.*, 1995 U.S. Dist. LEXIS 79, *18-21 (S.D.N.Y. 1995) (denying motion to quash non-party subpoena *ad testificandum* and refusing reimbursement for compliance expenses where non-party was an investment bank with "ample resources" and was not a "mere bystander").

Neither of the two cases within the Second Circuit that PwC relies upon support its position under the facts of this case. In *First Am. Corp. v. Price Waterhouse LLP*, 184 F.R.D. 234 (S.D.N.Y. 1998) the Court awarded a partial reimbursement of extraordinary expenses that the non-party had incurred in connection with obtaining court orders to lift foreign legal restrictions that prevented the production of the documents, *id.* at 240, 243, not for the mere gathering and review of documents that were already collected and maintained in an organized file and whose production was subject to no legal restrictions, as here. Indeed, even with respect to these extraordinary expenses, the Court diminished the non-party's reimbursement request by almost 65% %.[4]  *Id.* at 244-245.

---

[3] PwC's half-hearted attempt to distinguish *Honeywell* fails. *Honeywell* did not deny reimbursement solely because PwC had not substantiated its costs (PwC Opp. at 12). The *Honeywell* decision was based on a consideration of the three-factor test, *Honeywell*, 230 F.R.D. at 303, and noted in the first instance that PwC was not a classic disinterested party (and did so in a case where PwC's "interest" was no greater, and arguably lesser, than its interest in the *Organogenesis* Action). Further, PwC does not explain how or why the difference between "hard copy versus electronic" documents (PwC Opp. at 12) is a distinction of any substance. The Subpoena seeks electronic, as well as hard copy, documents.

[4] Far from supporting its position here, PwC's citation to authority outside the Second Circuit demonstrates the unreasonableness of its demand for $120,000-plus in payment for the production of fewer than 10 boxes of documents. *See Williams v. City of Dallas*, 178 F.R.D. 103, 113 (N.D. Tex. 1998) (declining to award any costs and expenses in advance of compliance with the subpoena and estimating that *$9,000* for approximately *30 boxes* of documents was reasonable); *Standard Chlorine of Delaware, Inc. v. Sinibaldi*,  821 F. Supp. 232, 265 (D. Del. 1992) (holding that non-party's demand for $4 per page for retrieval of 2,500 pages was unreasonable and ordering payment of $1,750 for the documents); *Angell v. Shawmut Bank*, 153 F.R.D. 585, 590-2 (M.D.N.C. 1994) (holding that the parties' agreement to

The decision in *In re Law Firms of McCourts and McGrigor Donald*, No. M. 19-96, 2000 U.S. Dist. LEXIS 20287 (S.D.N.Y. Apr. 9, 2001) is likewise inapposite.  There, the Court's decision was based on the fact that the non-parties were deemed to have been "themselves *victims* of the terrorist acts that Applicants' clients have been charged with committing," *id.* at *6 (emphasis added), and thus it would have been grossly inequitable to cause them to bear the costs of compliance.  Here, PwC, far from being the victim of any the acts alleged in the Amended Complaint — much less a victim of any acts committed by Petitioners — is alleged to have been involved in the perpetration of acts that defrauded Petitioners.  *See* Am. Complaint ¶¶ 12-13, 114, 116, 124, 171-186 (Sloane Decl., Ex. B).  Moreover, the petitioners in *Law Firms of McCourts and McGrigor Donald* made no showing that the non-party was better able to bear the costs of compliance with the subpoena.  *See Law Firms of McCourts and McGrigor Donald*, 2000 U.S. Dist. LEXIS 20287, at *6.  Here, by contrast, PwC does not dispute that it is "better able to bear the costs of production."  *Cf.* Pet.'s Opening Br. at 17-18.

## III.    PWC DOES NOT DISPUTE THAT PRODUCING THE *BRICOLEUR* DOCUMENTS WOULD ENTAIL VIRTUALLY NO BURDEN OR EXPENSE AT ALL

PwC's failure to produce the *Bricoleur* documents or dispute that producing them would entail virtually no burden at all to PwC highlights the unreasonableness of its payment demand. The *Bricoleur* documents include documents that were already produced, and transcripts of

---

reimburse for "the reasonable cost of copying documents" did not include attorneys' fees and finding that *$500* was a reasonable cost for the review of *20 feet* of files and the copying costs of 29 documents). Indeed, in *In re The Exxon Valdez*, 142 F.R.D. 380 (D.D.C. 1992), the non-party agreed to make available 15 boxes that it had already compiled, but would not produce any *additional* documents without being paid for the location and production of the additional documents. *Id.* at 382. Here, the total volume of documents at issue amounts to less than 10 boxes, not a single document of which PwC has agreed to produce without payment.

depositions taken, in a separate action alleging fraud at Organogenesis. As PwC does not dispute, these documents do not need to be searched for, reviewed (for responsiveness, privilege or any other reason) or prepared for production, and thus do not entail any of the purported expenses that PwC claims apply to other documents sought by the Subpoena. All that PwC would be required to do is photocopy the documents and ship them to Petitioners — at Petitioners' expense.

Rather than dispute these inescapable facts, PwC contends that the *Bricoleur* documents are not requested "per se in the Subpoena." PwC Opp. at 7 (original emphasis). But, as Petitioners noted in their opening brief, and PwC does not dispute, the *Bricoleur* documents are subsumed under Requests Nos. 1 and 7 in the Subpoena (as well as possibly other Requests). *See* Pet's Opening Br. at 15. There is no justification for PwC's failure to produce these documents without Petitioners' payment of $120,000-plus. .

## IV. PWC HAS NOT SUBSTANTIATED ITS PURPORTED EXPENSES OR ESTABLISHED THAT THE WORK IT PERFORMED WAS REASONABLE

PwC asserts that recovery of its attorney and administrative time is justified because of "the time needed [sic] retrieve, conduct a broad expedited search, and cull the responsive documents." PwC Opp. at 10; *see also id.* at 3 ("By the time of its July 2006 response to the Subpoena, PwC had already incurred significant expense gathering and reviewing the documents to determine and identify the appropriate set of responsive documents"). However, PwC does not dispute that many of its responsive documents — which are audit workpapers relating to one client — "are maintained together in discrete files that are readily identifiable, and thus do not require any exhaustive search for potentially responsive documents," Pet.'s Opening Br. at 2. Nor does it dispute that PwC is expected to maintain its client audit files for inspection by regulators and civil litigants, *cf. id.* at 2 and 16-17, or that Petitioners' cost-saving proposals

11

would have eliminated most, if not all of the very costs for which PwC now demands reimbursement, *cf. id.* at 2-3 and 9. PwC could have suggested these or similar proposals (which are long-standing and well known cost-saving proposals to experienced counsel) to Petitioners before engaging in the labor-intensive and expensive methods that it used but that it never informed Petitioners it intended to use. PwC, however, did not do so.

Further, even as to this unnecessary work, PwC has not provided any documentation or supporting detail of the work it performed and that it now claims cost $110,000 as of the date it served its response and objections on July 11, 2006. Without such documentation, there is no basis for this Court or Petitioners to determine whether the work performed was necessary and the costs incurred reasonable. For example, in *Warshay v. United States*, No. 97-CV-1659, 1999 U.S. Dist. LEXIS 4019, at \*\*4-5 (E.D.N.Y. Mar. 10, 1999), the court denied reimbursement of any of a non-party accounting firm's subpoena compliance costs where the accounting firm submitted to the Court an invoice for services that contained no supporting detail and did not sufficiently clarify the services performed. The court held that the lack of supporting detail made it "impossible for this Court to evaluate the reasonableness of the fee charged." *Id.* Here, there is even less basis for determining the reasonableness of the amount that PwC demands than in *Warshay*, given that PwC has not submitted any invoices or similar documentation, much less any supporting detail.

## V.    PWC'S UNTIMELY OPPOSITION SHOULD BE STRICKEN FOR FAILURE TO COMPLY WITH LOCAL RULE 6.1(A)

PwC's opposition to the Motion to Compel was not timely served under Local Rule 6.1(a). That rule requires that any response to a motion under Fed. R. Civ. P. 37 be served within four business days after service of the moving papers. Petitioners' motion invokes Rule 37 and was served on PwC on February 16, 2007. *See* Petitioners' Notice of Motion and Motion

to Compel Third Party PricewaterhouseCoopers LLP to Comply with *Subpoena Duces Tecum*. Accordingly, Local Rule 6.1(a) applies, and PwC's response to the motion was due on February 26, 2007.

PwC served its opposition on Friday, March 2, 2007, four days after its response deadline, without seeking from Petitioners, or obtaining from the Court, an extension of its deadline.[5] By arbitrarily appropriating to itself *twice* the amount of time to respond provided under the Local Rules, PwC has not only violated the Local Rules, but also prejudiced Petitioners' ability to reply to its opposition, and the Court's ability to review the papers in advance of the hearing on this motion, which is noticed for March 6, 2007.

In correspondence with the Court on the day its response was due, PwC attempted to excuse its tardiness by asserting that, because PwC is a non-party, Petitioners' motion should have been made only under Rule 45, rather than Fed. R. Civ. P. 37, and thus PwC should be allowed the longer response time set forth in Local Rule 6.1(b). PwC's assertion is incorrect.

Although Rule 45 deals specifically with subpoenas to non-parties and is one of the bases for a motion to compel a non-party to comply with a subpoena, the jurisdiction of this Court to entertain a motion to compel a non-party in the first instance arises from Rule 37. Rule 37 provides that "a party may apply for an order compelling disclosure or discovery as follows: . . . An application for an order to *a person who is not a party* shall be made to the court in the

---

[5] In fact, although PwC never sought from Petitioners an extension of its response time, Petitioners courteously offered to agree to a short extension. PwC never responded to Petitioners' offer and instead sent a letter to the Court seeking an order setting its response deadline at March 8, or alternatively March 2, 2007. *See* Letter, dated February 27, 2007, from Peter Sloane, Esq. to Hon. Lawrence M. McKenna & Letter, dated February 26, 2007, from William P. Frank, Esq. and Matthew J. Matule, Esq. to Hon. Lawrence M. McKenna.

13

district where the discovery is being, or is to be, taken." Fed. R. Civ. P. 37(a) (emphasis added).

Indeed, courts routinely grant motions to compel non-parties under Rule 37. *See, e.g., SEC v. Cymaticolor Corp.*, 106 F.R.D. 545, 547 (S.D.N.Y. 1985) ("The court undeniably has jurisdiction to compel the production of documents by a non-party as part of the non-party's deposition. ***Fed. R. Civ. P. 37(a)(1) & 45***.") (emphasis added); *Boukadoum v. Hubanks*, 2006 U.S. Dist. LEXIS 94595, at *6 (D. Md. Nov. 28, 2006) ("the rule governing motions to compel specifically contemplates '[a]n application for an order to a person who is not a party.' ***Fed. R. Civ. P. 37(a)(1)***") (emphasis added).

Because Rule 37 is the proper basis for this Court's jurisdiction to hear the Motion to Compel, the Motion to Compel was properly made under Rule 37, and Local Rule 6.1(a) applies to PwC's response. PwC's opposition is thus untimely and PwC is in default on the Motion to Compel. Accordingly, PwC's opposition should be stricken and the Motion to Compel should be granted. *See De Leon v. Gonzales*, 400 F.3d 821, 822 (9th Cir. 2005) (striking untimely brief); *Mosley v. Meristar Mgmt. Co.*, LLC, 137 Fed. Appx. 248, 250 (11th Cir. 2005) (affirming district court's order striking untimely opposition).

## CONCLUSION

For the foregoing reasons, Petitioners respectfully request that their Motion to Compel be granted and that the Court enter an order:

    a.    compelling PwC to produce all documents responsive to the Subpoena within 7 days at PwC's offices in New York City (or such other location as the parties may mutually agree);

    b.    compelling PwC to produce immediately all transcripts of depositions and documents previously produced in the *Bricoleur* Action that are in PwC's possession; and

14

     c.     directing that Petitioners shall pay the reasonable costs of copying and shipping the responsive documents to Petitioners, but shall otherwise not be responsible for paying for PwC's costs or expenses in complying with the Subpoena.

Dated:  March 5, 2007

Respectfully submitted,

By:                                     
          Peter Sloane (PS-4672)
          Peter E. Seidman (PS-8769)
          **MILBERG WEISS & BERSHAD LLP**
          One Pennsylvania Plaza
          New York, NY  10119
          (212) 594-5300

          ***Counsel for Petitioners***

15

## CERTIFICATE OF SERVICE

I, Peter Sloane, certify that on March 5, 2007, I caused a copy of Petitioners' Reply

Memorandum of Law in Further Support of Their Motion to Compel Third Party

PricewaterhouseCoopers LLP to Comply with *Subpoena Duces Tecum*, to be served via hand

delivery upon:

> William P. Frank, Esq.
> Skadden, Arps, Slate, Meagher & Flom LLP
> Four Times Square
> New York, NY 10036
>
> ***Counsel for PricewaterhouseCoopers LLP***

and via FedEx Overnight delivery upon:

> Matthew J. Matule, Esq.
> Skadden, Arps, Slate, Meagher & Flom LLP
> One Beacon Street
> Boston, Massachusetts 02198
>
> ***Counsel for PricewaterhouseCoopers LLP***

> Jonathan A. Shapiro, Esq.
> Wilmer Cutler Pickering Hale and Dorr LLP
> 60 State Street
> Boston, MA 02109
>
> ***Counsel for Albert Erani, Donna Abelli Lopolito, Philip Laughlin, Michael
> Sabolinski, and Alan W. Tuck* (Defendants in *In re Organogenesis, Inc.
> Securities Litigation*, Civil Action No. 1:04 CV 10027-JLT, pending in the
> United States District Court for the District of Massachusetts)**

> Peter M. Saparoff, Esq.
> Mintz Levin, Cohn, Ferris, Glovsky & Popeo, P.C.
> One Financial Center
> Boston, MA 02111
>
> ***Counsel for Herbert M. Stein* (Defendant in *In re Organogenesis, Inc.
> Securities Litigation*, Civil Action No. 1:04 CV 10027-JLT, pending in the
> United States District Court for the District of Massachusetts)**

Sara Jane Shanahan, Esq.
Griesinger, Tighe & Maffie, LLP
176 Federal Street
Boston, MA 02110

**Counsel for John J. Arcari (Defendant in *In re Organogenesis, Inc. Securities
Litigation*, Civil Action No. 1:04 CV 10027-JLT, pending in the United States
District Court for the District of Massachusetts)**

_____
Peter Sloane